### IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

| | | |
|---|---|---|
| **GRANGE MUTUAL** | : | |
| **CASUALTY COMPANY** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION NO. _____** |
| **vs.** | : | |
| | : | |
| **CYCLE-TEX, INC., and JARROD** | : | |
| **JOHNSON, individually, and on** | : | |
| **Behalf of a Class of persons similarly** | : | |
| **situated,** | : | |
| | : | |
| **Defendants.** | | |

## <u>COMPLAINT FOR DECLARATORY JUDGMENT</u>

Grange Mutual Casualty Company ("Grange") files this Complaint for Declaratory Judgment, showing the Court the following:

### <u>*Nature of Action*</u>

1.

This case is an action for a declaratory judgment under Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. 2201 to declare the rights and other legal relations surrounding questions of actual controversy that presently exist between Grange and the Defendants, i.e., that Grange owes no insurance coverage obligations

to any of the Defendants (in this lawsuit) in  connection with the claims asserted in the lawsuit styled *Jarrod Johnson, individually and on Behalf of a Class of persons similarly situated, v. Cycle-Tex, Inc., et al,* Civil Action No. 4:20-cv-0008-AT, United States District Court for the Northern District of Georgia, Rome Division (the "Underlying Lawsuit").

<u>*Parties, Jurisdiction, and Venue*</u>

2.

Plaintiff Grange is an Ohio insurance company with its principal place of business in Columbus, Ohio.

3.

Defendant Cycle-Tex, Inc. ("Cycle-Tex") is a Georgia Corporation. Upon information and belief, as well as a review of publicly available information, Cycle-Tex's principal place of business is located at 111 West Westcott Way, Dalton, Georgia 30720. It may be served through its registered agent, Phillip Neff, 2002 Sheffield PL. Dalton, GA., 30721.

4.

Jared Johnson is a resident of Floyd County, Georgia and resides at 13 South Ivy Ridge Road, Rome, Georgia 30161.

5.

The Court has jurisdiction over this action pursuant to 28 U.S.C. 1332.

6.

Plaintiff is a citizen of a different state than all of the Defendants.

7.

The amount in controversy, exclusive of interest and costs, exceeds $75,000.

8.

Pursuant to 28 U.S.C. 2201, this Court also has jurisdiction because Grange is seeking a declaration from this Court regarding the parties' rights and obligations with respect to an insurance policy issued by Grange.

9.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

*Background Facts*

10.

On November 26, 2019, Plaintiff Jarrod Johnson—individually, and on behalf of a class of persons that were purportedly similarly situated to him—filed suit against over thirty named defendants, as well as a number of unnamed defendants, in the Superior Court of Floyd, County, Georgia. The case was docketed in the

Superior Court of Floyd County as Civil Action No. 19CV02448JFL003. A true and accurate copy of that complaint is attached hereto as <u>Exhibit A</u>.

11.

As more fully detailed in Exhibit A, the complaint asserted that the named defendants and the unnamed defendants were causing damages by intentionally polluting waterways. For example, the complaint alleged, in pertinent part, that Jarrod Johnson, and a class of people similarly situated to Mr. Johnson, have been damaged and continue to be damaged "due to the intentional, willful, wanton, reckless and negligent release of toxic chemicals" by the defendants' manufacturing processes and facilities. [Ex. A. ¶ 1].

12.

As more fully detailed in Exhibit A, the complaint further alleged that "Defendants have long been aware of the persistence and toxicity of PFOA, PFOS, and related chemicals. Defendants nonetheless knowingly and intentionally discharged and continued to discharge these chemicals into the rivers and watersheds that supply drinking water to the City of Rome and its water subscribers." [Ex. A. ¶ 62].

13.

As more fully detailed in Exhibit A, the complaint further alleged that "[u]pon information and belief, all Defendants knew or should have known that, in its intended and/or common use, PFC's would very likely cause harm and injury, and/or threaten public health and the environment." [Ex. A. ¶ 75].

14.

Grange Insured, Cycle-Tex, Inc, was not a named defendant in the aforementioned complaint filed in the Superior Court of Floyd, County. [Ex. A.].

15.

In the caption of his complaint, Mr. Johnson referred to the unnamed defendants as "Fictitious Defendants A-J." As more fully detailed in Exhibit A, "Fictitious Defendants A-J" were described in the caption of the complaint as "those persons, corporations, partnerships or entities who acted either as principal or agent, for or in concert with the other named Defendants and/or whose acts caused or contributed to the damages sustained by the Plaintiff, whose identities are unknown to the Plaintiff, **but which will be substituted by amendment when ascertained**." [Ex. A. (emphasis supplied); *see also* Ex. A. ¶ 48].

16.

On January 10, 2020, one of the named defendants in the Underlying Lawsuit, 3M Company, removed it from the Superior Court of Floyd County, Georgia to the United States District Court for the Northern District of Georgia, Rome Division. The removed case was assigned case no. 4:20-cv-000008-AT.

17.

On August 27, 2020, Jarrod Johnson, individually, and on behalf of a class of persons similarly situated to him, filed an Amended Complaint in the United States District Court for the Northern District of Georgia, Rome Division (4:20-cv-0008-AT). A true and correct copy of the Amended Complaint is attached as Exhibit B.

18.

As shown in Exhibit B, the Amended Complaint (unlike the original complaint) did not list "Fictitious Defendants A-J".

19.

The Amended Complaint added Cycle-Tex, Inc. as a named defendant in the Underlying Lawsuit. [Ex. B].

20.

As more fully detailed in Exhibit B, the Amended Complaint alleged that

Cycle-Tex "is the owner and operator of a thermoplastics recycling facility located at 111 West Westcott Way, Dalton, Georgia 30720, which has discharged industrial wastewater containing [polyfluoralkyl substances] into the [Dalton Utilities Publicly Owned Treatment Works]." [Ex. B ¶ 25].

21.

Underscoring that polyfluoralkyl substances are pollutants, and as more fully detailed in Exhibit B, the Amended Complaint further alleged that polyfluoralkyl substances "are a large group of man-made chemicals that do not occur naturally in the environment." [Ex. B ¶ 51].

22.

Further underscoring that polyfluoralkyl substances are pollutants, the Amended Complaint alleged that there "is no known environmental breakdown mechanism for [polyfluoralkyl substances], and they are readily absorbed into biota and tend to bioaccumulate with repeated exposure. [Polyfluoralkyl substances] leach for soil to groundwater, are highly mobile and water soluble, making groundwater and surface water particularly vulnerable to contamination, and a major source of human exposure to [polyfluoralkyl substances] is through ingestion of contaminated drinking water." [Ex. B. ¶ 52].

23.

As more fully detailed in Exhibit B, the Amended Complaint alleged that the defendants—including, Cycle-Tex, Inc.—were guilty of "intentional, willful, wanton, reckless, and negligent discharge of [polyfluoralkyl substances] from Defendants' manufacturing processes and facilities into the [Dalton Utilities Publicly Owned Treatment Works]." [Ex. B. ¶ 2].

24.

As more fully detailed in Exhibit B, the Amended Complaint further alleges that the defendants—including, Cycle-Tex, Inc.—were guilty of polluting and contaminating the Consasauga River, the Oostanaula River, the Coosa River and other tributaries and watersheds in the Upper Coosa River basis.  [Ex. B. ¶¶ 4-6].

25.

As more fully detailed in Exhibit B, the Amended Complaint further alleges that the defendants—including, Cycle-Tex, Inc.—were guilty of "intentional, willful, wanton, reckless, malicious and oppressive misconduct."  [Ex. B. ¶ 6].

26.

In short, the Amended Complaint alleges that Cycle-Tex was liable for damages because it intentionally polluted several waterways with polyfluoralkyl

substances.

27.

The Amended Complaint also alleges that Cycle-Tex knew for a great deal of time before the filing of the Underlying Lawsuit that it was intentionally polluting several waterways with chemical pollutants.

28.

Specifically, and as more fully detailed in Exhibit B, the Amended Complaint alleges that the defendants—including, Cycle-Tex—"have long been aware of the persistence and toxicity of PFAS, and PFOA and PFOS in particular. Defendants nonetheless knowing and intentionally discharged these chemicals into the Dalton POTW, where they inevitable Pass Through the POTW and are discharged from the RIVERBEND LAS to the Conasauga River and then travel downstream and contaminate the Oostanaula River . . ." [Ex. B. ¶ 66 *see also* Ex. B ¶ 78].

29.

As more fully set forth in Exhibit B, Jarrod Johnson, individually, and on behalf of a class of persons similarly situated has pled the following claims in the Amended Complaint in the Underlying Lawsuit:

Count One:   Discharge of Pollutants to Surface Waters without an NPDES Permit in Violation of the Clean Water Act.

Count Two:  Industrial User Pass Through Discharges of Pollutants in Violation of Dalton Utilities' Sewer Use Rules and Regulations and the Clean Water Act.

Count Three: Willful, Wanton, Reckless, or Negligent Misconduct

Count Four:  Negligence.

Count Five:   Punitive Damages.

Count Six:    Public Nuisance.

Count Seven: Claims for Abatement and Injunction of Public Nuisance.

[Exhibit B]

30.

All seven counts are based on allegations of unlawful pollution of surface waters by discharges of toxic polyfluoroalkyl substances (PFAS). [Ex. B].

31.

In Count Three of the Amended Complaint, and as more fully set forth in Exhibit B, Jarrod Johnson, individually, and on behalf of a class of persons similarly situated, asserts a theory of liability against Cycle-Tex for "knowingly" breaching a duty to exercise due and reasonable care to prevent the discharge of toxic PFAS chemicals into waters of the State and waters of the United States and the Conasauga Oostanaula Rivers. [Ex. B ¶¶ 149-150].

32.

In Count Five of the Amended Complaint, and as more fully set forth in Exhibit B, Jarrod Johnson, individually, and on behalf of a class of persons similarly situated, asserts a theory of liability against Cycle-Tex (along with numerous other defendants) for acting with "willful misconduct, malice, fraud, wantonness, oppression or that entire want of care which would raise the presumption of conscious indifference to consequence." [Ex. B ¶ 163].

33.

As previously noted, Jarrod Johnson, individually, and on Behalf of a class of persons similarly situated, alleges that Cycle-Tex (along with numerous other defendants) has had notice for a long period of time prior to the filing of the Underlying Lawsuit that its actions would cause damages and pollute the riverways. [Ex. B. ¶¶ 66, 78].

34.

Grange, however, first received notice of the Underlying Lawsuit on October 19, 2020 when a copy of the Amended Complaint was sent to its attention.

35.

In addition, Grange first received notice of the incidents underpinning the

factual claims being asserted against Cycle-Tex in the Underlying Lawsuit on October 19, 2020.

36.

On November 11, 2020, Grange sent a reservation of rights letter to Cycle-Tex, Inc. A true and correct copy of Grange's Reservation of Rights letter is attached hereto as Exhibit C.

37.

Grange is providing a defense to Cycle-Tex, Inc. in the Underlying Lawsuit subject to a complete reservation of rights.

38.

On December 14, 2020, Jarrod Johnson, individually, and on behalf of a class of persons similarly situated, filed a Third Amended Complaint in the United States District Court for the Northern District of Georgia, Rome Division (4:20-cv-0008-AT). A true and correct copy of the Third Amended Complaint is attached as Exhibit D.

39.

As shown in Exhibit D, the Third Amended Complaint names Cycle-Tex, Inc. as a named Defendant. [Ex. D].

40.

As more fully detailed in Exhibit D, the Third Amended Complaint repeats the allegation that Cycle-Tex "is the owner and operator of a thermoplastics recycling facility located at 111 West Westcott Way, Dalton, Georgia 30720, which has discharged industrial wastewater containing [polyfluoralkyl substances] into the [Dalton Utilities Publicly Owned Treatment Works]." [Ex. D ¶ 25].

41.

As more fully detailed in Exhibit D, the Third Amended Complaint repeats the allegation that polyfluoralkyl substances "are a large group of man-made chemicals that do not occur naturally in the environment." [Ex. D ¶ 52].

42.

As more fully detailed in Exhibit D, the Third Amended Complaint realleges that there "is no known environmental breakdown mechanism for [polyfluoralkyl substances], and they are readily absorbed into biota and tend to bioaccumulate with repeated exposure. [Polyfluoralkyl substances] leach for soil to groundwater, are highly mobile and water soluble, making groundwater and surface water particularly vulnerable to contamination, and a major source of human exposure to

[polyfluoralkyl substances] is through ingestion of contaminated drinking water."
[Ex. D. ¶ 53].

43.

As more fully detailed in Exhibit D, the Third Amended Complaint realleges
that the defendants—including, Cycle-Tex,—were guilty of "intentional, willful,
wanton, reckless, and negligent discharge of [polyfluoralkyl substances] from
Defendants' manufacturing processes and facilities into the [Dalton Utilities
Publicly Owned Treatment Works]." [Ex. D. ¶ 2].

44.

As more fully detailed in Exhibit D, the Third Amended Complaint further
realleges that the defendants—including, Cycle-Tex—were guilty of polluting and
contaminating the Consasauga River, the Oostanaula River, the Coosa River and
other tributaries and watersheds in the Upper Coosa River basis.  [Ex. D. ¶¶ 4-6].

45.

As more fully detailed in Exhibit D, the Third Amended Complaint further
realleges that the defendants—including, Cycle-Tex, Inc.—were guilty of
"intentional, willful, wanton, reckless, malicious and oppressive misconduct."  [Ex.
D. ¶ 6].

- 14 -

46.

In short, the Third Amended Complaint repeats the allegations contained in the Amended Complaint that Cycle-Tex, is liable for damages because it intentionally polluted several waterways.

47.

The Third Amended Complaint also repeats the allegation that Cycle-Tex, knew for a great deal of time before the filing of the Underlying Lawsuit that it was intentionally polluting several waterways with chemical pollutants.

48.

Indeed, as more fully detailed in Exhibit D, the Third Amended Complaint further realleges that the defendants—including, Cycle-Tex—"have long been aware of the persistence and toxicity of PFAS, and PFOA and PFOS in particular. Defendants nonetheless knowing and intentionally discharged these chemicals into the Dalton POTW, where they inevitable Pass Through the POTW and are discharged from the RIVERBEND LAS to the Conasauga River and then travel downstream and contaminate the Oostanaula River . . ." [Ex. D. ¶ 67 *see also* Ex. D ¶ 79].

49.

As more fully set forth in Exhibit D, Jarrod Johnson, individually, and on Behalf of a Class of persons similarly situated has pled the following claims in the Third Amended Complaint:

Count One:    Discharge of Pollutants to Surface Waters without an NPDES Permit in Violation of the Clean Water Act.

Count Two:   Industrial User Pass Through Discharges of Pollutants in Violation of Dalton Utilities' Sewer Use Rules and Regulations and the Clean Water Act.

Count Three: Willful, Wanton, Reckless, or Negligent Misconduct

Count Four:  Negligence Per Se.

Count Five:   Punitive Damages.

Count Six:    Public Nuisance.

Count Seven: Claims for Abatement and Injunction of Public Nuisance.

[Exhibit D].

50.

All seven counts are based on allegations of unlawful pollution of surface waters by discharges of toxic polyfluoroalkyl substances (PFAS). [Ex. D].

51.

In Count Three of the Third Amended Complaint, and as more fully set forth in Exhibit D, Jarrod Johnson, individually, and on behalf of a class of persons

- 16 -

similarly situated, asserts a theory of liability against Cycle-Tex (along with numerous other defendants) for "knowingly" breaching a duty to exercise due and reasonable care to prevent the discharge of toxic PFAS chemicals into waters of the State and waters of the United States and the Conasauga Oostanaula Rivers. [Ex. D ¶¶ 151-156].

51.

In Count Five of the Third Amended Complaint, and as more fully set forth in Exhibit D, Jarrod Johnson, individually, and on behalf of a class of persons similarly situated, asserts a theory of liability against Cycle-Tex (along with numerous other defendants) for acting with "willful misconduct, malice, fraud, wantonness, oppression or that entire want of care which would raise the presumption of conscious indifference to consequence." [Ex. D ¶ 166].

53.

As noted, Jarrod Johnson, individually, and on Behalf of a Class of persons similarly situated, alleges that Cycle-Tex, Inc. has had notice for a long period of time that its actions would cause damages and pollute the riverways. [See Ex. D. ¶¶ 67, 79].

*The Policy*

54.

Grange issued insurance policy no. CPP 2083060 03 01 to Cycle-Tex [the "Grange Policy"].

55.

The Grange Policy had an effective date of July 1, 2014 and was continuously renewed by Cycle-Tex, Inc. through July 1, 2019.

56.

The Grange Policy, contains the following Coverage Parts:

- Commercial Automobile Coverage Part
- Commercial Property Coverage Part
- Commercial Crime Coverage Part
- Employee Benefits Liability Coverage Part
- Commercial General Liability Coverage Part
- Commercial Inland Marine Coverage Part
- Certified Acts of Terrorism
- Manufacturers' Optimum Program
- Third Party Administration Fee – Cyber Coverage

57.

The Grange Policy contains Commercial General Liability Coverage Form
(CG 00 01 10 01), which in pertinent part, includes the following relevant language:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM (CG 00 01 10
01)**

***

Throughout this policy the words "you" and "your" refer to the Named Insured
shown in the Declarations, and any other person or organization qualifying as a
Named Insured under this policy. The words "we", "us" and "our" refer to the
company providing this insurance.

The word "insured" means any person or organization qualifying as such under
Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer
to Section **V** – Definitions.

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.  **Insuring Agreement**

    a.   We will pay those sums that the insured becomes legally obligated to
         pay as damages because of "bodily injury" or "property damage" to
         which this insurance applies. We will have the right and duty to defend
         the insured against any "suit" seeking those damages. However, we will
         have no duty to defend the insured against any "suit" seeking damages
         for "bodily injury" or "property damage" to which this insurance does
         not apply. . .

**b.**     This insurance applies to "bodily injury" and "property damage" only if:

    **(1)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)**     The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)**     Prior to the policy period, no insured listed under Paragraph **1.** Of Section **II** –Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.**     "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** Of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.**     "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** Of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence or claim:

        **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

58.

The Grange Policy contains Commercial General Liability Coverage Form (CG 00 01 04 13), which in pertinent part, includes the following identical relevant language:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM (CG 00 01 04 13)**

\*\*\*

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.   **Insuring Agreement**

   a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . .

   b.   This insurance applies to "bodily injury" and "property damage" only if:

   **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   **(2)**   The "bodily injury" or "property damage" occurs during the policy period; and

   **(3)**   Prior to the policy period, no insured listed under Paragraph **1.** Of Section **II** –Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c.   "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** Of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim,

includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.**　　　 "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** Of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence or claim:

> **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;
>
> **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or
>
> **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

59.

Both Commercial General Liability Coverage Form CG 00 01 10 01 and Form CG 00 01 04 13, includes the following relevant exclusion language:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

***

**2.** **Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury resulting from the use of reasonable force to protect persons or property.

\*\*\*

60.

The Grange Policy includes Endorsement CG 21 49 (09/99)—Total Pollution

Exclusion. The Total Pollution Exclusion Endorsement broadly excludes coverage

from claims arising out of pollution.   In particular, the Total Pollution Exclusion

Endorsement provides, in pertinent part, as follows:

COMMERCIAL GENERAL LIABILITY
CG 21 49 09 99

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

59.

- 24 -

61.

The Grange Policy defines "pollutants" to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

62.

The Grange Policy defines "Occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

63.

Grange also issued Cycle-Tex, Inc. with Commercial Umbrella Policies issued (i) July 8, 2014, (ii) July 21, 2015, a renewal policy, (iii) May 23, 2016, a renewal policy, (iv) July 7, 2017, a renewal policy, and (v) June 6, 2018, a renewal policy. Each umbrella policy included Endorsement CU 21 25 (12/01) Total Pollution Exclusion Endorsement.

64.

The Commercial Umbrella Policies also contain Total Pollution Exclusion Endorsements, which provide, in pertinent part:

COMMERCIAL LIABILITY UMBRELLA
CU 21 25 12 01

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

Exclusion **i.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**i. Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; or

(2) "Pollution cost or expense".

65.

The allegations against Cycle-Tex in the underlying lawsuit trigger the Total

Pollution Exclusions in the Grange Policy and the Umbrella Policies.

66.

The Grange Policy contains the following conditions precedent to coverage:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**2.      Duties In The Event Of Occurrence, Offense, Claim, Or Suit**

**a.**      You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit.";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

\*\*\*

67.

The Grange Policy contains the following Manufacturers' Optimum Endorsement IL 19, which provides, in pertinent part:

**Manufacturers' Optimum Endorsement IL 19**

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABLITY COVERAGE PART

**XXIII. Duties in the Event of Occurrence, Offense, Claim or Suit-Redefined**

    **A.**    The requirement in condition **2.a.** of **SECTION IV-COMMERICAL GENERAL LIABLITY CONDITIONS** that you must see to it that we are notified of an "occurrence" only applies when the occurrence" or offense is known to:

        1. You, if you are an individual;

        2. A partner, if you are a partnership;

        3. An officer of the corporation; if you are a corporation

        4. Your members and managers, if you are a limited liability company; or

        5. Your insurance manager.

**B.**   The requirement in condition **2.b.** of **SECITON IV-COMMERICAL GENREAL LIABLITY CONDITIONS** that you must see to is that we receive written notice of a claim or "suit" as soon as practicable will not be considered breached unless the breach occurs after such claim or "suit" is known to:

1. You, if you are an individual;

2. A partner, if you are a partnership;

3. An officer of the corporation, if you are a corporation;

4. A member or manager, if you are a limited liability company; or

5. Your insurance manger .

## <u>DECLARATORY JUDGMENT</u>

*Count I – Lack of Coverage Based on Failures of Conditions Precedent*

68.

Grange incorporates by reference as if fully set forth herein the allegations of Paragraphs 1 through 67 above.

69.

Grange seeks a declaration of rights that there is no coverage under the Grange Policy for the claims asserted in the Underlying Lawsuit.

70.

The Policy does not cover any of the claims made in the Underlying Lawsuit

and will not cover any damages awarded therein due to the failures of any insured to comply with the Grange's policy's terms and conditions with respect to the occurrences detailed in the Underlying Lawsuit.

71.

Upon information and belief, Cycle-Tex was aware of the polluting events and the discharge of chemicals detailed in Exhibits A, B, and D for years before they provided notice to Grange.

72.

Grange was not notified promptly or as soon as practicable of the polluting events, and the discharge of chemicals, which constitutes an "Occurrence" or "Occurrence(s) under the Policy.

73.

Grange did not receive written notice of the occurrence or claim promptly or as soon as practicable.

74.

Upon information and belief, Cycle-Tex did not immediately forward to Grange a copy of the Amended Complaint filed in the Underlying Lawsuit after receiving a copy of the Amended Complaint.

75.

Grange is entitled to a declaratory judgment that Cycle-Tex is not covered under the Grange Policy for the Underlying Lawsuit because conditions precedent under the Grange Policy were breached including the duties to provide timely notice.

76.

Grange owes no duty to defend or indemnity Cycle-Tex.

*Count II – Lack of Coverage Based on Total Pollution Exclusion*

77.

Grange incorporates by reference as if fully set forth herein the allegations of Paragraphs 1 through 76 above.

78.

In the Underlying Lawsuit, Jarrod Johnson, individually, and on behalf of a class of persons similarly situated, seeks to recover damages from Cycle-Tex based on its discharge of pollutants.

79.

The claims asserted against Cycle-Tex in the Underlying Lawsuit are excluded by the Total Pollution Exclusion.

80.

Grange seeks a declaratory judgment from this Court that there is no coverage for any claims made in the Underlying Lawsuit because they trigger the Grange Policy's Total Pollution Exclusion.

*Count III – Lack of Coverage Based on Expected Or Intended Injuries*

81.

Grange incorporates by reference as if fully set forth herein the allegations of Paragraphs 1 through 80 above.

82.

In the Underlying Lawsuit, Jarrod Johnson, individually, and on behalf of a class of persons similarly situated, seeks to recover damages from Cycle-Tex based on its allegedly intentional and/or reckless actions.

83.

All such claims asserted against Cycle-Tex in the Underlying Lawsuit are excluded by the Grange Policy Exclusion for Expected or Intended Injury.

84.

Grange seeks a declaratory judgment from this Court that there is no coverage

for any such claims made in the Underlying Lawsuit.

*Count IV – Lack of Coverage Based on No "Occurrence"*

85.

Grange incorporates by reference as if fully set forth herein the allegations of Paragraphs 1 through 84 above.

86.

The Grange Policy, subject to its terms, conditions, and exclusions, provides coverage only for an "occurrence."

87.

The Amended Complaint and the Third Amended Complaint in the Underlying Lawsuit allege that Cycle-Tex acted in bad faith and with conscious indifference.

88.

Grange seeks a declaratory judgment from this Court that there is no coverage for any such claims made in the Underlying Lawsuit—as the alleged damages were not caused by an "occurrence."

WHEREFORE, Grange demands that the Court adjudge:

(a)     That each Defendant be required to respond to the allegations set forth in this Complaint for Declaratory Judgment;

(b)     That this Court declares that Grange has no duty to cover or indemnify any of the Defendants, or any other person or entity, in connection with the Underlying Lawsuit, events giving rise to the Underlying Lawsuit, or any judgments or awards in the Underlying Lawsuit;

(c)     That this Court declares that Grange has no duty defend Cycle-Tex in connection with the Underlying Lawsuit;

(d)     That Grange have such other and further relief as this Court deems just and proper.

Respectfully submitted, this 1st day of August, 2021.

HAWKINS PARNELL & YOUNG, LLP

/s/ Zachary S. Lewis
Zachary S. Lewis
Georgia Bar No.:  689146

303 Peachtree Street, NE
Suite 4000
Atlanta, GA  30308-3243
P: (404) 614-7400
F: (404) 614-7500
E: zlewis@hpylaw.com

*Attorney for Plaintiff Grange Mutual Casualty Company*

- 34 -