## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | |
|---|---|
| **GRANGE INSURANCE COMPANY** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| **vs.** : | **Civil Action File  No.** |
| : | **4:21-CV-00147- AT** |
| **CYCLE-TEX, INC., and JARROD** : | |
| **JOHNSON, individually, and on Be-** : | |
| **half of a Class of persons similarly** : | |
| **situated,** : | |
| : | |
| **Defendants.** : | |

## Grange Insurance Company's Brief
## In Support Of Its Motion For Summary Judgment

This is a declaratory judgment action in which Grange Insurance Company seeks a declaration that it owes no insurance coverage obligations to Cycle Tex, Inc. in connection with the claims asserted against it in the underlying lawsuit styled *Jarrod Johnson, individually and on Behalf of a Class of persons similarly situated, v. Cycle-Tex, Inc., et al,* Civil Action No. 4:20-cv-0008-AT, United States District Court for the Northern District of Georgia, Rome Division. The insurance policy at issue is policy no. CPP 2083060 03, issued to Cycle Tex, Inc. [Policies issued for the years 2014-2018 are submitted separately as Exhibit 1]. This summary judgment motion is primarily based on a Total Pollu-tion Exclusion, which precludes coverage for the Underlying Lawsuit.

Cycle Tex, Inc. falls within the category of defendants in the Underlying Lawsuit labeled by this Court as "Manufacturing Defendants (including alleged dischargers

directly involved with the carpet manufacturing industry).” [Order, *Jarrod Johnson, individually and on Behalf of a Class of persons similarly situated v. 3M et al.,* pg. 5 (09/20/2021)]. References to the “Underlying Order” in this brief are to that September 2021 Order.

Jarrod Johnson, individually and on Behalf of a Class of persons similarly situated (the “Underlying Plaintiff”), alleges that the carpet manufacturing industry in Northwest, Georgia (in addition to others) caused serious harm to residents of Northwest Georgia by contributing to or causing the discharge of “toxic” and “everlasting” chemicals, known as PFAS, into North Georgia waterways around Dalton, Georgia. [*See* Underlying Order at pp. 1-2]. Through their discharge of toxic and everlasting chemicals, the Manufacturing Defendants allegedly contaminated the City of Rome and Floyd County’s water supplies. [*See* Underlying Order at 8]. And as a result of that contamination, the Underlying Plaintiff allegedly suffered the following damages: 1) harm to their person by virtue of ingesting contaminated water; 2) property damage “as a direct result of the contamination of the Rome water supply” and; 3) the payment of surcharges and heightened water rates to recoup the costs of removing the contamination. [*Id* 13-14; *See also Id.* 71-72].

The Underlying Plaintiff alleges Manufacturing Defendants, such as Cycle Tex, Inc., allegedly caused those damages by discharging industrial waste water containing PFAS into the City of Dalton’s Publicly Owned Treatment Works (“POTW”). “The PFAS resist degradation during treatment processing at the POTW” and eventually reach several Northwest Georgia waterways after first migrating through the Riverbend

Land Application System. [*See* Underlying Order at 9-11[1]]. Or, more succinctly stated: "Plaintiffs allege that the Manufacturing Defendants . . . knew or should have known that their discharge of toxic PFAS chemicals would result in contamination of surface waters . . . that provide the source of downstream domestic water supplies, thereby endangering human health and the environment." [Underlying September 2021 Order at 109].

There is also no legitimate question that the Grange Policy was never intended to provide, and does not provide, insurance coverage for those claims. In particular, the Grange Policy contains a Total Pollution Exclusion, which precludes coverage for bodily injury or property damage, "which would not have occurred in whole or part but for the actual alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." [Exhibit 1, p. 409]. In addition, the Total Pollution Exclusion precludes coverage for "any loss, cost or expense arising out of any: (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of "pollutants."" *Id.* The allegations asserted against Cycle Tex, Inc. in the Underlying Lawsuit fall squarely within that exclusion; entitling Grange to summary judgment.

---

[1] This Court comprehensively detailed the Underlying Plaintiff's allegations and legal arguments in its 182-page order. To make this motion a self-contained document, Grange has summarized certain portions of that Order that it contends are especially relevant to this motion.

As this Court pointed out in *Lang v. FCCI Ins. Co.,* 530 F. Supp. 3d 1299 (N.D. Ga. 2021), Georgia courts have upheld broad definitions of "pollutants" contained in pollution exclusions. But the Total Pollution Exclusion in the Grange Policy need not be construed broadly for the Underlying Lawsuit to qualify as a claim for damages arising out of pollution. Indeed, the Underlying Plaintiff's claims against the Manufacturing Defendants are a quintessential class-action pollution lawsuit alleging a manufacturer's discharge of chemicals polluted drinking water. *See e.g., Anderson v. Cryovac, Inc.,* 96 F.R.D. 431 (D. Mass. 1983) (One of several class-action lawsuits, made famous by the non-fiction book, A Civil Action, in which manufacturing defendants were sued for contaminating the Woburn, Massachusetts water supply with industrial solvents); *Anderson, et al. v. Pacific Gas and Electric* (Superior Ct. for County of San Bernardino, Barstow Division, file BCV 00300) (class-action against PG&E for groundwater contamination and basis for major motion picture, Erin Brockovich). In sum, the Grange Policy's pollution exclusion precludes coverage for the Underlying Lawsuit.

An independent basis for this summary judgment motion is that Cycle Tex, Inc. failed to provide Grange with prompt notice of the events giving rise to the Underlying Lawsuit. Timely notice is a condition precedent to coverage under the Grange Policy. The Underlying Lawsuit asserts, however, that Cycle-Tex, Inc. polluted Northwest Georgia's waterways for over a decade before the Underlying Lawsuit was filed in November of 2019. Grange, however, was first notified of these allegations in October of 2020. It promptly reserved its rights. [Compl. Ex. C].

Finally, and separately, the Underlying Plaintiff's most serious claims against Cycle Tex, Inc. in the Underlying Lawsuit—that Cycle-Tex was an intentional polluter—is excluded from coverage because the Grange Policy does not provide coverage for intentional or expected injuries. For these reasons, Grange prays that the Court awards it summary judgment.

## Undisputed Facts

Grange begins this factual background section by discussing the insurance policy provisions that are relevant to this motion (Section A). It then discusses the facts and allegations against Cycle Tex, Inc. in the Underlying Lawsuit (Section B).

**A.   The Policy**

### 1.   The Grange Policy Excludes Coverage For Bodily Injury Arising Out Of Pollution

Grange issued insurance policy no. CPP 2083060 03 01 to Cycle-Tex. [Exhibit 1]. The Grange Policy had an effective date of July 1, 2014 and was renewed through July 1, 2019. [*Id.* pp. 278 (declarations for 2014-2015), 284 (2015-2016), 1091 (2016-2017), 1317 (2017-2018), 1362 (2018-2019)]. The Grange Policy was a commercial package policy and contained the following relevant coverage part: Commercial General Liability Coverage Part. [*Id.*]. In addition, the Policy contained a Commercial Liability Umbrella Coverage Part for 2014 through 2017. [*Id.* pp. 2-8]

The Commercial General Liability Coverage Part states, in pertinent part, that Grange will "pay for those sums that the insured becomes legally obligated to pay as

damages because of 'bodily injury' or 'property damage' to which this insurance applies.

. . . However, we will have no duty to defend the insured against any 'suit' seeking

damages for 'bodily injury' or 'property damage' to which this insurance does not ap-

ply." [Ex. 1 p. 412]. The Commercial General Liability Coverage Part contains a Total

Pollution Exclusion Endorsement:

COMMERCIAL GENERAL LIABILITY
CG 21 49 09 99

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f.  Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

[Ex. 1, PDF page 557].

Likewise, the Commercial Umbrella Liability Coverage Form states, in pertinent

part, that Grange "will have no duty to defend the insured against any 'suit' seeking

damages for 'bodily injury' or "property damage" to which this insurance does not

ap-ply." [Ex. 1, PDF page 775]. The Commercial Liability Umbrella Coverage Part

also contains a Total Pollution Exclusion Endorsement, which expressly precludes

coverage for damages arising from pollution:

COMMERCIAL LIABILITY UMBRELLA
CU 21 25 12 01

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

Exclusion i. under Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

This insurance does not apply to:

**i. Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; or

(2) "Pollution cost or expense".

[Ex. 1 at PDF page 852].

The phrase, "Pollution cost or expense," is defined, in pertinent part, by the Umbrella Coverage Form as follows: "any loss, cost or expense arising out of any: a. Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants." [*Id.* at PDF pg. 827].

Both Total Pollution Exclusion endorsements plainly preclude coverage for damages to property or bodily injury caused by the "actual, *alleged* or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." [*Id.* Policy Ex. 1 at PDF pages 557 and 852 (emphasis added)]. Both endorsements also preclude coverage for the payment of surcharges and heightened water rates the Underlying Plaintiff claims a class of individuals must pay to recoup the additional wastewater treatment costs nec-essary to remove the PFAS contamination allegedly caused by Cycle Tex. [*Id.*]

7

The term "pollutants" is defined by both the umbrella policy form and the underlying form to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke vapor soot fumes acids alkalis chemicals and waste. Waste includes materials to be recycled reconditioned or reclaimed." [Ex. 1 at PDF page 108 (underlying form), 827 (umbrella)]. That definition is construed broadly under Georgia law. *See Lang v. Fcci Ins. Co.,* 530 F.Supp.3d 1299 (N.D. Ga. 2021). Even were it not, a classic dictionary definition of pollutant would encompass PFAS, which the Underlying Plaintiffs label as "toxic" and "everlasting" and the cause of groundwater contamination in Northwest Georgia. *Webster's II New College Dictionary* (1995) (defining pollutant, as follows: "something that pollutes, esp. a waste material that contaminates air, soil or water."

### 2. The Grange Policy Requires Cycle Tex To Provide Timely Notice

The Commercial General Liability Coverage Part of the Grange Policy required Cycle Tex to provide it with timely notice of events that would likely lead to formal claims as well as timely notice of formal lawsuits. In particular, the Commercial General Liability Coverage Part of the Grange Policy contains the following provision:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**2.   Duties In The Event Of Occurrence, Offense, Claim, Or Suit**

    **a.**   You must see to it that we are notified as soon as practicable of an     "occurrence" or an offense which may result in a claim. To the extent     possible, notice should include:

        (1)   How, when and where the "occurrence" or offense   took

place;

(2)   The names and addresses of any injured persons      and witnesses; and

(3)   The nature and location of any injury or damage arising out of the "occurrence" or offense.

[Ex. 1, PDF pg. 128].

The Grange Policy contains the following Manufacturers' Optimum Endorse-ment IL 19, which also requires Cycle-Tex, Inc. to provide timely notice. [Ex. 1, PDF page 59]. It provides, in pertinent part:

## XXIII. Duties in the Event of Occurrence, Offense, Claim or Suit-Redefined

**A.**   The requirement in condition **2.a.** of **SECTION IV-COMMERICAL GENERAL LIABLITY CONDITIONS** that you must see to it that we are notified of an "occurrence" only applies when the occurrence" or offense is known to:

1. You, if you are an individual;

2. A partner, if you are a partnership;

3. An officer of the corporation; if you are a corporation

4. Your members and managers, if you are a limited liability  company; or

5. Your insurance manager.

The Grange Umbrella contains the following notice provision:

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**Section IV – Conditions** is amended by the following:

1. Paragraph **3.a.** of **Duties In The Event Of Accident, Claim, Suit Or Loss** is replaced by the following:

   a. In the event of an "occurrence", claim, "suit" or "loss", we or our representative must receive prompt notice of the "occurrence" or "loss". Include:

   (1) How, when and where the "occurrence" or "loss" occurred;

   (2) The insured's name and address; and

   (3) To the extent possible, the names and addresses of any injured persons and witnesses.

The requirement for giving notice of a claim, if not satisfied by the insured within 30 days of the date of the "occurrence", may be satisfied by an injured third party who, as the result of such "occurrence", has a claim against the insured. However, in this event, notice of a claim given by an injured third party must be mailed to us.

2. Paragraph **7.d. Representations Or Fraud** is replaced by the following:

   d. We will not pay for any "loss" or damage in any case of fraud committed by you or any other insured, at any time, and relating to coverage under this policy.

[Ex. 1 at PDF pg. 880].

### 3.    The Grange Policy Excludes Claims For Intentional Acts

Both the body of the Grange Policy as well as the Manufacturers' Optimum Endorsement preclude coverage for expected or intended injuries. In particular, the Commercial General Liability Coverage Form includes the following exclusion:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

\*    \*    \*

1.    **Exclusions**

This insurance does not apply to:

a.    **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

[Ex. 1 at PDF pgs. 120-21].

The Grange Policy's Manufacturers' Optimum Endorsement similarly excludes coverage, as follows:

IX.     **Expected Or Intended Injury**

Exclusion **2.a.** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced with the following:

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" and "property damage" resulting from the use of reasonable force to protect persons or property.

[Ex. 1 PDF pg. 464]

## B.     The Underlying Lawsuit's Allegations

Jarrod Johnson, individually, and on behalf of a class of persons similarly situated to him, filed an Amended Complaint in the Underlying Lawsuit, which added Cycle-Tex, Inc. as a named defendant. [Compl. Ex. B]. In December 2020, the Underlying Plaintiff filed a Third Amended Complaint in which it alleged that Cycle-Tex "is the owner and operator of a thermoplastics recycling facility . . . which has discharged industrial wastewater containing [polyfluoralkyl substances] into the [Dalton Utilities Publicly Owned Treatment Works]." [Compl. Ex. D ¶¶ 25, 67 and Answer¶¶ 38, 40].

Underscoring that Mr. Johnson claims PFAS are pollutants, the Third Amended Complaint alleges that polyfluoralkyl substances "are a large group of man-made chemicals that do not occur naturally in the environment" and that there "is no known environmental breakdown mechanism for [polyfluoralkyl substances], and they are readily

absorbed into biota and tend to bioaccumulate with repeated exposure. [Polyfluoralkyl substances] leach for soil to groundwater, are highly mobile and water soluble, making groundwater and surface water particularly vulnerable to contamination, and a major source of human exposure to [polyfluoralkyl substances] is through ingestion of contaminated drinking water." [Compl. Ex. D ¶¶ 53-54, *Answer* ¶¶ 41-42].

The Third Amended Complaint alleges that the Manufacturing Defendants—including, Cycle-Tex,—were guilty of "intentional, willful, wanton, reckless, and negligent discharge of [polyfluoralkyl substances] from Defendants' manufacturing processes and facilities into the [Dalton Utilities Publicly Owned Treatment Works]." [Compl. Ex. D ¶¶ 2, 6; Answer ¶ 43].

The Complaint further alleges that the Manufacturing Defendants—including, Cycle-Tex—were guilty of polluting and contaminating the Consasauga River, the Oostanaula River, the Coosa River and other tributaries and watersheds in the Upper Coosa River basis. [Compl. Ex. D ¶¶ 4-6; Answer ¶ 44]. The Complaint further alleges that the defendants—including, Cycle-Tex, Inc.—were guilty of "intentional, willful, wanton, reckless, malicious and oppressive misconduct" in connection with that pollution. [Compl. Ex. D ¶ 6; *Answer* ¶ 45].

The Complaint also alleges that Cycle-Tex, knew for a great deal of time before the filing of the Underlying Lawsuit that it was intentionally polluting several waterways with chemical pollutants. [Compl. Ex. D ¶¶ 67, 79; Answer ¶¶ 47-48]. More specifically, the Underlying Plaintiff alleged that Manufacturing Defendants (such as Cycle Tex)

discharged PFAS with knowledge of the toxicity and persistence of the chemicals and that that the PFAS cannot be removed from their wastewater discharged into the Dalton Utilities POTW. [Underlying September 2021 Order at 117 (citing Underlying Third Amended Complaint ¶¶ 67, 79, 87-88)].

In Jared Johnson's interrogatory responses in this Declaratory Judgment Action, he notes Cycle Tex discharged PFAS in at least August 2012 and June 2016, as recorded in the analytical reports obtained from Dalton Utilities. He further contends that Dalton Utilities was communicating the results of its PFAS testing to Cycle Tex at least during the 2016 timeframe following the EPA's release of lifetime health advisories for PFOA and PFOS. [Jared Johnson's Response 8 to Plaintiff's First Continuing Interrogatories (Attached as Exhibit 2 to this brief)].

## C.   The Underlying Plaintiff's Legal Claims And Damages.

The Underlying  Plaintiff is asserting five liability counts against Cycle Tex and the other Manufacturing Defendants: A) Willful, Wanton, Reckless, or Negligent Misconduct (Count 3); B) Negligence Per *Se* (Count 4); C) Punitive Damages and bad faith attorney's fees (Count 5) and D) Public Nuissance & Claims for Abatement and injunction of Public Nuisance (Counts 6 & 7). [Underlying September 2021 Order at 16; *See also Compl.* Ex. D].

Count 3 survived a motion to dismiss the negligence claims against the Manufacturing Defendants (inclusive of Cycle Tex), in part, based on the argument advanced by the Underlying Plaintiff that "the extensive PFAS contamination would not have

occurred had Defendants properly disposed of their PFAS and ensured it was not in the wastewater they sent to the Dalton POTW." [Underlying September 2021 Order at 117 (citing and quoting Underlying Plaintiff's Response In Opposition To Motion To Dismiss at 11-12].

Count 4 survived a motion to dismiss the negligence per se claim against the Manufacturing Defendants based, in part, on the Underlying Plaintiff's allegation that the Manufacturing Defendants "owed a duty to Plaintiff and Proposed Class Members under Sections 301(a) and 307(d) of the CWA, 33 U.S.C. §§ 1311(a) and 1317(d), to not discharge pollutants into waters of the United States without a valid permit and to operate their facilities in such a manner as to ensure their industrial discharges into the Dalton POTW did not cause Pass Through or Interference." [Underlying September 2021 Order at 128 (quoting Compl. ¶ 158.)]

In other words, the Underlying Plaintiff survived dispositive motions by advocating that the Manufacturing Defendants (including Cycle Tex) breached a legal duty by polluting waterways through the discharge of PFAS.

Similarly, Count 6 and 7 survived a motion to dismiss the public nuisance claims of the Underlying Plaintiff against the Manufacturing Defendants, in part, because "Plaintiff alleges that the Manufacturing Defendants use PFAS at their facilities and, for over a decade, have knowingly discharged a significant amount of wastewater containing PFAS into the Dalton POTW that then contaminates the Conasauga,

Oostanaula, and Coosa Rivers and the downriver water supply." [Order at 138 (citing and quoting Compl. ¶¶ 4, 67, 155.)]

In short, the foundation of the Underlying Plaintiff's factual and legal claims against Cycle Tex is that it caused damages by discharging chemicals that contaminated Northwest Georgia's drinking water. This is unquestionably a claim for pollution.

Summarized, the Underlying Plaintiff allegedly suffered the following damages due to Cycle Tex's discharge of PFAS: 1) harm to their person by virtue of ingesting contaminated water; 2) property damage "as a direct result of the contamination of the Rome water supply" and; 3) the payment of surcharges and heightened water rates to recoup the costs of removing the contamination. [Underlying September 2021 Order at 13-14; *See also Id.* 71-72].

In its responses to Plaintiff's Second Requests For Admissions, Jared Johnson admits that his claims for compensatory damages are based on his allegation that Cycle Tex discharged toxic chemicals. [Jarrod Johnson Response 20 to Plaintiff's First Requests For Admissions (Exhibit 3 to this Brief)]. Mr. Johnson further admits that his claims for statutory damages in the Underlying Lawsuit are based on his allegation that Cycle Tex discharged toxic chemicals." [RFA Response 21 (exhibit 3 to this Brief)]. Finally, Mr. Johnson admits that all causes of actions against Cycle-Tex are based on its allegations that Cycle Tex discharged toxic chemicals." [*Id.* 22].

# Argument

The burden of establishing coverage under the Policy rests with the Defendants. "To establish a prima facie case . . . the insured must show the occurrence was within the risk insured against." *Calabro v. Liberty Mut. Fire Ins. Co.*, 557 S.E.2d 427, 429 (Ga. Ct. App. 2001) (citation omitted). Grange must only establish that an exclusion applies if Defendants first carry their burden. *Ga. Farm Bur. Mut. Ins. Co. v. Alloway*, 215 S.E.2d 506, 508 (Ga. Ct. App. 1975).

Whether a duty to defend exists turns on the language of the insurance policy and the allegations of the complaint asserted against the insured. *Canal Indem. Co. v. Chastain*, 491 S.E.2d 474, 475 (Ga. Ct. App. 1997). An insurer has no defense obligation where the complaint fails to allege claims or damages that potentially fall within the policy's scope of coverage. *See Shafe v. Am. States Ins. Co.*, 653 S.E.2d 870, 873 (Ga. Ct. App. 2007).

Even if the duty to defend is triggered, an insurer still has no duty to indemnify an insured where the insurance policy does not cover the losses claimed. *See Reliance Ins. Co. v. Povia-Ballantine Corp.*, 738 F. Supp. 523, 528 (S.D. Ga. 1990). Importantly, in the absence of a defense obligation, however, there is no duty to indemnify. *See Shafe v. Am. States Ins. Co.*, 653 S.E.2d 870, 873 (Ga. Ct. App. 2007).

1.   **The Total Pollution Exclusion Bars Coverage**

As noted, the Grange Policy contains a "Total Pollution Exclusion" which precludes coverage for "bodily injury" or "property damage "which would not have

occurred in whole or part but for the actual alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." The exclusion also precludes coverage for "any loss, cost or expense arising out of any: (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of "pollutants." The term "pollutants" is defined by the Grange Policy to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke vapor soot fumes acids alkalis chemicals and waste. Waste includes materials to be recycled reconditioned or reclaimed."

Here, the plain language of the Total Pollution Exclusion precludes coverage for the Underlying Plaintiff's claims. The foundation of the Underlying Plaintiff's claims against Cycle Tex is that it caused damages by discharging PFAS chemicals that contaminated Northwest Georgia's drinking water by migrating from the Dalton POTW into Northwest Georgia rivers.

The Grange Policy defines chemicals to be pollutants. Even were that definition not supplied, it is hard to imagine a definition of pollutant that would not include industrial wastewater containing PFAS; especially since Underlying Plaintiff refers to PFAS as "toxic" and "everlasting" and his basic claim is that the discharge of PFAS in industrial wastewater contaminated drinking water. *See Webster's II New College Dictionary* (1995) (defining pollutant, as follows: "something that pollutes, esp. a waste material that contaminates air, soil, or water.")

The Underlying Plaintiffs even admit that the discharge of PFAS by the Manufacturing Defendants is pollution. In his Third Amended Complaint, the Underlying Plaintiff allege that manufacturing defendants such as Cycle Tex "owed a duty to Plaintiff and Proposed Class Members under Sections 301(a) and 307(d) of the CWA, 33 U.S.C. §§ 1311(a) and 1317(d), **to not discharge pollutants** into waters of the United States without a valid permit and to operate their facilities in such a manner as to ensure their industrial discharges into the Dalton POTW did not cause Pass Through or Interference." [Compl. Ex. D ¶ 158 (emphasis added)]. More generally, the word "pollutant" appears over a dozen times in the Third Amended Complaint. [Compl. Ex. D].

Further, Georgia law routinely finds that insurance policies' pollution exclusion, with language nearly identical to the Grange Policy, may broaden the definition of pollution beyond traditional environmental pollution. *See Lang v. Fcci Ins. Co.,* 530 F. Supp. 3d 1299, 1308 (N.D. Ga. 2021) (collecting cases including *Reed,* 284 Ga. 286 (2008) (carbon monoxide); *Georgia Farm Bureau Mut. Ins. Co. v. Smith,* 298 Ga. 716 (2016) (lead paint); *Truitt Oil & Gas Co., Inc. v. Ranger Ins. Co.*, 231 Ga. App. 89 (gasoline); *Recyc Sys. Se., LLC v. Farmland Mut. Ins. Co.,* 4:17-cv-225 (CDL), 2018 U.S. Dist. LEXIS 82248 (M.D. Ga. May 16, 2018) (noxious odors); *Essex Ins. Co. v. H & H Land Dev. Corp.*, 525 F. Supp. 2d 1344, 1353 (M.D. Ga. 2007) (storm water runoff and resulting sediment); *Evanston Insurance Company v. Sandersville Railroad Company*, 761 F. App'x 940, 942 (11th Cir. 2019) (welding fumes)).

Given this broad definition and the basic pollutant nature of PFAS, the Underlying Plaintiff's claim for Cycle Text to pay damages for class members payment of surcharges and heightened water rates to recoup the costs of removing the PFAS contamination from drinking water is also precluded. Grange and Cycle Tex agreed that claims for bodily injury and property damage arising from pollution would not be covered. They also agreed claims for costs to cleanup/treat/detoxify or otherwise respond to the effects of pollutants would not be covered. The Underlying Plaintiff are making the exact claims for pollution damages against Cycle Tex that the Grange Policy excludes. Grange is entitled to summary judgment on that basis.

**2.    Cycle Tex's Late Notice Bars Coverage**

Georgia courts enforce notice provisions in liability insurance policies as a condition precedent to coverage. *Federated Mut. Ins. Co. v. Ownbey Enterprises, Inc.,* 278 Ga. App. 1, 4 (2006). Here, the record demonstrates Cycle Tex violated the Grange Policy's notice provision, which was a condition precedent to coverage. As a condition precedent to coverage, the Policy required Cycle Tex to "see to it that" the Grange be "notified as soon as practicable of an "occurrence" or an offense which may result in a claim." [Ex. 1; *State Farm Fire & Cas. Co. v. LeBlanc*, 494 F. App'x 17, 21 (11th Cir. 2012) (holding, under Georgia law, a notice provision is a condition precedent to coverage when the provision contains the mandatory language "you must see to it."); *see also Forshee,,* 309 Ga. App. 621 (2011).

That an insured has not actually received a claim or been sued is immaterial to when the duty to notify is triggered. *See Canadyne-Ga. Corp. v. Cont'l Ins. Co.,* 999 F.2d 1547 (11th Cir. 1993) (rejecting insured's contention it was only required to provide notice after definitely learning that a potential claimant had sustained property damage or after having received a claim). Once triggered, Cycle Tex was required to provide notice as soon as reasonably possible. *Lankford v. State Farm Mut. Auto. Ins. Co.*, 307 Ga. App. 12, 14-15, (2010). Indeed, the timeliness requirement is the basic purpose why insurance companies are entitled to notice: "to enable the insurer to inform itself promptly concerning the accident, so that it may investigate the circumstances, prepare for a defense, if necessary or be advised whether it is prudent to settle any claim arising therefrom." *Kitt v. Shield Ins. Co.*, 240 Ga. 619, 621 (1978).

Cycle Tex is in default in the Declaratory Judgment Action. Perhaps the late-notice defense is better handled through a default judgment. Nonetheless, for the purposes of this summary judgment motion, Grange has submitted evidence that it was first notified of Cycle Tex's pollution in October of 2020. In Jared Johnson's interrogatory responses in this Declaratory Judgment Action, he notes that that Cycle Tex discharged PFAS in at least August 2012 and June 2016, as recorded in the analytical reports obtained from Dalton Utilities. He further contends that Dalton Utilities was communicating the results of its PFAS testing to Cycle Tex at least during the 2016 timeframe following the EPA's release of lifetime health advisories for PFOA and PFOS. [Response 8 to Plaintiff's First Continuing Interrogatories].

In Georgia, courts have held that a delay of as little as three months is unreasonable as a matter of law. *See Diggs v. S. Ins. Co., 172 Ga. App. 37 (1984); See also Canadyne-Ga. Corp.*, 999 F.2d 1547 (noting agreement with the holding in Diggs); *see also Bituminious Cas. Corp. v. J.B. Forrest & Sons, Inc.,* 132 Ga. App. 714, 209 S.E.2d 6 (1074) (four-month delay unreasonable as a matter of law); *Hathaway Development Co., Inc. v. Illinois Union Ins. Co.,* 274 Fed.Appx. 787 (2008) (delays of four, five, and eight months unreasonable*). Here, it is undisputed that Grange was first notified of the polluting events in October of 2020—over four years Jared Johnson alleges Cycle Tex was notified about the PFAS discharges.

As a result, the burden shifts to Cycle Tex to show "sufficient legal excuse" for failing to comply with the notice provision. *See DeBord v. Peoples Benefit Life Ins. Co.,* 565 F. Supp.2d 1350, 1354 (N.D.G. Ga. 2008). Cycle Tex is in default and no evidence exists in the record showing it has a justifiable excuse for providing late notice. Grange is entitled to summary judgment on this independent basis.

**3.     The Grange Policy Excludes Claims For Intentional Acts**

Both the body of the Grange Policy as well as the Manufacturers' Optimum Endorsement preclude coverage for expected or intended injuries. As noted Cycle Tex is in default. For its part, the Underlying Plaintiff admits that it is seeking to recover damages, in part, based on Cycle Tex's "intentional, willful, wanton, reckless, malicious or oppressive conduct." [Jarrod Johnson's Response 8 to Plaintiff's First Requests For Admissions]. In essence, part of the Underlying Plaintiff's claim is that Cycle Tex

intentionally polluted. Damages for such claims are excluded by the Grange Policy. *See Canal Indem. Co v. Bradley,* 2014 U.S. Dist LEXIS 41691 at 21 (N.D. Ga. 2014) (noting intentional tort claim was barred by the Policy Expected Or Intended Injury Exclusion).

## Conclusion

The Underlying Lawsuit is a claim for bodily injury damages, property damages, and clean up/treatment costs caused by pollution that occurred over the last decade. Injuries from pollution are plainly excluded under the unambiguous terms of the Grange Policy. Grange is entitled to summary judgment.

This 21st day of June, 2022.

**HAWKINS PARNELL & YOUNG, LLP**

303 Peachtree Street, N.E.
Suite 4000
Atlanta, Georgia 30308
Telephone: (404) 614-7400
Facsimile: (8550 889-4588
edavis@hpylaw.com

*/s/ Evelyn Fletcher Davis*
Evelyn Fletcher Davis
Georgia Bar No. 801498

*Attorneys for Plaintiff Grange Mutual Casualty Company*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEOR-
GIA ROME DIVISION**

| | | |
|---|---|---|
| GRANGE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | |
| v. | ) | NO. 4:21-cv-00147-AT |
| | ) | |
| CYCLE-TEX, INC. *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## <u>RULE 5.4 CERTIFICATE OF SERVICE</u>

Pursuant to Local Rule 5.4, the undersigned hereby certifies that on the 21st day of June, she served **GRANGE INSURANCE COMPANY'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** on lead counsel of record for Defendant Jarrod Johnson, via email, as follows:

> Ryan Lutz
> rlutz@corywatson.com
> Cory Watson, P.C.
> 2131 Magnolia Avenue South
> Birmingham, AL 35205

I also certify that this brief was prepared using Garamond font, 14 pt.

Dated this 21st day of June, 2022.

[Signature Page Follows]

**HAWKINS PARNELL & YOUNG, LLP**

303 Peachtree Street, N.E.
Suite 4000
Atlanta, Georgia 30308
Telephone: (404) 614-7400
Facsimile: (8550 889-4588
edavis@hpylaw.com

*/s/ Evelyn Fletcher Davis*
Evelyn Fletcher Davis
Georgia Bar No. 801498

*Attorneys for Plaintiff Grange Mutual Casualty Company*

**EXHIBIT 1 (filed as a separate volume)**

**EXHIBIT 2**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| GRANGE INSURANCE COMPANY, | |
|     Plaintiff, | |
| v. | Civil Action |
| CYCLE-TEX,INC., and JARROD JOHNSON, individually, And on behalf of a class of persons, similarly situated. | File No. 4:21-CV-00147-AT |

### DEFENDANT JARROD JOHNSON'S RESPONSES TO PLAINTIFF'S FIRST CONTINUING INTERROGATORIES TO JARROD JOHNSON

Pursuant to Fed. R. Civ. P. 33, Plaintiff provides these responses and objections to Plaintiff Grange Insurance Company's First Continuing Interrogatories to Jarrod Johnson. Johnson's responses are based upon his current information and as a result of reasonable searches and inquiries. As discovery is ongoing, Johnson reserves the right to amend and supplement his responses and production.

1.  **Please state the name, address, telephone number, employer, and title of each person answering or assisting in the answering of these Interrogatories.**

**RESPONSE:** Jarrod Johnson, who may be contacted through his undersigned counsel, is answering these Interrogatories with the assistance of undersigned counsel.

**2.    Please state when and how Cycle Tex, Inc. first provided notice of the Underlying Lawsuit to Plaintiff.**

**RESPONSE:** Plaintiff objects to this Interrogatory as seeking information that cannot reasonably be expected to be within Johnson's knowledge, custody, or control. Subject to said objection, beyond Plaintiff's allegation that it first received notice of the Underlying Lawsuit on October 19, 2020 in its complaint for declaratory judgment, Johnson has no knowledge as to when Cycle Tex in fact provided notice of the Underlying Lawsuit to Plaintiff.

**3.    Please provide a brief statement detailing the material facts which underpin your response to interrogatory two.**

**RESPONSE:** Please see Johnson's objection and response to Interrogatory No. 2.

**4.    Please state when and how Cycle Tex, Inc. first provided notice of the facts giving rise to the Underlying Lawsuit to Plaintiff.**

**RESPONSE:** Please see Johnson's objection and response to Interrogatory No. 2.

**5.    Please detail the material facts upon underpinning your response to interrogatory four.**

**RESPONSE:** Please see Johnson's objection and response to Interrogatory

No. 2.

6.     **Do you contend that Cycle-Tex, Inc. intentionally, willfully, wantonly, or recklessly released toxic chemicals into the Dalton Utilities Publicly Owned Treatment Works ("POTW")?**

**RESPONSE:** In addition to pleading that Cycle Tex, Inc. negligently released

toxic chemicals into the Dalton Utilities POTW, yes, Johnson pleads in the

alternative that it did so intentionally, willfully, wantonly, or recklessly.

7.     **Are you seeking to recover damages, in any form, in the Underlying Lawsuit from Cycle Tex, Inc. due to its release of toxic chemicals into the Dalton POTW?**

**RESPONSE:** Yes.

8.     **Please detail, how, when and from whom you contend that Cycle Tex, Inc. learned that it discharged toxic per- and polyfluoroalkyl substances ("PFAS") into the Dalton POTW.**

**RESPONSE:** Johnson contends that Cycle Tex discharged PFAS, including

the PFAS constituents PFDA, PFHxS, PFHxA, PFOS, PFOA, PFPA, PFBS, and

PFUnA, to the Dalton Utilities POTW in at least August 2012 and June 2016, as

recorded in the analytical reports obtained from Dalton Utilities.  Johnson contends

that Dalton Utilities was communicating the results of its PFAS testing to Cycle

Tex at least during the 2016 timeframe following the EPA's release of lifetime

health advisories for PFOA and PFOS.

**9.**    **Are you seeking to recover damages, in any form, in the Underlying Lawsuit from Cycle Tex, Inc. due to its release of per-and polyfluoroalkyl substances ("PFAS") into the Dalton POTW?**

**RESPONSE:** Yes.

**10.**    **Identify all persons known to you, other than expert witnesses, who are likely to have discoverable information relating to the facts, claims, or defenses alleged in this lawsuit (not the Underlying Lawsuit), and state the substance of the discoverable information known to each such person.**

**RESPONSE:** Johnson incorporates by reference Attachment A to his Initial Disclosures in this action. In addition, Johnson identifies those identified by Cycle Tex in its Initial Disclosures in the Underlying Lawsuit, provided verbatim below:

> Jarrod Johnson: As the named Plaintiff, Mr. Johnson has knowledge relating to the claims asserted by him, and others purportedly similarly situated, in this case. Mr. Johnson can be contacted through his counsel.

> Phillip Neff, Former Chief Executive Officer and Founder of Cycle-Tex: Mr. Neff founded Cycle-Tex in 1989 and ran the company until it closed in 2019. He has knowledge relating to Cycle-Tex's business operations and its manufacturing processes. Mr. Neff can be contacted through counsel for Cycle-Tex.

> Jerry Dolan, Former Chief Financial Officer: Mr. Dolan has knowledge relating to Cycle-Tex's business operations and its manufacturing processes. Mr. Dolan can be contacted through counsel for Cycle-Tex.

> Cycle-Tex incorporates by reference the names of individuals disclosed in Co-Defendants' and Plaintiff's witness lists.

**11.**    **Identify all persons or entities with whom you contend Cycle Tex, Inc. has communicated with about the Underlying Lawsuit before it was named as a party to the Underlying Lawsuit.**

**RESPONSE:** Johnson objects to this Interrogatory as it incorrectly assumes Johnson has specific or particular contentions regarding "persons or entities with whom . . . Cycle Tex, Inc. has communicated with about the Underlying Lawsuit before it was named as a party to the Underlying Lawsuit." Johnson further objects on grounds that this Interrogatory seeks information outside of Johnson's knowledge, custody, or control. Subject to said objections, Johnson's counsel in the Underlying Lawsuit sent Cycle Tex a Notice of Intent to File Citizen Suit Pursuant to the Federal Clean Water Act on June 25, 2020. Johnson is not currently aware of additional persons or entities with whom Cycle Tex communicated regarding the Underlying Lawsuit.

12. **Please state all facts supporting your contention that Cycle Tex, Inc. is entitled to coverage under the Policy for the Underlying Lawsuit.**

**RESPONSE:** Johnson has no contention regarding Cycle Tex's entitlement to coverage under the referenced policy.

13. **Identify each person whom you expect to call as an expert witness at trial and state, with particularity, the subject matter in which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each such opinion. For each such expert, please identify:**

   a. **The opinion that the expert will offer at the hearing;**

   b. **Any and all correspondence, documents, statements, reports, notes, drawings, diagrams, calculations, or other tangible things prepared by or for the expert;**

    **c.**      **The facts that form the basis for the expert's opinion;**

    **d.**      **Any documentary evidence that the expert intends to use in conjunction with his or her opinion;**

    **e.**      **Any prior matters in which the expert has provided expert testimony;**

    **f.**      **The expert's current resume, bio, or curriculum vitae; and**

    **g.**      **Any books, treatises, journals, articles or other writings that the expert has previously published.**

**RESPONSE:** At this time, Johnson has not identified any persons he may call as an expert witness at the trial of this case. To the extent he does, Johnson will make required disclosures in accordance with the Federal Rules of Civil Procedure and the Court's orders.

**14.**    **Please identify each document, which supports or otherwise relates to your responses to any of these Interrogatories or to any of your defenses, stating about each document the contention which it supports or otherwise relates to.**

**RESPONSE:** Johnson objects to this Interrogatory as overly broad, unduly burdensome, vague, and as compounding two separate interrogatories in violation of Fed. R. Civ. P. 33(a)(1), as it requests identification of each document that supports or in any way relates to any interrogatory response or defense. Subject to said objections, Johnson identifies all pleadings he filed in the Underlying Lawsuit; documents referenced in response to Plaintiff's Interrogatories; and documents produced in response to Plaintiff's Requests for Production of Documents.

**15.    For each of Plaintiff's Request for Admissions that Defendant fails to admit, please provide complete factual and legal support for your failure to admit the Request fully.**

**RESPONSE:** Johnson objects to this Interrogatory as overly broad, unduly burdensome, and compound in violation of Fed. R. Civ. P. 33(a)(1), which provides that "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Because this Interrogatory requests a separate response for each of 16 Requests for Admission that Johnson "fails to admit," its subparts exceed the number of interrogatories permitted by Rule 33(a)(1). *See, e.g., Colony Ins. Co. v. All Cities Enter., Inc*., 2019 WL 5850548, at *2 (M.D. Ga. June 11, 2019) (holding interrogatory requesting basis for each failure to admit a request for admission constituted separate interrogatories for purposes of Rule 33(a)(1)); *Commodores Entertainment Corp. v. McClary*, 2015 WL 12843874, at *3 (M.D. Fla. Nov. 6, 2015) (same); *Carper v. Twc Svss. Inc*., 2011 WL 13096631, at *4 (S.D. Fla. June 10, 2011) (same). Therefore, Johnson's response is limited to the remaining number of interrogatories permitted by Rule 33(a)(1):

Request No. 1 – Johnson's pleadings in the Underlying Lawsuit allege that Cycle Tex and other Defendants that are industrial users with Dalton Utilities have—in the alternative—intentionally, willfully, wantonly, recklessly, or

negligently discharged industrial wastewater into the Dalton Utilities POTW, which is applied to the Riverbend LAS by Dalton Utilities, and then passes through the LAS to the Conasauga River and downstream, connected waters, including the intake for City of Rome drinking water on the Oostanaula River. *See, e.g.*, *Johnson v. 3M Company, et al.*, Fourth Amended Complaint, ¶¶ 2, 67, 167-171. Johnson further alleges that Cycle Tex and other Defendants—in the alternative—knew or should have known of the toxic, persistent, and bioaccumulative nature of PFAS and that their discharges of industrial wastewater to the Dalton Utilities POTW would result in contamination of surface waters, including the Conasauga and Oostanaula Rivers and connected domestic water supplies, endangering consumers of these water supplies, the public, and the environment. *See id.* at ¶¶ 79-81, 170.

As explained in Johnson's objection to Request No. 1, Johnson interprets the phrase "polluted waterways with toxic chemicals" to mean the discharge of pollutants directly into the rivers and tributaries at issue in the Underlying Lawsuit, but not industrial wastewater streams through which Cycle Tex discharges industrial wastewater to Dalton Utilities. Because Johnson does not allege that Cycle Tex discharged or discharges toxic chemicals directly into the rivers and tributaries at issue in Johnson, but instead that it discharges and discharged industrial wastewater containing PFAS into the Dalton Utilities POTW, Johnson

denies this Request. Likewise, because Johnson does not allege that Cycle Tex

acted only intentionally, but also alleges in the alternative that Cycle Tex acted

willfully, wantonly, recklessly, or negligently, Johnson also denies this Request.

Request No. 2 – Johnson denies the portion of Request No. 2 asking him to

admit seeking damages against Cycle Tex based on his claim that Cycle Tex

"knowingly and intentionally discharged [PFOA and PFOS and related chemicals]

into the rivers and watersheds that supply drinking water to the City of Rome and

its water subscribers." Because Johnson does not allege that Cycle Tex discharged

or discharges PFOA and PFOS and related chemicals directly into the rivers and

watersheds that supply drinking water to the City of Rome and its water

subscribers, but instead that it discharges and discharged industrial wastewater

containing PFAS into the Dalton Utilities POTW, Johnson denies this portion of

Request No. 2. And because Johnson does not allege that Cycle Tex acted only

knowingly and intentionally, but also alleges in the alternative that Cycle Tex acted

willfully, wantonly, recklessly, or negligently, Johnson denies this portion of

Request No. 2.

Request No. 3 – Johnson denies the portion of Request No. 3 asking him to

admit seeking damages against Cycle Tex based on his claim that Cycle Tex

"knowingly and intentionally discharged [PFOA and PFOS and related chemicals]

into the rivers and watersheds that supply drinking water to the City of Rome."

Because Johnson does not allege that Cycle Tex discharged or discharges PFOA

and PFOS and related chemicals directly into the rivers and watersheds that supply

drinking water to the City of Rome, but instead that it discharges and discharged

industrial wastewater containing PFAS into the Dalton Utilities POTW, Johnson

denies this portion of Request No. 3. And because Johnson does not allege that

Cycle Tex acted only knowingly and intentionally, but also alleges in the

alternative that Cycle Tex acted willfully, wantonly, recklessly, or negligently,

Johnson further denies this portion of Request No. 3.

Request No. 4 – Request No. 4 asks Johnson to admit that Cycle Tex in fact

discharged PFOA, PFOS, and related chemicals into the rivers and watersheds that

supply drinking water to the City of Rome. Johnson does not allege or contend that

Cycle Tex discharged these or other chemicals directly into such rivers and

watersheds, and Johnson lacks information or knowledge to admit or deny such

facts. Johnson instead alleges that Cycle Tex discharges and discharged industrial

wastewater containing PFAS into the Dalton Utilities POTW.

Request No. 5 – As explained in response to Request No. 5, Johnson does

not possess any information or knowledge with which to admit or deny that Cycle

Tex sent written correspondence to Plaintiff concerning the Underlying Lawsuit during the referenced time period.

      <u>Request No. 6</u> – As explained in response to Request No. 6, Johnson does not possess any information or knowledge with which to admit or deny that Cycle Tex sent written correspondence to Plaintiff concerning the Underlying Lawsuit during the referenced time period.

      <u>Request No. 7</u> – As explained in response to Request No. 7, Johnson does not possess any information or knowledge with which to admit or deny that Cycle Tex sent written correspondence to Plaintiff concerning the Underlying Lawsuit during the referenced time period.

      <u>Request No. 8</u> – As explained in response to Request No. 8, Johnson does not possess any information or knowledge with which to admit or deny that Cycle Tex sent written correspondence to Plaintiff concerning the Underlying Lawsuit during the referenced time period.

      <u>Request No. 13</u> – Request No. 13 requests that Johnson "admit that PFAS are not a toxic substance [sic]." Because the toxicity of PFAS have been studied and evaluated over the course of many years and by many sources, Johnson objects to providing "complete factual and legal support" for his denial of this Request on grounds that providing all documentation of PFAS toxicity is overly broad, unduly

burdensome, and disproportionate to the needs of this case. Subject to said

objections, Johnson refers Plaintiff to the Toxicological Profile for Perfluoroalkyls

published by the Department of Health and Human Services, Agency for Toxic

Substances and Disease Registry (May 2021) and EPA's 2016 Drinking Water

Health Advisories for PFOS and PFOA, which Johnson is producing in this

lawsuit.

Request No. 14 – Request No. 14 asks Johnson to admit that Cycle Tex in

fact discharged PFAS into the rivers and watersheds that supply drinking water to

the City of Rome. Johnson does not allege or contend that Cycle Tex discharged

PFAS directly into such rivers and watersheds, and Johnson lacks information or

knowledge to admit or deny such facts. Johnson instead alleges that Cycle Tex

discharges and discharged industrial wastewater containing PFAS into the Dalton

Utilities POTW.

This the 29th day of April, 2022

As to objections,

*/s Brett C. Thompson*
Brett C. Thompson, Esq. (*phv*)
Hirlye R. "Ryan" Lutz, III, Esq. (*phv*)
F. Jerome Tapley, Esq. (*phv*)
CORY WATSON, P.C.
2131 Magnolia Avenue South
Birmingham, Alabama 35205

bthompson@corywatson.com
rlutz@corywatson.com
jtapley@corywatson.com
Telephone: (800) 852-6299
Fax: (205) 324-7896

Ryals D. Stone (GA Bar No. 831761)
William S. Stone (GA Bar No. 684636)
THE STONE LAW GROUP –TRIAL LAWYERS, LLC
5229 Roswell Road NE
Atlanta, Georgia 30342
Telephone: (404) 239-0305
Fax: (404) 445-8003
ryals@stonelaw.com
billstone@stonelaw.com

***Attorneys for Defendant Jarrod Johnson***

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Northern District of Georgia Civil Local Rule 7.1.D., the undersigned counsel certifies that the foregoing filing is prepared in Times New Roman 14-point font, as mandated in Local Rule 5.1.C.

This 29th day of April, 2022.

*/s/ Brett C. Thompson*

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that a copy of the foregoing has been filed electronically with the Clerk of Court by using the CM/ECF system which will automatically email all counsel of record.

This 29th day of April, 2022.

*/s/ Brett C. Thompson*

**EXHIBIT 3**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GRANGE INSURANCE COMPANY,

     Plaintiff,

v.

CYCLE-TEX, INC., and
JARROD JOHNSON, individually,
And on behalf of a class of persons,
similarly situated.

Civil Action

File No. 4:21-CV-00147-AT

**DEFENDANT JARROD JOHNSON'S RESPONSES TO PLAINTIFF'S
FIRST REQUESTS FOR ADMISSIONS TO JARROD JOHNSON**

     Pursuant to Fed. R. Civ. P. 36, Defendant Jarrod Johnson provides these responses and objections to Plaintiff Grange Insurance Company's First Request for Admissions to Jarrod Johnson. Plaintiff's responses are based upon his current information and as a result of reasonable searches and inquiries. As discovery is ongoing, Plaintiff reserves the right to amend and supplement his responses.

1.    **Please admit that you are seeking damages in the Underlying Lawsuit based on your claim that Cycle Tex, Inc. intentionally polluted waterways with toxic chemicals.**

     **RESPONSE**: Johnson objects to this Request because the phrase "polluted waterways with toxic chemicals" is vague and ambiguous. Johnson interprets this

phrase to mean the discharge of pollutants into the Conasauga, Oostanaula, Coosa, and Etowah Rivers and/or related tributaries at issue in his pleadings in the Underlying Lawsuit and not to include waste streams by which Johnson alleges Cycle Tex and other Defendants discharged industrial wastewater to the Dalton Utilities POTW. Subject to this interpretation, denied as phrased by Plaintiff.

2. **Please admit that you are seeking damages in the Underlying Lawsuit based on your claim that Cycle Tex, Inc. has long been aware of the toxicity of PFOA and PFOS and related chemicals, but that it allegedly knowingly and intentionally discharged those chemicals into the rivers and watersheds that supply drinking water to the City of Rome and its water subscribers.**

   **RESPONSE:** Johnson admits that he is seeking damages based, in part, on his allegation that Cycle Tex and other Defendants knew or should have known of the toxicity of PFAS, including PFOA and PFOS. Johnson denies the remainder of this Request as phrased by Plaintiff.

3. **Please admit that you are seeking damages in the Underlying Lawsuit on the basis that Cycle Tex. Inc. was aware of the toxicity of PFOA and PFOS and related chemicals, but that it knowingly and intentionally discharged those chemicals into the into the rivers and watersheds that supply drinking water to the City of Rome.**

   **RESPONSE:** Johnson admits that he is seeking damages based, in part, on his allegation that Cycle Tex and other Defendants knew or should have known of

the toxicity of PFAS, including PFOA and PFOS. Johnson denies the remainder of the Request as phrased by Plaintiff.

**4.     Please admit that more than six months before November 26, 2019, Cycle Tex. Inc. was aware of the toxicity of PFOA and PFOS and related chemicals, and that it was also aware that it was discharging those chemicals into the into the rivers and watersheds that supply drinking water to the City of Rome.**

**RESPONSE:** Johnson admits his allegation that Cycle Tex knew or should have known of the toxicity of PFAS, including PFOA and PFOS, and Johnson admits that he contends Cycle Tex knew or should have known this information more than six months before November 26, 2019. Following reasonable inquiry, Johnson lacks sufficient knowledge to admit or deny that Cycle Tex was discharging PFAS directly into the rivers and watersheds that supply drinking water to the City of Rome.

**5.     Please admit that Cycle Tex, Inc. never sent any written correspondence— including but not limited to a letter, a facsimile, or an e-mail—to the Plaintiff about the Underlying Lawsuit or any facts giving rise to the Underlying Lawsuit in the six months prior to November 26, 2019.**

**RESPONSE:** Johnson objects to this Request as seeking admission or denial of facts or information not in Johnson's knowledge, custody, or control. Subject to said objections, and following a reasonable inquiry, Johnson lacks sufficient knowledge to admit or deny this Request.

3

6.      Please admit that Cycle Tex, Inc. never sent any written correspondence— including but not limited to a letter, a facsimile, or an e-mail—to the Plaintiff about the Underlying Lawsuit or any facts giving rise to the Underlying Lawsuit in the twelve months prior to November 26, 2019.

RESPONSE: Johnson objects to this Request as seeking admission or denial of facts or information not in Johnson's knowledge, custody, or control. Subject to said objections, and following a reasonable inquiry, Johnson lacks sufficient knowledge to admit or deny this Request.

7.      Please admit that Cycle Tex, Inc. never informed the Plaintiff about the Underlying Lawsuit or the facts giving rise to the Underlying Lawsuit in the twelve months prior to August 27, 2020.

RESPONSE: Johnson objects to this Request as seeking admission or denial of facts or information not in Johnson's knowledge, custody, or control. Subject to said objections, and following a reasonable inquiry, Johnson lacks sufficient knowledge to admit or deny this Request.

8.      Please admit that Grange first received notice of the incidents underpinning the factual claims being asserted against Cycle-Tex in the Underlying Lawsuit on October 19, 2020.

RESPONSE: Johnson objects to this Request as seeking admission or denial of facts or information not in Johnson's knowledge, custody, or control. Subject to said objections, and following a reasonable inquiry, Johnson lacks sufficient knowledge to admit or deny this Request.

4

9.     **Please admit that you are seeking to recover damages from Cycle Tex, Inc. arising out of its intentional, willful, wanton, reckless, and negligent discharge of polyfluoroalkyl substances from its manufacturing processes and facilities and into the Dalton Utilities Publicly Owned Treatment Works.**

**RESPONSE:** Johnson admits that he is seeking to recover damages from Cycle Tex, based, in part, on its alleged intentional, willful, wanton, reckless, or negligent discharge of per- and/or polyfluoroalkyl substances to the Dalton Utilities POTW.

10.    **Please admit that you are seeking to recover damages from Cycle Tex, Inc. in the Underlying Lawsuit for its intentional, willful, wanton, reckless, malicious and oppressive misconduct.**

**RESPONSE:** Johnson admits that he is seeking to recover damages from Cycle Tex in the Underlying Lawsuit, in part, for its intentional, willful, wanton, reckless, or negligent conduct and seeks punitive damages for any conduct that was willful, malicious, fraudulent, wanton, oppressive, and/or with conscious indifference to the consequences.

11.    **Please admit that you are seeking to recover damages from Cycle Tex, Inc. in the Underlying Lawsuit because it allegedly acted in bad faith and with conscious indifference.**

**RESPONSE:** Admitted as alleged in the Underlying Lawsuit.

12.    **Please admit that PFAS are a toxic substance.**

**RESPONSE:** Admitted.

13.    **Please admit that PFAS are not a toxic substance.**

5

**RESPONSE:** Plaintiff denies that PFAS are not toxic substances.

14.   **Please admit that Cycle Tex, Inc. discharged PFAS into the rivers and watersheds that supply drinking water to the City of Rome and its water subscribers.**

**RESPONSE:** Johnson alleges that Cycle Tex discharged industrial wastewater containing PFAS into the Dalton Utilities POTW. Following a reasonable inquiry, Johnson lacks sufficient information to admit or deny that Cycle Tex discharged PFAS directly into the rivers and watersheds that supply drinking water into the City of Rome and its water subscribers.

15.   **Please admit that Cycle Tex, Inc. did not discharge PFAS into the rivers and watersheds that supply drinking water to the City of Rome and its water subscribers.**

**RESPONSE:** Johnson alleges that Cycle Tex discharged industrial wastewater containing PFAS into the Dalton Utilities POTW. Following a reasonable inquiry, Johnson lacks sufficient information to admit or deny that Cycle Tex discharged PFAS directly into the rivers and watersheds that supply drinking water into the City of Rome and its water subscribers.

16.   **Please admit that Cycle Tex, Inc. intentionally discharged PFAS into the rivers and watersheds that supply drinking water to the City of Rome and its water subscribers.**

**RESPONSE:** Johnson alleges that Cycle Tex intentionally, willfully, wantonly, recklessly, or negligently discharged industrial wastewater containing

PFAS into the Dalton Utilities POTW. Following a reasonable inquiry, Johnson lacks sufficient information to admit or deny that Cycle Tex discharged PFAS directly into the rivers and watersheds that supply drinking water into the City of Rome and its water subscribers, intentionally or otherwise.

17.   **Please admit that Cycle Tex, Inc. did not intentionally discharge PFAS into the rivers and watersheds that supply drinking water to the City of Rome and its water subscribers.**

**RESPONSE:** Johnson alleges that Cycle Tex intentionally, willfully, wantonly, recklessly, or negligently discharged industrial wastewater containing PFAS into the Dalton Utilities POTW. Following a reasonable inquiry, Johnson lacks sufficient information to admit or deny that Cycle Tex discharged PFAS directly into the rivers and watersheds that supply drinking water into the City of Rome and its water subscribers, intentionally or otherwise.

18.   **Please admit that you are seeking damages in the Underlying Lawsuit based on Cycle Tex, Inc.'s discharge of PFAS into the rivers and watersheds that supply drinking water to the City of Rome and its water subscribers.**

**RESPONSE:** Denied as phrased by Plaintiff.

19.   **Please admit that you are not seeking damages in the Underlying Lawsuit based on Cycle Tex, Inc.'s discharge of PFAS into the rivers and watersheds that supply drinking water to the City of Rome and its water subscribers.**

**RESPONSE:** Johnson admits he is not seeking damages in the Underlying

Lawsuit based on Cycle Tex's discharge of PFAS directly into the rivers and watersheds that supply drinking water to the City of Rome and its water subscribers.

**20.    Please admit that you are seeking damages in the Underlying Lawsuit based on Cycle Tex, Inc.'s discharge of toxic chemical(s) into the rivers and watersheds that supply drinking water to the City of Rome and its water subscribers.**

**RESPONSE**: Denied as phrased by Plaintiff.

**21.    Please admit that you are not seeking damages in the Underlying Lawsuit based on Cycle Tex, Inc.'s discharge of toxic chemical(s) into the rivers and watersheds that supply drinking water to the City of Rome and its water subscribers.**

**RESPONSE:** Johnson admits he is not seeking damages in the Underlying Lawsuit based on Cycle Tex's discharge of toxic chemicals directly into the rivers and watersheds that supply drinking water to the City of Rome and its water subscribers.

**22.    Please admit that you are seeking damages in the Underlying Lawsuit based on Cycle Tex, Inc.'s intentional discharge of toxic chemical(s) into the rivers and watersheds that supply drinking water to the City of Rome and its water subscribers.**

**RESPONSE:** Denied as phrased by Plaintiff.

**23.    Please admit that you are not seeking damages in the Underlying Lawsuit based on Cycle Tex, Inc.'s intentional discharge of toxic chemical(s) into the rivers and watersheds that supply drinking water to the City of Rome and its water subscribers.**

**RESPONSE:** Johnson admits he is not seeking damages in the Underlying Lawsuit based on Cycle Tex's intentional discharge of toxic chemicals directly into

the rivers and watersheds that supply drinking water to the City of Rome and its

water subscribers.

This the 29th day of April, 2022

As to objections,

*/s Brett C. Thompson*
Brett C. Thompson, Esq. (*phv*)
Hirlye R. "Ryan" Lutz, III, Esq. (*phv*)
F. Jerome Tapley, Esq. (*phv*)
CORY WATSON, P.C.
2131 Magnolia Avenue South
Birmingham, Alabama 35205
bthompson@corywatson.com
rlutz@corywatson.com
jtapley@corywatson.com
Telephone: (800) 852-6299
Fax: (205) 324-7896

Ryals D. Stone (GA Bar No. 831761)
William S. Stone (GA Bar No. 684636)
THE STONE LAW GROUP –TRIAL LAWYERS, LLC
5229 Roswell Road NE
Atlanta, Georgia 30342
Telephone: (404) 239-0305
Fax: (404) 445-8003
ryals@stonelaw.com
billstone@stonelaw.com

**Attorneys for Defendant Jarrod Johnson**

9

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Northern District of Georgia Civil Local Rule 7.1.D., the undersigned counsel certifies that the foregoing filing is prepared in Times New Roman 14-point font, as mandated in Local Rule 5.1.C.

This 29th day of April, 2022.

*/s/ Brett C. Thompson*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing has been filed electronically with the Clerk of Court by using the CM/ECF system which will automatically email all counsel of record.

This 29th day of April, 2022.

*/s/ Brett C. Thompson*