# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

**GRANGE INSURANCE COMPANY**    :
                                  :

           **Plaintiff,**            :
                                    :

            **vs.**                :         **Civil Action File**
                                   :        **No. 4:21-CV-00147-**

**CYCLE-TEX, INC., and JARROD**    :            **AT**
**JOHNSON, individually, and on**    :
**Behalf of a Class of persons similarly**   :
**situated,**                              :
                                   :

           **Defendants.**         :

Exhibit 4 to Plaintiff's Motion for Summary Judgment

**AFFIDAVIT**

STATE OF OHIO    )
            ) ss
COUNTY OF FRANKLIN  )

First being duly cautioned and sworn, _____ states as follows:

1. The matters in this Affidavit are made on my personal knowledge and review of business records and I am competent to testify to the matters stated in this Affidavit.

2. I am employed by Grange Insurance Company as a/an _____ and that in such capacity I have access to certain business records of that Company, including insurance records concerning the policy of insurance issued to _____.

3. This information is being presented in response to a request regarding Claim Number: _____.

4. After examining the records concerning said insured, _____. has issued to said insured _____. Policy number _____.

5. I have assembled a copy of the referenced policy which is attached hereto and which shows the policy coverages and amounts thereof in effect on _____.

6. Further affiant saith naught.

_____

Subscribed and sworn to in my presence at Columbus, Ohio, this _____ day of _____, 20__.

_____<br>**Notary Public**

AFFIDAVIT

STATE OF OHIO                    )
                                   ) ss
COUNTY OF FRANKLIN    )

First being duly cautioned and sworn, _____ states as follows:

1.     The matters in this Affidavit are made on my personal knowledge and review of business records and I am competent to testify to the matters stated in this Affidavit.

2.     I am employed by Grange Insurance Company as a/an _____ and that in such capacity I have access to certain business records of that Company, including insurance records concerning the policy of insurance issued to _____.

3.     This information is being presented in response to a request regarding Claim Number: _____.

4.     After examining the records concerning said insured, _____. has issued to said insured _____. Policy number _____.

5.     I have assembled a copy of the referenced policy which is attached hereto and which shows the policy coverages and amounts thereof in effect on _____.

6.     Further affiant saith naught.

                                                             _____

Subscribed and sworn to in my presence at Columbus, Ohio, this _____ day of _____, 20__.

                                                             _____
                                                             **Notary Public**

AFFIDAVIT

STATE OF OHIO        )
                              ) ss
COUNTY OF FRANKLIN   )

First being duly cautioned and sworn, _____ states as follows:

1. The matters in this Affidavit are made on my personal knowledge and review of business records and I am competent to testify to the matters stated in this Affidavit.

2. I am employed by Grange Insurance Company as a/an _____ and that in such capacity I have access to certain business records of that Company, including insurance records concerning the policy of insurance issued to _____.

3. This information is being presented in response to a request regarding Claim Number: _____.

4. After examining the records concerning said insured, _____. has issued to said insured _____. Policy number _____.

5. I have assembled a copy of the referenced policy which is attached hereto and which shows the policy coverages and amounts thereof in effect on _____.

6. Further affiant saith naught.

_____

Subscribed and sworn to in my presence at Columbus, Ohio, this _____ day of _____, 20__.

_____
**Notary Public**

**AFFIDAVIT**

STATE OF OHIO             )

                                       ) ss

COUNTY OF FRANKLIN   )

First being duly cautioned and sworn, _____ states as follows:

1.     The matters in this Affidavit are made on my personal knowledge and review of business records and I am competent to testify to the matters stated in this Affidavit.

2.     I am employed by Grange Insurance Company as a/an _____ and that in such capacity I have access to certain business records of that Company, including insurance records concerning the policy of insurance issued to _____.

3.     This information is being presented in response to a request regarding Claim Number: _____.

4.     After examining the records concerning said insured, _____. has issued to said insured _____. Policy number _____.

5.     I have assembled a copy of the referenced policy which is attached hereto and which shows the policy coverages and amounts thereof in effect on _____.

6.     Further affiant saith naught.

_____

Subscribed and sworn to in my presence at Columbus, Ohio, this _____ day of _____, 20__.

_____
**Notary Public**

# AFFIDAVIT

STATE OF OHIO          )
                                      ) ss
COUNTY OF FRANKLIN   )

First being duly cautioned and sworn, _____ states as follows:

1.      The matters in this Affidavit are made on my personal knowledge and review of business records and I am competent to testify to the matters stated in this Affidavit.

2.      I am employed by Grange Insurance Company as a/an _____ and that in such capacity I have access to certain business records of that Company, including insurance records concerning the policy of insurance issued to _____.

3.      This information is being presented in response to a request regarding Claim Number: _____.

4.      After examining the records concerning said insured, _____. has issued to said insured _____. Policy number _____.

5.      I have assembled a copy of the referenced policy which is attached hereto and which shows the policy coverages and amounts thereof in effect on _____.

6.      Further affiant saith naught.

_____

Subscribed and sworn to in my presence at Columbus, Ohio, this _____ day of _____, 20__.

_____
**Notary Public**

# AFFIDAVIT

STATE OF OHIO                    )
                                 ) ss
COUNTY OF FRANKLIN    )

First being duly cautioned and sworn, _____ states as follows:

1.    The matters in this Affidavit are made on my personal knowledge and review of business records and I am competent to testify to the matters stated in this Affidavit.

2.    I am employed by Grange Insurance Company as a/an _____ and that in such capacity I have access to certain business records of that Company, including insurance records concerning the policy of insurance issued to _____.

3.    This information is being presented in response to a request regarding Claim Number: _____.

4.    After examining the records concerning said insured, _____. has issued to said insured _____. Policy number _____.

5.    I have assembled a copy of the referenced policy which is attached hereto and which shows the policy coverages and amounts thereof in effect on _____.

6.    Further affiant saith naught.

_____

Subscribed and sworn to in my presence at Columbus, Ohio, this _____ day of _____, 20__.

_____
**Notary Public**

# AFFIDAVIT

STATE OF OHIO           )
                                  ) ss
COUNTY OF FRANKLIN   )

First being duly cautioned and sworn, _____ states as follows:

1. The matters in this Affidavit are made on my personal knowledge and review of business records and I am competent to testify to the matters stated in this Affidavit.

2. I am employed by Grange Insurance Company as a/an _____ and that in such capacity I have access to certain business records of that Company, including insurance records concerning the policy of insurance issued to _____.

3. This information is being presented in response to a request regarding Claim Number: _____.

4. After examining the records concerning said insured, _____. has issued to said insured _____. Policy number _____.

5. I have assembled a copy of the referenced policy which is attached hereto and which shows the policy coverages and amounts thereof in effect on _____.

6. Further affiant saith naught.

_____

Subscribed and sworn to in my presence at Columbus, Ohio, this _____ day of _____, 20__.


_____
**Notary Public**

**AFFIDAVIT**

STATE OF OHIO           )
                              ) ss
COUNTY OF FRANKLIN   )

First being duly cautioned and sworn, _____ states as follows:

1. The matters in this Affidavit are made on my personal knowledge and review of business records and I am competent to testify to the matters stated in this Affidavit.

2. I am employed by Grange Insurance Company as a/an _____ and that in such capacity I have access to certain business records of that Company, including insurance records concerning the policy of insurance issued to _____.

3. This information is being presented in response to a request regarding Claim Number: _____.

4. After examining the records concerning said insured, _____. has issued to said insured _____. Policy number _____.

5. I have assembled a copy of the referenced policy which is attached hereto and which shows the policy coverages and amounts thereof in effect on _____.

6. Further affiant saith naught.

_____

Subscribed and sworn to in my presence at Columbus, Ohio, this _____ day of _____, 20__.

_____
**Notary Public**

# AFFIDAVIT

STATE OF OHIO                )
                             ) ss
COUNTY OF FRANKLIN    )


First being duly cautioned and sworn, _____ states as follows:

1.    The matters in this Affidavit are made on my personal knowledge and review of business records and I am competent to testify to the matters stated in this Affidavit.

2.    I am employed by Grange Insurance Company as a/an _____ and that in such capacity I have access to certain business records of that Company, including insurance records concerning the policy of insurance issued to _____.

3.    This information is being presented in response to a request regarding Claim Number: _____.

4.    After examining the records concerning said insured, _____. has issued to said insured _____. Policy number _____.

5.    I have assembled a copy of the referenced policy which is attached hereto and which shows the policy coverages and amounts thereof in effect on _____.

6.    Further affiant saith naught.


                                              _____


Subscribed and sworn to in my presence at Columbus, Ohio, this _____ day of _____, 20__.


                                              _____
                                              **Notary Public**

AFFIDAVIT

STATE OF OHIO    )
          ) ss
COUNTY OF FRANKLIN  )

First being duly cautioned and sworn, _____ states as follows:

1. The matters in this Affidavit are made on my personal knowledge and review of business records and I am competent to testify to the matters stated in this Affidavit.

2. I am employed by Grange Insurance Company as a/an _____ and that in such capacity I have access to certain business records of that Company, including insurance records concerning the policy of insurance issued to _____.

3. This information is being presented in response to a request regarding Claim Number: _____.

4. After examining the records concerning said insured, _____. has issued to said insured _____. Policy number _____.

5. I have assembled a copy of the referenced policy which is attached hereto and which shows the policy coverages and amounts thereof in effect on _____.

6. Further affiant saith naught.

_____

Subscribed and sworn to in my presence at Columbus, Ohio, this _____ day of _____, 20__.

_____
**Notary Public**

Grange   Mutual   Casualty   Company
P.O.   Box   1218
Columbus,    Ohio    43216-1218

# COMMERCIAL POLICY CHANGE
## ENDORSEMENT IL 16

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured/Mailing Address: | Agency Name/Address/Code Number: |
|---|---|
| CYCLE-TEX INC<br>702 S THORNTON AVE STE 201<br>DALTON GA  30720 | ADVANCED INSURANCE STRATEGIES<br>300 W EMERY STREET SUITE 205<br>PO BOX 709<br>DALTON, GA                    30722<br>10-01314-00 |

| Policy Number:    Mod: | Effective Date of Change: | | End No. |
|---|---|---|---|
| CUP2083061-00 | 04/20/15 | at 12:01 AM Standard Time | 01 |

The following item(s):

- [ ] Insured's Name
- [X] Insured's Mailing Address
- [ ] Insured's Legal Entity/Business of Insured
- [ ] Premium Determination
- [ ] Additional Interested Parties
- [ ] Coverage Forms and Endorsements
- [ ] Limits/Exposures
- [ ] Deductibles
- [ ] Covered Property/Location Description
- [ ] Classification/Class Codes
- [ ] Rates
- [ ] Vehicle(s)

Is (are) changed to read [See Additional Page(s)]:

```
AMENDING MAILING ADDRESS TO READ:
702 S THORNTON AVE STE 201, DALTON GA 30702
```

_____
Authorized Representative

Annual Premium Change: _____0.00_____

Issue Date:  05/01/15                    Pro Rata Premium Change: _____0.00_____

Acct. No:   0000191650                   Premium does not include service charges.

Applicable to the State of Kentucky

Includes Kentucky Municipal Tax: _____

Includes Kentucky Surcharges Required by KRS 136.392: _____

AK967 (12-2009)

*AGENTCOPY*

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA          30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named   Insured   and   Address**

| | |
|---|---|
| **Policy   Type:** *Commercial Umbrella* | |

**Reason   Issued:** *Policy Change*
Policy   **Number:** *CUP 2083061-00*
**Renewal**   of:
**Issue Date:** *05/01/15*
**Change   Effective   Date:** *04/20/15*
**Acct.   No:** *0000191650*

**CYCLE-TEX INC**
**702 S THORNTON AVE STE 201**
**DALTON GA   30720**

---

### COMMERCIAL   LIABILITY UMBRELLA DECLARATIONS

**Policy Period: From 07/01/14   To 07/01/15**   12:01 a.m. at the address of the Named Insured as shown above.

**Form   of   Business:**   *CORPORATION*
**Business   Description:**   *PLASTICS   MFG*

IN RETURN FOR THE PAYMENT   OF PREMIUM,   AND   SUBJECT TO ALL THE TERMS OF THIS POLICY,   WE AGREE WITH YOU   TO PROVIDE   THE INSURANCE   STATED   IN THIS POLICY.

**Commercial   Liability Umbrella   Limits Of Insurance**

$5,000,000 Each   Occurrence   Limit
$5,000,000 Personal   and   Advertising   Injury Limit
$5,000,000 Aggregate   Limit (except   with respect   to "covered autos")

**Retained   Limit**

See Schedule   of Underlying   Insurance

None          Self-Insured   Retention   applicable   to each "occurrence"   or offense   which   is covered   by this insurance but not covered   by "underlying   insurance"

**Advance   Premium:**                                                                               $9,835.00

**Certified   Acts   of Terrorism:**                                                                 $98.00

Your Estimated   Total Policy Premium   Is   **$9,933.00**

Premium   does not include   service   charges.
**THIS IS NOT A BILL.** Any outstanding   balance due will be billed at a later date.

THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S), SCHEDULE(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.

## COMMERCIAL   LIABILITY UMBRELLA DECLARATIONS
## SCHEDULE OF UNDERLYING  INSURANCE

**Policy   Number:**   *CUP 2083061-00*                    **Renewal   of:**

**Named   Insured:**   **CYCLE-TEX INC**                **Policy Period:  From** **07/01/14**    **To**  **07/01/15**
                                                                                **Issue   Date:**   *05/01/15*
                                                                                **Change   Effective   Date:**  *04/20/15*
                                                                                **Reason   Issued:**   *Policy Change*

**YOUR  POLICY  REQUIRES  THAT  YOU  KEEP THE UNDERLYING   INSURANCE  COVERAGES  AND  LIMITS  OF INSURANCE
SHOWN  IN  THIS SCHEDULE  IN  FULL EFFECT THROUGHOUT  THE POLICY  PERIOD.  REFER TO THE MAINTENANCE   OF
UNDERLYING   INSURANCE  CONDITION.**

```
Type of Insurance:        Commercial  General  Liability
Carrier:                  Grange Mutual Casualty Company
Policy Number:            CPP 2083060-00
Policy Period:            Effective Date:  07/01/2014  Expiration Date:  07/01/2015
Limits of Insurance:

    $1,000,000   Each Occurrence
    $1,000,000   Personal and Advertising Injury
    $2,000,000   General Aggregate Limit (Other than Products/Completed Operations)
    $2,000,000   Aggregate - Products/Completed Operations

Type of Insurance:        Employee  Benefits  Liability
Carrier:                  Grange Mutual Casualty Company
Policy Number:            CPP 2083060-00
Policy Period:            Effective Date:  07/01/2014  Expiration Date:  07/01/2015
Limits of Insurance:

    $1,000,000   Each Claim
    $3,000,000   Aggregate Limit

Type of Insurance:        Employers  Liability
Carrier:                  GUARD INSURANCE
Policy Number:            R2WC501993
Policy Period:            Effective Date:  07/01/2014  Expiration Date:  07/01/2015
Limits of Insurance:

    $1,000,000   Bodily Injury by Accident - Each Accident
    $1,000,000   Bodily Injury by Disease - Policy Limit
    $1,000,000   Bodily Injury by Disease - Each Employee

Type of Insurance:        Auto Liability
Carrier:                  Grange Mutual Casualty Company
Policy Number:            CPP 2083060-00
Policy Period:            Effective Date:  07/01/2014  Expiration Date:  07/01/2015
Limits of Insurance:

    $1,000,000   Per Accident Combined Single Limits
```

**Endorsement**

```
CU 21 27  (12/04)    Fungi Or Bacteria Exclusion
CU 21 25  (12/01)    Total Pollution Exclusion Endorsement
CU 00 01  (12/04)    Commercial Liability Umbrella Coverage Form
CU 00 03  (03/05)    Exclusion - Violation Of Statutes That Govern E-Mails...
CU 02     (12/06)    Revised Coverage Provisions
CU 21 23  (02/02)    Nuclear Energy Liability Exclusion Endorsement
CU 24 37  (12/05)    Non-Concurrency Of Policy Periods - Retained Limit
CU 46     (02/09)    Recording And Distribution Of Material Or Information...
CU 85     (12/06)    Lead Exclusion
IL 00 17  (11/98)    Common Policy Conditions
IL 43     (05/11)    Common Policy Conditions Changes
CU 03     (12/06)    Redefined Coverage Territory
CU 01 48  (09/00)    Georgia Changes
CU 02 22  (09/00)    Georgia Changes - Cancellation And Nonrenewal
CU 21 30  (01/08)    Cap On Losses From Certified Acts Of Terrorism
IL 09 85  (01/08)    Disclosure Pursuant To Terrorism Risk Insurance Act
CU 20     (12/06)    Excess Employee Benefits Liability Coverage (Claims Made
CU 21 18  (09/00)    Exclusion - Year 2000 Computer-Related And Other Elec...
CU 27 00  (12/04)    Underlying Claims-Made Coverage
```

```
            *  Indicates Added Form
```

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

# COMMERCIAL POLICY CHANGE
## ENDORSEMENT IL 16

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured/Mailing Address | Agency Name/Address/Code Number |
|---|---|
| CYCLE-TEX INC<br>702 S THORNTON AVE STE 201<br>DALTON GA 30720 | ADVANCED INSURANCE STRATEGIES<br>300 W EMERY STREET SUITE 205<br>PO BOX 709<br>DALTON, GA          30722<br>10-01314-00 |

| Policy Number     Mod | Effective Date of Change | End No |
|---|---|---|
| CUP2083061-02 | 07/01/16        at 12 01 AM Standard Time | 01 |

The following item(s):

[ ] Insured's Name

[ ] Insured's Mailing Address

[ ] Insured's Legal Entity/Business of Insured

[ ] Premium Determination

[ ] Additional Interested Parties

[X] Coverage Forms and Endorsements

[ ] Limits/Exposures

[ ] Deductibles

[ ] Covered Property/Location Description

[ ] Classification/Class Codes

[ ] Rates

[ ] Vehicle(s)

Is (are) changed to read [See Additional Page(s)]:

APPLICABLE TO COMMERCIAL UMBRELLA COVERAGE FORM,

UPDATING THE WORKERS COMPENSATION POLICY NUMBER ON THE
UNDERLYING SCHEDULE OF INSURANCE TO:

BERKSHIRE HATHAWAY HOMESTATE INS CO
CYWC711317

_____
Authorized Representative

Annual Premium Change: _____ 0.00
Pro Rata Premium Change: _____ 0.00
Issue Date: 07/07/16
Acct. No:   0000191650        Premium does not include service charges.
Applicable to the State of Kentucky
Includes Kentucky Municipal Tax: _____
Includes Kentucky Surcharges Required by KRS 136.392: _____

*AGENT COPY*

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA        30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@ais-ins.net
www.advancedinsurancestrategies.com

**Grange Mutual Casualty Company**
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named Insured and Address**

---

| **Policy Type:** *Commercial Umbrella* |
| --- |

**Reason Issued:** *Policy Change -*
**Policy Number:** *CUP 2083061-02*
**Renewal of:** *CUP 2083061-01*
**Issue Date:** *07/07/16*
**Change Effective Date:** *07/01/16*
**Acct. No:** *0000191650*

CYCLE-TEX INC
702 S THORNTON AVE STE 201
DALTON GA   30720

---

## COMMERCIAL LIABILITY UMBRELLA DECLARATIONS

**Policy Period: From 07/01/16    To 07/01/17**    12:01 a.m. at the address of the Named Insured as shown above.

**Form of Business:**     CORPORATION
**Business Description:** *PLASTIC MFG*

**IN RETURN FOR THE PAYMENT OF PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE STATED IN THIS POLICY.**

**Commercial Liability Umbrella Limits Of Insurance**

    $5,000,000 Each Occurrence Limit
    $5,000,000 Personal and Advertising Injury Limit
    $5,000,000 Aggregate Limit (except with respect to "covered autos")

**Retained Limit**

    See Schedule of Underlying Insurance

    None      Self-Insured Retention applicable to each "occurrence" or offense which is covered by this insurance
              but not covered by "underlying insurance"

**Advance Premium:**                                                                  $13,275.00

**Certified Acts of Terrorism:**                                                       $133.00

Your Estimated Total Policy Premium Is   **$13,408.00**
Premium does not include service charges.
**THIS IS NOT A BILL.** Any outstanding balance due will be billed at a later date.

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S), SCHEDULE(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

## COMMERCIAL LIABILITY UMBRELLA DECLARATIONS
## SCHEDULE OF UNDERLYING INSURANCE

**Policy Number:** *CUP 2083061-02*

**Renewal of:** *CUP 2083061-01*

**Named Insured:** CYCLE-TEX INC

**Policy Period: From 07/01/16   To 07/01/17**
**Issue Date:** *07/07/16*
**Change Effective Date:** *07/01/16*
**Reason Issued:** *Policy Change -*

**YOUR POLICY REQUIRES THAT YOU KEEP THE UNDERLYING INSURANCE COVERAGES AND LIMITS OF INSURANCE SHOWN IN THIS SCHEDULE IN FULL EFFECT THROUGHOUT THE POLICY PERIOD. REFER TO THE MAINTENANCE OF UNDERLYING INSURANCE CONDITION.**

```
Type of Insurance:      Commercial General Liability
Carrier:                Grange Mutual Casualty Company
Policy Number:          CPP 2083060-02
Policy Period:          Effective Date: 07/01/2016  Expiration Date: 07/01/2017
Limits of Insurance:

    $1,000,000  Each Occurrence
    $1,000,000  Personal and Advertising Injury
    $2,000,000  General Aggregate Limit (Other than Products/Completed Operations)
    $2,000,000  Aggregate - Products/Completed Operations

Type of Insurance:      Employee Benefits Liability
Carrier:                Grange Mutual Casualty Company
Policy Number:          CPP 2083060-02
Policy Period:          Effective Date: 07/01/2016  Expiration Date: 07/01/2017
Limits of Insurance:

    $1,000,000  Each Claim
    $3,000,000  Aggregate Limit

Type of Insurance:      Employers Liability
Carrier:                BERKSHIRE HATHAWAY HOMESTATE   INS CO
Policy Number:          CYWC711317
Policy Period:          Effective Date: 07/01/2016  Expiration Date: 07/01/2017
Limits of Insurance:

    $1,000,000  Bodily Injury by Accident - Each Accident
    $1,000,000  Bodily Injury by Disease - Policy Limit
    $1,000,000  Bodily Injury by Disease - Each Employee

Type of Insurance:      Auto Liability
Carrier:                Grange Mutual Casualty Company
Policy Number:          CPP 2083060-02
Policy Period:          Effective Date: 07/01/2016  Expiration Date: 07/01/2017
Limits of Insurance:

    $1,000,000  Per Accident Combined Single Limits
```

**Endorsement**

| | | | |
|---|---|---|---|
| CU 21 27 | (12/04) | Fungi Or Bacteria Exclusion |
| CU 21 25 | (12/01) | Total Pollution Exclusion Endorsement |
| CU 00 01 | (04/13) | Commercial Liability Umbrella Coverage Form |
| CU 02 | (12/15) | Revised Coverage Provisions |
| CU 21 23 | (02/02) | Nuclear Energy Liability Exclusion Endorsement |
| CU 85 | (12/06) | Lead Exclusion |
| IL 00 17 | (11/98) | Common Policy Conditions |
| IL 43 | (05/11) | Common Policy Conditions Changes |
| CU 21 86 | (05/14) | Exclusion - Access Or Disclosure Of Confidential Or P... |
| CU 106 | (06/16) | Cyber Liability Coverage Exclusion |
| CU 03 | (12/06) | Redefined Coverage Territory |
| CU 01 48 | (09/00) | Georgia Changes |
| CU 02 22 | (02/15) | Georgia Changes - Cancellation And Nonrenewal |
| CU 21 30 | (01/15) | Cap On Losses From Certified Acts Of Terrorism |
| IL 09 85 | (01/15) | Disclosure Pursuant To Terrorism Risk Insurance Act |
| CU 20 | (12/06) | Excess Employee Benefits Liability Coverage (Claims Made |

\*    Indicates Added Form

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA          30722*

**Grange Mutual Casualty Company**
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@ais-ins.net
www.advancedinsurancestrategies.com

**Named Insured and Address**

**Policy Type:** *Commercial Package*

**Policy Number:** *CPP 2083060-02*
**Issue Date:** *09/22/16*
**ACCT. NO:** *0000191650*
**Change Effective Date:** *09/08/16*
**From: 07/01/16**
**To: 07/01/17**
12:01 a.m. standard time.

CYCLE-TEX INC
702 S THORNTON AVE STE 201
DALTON GA   30720

## POLICY PREMIUM RECAP STATEMENT

| Line of Business/Coverages | Pro-Rated Premium Totals | Commission |
|---|---:|---|
| Commercial Automobile Coverage Part | $34,263.00 | 15% |
| Commercial Property Coverage Part | $350.00 | 15% |
| Commercial Crime Coverage Part | $820.00 | 15% |
| Employee Benefits Liability Coverage Part | $230.00 | 15% |
| Commercial General Liability Coverage Part | $21,273.00 | 15% |
| Commercial Inland Marine Coverage Part | $575.00 | 15% |
| Third Party Administration Fee - Cyber Coverage | $17.50 | 00% |
| Certified Acts of Terrorism - Property | $1.00 | 15% |
| Certified Acts of Terrorism - General Liability | $91.00 | 15% |
| Certified Acts of Terrorism - Inland Marine | $3.00 | 15% |
| Manufacturers' Optimum Program | $1,066.00 | 15% |

Your Pro-Rated Premium Is    **$58,689.50**

**THIS IS NOT A BILL.** Any outstanding balance due will be billed at a later date.

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

# COMMERCIAL POLICY CHANGE
## ENDORSEMENT IL 16

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured/Mailing Address: | Agency Name/Address/Code Number: |
|---|---|
| CYCLE-TEX INC<br>702 S THORNTON AVE STE 201<br>DALTON GA  30720 | ADVANCED INSURANCE STRATEGIES<br>300 W EMERY STREET SUITE 205<br>PO BOX 709<br>DALTON, GA            30722<br>10-01314-00 |

| Policy Number:    Mod: | Effective Date of Change: | End No. |
|---|---|---|
| CPP2083060-02 | 09/08/16          at 12:01 AM Standard Time | 01 |

The following item(s):

| | | | |
|---|---|---|---|
| ☐ | Insured's Name | ☐ | Limits/Exposures |
| ☐ | Insured's Mailing Address | ☐ | Deductibles |
| ☐ | Insured's Legal Entity/Business of Insured | ☐ | Covered Property/Location Description |
| ☒ | Premium Determination | ☒ | Classification/Class Codes |
| ☒ | Additional Interested Parties | ☐ | Rates |
| ☒ | Coverage Forms and Endorsements | ☐ | Vehicle(s) |

Is (are) changed to read [See Additional Page(s)]:

APPLICABLE TO COMMERCIAL GENERAL COVERAGE FORM,

ADDING ADDITIONAL INSURED CG2018, IN FAVOR OF:

FIRST BANK OF DALTON, ITS SUCCESSORS AND/OR ASSIGNS ATIMA
118 N HAMILTON ST
DALTON GA 30720

_____
Authorized Representative

Issue Date:  09/22/16
ACCT. NO:0000191650

Annual Premium Change: _____ 1.00 RETURN
Pro Rata Premium Change: _____ 1.00 RETURN
Premium does not include service charges.

Applicable to the State of Kentucky
Includes Kentucky Municipal Tax: _____
Includes Kentucky Surcharges Required by KRS 136.392: _____

AK967 (12-2009)

*AGENT COPY*

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA       30722*

(706) 226-0186
*Agent No. 10-01314-00*
celrod@ais-ins.net
www.advancedinsurancestrategies.com

**Grange Mutual Casualty Company**
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named Insured and Address**

**Policy Type:** *Commercial Package*

**Reason Issued:** *Policy Change -*
*Change Coverage*
**Policy Number:** *CPP  2083060-02*
**Change Effective Date:** *09/08/16*
**Issue Date:** *09/22/16*
**ACCT. NO:** *0000191650*

CYCLE-TEX INC
702 S THORNTON AVE STE 201
DALTON GA   30720

**From: 07/01/16    To: 07/01/17**    12:01 a.m. standard time at the address of the named insured as shown above. These declarations together with the applications, the commercial lines policy jacket, common policy conditions, coverage part declarations, coverage part coverage form(s) and forms and endorsements, if any, issued to form a part thereof, complete the above numbered policy. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

## Commercial Policy Declarations

**Business Description**  *PLASTIC MFG*

This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

| Coverage Part(s) | Premium |
|---|---|
| Commercial Automobile Coverage Part | $34,263.00 |
| Commercial Property Coverage Part | $350.00 |
| Commercial Crime Coverage Part | $820.00 |
| Employee Benefits Liability Coverage Part | $230.00 |
| Commercial General Liability Coverage Part | $21,273.00 |
| Commercial Inland Marine Coverage Part | $575.00 |
| Certified Acts of Terrorism | $95.00 |
| Manufacturers' Optimum Program | $1,066.00 |
| Third Party Administration Fee - Cyber Coverage | $17.50 |

Your Estimated Total Policy Premium Is   **$58,689.50**

Premium does not include service charges.

The Premium Credit From This Policy Change Is    $1.00CR

**THIS IS NOT A BILL.**  This premium credit will appear on your next billing statement, and remaining payments will be adjusted accordingly.

## MANUFACTURERS' OPTIMUM PROGRAM SCHEDULE

**Policy Number:** CPP 2083060-02          RENEWAL OF CPP 2083060 01

Amendment Of Policy Effective: Sept 08, 2016

**Named Insured:** CYCLE-TEX INC

These Coverages Apply To All Locations Covered On The Policy.


The Following Coverages Apply Only When Designated By an "X" In The Box(es) Shown Below:

|  | Premium |
|---|---|
| [X] Manufacturers' Optimum Endorsement - IL 19 | $1,066 |
|  |  |
| Total Manufacturers' Optimum Program Premium | $1,066 |

## COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

**Policy Number:** CPP 2083060-02          RENEWAL OF CPP 2083060 01

Amendment Of Policy Effective: Sept 08, 2016

**Named Insured:** CYCLE-TEX INC

Audit Frequency: Annual                The Insured Is Corporation

Limits Of Insurance:
  General Aggregate Limit
    (Other Than Products - Completed Operations)      $2,000,000
  Products - Completed Operations Aggregate Limit     $2,000,000
  Each Occurrence Limit                               $1,000,000
  Personal And Advertising Injury Limit               $1,000,000
  Medical Expense Limit, Any One Person                  $10,000
  Damage To Premises Rented To You Limit                $100,000


        Total Commercial General Liability
          Coverage Part Advanced Premium:        $21,273.00

These Declarations Are Part Of The Policy Declarations Containing The Name Of
 The Insured And The Policy Period.
Form No. Cgl Cov   1/86                 Issued 09/22/16

## COMMERCIAL GENERAL LIABILITY COVERAGE PART / CLASSIFICATION SCHEDULE

**Policy Number:** CPP 2083060-02          RENEWAL OF CPP 2083060 01

Amendment Of Policy Effective: Sept 08, 2016

**Named Insured:** CYCLE-TEX INC

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium Cov |
|-----|----|----|------|---------------|-----|------|-------------|
| 1 | GA | 503 | 58058 | 22,000,000 Gross Sales | 1000 | $0.161 | $3,542 O |

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium Cov |
|-----|----|----|------|---------------|-----|------|-------------|
| 1 | GA | 999 | 58058 | 22,000,000 Gross Sales | 1000 | $0.798 | $17,556 P |

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium Cov |
|-----|----|----|------|---------------|-----|------|-------------|
| 2 | GA | 503 | 58058 | 0 Gross Sales | 1000 | $0.161 | $0 O |

Plastic Or Rubber Goods Mfg. - Other Than Household

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium Cov |
|-----|----|----|------|---------------|-----|------|-------------|
| 2 | GA | 999 | 58058 | 0 Gross Sales | 1000 | $0.798 | $0 P |

Plastic Or Rubber Goods Mfg. - Other Than Household

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium Cov |
|-----|----|----|------|---------------|-----|------|-------------|
| 3 | GA | 503 | 61224 | 2,601 Square Feet | 1000 | $37.246 | $97 O |

Buildings Or Premises-Office-Premises Primarily
Occupied By Employees Of The Insured Other Than Not
For Profit
Products-Completed Operations Are Subject To The General Aggregate Limit.

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium Cov |
|-----|----|----|------|---------------|-----|------|-------------|
| 4 | GA | 503 | 49452 | 4 Acres | Each | $1.670 | $7 O |

Vacant Land Not For Profit
Products-Completed Operations Are Subject To The General Aggregate Limit.

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium Cov |
|-----|----|----|------|---------------|-----|------|-------------|
| 5 | GA | 503 | 58058 | 0 Gross Sales | 1000 | $0.161 | $0 O |

Plastic Or Rubber Goods Mfg. - Other Than Household

Cov P Is For Products-Completed Operations, And Cov O Is For All Other Hazards.

## COMMERCIAL GENERAL LIABILITY COVERAGE PART / CLASSIFICATION SCHEDULE

**Policy Number:** CPP 2083060-02          RENEWAL OF CPP 2083060 01

Amendment Of Policy Effective: Sept 08, 2016

**Named Insured:** CYCLE-TEX INC

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium Cov |
|-----|----|----|------|---------------|-----|------|-------------|
| 5 | GA | 999 | 58058 | 0 Gross Sales | 1000 | $0.798 | $0 P |

Plastic Or Rubber Goods Mfg. - Other Than Household

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium Cov |
|-----|----|----|------|---------------|-----|------|-------------|
| 6 | GA | 503 | 58058 | 0 Gross Sales | 1000 | $0.161 | $0 O |

Plastic Or Rubber Goods Mfg. - Other Than Household

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium Cov |
|-----|----|----|------|---------------|-----|------|-------------|
| 6 | GA | 999 | 58058 | 0 Gross Sales | 1000 | $0.798 | $0 P |

Plastic Or Rubber Goods Mfg. - Other Than Household

Cyber Coverage - CC 10                                                   $71

Cov P Is For Products-Completed Operations, And Cov O Is For All Other Hazards.

**EMPLOYEE BENEFITS LIABILITY COVERAGE PART DECLARATIONS**

**Policy Number:** CPP 2083060-02          RENEWAL OF CPP 2083060 01

Amendment Of Policy Effective: Sept 08, 2016

**Named Insured:** CYCLE-TEX INC

Audit Frequency: Annual                    The Insured Is Corporation

Limits Of Insurance:
  Each Claim Limit                         $1,000,000
  Aggregate Limit                          $3,000,000

Retroactive Date

This Insurance Does Not Apply To A "Benefit Error" Which Occurs Before The
Retroactive Date, If Any, Shown Here 07/01/14

Deductible

1,000 Each Claim.

                    Total Employee Benefits Liability
                    Coverage Part Advanced Premium:        $230.00

These Declarations Are Part Of The Policy Declarations Containing The Name Of
  The Insured And The Policy Period.
Form No. Emb Cov   4/98                    Issued 09/22/16

## EMPLOYEE BENEFITS LIABILITY COVERAGE PART/CLASSIFICATION SCHEDULE

**Policy Number:** CPP 2083060-02          RENEWAL OF CPP 2083060 01

Amendment Of Policy Effective: Sept 08, 2016

**Named Insured:** CYCLE-TEX INC

| Loc  St Ter | Premium Basis | Premium |
|---|---|---|
| 9999 GA 999 | 75 Employees | $230 |
| Employee Benefits Liability | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED -
# MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Name Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| FIRST BANK OF DALTON ITS SUCCESSORS AND/OR ASSIGNS ATIM 118 N HAMILTON ST DALTON GA 30720 | 111 W WESTCOTT WAY DALTON GA 30720 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III - Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Copyright, Insurance Services Office, Inc., 1998

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA          30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
davep@ais-ins.net
www.advancedinsurancestrategies.com

**Grange Mutual Casualty Company**
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named Insured and Address**

| **Policy Type:** *Commercial Package* |
| --- |

**Policy Number:** *CPP 2083060-03*
**Issue Date:** *09/14/18*
**ACCT. NO:**0000191650
**Change Effective Date:** *07/01/17*
**From:07/01/17**
**To: 07/01/18**
12:01 a.m. standard time.

CYCLE-TEX INC
1711 KIMBERLY PARK DR
DALTON GA   30720

## POLICY PREMIUM RECAP STATEMENT

| Line of Business/Coverages | Pro-Rated Premium Totals | Commission |
|---|---:|---|
| Commercial Property Coverage Part | $350.00 | 15% |
| Commercial Crime Coverage Part | $854.00 | 15% |
| Employee Benefits Liability Coverage Part | $230.00 | 15% |
| Commercial General Liability Coverage Part | $21,995.00 | 15% |
| Commercial Inland Marine Coverage Part | $575.00 | 15% |
| Third Party Administration Fee - Cyber Coverage | $17.50 | 00% |
| Certified Acts of Terrorism - Property | $1.00 | 15% |
| Certified Acts of Terrorism - General Liability | $94.00 | 15% |
| Certified Acts of Terrorism - Inland Marine | $3.00 | 15% |
| Manufacturers' Optimum Program | $1,102.00 | 15% |

Your Pro-Rated Premium Is

| **$25,221.50** |
| --- |

**THIS IS NOT A BILL.** Any outstanding balance due will be billed at a later date.

IKK204 (04-2005)                    **AGENT COPY**

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

# COMMERCIAL POLICY CHANGE
## ENDORSEMENT IL 16

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured/Mailing Address | Agency Name/Address/Code Number |
|---|---|
| CYCLE-TEX INC<br>1711 KIMBERLY PARK DR<br>DALTON GA 30720 | ADVANCED INSURANCE STRATEGIES<br>300 W EMERY STREET SUITE 205<br>PO BOX 709<br>DALTON, GA          30722<br>10-01314-00 |

| Policy Number     Mod | Effective Date of Change | | End No |
|---|---|---|---|
| CPP2083060-03 | 07/01/17 | at 12 01 AM Standard Time | 01 |

The following item(s):

| | | | |
|---|---|---|---|
| ☐ | Insured's Name | ☐ | Limits/Exposures |
| ☐ | Insured's Mailing Address | ☐ | Deductibles |
| ☐ | Insured's Legal Entity/Business of Insured | ☐ | Covered Property/Location Description |
| ☒ | Premium Determination | ☒ | Classification/Class Codes |
| ☐ | Additional Interested Parties | ☐ | Rates |
| ☐ | Coverage Forms and Endorsements | ☐ | Vehicle(s) |

Is (are) changed to read [See Additional Page(s)]:

```
* APPLICABLE TO COMMERCIAL GENERAL LIABILITY COVERAGE PART.
  ADDING CLASSIFICATION 334-58056 - PLASTIC MANUFACTURING - RAW
  MATERIAL  FOR LOCATION 0001 111 W WESTCOTT WAY, DALTON,
  GEORGIA 30720.
* APPLICABLE TO COMMERCIAL GENERAL LIABILITY COVERAGE PART.
  ADDING CLASSIFICATION 336-58056 - PLASTIC MANUFACTURING - RAW
  MATERIAL  FOR LOCATION 0001 111 W WESTCOTT WAY, DALTON,
  GEORGIA 30720.
```

_____
Authorized Representative

| | |
|---|---|
| | Annual Premium Change: _____ 0.00 |
| Issue Date: 09/14/18 | Pro Rata Premium Change: _____ 0.00 |
| ACCT. NO:0000191650 | Premium does not include service charges. |

Applicable to the State of Kentucky
Includes Kentucky Municipal Tax: _____
Includes Kentucky Surcharges Required by KRS 136.392: _____

AK967 (12-2009)

*AGENT COPY*

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA          30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
davep@ais-ins.net
www.advancedinsurancestrategies.com

**Policy Type:** *Commercial Package*

**Reason Issued:** *Policy Change -*
*Multiple Changes*
**Policy Number:** *CPP  2083060-03*
**Change Effective Date:** *07/01/17*
**Issue Date:** *09/14/18*
**ACCT. NO:** *0000191650*

**Grange Mutual Casualty Company**
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named Insured and Address**

```
CYCLE-TEX INC
1711 KIMBERLY PARK DR
DALTON GA  30720
```

**From: 07/01/17     To: 07/01/18**     12:01 a.m. standard time at the address of the named insured as shown above. These declarations together with the applications, the commercial lines policy jacket, common policy conditions, coverage part declarations, coverage part coverage form(s) and forms and endorsements, if any, issued to form a part thereof, complete the above numbered policy. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

## Commercial Policy Declarations

| **Business Description** | *PLASTIC MFG* |
|---|---|

This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

| Coverage Part(s) | Premium |
|---|---|
| Commercial Property Coverage Part | $350.00 |
| Commercial Crime Coverage Part | $854.00 |
| Employee Benefits Liability Coverage Part | $230.00 |
| Commercial General Liability Coverage Part | $21,995.00 |
| Commercial Inland Marine Coverage Part | $575.00 |
| Certified Acts of Terrorism | $98.00 |
| Manufacturers' Optimum Program | $1,102.00 |
| Third Party Administration Fee - Cyber Coverage | $17.50 |

Your Estimated Total Policy Premium Is      **$25,221.50**

Premium does not include service charges.

The Premium Change From This Policy Change Is     $0.00

**THIS IS NOT A BILL.**

**Grange Mutual Casualty Company**
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

### MANUFACTURERS' OPTIMUM PROGRAM SCHEDULE

**Policy Number:**  CPP 2083060-03          RENEWAL OF CPP 2083060 02

Amendment Of Policy Effective: July 01, 2017

**Named Insured:**  CYCLE-TEX INC

These Coverages Apply To All Locations Covered On The Policy.


The Following Coverages Apply Only When Designated By an "X" In The Box(es) Shown Below:

|  |  | Premium |
|---|---|---|
| [X] Manufacturers' Optimum Endorsement - IL 19 | | $1,102 |
| | | |
| Total Manufacturers' Optimum Program Premium | | $1,102 |

## COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

**Policy Number:** CPP 2083060-03        RENEWAL OF CPP 2083060 02

Amendment Of Policy Effective: July 01, 2017

**Named Insured:** CYCLE-TEX INC

Audit Frequency: Annual             The Insured Is Corporation

Limits Of Insurance:

| | |
|---|---|
| General Aggregate Limit | |
| (Other Than Products - Completed Operations) | $2,000,000 |
| Products - Completed Operations Aggregate Limit | $2,000,000 |
| Each Occurrence Limit | $1,000,000 |
| Personal And Advertising Injury Limit | $1,000,000 |
| Medical Expense Limit, Any One Person | $10,000 |
| Damage To Premises Rented To You Limit | $100,000 |

Total Commercial General Liability
Coverage Part Advanced Premium:        $21,995.00

These Declarations Are Part Of The Policy Declarations Containing The Name Of The Insured And The Policy Period.

Form No. Cgl Cov    1/86             Issued 09/14/18

*CPPGL*                        **AGENT COPY**

## COMMERCIAL GENERAL LIABILITY COVERAGE PART / CLASSIFICATION SCHEDULE

**Policy Number:** CPP 2083060-03          RENEWAL OF CPP 2083060 02

Amendment Of Policy Effective: July 01, 2017

**Named Insured:** CYCLE-TEX INC

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium Cov |
|-----|-----|-----|------|---------------|-----|------|-------------|
| 1 | GA | 503 | 58056 | 0 Gross Sales | 1000 | $0.294 | $0 O |

Plastic Mfg. - Raw Material

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium Cov |
|-----|-----|-----|------|---------------|-----|------|-------------|
| 1 | GA | 999 | 58056 | 0 Gross Sales | 1000 | $0.870 | $0 P |

Plastic Mfg. - Raw Material

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium Cov |
|-----|-----|-----|------|---------------|-----|------|-------------|
| 1 | GA | 503 | 58058 | 22,000,000 Gross Sales | 1000 | $0.166 | $3,659 O |

Plastic Or Rubber Goods Mfg. - Other Than Household

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium Cov |
|-----|-----|-----|------|---------------|-----|------|-------------|
| 1 | GA | 999 | 58058 | 22,000,000 Gross Sales | 1000 | $0.825 | $18,158 P |

Plastic Or Rubber Goods Mfg. - Other Than Household

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium Cov |
|-----|-----|-----|------|---------------|-----|------|-------------|
| 2 | GA | 503 | 58058 | 0 Gross Sales | 1000 | $0.166 | $0 O |

Plastic Or Rubber Goods Mfg. - Other Than Household

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium Cov |
|-----|-----|-----|------|---------------|-----|------|-------------|
| 2 | GA | 999 | 58058 | 0 Gross Sales | 1000 | $0.825 | $0 P |

Plastic Or Rubber Goods Mfg. - Other Than Household

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium Cov |
|-----|-----|-----|------|---------------|-----|------|-------------|
| 3 | GA | 503 | 61224 | 2,601 Square Feet | 1000 | $38.501 | $100 O |

Buildings Or Premises-Office-Premises Primarily
Occupied By Employees Of The Insured Other Than Not
For Profit
Products-Completed Operations Are Subject To The General Aggregate Limit.


Cov P Is For Products-Completed Operations, And Cov O Is For All Other Hazards.

## COMMERCIAL GENERAL LIABILITY COVERAGE PART / CLASSIFICATION SCHEDULE

**Policy Number:** CPP 2083060-03     RENEWAL OF CPP 2083060 02

Amendment Of Policy Effective: July 01, 2017

**Named Insured:** CYCLE-TEX INC

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium | Cov |
|-----|-----|-----|------|---------------|-----|------|---------|-----|
| 4 | GA | 503 | 49452 | 4 Acres | Each | $1.725 | $7 | O |

Vacant Land Not For Profit
Products-Completed Operations Are Subject To The General Aggregate Limit.

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium | Cov |
|-----|-----|-----|------|---------------|-----|------|---------|-----|
| 5 | GA | 503 | 58058 | 0 Gross Sales | 1000 | $0.166 | $0 | O |

Plastic Or Rubber Goods Mfg. - Other Than Household

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium | Cov |
|-----|-----|-----|------|---------------|-----|------|---------|-----|
| 5 | GA | 999 | 58058 | 0 Gross Sales | 1000 | $0.825 | $0 | P |

Plastic Or Rubber Goods Mfg. - Other Than Household

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium | Cov |
|-----|-----|-----|------|---------------|-----|------|---------|-----|
| 6 | GA | 503 | 58058 | 0 Gross Sales | 1000 | $0.166 | $0 | O |

Plastic Or Rubber Goods Mfg. - Other Than Household

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium | Cov |
|-----|-----|-----|------|---------------|-----|------|---------|-----|
| 6 | GA | 999 | 58058 | 0 Gross Sales | 1000 | $0.825 | $0 | P |

Plastic Or Rubber Goods Mfg. - Other Than Household

Cyber Coverage - CC 10                                          $71

Cov P Is For Products-Completed Operations, And Cov O Is For All Other Hazards.

## EMPLOYEE BENEFITS LIABILITY COVERAGE PART DECLARATIONS

**Policy Number:** CPP 2083060-03          RENEWAL OF CPP 2083060 02

Amendment Of Policy Effective: July 01, 2017

**Named Insured:** CYCLE-TEX INC

Audit Frequency: Annual                    The Insured Is Corporation

Limits Of Insurance:
Each Claim Limit                    $1,000,000
Aggregate Limit                     $3,000,000

Retroactive Date

This Insurance Does Not Apply To A "Benefit Error" Which Occurs Before The Retroactive Date, If Any, Shown Here 07/01/14

Deductible

1,000 Each Claim.

Total Employee Benefits Liability
Coverage Part Advanced Premium:          $230.00

These Declarations Are Part Of The Policy Declarations Containing The Name Of The Insured And The Policy Period.

Form No. Emb Cov    4/98                    Issued 09/14/18

**Grange Mutual Casualty Company**
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**EMPLOYEE BENEFITS LIABILITY COVERAGE PART/CLASSIFICATION SCHEDULE**

**Policy Number:** CPP 2083060-03     RENEWAL OF CPP 2083060 02

Amendment Of Policy Effective: July 01, 2017

**Named Insured:** CYCLE-TEX INC

| Loc  St Ter | Premium Basis | Premium |
|---|---|---|
| 9999 GA 999 | 75 Employees | $230 |

Employee Benefits Liability

## COMMERCIAL INLAND MARINE DECLARATION

**Policy Number:** CPP 2083060-03          RENEWAL OF CPP 2083060 02

Amendment Of Policy Effective: July 01, 2017

**Named Insured:** CYCLE-TEX INC

---

| Coverages | Limits | Premiums |
|-----------|--------|----------|
| ========= | ====== | ======== |
| Transportation Floater | $50,000 | $575 |

Total Commercial Inland Marine Part:                    $575.00

These Declarations Are Part Of The Policy Declarations Containing The Name Of The Insured And The Policy Period.

Form No. IM Dec     12/88                    Issued 09/14/18

*CPPIM*                              *AGENT COPY*

**Grange Mutual Casualty Company**
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

## COMMERCIAL PACKAGE POLICY FORMS INVENTORY

**Policy Number:** CPP 2083060-03    RENEWAL OF CPP 2083060 02

Amendment Of Policy Effective: July 01, 2017

**Named Insured:** CYCLE-TEX INC

### POLICY LEVEL FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| IL 00 17 | (11/98) | Common Policy Conditions |
| IL 43 | (05/11) | Common Policy Conditions Changes |
| IL 02 62 | (02/15) | Georgia Changes - Cancellation And Nonrenewal |
| IL 00 21 | (07/02) | Nuclear Energy Liability Exclusion Endorsement |
| IL 09 35 | (07/02) | Exclusion Of Certain Computer-Related Losses |
| IL 19 | (06/15) | Manufacturers' Optimum Endorsement |
| IM 72 03 | (10/04) | Business Computer Coverage |
| CR 00 21 | (03/00) | Commercial Crime Coverage Form (Loss Sustained Form) |
| IL 09 52 | (01/15) | Cap On Losses From Certified Acts Of Terrorism |
| IL 09 85 | (01/15) | Disclosure Pursuant To Terrorism Risk Insurance Act |

### COMMERCIAL PROPERTY COVERAGE PART FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| CP 00 10 | (10/12) | Building And Personal Property Coverage Form |
| CP 25 | (01/13) | Changes - Building Glass |
| CP 04 11 | (10/12) | Protective Safeguards |
| CP 10 30 | (10/12) | Causes Of Loss - Special Form |
| CP 12 70 | (09/96) | Joint Or Disputed Loss Agreement |
| CP 00 90 | (07/88) | Commercial Property Conditions |
| CP 01 40 | (07/06) | Exclusion Of Loss Due To Virus Or Bacteria |
| CP 01 31 | (10/12) | Georgia Changes |
| SE 01 | (08/97) | **Special Endorsement |

### COMMERCIAL CRIME COVERAGE PART FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| CR 01 | (08/01) | Policy Change - Crime Coverage |
| CR 01 32 | (03/00) | Georgia Changes - Concealment, Fraud |

### COMMERCIAL GENERAL LIABILITY COVERAGE PART FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| CG 00 01 | (04/13) | Commercial General Liability Coverage Form |
| CG 21 06 | (05/14) | Exclusion - Access Or Disclosure Of Confidential Or ... |
| CG 21 47 | (12/07) | Employment-Related Practices Exclusion |
| CG 21 67 | (12/04) | Fungi Or Bacteria Exclusion |
| CG 21 70 | (01/15) | Cap On Losses From Certified Acts Of Terrorism |
| CG 44 | (05/11) | Medical Payment Changes |
| EB 101 | (06/15) | Employee Benefits Liability Coverage Form |
| IL 15 | (06/15) | Lead Exclusion |

** INDICATES DELETED FORM

## COMMERCIAL PACKAGE POLICY FORMS INVENTORY

**Policy Number:** CPP 2083060-03          RENEWAL OF CPP 2083060 02

Amendment Of Policy Effective: July 01, 2017

**Named Insured:** CYCLE-TEX INC

| | | |
|---|---|---|
| CC 10 | (01/16) | Cyber Coverage |
| CC 6 | (01/16) | Georgia Changes |
| CG 20 18 | (04/13) | Additional Insured - Mortgagee, Assignee Or Receiver |
| CG 09 GA | (06/15) | Asbestos, Silica OR Mixed Dust Exclusion |
| CG 21 49 | (09/99) | Total Pollution Exclusion |

### COMMERCIAL INLAND MARINE COVERAGE PART FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| IM 72 50 | (01/00) | Transportation Coverage |
| IM 72 55 | (01/00) | Schedule Of Coverages Transportation Coverage |
| CL 0600 | (01/15) | Certified Terrorism Loss |
| CL 0605 | (01/15) | Certified Terrorism Loss Disclosure Of Premium... |
| IM 20 21 | (04/04) | Amendatory Endorsement Georgia |

| Coverage Form | CC 10 |
|---|---|

**Policy Number: CPP    2083060**

**CYBER COVERAGE FORM**

**THIS ENDORSEMENT PROVIDES INDEPENDENT COVERAGES, TERMS, AND DEFINITIONS. PLEASE READ IT CAREFULLY.**

**THE ENDORSEMENT'S AGGREGATE LIMIT OF LIABILITY WILL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DAMAGES, CLAIM EXPENSES, PRIVACY BREACH EXPENSES AND BUSINESS INCOME LOSS AND EXTRA EXPENSES.**

**PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

Various provisions in this Endorsement restrict coverage. Read the entire Endorsement carefully to determine rights, duties and what is and is not covered.

Throughout this Endorsement the words in **bold** are defined terms within Section II, the Definitions section of this Endorsement. Throughout this Endorsement, the words **you** and **your** refer to the **Insured** as defined in Section II, I. The words **we**, **us**, and **our** refer to the Company providing this insurance.

This endorsement does not include any coverage unless a Limit of Insurance is indicated for such Coverage in the Schedule below.

**SCHEDULE**

| Coverage | Limit Of Insurance | Deductible / Waiting Period |
|---|---|---|
| A. Third Party Cyber Liability Coverage | $ 50,000 | $ 2,500 |
| B. Regulatory Proceeding Claims Expense Coverage | $ 25,000 | $ 2,500 |
| C. First Party Privacy Breach Expense Coverage | $ 25,000 | $ 2,500 |
| D. First Party Business Interruption Coverage Aggregate | $ | hours |
| E. Data Replacement | $ 10,000 | |
| F. Regulatory Fines Coverage | $ 10,000 | |
| G. PCI Fines Coverage | $ 10,000 | |
| H. Cyber Coverage Aggregate | $ 50,000 | |
| **Endorsement Premium** | | $ 71 |

| **Endorsement Period:** From _07/01/2017_ to _07/01/2018_ |
|---|
| At 12:01 A.M. Standard Time at the address of the **Named Insured** as stated herein |

**SECTION I - COVERAGES**

**A.** INSURING AGREEMENTS

1. Third Party Cyber Liability Coverage:

    **We** will pay on **your** behalf those **Damages** and **Claim Expenses you** become legally obligated to pay resulting from any **Claim**, provided such **Claim** is first discovered by **you** during the **Endorsement Period** or within thirty (30) days after the end of the **Endorsement Period** if this Endorsement is not renewed and is reported to **us** in accordance with Section V. CONDITIONS B., for any:

*continued...*

| Coverage Form | CC 10 |
|---|---|

**Policy Number: CPP    2083060**

## CYBER COVERAGE FORM

a. **Media Wrongful Act**;

b. **Network Security Wrongful Act**; or

c. **Privacy Wrongful Act**.

2. **Regulatory Proceeding Claims Expense** Coverage:

**We** will pay on **your** behalf those **Claim Expenses** and **Regulatory Fines you** become legally obligated to pay resulting from any **Regulatory Proceeding** for a **Privacy Wrongful Act**, provided such **Regulatory Proceeding** is first discovered by **you** during the **Endorsement Period** or within thirty (30) days after the end of the **Endorsement Period** if this Endorsement is not renewed and is reported to **us** in accordance with Section V. CONDITIONS B.

3. First Party **Privacy Breach Expense** Coverage:

**We** will pay the **Named Insured** those **Privacy Breach Expenses** directly incurred in responding to a **Privacy Breach Event** or an **Extortion Threat**, provided such **Privacy Breach Event** or **Extortion Threat** is first discovered by **you** during the **Endorsement Period** or within thirty (30) days after the end of the **Endorsement Period** if this Endorsement is not renewed and is reported to **us** in accordance with Section V. CONDITIONS B.

4. First Party Business Interruption Coverage:

**We** will pay the **Named Insured** for the **Business Income Loss** and **Extra Expense** the **Named Insured** sustained during a **Reconstruction Period** directly caused by a **Network Disruption** to the **Named Insured's Computer System**, provided such **Network Disruption** is first discovered by **you** during the **Endorse-ment Period** or within thirty (30) days after the end of the **Endorsement Period** if this Endorsement is not renewed and is

reported to **us** in accordance with Section V. CONDITIONS B.

B. **Our** Rights and Duties in the Event of **Claims**

**We** have the right and duty to defend, and pay on **your** behalf any **Claim Expenses** resulting from, any **Claim** to which this insurance applies, even if the allegations are groundless, false or fraudulent. **We** have the right to investigate, direct the defense, and settle any **Claim** as **we** deem expedient. **Our** duty ends when the Endorsement's applicable Limit of Insurance has been exhausted by **our** payment of **Damages**, **Claim Expenses**, **Privacy Breach Expenses** or **Business Income Loss** and **Extra Expense** or **we** have deposited the Endorsement's remaining applicable Limit of Insurance with a court of competent jurisdiction. **We** have no obligation or duty to defend any **Claim** or pay any **Claims Expenses** for which coverage is excluded or not otherwise afforded by the Endorsement.

## SECTION II - DEFINITIONS

A. **Business Income Loss** means net profit the **Named Insured** would have earned before taxes during the **Reconstruction Period**, in excess of the Waiting Period Deductible indicated in the Schedule, had no **Network Disruption** taken place. **Business Income Loss** shall not include any contractual penalties.

B. **Claim** means a written demand or assertion of a legal right for money or services received by **you** for a **Wrongful Act**, including service upon **you** of a lawsuit or arbitration proceeding seeking injunctive relief for a **Wrongful Act**. A **Claim** does not include a **Regulatory Proceeding**.

C. **Claim Expenses** means with respect to any **Claim** or **Regulatory Proceeding**:

1-1. reasonable and necessary fees, costs and expenses charged by any lawyer or other vendor designated or approved in writing by **us** directly resulting from the investiga-tion, adjustment, settlement and/or

| Coverage Form | CC 10 |
|---|---|

**CYBER COVERAGE FORM**

defense of such **Claim** or **Regulatory Proceeding;**

1-2. reasonable and necessary expenses charged by a vendor designated or approved in writing by us to investigate an **Unauthorized Access or Unauthorized Use** of the **Named Insured's Computer System** to determine how **Protected Information** was accessed;

1-3. all interest on the full amount of any covered judgment that accrues after entry of the judgment and before **we** have paid, offered to pay, or have deposited into a court of competent jurisdiction that part of the judgment which is within the remaining applicable Limits of Insurance; and

1-4. the premiums for appeal, attachment or similar bonds, but only for bond amounts within the applicable Limits of Insurance. **We** do not have to furnish these bonds.

**Claim Expenses** do not include:

2-1. salaries, wages, fees, remuneration, overhead, benefits or expenses of **our** or **your** employees or officials;

2-2. fees, costs, or expenses incurred prior to the time that a **Claim** or **Regulatory Proceeding** is reported to **us** or paid or incurred without **our** prior written consent, and such unilaterally incurred fees, costs or expenses shall not reduce any deductible under the Endorsement;

2-3. costs to inspect, investigate, withdraw, alter, recall, reprocess, restore, replace, retract, amend, reprint, reproduce, remediate, correct, enhance, upgrade or modify **Electronic Media;**

2-4. costs and expenses to comply with any injunctive or other non-monetary equitable, declaratory, regulatory or administrative relief, including specific performance, or any agreement to provide such relief;

2-5. costs or expenses incurred to prevent future **Unauthorized Access or Unauthorized Use** of the **Named Insured's Computer System;** or

2-6. any fines or penalties assessed as a result of a **Regulatory Proceeding.**

D. **Computer System** means any electronic device, electronic and paper storage media as well as any communications networks owned or operated exclusively for the benefit of a single owner. **Computer System** includes outsourced Cloud based storage.

E. **Damages** means any monetary amount which **you** become legally obligated to pay as the result of a **Claim**, including judgments, awards, damages, settlements to which **we** have consented in writing, prejudgment and post-judgment interest awarded which directly arise from and correspond to the portion of any judgment attributable to a covered **Claim.**

**Damages** do not include:

1. any amount for which the **Insured** is not liable or legally obligated to pay;

2. punitive and exemplary damages, liquidated damages, taxes, fines or penalties, or any multiples thereof;

3. matters uninsurable under the law applicable to this Endorsement;

4. past, present and future earned and unearned royalties, profits, fees, costs, expenses, commissions, or the return of royalties, profits, fees, costs, expenses, commissions, and profits unjustly held or obtained;

5. costs and expenses required to comply with any injunctive or other non-monetary equitable, declaratory, regulatory or administrative relief, including specific performance, or any agreement to provide such relief; or

| Coverage Form | CC 10 |
| --- | --- |

**CYBER COVERAGE FORM**

6. discounts, prizes, awards, coupons or other incentives offered to the **Named Insured's** clients or customers.

F. **Electronic Media** means audio, digital, informational or visual material in electronic form transmitted over the Internet or other computer media; provided, however, **Electronic Media** does not include:

   1. material in print or in any form other than that transmitted electronically over the Internet or other computer media; or

   2. scripts or films for theatrical release, radio or television programming, or books, manuals or other content on disk, e-reader, tablet or similar device.

G. **Extortion Threat** means a credible threat or series of credible threats by a third party who is not an **Insured** to cause a **Privacy Breach Event**, or to cause or perpetuate a **Network Disruption** such as through ransomware, unless a money demand is paid by the **insured**. An **Extortion Threat** is first discovered by an **Insured** when it is first received by the **Insured**.

H. **Extra Expenses** means reasonable and necessary expenses the **Named Insured** incurs after a **Network Disruption** to reduce the **Named Insured's Business Income Loss** and to resume its normal operations.

   **Extra Expenses** do not include:

   1. any contractual penalties; or

   2. any costs to update or upgrade the **Named Insured's Computer System** to a level beyond that which existed prior to the **Network Disruption**.

I. **Insured** means:

   1. all entities identified in the policy Declarations (all of which are referred to as the "**Named Insured**");

2. employees (not including volunteer workers or independent contractors), principals, partners, executive officers or directors of the **Named Insured**, but solely while acting within their capacity and the scope of their duties for or on behalf of the **Named Insured**; and

3. in the event of death, incapacity, bankruptcy or insolvency of any person identified in sub-paragraph 2. above, such person's heirs, estate, executors, administrators and legal representative in his or her capacity as such.

J. **Malicious Code** means an unauthorized, unwanted or harmful program, code or script, including, but not limited to, any virus, trojan horse, worm, time or logic bomb, spyware, malware or spiderware.

K. **Media Wrongful Act** means any of the following actual or alleged unintentional and unknowing conduct by **you** directly relating to, in connection with or arising from the creation of **Electronic Media** which advertises or promotes the **Named Insured's** products or services:

   1. libel, slander or other defamation;

   2. invasion or infringement of an individual's right to privacy or publicity;

   3. disparaging a person's or organization's goods, products or services;

   4. infringement of copyright, plagiarism or misappropriation of ideas; or

   5. infringement of trademark, title, slogan, trade name, trade dress, service mark or service name.

L. **Network Disruption** means a measurable interruption, failure, suspension or delay in the performance of the **Named Insured's Computer System** directly caused by **your** unintentional failure to prevent an **Unauthorized Access or Unauthorized Use** of,

| Coverage Form | CC 10 |
|---|---|

## CYBER COVERAGE FORM

the introduction of **Malicious Code** into, or a denial of service attack upon, such **Computer System**.

M. **Network Security Wrongful Act** means **your** unintentional and unknowing failure to prevent an **Unauthorized Access or Unauthorized Use** of the Named Insured's **Computer System** that directly results in:

1. the inability of an **Insured** or authorized third party user to access the **Named Insured's Computer System**;

2. the inability of an authorized third party user to access its computer system or network;

3. the failure or corruption of a third party's computer system or network;

4. **your** transmittal or distribution of **Malicious Code** to a third party's computer system or network; or

5. the perpetuation of a denial of service attack on a third party's computer system or network.

N. **Policy Period** means the period from the inception date stated in the Policy Declarations to the expiration date stated in the Policy Declarations, or its earlier cancellation date, if any.

O. **Privacy Breach Event** means the theft or unauthorized disclosure of **Protected Information** due to the **Insured's** unintentional failure to safeguard such **Protected Information**.

P. **Privacy Breach Expenses** mean the following amounts, if reasonable and necessary and directly incurred by or for the **Named Insured** in responding to a **Privacy Breach Event** or, solely with respect to an **Extortion Threat**, a **Network Disruption**:

1. **Notification Expenses:**

notification fees and expenses charged by a vendor designated or approved in writing by **us** to notify a **Protected Person** of an **Unauthorized Access or Unauthorized Use** of his or her **Protected Information**, pursuant to applicable **Privacy Law** requirements or to minimize **Damages** otherwise covered under this Endorsement;

2. **Monitoring Expenses:**

fees and expenses charged by a vendor designated or approved in writing by us to provide monitoring, identity theft, or fraud resolution services to a **Protected Person**, pursuant to applicable **Privacy Law** requirements or to minimize **Damages** otherwise covered under this Endorsement;

3. **Extortion Threat Expenses:**

Expenses, ransom money including interest on any loan necessary to pay a ransom or reward money paid to any informant, if approved in writing by **us** to prevent or mitigate an **Extortion Threat**;

4. **Data Replacement Expenses:**

the reasonable and necessary fees, costs and expenses charged by a vendor designated or approved in writing by **us** to research, re-create or replace, from written records or partially or fully matching electronic data, any electronic data on the **Named Insured's Computer**;

5. **Cyber Investigation Expenses:**

fees and expenses charged by a vendor designated or approved in writing by **us** to investigate the **Unauthorized Access or Unauthorized Use** of the **Named Insured's Computer System** from which **Protected Information** has been accessed in order to determine whether the **Named Insured** has an obligation to provide notice under **Privacy Law**;

| Coverage Form | CC 10 |
|---|---|

**Policy Number: CPP    2083060**

**CYBER COVERAGE FORM**

6. **PCI Fines:**

   fines or penalties the **Named Insured** is obligated under contract to pay to its acquiring bank or a payment card association due to the **Named Insured's** violation of any Payment Card Industry Data Security Standards (PCI-DSS) that were in effect when **you** first discovered the **Privacy Breach Event**; and

7. **Crisis Management Expenses:**

   a. fees and expenses charged by a public relations firm, law firm or crisis management firm to perform crisis management services to minimize the potential harm to the **Named Insured's** business from a **Privacy Breach Event**; and

   b. fees and expenses charged by a call center designated or approved in writing by us to provide assistance managing incoming calls in high volume **Privacy Breach Events**.

**Privacy Breach Expenses** shall not include:

1. salaries, wages, fees, remuneration, overhead, benefits or expenses of **our** or **your** employees or officials;

2. fees, costs or expenses to restore, replace, remediate, repair, correct, enhance, upgrade or otherwise modify, improve or make changes to the **Named Insured's Computer System** following or as a result of an actual or attempted **Unauthorized Access or Unauthorized Use** or **Privacy Breach Event**, including fees, costs or expenses to prevent a future **Unauthorized Access or Unauthorized Use** or **Privacy Breach Event**.

Q. **Privacy Law** means any law or regulation applicable to persons and organizations who lawfully and permissibly obtain or possess a **Protected Person's Protected Information**

requiring the posting of privacy policies, the adoption of specific privacy or security controls, or the notification of **Protected Persons** in the event their **Protected Information** has potentially been accessed or disclosed without authorization.

R. **Privacy Wrongful Act** means the following unintentional conduct resulting from **your** unintentional failure to safeguard **Protected Information** in the **Named Insured's** possession in the normal course of business:

   1. **your** actual or alleged violation of a **Privacy Law**; or

   2. **your** actual or alleged invasion or infringement of an individual's right to privacy or publicity.

S. **Protected Information** means an individual's name, social security number, medical or healthcare data, other protected health information, driver's license number, state identification number, credit card number, debit card number, account number, account histories, passwords, or other nonpublic personal information as defined in **Privacy Law**. **Protected Information** does not include records that are lawfully available to the general public for any reason, including but not limited to information from federal, state or local government records and does not include any "phone book" information such as name, address, email address and telephone number unless part of any **Privacy Law**.

T. **Protected Person** means a person whose **Protected Information** is protected from unauthorized disclosure or access by a **Privacy Law**.

U. **Reconstruction Period** means the period of time:

   1. after the application of the waiting period deductible stated in the Schedule;

   2. immediately following a **Network Disruption**; and

| Coverage Form | CC 10 |
|---|---|

**CYBER COVERAGE FORM**

3. ending at the earlier of 120 days after the time that the **Named Insured's Computer System** was first interrupted by the **Network Disruption** or the resumption of the **Named Insured's** operations to substantially the same level that existed had the **Network Disruption** never taken place provided, however, that the **Named Insured** must make every effort to resume all or part of its operations as quickly as possible.

V. **Regulatory Fines** means any fines or penalties assessed against a **Named Insured** as a result of a **Regulatory Proceeding**, provided such fines or penalties are insurable under the applicable law most favoring coverage for such fines or penalties.

W. **Regulatory Proceeding** means a formal request to **you** for documentation made by, or an investigation or civil proceeding brought by, a regulatory body or regulator directly arising from the **your** actual or alleged unintentional breach or violation of a **Privacy Law**.

X. **Related Claims** means **Claims** based upon, arising from, in consequence of, directly or indirectly resulting from, or involving in any way continuous, repeated, the same, related, or substantially similar facts, circumstances, subjects, situations, decisions, cause, persons, transactions, events, class of persons or events, or continuous, repeated, the same, related, or a substantially similar series of facts, circumstances, subjects, situations, decisions, persons, transactions, class of persons or events.

Y. **Related Events** means **Privacy Breach Events** or **Extortion Threats** based upon, arising from, in consequence of, directly or indirectly resulting from, or involving in any way continuous, repeated, the same, related, or substantially similar facts, circumstances, subjects, situations, decisions, cause, persons,

transactions, event, class of persons or events, or continuous, repeated, the same, related, or a substantially similar series of facts, circumstances, subjects, situations, decisions, persons, transactions, class of persons or events.

Z. **Unauthorized Access or Unauthorized Use** means access to or use of the **Named Insured's Computer System** by a person or organization not authorized to do so, or the access to or use of the **Named Insured's Computer System** by an authorized person in an unauthorized manner.

AA. **Wrongful Act** means a **Media Wrongful Act**, **Network Security Wrongful Act** or **Privacy Wrongful Act**.

**SECTION III - EXCLUSIONS**

A. **We** shall not be liable to pay, indemnify or reimburse **Damages** or **Claim Expenses** from any **Claim** or **Regulatory Proceeding**, or any **Privacy Breach Expenses**, **Business Income Loss** or **Extra Expenses**, based on, resulting from or arising out of:

1. Any actual or alleged direct creation of **Malicious Code** by **you**.

2. Any **Malicious Code**, denial of service attack, unauthorized intrusion into the **Named Insured's Computer System** to access **Protected Information** or any similar attack or event:

   a. not directed principally at the **Named Insured** or its **Computer System**; or

   b. that generally affects governmental or private computer systems or networks, including **Malicious Code** that has been or may be identified or assigned a name by the United States Computer Emergency Readiness Team or a recognized computer security organization, such as McAfee, Symantec or Kaspersky, or any variant of any such **Malicious Code**.

| Coverage Form | CC 10 |
|---|---|

**Policy Number: CPP    2083060**

**CYBER COVERAGE FORM**

3. The unsolicited dissemination of any communication to actual or prospective customers of the **Insured** or any third party, or any actual or alleged violation of the Telecommunications Act, the CAN-SPAM Act, or any other federal, state or local legislation, regulation or law protecting a person's or entity's right of seclusion or privacy.

4. Any seizure, nationalization, confiscation, destruction, deletion or expropriation of any **Protected Information** or any **Computer System** held or used by **you** by order of any governmental authority.

5. Any costs or expenses incurred by **you** or others to inspect, investigate, withdraw, alter, recall, reprocess, restore, replace, retract, amend, reprint, reproduce, remediate, correct, enhance, upgrade or otherwise modify any product, service or media of or for **you**, or any part of any such product, service or media. However, this exclusion shall not apply to any Data Replacement Expenses that constitute **Privacy Breach Expenses**.

6. Any actual or alleged unlawful or unauthorized obtaining, gathering, collecting, acquiring, using, distribution or sale by **you** of any information of any type, nature, or kind, including **Protected Information**.

7. Any actual or alleged:

    a. dishonest, fraudulent, criminal or malicious act, error or omission by **you**; or

    b. **your** intentional or knowing **Unauthorized Access or Unauthorized Use**, tampering with, denial of service attack, or otherwise limiting or preventing the use of the **Named Insured's Computer System** or any third party's computer system or network;

provided, however, the above sub-parts shall not apply: (1) to any **Insured** who did not intentionally and knowingly commit, acquiesce or participate in the conduct that gave rise to the **Claim** or **Privacy Breach Event**; or (2) in the absence of a final judgment, adjudication or binding arbitration ruling adverse to such **Insured**.

Upon such final adverse judgment, adjudication or final arbitration ruling, the **Insured** shall reimburse **us** for all **Damages**, **Privacy Breach Expenses** and **Claim Expenses we** have incurred or paid.

8. Any actual electrical or mechanical failures, including power interruption, surge, brownout or blackout, or defect of telephone, telecommunications, or data transmission lines, services, equipment or infrastructure.

9. Any actual or alleged patent infringement or theft, copying, misappropriation, display or publication of any patent, process, confidential or proprietary information or trade secret.

10. The outsourcing of data processing and other business functions to a location outside the United States, Canada or European Union when the outsourced activity involves **Protected Information** in **your** care, custody or control. However, this exclusion does not apply as respects Cloud based storage.

11. Any actual or alleged gaining in fact of any profit or advantage to which **you** are not legally entitled.

12. Any actual or alleged:

    a. bodily injury, sickness, disease or death of any person; or

    b. physical injury to, or loss or destruction of, tangible property, including the loss of use thereof, or loss of use of tangible property which has

| Coverage Form | CC 10 |
|---|---|

**Policy Number: CPP    2083060**

**CYBER COVERAGE FORM**

not been physically injured, lost, damaged or destroyed;

provided, however, this exclusion shall not apply to a **Claim** for mental injury, mental anguish, or emotional distress directly resulting from a **Privacy Wrongful Act** or a **Media Wrongful Act.**

13. Any actual or alleged breach of contract, agreement, understanding, warranty, or other guarantee or promise; provided, however,

    a. with respect to breach of contract only, this exclusion shall not apply to any liability that would have attached to you in the absence of such contract; and

    b. this exclusion shall not apply to fines or penalties the **Named Insured** is obligated under contract to pay to its acquiring bank or a payment card association due to the **Named Insured's** violation of Payment Card Industry Data Security Standards (PCI-DSS).

14. Any liability or obligation assumed by **you** under any contract, agreement, understanding, warranty or other guarantee or promise; provided, however, that this exclusion shall not apply to:

    a. liability that would have attached to you in the absence of any such contract, agreement, understanding, warranty or other guarantee or promise; or

    b. fines or penalties the **Named Insured** is obligated under contract to pay to its acquiring bank or a payment card association due to the **Named Insured's** violation of Payment Card Industry Data Security Standards (PCI-DSS).

15. Any fact, circumstance, subject, decision, transaction, event or situation:

    a. which was the subject of notice prior to the inception of this Endorsement to any other insurance carrier under any other policy;

    b. of which any principal, partner, or executive officer of the **Named Insured** was aware prior to the Effective Date of this Endorsement or any other Endorsement issued by **Us** that such fact, circumstance, subject, decision, transaction, event or situation could reasonably have been expected to give rise to a **Claim, Regulatory Proceeding, Privacy Breach Event** or **Network Disruption.**

16. Any litigation, proceeding or investigation prior to or pending on the Effective Date of this Endorsement, or any **Claim, Regulatory Proceeding, Privacy Breach Event, Related Event, Related Claim,** fact, circumstance, subject, decision, transaction, event, situation, cause, proceeding or investigation underlying or alleged therein.

17. Any actual or alleged:

    a. discrimination of any kind; or

    b. wrongful employment practice of any kind.

18. Any actual or alleged:

    a. antitrust, restraint of trade, unfair, false or deceptive trade practice, or violation of any federal, state, local or foreign legislation, regulation or law prohibiting any antitrust activity, price fixing, price discrimination, monopoly or monopolization, predatory pricing, unfair competition, collusion, conspiracy or unfair, false, misleading or deceptive trade or business practice, advertising or promotion; or

| Coverage Form | CC 10 |
|---|---|

**CYBER COVERAGE FORM**

   b.  false, misleading, deceptive or fraudulent statement or representation advertising or promoting the products, services or business of the **Insured**.

19.  Any actual or alleged violation of any federal, state, local or foreign securities-related legislation, regulation or law.

20.  Any:

   a.  Nuclear reaction, nuclear radiation, radioactive contamination, radioactive substance, electromagnetic field, electromagnetic radiation, or electromagnetism.

   b.  War, invasion, acts of foreign enemies, hostilities (whether war is declared or not), rebellion, revolution, insurrection, war-like action, coup, usurped powers or military power.

   c.  Fire, flood, earthquake, volcanic eruption, explosion, lightning, wind, hail, tidal wave, landslide, act of God or other physical event.

21.  The violation of any United States economic or trade sanction.

22.  Any actual or alleged:

   a.  failure to take reasonable and prudent steps to use, design, maintain and upgrade your security; or

   b.  inability to use, or lack of performance of, software: (a) due to expiration, cancellation, or withdrawal of such software; (b) that has not yet been released from its development stage; or (c) that has not passed all test runs or proven successful in applicable daily operations.

23.  The presence, discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, oil or other petroleum substances or derivatives, waste materials or other irritants, contaminants, pollutants or any other substances, including asbestos, fungus, mold and lead, which are or may be injurious to public health, property or the environment ("hazardous substances"), including:

   a.  the cost of cleanup or removal of hazardous substances;

   b.  the cost of such actions as may be necessary to monitor, assess and evaluate, the presence, discharge, dispersal, escape, release, or threat of same, of hazardous substances;

   c.  the cost of disposal of hazardous substances or the taking of such other action as may be necessary to temporarily or permanently prevent, minimize, or mitigate damage to the public health or welfare or to property or the environment, which may otherwise result; or

   d.  any cost, based upon, arising from, in consequence of, directly or indirectly resulting from, or involving in any way any government direction or request that the **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize hazardous substances.

**B.**  **We** shall not be liable to pay **Damages** or **Claim Expenses** from:

1.  Any **Claim** against **you** that is brought by or on behalf of:

   a.  any other **Insured**, other than a **Claim** by an employee of the **Named Insured** for a **Privacy Wrongful Act**;

   b.  any entity which is owned or controlled by, is under common ownership or control with, any **Insured**;

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

| Coverage Form | CC 10 |
|---|---|

**CYBER COVERAGE FORM**

Policy Number: CPP    2083060

c.  any person or entity which owns or controls any **Named Insured;**

d.  any entity of which any **Insured** is a director, officer, partner or principal shareholder; or

e.  any independent contractor of an **Insured.**

2.  Any **Claim** against **you** that is brought by or on behalf of any federal, state, local or foreign administrative, governmental, or regulatory agency, tribunal, body or similar or equivalent entity; however, this exclusion shall not apply if a **Claim** is brought by any such entity as a client and the **Claim** is for a **Wrongful Act** in connection with the client relationship between such entity and the **Named Insured;** or

3.  Any **Claim** based on, resulting from or arising out of any **Media Wrongful Act** committed or which took place in whole or in part before the inception date of the earliest policy issued to the **Named Insured** that offered on a continuous basis the same or substantially equivalent coverage as the relevant coverage provided under this Endorsement;

4.  Any **Claim** or **Regulatory Proceeding** based on, resulting from, arising out of or related to a **Privacy Breach Event**:

    a.  that was not timely reported to **us** under Section V. CONDITION B.; or

    b.  that was not first discovered by **you** during the **Endorsement Period** or, if this Endorsement was not renewed, within thirty (30) days after the end of the **Endorsement Period;** or

5.  Any **Claim** against **you** or brought by any insurer who may be liable under, any Workers' Compensation, Unemployment Compensation, Disability Benefits Law, the

Employee Retirement Income Security Act of 1974, as amended, or any similar federal, state, local or foreign legislation, regulation or law.

**SECTION IV - LIMITS OF INSURANCE AND DEDUCTIBLE**

A.  The Third Party Cyber Liability Coverage Limit of Insurance specified in A. of the Schedule and the rules detailed below fix the maximum amount **we** are obligated to pay for all **Damages** and **Claim Expenses** from each **Claim** or **Related Claims** and all **Claims** or **Related Claims** under this Endorsement, as detailed in Insuring Agreement A.1. This Limit of Insurance shall be part of, and not in addition to, the Cyber Coverage Aggregate Limit of Insurance specified in the Schedule.

B.  The **Regulatory Proceeding Claim Expense** Coverage Limit of Insurance specified in B. of the Schedule and the rules detailed below fix the maximum amount **we** are obligated to pay for all **Claim Expenses** and **Regulatory Fines** from each **Regulatory Proceeding** and all **Regulatory Proceedings** under this Endorsement, as detailed in Insuring Agreement A.2. The **Regulatory Proceeding Claim Expense** Coverage Limit of Insurance shall be part of, and not in addition to, the Cyber Coverage Aggregate Limit of Insurance specified in the Schedule.

C.  The First Party **Privacy Breach Expense** Coverage Limit of Insurance specified in C. of the Schedule and the rules detailed below fix the maximum amount **we** are obligated to pay for all **Privacy Breach Expenses** from each **Privacy Breach Event** or **Extortion Threat** or **Related Events** under this Endorsement, as detailed in Insuring Agreement A.3.

The maximum amount **we** are to pay for all **Data Replacement Expenses** from all **Privacy Breach Events** under this Policy is the First Party **Data Replacement Expenses** Coverage Aggregate Limit of Insurance specified in I.E.

| Coverage Form | CC 10 |

**CYBER COVERAGE FORM**

of the Policy Declarations, which shall be part of, and not in addition to, the **Privacy Breach Expense** Limit of Insurance.

The **Privacy Breach Expense** Coverage Limit of Insurance shall be part of, and not in addition to, the Cyber Coverage Aggregate Limit of Insurance specified in the Schedule.

D.  First Party Business Interruption Coverage Aggregate Limit of Insurance specified in D. of the Schedule and the rules detailed below fix the maximum amount **we** are to pay for all **Business Income Loss** and **Extra Expense** from all **Network Disruptions** under this Endorsement, as detailed in Insuring Agreement A.4. The First Party **Business Income Loss** and **Extra Expense** Aggregate Limit of Insurance shall be part of, and not in addition to, the Cyber Coverage Aggregate Limit of Insurance specified in the Schedule.

E.  The Cyber Coverage Aggregate Limit of Insurance specified in F. of the Schedule shall fix the maximum amount **we** shall pay for all **Damages** and **Claim Expenses** from all **Claims**, all **Claim Expenses** from all **Regulatory Proceedings**, all **Privacy Breach Expenses** from all **Privacy Breach Events**, and all **Extortion Threats**, all **Business Income Loss** and **Extra Expense** from all **Network Disruptions** and all **Related Claims** and **Related Events** covered under this Endorsement.

F.  Applicable rules to the **LIMITS OF INSURANCE**:

1.  The applicable Limit of Insurance stated in the Schedule is the maximum **we** will pay regardless of the number of **Insureds**, individuals or organizations that make a **Claim**, the number of **Claims**, **Regulatory Proceedings** or **Privacy Breach Events**, **Extortion Threats** or **Network Disruptions**.

2.  If any Limit of Insurance is exhausted, the

premium for this Endorsement shall be deemed fully earned.

G.  **DEDUCTIBLE**

For any **Claim**, **Regulatory Proceeding**, **Privacy Breach Event**, or **Extortion Threat** we shall be liable for only the amount of the **Claim Expenses**, **Damages**, and **Privacy Breach Expenses** from such **Claim**, **Regulatory Proceeding**, **Privacy Breach Event** or **Extortion Threat** exceeding the Deductible amount specified in the Schedule. **We** have no obligation, either to **you** or to any person or entity, to pay all or any portion of any Deductible amount for or on **your** behalf. Solely for the purpose of applying the Deductible, a single Deductible amount applies to all **Regulatory Proceedings**, **Related Claims**, **Related Events** based upon, arising from, in consequence of, directly or indirectly resulting from, or involving in any way continuous, repeated, the same, related, or substantially similar thefts or unauthorized disclosures of **Protected Information**.

**SECTION V - CONDITIONS**

A.  **RELATED CLAIMS, RELATED EVENTS AND REGULATORY PROCEEDINGS**

1.  All **Related Claims**, whenever discovered, shall be deemed to be a single **Claim**, regardless of

   a.  the number of **Related Claims**;

   b.  the number or identity of claimants;

   c.  the number or identity of **Insureds** involved;

   d.  whether the **Related Claims** are asserted in a class action or otherwise; or

   e.  the number and timing of the **Related Claims**, even if the **Related Claims** comprising such single **Claim** were received or discovered in more than one **Endorsement Period**.

| Coverage Form | CC 10 |
| --- | --- |

**CYBER COVERAGE FORM**

All **Related Claims** shall be treated as a single **Claim** discovered when the earliest of such **Related Claims** was first discovered, or when the earliest of such **Related Claims** is treated as having been first discovered under Condition B. below, whichever is the earliest date.

2. All **Related Events**, whenever occurring, shall be deemed to be a single **Privacy Breach Event**, regardless of:

   a. the number of **Related Events**;

   b. the number or identity of **Insureds** involved; or

   c. the number and timing of the **Related Events**, even if the **Related Events** comprising such single **Privacy Breach Event** occurred in more than one **Endorsement Period**.

   All **Related Events** shall be treated as a single **Privacy Breach Event** or **Extortion Threat** first discovered when the earliest of such **Related Events** was first discovered.

3. All **Regulatory Proceedings** and **Related Claims** based upon, arising from, in consequence of, directly or indirectly resulting from, or involving in any way continuous, repeated, the same, related, or substantially similar thefts or unauthorized disclosures of **Protected Information** shall be deemed first discovered when the earliest of such **Related Claims** or **Regulatory Proceedings** was first discovered, or when the earliest of such **Related Claims** or **Regulatory Proceedings** is treated as having been first discovered under Condition B. below, whichever is the earliest date.

B. **NOTICE OF PRIVACY BREACH EVENTS, NETWORK DISRUPTIONS, EXTORTION THREATS, REGULATORY PROCEEDINGS AND CLAIMS**

1. **You** shall report to **us** a **Privacy Breach Event**, **Extortion Threat** or **Network Disruption** for which coverage is being sought under this Endorsement immediately, but in no event later than thirty (30) days after **you** first discovered such **Privacy Breach Event**, **Extortion Threat** or **Network Disruption**. Such reporting must include full particulars. Any subsequent **Claim** for a **Privacy Wrongful Act** or **Regulatory Proceeding** directly related to such **Privacy Breach Event** shall be treated as a **Claim** or **Regulatory Proceeding** first discovered at the time **you** first discovered such **Privacy Breach Event**.

2. The **Named Insured** must give **us** written notice of any **Claim** or **Regulatory Proceeding** as soon as practicable, but in no event later than thirty (30) days after **you** first receive such **Claim** or **Regulatory Proceeding**. If the **Claim** is for a **Media Wrongful Act** or **Network Security Wrongful Act**, the date **you** first received such **Claim** shall be deemed the date **you** first discovered such **Claim**.

3. If, during the **Endorsement Period, you** become aware of any **Wrongful Act** or circumstance which could reasonably be expected to give rise to a **Claim**, **Regulatory Proceeding** or **Privacy Breach Event**, the **Named Insured** must provide written notice thereof to **us** as soon as practicable, but in no event later than the end of the **Endorsement Period**. The notice shall contain full particulars, including but not limited to:

   a. the names of the potential claimant and the **Insureds** involved and a time, date, location and description of the specific **Wrongful Act** which forms the basis of the potential **Claim** or **Regulatory Proceeding;**

| Coverage Form | CC 10 |
|---|---|

**CYBER COVERAGE FORM**

b. the nature of the potential **Damages** arising from such specific **Wrongful Act**;

c. a description of the circumstance or **Wrongful Act** and how **you** first became aware of the **Wrongful Act** or potential **Privacy Breach Event**; and

d. the reason **you** reasonably believe such **Wrongful Act** or circumstance is likely to result in a **Claim**, **Regulatory Proceeding** or **Privacy Breach Event**.

Any **Claim** for a **Media Wrongful Act** or **Network Security Wrongful Act** arising out of such reported **Wrongful Act** shall be treated as a **Claim** or **Regulatory Proceeding** first discovered when such written notice was delivered to **us**.

Any **Claim** for a **Privacy Wrongful Act** or **Regulatory Proceeding** arising out of such reported **Wrongful Act** shall be treated as a **Claim** or **Regulatory Proceeding** first discovered at the earlier of: (1) the date when such written notice was delivered to **us**; or (2) the date **you** first discovered a **Privacy Breach Event** as to which such **Claim** or **Regulatory Proceeding** is directly related, provided **you** reported such **Privacy Breach Event** to **us** in accordance with Condition B.1. above.

4. Insured's Duties in the Event of a **Claim**, **Regulatory Proceeding**, **Privacy Breach Event**, **Extortion Threat** or **Network Disruption**.

a. If there is a **Claim**, **Regulatory Proceeding**, **Privacy Breach Event**, **Extortion Threat** or **Network Disruption**, **you** must also do the following:

   i. Fully assist and cooperate with us in the conduct, defense, investigation, negotiation and settlement of any **Claim**, **Regulatory Proceeding**, **Privacy Breach Event**, **Extortion Threat** or **Network Disruption**. At **our** request, **you** must: submit to an examination under oath; provide us with written statements; attend meetings and negotiations; produce and make available all information, books, records, documents and other materials which we deem relevant to the **Claim**, **Regulatory Proceeding**, **Privacy Breach Event**, **Extortion Threat** or **Network Disruption** or coverage therefore; attend hearings, depositions, proceedings, trials and appeals; assist **us** in effecting settlements, securing and giving evidence and obtaining the attendance of witnesses, and pursuing or enforcing any right of contribution or indemnity against a person or entity who may be liable to **you**.

   ii. **You** must do whatever is necessary to secure and affect any rights of indemnity, contribution or apportionment that **you** may have.

   iii. **You** shall accept our assignment of counsel and shall refrain from discussing any **Claim**, **Regulatory Proceeding**, **Privacy Breach Event**, **Extortion Threat** or **Network Disruption** with anyone other than counsel retained to represent the **Insured** or our representatives.

   iv. With respect to a **Privacy Breach Event** or **Extortion Threat**, **you** must take all reasonable steps to protect **Computer Systems** and **Protected Information** from further loss or damage, and keep a record of the expenses necessary to protect such **Computer Systems** and **Protected Information**.

| Coverage Form | CC 10 |
|---|---|

**CYBER COVERAGE FORM**

v. With respect to a **Network Disruption, you** must take all reasonable steps and measures to limit or mitigate the **Business Income Loss** and the incurrence of **Extra Expenses**.

b. Within six (6) months after the discovery of any **Network Disruption**, the **Named Insured** must furnish **us** with a written proof of the **Named Insured's** claimed loss, duly sworn to, with full particulars.

c. No **Insured** will, except at its own cost, voluntarily make a payment, admit liability, retain attorneys, consultants, or vendors, assume any other obligation, or accept or reject arbitration without our prior written consent. Any payments, settlements or admissions **you** make without **our** prior written consent will be made at **your** own expense.

**C. VALUATION OF BUSINESS INCOME LOSS**

**Business Income Loss** will be calculated on an hourly basis based on the actual **Business Income Loss** the **Named Insured** sustains during the time period in which the **Named Insured's Computer System** is affected by the **Network Disruption**. In determining the amount of net profit or loss and expenses covered for the purpose of ascertaining the amount of **Business Income Loss, we** will give due consideration to the net profit or loss of the **Named Insured** before the **Network Disruption** occurred and the probable net profit or loss of the **Named Insured** if no **Network Disruption** had occurred. However, such net profit or loss calculations shall not include, and no coverage shall be provided for, net income that would likely have been earned as a result of an increase in the volume of the **Named Insured's** business due to favorable business conditions caused by the impact of any internet, computer or network disruption suffered by other businesses.

**D. BANKRUPTCY**

Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate will not relieve **us** of any of **our** obligations under this Endorsement.

**E. ACTION AGAINST US**

No action shall be brought against **us** by any **Insured**, unless, as a condition precedent thereto:

1. all **Insureds** have fully complied with all the terms and conditions of this Endorsement; and

2. with respect to a **Claim**, the amount of **Damages** has been fixed or rendered certain:

   a. by final judgment against the **Insured** after trial of the issues; and

   b. the time to appeal such judgment has expired without an appeal being taken; and

   c. if appeal is taken, after the appeal has been determined; and

   d. the **Claim** is settled in accordance with the terms and conditions of this Endorsement.

No individual or entity shall have any right under this Endorsement to join **us** as a party to any **Claim** to determine the liability of any **Insured**; nor shall **we** be impleaded by **you** or **your** legal representative in any such **Claim**.

In no event shall any action brought by anyone be maintained against **us** unless such action is brought within twenty-four (24) months from the time the right to bring action first became available. With respect to a **Network Disruption**, no legal proceedings for the recovery of any **Business Income Loss** or **Extra Expense** may be brought prior to the expiration of sixty (60) days after the **Named Insured's** original proof of loss is submitted to **us**.

| Coverage Form | CC 10 |
|---|---|

**CYBER COVERAGE FORM**

**F. OTHER INSURANCE**

This insurance shall be excess of and not contribute with all other insurance, whether collectible or not, that affords coverage for a **Wrongful Act**, a **Privacy Breach Event** or a **Network Disruption**.

This condition does not apply to other insurance that is specifically and intentionally written to apply in excess of the limits provided by this Endorsement.

**G. ASSIGNMENT OF THE INSURED'S INTEREST**

The interest of the **Insured** under this Endorsement is not assignable to any other person or organization, except with **our** prior written consent.

**H. TRANSFER OF RIGHTS OF RECOVERY / SUBROGATION**

If there is a payment made by **us**, **we** shall be subrogated to all of **your** rights of recovery against any person or organization. **You** will cooperate with **us** and do whatever is necessary to secure and recover upon these rights, including but not limited to executing any documents necessary to enable **us** to effectively bring suit in **your** name. **You** shall do nothing that may prejudice **our** position or potential or actual rights of recovery. **Your** rights and obligations hereunder shall survive the expiration, cancellation, or termination of this Endorsement.

With respect to a **Claim**, any amount recovered upon the exercise of such rights of recovery will be applied on the following terms: first, to the repayment of expenses incurred by exercise of such subrogation rights; second, to **Damages** or **Claim Expenses** paid by the **Named Insured** in excess of the Limits of Insurance; third, to **Damages** or **Claim Expenses** paid by **us**; and finally, to **Damages** or **Claim Expenses** paid by the **Named Insured** toward the Deductible.

With respect to any **Privacy Breach Event** or **Network Disruption**, any amount recovered upon the exercise of such rights of recovery will be applied on the following terms: first, to the repayment of expenses incurred by exercise of such subrogation rights; second, to amounts paid by the **Named Insured** in excess of the Limits of Insurance; third, to amounts paid by **us**; and finally, to amounts paid by the **Named Insured** toward the Deductible.

Notwithstanding the foregoing, **we** agree to waive any right of subrogation hereunder against a client of the **Named Insured**, with respect to any payment made in connection with a **Claim** if, and to the extent that, prior to the occurrence of any **Wrongful Act** or **Privacy Breach Event** giving rise to such **Claim**, the **Named Insured** had agreed to waive its rights of subrogation against such client pursuant to a prior written contract or agreement.

**I. CANCELLATION**

This Endorsement may be canceled or nonrenewed as provided in the terms and conditions that apply to the policy or Coverage Part to which it is attached. The **Endorsement Period** will end at the same time and date that any cancellation or nonrenewal of the policy or Coverage Part to which it is attached takes effect.

**J. CHANGES MADE TO THIS ENDORSEMENT**

The terms and conditions of this Endorsement cannot be waived or changed except by specific written endorsement issued by us and made part of the Endorsement.

**K. AUDIT**

**We** may examine and audit **your** books and records at any time during the **Endorsement Period** and within three (3) years after the expiration or termination date of this Endorsement as far as they relate to this Endorsement.

| Coverage Form | CC 10 |
|---|---|

**CYBER COVERAGE FORM**

**L.  FALSE OR FRAUDULENT CLAIMS**

If an **Insured** reports any matter knowing it to be false or fraudulent, **we** will not be liable to make any payments related to that matter.

**M.  TERMS AND CONDITIONS OF ENDORSE-MENT CONFORMED TO STATUTE**

Where necessary, the terms and conditions of this Endorsement will be amended to conform to applicable law.

**N.  PREMIUM**

The premium amount for this Endorsement is stated in the Schedule and is for coverage for the **Endorsement Period**. If during the **Endorsement Period** there is a change in coverage afforded, we have the right to adjust the premium as of the date of the change. Any premium adjustment shall be made in accordance with our prevailing rules and rates.

Premium shown as advance premium is a minimum and deposit premium. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable by notice to the first **Named Insured**.

If the premium for this Endorsement is a flat premium, it is not subject to adjustment.

**O.  TERRITORY**

This Endorsement applies to **Wrongful Acts**, **Privacy Breach Events** and **Network Disruptions** taking place anywhere in the world except Countries or States against which the United States has implemented trade or diplomatic sanctions. However, any **Claim** or **Regulatory Proceeding** must be brought in the United States.

**P.  CHANGE IN RISK**

1.  If, during the **Endorsement Period**, the **Named Insured** acquires or creates another entity (other than a joint venture or partnership, which is addressed below)

whose annual revenues are more than ten percent (10%) of the **Named Insured's** total annual revenues as set forth in the most recent Application for insurance, or if the **Named Insured** merges or consolidates with another entity such that the **Named Insured** is the surviving entity (any such acquired, created, merged or consolidated entity, including a new subsidiary, will be identified as the "Acquired Company"), then for a period of sixty (60) days after the effective date of the transaction, such Acquired Company shall be included as an **Named Insured** but only with respect to **Network Security Wrongful Acts** and **Privacy Wrongful Acts** first committed or allegedly committed after the effective date of such transaction, or **Privacy Breach Events**, **Extortion Threats** or **Network Disruptions** that first occur after the effective date of such transaction. Upon the expiration of the sixty (60) day period, there will be no coverage available under this Endorsement for any **Claim**, **Regulatory Proceeding**, **Privacy Breach Event**, **Extortion Threat** or **Network Disruption** based on, resulting from, arising out of, in consequence of, or in any way in connection with or involving, directly or indirectly, the Acquired Company unless within such sixty (60) day period:

a.  the **Named Insured** gives **us** such information regarding such transaction as **we** request;

b.  **We** have specifically agreed by written endorsement to this Endorsement to provide coverage with respect to such Acquired Company and the **Named Insured** accepts any terms, conditions, exclusions or limitations, including payment of additional premium, as **we**, in **our** sole discretion, impose in connection with the transaction; and

| Coverage Form | CC 10 |

**CYBER COVERAGE FORM**

c. the **Named Insured** has paid the additional premium, if any, **we** charge and has agreed to any modifications to this Endorsement.

2. If, during the **Endorsement Period**, the **Insured** becomes a member of a new joint venture or partner in a new partnership, there will be no coverage available under this Endorsement for any **Claim**, **Damages**, **Claim Expenses**, **Privacy Breach Event**, **Extortion Threat**, **Network Disruption** or **Wrongful Act** based on, resulting from, arising out of, in consequence of, or in any way in connection with or involving, directly or indirectly, such joint venture or partnership, unless:

a. the **Named Insured** gives **us** such information regarding the new joint venture or partnership as **we** request; and

b. **We** specifically agree by written endorsement to this Endorsement to provide coverage with respect to such new joint venture or partnership, and the **Named Insured** accepts any terms, conditions, exclusions or limitations, including payment of additional premium, as **we**, in **our** sole discretion, impose in connection with such transaction.

3. If, during the **Endorsement Period**, any of the following events occur:

a. the **Named Insured** first identified in the policy Declarations is dissolved, sold, acquired by, merged into, or consolidated with another entity such that such **Named Insured** is not the surviving entity; or

b. a third party receiver, conservator, trustee, liquidator, rehabilitator or any similar official is appointed for or with respect to the **Named Insured** first identified in the policy Declarations;

coverage under this Endorsement shall continue in full force and effect until the Expiration Date or any earlier cancellation or termination date, but this Endorsement shall only apply to **Wrongful Acts** first committed or allegedly committed before the effective date of such event or a **Privacy Breach Event**, **Extortion Threat** or **Network Disruption** that first occurs before the effective date of such event. There will be no coverage available under this Endorsement based on, resulting from, arising out of, in consequence of, or in any way in connection with or involving, directly or indirectly any **Wrongful Act** committed or allegedly committed on or after the effective date of such event or any **Privacy Breach Event**, **Extortion Threat** or **Network Disruption** that occurs after the effective date of such event.

Q. **ENTIRE AGREEMENT**

The **Insureds** agree that this Endorsement, including the application, Schedule and any endorsements, constitutes the entire agreement between them and the Company or any of its agents relating to this insurance.

R. **ECONOMIC AND TRADE SANCTIONS OR VIOLATIONS OF LAW**

Any **Claim**, **Regulatory Proceeding**, **Privacy Breach Event**, **Extortion Threat**, **Network Disruption** or matter uninsurable under any act, statute, rule, regulation, ordinance, common law, or other law of the United States of America concerning trade or economic sanctions or export control laws is not covered under this Endorsement.

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

# COMMERCIAL POLICY CHANGE
## ENDORSEMENT IL 16

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured/Mailing Address: | Agency Name/Address/Code Number: |
|---|---|
| CYCLE-TEX INC<br>1711 KIMBERLY PARK DRIVE<br>DALTON GA 30720 | ADVANCED INSURANCE STRATEGIES<br>300 W EMERY STREET SUITE 205<br>PO BOX 709<br>DALTON, GA          30722<br>10-01314-00 |

| Policy Number:    Mod: | Effective Date of Change: | | End No. |
|---|---|---|---|
| CUP2083061-02 | 02/03/17 | at 12:01 AM Standard Time | 02 |

The following item(s):

- [ ] Insured's Name
- [X] Insured's Mailing Address
- [ ] Insured's Legal Entity/Business of Insured
- [ ] Premium Determination
- [ ] Additional Interested Parties
- [X] Coverage Forms and Endorsements

- [ ] Limits/Exposures
- [ ] Deductibles
- [ ] Covered Property/Location Description
- [ ] Classification/Class Codes
- [ ] Rates
- [ ] Vehicle(s)

Is (are) changed to read [See Additional Page(s)]:

APPLICABLE TO COMMERCIAL POLICY COVERAGE FORM,

AMENDING MAILING ADDRESS TO:

1711 KIMBERLY PARK DRIVE
DALTON GA 30720

_____
Authorized Representative

Annual Premium Change: _____0.00_____
Pro Rata Premium Change: _____0.00_____

Issue Date: 02/27/17
Acct. No:   0000191650

Premium does not include service charges.

Applicable to the State of Kentucky
Includes Kentucky Municipal Tax: _____
Includes Kentucky Surcharges Required by KRS 136.392: _____

AK967 (12-2009)

*AGENT COPY*

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA          30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@ais-ins.net
www.advancedinsurancestrategies.com

**Grange Mutual Casualty Company**
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named Insured and Address**

| | |
|---|---|
| **Policy Type:** *Commercial Umbrella* | |

**Reason Issued:** *Policy Change -*
**Policy Number:** *CUP 2083061-02*
**Renewal of:** *CUP 2083061-01*
**Issue Date:** *02/27/17*
**Change Effective Date:** *02/03/17*
**Acct. No:** *0000191650*

CYCLE-TEX INC
1711 KIMBERLY PARK DRIVE
DALTON GA   30720

---

## COMMERCIAL LIABILITY UMBRELLA DECLARATIONS

**Policy Period: From 07/01/16     To 07/01/17**     12:01 a.m. at the address of the Named Insured as shown above.

**Form of Business:**     *CORPORATION*
**Business Description:** *PLASTIC MFG*

**IN RETURN FOR THE PAYMENT OF PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE STATED IN THIS POLICY.**

**Commercial Liability Umbrella Limits Of Insurance**

$5,000,000 Each Occurrence Limit
$5,000,000 Personal and Advertising Injury Limit
$5,000,000 Aggregate Limit (except with respect to "covered autos")

**Retained Limit**

See Schedule of Underlying Insurance

None        Self-Insured Retention applicable to each "occurrence" or offense which is covered by this insurance
            but not covered by "underlying insurance"

**Advance Premium:**                                                                            $13,275.00

**Certified Acts of Terrorism:**                                                                 $133.00

Your Estimated Total Policy Premium Is     **$13,408.00**
Premium does not include service charges.
**THIS IS NOT A BILL.** Any outstanding balance due will be billed at a later date.

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S), SCHEDULE(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

Grange Mutual Casualty Company
P.O. Box 1218
Columbus, Ohio 43216-1218

## COMMERCIAL LIABILITY UMBRELLA DECLARATIONS
## SCHEDULE OF UNDERLYING INSURANCE

**Policy Number:** *CUP 2083061-02*                    **Renewal of:** *CUP 2083061-01*

**Named Insured:** CYCLE-TEX INC                    **Policy Period: From 07/01/16    To  07/01/17**
**Issue Date:** *02/27/17*
**Change Effective Date:** *02/03/17*
**Reason Issued:** *Policy Change -*

**YOUR POLICY REQUIRES THAT YOU KEEP THE UNDERLYING INSURANCE COVERAGES AND LIMITS OF INSURANCE SHOWN IN THIS SCHEDULE IN FULL EFFECT THROUGHOUT THE POLICY PERIOD. REFER TO THE MAINTENANCE OF UNDERLYING INSURANCE CONDITION.**

```
Type of Insurance:      Commercial General Liability
Carrier:                Grange Mutual Casualty Company
Policy Number:          CPP 2083060-02
Policy Period:          Effective Date:  07/01/2016  Expiration Date:  07/01/2017
Limits of Insurance:

  $1,000,000  Each Occurrence
  $1,000,000  Personal and Advertising Injury
  $2,000,000  General Aggregate Limit (Other than Products/Completed Operations)
  $2,000,000  Aggregate - Products/Completed Operations

Type of Insurance:      Employee Benefits Liability
Carrier:                Grange Mutual Casualty Company
Policy Number:          CPP 2083060-02
Policy Period:          Effective Date:  07/01/2016  Expiration Date:  07/01/2017
Limits of Insurance:

  $1,000,000  Each Claim
  $3,000,000  Aggregate Limit

Type of Insurance:      Employers Liability
Carrier:                BERKSHIRE HATHAWAY HOMESTATE  INS CO
Policy Number:          CYWC711317
Policy Period:          Effective Date:  07/01/2016  Expiration Date:  07/01/2017
Limits of Insurance:

  $1,000,000  Bodily Injury by Accident - Each Accident
  $1,000,000  Bodily Injury by Disease - Policy Limit
  $1,000,000  Bodily Injury by Disease - Each Employee

Type of Insurance:      Auto Liability
Carrier:                Grange Mutual Casualty Company
Policy Number:          CPP 2083060-02
Policy Period:          Effective Date:  07/01/2016  Expiration Date:  07/01/2017
Limits of Insurance:

  $1,000,000  Per Accident Combined Single Limits
```

CU241 (12-2006)                                                                                CUPOL2

**Endorsement**

| | | | |
|---|---|---|---|
| CU 21 27 | (12/04) | Fungi Or Bacteria Exclusion |
| CU 21 25 | (12/01) | Total Pollution Exclusion Endorsement |
| CU 00 01 | (04/13) | Commercial Liability Umbrella Coverage Form |
| CU 02 | (12/15) | Revised Coverage Provisions |
| CU 21 23 | (02/02) | Nuclear Energy Liability Exclusion Endorsement |
| CU 85 | (12/06) | Lead Exclusion |
| IL 00 17 | (11/98) | Common Policy Conditions |
| IL 43 | (05/11) | Common Policy Conditions Changes |
| CU 21 86 | (05/14) | Exclusion - Access Or Disclosure Of Confidential Or P... |
| CU 106 | (06/16) | Cyber Liability Coverage Exclusion |
| CU 03 | (12/06) | Redefined Coverage Territory |
| CU 01 48 | (09/00) | Georgia Changes |
| CU 02 22 | (02/15) | Georgia Changes - Cancellation And Nonrenewal |
| CU 21 30 | (01/15) | Cap On Losses From Certified Acts Of Terrorism |
| IL 09 85 | (01/15) | Disclosure Pursuant To Terrorism Risk Insurance Act |
| CU 20 | (12/06) | Excess Employee Benefits Liability Coverage (Claims Made |

\*   Indicates Added Form

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA        30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@ais-ins.net
www.advancedinsurancestrategies.com

**Grange Mutual Casualty Company**
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named Insured and Address**

---

| **Policy Type:** *Commercial Package* |
|---|

**Policy Number:** *CPP 2083060-02*
**Issue Date:** *03/13/17*
**ACCT. NO:**0000191650
**Change Effective Date:** *02/03/17*
**From:07/01/16**
**To: 07/01/17**
12:01 a.m. standard time.

CYCLE-TEX INC
1711 KIMBERLY PARK DR
DALTON GA   30720

---

## POLICY PREMIUM RECAP STATEMENT

| Line of Business/Coverages | Pro-Rated Premium Totals | Commission |
|---|---|---|
| Commercial Automobile Coverage Part | $34,264.00 | 15% |
| Commercial Property Coverage Part | $350.00 | 15% |
| Commercial Crime Coverage Part | $820.00 | 15% |
| Employee Benefits Liability Coverage Part | $230.00 | 15% |
| Commercial General Liability Coverage Part | $21,273.00 | 15% |
| Commercial Inland Marine Coverage Part | $575.00 | 15% |
| Third Party Administration Fee - Cyber Coverage | $17.50 | 00% |
| Certified Acts of Terrorism - Property | $1.00 | 15% |
| Certified Acts of Terrorism - General Liability | $91.00 | 15% |
| Certified Acts of Terrorism - Inland Marine | $3.00 | 15% |
| Manufacturers' Optimum Program | $1,066.00 | 15% |

Your Pro-Rated Premium Is        **$58,690.50**

**THIS IS NOT A BILL.** Any outstanding balance due will be billed at a later date.

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

# COMMERCIAL POLICY CHANGE
## ENDORSEMENT IL 16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

| Named Insured/Mailing Address: | Agency Name/Address/Code Number: |
|---|---|
| CYCLE-TEX INC<br>1711 KIMBERLY PARK DR<br>DALTON GA  30720 | ADVANCED INSURANCE STRATEGIES<br>300 W EMERY STREET SUITE 205<br>PO BOX 709<br>DALTON, GA            30722<br>10-01314-00 |

| Policy Number:    Mod: | Effective Date of Change: | | End No. |
|---|---|---|---|
| CPP2083060-02 | 02/03/17 | at 12:01 AM Standard Time | 02 |

The following item(s):

| | | | |
|---|---|---|---|
| ☐ | Insured's Name | ☐ | Limits/Exposures |
| ☒ | Insured's Mailing Address | ☐ | Deductibles |
| ☐ | Insured's Legal Entity/Business of Insured | ☐ | Covered Property/Location Description |
| ☐ | Premium Determination | ☐ | Classification/Class Codes |
| ☐ | Additional Interested Parties | ☐ | Rates |
| ☐ | Coverage Forms and Endorsements | ☐ | Vehicle(s) |

Is (are) changed to read [See Additional Page(s)]:

\* AMENDING INSURED'S MAILING ADDRESS.

_____
Authorized Representative

Annual Premium Change: _____ 1.00 ADD'L
Issue Date:  03/13/17          Pro Rata Premium Change: _____ 1.00 ADD'L
ACCT. NO:0000191650                    Premium does not include service charges.
Applicable to the State of Kentucky
Includes Kentucky Municipal Tax: _____
Includes Kentucky Surcharges Required by KRS 136.392: _____

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA      30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@ais-ins.net
www.advancedinsurancestrategies.com

**Grange Mutual Casualty Company**
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named Insured and Address**

---

**Policy Type:** *Commercial Package*

**Policy Number:** *CPP 2083060-02*
**Issue Date:** *05/11/17*
**ACCT. NO:***0000191650*
**Change Effective Date:** *05/10/17*
**From: 07/01/16**
**To: 07/01/17**
12:01 a.m. standard time.

CYCLE-TEX INC
1711 KIMBERLY PARK DR
DALTON GA   30720

---

## POLICY PREMIUM RECAP STATEMENT

| Line of Business/Coverages | Pro-Rated Premium Totals | Commission |
|---|---|---|
| Commercial Automobile Coverage Part | $34,264.00 | 15% |
| Commercial Property Coverage Part | $350.00 | 15% |
| Commercial Crime Coverage Part | $820.00 | 15% |
| Employee Benefits Liability Coverage Part | $230.00 | 15% |
| Commercial General Liability Coverage Part | $21,273.00 | 15% |
| Commercial Inland Marine Coverage Part | $575.00 | 15% |
| Third Party Administration Fee - Cyber Coverage | $17.50 | 00% |
| Certified Acts of Terrorism - Property | $1.00 | 15% |
| Certified Acts of Terrorism - General Liability | $91.00 | 15% |
| Certified Acts of Terrorism - Inland Marine | $3.00 | 15% |
| Manufacturers' Optimum Program | $1,066.00 | 15% |

Your Pro-Rated Premium Is      **$58,690.50**

**THIS IS NOT A BILL.** Any outstanding balance due will be billed at a later date.

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

# COMMERCIAL POLICY CHANGE
## ENDORSEMENT IL 16

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured/Mailing Address | Agency Name/Address/Code Number |
|---|---|
| CYCLE-TEX INC<br>1711 KIMBERLY PARK DR<br>DALTON GA 30720 | ADVANCED INSURANCE STRATEGIES<br>300 W EMERY STREET SUITE 205<br>PO BOX 709<br>DALTON, GA 30722<br>10-01314-00 |

| Policy Number    Mod | Effective Date of Change | End No |
|---|---|---|
| CPP2083060-02 | 05/10/17    at 12 01 AM Standard Time | 03 |

The following item(s):

| | | | |
|---|---|---|---|
| ☐ | Insured's Name | ☐ | Limits/Exposures |
| ☐ | Insured's Mailing Address | ☐ | Deductibles |
| ☐ | Insured's Legal Entity/Business of Insured | ☐ | Covered Property/Location Description |
| ☐ | Premium Determination | ☐ | Classification/Class Codes |
| ☐ | Additional Interested Parties | ☒ | Rates |
| ☒ | Coverage Forms and Endorsements | ☐ | Vehicle(s) |

Is (are) changed to read [See Additional Page(s)]:

```
* ADDING ENDORSEMENT CA 41, DRIVER EXCLUSION, FOR RAFAEL LOPEZ
* AMENDING DRIVER 3 RAFAEL LOPEZ MARITAL STATUS TO: SINGLE
```

_____
Authorized Representative

Annual Premium Change: _____0.00_____
Issue Date: 05/11/17                              Pro Rata Premium Change: _____0.00_____
ACCT. NO:0000191650                              Premium does not include service charges.
Applicable to the State of Kentucky
Includes Kentucky Municipal Tax: _____
Includes Kentucky Surcharges Required by KRS 136.392: _____

AK967 (12-2009)

Page 01 of 01

*AGENT COPY*

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA          30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@ais-ins.net
www.advancedinsurancestrategies.com

**Policy Type:** *Commercial Package*

**Reason Issued:** *Policy Change -*
*Multiple Changes*
**Policy Number:** *CPP  2083060-02*
**Change Effective Date:** *05/10/17*
**Issue Date:** *05/11/17*
**ACCT. NO:** *0000191650*

**Grange Mutual Casualty Company**
*P.O. Box 1218*
*Columbus, Ohio  43216-1218*

**ABS**

**Named Insured and Address**

CYCLE-TEX INC
1711 KIMBERLY PARK DR
DALTON GA   30720

**From: 07/01/16     To: 07/01/17**     12:01 a.m. standard time at the address of the named insured as shown above. These declarations together with the applications, the commercial lines policy jacket, common policy conditions, coverage part declarations, coverage part coverage form(s) and forms and endorsements, if any, issued to form a part thereof, complete the above numbered policy. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

## Commercial Policy Declarations

**Business Description**  *PLASTIC MFG*

This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

| Coverage Part(s) | Premium |
|---|---|
| Commercial Automobile Coverage Part | $34,264.00 |
| Commercial Property Coverage Part | $350.00 |
| Commercial Crime Coverage Part | $820.00 |
| Employee Benefits Liability Coverage Part | $230.00 |
| Commercial General Liability Coverage Part | $21,273.00 |
| Commercial Inland Marine Coverage Part | $575.00 |
| Certified Acts of Terrorism | $95.00 |
| Manufacturers' Optimum Program | $1,066.00 |
| Third Party Administration Fee - Cyber Coverage | $17.50 |

Your Estimated Total Policy Premium Is   **$58,690.50**

Premium does not include service charges.

The Premium Change From This Policy Change Is     $0.00

**THIS IS NOT A BILL.**

**Grange Mutual Casualty Company**
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

## MANUFACTURERS' OPTIMUM PROGRAM SCHEDULE

**Policy Number:** CPP 2083060-02          RENEWAL OF CPP 2083060 01

Amendment Of Policy Effective: May 10, 2017

**Named Insured:** CYCLE-TEX INC

These Coverages Apply To All Locations Covered On The Policy.


The Following Coverages Apply Only When Designated By an "X" In
The Box(es) Shown Below:

|  |  | Premium |
|---|---|---|
| [X] Manufacturers' Optimum Endorsement - IL 19 | | $1,066 |
| Total Manufacturers' Optimum Program Premium | | $1,066 |

## COMMERCIAL INLAND MARINE DECLARATION

**Policy Number:** CPP 2083060-02    RENEWAL OF CPP 2083060 01

Amendment Of Policy Effective: May 10, 2017

**Named Insured:** CYCLE-TEX INC

---

| Coverages | Limits | Premiums |
|-----------|--------|----------|
| Transportation Floater | $50,000 | $575 |

Total Commercial Inland Marine Part: $575.00

These Declarations Are Part Of The Policy Declarations Containing The Name Of The Insured And The Policy Period.

Form No. IM Dec    12/88                    Issued 05/11/17

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

# COMMERCIAL SPECIAL ENDORSEMENT
## SE 01

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured/Mailing Address | Agency Name/Address/Code Number |
|---|---|
| CYCLE-TEX INC<br>1711 KIMBERLY PARK DR<br>DALTON GA 30720 | ADVANCED INSURANCE STRATEGIES<br>300 W EMERY STREET SUITE 205<br>PO BOX 709<br>DALTON, GA          30722<br>100131400 |

| Policy Number          Mod | Effective Date of Change |
|---|---|
| CPP 2083060-02 | 05/10/17          at 12 01 AM Standard Time |

This endorsement modifies insurance provided under the following:
COMMERCIAL AUTO


This endorsement changes the policy effective on the inception date of the policy unless another date is indicated above.

COVERAGE EXTENDS TO HIRED CAR PHYSICAL DAMAGE ONLY TO THOSE
UNITS LEASED OR RENTED FROM PENSKE TRUCK LEASING LP

_____
Authorized Representative

**Issue Date:** 05/11/17

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA        30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
davep@ais-ins.net
www.advancedinsurancestrategies.com

**Grange Mutual Casualty Company**
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named Insured and Address**

---

| **Policy Type:** *Commercial Package* |
|---|

**Policy Number:** *CPP 2083060-02*
**Issue Date:** *04/16/18*
**ACCT. NO:** *0000191650*
**Change Effective Date:** *07/01/16*
**From: 07/01/16**
**To: 07/01/17**
12:01 a.m. standard time.

CYCLE-TEX INC
1711 KIMBERLY PARK DR
DALTON GA   30720

---

### POLICY PREMIUM RECAP STATEMENT

| Line of Business/Coverages | Pro-Rated Premium Totals | Commission |
|---|---:|---|
| Commercial Automobile Coverage Part | $34,264.00 | 15% |
| Commercial Property Coverage Part | $350.00 | 15% |
| Commercial Crime Coverage Part | $820.00 | 15% |
| Employee Benefits Liability Coverage Part | $230.00 | 15% |
| Commercial General Liability Coverage Part | $27,093.00 | 15% |
| Commercial Inland Marine Coverage Part | $575.00 | 15% |
| Third Party Administration Fee - Cyber Coverage | $17.50 | 00% |
| Certified Acts of Terrorism - Property | $1.00 | 15% |
| Certified Acts of Terrorism - General Liability | $91.00 | 15% |
| Certified Acts of Terrorism - Inland Marine | $3.00 | 15% |
| Manufacturers' Optimum Program | $1,066.00 | 15% |

Your Pro-Rated Premium Is     | **$64,510.50** |

**THIS IS NOT A BILL.** Any outstanding balance due will be billed at a later date.

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

# COMMERCIAL POLICY CHANGE
## ENDORSEMENT IL 16

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured/Mailing Address | Agency Name/Address/Code Number |
|---|---|
| CYCLE-TEX INC<br>1711 KIMBERLY PARK DR<br>DALTON GA 30720 | ADVANCED INSURANCE STRATEGIES<br>300 W EMERY STREET SUITE 205<br>PO BOX 709<br>DALTON, GA        30722<br>10-01314-00 |

| Policy Number     Mod | Effective Date of Change | | End No |
|---|---|---|---|
| CPP2083060-02 | 07/01/16 | at 12 01 AM Standard Time | 06 |

The following item(s):

| | | | |
|---|---|---|---|
| ☐ Insured's Name | ☒ Limits/Exposures |
| ☐ Insured's Mailing Address | ☐ Deductibles |
| ☐ Insured's Legal Entity/Business of Insured | ☐ Covered Property/Location Description |
| ☒ Premium Determination | ☒ Classification/Class Codes |
| ☐ Additional Interested Parties | ☐ Rates |
| ☐ Coverage Forms and Endorsements | ☐ Vehicle(s) |

Is (are) changed to read [See Additional Page(s)]:

AMENDING GENERAL LIABILITY EXPOSURES TO REFLECT THE RESULTS OF
THE RECENTLY COMPLETED 2016/17 PREMIUM AUDIT.

REFER TO THE PREMIUM AUDIT STATEMENT FOR ADDITIONAL DETAILS.

_____
Authorized Representative

Issue Date: 04/16/18
ACCT. NO:0000191650

Annual Premium Change: _____ 2,478.00 ADD'L
Pro Rata Premium Change: _____ 2,478.00 ADD'L
Premium does not include service charges.
Applicable to the State of Kentucky
Includes Kentucky Municipal Tax: _____
Includes Kentucky Surcharges Required by KRS 136.392: _____

AK967 (12-2009)

Page 01 of 01

*AGENT COPY*

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA        30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
davep@ais-ins.net
www.advancedinsurancestrategies.com

**Grange Mutual Casualty Company**
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named Insured and Address**

| **Policy Type:** *Commercial Package* |
|---|

**Policy Number:** *CPP 2083060-02*
**Issue Date:** *05/14/18*
**ACCT. NO:** *0000191650*
**Change Effective Date:** *07/01/16*
**From: 07/01/16**
**To: 07/01/17**
12:01 a.m. standard time.

CYCLE-TEX INC
1711 KIMBERLY PARK DR
DALTON GA   30720

## POLICY PREMIUM RECAP STATEMENT

| Line of Business/Coverages | Pro-Rated Premium Totals | Commission |
|---|---:|---|
| Commercial Automobile Coverage Part | $34,264.00 | 15% |
| Commercial Property Coverage Part | $350.00 | 15% |
| Commercial Crime Coverage Part | $820.00 | 15% |
| Employee Benefits Liability Coverage Part | $230.00 | 15% |
| Commercial General Liability Coverage Part | $20,093.00 | 15% |
| Commercial Inland Marine Coverage Part | $575.00 | 15% |
| Third Party Administration Fee - Cyber Coverage | $17.50 | 00% |
| Certified Acts of Terrorism - Property | $1.00 | 15% |
| Certified Acts of Terrorism - General Liability | $91.00 | 15% |
| Certified Acts of Terrorism - Inland Marine | $3.00 | 15% |
| Manufacturers' Optimum Program | $1,066.00 | 15% |

Your Pro-Rated Premium Is          | **$57,510.50** |

**THIS IS NOT A BILL.** Any outstanding balance due will be billed at a later date.

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

# COMMERCIAL POLICY CHANGE
## ENDORSEMENT IL 16

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured/Mailing Address | Agency Name/Address/Code Number |
|---|---|
| CYCLE-TEX INC<br>1711 KIMBERLY PARK DR<br>DALTON GA 30720 | ADVANCED INSURANCE STRATEGIES<br>300 W EMERY STREET SUITE 205<br>PO BOX 709<br>DALTON, GA      30722<br>10-01314-00 |

| Policy Number   Mod | Effective Date of Change | End No |
|---|---|---|
| CPP 2083060-02 | 07/01/16     at 12 01 AM Standard Time | 07 |

The following item(s):

- [ ] Insured's Name
- [ ] Insured's Mailing Address
- [ ] Insured's Legal Entity/Business of Insured
- [ ] Premium Determination
- [ ] Additional Interested Parties
- [ ] Coverage Forms and Endorsements

- [ ] Limits/Exposures
- [ ] Deductibles
- [ ] Covered Property/Location Description
- [ ] Classification/Class Codes
- [ ] Rates
- [ ] Vehicle(s)

Is (are) changed to read [See Additional Page(s)]:

```
AMENDING PREMIUM AUDIT 2016/2017 BASED ON REVISED INFO RECEIVED
HGS  5/14/2018
```

_____
Authorized Representative

Issue Date: 05/14/18
ACCT. NO:0000191650

Annual Premium Change: _____ 7,000.00 RETURN
Pro Rata Premium Change: _____ 7,000.00 RETURN
Premium does not include service charges.
Applicable to the State of Kentucky
Includes Kentucky Municipal Tax: _____
Includes Kentucky Surcharges Required by KRS 136.392: _____

*AGENT COPY*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**FUNGI OR BACTERIA**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**FUNGI OR BACTERIA**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc., 2003

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

Exclusion **i.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**i. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; or

**(2)** "Pollution cost or expense".

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**I.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property threat.

**II.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

© ISO Properties, Inc.,  2001

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2001 □

| Endorsement | CU 85 |
| --- | --- |

Policy Number:

## Lead Exclusion

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement modifies insurance provided under the following:

   COMMERCIAL LIABILITY UMBRELLA
   COVERAGE PART

This insurance does not apply to:

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened exposure to lead, paint containing lead, water containing lead, or any other material or substance containing lead; or

2. Any loss, cost or expense arising out of any:

   a. Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead, paint containing lead, water containing lead, or any other material or substance containing lead; or

   b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead, paint containing lead, water containing lead, or any other material or substance containing lead.

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 ☐

| Endorsement | IL 43 |

**Policy Number:**

**Common Policy Conditions Changes**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER COMMON POLICY CONDITIONS - IL 00 17.

The following condition is added:

**G. Our Right to Use Other Resources**

You and any insured seeking coverage under this policy agree that we have the right to utilize outside sources, vendors, experts, consultants, and software tools of our choosing to assist us in underwriting, pricing, and issuing our insurance policies and to assist us in adjusting claims.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**Section IV – Conditions** is amended by the following:

1. Paragraph **3.a.** of **Duties In The Event Of Accident, Claim, Suit Or Loss** is replaced by the following:

   **a.** In the event of an "occurrence", claim, "suit" or "loss", we or our representative must receive prompt notice of the "occurrence" or "loss". Include:

   **(1)** How, when and where the "occurrence" or "loss" occurred;

   **(2)** The insured's name and address; and

   **(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

The requirement for giving notice of a claim, if not satisfied by the insured within 30 days of the date of the "occurrence", may be satisfied by an injured third party who, as the result of such "occurrence", has a claim against the insured. However, in this event, notice of a claim given by an injured third party must be mailed to us.

2. Paragraph **7.d. Representations Or Fraud** is replaced by the following:

   **d.** We will not pay for any "loss" or damage in any case of fraud committed by you or any other insured, at any time, and relating to coverage under this policy.

**Redefined Coverage Territory**

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement modifies insurance provided under the following:

    COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

A. Paragraph **14. Expanded Coverage Territory** under **Section IV - Conditions** does not apply.

B. Paragraph **4.** under **Section V - Definitions** is replaced by the following:

    **4.** "Coverage territory" means anywhere in the world if the insured's responsibility to pay damages is determined in a "suit" on the merits, in the United States of America (including its territories and possessions), Puerto Rico and Canada, or in a settlement we agree to.

*Includes copyrighted material of Insurance Services Office, Inc. with its permission.*

# COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - Definitions.

## SECTION I - COVERAGES

## COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit" for which we have the duty to defend. But:

(1) The amount we will pay for the "ultimate net loss" is limited as described in Section III - Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b. This insurance applies to "bodily injury" or "property damage" that is subject to an applicable "retained limit". If any other limit, such as a sublimit, is specified in the "underlying insurance", this insurance does not apply to "bodily injury" or "property damage" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "underlying insurance".

c. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1.a. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

d. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1.a. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

© Insurance Services Office, Inc., 2012

e. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1.a. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

f. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

(a) The supervision, hiring, employment, training or monitoring of others by that insured; or

(b) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage" involved that which is described in Paragraph (1), (2) or (3) above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

This exclusion does not apply to the extent that valid "underlying insurance" for the liquor liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" and "property damage". To the extent this exclusion does not apply, the insurance provided under this Coverage Part for the liquor liability risks described above will follow the same provisions, exclusions and limitations that are contained in the applicable "underlying insurance", unless otherwise directed by this insurance.

 © Insurance Services Office, Inc., 2012

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **ERISA**

Any obligation of the insured under the Employee Retirement Income Security Act of 1974 (ERISA), and any amendments thereto or any similar federal, state or local statute.

f. **Auto Coverages**

(1) "Bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" which is not a "covered auto"; or

(2) Any loss, cost or expense payable under or resulting from any first-party physical damage coverage; no-fault law; personal injury protection or auto medical payments coverage; or uninsured or underinsured motorist law.

g. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

With respect to injury arising out of a "covered auto", this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits. For the purposes of this insurance, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

This exclusion does not apply to the extent that valid "underlying insurance" for the employer's liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury". To the extent this exclusion does not apply, the insurance provided under this Coverage Part for the employer's liability risks described above will follow the same provisions, exclusions and limitations that are contained in the applicable "underlying insurance", unless otherwise directed by this insurance.

h. **Employment-related Practices**

"Bodily injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraph (a), (b), or (c) above is directed.

This exclusion applies whether the injury-causing event described in Paragraph (a), (b) or (c) above occurs before employment, during employment or after employment of that person.

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

i. **Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; or

(2) "Pollution cost or expense".

This exclusion does not apply if valid "underlying insurance" for the pollution liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" and "property damage". To the extent this exclusion does not apply, the insurance provided under this Coverage Part for the pollution risks described above will follow the same provisions, exclusions and limitations that are contained in the applicable "underlying insurance", unless otherwise directed by this insurance.

**j. Aircraft Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 50 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft;

(4) The extent that valid "underlying insurance" for the aircraft or watercraft liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" or "property damage". To the extent this exclusion does not apply, the insurance provided under this Coverage Part for the aircraft or watercraft risks described above will follow the same provisions, exclusions and limitations that are contained in the "underlying insurance", unless otherwise directed by this insurance; or

(5) Aircraft that is:

(a) Chartered by, loaned to, or hired by you with a paid crew; and

(b) Not owned by any insured.

**k. Racing Activities**

"Bodily injury" or "property damage" arising out of the use of "mobile equipment" or "autos" in, or while in practice for, or while being prepared for, any prearranged professional or organized racing, speed, demolition, or stunting activity or contest.

**l. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**m. Damage To Property**

"Property damage" to:

(1) Property:

(a) You own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property; or

(b) Owned or transported by the insured and arising out of the ownership, maintenance or use of a "covered auto".

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

 © Insurance Services Office, Inc., 2012 CU 00 01 04 13

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(1)(b)**, **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraphs **(3)** and **(4)** of this exclusion do not apply to liability assumed under a written Trailer Interchange agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**n. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**o. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**p. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**q. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**r. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**s. Professional Services**

"Bodily injury" or "property damage" due to rendering of or failure to render any professional service. This includes but is not limited to:

**(1)** Legal, accounting or advertising services;

**(2)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings or specifications;

**(3)** Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager;

**(4)** Engineering services, including related supervisory or inspection services;

**(5)** Medical, surgical, dental, X-ray or nursing services treatment, advice or instruction;

**(6)** Any health or therapeutic service treatment, advice or instruction;

**(7)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, or personal grooming or therapy;

**(8)** Any service, treatment, advice or instruction relating to physical fitness, including service, treatment, advice or instruction in connection with diet, cardiovascular fitness, bodybuilding or physical training programs;

**(9)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(10)** Body piercing services;

**(11)** Services in the practice of pharmacy;

**(12)** Law enforcement or firefighting services; and

**(13)** Handling, embalming, disposal, burial, cremation or disinterment of dead bodies.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", involved the rendering of or failure to render any professional service.

t. **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

This exclusion does not apply if valid "underlying insurance" for the electronic data risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" and "property damage". The insurance provided under this Coverage Part will follow the same provisions, exclusions and limitations that are contained in the applicable "underlying insurance", unless otherwise directed by this insurance.

u. **Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**

a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "personal and advertising injury" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. At our discretion, we may investigate any offense that may involve this insurance and settle any resultant claim or "suit" for which we have the duty to defend. But:

(1) The amount we will pay for the "ultimate net loss" is limited as described in Section III - Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b. This insurance applies to "personal and advertising injury" that is subject to an applicable "retained limit". If any other limit, such as a sublimit, is specified in the "underlying insurance", this insurance does not apply to "personal and advertising injury" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "underlying insurance".

c. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

 © Insurance Services Office, Inc., 2012 CU 00 01 04 13

## 2. Exclusions

This insurance does not apply to:

a. "Personal and advertising injury":

**(1) Knowing Violation Of Rights Of Another**

Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**(2) Material Published With Knowledge Of Falsity**

Arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**(3) Material Published Prior To Policy Period**

Arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**(4) Criminal Acts**

Arising out of a criminal act committed by or at the direction of the insured.

**(5) Contractual Liability**

For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to:

(a) Liability for damages that the insured would have in the absence of the contract or agreement.

(b) Liability for false arrest, detention or imprisonment assumed in a contract or agreement.

**(6) Breach Of Contract**

Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**(7) Quality Or Performance Of Goods – Failure To Conform To Statements**

Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**(8) Wrong Description Of Prices**

Arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**(9) Infringement Of Copyright, Patent, Trademark Or Trade Secret**

Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**(10) Insureds In Media And Internet Type Businesses**

Committed by an insured whose business is:

(a) Advertising, broadcasting, publishing or telecasting;

(b) Designing or determining content of web sites for others; or

(c) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**(11) Electronic Chatrooms Or Bulletin Boards**

Arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**(12) Unauthorized Use Of Another's Name Or Product**

Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**(13) Pollution**

Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(14) Employment-related Practices**

To:

(a) A person arising out of any:

   (i) Refusal to employ that person;

   (ii) Termination of that person's employment; or

   (iii) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

(b) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraph (i), (ii) or (iii) above is directed.

This exclusion applies whether the injury-causing event described in Paragraph (i), (ii) or (iii) above occurs before employment, during employment or after employment of that person.

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**(15) Professional Services**

Arising out of the rendering of or failure to render any professional service. This includes but is not limited to:

(a) Legal, accounting or advertising services;

(b) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings or specifications;

(c) Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager;

(d) Engineering services, including related supervisory or inspection services;

(e) Medical, surgical, dental, X-ray or nursing services treatment, advice or instruction;

(f) Any health or therapeutic service treatment, advice or instruction;

(g) Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, or personal grooming or therapy;

(h) Any service, treatment, advice or instruction relating to physical fitness, including service, treatment, advice or instruction in connection with diet, cardiovascular fitness, bodybuilding or physical training programs;

(i) Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

(j) Body piercing services;

(k) Services in the practice of pharmacy;

(l) Law enforcement or firefighting services; and

(m) Handling, embalming, disposal, burial, cremation or disinterment of dead bodies.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional service.

**(16) War**

However caused, arising, directly or indirectly, out of:

(a) War, including undeclared or civil war;

(b) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(c) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

© Insurance Services Office, Inc., 2012 CU 00 01 04 13

**(17) Recording And Distribution Of Material Or Information In Violation Of Law**

Arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(a)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(b)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(c)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(d)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**b.** "Pollution cost or expense".

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend, when the duty to defend exists:

**a.** All expenses we incur.

**b.** Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "occurrence" we cover. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** When we have the right but not the duty to defend the insured and elect to participate in the defense, we will pay our own expenses but will not contribute to the expenses of the insured or the "underlying insurer".

**3.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I - Coverage A - Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II - WHO IS AN INSURED

**1.** Except for liability arising out of the ownership, maintenance or use of "covered autos":

**a.** If you are designated in the Declarations as:

**(1)** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**(2)** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**(3)** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**(4)** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**(5)** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**b.** Each of the following is also an insured:

**(1)** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(a)** "Bodily injury" or "personal and advertising injury":

**(i)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" in the course of his or her employment or performing duties related to the conduct of your business or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(ii)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(a)(i)** above; or

**(iii)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(a)(i)** or **(ii)** above.

**(b)** "Property damage" to property:

**(i)** Owned, occupied or used by;

**(ii)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**(2)** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

© Insurance Services Office, Inc., 2012

**(3)** Any person or organization having proper temporary custody of your property if you die, but only:

    **(a)** With respect to liability arising out of the maintenance or use of that property; and

    **(b)** Until your legal representative has been appointed.

**(4)** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**c.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

    **(1)** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

    **(2)** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

    **(3)** Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

**2.** Only with respect to liability arising out of the ownership, maintenance or use of "covered autos":

    **a.** You are an insured.

    **b.** Anyone else while using with your permission a "covered auto" you own, hire or borrow is also an insured except:

        **(1)** The owner or anyone else from whom you hire or borrow a "covered auto". This exception does not apply if the "covered auto" is a trailer or semitrailer connected to a "covered auto" you own.

        **(2)** Your "employee" if the "covered auto" is owned by that "employee" or a member of his or her household.

        **(3)** Someone using a "covered auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a "covered auto".

**(5)** A partner (if you are a partnership), or a member (if you are a limited liability company) for a "covered auto" owned by him or her or a member of his or her household.

**(6)** "Employees" with respect to "bodily injury" to:

    **(a)** Any fellow "employee" of the insured arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

    **(b)** The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph **(a)** above.

**c.** Anyone liable for the conduct of an insured described above is also an insured, but only to the extent of that liability.

**3.** Any additional insured under any policy of "underlying insurance" will automatically be an insured under this insurance.

Subject to Section **III - Limits Of Insurance**, if coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**a.** Required by the contract or agreement, less any amounts payable by any "underlying insurance"; or

**b.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

Additional insured coverage provided by this insurance will not be broader than coverage provided by the "underlying insurance".

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made, "suits" brought, or number of vehicles involved; or

   c. Persons or organizations making claims or bringing "suits".

2. The Aggregate Limit is the most we will pay for the sum of all "ultimate net loss" under:

   a. Coverage **A**, except "ultimate net loss" because of "bodily injury" or "property damage" arising out of the ownership, maintenance or use of a "covered auto"; and

   b. Coverage **B**.

3. Subject to Paragraph **2.** above, the Each Occurrence Limit is the most we will pay for the sum of all "ultimate net loss" under Coverage A because of all "bodily injury" and "property damage" arising out of any one "occurrence".

4. Subject to Paragraph 2. above, the Personal And Advertising Injury Limit is the most we will pay under Coverage B for the sum of all "ultimate net loss" because of all "personal and advertising injury" sustained by any one person or organization.

5. If there is "underlying insurance" with a policy period that is nonconcurrent with the policy period of this Commercial Liability Umbrella Coverage Part, the "retained limit(s)" will only be reduced or exhausted by payments for:

   a. "Bodily injury" or "property damage" which occurs during the policy period of this Coverage Part; or

   b. "Personal and advertising injury" for offenses that are committed during the policy period of this Coverage Part.

   However, if any "underlying insurance" is written on a claims-made basis, the "retained limit(s)" will only be reduced or exhausted by claims for that insurance that are made during the policy period, or any Extended Reporting Period, of this Coverage Part.

The Aggregate Limit, as described in Paragraph 2. above, applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - CONDITIONS

1. **Appeals**

   If the "underlying insurer" or insured elects not to appeal a judgment in excess of the "retained limit", we may do so at our own expense. We will also pay for taxable court costs, pre- and postjudgment interest and disbursements associated with such appeal. In no event will this provision increase our liability beyond the applicable Limits of Insurance described in Section III - Limits Of Insurance.

2. **Bankruptcy**

   a. **Bankruptcy Of Insured**

      Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

   b. **Bankruptcy Of Underlying Insurer**

      Bankruptcy or insolvency of the "underlying insurer" will not relieve us of our obligations under this Coverage Part.

   However, this insurance will not replace the "underlying insurance" in the event of bankruptcy or insolvency of the "underlying insurer". This insurance will apply as if the "underlying insurance" were in full effect.

3. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense, regardless of the amount, which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

© Insurance Services Office, Inc., 2012

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**4. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**5. Other Insurance**

**a.** This insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**b.** When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of the insurance provided under this Coverage Part; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

**6. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**7. Representations Or Fraud**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us;

**c.** We have issued this policy in reliance upon your representations; and

**d.** This policy is void in any case of fraud by you as it relates to this policy or any claim under this policy.

**8. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**9. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

### 10. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

### 11. Loss Payable

Liability under this Coverage Part does not apply to a given claim unless and until:

a. The insured or insured's "underlying insurer" has become obligated to pay the "retained limit"; and

b. The obligation of the insured to pay the "ultimate net loss" in excess of the "retained limit" has been determined by a final settlement or judgment or written agreement among the insured, claimant and us.

### 12. Transfer Of Defense

When the underlying limits of insurance have been used up in the payment of judgments or settlements, the duty to defend will be transferred to us. We will cooperate in the transfer of control to us of any outstanding claims or "suits" seeking damages to which this insurance applies which would have been covered by the "underlying insurance" had the applicable limit not been used up.

### 13. Maintenance Of/Changes To Underlying Insurance

Any "underlying insurance" must be maintained in full effect without reduction of coverage or limits except for the reduction of the aggregate limit in accordance with the provisions of such "underlying insurance" that results from payment of claims, settlement or judgments to which this insurance applies.

Such exhaustion or reduction is not a failure to maintain "underlying insurance". Failure to maintain "underlying insurance" will not invalidate insurance provided under this Coverage Part, but insurance provided under this Coverage Part will apply as if the "underlying insurance" were in full effect.

If there is an increase in the scope of coverage of any "underlying insurance" during the term of this policy, our liability will be no more than it would have been if there had been no such increase.

You must notify us in writing, as soon as practicable, if any "underlying insurance" is cancelled, not renewed, replaced or otherwise terminated, or if the limits or scope of coverage of any "underlying insurance" is changed.

### 14. Expanded Coverage Territory

a. If a "suit" is brought in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada, and we are prevented by law, or otherwise, from defending the insured, the insured will initiate a defense of the "suit". We will reimburse the insured, under Supplementary Payments, for any reasonable and necessary expenses incurred for the defense of a "suit" seeking damages to which this insurance applies, that we would have paid had we been able to exercise our right and duty to defend.

If the insured becomes legally obligated to pay sums because of damages to which this insurance applies in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada, and we are prevented by law, or otherwise, from paying such sums on the insured's behalf, we will reimburse the insured for such sums.

b. All payments or reimbursements we make for damages because of judgments or settlements will be made in U.S. currency at the prevailing exchange rate at the time the insured became legally obligated to pay such sums. All payments or reimbursements we make for expenses under Supplementary Payments will be made in U.S. currency at the prevailing exchange rate at the time the expenses were incurred.

c. Any disputes between you and us as to whether there is coverage under this policy must be filed in the courts of the United States of America (including its territories and possessions), Canada or Puerto Rico.

d. The insured must fully maintain any coverage required by law, regulation or other governmental authority during the policy period, except for reduction of the aggregate limits due to payments of claims, judgments or settlements.

Failure to maintain such coverage required by law, regulation or other governmental authority will not invalidate this insurance. However, this insurance will apply as if the required coverage by law, regulation or other governmental authority was in full effect.

 © Insurance Services Office, Inc., 2012 CU 00 01 04 13

## SECTION V - DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

   a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

4. "Coverage territory" means anywhere in the world with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America.

5. "Covered auto" means only those "autos" to which "underlying insurance" applies.

6. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

7. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work", or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work done for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

   g. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraphs f. and g. do not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

(3) That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a "covered auto" over a route or territory that person or organization is authorized to serve by public authority.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© Insurance Services Office, Inc., 2012 CU 00 01 04 13

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Pollution cost or expense" means any loss, cost or expense arising out of any:

   a. Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   b. Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

17. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in your contract has been completed.

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   b. Does not include "bodily injury" or "property damage" arising out of:

      (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

      (2) The existence of tools, uninstalled equipment or abandoned or unused materials.

18. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   With respect to the ownership, maintenance or use of "covered autos", property damage also includes "pollution cost or expense", but only to the extent that coverage exists under the "underlying insurance" or would have existed but for the exhaustion of the underlying limits.

   For the purposes of this insurance, with respect to other than the ownership, maintenance or use of "covered autos", electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

19. "Retained limit" means the available limits of "underlying insurance" scheduled in the Declarations or the "self-insured retention", whichever applies.

20. "Self-insured retention" means the dollar amount listed in the Declarations that will be paid by the insured before this insurance becomes applicable only with respect to "occurrences" or offenses not covered by the "underlying insurance". The "self-insured retention" does not apply to "occurrences" or offenses which would have been covered by "underlying insurance" but for the exhaustion of applicable limits.

21. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent or the "underlying insurer's" consent.

22. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

23. "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.

24. "Underlying insurance" means any policies of insurance listed in the Declarations under the Schedule of "underlying insurance".

25. "Underlying insurer" means any insurer who provides any policy of insurance listed in the Schedule of "underlying insurance".

26. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

27. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

28. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

 © Insurance Services Office, Inc., 2012

| Endorsement | CU 02 |
|---|---|

**REVISED COVERAGE PROVISIONS**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

A. Exclusion **j. Aircraft or Watercraft** of Paragraph 2., **Exclusions** of SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY is deleted and replaced by the following:

   **j. Aircraft Or Watercraft**

   "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any insured.

   This exclusion does not apply to:

   (1) A watercraft while ashore on premises you own or rent;

   (2) A watercraft you do not own that is:

   (a) Less than 50 feet long; and

   (b) Not being used to carry persons or property for a charge; or

   (3) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft.

B. Exclusion **a. (5) Contractual Liability** of Paragraph 2., **Exclusions** of SECTION I - COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY is deleted and replaced by the following:

   **Contractual Liability**

   (5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

C. The following exclusion is added to Paragraph 2., **Exclusions** of SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY and Paragraph 2., **Exclusions** of SECTION I - COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY:

   **Asbestos, Silica, and Mixed Dust**

   This insurance does not apply to:

   1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, contributed to by, or resulting from, exposure to or the use of:

      a. Asbestos including, but not limited to, the cost of abatement, mitigation, removal or disposal of asbestos from any good, product or structure;

Continued...

REVISED COVERAGE PROVISIONS

    b. Silica; or

    c. Mixed dust.

2. Any damage or any loss, cost or expense arising out of any:

    a. Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, asbestos, silica, mixed dust or any other material or substance containing asbestos, silica or mixed dust; or

    b. Claim or suit by or on behalf of any governmental authority or any other alleged responsible party for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, asbestos, silica, mixed dust or any other material or substance containing asbestos, silica or mixed dust.

3. "Bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, contributed to by, or resulting from, supervision, instruction, recommendations, warnings or advice given or which should have been given in connection with any of the substances above.

4. Any obligation to share damages with or repay someone else in connection with any of the substances above.

5. As used in this endorsement,

    a. Silica means a group of naturally occurring crystalline forms of silicon dioxide, including, but not limited to, quartz and sand; and

    b. Mixed dust means a mixture of dusts composed of silica or asbestos and any other dusts.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

A. Exclusion **2.t.** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**t. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

B. The following is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

 © Insurance Services Office, Inc., 2013

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** Paragraph **A.1.** of the **Cancellation** Common Policy Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

**a.** If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

**b.** If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days' notice to the first Named Insured and the notice state as soon as practicable after receiving the first Named Insured's request for cancellation.

Our notice will state the effective date of cancellation, which will be the later of the following:

**(1)** 10 days from the date of mailing or delivering our notice; or

**(2)** The effective date of cancellation stated in the first Named Insured's notice to us.

**B.** Paragraph **A.5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5. Premium Refund**

**a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

**b.** If we cancel, the refund will be pro rata, except as provided in **c.** below.

**c.** If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

**d.** If the first Named Insured cancels, the refund may be less than pro rata.

**e.** The cancellation will be effective even if we have not made or offered a refund.

**C.** The following is added to the **Cancellation** Common Policy Condition and supersedes any other provisions to the contrary:

If we decide to:

**1.** Cancel or nonrenew this policy; or

**2.** Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

© Insurance Services Office, Inc., 2014

**3.** Change any policy provision which would limit or restrict coverage;

then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us. Except as applicable as described in Paragraph **D.** below, we will mail or deliver notice at least:

    **a.** 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

    **b.** 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

    **c.** 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

**D.** With respect to a policy that is written to permit an audit, the following is added to the **Cancellation** Common Policy Condition:

If you fail to submit to or allow an audit for the current or most recently expired term, we may cancel this policy subject to the following:

**1.** We will make two documented efforts to send you and your agent notification of potential cancellation. After the second notice has been sent, we have the right to cancel this policy by mailing or delivering a written notice of cancellation to the first Named Insured at least 10 days before the effective date of cancellation, but not within 20 days of the first documented effort.

**2.** If we cancel this policy based on your failure to submit to or allow an audit, we will send the written notice of cancellation to the first Named Insured at the last known mailing address by certified mail or statutory overnight delivery with return receipt requested.

**E.** Paragraph **A.6.** of the **Cancellation** Common Policy Condition is replaced by the following:

If notice is mailed, a receipt provided by, or such other evidence of mailing as prescribed or accepted by, the U.S. Postal Service shall be sufficient proof of notice.

 © Insurance Services Office, Inc., 2014 **CU 02 22 02 15**

**Grange Ins. Co. of Michigan**
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | CU 106 |
|---|---|

**CYBER COVERAGE EXCLUSION**

**Policy Number: CUP    2693621**

THIS ENDORSEMENT CHANGES THE
POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided
under the following:

COMMERCIAL LIABILITY UMBRELLA
COVERAGE PART

This insurance does not apply to damages covered
under any cyber coverage endorsement, if
attached to the "underlying insurance" policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

# COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - Definitions.

## SECTION I - COVERAGES

## COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit" for which we have the duty to defend. But:

   (1) The amount we will pay for the "ultimate net loss" is limited as described in Section III - Limits Of Insurance; and

   (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b. This insurance applies to "bodily injury" or "property damage" that is subject to an applicable "retained limit". If any other limit, such as a sublimit, is specified in the "underlying insurance", this insurance does not apply to "bodily injury" or "property damage" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "underlying insurance".

c. This insurance applies to "bodily injury" and "property damage" only if:

   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   (2) The "bodily injury" or "property damage" occurs during the policy period; and

   (3) Prior to the policy period, no insured listed under Paragraph 1.a. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

d. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1.a. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

e. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.a.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

f. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

(a) The supervision, hiring, employment, training or monitoring of others by that insured; or

(b) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage" involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

This exclusion does not apply to the extent that valid "underlying insurance" for the liquor liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" and "property damage". To the extent this exclusion does not apply, the insurance provided under this Coverage Part for the liquor liability risks described above will follow the same provisions, exclusions and limitations that are contained in the applicable "underlying insurance", unless otherwise directed by this insurance.

 © Insurance Services Office, Inc., 2012

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **ERISA**

Any obligation of the insured under the Employee Retirement Income Security Act of 1974 (ERISA), and any amendments thereto or any similar federal, state or local statute.

f. **Auto Coverages**

(1) "Bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" which is not a "covered auto"; or

(2) Any loss, cost or expense payable under or resulting from any first-party physical damage coverage; no-fault law; personal injury protection or auto medical payments coverage; or uninsured or underinsured motorist law.

g. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

With respect to injury arising out of a "covered auto", this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits. For the purposes of this insurance, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

This exclusion does not apply to the extent that valid "underlying insurance" for the employer's liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury". To the extent this exclusion does not apply, the insurance provided under this Coverage Part for the employer's liability risks described above will follow the same provisions, exclusions and limitations that are contained in the applicable "underlying insurance", unless otherwise directed by this insurance.

h. **Employment-related Practices**

"Bodily injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraph (a), (b), or (c) above is directed.

This exclusion applies whether the injury-causing event described in Paragraph (a), (b) or (c) above occurs before employment, during employment or after employment of that person.

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

i. **Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; or

(2) "Pollution cost or expense".

This exclusion does not apply if valid "underlying insurance" for the pollution liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" and "property damage". To the extent this exclusion does not apply, the insurance provided under this Coverage Part for the pollution risks described above will follow the same provisions, exclusions and limitations that are contained in the applicable "underlying insurance", unless otherwise directed by this insurance.

j. **Aircraft Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

    (a) Less than 50 feet long; and

    (b) Not being used to carry persons or property for a charge;

(3) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft;

(4) The extent that valid "underlying insurance" for the aircraft or watercraft liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" or "property damage". To the extent this exclusion does not apply, the insurance provided under this Coverage Part for the aircraft or watercraft risks described above will follow the same provisions, exclusions and limitations that are contained in the "underlying insurance", unless otherwise directed by this insurance; or

(5) Aircraft that is:

    (a) Chartered by, loaned to, or hired by you with a paid crew; and

    (b) Not owned by any insured.

k. **Racing Activities**

"Bodily injury" or "property damage" arising out of the use of "mobile equipment" or "autos" in, or while in practice for, or while being prepared for, any prearranged professional or organized racing, speed, demolition, or stunting activity or contest.

l. **War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

m. **Damage To Property**

"Property damage" to:

(1) Property:

    (a) You own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property; or

    (b) Owned or transported by the insured and arising out of the ownership, maintenance or use of a "covered auto".

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

© Insurance Services Office, Inc., 2012

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (1)(b), (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraphs (3) and (4) of this exclusion do not apply to liability assumed under a written Trailer Interchange agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**n. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**o. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**p. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**q. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**r. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**s. Professional Services**

"Bodily injury" or "property damage" due to rendering of or failure to render any professional service. This includes but is not limited to:

**(1)** Legal, accounting or advertising services;

**(2)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings or specifications;

**(3)** Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager;

**(4)** Engineering services, including related supervisory or inspection services;

**(5)** Medical, surgical, dental, X-ray or nursing services treatment, advice or instruction;

**(6)** Any health or therapeutic service treatment, advice or instruction;

**(7)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, or personal grooming or therapy;

**(8)** Any service, treatment, advice or instruction relating to physical fitness, including service, treatment, advice or instruction in connection with diet, cardiovascular fitness, bodybuilding or physical training programs;

**(9)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(10)** Body piercing services;

**(11)** Services in the practice of pharmacy;

**(12)** Law enforcement or firefighting services; and

**(13)** Handling, embalming, disposal, burial, cremation or disinterment of dead bodies.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", involved the rendering of or failure to render any professional service.

t. **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

This exclusion does not apply if valid "underlying insurance" for the electronic data risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" and "property damage". The insurance provided under this Coverage Part will follow the same provisions, exclusions and limitations that are contained in the applicable "underlying insurance", unless otherwise directed by this insurance.

u. **Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**

a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "personal and advertising injury" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. At our discretion, we may investigate any offense that may involve this insurance and settle any resultant claim or "suit" for which we have the duty to defend. But:

(1) The amount we will pay for the "ultimate net loss" is limited as described in Section III - Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b. This insurance applies to "personal and advertising injury" that is subject to an applicable "retained limit". If any other limit, such as a sublimit, is specified in the "underlying insurance", this insurance does not apply to "personal and advertising injury" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "underlying insurance".

c. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

© Insurance Services Office, Inc., 2012

2. **Exclusions**

This insurance does not apply to:

a. "Personal and advertising injury":

**(1) Knowing Violation Of Rights Of Another**

Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**(2) Material Published With Knowledge Of Falsity**

Arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**(3) Material Published Prior To Policy Period**

Arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**(4) Criminal Acts**

Arising out of a criminal act committed by or at the direction of the insured.

**(5) Contractual Liability**

For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to:

(a) Liability for damages that the insured would have in the absence of the contract or agreement.

(b) Liability for false arrest, detention or imprisonment assumed in a contract or agreement.

**(6) Breach Of Contract**

Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**(7) Quality Or Performance Of Goods – Failure To Conform To Statements**

Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**(8) Wrong Description Of Prices**

Arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**(9) Infringement Of Copyright, Patent, Trademark Or Trade Secret**

Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**(10) Insureds In Media And Internet Type Businesses**

Committed by an insured whose business is:

(a) Advertising, broadcasting, publishing or telecasting;

(b) Designing or determining content of web sites for others; or

(c) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**(11) Electronic Chatrooms Or Bulletin Boards**

Arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**(12) Unauthorized Use Of Another's Name Or Product**

Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**(13) Pollution**

Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(14) Employment-related Practices**

To:

(a) A person arising out of any:

  (i) Refusal to employ that person;

  (ii) Termination of that person's employment; or

  (iii) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

(b) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraph (i), (ii) or (iii) above is directed.

This exclusion applies whether the injury-causing event described in Paragraph (i), (ii) or (iii) above occurs before employment, during employment or after employment of that person.

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**(15) Professional Services**

Arising out of the rendering of or failure to render any professional service. This includes but is not limited to:

(a) Legal, accounting or advertising services;

(b) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings or specifications;

(c) Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager;

(d) Engineering services, including related supervisory or inspection services;

(e) Medical, surgical, dental, X-ray or nursing services treatment, advice or instruction;

(f) Any health or therapeutic service treatment, advice or instruction;

(g) Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, or personal grooming or therapy;

(h) Any service, treatment, advice or instruction relating to physical fitness, including service, treatment, advice or instruction in connection with diet, cardiovascular fitness, bodybuilding or physical training programs;

(i) Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

(j) Body piercing services;

(k) Services in the practice of pharmacy;

(l) Law enforcement or firefighting services; and

(m) Handling, embalming, disposal, burial, cremation or disinterment of dead bodies.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional service.

**(16) War**

However caused, arising, directly or indirectly, out of:

(a) War, including undeclared or civil war;

(b) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(c) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

 © Insurance Services Office, Inc., 2012 CU 00 01 04 13

**(17) Recording And Distribution Of Material Or Information In Violation Of Law**

Arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(a)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(b)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(c)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(d)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**b.** "Pollution cost or expense".

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend, when the duty to defend exists:

   **a.** All expenses we incur.

   **b.** Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "occurrence" we cover. We do not have to furnish these bonds.

   **c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   **d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   **e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   **f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   **g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance.

2. When we have the right but not the duty to defend the insured and elect to participate in the defense, we will pay our own expenses but will not contribute to the expenses of the insured or the "underlying insurer".

3. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   **a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   **b.** This insurance applies to such liability assumed by the insured;

   **c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   **d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   **e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   **f.** The indemnitee:

      **(1)** Agrees in writing to:

         **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

         **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

         **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I - Coverage A - Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

**SECTION II - WHO IS AN INSURED**

**1.** Except for liability arising out of the ownership, maintenance or use of "covered autos":

**a.** If you are designated in the Declarations as:

**(1)** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**(2)** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**(3)** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**(4)** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**(5)** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**b.** Each of the following is also an insured:

**(1)** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(a)** "Bodily injury" or "personal and advertising injury":

**(i)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" in the course of his or her employment or performing duties related to the conduct of your business or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(ii)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (a)(i) above; or

**(iii)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (a)(i) or (ii) above.

**(b)** "Property damage" to property:

**(i)** Owned, occupied or used by;

**(ii)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**(2)** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

© Insurance Services Office, Inc., 2012 CU 00 01 04 13

(3) Any person or organization having proper temporary custody of your property if you die, but only:

    (a) With respect to liability arising out of the maintenance or use of that property; and

    (b) Until your legal representative has been appointed.

(4) Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

c. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

(1) Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

(2) Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

(3) Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

2. Only with respect to liability arising out of the ownership, maintenance or use of "covered autos":

a. You are an insured.

b. Anyone else while using with your permission a "covered auto" you own, hire or borrow is also an insured except:

(1) The owner or anyone else from whom you hire or borrow a "covered auto". This exception does not apply if the "covered auto" is a trailer or semitrailer connected to a "covered auto" you own.

(2) Your "employee" if the "covered auto" is owned by that "employee" or a member of his or her household.

(3) Someone using a "covered auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a "covered auto".

(5) A partner (if you are a partnership), or a member (if you are a limited liability company) for a "covered auto" owned by him or her or a member of his or her household.

(6) "Employees" with respect to "bodily injury" to:

    (a) Any fellow "employee" of the insured arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

    (b) The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph (a) above.

c. Anyone liable for the conduct of an insured described above is also an insured, but only to the extent of that liability.

3. Any additional insured under any policy of "underlying insurance" will automatically be an insured under this insurance.

Subject to Section III - Limits Of Insurance, if coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

a. Required by the contract or agreement, less any amounts payable by any "underlying insurance"; or

b. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

Additional insured coverage provided by this insurance will not be broader than coverage provided by the "underlying insurance".

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made, "suits" brought, or number of vehicles involved; or

   c. Persons or organizations making claims or bringing "suits".

2. The Aggregate Limit is the most we will pay for the sum of all "ultimate net loss" under:

   a. Coverage A, except "ultimate net loss" because of "bodily injury" or "property damage" arising out of the ownership, maintenance or use of a "covered auto"; and

   b. Coverage B.

3. Subject to Paragraph 2. above, the Each Occurrence Limit is the most we will pay for the sum of all "ultimate net loss" under Coverage A because of all "bodily injury" and "property damage" arising out of any one "occurrence".

4. Subject to Paragraph 2. above, the Personal And Advertising Injury Limit is the most we will pay under Coverage B for the sum of all "ultimate net loss" because of all "personal and advertising injury" sustained by any one person or organization.

5. If there is "underlying insurance" with a policy period that is nonconcurrent with the policy period of this Commercial Liability Umbrella Coverage Part, the "retained limit(s)" will only be reduced or exhausted by payments for:

   a. "Bodily injury" or "property damage" which occurs during the policy period of this Coverage Part; or

   b. "Personal and advertising injury" for offenses that are committed during the policy period of this Coverage Part.

   However, if any "underlying insurance" is written on a claims-made basis, the "retained limit(s)" will only be reduced or exhausted by claims for that insurance that are made during the policy period, or any Extended Reporting Period, of this Coverage Part.

The Aggregate Limit, as described in Paragraph 2. above, applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - CONDITIONS

1. **Appeals**

   If the "underlying insurer" or insured elects not to appeal a judgment in excess of the "retained limit", we may do so at our own expense. We will also pay for taxable court costs, pre- and postjudgment interest and disbursements associated with such appeal. In no event will this provision increase our liability beyond the applicable Limits of Insurance described in Section III - Limits Of Insurance.

2. **Bankruptcy**

   a. **Bankruptcy Of Insured**

      Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

   b. **Bankruptcy Of Underlying Insurer**

      Bankruptcy or insolvency of the "underlying insurer" will not relieve us of our obligations under this Coverage Part.

   However, this insurance will not replace the "underlying insurance" in the event of bankruptcy or insolvency of the "underlying insurer". This insurance will apply as if the "underlying insurance" were in full effect.

3. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense, regardless of the amount, which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

© Insurance Services Office, Inc., 2012

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**4. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**5. Other Insurance**

**a.** This insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**b.** When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of the insurance provided under this Coverage Part; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

**6. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**7. Representations Or Fraud**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us;

**c.** We have issued this policy in reliance upon your representations; and

**d.** This policy is void in any case of fraud by you as it relates to this policy or any claim under this policy.

**8. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**9. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

### 10. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

### 11. Loss Payable

Liability under this Coverage Part does not apply to a given claim unless and until:

a. The insured or insured's "underlying insurer" has become obligated to pay the "retained limit"; and

b. The obligation of the insured to pay the "ultimate net loss" in excess of the "retained limit" has been determined by a final settlement or judgment or written agreement among the insured, claimant and us.

### 12. Transfer Of Defense

When the underlying limits of insurance have been used up in the payment of judgments or settlements, the duty to defend will be transferred to us. We will cooperate in the transfer of control to us of any outstanding claims or "suits" seeking damages to which this insurance applies which would have been covered by the "underlying insurance" had the applicable limit not been used up.

### 13. Maintenance Of/Changes To Underlying Insurance

Any "underlying insurance" must be maintained in full effect without reduction of coverage or limits except for the reduction of the aggregate limit in accordance with the provisions of such "underlying insurance" that results from payment of claims, settlement or judgments to which this insurance applies.

Such exhaustion or reduction is not a failure to maintain "underlying insurance". Failure to maintain "underlying insurance" will not invalidate insurance provided under this Coverage Part, but insurance provided under this Coverage Part will apply as if the "underlying insurance" were in full effect.

If there is an increase in the scope of coverage of any "underlying insurance" during the term of this policy, our liability will be no more than it would have been if there had been no such increase.

You must notify us in writing, as soon as practicable, if any "underlying insurance" is cancelled, not renewed, replaced or otherwise terminated, or if the limits or scope of coverage of any "underlying insurance" is changed.

### 14. Expanded Coverage Territory

a. If a "suit" is brought in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada, and we are prevented by law, or otherwise, from defending the insured, the insured will initiate a defense of the "suit". We will reimburse the insured, under Supplementary Payments, for any reasonable and necessary expenses incurred for the defense of a "suit" seeking damages to which this insurance applies, that we would have paid had we been able to exercise our right and duty to defend.

If the insured becomes legally obligated to pay sums because of damages to which this insurance applies in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada, and we are prevented by law, or otherwise, from paying such sums on the insured's behalf, we will reimburse the insured for such sums.

b. All payments or reimbursements we make for damages because of judgments or settlements will be made in U.S. currency at the prevailing exchange rate at the time the insured became legally obligated to pay such sums. All payments or reimbursements we make for expenses under Supplementary Payments will be made in U.S. currency at the prevailing exchange rate at the time the expenses were incurred.

c. Any disputes between you and us as to whether there is coverage under this policy must be filed in the courts of the United States of America (including its territories and possessions), Canada or Puerto Rico.

d. The insured must fully maintain any coverage required by law, regulation or other governmental authority during the policy period, except for reduction of the aggregate limits due to payments of claims, judgments or settlements.

Failure to maintain such coverage required by law, regulation or other governmental authority will not invalidate this insurance. However, this insurance will apply as if the required coverage by law, regulation or other governmental authority was in full effect.

© Insurance Services Office, Inc., 2012 CU 00 01 04 13

## SECTION V - DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

   a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

      However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

4. "Coverage territory" means anywhere in the world with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America.

5. "Covered auto" means only those "autos" to which "underlying insurance" applies.

6. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

7. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work", or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work done for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

   g. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraphs f. and g. do not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

(3) That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a "covered auto" over a route or territory that person or organization is authorized to serve by public authority.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

 © Insurance Services Office, Inc., 2012

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Pollution cost or expense" means any loss, cost or expense arising out of any:

   a. Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   b. Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

17. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in your contract has been completed.

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   b. Does not include "bodily injury" or "property damage" arising out of:

      (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

      (2) The existence of tools, uninstalled equipment or abandoned or unused materials.

18. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   With respect to the ownership, maintenance or use of "covered autos", property damage also includes "pollution cost or expense", but only to the extent that coverage exists under the "underlying insurance" or would have existed but for the exhaustion of the underlying limits.

   For the purposes of this insurance, with respect to other than the ownership, maintenance or use of "covered autos", electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

19. "Retained limit" means the available limits of "underlying insurance" scheduled in the Declarations or the "self-insured retention", whichever applies.

20. "Self-insured retention" means the dollar amount listed in the Declarations that will be paid by the insured before this insurance becomes applicable only with respect to "occurrences" or offenses not covered by the "underlying insurance". The "self-insured retention" does not apply to "occurrences" or offenses which would have been covered by "underlying insurance" but for the exhaustion of applicable limits.

21. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent or the "underlying insurer's" consent.

22. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

23. "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.

24. "Underlying insurance" means any policies of insurance listed in the Declarations under the Schedule of "underlying insurance".

25. "Underlying insurer" means any insurer who provides any policy of insurance listed in the Schedule of "underlying insurance".

26. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

27. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

28. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012

CU 00 01 04 13

| Endorsement | CU 02 |

**REVISED COVERAGE PROVISIONS**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

A. Exclusion **j. Aircraft or Watercraft** of Paragraph 2., **Exclusions** of SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY is deleted and replaced by the following:

   **j. Aircraft Or Watercraft**

   "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any insured.

   This exclusion does not apply to:

   (1) A watercraft while ashore on premises you own or rent;

   (2) A watercraft you do not own that is:

   (a) Less than 50 feet long; and

   (b) Not being used to carry persons or property for a charge; or

   (3) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft.

B. Exclusion **a. (5) Contractual Liability** of Paragraph 2., **Exclusions** of SECTION I - COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY is deleted and replaced by the following:

   **Contractual Liability**

   (5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

C. The following exclusion is added to Paragraph 2., **Exclusions** of SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY and Paragraph 2., **Exclusions** of SECTION I - COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY:

   **Asbestos, Silica, and Mixed Dust**

   This insurance does not apply to:

   1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, contributed to by, or resulting from, exposure to or the use of:

      a. Asbestos including, but not limited to, the cost of abatement, mitigation, removal or disposal of asbestos from any good, product or structure;

Continued...

| Endorsement | CU 02 |
|---|---|

Policy Number: CUP   2693621

## REVISED COVERAGE PROVISIONS

    **b.** Silica; or

    **c.** Mixed dust.

2. Any damage or any loss, cost or expense arising out of any:

    **a.** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, asbestos, silica, mixed dust or any other material or substance containing asbestos, silica or mixed dust; or

    **b.** Claim or suit by or on behalf of any governmental authority or any other alleged responsible party for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, asbestos, silica, mixed dust or any other material or substance containing asbestos, silica or mixed dust.

3. "Bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, contributed to by, or resulting from, supervision, instruction, recommendations, warnings or advice given or which should have been given in connection with any of the substances above.

4. Any obligation to share damages with or repay someone else in connection with any of the substances above.

5. As used in this endorsement,

    **a.** Silica means a group of naturally occurring crystalline forms of silicon dioxide, including, but not limited to, quartz and sand; and

    **b.** Mixed dust means a mixture of dusts composed of silica or asbestos and any other dusts.

*Includes copywrited material of Insurance Services Office, Inc. with its permission.*

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

A. Exclusion **2.t.** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**t. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

B. The following is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

© Insurance Services Office, Inc., 2013

| Endorsement | CU 03 |

Policy Number:

**Redefined Coverage Territory**

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

A. Paragraph **14. Expanded Coverage Territory** under **Section IV - Conditions** does not apply.

B. Paragraph **4.** under **Section V - Definitions** is replaced by the following:

    **4.** "Coverage territory" means anywhere in the world if the insured's responsibility to pay damages is determined in a "suit'' on the merits, in the United States of America (including its territories and possessions), Puerto Rico and Canada, or in a settlement we agree to.

*Includes copyrighted material of Insurance Services Office, Inc. with its permission.*

**IK1256 (12-2006)**

| Endorsement | CU 106 |
|---|---|

**Policy Number: CUP    2693621**

**CYBER COVERAGE EXCLUSION**

THIS ENDORSEMENT CHANGES THE
POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided
under the following:

    COMMERCIAL LIABILITY UMBRELLA
    COVERAGE PART

This insurance does not apply to damages covered
under any cyber coverage endorsement, if
attached to the "underlying insurance" policy.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**Section IV – Conditions** is amended by the following:

1. Paragraph **3.a.** of **Duties In The Event Of Accident, Claim, Suit Or Loss** is replaced by the following:

   **a.** In the event of an "occurrence", claim, "suit" or "loss", we or our representative must receive prompt notice of the "occurrence" or "loss". Include:

   **(1)** How, when and where the "occurrence" or "loss" occurred;

   **(2)** The insured's name and address; and

   **(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

The requirement for giving notice of a claim, if not satisfied by the insured within 30 days of the date of the "occurrence", may be satisfied by an injured third party who, as the result of such "occurrence", has a claim against the insured. However, in this event, notice of a claim given by an injured third party must be mailed to us.

2. Paragraph **7.d. Representations Or Fraud** is replaced by the following:

   **d.** We will not pay for any "loss" or damage in any case of fraud committed by you or any other insured, at any time, and relating to coverage under this policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** Paragraph **A.1.** of the **Cancellation** Common Policy Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

**a.** If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

**b.** If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days' notice to the first Named Insured and the notice state as soon as practicable after receiving the first Named Insured's request for cancellation.

Our notice will state the effective date of cancellation, which will be the later of the following:

**(1)** 10 days from the date of mailing or delivering our notice; or

**(2)** The effective date of cancellation stated in the first Named Insured's notice to us.

**B.** Paragraph **A.5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5. Premium Refund**

**a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

**b.** If we cancel, the refund will be pro rata, except as provided in **c.** below.

**c.** If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

**d.** If the first Named Insured cancels, the refund may be less than pro rata.

**e.** The cancellation will be effective even if we have not made or offered a refund.

**C.** The following is added to the **Cancellation** Common Policy Condition and supersedes any other provisions to the contrary:

If we decide to:

**1.** Cancel or nonrenew this policy; or

**2.** Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

 © Insurance Services Office, Inc., 2014

**3.** Change any policy provision which would limit or restrict coverage;

then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us. Except as applicable as described in Paragraph **D.** below, we will mail or deliver notice at least:

    **a.** 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

    **b.** 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

    **c.** 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

**D.** With respect to a policy that is written to permit an audit, the following is added to the **Cancellation** Common Policy Condition:

If you fail to submit to or allow an audit for the current or most recently expired term, we may cancel this policy subject to the following:

**1.** We will make two documented efforts to send you and your agent notification of potential cancellation. After the second notice has been sent, we have the right to cancel this policy by mailing or delivering a written notice of cancellation to the first Named Insured at least 10 days before the effective date of cancellation, but not within 20 days of the first documented effort.

**2.** If we cancel this policy based on your failure to submit to or allow an audit, we will send the written notice of cancellation to the first Named Insured at the last known mailing address by certified mail or statutory overnight delivery with return receipt requested.

**E.** Paragraph **A.6.** of the **Cancellation** Common Policy Condition is replaced by the following:

If notice is mailed, a receipt provided by, or such other evidence of mailing as prescribed or accepted by, the U.S. Postal Service shall be sufficient proof of notice.

 © Insurance Services Office, Inc., 2014 **CU 02 22 02 15**

| Endorsement | CU 101 |
|---|---|

**Policy Number:**

**Policy Changes - Who Is An Insured**

This endorsement modifies insurance provided under the following:

Commercial Liability Umbrella Coverage Form

Paragraph **2.b.(1)** of **Section II - Who Is An Insured** is deleted and replaced by:

**(1)** The owner or anyone else from whom you directly or indirectly hire or borrow a "covered auto", including their agents or "employees". This exception does not apply if the "covered auto" is a trailer or semi-trailer connected to a "covered auto" you own.

*Includes copyrighted material of Insurance Services Office, Inc., with its permission.*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

© Insurance Services Office, Inc., 2015

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**FUNGI OR BACTERIA**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**FUNGI OR BACTERIA**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

Exclusion **i.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**i. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; or

**(2)** "Pollution cost or expense".

# COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

   **a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. But:

   **(1)** The amount we will pay for the "ultimate net loss" is limited as described in Section **III** – Limits Of Insurance; and

   **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

   **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

   **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

This exclusion does not apply to the extent that valid "underlying insurance" for the liquor liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" and "property damage". Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance" unless otherwise directed by this insurance.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. E.R.I.S.A.**

Any obligation of the insured under the Employees' Retirement Income Security Act (E.R.I.S.A.), and any amendments thereto or any similar federal, state or local statute.

**f. Auto Coverages**

**(1)** "Bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" which is not a "covered auto"; or

**(2)** Any loss, cost or expense payable under or resulting from any first party physical damage coverage; no-fault law; personal injury protection or auto medical payments coverage; or uninsured or underinsured motorist law.

**g. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

 © ISO Properties, Inc., 2003 □

This exclusion does not apply to liability assumed by the insured under an "insured contract".

With respect to injury arising out of a "covered auto", this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits. For the purposes of this insurance, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

This exclusion does not apply to the extent that valid "underlying insurance" for the employer's liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury". Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance" unless otherwise directed by this insurance.

**h. Employment-Related Practices**

"Bodily injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**i. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; or

**(2)** "Pollution cost or expense".

This exclusion does not apply if valid "underlying insurance" for the pollution liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" and "property damage". Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance".

**j. Aircraft Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

   **(a)** Less than 50 feet long; and

   **(b)** Not being used to carry persons or property for a charge;

**(3)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft.

**(4)** The extent that valid "underlying insurance" for the aircraft or watercraft liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" or "property damage". Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance" unless otherwise directed by this insurance; or

**(5)** Aircraft that is:

   **(a)** Chartered by, loaned to, or hired by you with a paid crew; and

   **(b)** Not owned by any insured.

**k. Racing Activities**

"Bodily injury" or "property damage" arising out of the use of "mobile equipment" or "autos" in, or while in practice for, or while being prepared for, any prearranged professional or organized racing, speed, demolition, or stunting activity or contest.

**l. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**m. Damage To Property**

"Property damage" to:

**(1)** Property:

**(a)** You own, rent, or occupy including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property; or

**(b)** Owned or transported by the insured and arising out of the ownership, maintenance or use of a "covered auto".

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(1)(b)**, **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraphs **(3)** and **(4)** of this exclusion do not apply to liability assumed under a written Trailer Interchange agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**n. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**o. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**p. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**q. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**r. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**s. Professional Services**

"Bodily injury" or "property damage" due to rendering or failure to render any professional service. This includes but is not limited to:

**(1)** Legal, accounting or advertising services;

**(2)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(3)** Engineering services, including related supervisory or inspection services;

**(4)** Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

**(5)** Any health or therapeutic service treatment, advice or instruction;

**(6)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

**(7)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(8)** Body piercing services;

**(9)** Services in the practice of pharmacy; but this exclusion does not apply if you are a retail druggist or your operations are those of a retail drugstore;

**(10)** Law enforcement or firefighting services; and

**(11)** Handling, embalming, disposal, burial, cremation or disinterment of dead bodies.

**t. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "personal and advertising injury" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. At our discretion, we may investigate any offense that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. But:

**(1)** The amount we will pay for the "ultimate net loss" is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to:

**a.** "Personal and advertising injury":

**(1) Knowing Violation Of Rights Of Another**

Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**(2) Material Published With Knowledge Of Falsity**

Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**(3) Material Published Prior To Policy Period**

Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**(4) Criminal Acts**

Arising out of a criminal act committed by or at the direction of the insured.

**(5) Contractual Liability**

For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to:

**(a)** Liability for damages that the insured would have in the absence of the contract or agreement.

**(b)** Liability for false arrest, detention or imprisonment assumed in a contract or agreement.

**(6) Breach Of Contract**

Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**(7) Quality Or Performance Of Goods – Failure To Conform To Statements**

Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**(8) Wrong Description Of Prices**

Arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**(9) Infringement Of Copyright, Patent, Trademark Or Trade Secret**

Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**(10) Insureds In Media And Internet Type Businesses**

Committed by an insured whose business is:

**(a)** Advertising, broadcasting, publishing or telecasting;

**(b)** Designing or determining content of websites for others; or

**(c)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**(11) Electronic Chatrooms Or Bulletin Boards**

Arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**(12) Unauthorized Use Of Another's Name Or Product**

Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**(13) Pollution**

Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(14) Employment-Related Practices**

To:

**(a)** A person arising out of any:

**(i)** Refusal to employ that person;

**(ii)** Termination of that person's employment; or

**(iii)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

© ISO Properties, Inc., 2003

**(b)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(i), (ii),** or **(iii)** above is directed.

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**(15) Professional Services**

Arising out of the rendering or failure to render any professional service. This includes but is not limited to:

**(a)** Legal, accounting or advertising services;

**(b)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(c)** Engineering services, including related supervisory or inspection services;

**(d)** Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

**(e)** Any health or therapeutic service treatment, advice or instruction;

**(f)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

**(g)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(h)** Body piercing services;

**(i)** Services in the practice of pharmacy; but this exclusion does not apply if you are a retail druggist or your operations are those of a retail drugstore;

**(j)** Law enforcement or firefighting services; and

**(k)** Handling, embalming, disposal, burial, cremation or disinterment of dead bodies.

**(16) War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(a)** War, including undeclared or civil war;

**(b)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(c)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**b.** "Pollution cost or expense".

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend, when the duty to defend exists:

**a.** All expenses we incur.

**b.** Up to $2000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "occurrence" we cover. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All costs taxed against the insured in the "suit".

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** When we have the right but not the duty to defend the insured and elect to participate in the defense, we will pay our own expenses but will not contribute to the expenses of the insured or the "underlying insurer".

**3.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments, or settlements, or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** Except for liability arising out of the ownership, maintenance, or use of "covered autos":

**a.** If you are designated in the Declarations as:

**(1)** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**(2)** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**(3)** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**(4)** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**(5)** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**b.** Each of the following is also an insured:

**(1)** Your "volunteer workers" only while performing duties related to the conduct of your business, your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(a)** "Bodily injury" or "personal and advertising injury":

**(i)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" in the course of his or her employment or performing duties related to the conduct of your business or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(ii)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(a)(i)** above; or

**(iii)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(a)(i)** or **(ii)** above.

**(b)** "Property damage" to property:

**(i)** Owned, occupied or used by,

**(ii)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**(2)** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**(3)** Any person or organization having proper temporary custody of your property if you die, but only:

**(a)** With respect to liability arising out of the maintenance or use of that property; and

**(b)** Until your legal representative has been appointed.

**(4)** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**c.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**(1)** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**(2)** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**(3)** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

**2.** Only with respect to liability arising out of the ownership, maintenance, or use of "covered autos":

**a.** You are an insured.

**b.** Anyone else while using with your permission a "covered auto" you own, hire, or borrow is also an insured except:

**(1)** The owner or anyone else from whom you hire or borrow a "covered auto". This exception does not apply if the "covered auto" is a trailer or semi-trailer connected to a "covered auto" you own.

**(2)** Your "employee" if the "covered auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a "covered auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a "covered auto".

**(5)** A partner (if you are a partnership), or a member (if you are a limited liability company) for a "covered auto" owned by him or her or a member of his or her household.

**(6)** "Employees" with respect to "bodily injury" to any fellow "employee" of the insured arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

**c.** Anyone liable for the conduct of an insured described above is also an insured, but only to the extent of that liability.

**3.** Any additional insured under any policy of "underlying insurance" will automatically be an insured under this insurance.

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance required by the contract, less any amounts payable by any "underlying insurance".

Additional insured coverage provided by this insurance will not be broader than coverage provided by the "underlying insurance".

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made, "suits" brought, or number of vehicles involved; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The Aggregate Limit is the most we will pay for the sum of all "ultimate net loss" under:

**a.** Coverage **A**, except "ultimate net loss" because of "bodily injury" or "property damage" arising out of the ownership, maintenance or use of a "covered auto"; and

**b.** Coverage **B**.

**3.** Subject to **2.** above, the Each Occurrence Limit is the most we will pay for the sum of all "ultimate net loss" under Coverage **A** because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**4.** Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all "ultimate net loss" because of all "personal and advertising injury" sustained by any one person or organization.

The Aggregate Limit, as described in Paragraph **2.** above, applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – CONDITIONS

**1. Appeals**

If the "underlying insurer" or insured elects not to appeal a judgment in excess of the "retained limit", we may do so at our own expense. We will be liable for taxable costs, pre- and postjudgment interest and disbursements.

**2. Bankruptcy**

**a. Bankruptcy Of Insured**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**b. Bankruptcy Of Underlying Insurer**

Bankruptcy of the "underlying insurer" will not relieve us of our obligations under this Coverage Part.

However, this insurance will not replace the "underlying insurance" in the event of bankruptcy or insolvency of the "underlying insurer". This insurance will apply as if the "underlying insurance" were in full effect.

**3. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense, regardless of the amount, which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

## 4. Legal Action Against Us

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

## 5. Other Insurance

**a.** This insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.

When this insurance is excess, we will have no duty under Coverage **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**b.** When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

## 6. Premium Audit

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

## 7. Representations Or Fraud

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us;

**c.** We have issued this policy in reliance upon your representations; and

**d.** This policy is void in any case of fraud by you as it relates to this policy or any claim under this policy.

## 8. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

### 9. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

### 10. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

### 11. Loss Payable

Liability under this Coverage Part shall not apply unless and until the insured or insured's "underlying insurer" has become obligated to pay the "retained limit". Such obligation by the insured to pay part of the "ultimate net loss" shall have been previously determined by a final settlement or judgment after an actual trial or written agreement between the insured, claimant, and us.

### 12. Transfer Of Defense

When the underlying limits of insurance have been used up in the payment of judgments or settlements, the duty to defend will be transferred to us. We will cooperate in the transfer of control to us of any outstanding claims or "suits" seeking damages to which this insurance applies which would have been covered by the "underlying insurance" had the applicable limit not been used up.

### 13. Maintenance Of Underlying Insurance

The "underlying insurance" listed in the schedule of "underlying insurance" in the declarations shall remain in full effect throughout the policy period except for reduction of the aggregate limit due to payment of claims, settlement, or judgments.

Failure to maintain "underlying insurance" will not invalidate this insurance. However, this insurance will apply as if the "underlying insurance" were in full effect.

You must notify us as soon as practicable when any "underlying insurance" is no longer in effect.

### 14. Expanded Coverage Territory

**a.** If a "suit" is brought in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada, and we are prevented by law, or otherwise, from defending the insured, the insured will initiate a defense of the "suit". We will reimburse the insured, under Supplementary Payments, for any reasonable and necessary expenses incurred for the defense of a "suit" seeking damages to which this insurance applies, that we would have paid had we been able to exercise our right and duty to defend.

If the insured becomes legally obligated to pay sums because of damages to which this insurance applies in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada, and we are prevented by law, or otherwise, from paying such sums on the insured's behalf, we will reimburse the insured for such sums.

**b.** All payments or reimbursements we make for damages because of judgments or settlements will be made in U.S. currency at the prevailing exchange rate at the time the insured became legally obligated to pay such sums. All payments or reimbursements we make for expenses under Supplementary Payments will be made in U.S. currency at the prevailing exchange rate at the time the expenses were incurred.

**c.** Any disputes between you and us as to whether there is coverage under this policy must be filed in the courts of the United States of America (including its territories and possessions), Canada or Puerto Rico.

**d.** The insured must fully maintain any coverage required by law, regulation or other governmental authority during the policy period, except for reduction of the aggregate limits due to payments of claims, judgments or settlements.

Failure to maintain such coverage required by law, regulation or other governmental authority will not invalidate this insurance. However, this insurance will apply as if the required coverage by law, regulation or other governmental authority was in full effect.

© ISO Properties, Inc., 2003

**CU 00 01 12 04** □

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

   a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, disability, sickness, or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

4. "Coverage territory" means anywhere in the world with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America.

5. "Covered auto" means only those "autos" to which "underlying insurance" applies.

6. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

7. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work", or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

   g. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraphs **f.** and **g.** do not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

   (3) That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a "covered auto" over a route or territory that person or organization is authorized to serve by public authority.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft or watercraft;

   b. While it is in or on an aircraft or watercraft; or

   c. While it is being moved from an aircraft or watercraft to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft or watercraft.

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1) Equipment designed primarily for:

      (a) Snow removal;

      (b) Road maintenance, but not construction or resurfacing; or

      (c) Street cleaning;

   (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2003

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Pollution cost or expense" means any loss, cost or expense arising out of any:

   a. Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

   b. Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

17. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in your contract has been completed.

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   b. Does not include "bodily injury" or "property damage" arising out of:

      (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

      (2) The existence of tools, uninstalled equipment or abandoned or unused materials.

18. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   With respect to "covered autos", property damage also includes "pollution cost or expense", but only to the extent that coverage exists under the "underlying insurance" or would have existed but for the exhaustion of the underlying limits.

   For the purposes of this insurance, electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

19. "Retained limit" means the available limits of "underlying insurance" scheduled in the declarations or the "self-insured retention", whichever applies.

20. "Self-insured retention" means the dollar amount listed in the declarations that will be paid by the insured before this insurance becomes applicable only with respect to "occurrences" or offenses not covered by the "underlying insurance". The "self-insured retention" does not apply to "occurrences" or offenses which would have been covered by "underlying insurance" but for the exhaustion of applicable limits.

21. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent or the "underlying insurer's" consent.

22. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**23.** "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.

**24.** "Underlying insurance" means any policies of insurance listed in the declarations under the schedule of "underlying insurance".

**25.** "Underlying insurer" means any insurer who provides any policy of insurance listed in the schedule of "underlying insurance".

**26.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**27.** "Your product":

  **a.** Means:

    **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      **(a)** You;

      **(b)** Others trading under your name; or

      **(c)** A person or organization whose business or assets you have acquired; and

    **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

  **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**28.** "Your work":

  **a.** Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

    **(2)** The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2003

☐

| Endorsement | CU 02 |
|---|---|

Policy Number:

**REVISED COVERAGE PROVISIONS**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

A. Exclusion **j. Aircraft or Watercraft** of Paragraph **2., Exclusions** of SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY is deleted and replaced by the following:

**j. Aircraft Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 50 feet long; and

(b) Not being used to carry persons or property for a charge; or

(3) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft.

B. Part **(9)** of Exclusion **s. Professional Services** of Paragraph **2., Exclusions** of SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY is deleted and replaced by the following:

(9) Services in the practice of pharmacy;

C. Part **(i)** of Exclusion **a.(15) Professional Services** of Paragraph **2., Exclusions** of SECTION I - COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY is deleted and replaced by the following:

(i) Services in the practice of pharmacy;

D. Exclusion **a. (5) Contractual Liability** of Paragraph **2., Exclusions** of SECTION I - COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY is deleted and replaced by the following:

**Contractual Liability**

(5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

E. The following exclusion is added to Paragraph **2., Exclusions** of SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY and Paragraph **2., Exclusions** of SECTION I - COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY:

**Asbestos, Silica, and Mixed Dust**

This insurance does not apply to:

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, contributed to by, or resulting from, exposure to or the use of:

*Includes copywrited material of Insurance Services Office, Inc. with its permission.*

                                                    **Continued...**

Policy Number:

## REVISED COVERAGE PROVISIONS

**a.** Asbestos including, but not limited to, the cost of abatement, mitigation, removal or disposal of asbestos from any good, product or structure;

**b.** Silica; or

**c.** Mixed dust.

**2.** Any damage or any loss, cost or expense arising out of any:

**a.** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, asbestos, silica, mixed dust or any other material or substance containing asbestos, silica or mixed dust; or

**b.** Claim or suit by or on behalf of any governmental authority or any other alleged responsible party for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, asbestos, silica, mixed dust or any other material or substance containing asbestos, silica or mixed dust.

**3.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, contributed to by, or resulting from, supervision, instruction, recommendations, warnings or advice given or which should have been given in connection with any of the substances above.

**4.** Any obligation to share damages with or repay someone else in connection with any of the substances above.

**5.** As used in this endorsement,

**a.** Silica means a group of naturally occurring crystalline forms of silicon dioxide, including, but not limited to, quartz and sand; and

**b.** Mixed dust means a mixture of dusts composed of silica or asbestos and any other dusts.

*Includes copywrited material of Insurance Services Office, Inc. with its permission.*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

  **2. Exclusions**

    This insurance does not apply to:

    **DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

    "Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

    **a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

    **b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

    **c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

  **2. Exclusions**

    This insurance does not apply to:

    **DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

    "Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

    **a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

    **b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

    **c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

 © ISO Properties, Inc., 2005

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**I.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**II.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

 © ISO Properties, Inc.,  2001 ☐

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2001 □

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NON-CONCURRENCY OF POLICY PERIODS – RETAINED LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

The following is added to **Section III – Limits Of Insurance:**

If there is "underlying insurance" with a policy period that is non-concurrent with the policy period of this Commercial Liability Umbrella Coverage Part, the "retained limit(s)" will only be reduced or exhausted by payments for:

**a.** "Bodily injury" or "property damage" which occurs during the policy period of this Coverage Part; or

**b.** "Personal and advertising injury" for offenses that are committed during the policy period of this Coverage Part.

However, if any "underlying insurance" is written on a claims-made basis, the "retained limit(s)" will only be reduced or exhausted by claims for that insurance that are made during the policy period, or any Extended Reporting Period, of this Coverage Part.

© ISO Properties, Inc., 2005

| Endorsement | CU 85 |
| --- | --- |

Policy Number:

Lead Exclusion

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement modifies insurance provided under the following:

> COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

This insurance does not apply to:

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened exposure to lead, paint containing lead, water containing lead, or any other material or substance containing lead; or

2. Any loss, cost or expense arising out of any:

   a. Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead, paint containing lead, water containing lead, or any other material or substance containing lead; or

   b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead, paint containing lead, water containing lead, or any other material or substance containing lead.

| Endorsement | CU 46 |
|---|---|

Policy Number:

**RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION**

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement modifies insurance provided under the following:

**COMMERCIAL LIABILITY UMBRELLA COVERAGE PART**

A. The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury and Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions that addresses, prohibits, or limits the

printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

B. The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

"Personal injury" and "advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(a) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(b) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(c) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(d) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Contains Copyrighted Material of the Insurance Services Office, Inc.
Used With Permission

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 ☐

| Endorsement | IL 43 |

**Policy Number:**

**Common Policy Conditions Changes**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER COMMON POLICY CONDITIONS - IL 00 17.

The following condition is added:

G. **Our Right to Use Other Resources**

You and any insured seeking coverage under this policy agree that we have the right to utilize outside sources, vendors, experts, consultants, and software tools of our choosing to assist us in underwriting, pricing, and issuing our insurance policies and to assist us in adjusting claims.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**Section IV – Conditions** is amended by the following:

1. Paragraph **3.a.** of **Duties In The Event Of Accident, Claim, Suit Or Loss** is replaced by the following:

   **a.** In the event of an "occurrence", claim, "suit" or "loss", we or our representative must receive prompt notice of the "occurrence" or "loss". Include:

      **(1)** How, when and where the "occurrence" or "loss" occurred;

      **(2)** The insured's name and address; and

      **(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

The requirement for giving notice of a claim, if not satisfied by the insured within 30 days of the date of the "occurrence", may be satisfied by an injured third party who, as the result of such "occurrence", has a claim against the insured. However, in this event, notice of a claim given by an injured third party must be mailed to us.

2. Paragraph **7.d. Representations Or Fraud** is replaced by the following:

   **d.** We will not pay for any "loss" or damage in any case of fraud committed by you or any other insured, at any time, and relating to coverage under this policy.

Copyright, Insurance Services Office, Inc.,  2000             □

| Endorsement | CU 03 |

Policy Number:

**Redefined Coverage Territory**

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement modifies insurance provided under the following:

    COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

A. Paragraph **14. Expanded Coverage Territory** under **Section IV - Conditions** does not apply.

B. Paragraph **4.** under **Section V - Definitions** is replaced by the following:

    **4.** "Coverage territory" means anywhere in the world if the insured's responsibility to pay damages is determined in a "suit'' on the merits, in the United States of America (including its territories and possessions), Puerto Rico and Canada, or in a settlement we agree to.

*Includes copyrighted material of Insurance Services Office, Inc. with its permission.*

**IK1256 (12-2006)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** Paragraph **A.1.** of the **Cancellation** Common Policy Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

**a.** If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

**b.** If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation.

Our notice will state the effective date of cancellation, which will be the later of the following:

**(1)** 10 days from the date of mailing or delivering our notice, or

**(2)** The effective date of cancellation stated in the first Named Insured's notice to us.

**B.** Paragraph **A.5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5. Premium Refund**

**a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

**b.** If we cancel, the refund will be pro rata, except as provided in **c.** below.

**c.** If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

**d.** If the first Named Insured cancels, the refund may be less than pro rata.

**e.** The cancellation will be effective even if we have not made or offered a refund.

**C.** The following is added to the **Cancellation** Common Policy Condition and supersedes any other provisions to the contrary:

If we decide to:

**1.** Cancel or nonrenew this policy; or

**2.** Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

**3.** Change any policy provision which would limit or restrict coverage;

Then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us. Except as applicable as described in Paragraph **D.** below, we will mail or deliver notice at least:

**1.** 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

**2.** 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

**3.** 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

**D.** Paragraph **A.6.** of the **Cancellation** Common Policy Condition is replaced by the following:

If notice is mailed, a receipt provided by, or such other evidence of mailing as prescribed or accepted by, the U.S. Postal Service shall be sufficient proof of notice.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

Except with respect to coverage provided for the ownership, maintenance or use of "covered autos", this Coverage Form is modified as follows:

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of:

**a.** Any actual or alleged failure, malfunction or inadequacy of:

**(1)** Any of the following, whether belonging to any insured or to others:

**(a)** Computer hardware, including microprocessors;

**(b)** Computer application software;

**(c)** Computer operating systems and related software;

**(d)** Computer networks;

**(e)** Microprocessors (computer chips) not part of any computer system; or

**(f)** Any other computerized or electronic equipment or components; or

**(2)** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **2.a.(1)** of this endorsement

due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

**b.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **2.a.** of this endorsement.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# UNDERLYING CLAIMS-MADE COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

If any "underlying insurance" is written on a claims-made basis, the following applies to the insurance provided by this policy which is excess over that underlying insurance:

**A.** Paragraphs **1.b.(2)**, **1.b.(3)**, **1.c**, **1.d.** and **1.e.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** are replaced by the following:

   **1. Insuring Agreement**

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

   **(2)** The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations of the "underlying insurance" or after the end of the policy period; and

   **(3)** A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or any Extended Reporting Period we provide under Extended Reporting Periods.

   **c.** A claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

   **(1)** When notice of such claim is received and recorded by any insured or by the "underlying insurer" or us if the limits of the "underlying insurance" have been used up, whichever comes first; or

   **(2)** When we make settlement in accordance with Paragraph **1.a.** above, or settlement is made by the "underlying insurer" with our agreement.

   **d.** All claims for damages because of "bodily injury" to the same person, including damages claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury", will be deemed to have been made at the time the first of those claims is made against any insured.

   **e.** All claims for damages because of "property damage" causing loss to the same person or organization will be deemed to have been made at the time the first of those claims is made against any insured.

**B.** Paragraph **1.b.** of **Section I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

   **1. Insuring Agreement**

   **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business, but only if:

   **(1)** The offense was committed in the "coverage territory";

   **(2)** The offense was not committed before the Retroactive Date, if any, shown in the Declarations of the "underlying insurance" or after the end of the policy period; and

   **(3)** A claim for damages because of the "personal and advertising injury" is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or any Extended Reporting Period we provide under Extended Reporting Periods.

**C.** The following is added to Paragraph **1.** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

   **1. Insuring Agreement**

   **c.** A claim made by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

   **(1)** When notice of such claim is received and recorded by any insured or by the "underlying insurer" or us if the limits of the "underlying insurance" have been used up, whichever comes first; or

   **(2)** When we make settlement in accordance with Paragraph **1.a.** above or settlement is made by the "underlying insurer" with our agreement.

© ISO Properties, Inc., 2003

All claims for damages because of "personal and advertising injury" to the same person or organization as a result of an offense will be deemed to have been made at the time the first of those claims is made against any insured.

**D.** Exclusion **2.a.(2) Material Published Prior To Policy Period,** of Section **I – Coverage B** Personal and Advertising Injury Liability is replaced by the following:

**b. Material Published Prior To The Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the Retroactive Date, if any, shown in the Declarations.

**E.** The following Section is added:

**EXTENDED REPORTING PERIODS**

**1.** With respect to any "underlying insurance" written on a claims-made basis, we will provide one or more Extended Reporting Periods, as described below, if:

**a.** This Coverage Part is canceled or not renewed; or

**b.** "Underlying insurance" written on a claims-made basis is renewed or replaced with insurance that:

**(1)** Has a Retroactive Date later than the date shown in the Declarations of the "underlying insurance"; or

**(2)** Does not apply to "bodily injury", "property damage" or "personal and advertising injury" on a claims-made basis.

**2.** Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to claims for:

**a.** "Bodily injury" or "property damage" that occurs before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations of the "underlying insurance"; or

**b.** "Personal and advertising injury" caused by an offense committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations of the "underlying insurance".

Once in effect, Extended Reporting Periods may not be canceled.

**3.** A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for:

**a.** Five years with respect to claims because of "bodily injury" and "property damage" arising out of an "occurrence" reported to us, not later than 60 days after the end of the policy period, in accordance with the Duties In The Event Of Occurrence, Offense, Claim Or Suit Condition;

**b.** Five years with respect to claims because of "personal and advertising injury" arising out of an offense reported to us, not later than 60 days after the end of the policy period, in accordance with the Duties In The Event Of Occurrence, Offense, Claim Or Suit Condition; and

**c.** Sixty days with respect to claims arising from "occurrences" or offenses not previously reported to us.

The Basic Extended Reporting Period does not apply to claims that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such claims.

**4.** The Basic Extended Reporting Period does not reinstate or increase the Limits of Insurance.

**5.** A Supplemental Extended Reporting Period of unlimited duration is available, but only by an endorsement and for an extra charge. This supplemental period starts when the Basic Extended Reporting Period, set forth in Paragraph **3.** above, ends.

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

**a.** The exposures insured on a claims-made basis;

**b.** Previous types and amounts of insurance;

**c.** Limits of Insurance available under this Coverage Part for future payment of damages; and

**d.** Other related factors.

This endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period.

 © ISO Properties, Inc., 2003 ☐

**6.** If the Supplemental Extended Reporting Period is in effect, we will provide a supplemental aggregate limit of insurance equal to the dollar amount of the Aggregate Limit shown in the Declarations in effect at the end of the policy period, but only for claims first received and recorded during the Supplemental Extended Reporting Period.

Limits Of Insurance will be amended accordingly. The Personal and Advertising Injury Limit and the Each Occurrence Limit shown in the Declarations will then continue to apply.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**FUNGI OR BACTERIA**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**FUNGI OR BACTERIA**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

 © ISO Properties, Inc.,  2003

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

Exclusion **i.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**i. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; or

**(2)** "Pollution cost or expense".

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**I.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**II.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

 © ISO Properties, Inc., 2001 ☐

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2001 ☐

| Endorsement | CU 85 |
| --- | --- |

Policy Number:

Lead Exclusion

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

This insurance does not apply to:

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened exposure to lead, paint containing lead, water containing lead, or any other material or substance containing lead; or

2. Any loss, cost or expense arising out of any:

   a. Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead, paint containing lead, water containing lead, or any other material or substance containing lead; or

   b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead, paint containing lead, water containing lead, or any other material or substance containing lead.

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 ▯

| Endorsement | IL 43 |
|---|---|

**Policy Number:**

**Common Policy Conditions Changes**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER COMMON POLICY CONDITIONS - IL 00 17.

The following condition is added:

**G. Our Right to Use Other Resources**

You and any insured seeking coverage under this policy agree that we have the right to utilize outside sources, vendors, experts, consultants, and software tools of our choosing to assist us in underwriting, pricing, and issuing our insurance policies and to assist us in adjusting claims.

**Redefined Coverage Territory**

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement modifies insurance provided under the following:

    COMMERCIAL LIABILITY UMBRELLA
    COVERAGE PART

A. Paragraph **14. Expanded Coverage Territory** under **Section IV - Conditions** does not apply.

B. Paragraph **4.** under **Section V - Definitions** is replaced by the following:

    **4.** "Coverage territory" means anywhere in the world if the insured's responsibility to pay damages is determined in a "suit'' on the merits, in the United States of America (including its territories and possessions), Puerto Rico and Canada, or in a settlement we agree to.

*Includes copyrighted material of Insurance Services Office, Inc. with its permission.*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**Section IV – Conditions** is amended by the following:

1. Paragraph **3.a.** of **Duties In The Event Of Accident, Claim, Suit Or Loss** is replaced by the following:

   **a.** In the event of an "occurrence", claim, "suit" or "loss", we or our representative must receive prompt notice of the "occurrence" or "loss". Include:

      **(1)** How, when and where the "occurrence" or "loss" occurred;

      **(2)** The insured's name and address; and

      **(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

   The requirement for giving notice of a claim, if not satisfied by the insured within 30 days of the date of the "occurrence", may be satisfied by an injured third party who, as the result of such "occurrence", has a claim against the insured. However, in this event, notice of a claim given by an injured third party must be mailed to us.

2. Paragraph **7.d. Representations Or Fraud** is replaced by the following:

   **d.** We will not pay for any "loss" or damage in any case of fraud committed by you or any other insured, at any time, and relating to coverage under this policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**FUNGI OR BACTERIA**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**FUNGI OR BACTERIA**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

Exclusion **i.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**i. Pollution**

   **(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; or

   **(2)** "Pollution cost or expense".

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**I.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**II.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2001 ☐

| Endorsement | CU 85 |
|---|---|

Policy Number:

### Lead Exclusion

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement modifies insurance provided under the following:

    COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

This insurance does not apply to:

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened exposure to lead, paint containing lead, water containing lead, or any other material or substance containing lead; or

2. Any loss, cost or expense arising out of any:

    a. Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead, paint containing lead, water containing lead, or any other material or substance containing lead; or

    b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead, paint containing lead, water containing lead, or any other material or substance containing lead.

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 ☐

| Endorsement | IL 43 |

**Policy Number:**

**Common Policy Conditions Changes**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER COMMON POLICY CONDITIONS - IL 00 17.

The following condition is added:

G. **Our Right to Use Other Resources**

You and any insured seeking coverage under this policy agree that we have the right to utilize outside sources, vendors, experts, consultants, and software tools of our choosing to assist us in underwriting, pricing, and issuing our insurance policies and to assist us in adjusting claims.

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA       30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
davep@ais-ins.net
www.advancedinsurancestrategies.com

**Grange Mutual Casualty Company**
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named Insured and Address**

| Policy Type: | *Commercial Umbrella* |
| --- | --- |

**Reason Issued:** *Renewal*
**Policy Number:** *CUP 2083061-03*
**Renewal of:** *CUP 2083061-02*
**Issue Date:** *07/05/17*

**Acct. No:** *0000191650*

```
CYCLE-TEX INC
1711 KIMBERLY PARK DRIVE
DALTON GA   30720
```

---

## COMMERCIAL LIABILITY UMBRELLA DECLARATIONS

**Policy Period: From 07/01/17   To 07/01/18**   12:01 a.m. at the address of the Named Insured as shown above.

**Form of Business:**      *CORPORATION*
**Business Description:** *PLASTIC MFG*

**IN RETURN FOR THE PAYMENT OF PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE STATED IN THIS POLICY.**

**Commercial Liability Umbrella Limits Of Insurance**

$5,000,000 Each Occurrence Limit
$5,000,000 Personal and Advertising Injury Limit
$5,000,000 Aggregate Limit (except with respect to "covered autos")

**Retained Limit**

See Schedule of Underlying Insurance

None      Self-Insured Retention applicable to each "occurrence" or offense which is covered by this insurance but not covered by "underlying insurance"

**Advance Premium:**                                                                                     $14,122.00

**Certified Acts of Terrorism:**                                                                          $141.00

Your Estimated Total Policy Premium Is   **$14,263.00**
Premium does not include service charges.
**THIS IS NOT A BILL.** Any outstanding balance due will be billed at a later date.

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S), SCHEDULE(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

## COMMERCIAL LIABILITY UMBRELLA DECLARATIONS
## SCHEDULE OF UNDERLYING INSURANCE

**Policy Number:** *CUP 2083061-03*          **Renewal of:** *CUP 2083061-02*

**Named Insured:** CYCLE-TEX INC          **Policy Period: From 07/01/17      To 07/01/18**
                                          **Issue Date:** *07/05/17*

                                          **Reason Issued:** *Renewal*

**YOUR POLICY REQUIRES THAT YOU KEEP THE UNDERLYING INSURANCE COVERAGES AND LIMITS OF INSURANCE SHOWN IN THIS SCHEDULE IN FULL EFFECT THROUGHOUT THE POLICY PERIOD. REFER TO THE MAINTENANCE OF UNDERLYING INSURANCE CONDITION.**

```
Type of Insurance:      Commercial General Liability
Carrier:                Grange Mutual Casualty Company
Policy Number:          CPP 2083060-03
Policy Period:          Effective Date: 07/01/2017  Expiration Date: 07/01/2018
Limits of Insurance:

  $1,000,000  Each Occurrence
  $1,000,000  Personal and Advertising Injury
  $2,000,000  General Aggregate Limit (Other than Products/Completed Operations)
  $2,000,000  Aggregate - Products/Completed Operations

Type of Insurance:      Employee Benefits Liability
Carrier:                Grange Mutual Casualty Company
Policy Number:          CPP 2083060-03
Policy Period:          Effective Date: 07/01/2017  Expiration Date: 07/01/2018
Limits of Insurance:

  $1,000,000  Each Claim
  $3,000,000  Aggregate Limit

Type of Insurance:      Employers Liability
Carrier:                BERKSHIRE HATHAWAY HOMESTATE  INS CO
Policy Number:          CYWC711317
Policy Period:          Effective Date: 07/01/2017  Expiration Date: 07/01/2018
Limits of Insurance:

  $1,000,000  Bodily Injury by Accident - Each Accident
  $1,000,000  Bodily Injury by Disease - Policy Limit
  $1,000,000  Bodily Injury by Disease - Each Employee

Type of Insurance:      Auto Liability
Carrier:                Grange Mutual Casualty Company
Policy Number:          CPP 2083060-03
Policy Period:          Effective Date: 07/01/2017  Expiration Date: 07/01/2018
Limits of Insurance:

  $1,000,000  Per Accident Combined Single Limits
```

**Endorsement**

| | | | |
|---|---|---|---|
| CU 21 27 | (12/04) | | Fungi Or Bacteria Exclusion |
| CU 21 25 | (12/01) | | Total Pollution Exclusion Endorsement |
| CU 00 01 | (04/13) | | Commercial Liability Umbrella Coverage Form |
| CU 02 | (12/15) | | Revised Coverage Provisions |
| CU 21 23 | (02/02) | | Nuclear Energy Liability Exclusion Endorsement |
| CU 85 | (12/06) | | Lead Exclusion |
| IL 00 17 | (11/98) | | Common Policy Conditions |
| IL 43 | (05/11) | | Common Policy Conditions Changes |
| CU 21 86 | (05/14) | | Exclusion - Access Or Disclosure Of Confidential Or P... |
| CU 106 | (06/16) | | Cyber Liability Coverage Exclusion |
| CU 03 | (12/06) | | Redefined Coverage Territory |
| CU 01 48 | (09/00) | | Georgia Changes |
| CU 02 22 | (02/15) | | Georgia Changes - Cancellation And Nonrenewal |
| CU 21 30 | (01/15) | | Cap On Losses From Certified Acts Of Terrorism |
| IL 09 85 | (01/15) | | Disclosure Pursuant To Terrorism Risk Insurance Act |
| CU 20 | (12/06) | | Excess Employee Benefits Liability Coverage (Claims Made |
| CU 101 | (10/16) | * | Policy Changes - Who Is An Insured |

\*   Indicates Added Form

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| SCHEDULE - PART I |
|---|
| **Terrorism Premium (Certified Acts)    $** |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):** |
| **Additional information, if any, concerning the terrorism premium:** |

| SCHEDULE - PART II |
|---|
| **Federal share of terrorism losses    83 %    Year: 20 17** |
| (Refer to Paragraph **B.** in this endorsement.) |
| **Federal share of terrorism losses    82 %    Year: 20 18** |
| (Refer to Paragraph **B.** in this endorsement.) |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

| Endorsement | CU 20 |
|---|---|

**Excess Employee Benefits Liability Coverage (Claims-Made)**

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE. PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

None of the provisions, stipulations and other terms of the policy to which this endorsement is attached, except as stated under Section VI - OTHER PROVISIONS APPLICABLE TO THIS ENDORSEMENT, shall apply to this endorsement. In return for the payment of the premium, and subject to the terms of this endorsement, we agree with you as follows:

**SCHEDULE**

Limits of Insurance

| | |
|---|---|
| Each Claim Limit | $ 05000000 |
| Aggregate Limit | $ 05000000 |

Retroactive Date

This endorsement does not apply to a benefit error which occurs before the Retroactive Date, if any; shown here _____07012014_____
(Enter Date or "None" if no Retroactive Date applies)

The following coverage is added:

**COVERAGE E. EXCESS EMPLOYEE BENEFITS LIABILITY**

**SECTION I - INSURING AGREEMENT**

1. We will pay on behalf of the insured the "ultimate net loss", in excess of the "retained limit", that the insured becomes legally obligated to pay to any present or former "employee", or the heirs, beneficiaries or legal representatives of any present or former "employee", as damages because of a benefit error to which this insurance applies. This insurance applies only if the "underlying insurance" also applies, or would

apply but for the exhaustion of its limits of insurance. We will have the right to associate with the "underlying insurer" and the insured to defend any "claim" or "suit" seeking damages for a benefit error to which this insurance applies. But:

   a. The amount we will pay for damages is limited as described in **SECTION II - LIMITS OF INSURANCE** of this endorsement;

   b. We have a duty to defend such "claims" or "suits" if the limit of "underlying insurance" is exhausted;

   c. At our discretion, we may investigate any benefit error and settle any "claim" or "suit" that we have a duty to defend; but

   d. Both our right and duty to defend any existing or future "suits" end when we have exhausted the limit of insurance in the payment of judgments or settlements.

2. This insurance does not apply to a benefit error which occurred before the Retroactive Date, if any, shown in the Schedule of this endorsement, or which occurred after the policy period of this policy.

3. This insurance is subject to the same terms, conditions, agreements, exclusions, and definitions as the "underlying insurance" except;

   a. We will have no obligation under this insurance with respect to any "claim" or "suit" that is settled without our consent; and

   b. With respect to any provisions contrary to those contained in this endorsement, the provisions of this endorsement will control.

**SECTION II - LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Schedule of this endorsement and the rules below fix the most we will pay regardless of the number of:

*continued...*

| Endorsement | CU 20 |
| --- | --- |

**Excess Employee Benefits Liability Coverage
(Claims-Made)**

   **a.** Insureds;

   **b.** "Claims" made or "suits" brought; or

   **c.** Persons or organizations making "claims" or bringing "suits".

2. The Limit of Insurance shown in the Schedule of this endorsement, as applicable to Each Claim is the most we will pay for all damages that result from a single benefit error or a series of related benefit errors.

3. The Aggregate Limit of Insurance stated in the Schedule of this endorsement is the most we will pay for all benefit errors reported to us in a policy year regardless of when actual payment is made. By policy year, we mean each consecutive annual period of this policy.

4. Any damages incurred because of a benefit error or a series of related benefit errors occurring over more than one policy year shall be treated as a single claim. The claim will be subject to the Limits of Insurance in effect at the time of the first reported benefit error.

5. If the Aggregate Limit of Insurance shown in the Schedule of this endorsement is paid prior to this policy's termination date, the premium charged for this insurance is fully earned.

6. The limits of this insurance apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance of an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

With respect to the insurance provided by this endorsement Paragraph 5. **Other Insurance** is deleted and replaced with the following:

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis, except such insurance as is specifically purchased to apply in excess of this endorsement's limits of insurance.

**SECTION V - DEFINITIONS**

1. "Claim" means any demand upon the insured for damages alleging liability of the insured as the result of a benefit error.

2. "Retained limit" means the sum of available limits of "underlying insurance" applicable to any "claim" or "suit" from:

   **a.** "underlying insurance", or

   **b.** other collectible primary insurance.

3. "Underlying insurance" means the Employee Benefits Liability Coverage afforded under insurance policies designated in the schedule of "underlying insurance".

**SECTION VI - OTHER PROVISIONS APPLICABLE TO THIS ENDORSEMENT**

The following also apply to this endorsement:

1. Commercial Liability Umbrella Policy Declarations, and the Schedule Of Underlying Insurance.

2. The Nuclear Energy Liability Exclusion (Broad form) attached to this policy.

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | CU 101 |
|---|---|

**Policy Changes - Who Is An Insured**

Policy Number: CUP    2083061

This endorsement modifies insurance provided under the following:

Commercial Liability Umbrella Coverage Form

Paragraph **2.b.(1)** of **Section II - Who Is An Insured** is deleted and replaced by:

**(1)** The owner or anyone else from whom you directly or indirectly hire or borrow a "covered auto", including their agents or "employees". This exception does not apply if the "covered auto" is a trailer or semi-trailer connected to a "covered auto" you own.

*Includes copyrighted material of Insurance Services Office, Inc., with its permission.*

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA          30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
davep@ais-ins.net
www.advancedinsurancestrategies.com

**Grange Mutual Casualty Company**
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named Insured and Address**

| **Policy Type:** *Commercial Umbrella* |
| --- |

**Reason Issued:** *Renewal*
**Policy Number:** *CUP 2083061-04*
**Renewal of:** *CUP 2083061-03*
**Issue Date:** *06/06/18*

**Acct. No:** *0000191650*

```
CYCLE-TEX INC
1711 KIMBERLY PARK DRIVE
DALTON GA   30720
```

---

## COMMERCIAL LIABILITY UMBRELLA DECLARATIONS

**Policy Period: From 07/01/18     To 07/01/19**     12:01 a.m. at the address of the Named Insured as shown above.

**Form of Business:**     *CORPORATION*
**Business Description:** *PLASTIC MFG*

**IN RETURN FOR THE PAYMENT OF PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE STATED IN THIS POLICY.**

**Commercial Liability Umbrella Limits Of Insurance**

$5,000,000 Each Occurrence Limit
$5,000,000 Personal and Advertising Injury Limit
$5,000,000 Aggregate Limit (except with respect to "covered autos")

**Retained Limit**

See Schedule of Underlying Insurance

None          Self-Insured Retention applicable to each "occurrence" or offense which is covered by this insurance
but not covered by "underlying insurance"

**Advance Premium:**                                                                           $14,178.00

**Certified Acts of Terrorism:**                                                               $142.00

Your Estimated Total Policy Premium Is   | **$14,320.00** |
Premium does not include service charges.
**THIS IS NOT A BILL.** Any outstanding balance due will be billed at a later date.

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S), SCHEDULE(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

## COMMERCIAL LIABILITY UMBRELLA DECLARATIONS
## SCHEDULE OF UNDERLYING INSURANCE

**Policy Number:** *CUP 2083061-04*          **Renewal of:** *CUP 2083061-03*

**Named Insured:** CYCLE-TEX INC          **Policy Period: From 07/01/18     To 07/01/19**
                                          **Issue Date:** *06/06/18*

                                          **Reason Issued:** *Renewal*

**YOUR POLICY REQUIRES THAT YOU KEEP THE UNDERLYING INSURANCE COVERAGES AND LIMITS OF INSURANCE SHOWN IN THIS SCHEDULE IN FULL EFFECT THROUGHOUT THE POLICY PERIOD. REFER TO THE MAINTENANCE OF UNDERLYING INSURANCE CONDITION.**

```
Type of Insurance:      Commercial General Liability
Carrier:                Grange Mutual Casualty Company
Policy Number:          CPP 2083060-04
Policy Period:          Effective Date: 07/01/2018  Expiration Date: 07/01/2019
Limits of Insurance:

  $1,000,000  Each Occurrence
  $1,000,000  Personal and Advertising Injury
  $2,000,000  General Aggregate Limit (Other than Products/Completed Operations)
  $2,000,000  Aggregate - Products/Completed Operations

Type of Insurance:      Employee Benefits Liability
Carrier:                Grange Mutual Casualty Company
Policy Number:          CPP 2083060-04
Policy Period:          Effective Date: 07/01/2018  Expiration Date: 07/01/2019
Limits of Insurance:

  $1,000,000  Each Claim
  $3,000,000  Aggregate Limit

Type of Insurance:      Employers Liability
Carrier:                TBD
Policy Number:
Policy Period:          Effective Date: 07/01/2018  Expiration Date: 07/01/2019
Limits of Insurance:

  $1,000,000  Bodily Injury by Accident - Each Accident
  $1,000,000  Bodily Injury by Disease - Policy Limit
  $1,000,000  Bodily Injury by Disease - Each Employee

Type of Insurance:      Auto Liability
Carrier:                Grange Mutual Casualty Company
Policy Number:          CPP 2083060-04
Policy Period:          Effective Date: 07/01/2018  Expiration Date: 07/01/2019
Limits of Insurance:

  $1,000,000  Per Accident Combined Single Limits
```

**Endorsement**

| | | | |
|---|---|---|---|
| CU 21 27 | (12/04) | Fungi Or Bacteria Exclusion |
| CU 21 25 | (12/01) | Total Pollution Exclusion Endorsement |
| CU 00 01 | (04/13) | Commercial Liability Umbrella Coverage Form |
| CU 02 | (12/15) | Revised Coverage Provisions |
| CU 21 23 | (02/02) | Nuclear Energy Liability Exclusion Endorsement |
| CU 85 | (12/06) | Lead Exclusion |
| IL 00 17 | (11/98) | Common Policy Conditions |
| IL 43 | (05/11) | Common Policy Conditions Changes |
| CU 21 86 | (05/14) | Exclusion - Access Or Disclosure Of Confidential Or P... |
| CU 106 | (06/16) | Cyber Liability Coverage Exclusion |
| CU 03 | (12/06) | Redefined Coverage Territory |
| CU 01 48 | (09/00) | Georgia Changes |
| CU 02 22 | (02/15) | Georgia Changes - Cancellation And Nonrenewal |
| CU 21 30 | (01/15) | Cap On Losses From Certified Acts Of Terrorism |
| IL 09 85 | (01/15) | Disclosure Pursuant To Terrorism Risk Insurance Act |
| CU 20 | (12/06) | Excess Employee Benefits Liability Coverage (Claims Made |
| CU 101 | (10/16) | Policy Changes - Who Is An Insured |

\* Indicates Added Form

**Named Insured:** *CYCLE-TEX INC*
**Policy No.** *CUP 2083061*

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| SCHEDULE - PART I |
| --- |
| **Terrorism Premium (Certified Acts)**    $ |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):** |
| **Additional information, if any, concerning the terrorism premium:** |

| SCHEDULE - PART II |
| --- |
| **Federal share of terrorism losses   _82_ %    Year: 20_18___** |
| (Refer to Paragraph **B.** in this endorsement.) |
| **Federal share of terrorism losses   _81_ %    Year: 20_19___** |
| (Refer to Paragraph **B.** in this endorsement.) |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
| --- |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | CU 20 |
|---|---|

**Policy Number: CUP    2083061**

**Excess Employee Benefits Liability Coverage (Claims-Made)**

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE. PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

None of the provisions, stipulations and other terms of the policy to which this endorsement is attached, except as stated under Section VI - OTHER PROVISIONS APPLICABLE TO THIS ENDORSEMENT, shall apply to this endorsement. In return for the payment of the premium, and subject to the terms of this endorsement, we agree with you as follows:

**SCHEDULE**

Limits of Insurance

| | | |
|---|---|---|
| Each Claim Limit | $ | 5,000,000 |
| Aggregate Limit | $ | 5,000,000 |

Retroactive Date

This endorsement does not apply to a benefit error which occurs before the Retroactive Date, if any; shown here _____07012014_____
(Enter Date or "None" if no Retroactive Date applies)

The following coverage is added:

**COVERAGE E. EXCESS EMPLOYEE BENEFITS LIABILITY**

**SECTION I - INSURING AGREEMENT**

1.  We will pay on behalf of the insured the "ultimate net loss", in excess of the "retained limit", that the insured becomes legally obligated to pay to any present or former "employee", or the heirs, beneficiaries or legal representatives of any present or former "employee", as damages because of a benefit error to which this insurance applies. This insurance applies only if the "underlying insurance" also applies, or would

apply but for the exhaustion of its limits of insurance. We will have the right to associate with the "underlying insurer" and the insured to defend any "claim" or "suit" seeking damages for a benefit error to which this insurance applies. But:

a.  The amount we will pay for damages is limited as described in **SECTION II - LIMITS OF INSURANCE** of this endorsement;

b.  We have a duty to defend such "claims" or "suits" if the limit of "underlying insurance" is exhausted;

c.  At our discretion, we may investigate any benefit error and settle any "claim" or "suit" that we have a duty to defend; but

d.  Both our right and duty to defend any existing or future "suits" end when we have exhausted the limit of insurance in the payment of judgments or settlements.

2.  This insurance does not apply to a benefit error which occurred before the Retroactive Date, if any, shown in the Schedule of this endorsement, or which occurred after the policy period of this policy.

3.  This insurance is subject to the same terms, conditions, agreements, exclusions, and definitions as the "underlying insurance" except;

a.  We will have no obligation under this insurance with respect to any "claim" or "suit" that is settled without our consent; and

b.  With respect to any provisions contrary to those contained in this endorsement, the provisions of this endorsement will control.

**SECTION II - LIMITS OF INSURANCE**

1.  The Limits of Insurance shown in the Schedule of this endorsement and the rules below fix the most we will pay regardless of the number of:

*continued...*

| Endorsement | CU 20 |
|---|---|

**Excess Employee Benefits Liability Coverage (Claims-Made)**

   **a.** Insureds;

   **b.** "Claims" made or "suits" brought; or

   **c.** Persons or organizations making "claims" or bringing "suits".

**2.** The Limit of Insurance shown in the Schedule of this endorsement, as applicable to Each Claim is the most we will pay for all damages that result from a single benefit error or a series of related benefit errors.

**3.** The Aggregate Limit of Insurance stated in the Schedule of this endorsement is the most we will pay for all benefit errors reported to us in a policy year regardless of when actual payment is made. By policy year, we mean each consecutive annual period of this policy.

**4.** Any damages incurred because of a benefit error or a series of related benefit errors occurring over more than one policy year shall be treated as a single claim. The claim will be subject to the Limits of Insurance in effect at the time of the first reported benefit error.

**5.** If the Aggregate Limit of Insurance shown in the Schedule of this endorsement is paid prior to this policy's termination date, the premium charged for this insurance is fully earned.

**6.** The limits of this insurance apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance of an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

With respect to the insurance provided by this endorsement Paragraph 5. **Other Insurance** is deleted and replaced with the following:

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis, except such insurance as is specifically purchased to apply in excess of this endorsement's limits of insurance.

**SECTION V - DEFINITIONS**

**1.** "Claim" means any demand upon the insured for damages alleging liability of the insured as the result of a benefit error.

**2.** "Retained limit" means the sum of available limits of "underlying insurance" applicable to any "claim" or "suit" from:

   **a.** "underlying insurance", or

   **b.** other collectible primary insurance.

**3.** "Underlying insurance" means the Employee Benefits Liability Coverage afforded under insurance policies designated in the schedule of "underlying insurance".

**SECTION VI - OTHER PROVISIONS APPLICABLE TO THIS ENDORSEMENT**

The following also apply to this endorsement:

**1.** Commercial Liability Umbrella Policy Declarations, and the Schedule Of Underlying Insurance.

**2.** The Nuclear Energy Liability Exclusion (Broad form) attached to this policy.

*ADVANCED INSURANCE STRATEGIES*
*200 W CRAWFORD ST*
*PO BOX 709*
*DALTON, GA          30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named   Insured   and   Address**

| Policy   Type: | *Commercial Umbrella* |
|---|---|

**Reason   Issued:**   *New Business*
Policy   Number:   *CUP 2083061-00*
**Renewal   of:**
**Issue   Date:**   *07/08/14*

**Acct.   No:**   *0000191650*

**CYCLE-TEX INC**
**702 S THORNTON AVE**
**DALTON GA   30720**

---

### COMMERCIAL   LIABILITY UMBRELLA DECLARATIONS

**Policy Period: From 07/01/14   To 07/01/15**   12:01 a.m. at the address of the Named Insured as shown above.

**Form   of Business:**   *CORPORATION*
**Business   Description:**   *PLASTICS   MFG*

**IN RETURN FOR THE PAYMENT OF PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE STATED IN THIS POLICY.**

**Commercial   Liability Umbrella   Limits Of Insurance**

$5,000,000 Each Occurrence   Limit
$5,000,000 Personal and   Advertising   Injury Limit
$5,000,000 Aggregate   Limit (except with respect to "covered autos")

**Retained   Limit**

See Schedule  of Underlying   Insurance

None          Self-Insured Retention applicable  to each "occurrence"  or offense  which  is covered  by this insurance
but not covered  by "underlying   insurance"

**Advance   Premium:**                                                                          $9,835.00

**Certified   Acts  of Terrorism:**                                                             $98.00

Your Estimated  Total Policy Premium  Is   | **$9,933.00** |

Premium  does not include  service charges.
**THIS IS NOT A BILL.** Any outstanding   balance due will be billed at a later date.

THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S), SCHEDULE(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.

## COMMERCIAL   LIABILITY UMBRELLA DECLARATIONS
## SCHEDULE  OF  UNDERLYING  INSURANCE

**Policy   Number:**   *CUP 2083061-00*                    **Renewal    of:**

**Named    Insured:   CYCLE-TEX INC**            **Policy Period: From** **07/01/14**    **To**  **07/01/15**
**Issue  Date:**   *07/08/14*

**Reason   Issued:**   *New Business*

**YOUR  POLICY  REQUIRES  THAT YOU  KEEP THE UNDERLYING   INSURANCE  COVERAGES  AND  LIMITS OF INSURANCE SHOWN  IN THIS SCHEDULE  IN FULL EFFECT THROUGHOUT  THE POLICY  PERIOD. REFER TO THE MAINTENANCE   OF UNDERLYING  INSURANCE  CONDITION.**

```
Type of Insurance:      Commercial General Liability
Carrier:                Grange Mutual Casualty Company
Policy Number:          CPP 2083060-00
Policy Period:          Effective Date: 07/01/2014  Expiration Date:  07/01/2015
Limits of Insurance:

    $1,000,000  Each Occurrence
    $1,000,000  Personal and Advertising Injury
    $2,000,000  General Aggregate Limit (Other than Products/Completed  Operations)
    $2,000,000  Aggregate - Products/Completed  Operations

Type of Insurance:      Employee Benefits Liability
Carrier:                Grange Mutual Casualty Company
Policy Number:          CPP 2083060-00
Policy Period:          Effective Date: 07/01/2014  Expiration Date:  07/01/2015
Limits of Insurance:

    $1,000,000  Each Claim
    $3,000,000  Aggregate Limit

Type of Insurance:      Employers Liability
Carrier:                GUARD INSURANCE
Policy Number:          R2WC501993
Policy Period:          Effective Date: 07/01/2014  Expiration Date:  07/01/2015
Limits of Insurance:

    $1,000,000  Bodily Injury by Accident - Each Accident
    $1,000,000  Bodily Injury by Disease - Policy Limit
    $1,000,000  Bodily Injury by Disease - Each Employee

Type of Insurance:      Auto Liability
Carrier:                Grange Mutual Casualty Company
Policy Number:          CPP 2083060-00
Policy Period:          Effective Date: 07/01/2014  Expiration Date:  07/01/2015
Limits of Insurance:

    $1,000,000  Per Accident Combined Single Limits
```

**Endorsement**

```
CU 21 27 (12/04) * Fungi Or Bacteria Exclusion
CU 21 25 (12/01) * Total Pollution Exclusion Endorsement
CU 00 01 (12/04) * Commercial Liability Umbrella Coverage Form
CU 00 03 (03/05) * Exclusion - Violation Of Statutes That Govern E-Mails...
CU 02       (12/06) * Revised Coverage Provisions
CU 21 23 (02/02) * Nuclear Energy Liability Exclusion Endorsement
CU 24 37 (12/05) * Non-Concurrency Of Policy Periods - Retained Limit
CU 46       (02/09) * Recording And Distribution Of Material Or Information...
CU 85       (12/06) * Lead Exclusion
IL 00 17 (11/98) * Common Policy Conditions
IL 43       (05/11) * Common Policy Conditions Changes
CU 03       (12/06) * Redefined Coverage Territory
CU 01 48 (09/00) * Georgia Changes
CU 02 22 (09/00) * Georgia Changes - Cancellation And Nonrenewal
CU 21 30 (01/08) * Cap On Losses From Certified Acts Of Terrorism
IL 09 85 (01/08) * Disclosure Pursuant to Terrorism Risk Insurance Act
CU 20       (12/06) * Excess Employee Benefits Liability Coverage (Claims Made
CU 21 18 (09/00) * Exclusion - Year 2000 Computer-Related And Other Elec...
CU 27 00 (12/04) * Underlying Claims-Made Coverage
```

```
* Indicates Added Form
```

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | CU 20 |
|---|---|

**Policy Number: CUP    2083061**

### Excess Employee Benefits Liability Coverage (Claims-Made)

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE. PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

None of the provisions, stipulations and other terms of the policy to which this endorsement is attached, except as stated under Section VI - OTHER PROVISIONS APPLICABLE TO THIS ENDORSEMENT, shall apply to this endorsement. In return for the payment of the premium, and subject to the terms of this endorsement, we agree with you as follows:

#### SCHEDULE

Limits of Insurance

| | |
|---|---|
| Each Claim Limit | $ 05000000 |
| Aggregate Limit | $ 05000000 |

Retroactive Date

This endorsement does not apply to a benefit error which occurs before the Retroactive Date, if any; shown here _____07012014_____
(Enter Date or "None" if no Retroactive Date applies)

The following coverage is added:

**COVERAGE E. EXCESS EMPLOYEE BENEFITS LIABILITY**

**SECTION I - INSURING AGREEMENT**

1. We will pay on behalf of the insured the "ultimate net loss", in excess of the "retained limit", that the insured becomes legally obligated to pay to any present or former "employee", or the heirs, beneficiaries or legal representatives of any present or former "employee", as damages because of a benefit error to which this insurance applies. This insurance applies only if the "underlying insurance" also applies, or would apply but for the exhaustion of its limits of insurance. We will have the right to associate with the "underlying insurer" and the insured to defend any "claim" or "suit" seeking damages for a benefit error to which this insurance applies. But:

   a. The amount we will pay for damages is limited as described in **SECTION II - LIMITS OF INSURANCE** of this endorsement;

   b. We have a duty to defend such "claims" or "suits" if the limit of "underlying insurance" is exhausted;

   c. At our discretion, we may investigate any benefit error and settle any "claim" or "suit" that we have a duty to defend; but

   d. Both our right and duty to defend any existing or future "suits" end when we have exhausted the limit of insurance in the payment of judgments or settlements.

2. This insurance does not apply to a benefit error which occurred before the Retroactive Date, if any, shown in the Schedule of this endorsement, or which occurred after the policy period of this policy.

3. This insurance is subject to the same terms, conditions, agreements, exclusions, and definitions as the "underlying insurance' except;

   a. We will have no obligation under this insurance with respect to any "claim" or "suit" that is settled without our consent; and

   b. With respect to any provisions contrary to those contained in this endorsement, the provisions of this endorsement will control.

**SECTION II - LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Schedule of this endorsement and the rules below fix the most we will pay regardless of the number of:

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | CU 20 |
|---|---|

**Excess Employee Benefits Liability Coverage (Claims-Made)**

   **a.** Insureds;

   **b.** "Claims" made or "suits" brought; or

   **c.** Persons or organizations making "claims" or bringing "suits".

2. The Limit of Insurance shown in the Schedule of this endorsement, as applicable to Each Claim is the most we will pay for all damages that result from a single benefit error or a series of related benefit errors.

3. The Aggregate Limit of Insurance stated in the Schedule of this endorsement is the most we will pay for all benefit errors reported to us in a policy year regardless of when actual payment is made. By policy year, we mean each consecutive annual period of this policy.

4. Any damages incurred because of a benefit error or a series of related benefit errors occurring over more than one policy year shall be treated as a single claim. The claim will be subject to the Limits of Insurance in effect at the time of the first reported benefit error.

5. If the Aggregate Limit of Insurance shown in the Schedule of this endorsement is paid prior to this policy's termination date, the premium charged for this insurance is fully earned.

6. The limits of this insurance apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance of an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

With respect to the insurance provided by this endorsement Paragraph 5. **Other Insurance** is deleted and replaced with the following:

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis, except such insurance as is specifically purchased to apply in excess of this endorsement's limits of insurance.

**SECTION V - DEFINITIONS**

1. "Claim" means any demand upon the insured for damages alleging liability of the insured as the result of a benefit error.

2. "Retained limit" means the sum of available limits of "underlying insurance" applicable to any "claim" or "suit" from:

   **a.** "underlying insurance", or

   **b.** other collectible primary insurance.

3. "Underlying insurance" means the Employee Benefits Liability Coverage afforded under insurance policies designated in the schedule of "underlying insurance".

**SECTION VI - OTHER PROVISIONS APPLICABLE TO THIS ENDORSEMENT**

The following also apply to this endorsement:

1. Commercial Liability Umbrella Policy Declarations, and the Schedule Of Underlying Insurance.

2. The Nuclear Energy Liability Exclusion (Broad form) attached to this policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**FUNGI OR BACTERIA**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**FUNGI OR BACTERIA**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

Exclusion **i.** under Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**i. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; or

**(2)** "Pollution cost or expense".

# COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** - Definitions.

## SECTION I - COVERAGES

### COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

    **a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. But:

        **(1)** The amount we will pay for the "ultimate net loss" is limited as described in Section **III** - Limits Of Insurance; and

        **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

        **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

This exclusion does not apply to the extent that valid "underlying insurance" for the liquor liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" and "property damage". Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance" unless otherwise directed by this insurance.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. E.R.I.S.A.**

Any obligation of the insured under the Employees' Retirement Income Security Act (E.R.I.S.A.), and any amendments thereto or any similar federal, state or local statute.

**f. Auto Coverages**

**(1)** "Bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" which is not a "covered auto"; or

**(2)** Any loss, cost or expense payable under or resulting from any first party physical damage coverage; no-fault law; personal injury protection or auto medical payments coverage; or uninsured or underinsured motorist law.

**g. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

' ISO Properties, Inc., 2003

This exclusion does not apply to liability assumed by the insured under an "insured contract".

With respect to injury arising out of a "covered auto", this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits. For the purposes of this insurance, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

This exclusion does not apply to the extent that valid "underlying insurance" for the employer's liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury". Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance" unless otherwise directed by this insurance.

**h. Employment-Related Practices**

"Bodily injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**i. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; or

**(2)** "Pollution cost or expense".

This exclusion does not apply if valid "underlying insurance" for the pollution liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" and "property damage". Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance".

**j. Aircraft Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

  **(a)** Less than 50 feet long; and

  **(b)** Not being used to carry persons or property for a charge;

**(3)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft.

**(4)** The extent that valid "underlying insurance" for the aircraft or watercraft liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" or "property damage". Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance" unless otherwise directed by this insurance; or

**(5)** Aircraft that is:

  **(a)** Chartered by, loaned to, or hired by you with a paid crew; and

  **(b)** Not owned by any insured.

**k. Racing Activities**

"Bodily injury" or "property damage" arising out of the use of "mobile equipment" or "autos" in, or while in practice for, or while being prepared for, any prearranged professional or organized racing, speed, demolition, or stunting activity or contest.

**l. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**m. Damage To Property**

"Property damage" to:

**(1)** Property:

  **(a)** You own, rent, or occupy including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property; or

  **(b)** Owned or transported by the insured and arising out of the ownership, maintenance or use of a "covered auto".

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(1)(b)**, **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraphs **(3)** and **(4)** of this exclusion do not apply to liability assumed under a written Trailer Interchange agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**n. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**o. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**p. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**q. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**r. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**s. Professional Services**

"Bodily injury" or "property damage" due to rendering or failure to render any professional service. This includes but is not limited to:

**(1)** Legal, accounting or advertising services;

**(2)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(3)** Engineering services, including related supervisory or inspection services;

**(4)** Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

**(5)** Any health or therapeutic service treatment, advice or instruction;

**(6)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

**(7)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(8)** Body piercing services;

**(9)** Services in the practice of pharmacy; but this exclusion does not apply if you are a retail druggist or your operations are those of a retail drugstore;

**(10)** Law enforcement or firefighting services; and

**(11)** Handling, embalming, disposal, burial, cremation or disinterment of dead bodies.

**t. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

## COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "personal and advertising injury" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. At our discretion, we may investigate any offense that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. But:

**(1)** The amount we will pay for the "ultimate net loss" is limited as described in Section III - Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to:

**a.** "Personal and advertising injury":

**(1) Knowing Violation Of Rights Of Another**

Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**(2) Material Published With Knowledge Of Falsity**

Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**(3) Material Published Prior To Policy Period**

Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**(4) Criminal Acts**

Arising out of a criminal act committed by or at the direction of the insured.

**(5) Contractual Liability**

For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to:

**(a)** Liability for damages that the insured would have in the absence of the contract or agreement.

**(b)** Liability for false arrest, detention or imprisonment assumed in a contract or agreement.

**(6) Breach Of Contract**

Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**(7) Quality Or Performance Of Goods - Failure To Conform To Statements**

Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**(8) Wrong Description Of Prices**

Arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**(9) Infringement Of Copyright, Patent, Trademark Or Trade Secret**

Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**(10) Insureds In Media And Internet Type Businesses**

Committed by an insured whose business is:

**(a)** Advertising, broadcasting, publishing or telecasting;

**(b)** Designing or determining content of websites for others; or

**(c)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**(11) Electronic Chatrooms Or Bulletin Boards**

Arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**(12) Unauthorized Use Of Another's Name Or Product**

Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**(13) Pollution**

Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(14) Employment-Related Practices**

To:

**(a)** A person arising out of any:

**(i)** Refusal to employ that person;

**(ii)** Termination of that person's employment; or

**(iii)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

 ' ISO Properties, Inc., 2003

**(b)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(i)**, **(ii)**, or **(iii)** above is directed.

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**(15) Professional Services**

Arising out of the rendering or failure to render any professional service. This includes but is not limited to:

**(a)** Legal, accounting or advertising services;

**(b)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(c)** Engineering services, including related supervisory or inspection services;

**(d)** Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

**(e)** Any health or therapeutic service treatment, advice or instruction;

**(f)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

**(g)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(h)** Body piercing services;

**(i)** Services in the practice of pharmacy; but this exclusion does not apply if you are a retail druggist or your operations are those of a retail drugstore;

**(j)** Law enforcement or firefighting services; and

**(k)** Handling, embalming, disposal, burial, cremation or disinterment of dead bodies.

**(16) War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(a)** War, including undeclared or civil war;

**(b)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(c)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**b.** "Pollution cost or expense".

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend, when the duty to defend exists:

**a.** All expenses we incur.

**b.** Up to $2000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "occurrence" we cover. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All costs taxed against the insured in the "suit".

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** When we have the right but not the duty to defend the insured and elect to participate in the defense, we will pay our own expenses but will not contribute to the expenses of the insured or the "underlying insurer".

**3.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** - Coverage **A** - Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments, or settlements, or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II - WHO IS AN INSURED

**1.** Except for liability arising out of the ownership, maintenance, or use of "covered autos":

**a.** If you are designated in the Declarations as:

**(1)** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**(2)** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**(3)** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**(4)** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**(5)** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

' ISO Properties, Inc., 2003

**b.** Each of the following is also an insured:

**(1)** Your "volunteer workers" only while performing duties related to the conduct of your business, your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(a)** "Bodily injury" or "personal and advertising injury":

**(i)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" in the course of his or her employment or performing duties related to the conduct of your business or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(ii)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(a)(i)** above; or

**(iii)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(a)(i)** or **(ii)** above.

**(b)** "Property damage" to property:

**(i)** Owned, occupied or used by,

**(ii)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**(2)** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**(3)** Any person or organization having proper temporary custody of your property if you die, but only:

**(a)** With respect to liability arising out of the maintenance or use of that property; and

**(b)** Until your legal representative has been appointed.

**(4)** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**c.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**(1)** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**(2)** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**(3)** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

**2.** Only with respect to liability arising out of the ownership, maintenance, or use of "covered autos":

**a.** You are an insured.

**b.** Anyone else while using with your permission a "covered auto" you own, hire, or borrow is also an insured except:

**(1)** The owner or anyone else from whom you hire or borrow a "covered auto". This exception does not apply if the "covered auto" is a trailer or semi-trailer connected to a "covered auto" you own.

**(2)** Your "employee" if the "covered auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a "covered auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a "covered auto".

**(5)** A partner (if you are a partnership), or a member (if you are a limited liability company) for a "covered auto" owned by him or her or a member of his or her household.

**(6)** "Employees" with respect to "bodily injury" to any fellow "employee" of the insured arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

**c.** Anyone liable for the conduct of an insured described above is also an insured, but only to the extent of that liability.

**3.** Any additional insured under any policy of "underlying insurance" will automatically be an insured under this insurance.

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance required by the contract, less any amounts payable by any "underlying insurance".

Additional insured coverage provided by this insurance will not be broader than coverage provided by the "underlying insurance".

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made, "suits" brought, or number of vehicles involved; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The Aggregate Limit is the most we will pay for the sum of all "ultimate net loss" under:

**a.** Coverage **A,** except "ultimate net loss" because of "bodily injury" or "property damage" arising out of the ownership, maintenance or use of a "covered auto"; and

**b.** Coverage **B.**

**3.** Subject to **2.** above, the Each Occurrence Limit is the most we will pay for the sum of all "ultimate net loss" under Coverage **A** because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**4.** Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all "ultimate net loss" because of all "personal and advertising injury" sustained by any one person or organization.

The Aggregate Limit, as described in Paragraph **2.** above, applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - CONDITIONS

**1. Appeals**

If the "underlying insurer" or insured elects not to appeal a judgment in excess of the "retained limit", we may do so at our own expense. We will be liable for taxable costs, pre- and postjudgment interest and disbursements.

**2. Bankruptcy**

**a. Bankruptcy Of Insured**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**b. Bankruptcy Of Underlying Insurer**

Bankruptcy of the "underlying insurer" will not relieve us of our obligations under this Coverage Part.

However, this insurance will not replace the "underlying insurance" in the event of bankruptcy or insolvency of the "underlying insurer". This insurance will apply as if the "underlying insurance" were in full effect.

**3. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense, regardless of the amount, which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

' ISO Properties, Inc., 2003

**c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**4. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**5. Other Insurance**

**a.** This insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.

   When this insurance is excess, we will have no duty under Coverage **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**b.** When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of:

   **(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

   **(2)** The total of all deductible and self-insured amounts under all that other insurance.

**6. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**7. Representations Or Fraud**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us;

**c.** We have issued this policy in reliance upon your representations; and

**d.** This policy is void in any case of fraud by you as it relates to this policy or any claim under this policy.

**8. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

9. **Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

10. **When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

11. **Loss Payable**

Liability under this Coverage Part shall not apply unless and until the insured or insured's "underlying insurer" has become obligated to pay the "retained limit". Such obligation by the insured to pay part of the "ultimate net loss" shall have been previously determined by a final settlement or judgment after an actual trial or written agreement between the insured, claimant, and us.

12. **Transfer Of Defense**

When the underlying limits of insurance have been used up in the payment of judgments or settlements, the duty to defend will be transferred to us. We will cooperate in the transfer of control to us of any outstanding claims or "suits" seeking damages to which this insurance applies which would have been covered by the "underlying insurance" had the applicable limit not been used up.

13. **Maintenance Of Underlying Insurance**

The "underlying insurance" listed in the schedule of "underlying insurance" in the declarations shall remain in full effect throughout the policy period except for reduction of the aggregate limit due to payment of claims, settlement, or judgments.

Failure to maintain "underlying insurance" will not invalidate this insurance. However, this insurance will apply as if the "underlying insurance" were in full effect.

You must notify us as soon as practicable when any "underlying insurance" is no longer in effect.

14. **Expanded Coverage Territory**

a. If a "suit" is brought in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada, and we are prevented by law, or otherwise, from defending the insured, the insured will initiate a defense of the "suit". We will reimburse the insured, under Supplementary Payments, for any reasonable and necessary expenses incurred for the defense of a "suit" seeking damages to which this insurance applies, that we would have paid had we been able to exercise our right and duty to defend.

If the insured becomes legally obligated to pay sums because of damages to which this insurance applies in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada, and we are prevented by law, or otherwise, from paying such sums on the insured's behalf, we will reimburse the insured for such sums.

b. All payments or reimbursements we make for damages because of judgments or settlements will be made in U.S. currency at the prevailing exchange rate at the time the insured became legally obligated to pay such sums. All payments or reimbursements we make for expenses under Supplementary Payments will be made in U.S. currency at the prevailing exchange rate at the time the expenses were incurred.

c. Any disputes between you and us as to whether there is coverage under this policy must be filed in the courts of the United States of America (including its territories and possessions), Canada or Puerto Rico.

d. The insured must fully maintain any coverage required by law, regulation or other governmental authority during the policy period, except for reduction of the aggregate limits due to payments of claims, judgments or settlements.

Failure to maintain such coverage required by law, regulation or other governmental authority will not invalidate this insurance. However, this insurance will apply as if the required coverage by law, regulation or other governmental authority was in full effect.

© ISO Properties, Inc., 2003

## SECTION V - DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, disability, sickness, or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

**4.** "Coverage territory" means anywhere in the world with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America.

**5.** "Covered auto" means only those "autos" to which "underlying insurance" applies.

**6.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**7.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work", or your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

**g.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraphs **f.** and **g.** do not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

**(3)** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a "covered auto" over a route or territory that person or organization is authorized to serve by public authority.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft or watercraft;

   **b.** While it is in or on an aircraft or watercraft; or

   **c.** While it is being moved from an aircraft or watercraft to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft or watercraft.

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   **b.** Vehicles maintained for use solely on or next to premises you own or rent;

   **c.** Vehicles that travel on crawler treads;

   **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   **(1)** Power cranes, shovels, loaders, diggers or drills; or

   **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

   **e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   **(2)** Cherry pickers and similar devices used to raise or lower workers;

   **f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   **(1)** Equipment designed primarily for:

   **(a)** Snow removal;

   **(b)** Road maintenance, but not construction or resurfacing; or

   **(c)** Street cleaning;

   **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   **a.** False arrest, detention or imprisonment;

   **b.** Malicious prosecution;

   **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

   **f.** The use of another's advertising idea in your "advertisement"; or

   **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

' ISO Properties, Inc., 2003

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Pollution cost or expense" means any loss, cost or expense arising out of any:

**a.** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**b.** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**17.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

**18.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

With respect to "covered autos", property damage also includes "pollution cost or expense", but only to the extent that coverage exists under the "underlying insurance" or would have existed but for the exhaustion of the underlying limits.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**19.** "Retained limit" means the available limits of "underlying insurance" scheduled in the declarations or the "self-insured retention", whichever applies.

**20.** "Self-insured retention" means the dollar amount listed in the declarations that will be paid by the insured before this insurance becomes applicable only with respect to "occurrences" or offenses not covered by the "underlying insurance". The "self-insured retention" does not apply to "occurrences" or offenses which would have been covered by "underlying insurance" but for the exhaustion of applicable limits.

**21.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent or the "underlying insurer's" consent.

**22.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

23. "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.

24. "Underlying insurance" means any policies of insurance listed in the declarations under the schedule of "underlying insurance".

25. "Underlying insurer" means any insurer who provides any policy of insurance listed in the schedule of "underlying insurance".

26. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

27. "Your product":

   **a.** Means:

     **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

       **(a)** You;

       **(b)** Others trading under your name; or

       **(c)** A person or organization whose business or assets you have acquired; and

     **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

     **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

     **(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

28. "Your work":

   **a.** Means:

     **(1)** Work or operations performed by you or on your behalf; and

     **(2)** Materials, parts or equipment furnished in connection with such work or operations.

   **b.** Includes:

     **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

     **(2)** The providing of or failure to provide warnings or instructions.

' ISO Properties, Inc., 2003

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

   "Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

   **a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

   **b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

   **c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

   "Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

   **a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

   **b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

   **c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

 ' ISO Properties, Inc., 2005

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | CU 02 |
|---|---|

**Policy Number: CUP    2083061**

**REVISED COVERAGE PROVISIONS**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

A. Exclusion **j. Aircraft or Watercraft** of Paragraph **2., Exclusions** of SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY is deleted and replaced by the following:

**j. Aircraft Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 50 feet long; and

(b) Not being used to carry persons or property for a charge; or

(3) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft.

B. Part **(9)** of Exclusion **s. Professional Services** of Paragraph **2., Exclusions** of SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY is deleted and replaced by the following:

**(9)** Services in the practice of pharmacy;

C. Part **(i)** of Exclusion **a.(15) Professional Services** of Paragraph **2., Exclusions** of SECTION I - COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY is deleted and replaced by the following:

**(i)** Services in the practice of pharmacy;

D. Exclusion **a. (5) Contractual Liability** of Paragraph **2., Exclusions** of SECTION I - COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY is deleted and replaced by the following:

**Contractual Liability**

**(5)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

E. The following exclusion is added to Paragraph **2., Exclusions** of SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY and Paragraph **2., Exclusions** of SECTION I - COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY:

**Asbestos, Silica, and Mixed Dust**

This insurance does not apply to:

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, contributed to by, or resulting from, exposure to or the use of:

*Includes copywrited material of Insurance Services Office, Inc. with its permission.*

**Continued...**

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | CU 02 |
|---|---|

## REVISED COVERAGE PROVISIONS

a. Asbestos including, but not limited to, the cost of abatement, mitigation, removal or disposal of asbestos from any good, product or structure;

b. Silica; or

c. Mixed dust.

2. Any damage or any loss, cost or expense arising out of any:

a. Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, asbestos, silica, mixed dust or any other material or substance containing asbestos, silica or mixed dust; or

b. Claim or suit by or on behalf of any governmental authority or any other alleged responsible party for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, asbestos, silica, mixed dust or any other material or substance containing asbestos, silica or mixed dust.

3. "Bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, contributed to by, or resulting from, supervision, instruction, recommendations, warnings or advice given or which should have been given in connection with any of the substances above.

4. Any obligation to share damages with or repay someone else in connection with any of the substances above.

5. As used in this endorsement,

a. Silica means a group of naturally occurring crystalline forms of silicon dioxide, including, but not limited to, quartz and sand; and

b. Mixed dust means a mixture of dusts composed of silica or asbestos and any other dusts.

*Includes copywrited material of Insurance Services Office, Inc. with its permission.*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**I.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**II.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

' ISO Properties, Inc., 2001

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 ' ISO Properties, Inc., 2001

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NON-CONCURRENCY OF POLICY PERIODS - RETAINED LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

The following is added to **Section III - Limits Of Insurance:**

If there is "underlying insurance" with a policy period that is non-concurrent with the policy period of this Commercial Liability Umbrella Coverage Part, the "retained limit(s)" will only be reduced or exhausted by payments for:

**a.** "Bodily injury" or "property damage" which occurs during the policy period of this Coverage Part; or

**b.** "Personal and advertising injury" for offenses that are committed during the policy period of this Coverage Part.

However, if any "underlying insurance" is written on a claims-made basis, the "retained limit(s)" will only be reduced or exhausted by claims for that insurance that are made during the policy period, or any Extended Reporting Period, of this Coverage Part.

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | CU 46 |
|---|---|

**Policy Number: CUP   2083061**

## RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement modifies insurance provided under the following:

**COMMERCIAL LIABILITY UMBRELLA COVERAGE PART**

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury and Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

"Personal injury" and "advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(a)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(b)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(c)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(d)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Contains Copyrighted Material of the Insurance Services Office, Inc.
Used With Permission

| Endorsement | CU 85 |
|---|---|

**Lead Exclusion**

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement  modifies insurance  provided under  the following:

COMMERCIAL  LIABILITY UMBRELLA COVERAGE  PART

This insurance  does not apply  to:

1. "Bodily injury", "property  damage" or "personal and advertising  injury" arising  out of the actual, alleged or threatened  exposure  to lead, paint containing  lead, water  containing  lead, or any other  material or substance  containing  lead; or

2. Any loss, cost or expense  arising  out of any:

    a. Request, demand  or order that any insured or others  test for, monitor,  clean up, remove,  contain, treat, detoxify  or neutralize,  or in any way respond  to, or assess the effects of lead, paint  containing lead, water  containing  lead, or any other material  or substance  containing  lead; or

    b. Claim or "suit" by or on behalf of a governmental  authority  for damages  because of testing  for, monitoring,  cleaning  up, removing,  containing,  treating,  detoxifying  or neutralizing,  or in any way responding  to, or assessing  the effects of lead, paint  containing lead, water  containing  lead, or any other material  or substance  containing  lead.

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 ☐

Grange Mutual Casualty Company
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | IL 43 |
|---|---|

Common Policy Conditions Changes

**Policy Number: CUP    2083061**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER COMMON POLICY CONDITIONS - IL 00 17.**

The following condition is added:

**G. Our Right to Use Other Resources**

You and any insured seeking coverage under this policy agree that we have the right to utilize outside sources, vendors, experts, consultants, and software tools of our choosing to assist us in underwriting, pricing, and issuing our insurance policies and to assist us in adjusting claims.

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | CU 03 |
|---|---|

Policy Number: CUP   2083061

**Redefined Coverage Territory**

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

A. Paragraph **14. Expanded Coverage Territory** under **Section IV - Conditions** does not apply.

B. Paragraph **4.** under **Section V - Definitions** is replaced by the following:

4. "Coverage territory" means anywhere in the world if the insured's responsibility to pay damages is determined in a "suit'' on the merits, in the United States of America (including its territories and possessions), Puerto Rico and Canada, or in a settlement we agree to.

*Includes copyrighted material of Insurance Services Office, Inc. with its permission.*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**Section IV - Conditions** is amended by the following:

1. Paragraph **3.a.** of **Duties In The Event Of Accident, Claim, Suit Or Loss** is replaced by the following:

   **a.** In the event of an "occurrence", claim, "suit" or "loss", we or our representative must receive prompt notice of the "occurrence" or "loss". Include:

   **(1)** How, when and where the "occurrence" or "loss" occurred;

   **(2)** The insured's name and address; and

   **(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

The requirement for giving notice of a claim, if not satisfied by the insured within 30 days of the date of the "occurrence", may be satisfied by an injured third party who, as the result of such "occurrence", has a claim against the insured. However, in this event, notice of a claim given by an injured third party must be mailed to us.

2. Paragraph **7.d. Representations Or Fraud** is replaced by the following:

   **d.** We will not pay for any "loss" or damage in any case of fraud committed by you or any other insured, at any time, and relating to coverage under this policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** Paragraph **A.1.** of the **Cancellation** Common Policy Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

**a.** If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

**b.** If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation.

Our notice will state the effective date of cancellation, which will be the later of the following:

**(1)** 10 days from the date of mailing or delivering our notice, or

**(2)** The effective date of cancellation stated in the first Named Insured's notice to us.

**B.** Paragraph **A.5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5. Premium Refund**

**a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

**b.** If we cancel, the refund will be pro rata, except as provided in **c.** below.

**c.** If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

**d.** If the first Named Insured cancels, the refund may be less than pro rata.

**e.** The cancellation will be effective even if we have not made or offered a refund.

**C.** The following is added to the **Cancellation** Common Policy Condition and supersedes any other provisions to the contrary:

If we decide to:

**1.** Cancel or nonrenew this policy; or

**2.** Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

**3.** Change any policy provision which would limit or restrict coverage;

Then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us. Except as applicable as described in Paragraph **D.** below, we will mail or deliver notice at least:

**1.** 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

**2.** 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

**3.** 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

**D.** Paragraph **A.6.** of the **Cancellation** Common Policy Condition is replaced by the following:

If notice is mailed, a receipt provided by, or such other evidence of mailing as prescribed or accepted by, the U.S. Postal Service shall be sufficient proof of notice.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

 ' ISO Properties, Inc., 2007

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

**Terrorism Premium (Certified Acts) $**
**This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(s):**

**Additional information, if any, concerning the terrorism premium:**

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

Except with respect to coverage provided for the ownership, maintenance or use of "covered autos", this Coverage Form is modified as follows:

The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of:

**a.** Any actual or alleged failure, malfunction or inadequacy of:

**(1)** Any of the following, whether belonging to any insured or to others:

**(a)** Computer hardware, including microprocessors;

**(b)** Computer application software;

**(c)** Computer operating systems and related software;

**(d)** Computer networks;

**(e)** Microprocessors (computer chips) not part of any computer system; or

**(f)** Any other computerized or electronic equipment or components; or

**(2)** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **2.a.(1)** of this endorsement

due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

**b.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **2.a.** of this endorsement.

Copyright, Insurance Services Office, Inc., 2000

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# UNDERLYING CLAIMS-MADE COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

If any "underlying insurance" is written on a claims-made basis, the following applies to the insurance provided by this policy which is excess over that underlying insurance:

**A.** Paragraphs **1.b.(2), 1.b.(3), 1.c, 1.d.** and **1.e.** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** are replaced by the following:

**1. Insuring Agreement**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(2)** The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations of the "underlying insurance" or after the end of the policy period; and

**(3)** A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or any Extended Reporting Period we provide under Extended Reporting Periods.

**c.** A claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

**(1)** When notice of such claim is received and recorded by any insured or by the "underlying insurer" or us if the limits of the "underlying insurance" have been used up, whichever comes first; or

**(2)** When we make settlement in accordance with Paragraph **1.a.** above, or settlement is made by the "underlying insurer" with our agreement.

**d.** All claims for damages because of "bodily injury" to the same person, including damages claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury", will be deemed to have been made at the time the first of those claims is made against any insured.

**e.** All claims for damages because of "property damage" causing loss to the same person or organization will be deemed to have been made at the time the first of those claims is made against any insured.

**B.** Paragraph **1.b.** of **Section I - Coverage B - Personal And Advertising Injury Liability** is replaced by the following:

**1. Insuring Agreement**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business, but only if:

**(1)** The offense was committed in the "coverage territory";

**(2)** The offense was not committed before the Retroactive Date, if any, shown in the Declarations of the "underlying insurance" or after the end of the policy period; and

**(3)** A claim for damages because of the "personal and advertising injury" is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or any Extended Reporting Period we provide under Extended Reporting Periods.

**C.** The following is added to Paragraph **1.** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

**1. Insuring Agreement**

**c.** A claim made by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

**(1)** When notice of such claim is received and recorded by any insured or by the "underlying insurer" or us if the limits of the "underlying insurance" have been used up, whichever comes first; or

' ISO Properties, Inc., 2003

**(2)** When we make settlement in accordance with Paragraph **1.a.** above or settlement is made by the "underlying insurer" with our agreement.

All claims for damages because of "personal and advertising injury" to the same person or organization as a result of an offense will be deemed to have been made at the time the first of those claims is made against any insured.

**D.** Exclusion **2.a.(2) Material Published Prior To Policy Period,** of Section **I** - Coverage **B** Personal and Advertising Injury Liability is replaced by the following:

**b. Material Published Prior To The Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the Retroactive Date, if any, shown in the Declarations.

**E.** The following Section is added:

**EXTENDED REPORTING PERIODS**

**1.** With respect to any "underlying insurance" written on a claims-made basis, we will provide one or more Extended Reporting Periods, as described below, if:

**a.** This Coverage Part is canceled or not renewed; or

**b.** "Underlying insurance" written on a claims-made basis is renewed or replaced with insurance that:

**(1)** Has a Retroactive Date later than the date shown in the Declarations of the "underlying insurance"; or

**(2)** Does not apply to "bodily injury", "property damage" or "personal and advertising injury" on a claims-made basis.

**2.** Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to claims for:

**a.** "Bodily injury" or "property damage" that occurs before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations of the "underlying insurance"; or

**b.** "Personal and advertising injury" caused by an offense committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations of the "underlying insurance".

Once in effect, Extended Reporting Periods may not be canceled.

**3.** A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for:

**a.** Five years with respect to claims because of "bodily injury" and "property damage" arising out of an "occurrence" reported to us, not later than 60 days after the end of the policy period, in accordance with the Duties In The Event Of Occurrence, Offense, Claim Or Suit Condition;

**b.** Five years with respect to claims because of "personal and advertising injury" arising out of an offense reported to us, not later than 60 days after the end of the policy period, in accordance with the Duties In The Event Of Occurrence, Offense, Claim Or Suit Condition; and

**c.** Sixty days with respect to claims arising from "occurrences" or offenses not previously reported to us.

The Basic Extended Reporting Period does not apply to claims that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such claims.

**4.** The Basic Extended Reporting Period does not reinstate or increase the Limits of Insurance.

**5.** A Supplemental Extended Reporting Period of unlimited duration is available, but only by an endorsement and for an extra charge. This supplemental period starts when the Basic Extended Reporting Period, set forth in Paragraph **3.** above, ends.

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

**a.** The exposures insured on a claims-made basis;

**b.** Previous types and amounts of insurance;

**c.** Limits of Insurance available under this Coverage Part for future payment of damages; and

**d.** Other related factors.

This endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period.

' ISO Properties, Inc., 2003

**6.** If the Supplemental Extended Reporting Period is in effect, we will provide a supplemental aggregate limit of insurance equal to the dollar amount of the Aggregate Limit shown in the Declarations in effect at the end of the policy period, but only for claims first received and recorded during the Supplemental Extended Reporting Period.

Limits Of Insurance will be amended accordingly. The Personal and Advertising Injury Limit and the Each Occurrence Limit shown in the Declarations will then continue to apply.

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA        30722*

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

Named   Insured   and   Address

| **Policy   Type:** *Commercial Umbrella* |

**Reason   Issued:** *Renewal*
**Policy   Number:** *CUP 2083061-01*
**Renewal   of:** *CUP 2083061-00*
**Issue   Date:** *07/21/15*

**CYCLE-TEX INC**
**702 S THORNTON AVE STE 201**
**DALTON GA   30720**

**Acct.   No:** *0000191650*

---

### COMMERCIAL   LIABILITY UMBRELLA DECLARATIONS

**Policy Period: From** **07/01/15**   **To** **07/01/16**   12:01 a.m. at the address of the Named Insured as shown above.

**Form of Business:** *CORPORATION*
**Business Description:** *PLASTIC MFG*

**IN RETURN FOR THE PAYMENT OF PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE STATED IN THIS POLICY.**

**Commercial   Liability   Umbrella   Limits Of Insurance**

$5,000,000 Each Occurrence Limit
$5,000,000 Personal and Advertising Injury Limit
$5,000,000 Aggregate Limit (except with respect to "covered autos")

**Retained   Limit**

See Schedule of Underlying Insurance

None        Self-Insured Retention applicable to each "occurrence" or offense which is covered by this insurance
but not covered by "underlying insurance"

**Advance   Premium:**                                                                                    $12,166.00

**Certified   Acts   of   Terrorism:**                                                                     $122.00

Your Estimated Total Policy Premium Is   | **$12,288.00** |
Premium does not include service charges.
**THIS IS NOT A BILL.** Any outstanding balance due will be billed at a later date.

THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S), SCHEDULE(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.

## COMMERCIAL   LIABILITY UMBRELLA DECLARATIONS
## SCHEDULE  OF  UNDERLYING  INSURANCE

Policy   Number:   *CUP 2083061-01*          Renewal   of:  *CUP 2083061-00*

Named   Insured:   **CYCLE-TEX INC**          **Policy Period: From 07/01/15    To 07/01/16**

Issue   Date:   *07/21/15*

Reason   Issued:   *Renewal*

YOUR  POLICY  REQUIRES  THAT  YOU  KEEP THE UNDERLYING   INSURANCE  COVERAGES  AND  LIMITS  OF  INSURANCE
SHOWN  IN  THIS SCHEDULE  IN FULL EFFECT THROUGHOUT  THE POLICY  PERIOD.  REFER TO THE MAINTENANCE   OF
UNDERLYING   INSURANCE  CONDITION.

```
Type of Insurance:      Commercial General Liability
Carrier:                Grange Mutual Casualty Company
Policy Number:          CPP 2083060-01
Policy Period:          Effective Date: 07/01/2015  Expiration Date:  07/01/2016
Limits of Insurance:

    $1,000,000   Each Occurrence
    $1,000,000   Personal and Advertising Injury
    $2,000,000   General Aggregate Limit (Other than Products/Completed  Operations)
    $2,000,000   Aggregate - Products/Completed  Operations

Type of Insurance:      Employee Benefits Liability
Carrier:                Grange Mutual Casualty Company
Policy Number:          CPP 2083060-01
Policy Period:          Effective Date:  07/01/2015  Expiration Date:  07/01/2016
Limits of Insurance:

    $1,000,000   Each Claim
    $3,000,000   Aggregate Limit

Type of Insurance:      Employers Liability
Carrier:                BERKSHIRE HATHAWAY HOMESTATE   INS CO
Policy Number:          CYWC605788
Policy Period:          Effective Date:  07/01/2015  Expiration Date:  07/01/2016
Limits of Insurance:

    $1,000,000   Bodily Injury by Accident - Each Accident
    $1,000,000   Bodily Injury by Disease - Policy Limit
    $1,000,000   Bodily Injury by Disease - Each Employee

Type of Insurance:      Auto Liability
Carrier:                Grange Mutual Casualty Company
Policy Number:          CPP 2083060-01
Policy Period:          Effective Date:  07/01/2015  Expiration Date:  07/01/2016
Limits of Insurance:

    $1,000,000   Per Accident Combined Single Limits
```

**Policy Forms Inventory**

**Endorsement**

```
CU 21 27  (12/04)    Fungi Or Bacteria Exclusion
CU 21 25  (12/01)    Total Pollution Exclusion Endorsement
CU 00 01  (12/04)    Commercial Liability Umbrella Coverage Form
CU 00 03  (03/05)    Exclusion - Violation Of Statutes That Govern E-Mails...
CU 02     (12/06)    Revised Coverage Provisions
CU 21 23  (02/02)    Nuclear Energy Liability Exclusion Endorsement
CU 24 37  (12/05)    Non-Concurrency Of Policy Periods - Retained Limit
CU 46     (02/09)    Recording And Distribution Of Material Or Information...
CU 85     (12/06)    Lead Exclusion
IL 00 17  (11/98)    Common Policy Conditions
IL 43     (05/11)    Common Policy Conditions Changes
CU 03     (12/06)    Redefined Coverage Territory
CU 01 48  (09/00)    Georgia Changes
CU 02 22  (09/00)    Georgia Changes - Cancellation And Nonrenewal
CU 21 30  (01/15) *  Cap On Losses From Certified Acts Of Terrorism
IL 09 85  (01/15) *  Disclosure Pursuant To Terrorism Risk Insurance Act
CU 20     (12/06)    Excess Employee Benefits Liability Coverage (Claims Made
CU 21 18  (09/00)    Exclusion - Year 2000 Computer-Related And Other Elec...
CU 27 00  (12/04)    Underlying Claims-Made Coverage


              *  Indicates Added Form
```

**Named Insured:** *CYCLE-TEX INC*
**Policy No.** *CUP 2083061*

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| SCHEDULE - PART I |
|---|
| **Terrorism Premium (Certified Acts)**    $<br>**This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):**<br><br><br><br><br><br>**Additional information, if any, concerning the terrorism premium:**<br><br> |

| SCHEDULE - PART II |
|---|
| **Federal share of terrorism losses**    __85__ %     **Year: 2015**<br>(Refer to Paragraph **B.** in this endorsement.)<br><br>**Federal share of terrorism losses**    __84__ %     **Year: 2016**<br>(Refer to Paragraph **B.** in this endorsement.) |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

## A. Disclosure Of Premium

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

 © Insurance Services Office, Inc., 2015

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© Insurance Services Office, Inc., 2015

Grange Mutual Casualty Company
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | CU 20 |
|---|---|

**Policy Number: CUP 2083061**

## Excess Employee Benefits Liability Coverage (Claims-Made)

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE. PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

None of the provisions, stipulations and other terms of the policy to which this endorsement is attached, except as stated under Section VI - OTHER PROVISIONS APPLICABLE TO THIS ENDORSEMENT, shall apply to this endorsement. In return for the payment of the premium, and subject to the terms of this endorsement, we agree with you as follows:

### SCHEDULE

Limits of Insurance

| Each Claim Limit | $ 05000000 |
|---|---|
| Aggregate Limit | $ 05000000 |

Retroactive Date

This endorsement does not apply to a benefit error which occurs before the Retroactive Date, if any; shown here _____07012014_____
(Enter Date or "None" if no Retroactive Date applies)

The following coverage is added:

### COVERAGE E. EXCESS EMPLOYEE BENEFITS LIABILITY

### SECTION I - INSURING AGREEMENT

1. We will pay on behalf of the insured the "ultimate net loss", in excess of the "retained limit", that the insured becomes legally obligated to pay to any present or former "employee", or the heirs, beneficiaries or legal representatives of any present or former "employee", as damages because of a benefit error to which this insurance applies. This insurance applies only if the "underlying insurance" also applies, or would

apply but for the exhaustion of its limits of insurance. We will have the right to associate with the "underlying insurer" and the insured to defend any "claim" or "suit" seeking damages for a benefit error to which this insurance applies. But:

a. The amount we will pay for damages is limited as described in **SECTION II - LIMITS OF INSURANCE** of this endorsement;

b. We have a duty to defend such "claims" or "suits" if the limit of "underlying insurance" is exhausted;

c. At our discretion, we may investigate any benefit error and settle any "claim" or "suit" that we have a duty to defend; but

d. Both our right and duty to defend any existing or future "suits" end when we have exhausted the limit of insurance in the payment of judgments or settlements.

2. This insurance does not apply to a benefit error which occurred before the Retroactive Date, if any, shown in the Schedule of this endorsement, or which occurred after the policy period of this policy.

3. This insurance is subject to the same terms, conditions, agreements, exclusions, and definitions as the "underlying insurance' except;

a. We will have no obligation under this insurance with respect to any "claim" or "suit" that is settled without our consent; and

b. With respect to any provisions contrary to those contained in this endorsement, the provisions of this endorsement will control.

### SECTION II - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Schedule of this endorsement and the rules below fix the most we will pay regardless of the number of:

continued...

| Endorsement | CU 20 |
|---|---|

**Excess Employee Benefits Liability Coverage (Claims-Made)**

   **a.** Insureds;

   **b.** "Claims" made or "suits" brought;  or

   **c.** Persons or organizations  making "claims" or bringing  "suits".

**2.** The Limit of Insurance  shown  in the Schedule  of this endorsement,  as applicable  to Each Claim is the most we will pay for all damages  that result from a single benefit  error  or a series  of related benefit  errors.

**3.** The Aggregate  Limit of Insurance  stated  in the Schedule  of this endorsement   is the most we will pay for all benefit  errors  reported  to us in a policy year regardless  of when actual  payment  is made.  By policy year, we mean  each consecutive annual  period  of this policy.

**4.** Any damages  incurred  because  of a benefit  error or a series of related  benefit  errors  occurring  over more than  one policy year shall  be treated  as a single claim.  The claim will be subject  to the Limits of Insurance  in effect at the time  of the first reported  benefit  error.

**5.** If the Aggregate  Limit of Insurance  shown  in the Schedule  of this endorsement   is paid prior  to this policy's  termination  date, the premium  charged for this insurance  is fully earned.

**6.** The limits of this insurance  apply separately  to each consecutive  annual  period  and to any remaining  period  of less than 12 months,  starting with the beginning  of the policy period  shown  in the Declarations,  unless the policy period  is extended  after issuance  of an additional  period of less than  12 months.  In that case, the additional  period  will be deemed  part of the last preceding  period  for purposes  of determining the Limits of Insurance.

With respect  to the insurance  provided  by this endorsement   Paragraph   5. **Other Insurance**  is deleted  and replaced  with the following:

This insurance  is excess over any other  insurance, whether  primary,  excess, contingent  or on any other basis, except  such insurance  as is specifically purchased  to apply  in excess  of this endorsement's limits of insurance.

**SECTION V - DEFINITIONS**

**1.** "Claim" means  any demand  upon  the insured  for damages  alleging  liability  of the insured  as the result  of a benefit  error.

**2.** "Retained  limit"  means  the sum  of available limits of "underlying  insurance"  applicable  to any "claim"  or "suit"  from:

   **a.** "underlying  insurance",  or

   **b.** other  collectible  primary  insurance.

**3.** "Underlying  insurance"  means  the Employee Benefits  Liability  Coverage  afforded  under insurance  policies  designated  in the schedule of "underlying  insurance".

**SECTION VI - OTHER PROVISIONS APPLICABLE TO THIS ENDORSEMENT**

The following  also apply  to this endorsement:

**1.** Commercial  Liability  Umbrella  Policy Declarations,  and the Schedule  Of Underlying Insurance.

**2.** The Nuclear  Energy  Liability  Exclusion  (Broad form) attached  to this policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA        30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies com
www advancedinsurancestrategies com

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

Named   Insured   and   Address

| Policy   Type:   *Commercial Umbrella* |
| --- |

**Reason   Issued:** *Renewal*
**Policy   Number:** *CUP 2083061-02*
**Renewal   of:** *CUP 2083061-01*
**Issue   Date:** *05/23/16*

**Acct.   No:** *0000191650*

**CYCLE-TEX INC**
**702 S THORNTON AVE STE 201**
**DALTON GA   30720**

---

### COMMERCIAL   LIABILITY UMBRELLA DECLARATIONS

**Policy Period: From 07/01/16   To 07/01/17**   12 01 a m  at the address of the Named Insured as shown above

**Form  of Business:**        *CORPORATION*
**Business   Description:**   *PLASTIC MFG*

**IN RETURN FOR THE PAYMENT  OF PREMIUM,  AND  SUBJECT TO ALL THE TERMS OF THIS POLICY,  WE AGREE WITH YOU TO PROVIDE  THE INSURANCE   STATED IN  THIS POLICY.**

**Commercial     Liability  Umbrella   Limits Of Insurance**

$5,000,000 Each Occurrence  Limit
$5,000,000 Personal  and  Advertising  Injury Limit
$5,000,000 Aggregate  Limit (except with respect to "covered autos")

**Retained    Limit**

See Schedule  of Underlying  Insurance

None        Self-Insured  Retention  applicable  to each "occurrence"  or offense which is covered  by this insurance
            but not covered  by "underlying  insurance"

**Advance     Premium:**                                                    **$13,275.00**

**Certified    Acts  of Terrorism:**                                        **$133.00**

Your Estimated  Total Policy Premium Is   **$13,408.00**
Premium  does not include  service charges
**THIS IS NOT A BILL.** Any outstanding   balance due will be billed at a later date

THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S), SCHEDULE(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY

## COMMERCIAL   LIABILITY UMBRELLA DECLARATIONS
## SCHEDULE  OF  UNDERLYING  INSURANCE

Policy  Number:  *CUP 2083061-02*          Renewal  of:  *CUP 2083061-01*

Named  Insured:  **CYCLE-TEX INC**          **Policy Period: From** **07/01/16**    **To** **07/01/17**

Issue  Date:  *05/23/16*

Reason  Issued:  *Renewal*

YOUR  POLICY  REQUIRES  THAT  YOU  KEEP THE UNDERLYING   INSURANCE  COVERAGES  AND  LIMITS  OF  INSURANCE
SHOWN  IN  THIS  SCHEDULE  IN  FULL EFFECT THROUGHOUT  THE POLICY  PERIOD.  REFER TO THE MAINTENANCE   OF
UNDERLYING   INSURANCE  CONDITION.

```
Type of Insurance:        Commercial  General  Liability
Carrier:                  Grange  Mutual  Casualty  Company
Policy Number:            CPP 2083060-02
Policy Period:            Effective  Date:  07/01/2016  Expiration  Date:  07/01/2017
Limits of Insurance:

    $1,000,000  Each Occurrence
    $1,000,000  Personal  and Advertising  Injury
    $2,000,000  General  Aggregate  Limit  (Other  than Products/Completed  Operations)
    $2,000,000  Aggregate  - Products/Completed  Operations

Type of Insurance:        Employee  Benefits  Liability
Carrier:                  Grange  Mutual  Casualty  Company
Policy Number:            CPP 2083060-02
Policy Period:            Effective  Date:  07/01/2016  Expiration  Date:  07/01/2017
Limits of Insurance:

    $1,000,000  Each Claim
    $3,000,000  Aggregate  Limit

Type of Insurance:        Employers  Liability
Carrier:                  BERKSHIRE  HATHAWAY  HOMESTATE   INS CO
Policy Number:            CYWC605788
Policy Period:            Effective  Date:  07/01/2016  Expiration  Date:  07/01/2017
Limits of Insurance:

    $1,000,000  Bodily  Injury  by Accident  - Each Accident
    $1,000,000  Bodily  Injury  by Disease  - Policy Limit
    $1,000,000  Bodily  Injury  by Disease  - Each Employee

Type of Insurance:        Auto  Liability
Carrier:                  Grange  Mutual  Casualty  Company
Policy Number:            CPP 2083060-02
Policy Period:            Effective  Date:  07/01/2016  Expiration  Date:  07/01/2017
Limits of Insurance:

    $1,000,000  Per Accident  Combined  Single  Limits
```

**Endorsement**

```
CU 21 27  (12/04)    Fungi Or Bacteria Exclusion
CU 21 25  (12/01)    Total Pollution Exclusion Endorsement
CU 00 01  (04/13)  * Commercial Liability Umbrella Coverage Form
CU 02     (12/15)  * Revised Coverage Provisions
CU 21 23  (02/02)    Nuclear Energy Liability Exclusion Endorsement
CU 85     (12/06)    Lead Exclusion
IL 00 17  (11/98)    Common Policy Conditions
IL 43     (05/11)    Common Policy Conditions Changes
CU 21 86  (05/14)  * Exclusion - Access Or Disclosure Of Confidential Or P...
CU 106    (06/16)  * Cyber Liability Coverage Exclusion
CU 03     (12/06)    Redefined Coverage Territory
CU 01 48  (09/00)    Georgia Changes
CU 02 22  (02/15)  * Georgia Changes - Cancellation And Nonrenewal
CU 21 30  (01/15)    Cap On Losses From Certified Acts Of Terrorism
IL 09 85  (01/15)    Disclosure Pursuant To Terrorism Risk Insurance Act
CU 20     (12/06)    Excess Employee Benefits Liability Coverage (Claims Made
```

```
          *  Indicates Added Form
```

**Named Insured:** *CYCLE-TEX INC*
**Policy No.** *CUP 2083061*

CU 241 (12-2006)

CUPOLA

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

## SCHEDULE

| SCHEDULE - PART I |
| --- |
| **Terrorism Premium (Certified Acts)**   $ |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):** |
| |
| **Additional information, if any, concerning the terrorism premium:** |
| |

| SCHEDULE - PART II |
| --- |
| **Federal share of terrorism losses**   __84_%   **Year:** 20_16___ |
| (Refer to Paragraph **B.** in this endorsement ) |
| **Federal share of terrorism losses**   __83_%   **Year:** 20_17___ |
| (Refer to Paragraph **B.** in this endorsement ) |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

 © Insurance Services Office, Inc., 2015

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | CU 20 |
|---|---|

**Policy Number: CUP   2083061**

**Excess Employee Benefits Liability Coverage (Claims-Made)**

**THIS ENDORSEMENT  PROVIDES CLAIMS-MADE  COVERAGE. PLEASE READ THE ENTIRE ENDORSEMENT  CAREFULLY.**

This endorsement  modifies insurance  provided under  the following

COMMERCIAL  LIABILITY UMBRELLA COVERAGE PART

None  of the provisions,  stipulations  and other  terms of the policy  to which  this endorsement   is attached, except  as stated under  Section VI - OTHER PROVISIONS  APPLICABLE  TO THIS ENDORSEMENT,  shall  apply  to this endorsement In return  for the payment  of the premium,  and subject  to the terms  of this endorsement,   we agree with you as follows

**SCHEDULE**

Limits of Insurance

Each Claim Limit      $ 05000000
Aggregate  Limit       $ 05000000

Retroactive  Date

This endorsement   does not apply  to a benefit error  which  occurs before  the Retroactive  Date, if any, shown here _____07012014_____
(Enter Date or "None" if no Retroactive  Date applies)

The following  coverage  is added

**COVERAGE E. EXCESS EMPLOYEE BENEFITS LIABILITY**

**SECTION I - INSURING  AGREEMENT**

**1.** We will pay on behalf of the insured  the "ultimate  net loss",  in excess of the "retained  limit",  that the insured  becomes  legally  obligated to pay to any present  or former  "employee",  or the heirs, beneficiaries  or legal representatives  of any present  or former  "employee",  as damages because  of a benefit error to which  this insurance applies  This insurance  applies  only if the "underlying  insurance"  also applies,  or would

apply  but for the exhaustion   of its limits of insurance   We will have the right to associate with the "underlying   insurer"  and the insured  to defend  any  "claim"  or "suit"  seeking  damages  for a benefit  error to which  this insurance  applies But

**a.** The amount  we will pay for damages  is limited  as described   in **SECTION  II - LIMITS OF INSURANCE**  of this endorsement,

**b.** We have a duty to defend  such "claims"  or "suits"  if the limit of "underlying  insurance"  is exhausted,

**c.** At our discretion,  we may investigate  any benefit  error and settle  any "claim"  or "suit" that we have a duty to defend,  but

**d.** Both our right and duty to defend  any existing  or future  "suits"  end when we have exhausted   the limit of insurance  in the payment  of judgments  or settlements

**2.** This insurance  does not apply  to a benefit error which  occurred  before the Retroactive  Date, if any, shown  in the Schedule  of this endorsement, or which  occurred  after the policy period  of this policy

**3.** This insurance  is subject  to the same terms, conditions,  agreements,  exclusions,  and definitions  as the "underlying  insurance'  except,

**a.** We will have no obligation  under this insurance  with respect to any "claim"  or "suit" that is settled  without  our consent,  and

**b.** With respect  to any provisions  contrary  to those contained   in this endorsement,   the provisions  of this endorsement   will control

**SECTION II - LIMITS OF INSURANCE**

**1.** The Limits of Insurance  shown in the Schedule  of this endorsement   and the rules below fix the most we will pay regardless  of the number  of

IN018 (12-2006)

*continued...*

| Endorsement | CU 20 |
|---|---|

**Policy Number: CUP    2083061**

**Excess Employee Benefits Liability Coverage (Claims-Made)**

    **a.** Insureds,

    **b.** "Claims" made or "suits" brought, or

    **c.** Persons or organizations making "claims" or bringing "suits"

2. The Limit of Insurance shown in the Schedule of this endorsement, as applicable to Each Claim is the most we will pay for all damages that result from a single benefit error or a series of related benefit errors

3. The Aggregate Limit of Insurance stated in the Schedule of this endorsement is the most we will pay for all benefit errors reported to us in a policy year regardless of when actual payment is made By policy year, we mean each consecutive annual period of this policy

4. Any damages incurred because of a benefit error or a series of related benefit errors occurring over more than one policy year shall be treated as a single claim The claim will be subject to the Limits of Insurance in effect at the time of the first reported benefit error

5. If the Aggregate Limit of Insurance shown in the Schedule of this endorsement is paid prior to this policy's termination date, the premium charged for this insurance is fully earned

6. The limits of this insurance apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance of an additional period of less than 12 months In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance

With respect to the insurance provided by this endorsement Paragraph 5 **Other Insurance** is deleted and replaced with the following

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis, except such insurance as is specifically purchased to apply in excess of this endorsement's limits of insurance

**SECTION V - DEFINITIONS**

1. "Claim" means any demand upon the insured for damages alleging liability of the insured as the result of a benefit error

2. "Retained limit" means the sum of available limits of "underlying insurance" applicable to any "claim" or "suit" from

    **a.** "underlying insurance", or

    **b.** other collectible primary insurance

3. "Underlying insurance" means the Employee Benefits Liability Coverage afforded under insurance policies designated in the schedule of "underlying insurance"

**SECTION VI - OTHER PROVISIONS APPLICABLE TO THIS ENDORSEMENT**

The following also apply to this endorsement

1. Commercial Liability Umbrella Policy Declarations, and the Schedule Of Underlying Insurance

2. The Nuclear Energy Liability Exclusion (Broad form) attached to this policy

# COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

Various provisions in this policy restrict coverage Read the entire policy carefully to determine rights, duties and what is and is not covered

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy The words "we", "us" and "our" refer to the company providing this insurance

The word "insured" means any person or organization qualifying as such under Section **II** - Who Is An Insured

Other words and phrases that appear in quotation marks have special meaning Refer to Section **V** - Definitions

## SECTION I - COVERAGES

## COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit" for which we have the duty to defend But

      (1) The amount we will pay for the "ultimate net loss" is limited as described in Section **III** - Limits Of Insurance, and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

   b. This insurance applies to "bodily injury" or "property damage" that is subject to an applicable "retained limit" If any other limit, such as a sublimit, is specified in the "underlying insurance", this insurance does not apply to "bodily injury" or "property damage" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "underlying insurance"

   c. This insurance applies to "bodily injury" and "property damage" only if

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory",

      (2) The "bodily injury" or "property damage" occurs during the policy period, and

      (3) Prior to the policy period, no insured listed under Paragraph **1.a.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period

   d. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.a.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period

**e.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.a.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur

**f.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury"

## 2. Exclusions

This insurance does not apply to

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement This exclusion does not apply to liability for damages

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract", and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol,

if the "occurrence" which caused the "bodily injury" or "property damage" involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages

This exclusion does not apply to the extent that valid "underlying insurance" for the liquor liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" and "property damage" To the extent this exclusion does not apply, the insurance provided under this Coverage Part for the liquor liability risks described above will follow the same provisions, exclusions and limitations that are contained in the applicable "underlying insurance", unless otherwise directed by this insurance

© Insurance Services Office, Inc , 2012

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law

**e. ERISA**

Any obligation of the insured under the Employee Retirement Income Security Act of 1974 (ERISA), and any amendments thereto or any similar federal, state or local statute

**f. Auto Coverages**

**(1)** "Bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" which is not a "covered auto", or

**(2)** Any loss, cost or expense payable under or resulting from any first-party physical damage coverage, no-fault law, personal injury protection or auto medical payments coverage, or uninsured or underinsured motorist law

**g. Employer's Liability**

"Bodily injury" to

**(1)** An "employee" of the insured arising out of and in the course of

**(a)** Employment by the insured, or

**(b)** Performing duties related to the conduct of the insured's business, or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury

This exclusion does not apply to liability assumed by the insured under an "insured contract"

With respect to injury arising out of a "covered auto", this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits For the purposes of this insurance, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises

This exclusion does not apply to the extent that valid "underlying insurance" for the employer's liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" To the extent this exclusion does not apply, the insurance provided under this Coverage Part for the employer's liability risks described above will follow the same provisions, exclusions and limitations that are contained in the applicable "underlying insurance", unless otherwise directed by this insurance

**h. Employment-related Practices**

"Bodily injury" to

**(1)** A person arising out of any

**(a)** Refusal to employ that person,

**(b)** Termination of that person's employment, or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person, or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraph **(a)**, **(b)**, or **(c)** above is directed

This exclusion applies whether the injury-causing event described in Paragraph **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury

**i. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time, or

**(2)** "Pollution cost or expense"

This exclusion does not apply if valid "underlying insurance" for the pollution liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" and "property damage" To the extent this exclusion does not apply, the insurance provided under this Coverage Part for the pollution risks described above will follow the same provisions, exclusions and limitations that are contained in the applicable "underlying insurance", unless otherwise directed by this insurance

**j. Aircraft Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any insured Use includes operation and "loading or unloading"

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any insured

This exclusion does not apply to

**(1)** A watercraft while ashore on premises you own or rent,

**(2)** A watercraft you do not own that is

   **(a)** Less than 50 feet long, and

   **(b)** Not being used to carry persons or property for a charge,

**(3)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft,

**(4)** The extent that valid "underlying insurance" for the aircraft or watercraft liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" or "property damage" To the extent this exclusion does not apply, the insurance provided under this Coverage Part for the aircraft or watercraft risks described above will follow the same provisions, exclusions and limitations that are contained in the "underlying insurance", unless otherwise directed by this insurance, or

**(5)** Aircraft that is

   **(a)** Chartered by, loaned to, or hired by you with a paid crew, and

   **(b)** Not owned by any insured

**k. Racing Activities**

"Bodily injury" or "property damage" arising out of the use of "mobile equipment" or "autos" in, or while in practice for, or while being prepared for, any prearranged professional or organized racing, speed, demolition, or stunting activity or contest

**l. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of

**(1)** War, including undeclared or civil war,

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents, or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these

**m. Damage To Property**

"Property damage" to

**(1)** Property

   **(a)** You own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property, or

   **(b)** Owned or transported by the insured and arising out of the ownership, maintenance or use of a "covered auto"

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises,

**(3)** Property loaned to you,

**(4)** Personal property in the care, custody or control of the insured,

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations, or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you

Paragraphs **(1)(b), (3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement

Paragraphs **(3)** and **(4)** of this exclusion do not apply to liability assumed under a written Trailer Interchange agreement

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard"

**n. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it

**o. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard"

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor

**p. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work", or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use

**q. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of

**(1)** "Your product",

**(2)** "Your work", or

**(3)** "Impaired property",

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it

**r. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury"

**s. Professional Services**

"Bodily injury" or "property damage" due to rendering of or failure to render any professional service This includes but is not limited to

**(1)** Legal, accounting or advertising services,

**(2)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings or specifications,

**(3)** Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager,

**(4)** Engineering services, including related supervisory or inspection services,

**(5)** Medical, surgical, dental, X-ray or nursing services treatment, advice or instruction,

**(6)** Any health or therapeutic service treatment, advice or instruction,

**(7)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, or personal grooming or therapy,

**(8)** Any service, treatment, advice or instruction relating to physical fitness, including service, treatment, advice or instruction in connection with diet, cardiovascular fitness, bodybuilding or physical training programs,

**(9)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices,

**(10)** Body piercing services,

**(11)** Services in the practice of pharmacy,

**(12)** Law enforcement or firefighting services, and

**(13)** Handling, embalming, disposal, burial, cremation or disinterment of dead bodies

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", involved the rendering of or failure to render any professional service

**t. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access or inability to manipulate electronic data

However, this exclusion does not apply to liability for damages because of "bodily injury"

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment

This exclusion does not apply if valid "underlying insurance" for the electronic data risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" and "property damage" The insurance provided under this Coverage Part will follow the same provisions, exclusions and limitations that are contained in the applicable "underlying insurance", unless otherwise directed by this insurance

**u. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law,

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law,

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA), or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information

## COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies We will have the right and duty to defend the insured against any "suit" seeking damages for such "personal and advertising injury" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply At our discretion, we may investigate any offense that may involve this insurance and settle any resultant claim or "suit" for which we have the duty to defend But

**(1)** The amount we will pay for the "ultimate net loss" is limited as described in Section **III** - Limits Of Insurance, and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" that is subject to an applicable "retained limit" If any other limit, such as a sublimit, is specified in the "underlying insurance", this insurance does not apply to "personal and advertising injury" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "underlying insurance"

**c.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period

**2. Exclusions**

This insurance does not apply to

**a.** "Personal and advertising injury"

**(1) Knowing Violation Of Rights Of Another**

Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury"

**(2) Material Published With Knowledge Of Falsity**

Arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity

**(3) Material Published Prior To Policy Period**

Arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period

**(4) Criminal Acts**

Arising out of a criminal act committed by or at the direction of the insured

**(5) Contractual Liability**

For which the insured has assumed liability in a contract or agreement This exclusion does not apply to

**(a)** Liability for damages that the insured would have in the absence of the contract or agreement

**(b)** Liability for false arrest, detention or imprisonment assumed in a contract or agreement

**(6) Breach Of Contract**

Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement"

**(7) Quality Or Performance Of Goods - Failure To Conform To Statements**

Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement"

**(8) Wrong Description Of Prices**

Arising out of the wrong description of the price of goods, products or services stated in your "advertisement"

**(9) Infringement Of Copyright, Patent, Trademark Or Trade Secret**

Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement"

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan

**(10) Insureds In Media And Internet Type Businesses**

Committed by an insured whose business is

**(a)** Advertising, broadcasting, publishing or telecasting,

**(b)** Designing or determining content of web sites for others, or

**(c)** An Internet search, access, content or service provider

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting

**(11) Electronic Chatrooms Or Bulletin Boards**

Arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control

**(12) Unauthorized Use Of Another's Name Or Product**

Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers

**(13) Pollution**

Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time

**(14) Employment-related Practices**

To

**(a)** A person arising out of any

    **(i)** Refusal to employ that person,

    **(ii)** Termination of that person's employment, or

    **(iii)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person, or

**(b)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraph **(i), (ii)** or **(iii)** above is directed

This exclusion applies whether the injury-causing event described in Paragraph **(i), (ii)** or **(iii)** above occurs before employment, during employment or after employment of that person

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury

**(15) Professional Services**

Arising out of the rendering of or failure to render any professional service This includes but is not limited to

**(a)** Legal, accounting or advertising services,

**(b)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings or specifications,

**(c)** Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager,

**(d)** Engineering services, including related supervisory or inspection services,

**(e)** Medical, surgical, dental, X-ray or nursing services treatment, advice or instruction,

**(f)** Any health or therapeutic service treatment, advice or instruction,

**(g)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, or personal grooming or therapy,

**(h)** Any service, treatment, advice or instruction relating to physical fitness, including service, treatment, advice or instruction in connection with diet, cardiovascular fitness, bodybuilding or physical training programs,

**(i)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices,

**(j)** Body piercing services,

**(k)** Services in the practice of pharmacy,

**(l)** Law enforcement or firefighting services, and

**(m)** Handling, embalming, disposal, burial, cremation or disinterment of dead bodies

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional service

**(16) War**

However caused, arising, directly or indirectly, out of

**(a)** War, including undeclared or civil war,

**(b)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents, or

**(c)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these

**(17) Recording And Distribution Of Material Or Information In Violation Of Law**

Arising directly or indirectly out of any action or omission that violates or is alleged to violate

**(a)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law,

**(b)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law,

**(c)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA), or

**(d)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information

**b.** "Pollution cost or expense"

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend, when the duty to defend exists

**a.** All expenses we incur

**b.** Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "occurrence" we cover We do not have to furnish these bonds

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance We do not have to furnish these bonds

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work

**e.** All court costs taxed against the insured in the "suit" However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance

These payments will not reduce the limits of insurance

**2.** When we have the right but not the duty to defend the insured and elect to participate in the defense, we will pay our own expenses but will not contribute to the expenses of the insured or the "underlying insurer"

**3.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract",

**b.** This insurance applies to such liability assumed by the insured,

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract",

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee,

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee, and

**f.** The indemnitee

**(1)** Agrees in writing to

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit",

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit",

**(c)** Notify any other insurer whose coverage is available to the indemnitee, and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee, and

**(2)** Provides us with written authorization to

**(a)** Obtain records and other information related to the "suit", and

**(b)** Conduct and control the defense of the indemnitee in such "suit"

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** - Coverage **A** - Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met

## SECTION II - WHO IS AN INSURED

**1.** Except for liability arising out of the ownership, maintenance or use of "covered autos"

**a.** If you are designated in the Declarations as

**(1)** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner

**(2)** A partnership or joint venture, you are an insured Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business

**(3)** A limited liability company, you are an insured Your members are also insureds, but only with respect to the conduct of your business Your managers are insureds, but only with respect to their duties as your managers

**(4)** An organization other than a partnership, joint venture or limited liability company, you are an insured Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors Your stockholders are also insureds, but only with respect to their liability as stockholders

**(5)** A trust, you are an insured Your trustees are also insureds, but only with respect to their duties as trustees

**b.** Each of the following is also an insured

**(1)** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business However, none of these "employees" or "volunteer workers" are insureds for

**(a)** "Bodily injury" or "personal and advertising injury"

**(i)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" in the course of his or her employment or performing duties related to the conduct of your business or to your other "volunteer workers" while performing duties related to the conduct of your business,

**(ii)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(a)(i)** above, or

**(iii)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(a)(i)** or **(ii)** above

**(b)** "Property damage" to property

**(i)** Owned, occupied or used by,

**(ii)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by,

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company)

**(2)** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager

**(3)** Any person or organization having proper temporary custody of your property if you die, but only

   **(a)** With respect to liability arising out of the maintenance or use of that property, and

   **(b)** Until your legal representative has been appointed

**(4)** Your legal representative if you die, but only with respect to duties as such That representative will have all your rights and duties under this Coverage Part

**c.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization However

   **(1)** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier,

   **(2)** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization, and

   **(3)** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization

**2.** Only with respect to liability arising out of the ownership, maintenance or use of "covered autos"

   **a.** You are an insured

   **b.** Anyone else while using with your permission a "covered auto" you own, hire or borrow is also an insured except

      **(1)** The owner or anyone else from whom you hire or borrow a "covered auto" This exception does not apply if the "covered auto" is a trailer or semitrailer connected to a "covered auto" you own

      **(2)** Your "employee" if the "covered auto" is owned by that "employee" or a member of his or her household

      **(3)** Someone using a "covered auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours

      **(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a "covered auto"

      **(5)** A partner (if you are a partnership), or a member (if you are a limited liability company) for a "covered auto" owned by him or her or a member of his or her household

      **(6)** "Employees" with respect to "bodily injury" to

         **(a)** Any fellow "employee" of the insured arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business, or

         **(b)** The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph **(a)** above

   **c.** Anyone liable for the conduct of an insured described above is also an insured, but only to the extent of that liability

**3.** Any additional insured under any policy of "underlying insurance" will automatically be an insured under this insurance

Subject to Section **III** - Limits Of Insurance, if coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance

   **a.** Required by the contract or agreement, less any amounts payable by any "underlying insurance", or

   **b.** Available under the applicable Limits of Insurance shown in the Declarations,

   whichever is less

Additional insured coverage provided by this insurance will not be broader than coverage provided by the "underlying insurance"

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of

   a. Insureds,

   b. Claims made, "suits" brought, or number of vehicles involved, or

   c. Persons or organizations making claims or bringing "suits"

2. The Aggregate Limit is the most we will pay for the sum of all "ultimate net loss" under

   a. Coverage **A,** except "ultimate net loss" because of "bodily injury" or "property damage" arising out of the ownership, maintenance or use of a "covered auto", and

   b. Coverage **B.**

3. Subject to Paragraph **2.** above, the Each Occurrence Limit is the most we will pay for the sum of all "ultimate net loss" under Coverage **A** because of all "bodily injury" and "property damage" arising out of any one "occurrence"

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all "ultimate net loss" because of all "personal and advertising injury" sustained by any one person or organization

5. If there is "underlying insurance" with a policy period that is nonconcurrent with the policy period of this Commercial Liability Umbrella Coverage Part, the "retained limit(s)" will only be reduced or exhausted by payments for

   a. "Bodily injury" or "property damage" which occurs during the policy period of this Coverage Part, or

   b. "Personal and advertising injury" for offenses that are committed during the policy period of this Coverage Part

   However, if any "underlying insurance" is written on a claims-made basis, the "retained limit(s)" will only be reduced or exhausted by claims for that insurance that are made during the policy period, or any Extended Reporting Period, of this Coverage Part

The Aggregate Limit, as described in Paragraph **2.** above, applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance

## SECTION IV - CONDITIONS

1. **Appeals**

   If the "underlying insurer" or insured elects not to appeal a judgment in excess of the "retained limit", we may do so at our own expense We will also pay for taxable court costs, pre- and postjudgment interest and disbursements associated with such appeal In no event will this provision increase our liability beyond the applicable Limits of Insurance described in Section **III** - Limits Of Insurance

2. **Bankruptcy**

   a. **Bankruptcy Of Insured**

      Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part

   b. **Bankruptcy Of Underlying Insurer**

      Bankruptcy or insolvency of the "underlying insurer" will not relieve us of our obligations under this Coverage Part

   However, this insurance will not replace the "underlying insurance" in the event of bankruptcy or insolvency of the "underlying insurer" This insurance will apply as if the "underlying insurance" were in full effect

3. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense, regardless of the amount, which may result in a claim To the extent possible, notice should include

      (1) How, when and where the "occurrence" or offense took place,

      (2) The names and addresses of any injured persons and witnesses, and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense

   b. If a claim is made or "suit" is brought against any insured, you must

      (1) Immediately record the specifics of the claim or "suit" and the date received, and

      (2) Notify us as soon as practicable

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable

   c. You and any other involved insured must

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit",

**(2)** Authorize us to obtain records and other information,

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit", and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent

**4. Legal Action Against Us**

No person or organization has a right under this Coverage Part

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured, or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured, but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance  An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative

**5. Other Insurance**

**a.** This insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis  This condition will not apply to insurance specifically written as excess over this Coverage Part

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit"  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers

**b.** When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of

**(1)** The total amount that all such other insurance would pay for the loss in the absence of the insurance provided under this Coverage Part, and

**(2)** The total of all deductible and self-insured amounts under all that other insurance

**6. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only  At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured  The due date for audit and retrospective premiums is the date shown as the due date on the bill  If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request

**7. Representations Or Fraud**

By accepting this policy, you agree

**a.** The statements in the Declarations are accurate and complete,

**b.** Those statements are based upon representations you made to us,

**c.** We have issued this policy in reliance upon your representations, and

**d.** This policy is void in any case of fraud by you as it relates to this policy or any claim under this policy

**8. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies

**a.** As if each Named Insured were the only Named Insured, and

**b.** Separately to each insured against whom claim is made or "suit" is brought

**9. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us  The insured must do nothing after loss to impair them  At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them

**10. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date

If notice is mailed, proof of mailing will be sufficient proof of notice

**11. Loss Payable**

Liability under this Coverage Part does not apply to a given claim unless and until

**a.** The insured or insured's "underlying insurer" has become obligated to pay the "retained limit", and

**b.** The obligation of the insured to pay the "ultimate net loss" in excess of the "retained limit" has been determined by a final settlement or judgment or written agreement among the insured, claimant and us

**12. Transfer Of Defense**

When the underlying limits of insurance have been used up in the payment of judgments or settlements, the duty to defend will be transferred to us We will cooperate in the transfer of control to us of any outstanding claims or "suits" seeking damages to which this insurance applies which would have been covered by the "underlying insurance" had the applicable limit not been used up

**13. Maintenance Of/Changes To Underlying Insurance**

Any "underlying insurance" must be maintained in full effect without reduction of coverage or limits except for the reduction of the aggregate limit in accordance with the provisions of such "underlying insurance" that results from payment of claims, settlement or judgments to which this insurance applies

Such exhaustion or reduction is not a failure to maintain "underlying insurance" Failure to maintain "underlying insurance" will not invalidate insurance provided under this Coverage Part, but insurance provided under this Coverage Part will apply as if the "underlying insurance" were in full effect

If there is an increase in the scope of coverage of any "underlying insurance" during the term of this policy, our liability will be no more than it would have been if there had been no such increase

You must notify us in writing, as soon as practicable, if any "underlying insurance" is cancelled, not renewed, replaced or otherwise terminated, or if the limits or scope of coverage of any "underlying insurance" is changed

**14. Expanded Coverage Territory**

**a.** If a "suit" is brought in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada, and we are prevented by law, or otherwise, from defending the insured, the insured will initiate a defense of the "suit" We will reimburse the insured, under Supplementary Payments, for any reasonable and necessary expenses incurred for the defense of a "suit" seeking damages to which this insurance applies, that we would have paid had we been able to exercise our right and duty to defend

If the insured becomes legally obligated to pay sums because of damages to which this insurance applies in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada, and we are prevented by law, or otherwise, from paying such sums on the insured's behalf, we will reimburse the insured for such sums

**b.** All payments or reimbursements we make for damages because of judgments or settlements will be made in U S currency at the prevailing exchange rate at the time the insured became legally obligated to pay such sums All payments or reimbursements we make for expenses under Supplementary Payments will be made in U S currency at the prevailing exchange rate at the time the expenses were incurred

**c.** Any disputes between you and us as to whether there is coverage under this policy must be filed in the courts of the United States of America (including its territories and possessions), Canada or Puerto Rico

**d.** The insured must fully maintain any coverage required by law, regulation or other governmental authority during the policy period, except for reduction of the aggregate limits due to payments of claims, judgments or settlements

Failure to maintain such coverage required by law, regulation or other governmental authority will not invalidate this insurance However, this insurance will apply as if the required coverage by law, regulation or other governmental authority was in full effect

## SECTION V - DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters For the purposes of this definition

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication, and

   b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement

2. "Auto" means

   a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment, or

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged

      However, "auto" does not include "mobile equipment"

3. "Bodily injury" means bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury"

4. "Coverage territory" means anywhere in the world with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America

5. "Covered auto" means only those "autos" to which "underlying insurance" applies

6. "Employee" includes a "leased worker" "Employee" does not include a "temporary worker"

7. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous, or

   b. You have failed to fulfill the terms of a contract or agreement,

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work", or your fulfilling the terms of the contract or agreement

9. "Insured contract" means

   a. A contract for a lease of premises However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract",

   b. A sidetrack agreement,

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad,

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality,

   e. An elevator maintenance agreement,

   f. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto" However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees"

   g. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization Tort liability means a liability that would be imposed by law in the absence of any contract or agreement

   Paragraphs f. and g. do not include that part of any contract or agreement

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing,

   (2) That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver, or

**(3)** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a "covered auto" over a route or territory that person or organization is authorized to serve by public authority

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business "Leased worker" does not include a "temporary worker"

**11.** "Loading or unloading" means the handling of property

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto",

**b.** While it is in or on an aircraft, watercraft or "auto", or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered,

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto"

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads,

**b.** Vehicles maintained for use solely on or next to premises you own or rent,

**c.** Vehicles that travel on crawler treads,

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted

**(1)** Power cranes, shovels, loaders, diggers or drills, or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers,

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment, or

**(2)** Cherry pickers and similar devices used to raise or lower workers,

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos"

**(1)** Equipment designed primarily for

**(a)** Snow removal,

**(b)** Road maintenance, but not construction or resurfacing, or

**(c)** Street cleaning,

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers, and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos"

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses

**a.** False arrest, detention or imprisonment,

**b.** Malicious prosecution,

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor,

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services,

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy,

**f.** The use of another's advertising idea in your "advertisement", or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement"

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste Waste includes materials to be recycled, reconditioned or reclaimed

**16.** "Pollution cost or expense" means any loss, cost or expense arising out of any

  **a.** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants", or

  **b.** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants"

**17.** "Products-completed operations hazard"

  **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except

  **(1)** Products that are still in your physical possession, or

  **(2)** Work that has not yet been completed or abandoned However, "your work" will be deemed completed at the earliest of the following times

  **(a)** When all of the work called for in your contract has been completed

  **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site

  **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project

  Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed

  **b.** Does not include "bodily injury" or "property damage" arising out of

  **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured, or

  **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials

**18.** "Property damage" means

  **a.** Physical injury to tangible property, including all resulting loss of use of that property All such loss of use shall be deemed to occur at the time of the physical injury that caused it, or

  **b.** Loss of use of tangible property that is not physically injured All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it

  With respect to the ownership, maintenance or use of "covered autos", property damage also includes "pollution cost or expense", but only to the extent that coverage exists under the "underlying insurance" or would have existed but for the exhaustion of the underlying limits

  For the purposes of this insurance, with respect to other than the ownership, maintenance or use of "covered autos", electronic data is not tangible property

  As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment

**19.** "Retained limit" means the available limits of "underlying insurance" scheduled in the Declarations or the "self-insured retention", whichever applies

**20.** "Self-insured retention" means the dollar amount listed in the Declarations that will be paid by the insured before this insurance becomes applicable only with respect to "occurrences" or offenses not covered by the "underlying insurance" The "self-insured retention" does not apply to "occurrences" or offenses which would have been covered by "underlying insurance" but for the exhaustion of applicable limits

**21.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged "Suit" includes

  **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent, or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent or the "underlying insurer's" consent

**22.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions

**23.** "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent

**24.** "Underlying insurance" means any policies of insurance listed in the Declarations under the Schedule of "underlying insurance"

**25.** "Underlying insurer" means any insurer who provides any policy of insurance listed in the Schedule of "underlying insurance"

**26.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you

**27.** "Your product"

**a.** Means

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by

**(a)** You,

**(b)** Others trading under your name, or

**(c)** A person or organization whose business or assets you have acquired, and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product", and

**(2)** The providing of or failure to provide warnings or instructions

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold

**28.** "Your work"

**a.** Means

**(1)** Work or operations performed by you or on your behalf, and

**(2)** Materials, parts or equipment furnished in connection with such work or operations

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)** The providing of or failure to provide warnings or instructions

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

| | |
|---|---|
| **Endorsement** | **CU 02** |

**Policy Number: CUP   2083061**

**REVISED COVERAGE PROVISIONS**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following

COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

**A.** Exclusion **j. Aircraft or Watercraft** of Paragraph **2., Exclusions** of SECTION I - **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is deleted and replaced by the following

**j. Aircraft Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any insured Use includes operation and "loading or unloading"

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any insured

This exclusion does not apply to

**(1)** A watercraft while ashore on premises you own or rent,

**(2)** A watercraft you do not own that is

**(a)** Less than 50 feet long, and

**(b)** Not being used to carry persons or property for a charge, or

**(3)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft

**B.** Exclusion **a. (5) Contractual Liability** of Paragraph **2., Exclusions** of SECTION I - **COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY** is deleted and replaced by the following

**Contractual Liability**

**(5)** For which the insured has assumed liability in a contract or agreement This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement

**C.** The following exclusion is added to Paragraph **2., Exclusions** of SECTION I - **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and Paragraph **2., Exclusions** of SECTION I - **COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**

**Asbestos, Silica, and Mixed Dust**

This insurance does not apply to

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, contributed to by, or resulting from, exposure to or the use of

**a.** Asbestos including, but not limited to, the cost of abatement, mitigation, removal or disposal of asbestos from any good, product or structure,

*Continued...*

| Endorsement | CU 02 |
|---|---|

## REVISED COVERAGE PROVISIONS

    **b.** Silica, or

    **c.** Mixed dust

**2.** Any damage or any loss, cost or expense arising out of any

    **a.** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, asbestos, silica, mixed dust or any other material or substance containing asbestos, silica or mixed dust, or

    **b.** Claim or suit by or on behalf of any governmental authority or any other alleged responsible party for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, asbestos, silica, mixed dust or any other material or substance containing asbestos, silica or mixed dust

**3.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, contributed to by, or resulting from, supervision, instruction, recommendations, warnings or advice given or which should have been given in connection with any of the substances above

**4.** Any obligation to share damages with or repay someone else in connection with any of the substances above

**5.** As used in this endorsement,

    **a.** Silica means a group of naturally occurring crystalline forms of silicon dioxide, including, but not limited to, quartz and sand, and

    **b.** Mixed dust means a mixture of dusts composed of silica or asbestos and any other dusts

*Includes copywrited material of Insurance Services Office, Inc. with its permission.*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** Exclusion **2.t.** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following

**2. Exclusions**

This insurance does not apply to

**t. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information, or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury"

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment

**B.** The following is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information

© Insurance Services Office, Inc , 2013

| Endorsement | CU 106 |
|---|---|

**CYBER COVERAGE EXCLUSION**

Policy Number: CUP   2083061

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

This insurance does not apply to damages covered under any cyber coverage endorsement, if attached to the "underlying insurance" policy

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement

**A.** Paragraph **A.1.** of the **Cancellation** Common Policy Condition is replaced by the following

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following

**a.** If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured

**b.** If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days' notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation

Our notice will state the effective date of cancellation, which will be the later of the following

**(1)** 10 days from the date of mailing or delivering our notice, or

**(2)** The effective date of cancellation stated in the first Named Insured's notice to us

**B.** Paragraph **A.5.** of the **Cancellation** Common Policy Condition is replaced by the following

**5. Premium Refund**

**a.** If this policy is cancelled, we will send the first Named Insured any premium refund due

**b.** If we cancel, the refund will be pro rata, except as provided in **c.** below

**c.** If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium

**d.** If the first Named Insured cancels, the refund may be less than pro rata

**e.** The cancellation will be effective even if we have not made or offered a refund

**C.** The following is added to the **Cancellation** Common Policy Condition and supersedes any other provisions to the contrary

If we decide to

**1.** Cancel or nonrenew this policy, or

**2.** Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages), or

**3.** Change any policy provision which would limit or restrict coverage,

then

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us Except as applicable as described in Paragraph **D.** below, we will mail or deliver notice at least

    **a.** 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium, or

    **b.** 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium, or

    **c.** 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage

**D.** With respect to a policy that is written to permit an audit, the following is added to the **Cancellation** Common Policy Condition

If you fail to submit to or allow an audit for the current or most recently expired term, we may cancel this policy subject to the following

    **1.** We will make two documented efforts to send you and your agent notification of potential cancellation After the second notice has been sent, we have the right to cancel this policy by mailing or delivering a written notice of cancellation to the first Named Insured at least 10 days before the effective date of cancellation, but not within 20 days of the first documented effort

    **2.** If we cancel this policy based on your failure to submit to or allow an audit, we will send the written notice of cancellation to the first Named Insured at the last known mailing address by certified mail or statutory overnight delivery with return receipt requested

**E.** Paragraph **A.6.** of the **Cancellation** Common Policy Condition is replaced by the following

If notice is mailed, a receipt provided by, or such other evidence of mailing as prescribed or accepted by, the U S Postal Service shall be sufficient proof of notice

*ADVANCED INSURANCE STRATEGIES*
*200 W CRAWFORD ST*
*PO BOX 709*
*DALTON, GA        30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

Named   Insured   and   Address

| Policy   Type:  *Commercial Package* |
|---|

**Policy   Number:**   *CPP 2083060-00*
**Issue   Date:**   *08/12/14*
**ACCT.   NO:**  *0000191650*
**Change   Effective   Date:**   *07/01/14*
**From: 07/01/14**
**To: 07/01/15**
12:01 a.m. standard time.

**CYCLE-TEX INC**
**702 S THORNTON AVE**
**DALTON GA   30720**

## POLICY PREMIUM RECAP STATEMENT

| Line of Business/Coverages | Pro-Rated Premium Totals | Commission |
|---|---:|---|
| Commercial Automobile Coverage Part | $24,975.00 | 15% |
| Commercial Property Coverage Part | $22,597.00 | 15% |
| Equipment Breakdown Coverage | $2,633.00 | 15% |
| Commercial Crime Coverage Part | $820.00 | 15% |
| Employee Benefits Liability Coverage Part | $230.00 | 15% |
| Commercial General Liability Coverage Part | $19,729.00 | 15% |
| Commercial Inland Marine Coverage Part | $575.00 | 15% |
| Certified Acts of Terrorism - Property | $288.00 | 15% |
| Certified Acts of Terrorism - General Liability | $661.00 | 15% |
| Certified Acts of Terrorism - Inland Marine | $3.00 | 15% |

Your Pro-Rated  Premium  Is

| **$72,511.00** |
|---|

**THIS IS NOT A BILL.** Any outstanding   balance due will be billed at a later date.

Grange   Mutual   Casualty   Company
P.O.  Box  1218
Columbus,   Ohio   43216-1218

# COMMERCIAL POLICY CHANGE
# ENDORSEMENT IL 16

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured/Mailing Address: | Agency Name/Address/Code Number: |
|---|---|
| CYCLE-TEX INC<br>702 S THORNTON AVE<br>DALTON GA  30720 | ADVANCED INSURANCE STRATEGIES<br>200 W CRAWFORD ST<br>PO BOX 709<br>DALTON, GA          30722<br>10-01314-00 |

| Policy Number:    Mod: | Effective Date of Change: | End No. |
|---|---|---|
| CPP 2083060-00 | 07/01/14           at 12:01 AM Standard Time | 01 |

The following item(s):

☐ Insured's Name　　　　　　　　　　　　☐ Limits/Exposures

☐ Insured's Mailing Address　　　　　　　☐ Deductibles

☐ Insured's Legal Entity/Business of Insured　☐ Covered Property/Location Description

☐ Premium Determination　　　　　　　　☐ Classification/Class Codes

☐ Additional Interested Parties　　　　　　☐ Rates

☐ Coverage Forms and Endorsements　　　☐ Vehicle(s)

Is (are) changed to read [See Additional Page(s)]:

```
APPLICABLE TO COMMERCIAL PROPERTY COVERAGE PART,
DELETING CP9993 TENTATIVE RATE ENDORSEMENT
```

_____
　　　　　Authorized Representative

Annual Premium Change: _____ 0.00

Issue Date:  08/12/14　　　　Pro Rata Premium Change: _____ 0.00

ACCT. NO:0000191650　　　　　　　　　Premium does not include service charges.

Applicable to the State of Kentucky

Includes Kentucky Municipal Tax: _____

Includes Kentucky Surcharges Required by KRS 136.392: _____

AK967 (12-2009)　　　　　　　　　　　　　　　　　　Page 01 of 01

**AGENTCOPY**

*ADVANCED INSURANCE STRATEGIES*
*200 W CRAWFORD ST*
*PO BOX 709*
*DALTON, GA          30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

**Policy Type:** *Commercial Package*

**Reason Issued:** *Policy Change -*
*Change Coverage*
**Policy Number:** *CPP 2083060-00*
**Change Effective Date:** *07/01/14*
**Issue Date:** *08/12/14*
**ACCT. NO:** *0000191650*

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named   Insured   and   Address**

CYCLE-TEX INC
702 S THORNTON AVE
DALTON GA  30720

---

**From: 07/01/14    To: 07/01/15**    12:01 a.m. standard time at the address of the named insured as shown above. These declarations together with the applications, the commercial lines policy jacket, common policy conditions, coverage part declarations, coverage part coverage form(s) and forms and endorsements, if any, issued to form a part thereof, complete the above numbered policy. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

---

**Commercial   Policy   Declarations**

| **Business Description** | *PLASTIC MFG* |
| --- | --- |

This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

| Coverage       Part(s) | Premium |
| --- | --- |
| COMMERCIAL  AUTOMOBILE  COVERAGE  PART | $24,975.00 |
| COMMERCIAL  PROPERTY  COVERAGE  PART | $25,230.00 |
| COMMERCIAL  CRIME  COVERAGE  PART | $820.00 |
| EMPLOYEE  BENEFITS  LIABILITY  COVERAGE  PART | $230.00 |
| COMMERCIAL  GENERAL  LIABILITY  COVERAGE  PART | $19,729.00 |
| COMMERCIAL  INLAND  MARINE  COVERAGE  PART | $575.00 |
| Certified  Acts  of  Terrorism | $952.00 |

Your Estimated  Total Policy Premium  Is    **$72,511.00**

Premium  does not include  service charges.

The Premium  Change  From  This Policy Change  Is    $0.00

**THIS IS NOT A BILL.**

### MANUFACTURERS' OPTIMUM PROGRAM SCHEDULE

**Policy Number:**    CPP 2083060-00

Amendment Of Policy Effective: July 01, 2014

**Named Insured:**    CYCLE-TEX INC

These Coverages Apply To All Locations Covered On The Policy.


The Following Coverages Apply Only When Designated By an "X" In
The Box(es) Shown Below:

```
                                                     Premium
[X] Manufacturers' Optimum Endorsement - IL 19         $1,936


[ ] Product Recall Expense Coverage Form - CP 13

     Product Recall Limit:            Any One Covered Recall
                                      Aggregate For The Policy Period

     Product Recall Participation:       % Of All Covered Recall Expenses


[ ] Manufacturers' Optimum Business Income
    And Extra Expense Endorsement - CP 12
    72 Hour Waiting Period

Total Manufacturers' Optimum Program Premium         $1,936
```

**COMMERCIAL PACKAGE POLICY FORMS INVENTORY**

**Policy   Number:**   CPP  2083060-00

Amendment   Of Policy Effective:  July 01, 2014

**Named   Insured:**   CYCLE-TEX INC

```
                    POLICY LEVEL FORMS AND ENDORSEMENTS


   CA0109     (10/04)   GA Changes
   CA38       (12/05)   GA Amendment of Policy
   IL0017     (11/98)   Common Policy Conditions
   IL43       (05/11)   Common Policy Conditions Changes
   IL0021     (07/02)   Nuclear Energy Liability Exclusion
   IL0262     (09/07)   Ga Changes Cancellation & Nonrenewal
   CA0051     (12/04)   Changes in Coverage Forms - Mobile Eq...
   IL 19      (06/11)   Manufacturers' Optimum Endorsement
   IM 72 03   (10/04)   Business Computer Coverage
   CR 00 21   (03/00)   Commercial Crime Coverage Form


                  COMMERCIAL AUTO FORMS AND ENDORSEMENTS


   CA0001     (10/01)   Business Auto Coverage Form
   CA0038     (12/02)   War Exclusion
   CA50       (05/07)   Asbestos Exclusion
   CA75       (05/11)   Policy Changes - Who Is An Insured
   CA9903     (07/97)   Auto Medical Payments
   CA83       (05/11)   Auto Medical Payments Coverage Changes
   CA3137     (01/09)   GA UM Added On To At-Fault Liability Lim
   CA60       (07/13)   Business Auto Optimum
   CA9910     (09/02)   Drive Other Car Coverage


          COMMERCIAL PROPERTY COVERAGE PART FORMS AND ENDORSEMENTS


   CP 99 93   (10/90)   **Tentative Rate
   IL 09 35   (07/01)   Exclusion of Certain Computer-Related Losses
   CP 00 90   (07/88)   Commercial Property Conditions
   CP 10 32   (08/08)   Water Exclusion Endorsement
   CP 00 10   (04/02)   Building & Personal Property Coverage Form
   CP 10 30   (04/02)   Causes of Loss-Special Form
   IL 09 52   (01/08)   Cap on Losses from Certified Acts of Terrorism
   CP 00 30   (04/02)   Business Income Coverage Form (and Extra Expense)
   CP 11      (12/09)   Equipment Breakdown Coverage
   IL 09 99   (01/07)   Disclosure Of Premium
   IL 09 95   (01/07)   Conditional Exclusion of Terrorism


           COMMERCIAL CRIME COVERAGE PART FORMS AND ENDORSEMENTS


   CR 01      (08/01)   Crime Amendment Endorsement
   CR 01 32   (03/00)   Georgia Changes - Concealment, Fraud



** INDICATES DELETED FORM
```

## COMMERCIAL PACKAGE POLICY FORMS INVENTORY

**Policy Number:**   CPP 2083060-00

Amendment  Of Policy Effective:  July 01, 2014

**Named   Insured:**   CYCLE-TEX INC

CR 07 59 (01/08)   Amend-Delete Provisions Regarding Certain Acts of Terror

COMMERCIAL GENERAL LIABILITY COVERAGE PART FORMS AND ENDORSEMENTS

```
CG 21 67 (04/02)   Fungi or Bacteria Exclusion
CG 21 49 (09/99)   Total Pollution Exclusion
CG 00 62 (12/02)   War Liability Exclusion
CG 21 47 (07/98)   Employment-Related Practices Exclusion
CG 00 01 (10/01)   Commercial General Liability Coverage Form
CG 28    (08/09)   Recording & Distribution of Material or Info Exclusion
IL 15    (06/97)   Lead Exclusion
CG 44    (05/11)   Medical Payment Changes
CG 09 GA (01/05)   Asbestos Exclusion, Silica Exclusion, Mixed Dust Excl...
CG 21 60 (04/98)   Exclusion - Year 2000 Computer-Related Problems
CG 21 70 (01/08)   Cap on losses from Certified Acts of Terrorism.
CG 21 87 (01/07)   Conditional Exclusion of Terrorism
CG 25 04 (03/97)   Designated Location(s) General Aggregate
EB 10 1  (04/98)   Employee Benefits Liability
EB 01    (10/98)   Exclusion - Year 2000 Computer-Related Problems
EB 04    (05/11)   Employee Benefits Liability Coverage form Changes
```

COMMERCIAL INLAND MARINE COVERAGE PART FORMS AND ENDORSEMENTS

```
CL 16 30 (06/06)   Conditional Terrorism Exclusion
IM 72 55 (01/00)   Transportation Dec
IM 72 50 (01/00)   Transportation Coverage
IM 20 21 (04/04)   Amendatory Endorsement Georgia
```

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA        30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named   Insured   and   Address**

| Policy   Type: | *Commercial Package* |
|---|---|

**Policy   Number:** *CPP 2083060-01*
**Issue   Date:** *08/07/15*
**ACCT.   NO:** *0000191650*
**Change   Effective   Date:** *07/28/15*
**From: 07/01/15**
**To: 07/01/16**
12:01 a.m. standard time.

**CYCLE-TEX INC**
**702 S THORNTON AVE STE 201**
**DALTON GA   30720**

## POLICY PREMIUM RECAP STATEMENT

| Line  of Business/Coverages | Pro-Rated Premium   Totals | Commission |
|---|---:|---|
| Commercial  Automobile  Coverage  Part | $30,904.00 | 15% |
| Commercial  Property  Coverage  Part | $350.00 | 17% |
| Commercial  Crime  Coverage  Part | $820.00 | 17% |
| Employee  Benefits  Liability  Coverage  Part | $230.00 | 17% |
| Commercial  General  Liability  Coverage  Part | $20,118.00 | 17% |
| Commercial  Inland  Marine  Coverage  Part | $575.00 | 17% |
| Certified  Acts  of  Terrorism  -  Property | $1.00 | 17% |
| Certified  Acts  of  Terrorism  -  General  Liability | $526.00 | 17% |
| Certified  Acts  of  Terrorism  -  Inland  Marine | $3.00 | 17% |
| Manufacturers'  Optimum  Program | $930.00 | 17% |

Your  Pro-Rated  Premium  Is | **$54,457.00**

**THIS IS NOT A BILL.** Any outstanding   balance due will be billed at a later date.

Grange    Mutual    Casualty    Company
P.O. Box 1218
Columbus,    Ohio    43216-1218

# COMMERCIAL POLICY CHANGE
## ENDORSEMENT IL 16

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured/Mailing Address: | Agency Name/Address/Code Number: |
|---|---|
| CYCLE-TEX INC<br>702 S THORNTON AVE STE 201<br>DALTON GA  30720 | ADVANCED INSURANCE STRATEGIES<br>300 W EMERY STREET SUITE 205<br>PO BOX 709<br>DALTON, GA              30722<br>10-01314-00 |

| Policy Number:    Mod: | Effective Date of Change: | | End No. |
|---|---|---|---|
| CPP2083060-01 | 07/28/15 | at 12:01 AM Standard Time | 01 |

The following item(s):

- [ ] Insured's Name
- [ ] Insured's Mailing Address
- [ ] Insured's Legal Entity/Business of Insured
- [ ] Premium Determination
- [ ] Additional Interested Parties
- [X] Coverage Forms and Endorsements
- [ ] Limits/Exposures
- [ ] Deductibles
- [ ] Covered Property/Location Description
- [ ] Classification/Class Codes
- [ ] Rates
- [ ] Vehicle(s)

Is (are) changed to read [See Additional Page(s)]:

```
APPLICABLE TO COMMERCIAL PROPERTY COVERAGE PART:DELETING
LOSS PAYABLE FOR BB&T INSURANCE CENTER AT LOCATION 1.
```

_____
Authorized Representative

Annual Premium Change: _____0.00
Pro Rata Premium Change: _____0.00

Issue Date:  08/07/15
ACCT. NO:0000191650                Premium does not include service charges.
                         Applicable to the State of Kentucky
                    Includes Kentucky Municipal Tax: _____
         Includes Kentucky Surcharges Required by KRS 136.392: _____

AK967 (12-2009)

**AGENTCOPY**

*ADVANCED INSURANCE STRATEGIES*
*200 W CRAWFORD ST*
*PO BOX 709*
*DALTON, GA          30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

Named    Insured    and    Address

| Policy   Type: | *Commercial Package* |
|---|---|

**Policy   Number:** *CPP 2083060-00*
**Issue   Date:** *08/13/14*
**ACCT.   NO:** *0000191650*
**Change     Effective     Date:** *07/01/14*
**From: 07/01/14**
**To: 07/01/15**
12:01 a.m. standard time.

**CYCLE-TEX INC**
**702 S THORNTON AVE**
**DALTON GA   30720**

---

## POLICY PREMIUM RECAP STATEMENT

| Line  of Business/Coverages | Pro-Rated Premium   Totals | Commission |
|---|---:|---|
| Commercial  Automobile  Coverage  Part | $24,975.00 | 15% |
| Commercial  Property  Coverage  Part | $22,597.00 | 15% |
| Equipment  Breakdown  Coverage | $2,633.00 | 15% |
| Commercial  Crime  Coverage  Part | $820.00 | 15% |
| Employee  Benefits  Liability  Coverage  Part | $230.00 | 15% |
| Commercial  General  Liability  Coverage  Part | $19,729.00 | 15% |
| Commercial  Inland  Marine  Coverage  Part | $575.00 | 15% |
| Certified  Acts  of  Terrorism  -  Property | $288.00 | 15% |
| Certified  Acts  of  Terrorism  -  General  Liability | $661.00 | 15% |
| Certified  Acts  of  Terrorism  -  Inland  Marine | $3.00 | 15% |

Your Pro-Rated  Premium  Is   | **$72,511.00**

**THIS IS NOT A BILL.** Any outstanding   balance due will be billed at a later date.

Grange Mutual Casualty Company
P.O. Box 1218
Columbus, Ohio 43216-1218

# COMMERCIAL POLICY CHANGE
## ENDORSEMENT IL 16

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured/Mailing Address: | Agency Name/Address/Code Number: |
|---|---|
| CYCLE-TEX INC<br>702 S THORNTON AVE<br>DALTON GA 30720 | ADVANCED INSURANCE STRATEGIES<br>200 W CRAWFORD ST<br>PO BOX 709<br>DALTON, GA 30722<br>10-01314-00 |

| Policy Number: Mod: | Effective Date of Change: | | End No. |
|---|---|---|---|
| CPP 2083060-00 | 07/01/14 | at 12:01 AM Standard Time | 02 |

The following item(s):

- [ ] Insured's Name
- [ ] Insured's Mailing Address
- [ ] Insured's Legal Entity/Business of Insured
- [ ] Premium Determination
- [ ] Additional Interested Parties
- [ ] Coverage Forms and Endorsements
- [ ] Limits/Exposures
- [ ] Deductibles
- [X] Covered Property/Location Description
- [ ] Classification/Class Codes
- [ ] Rates
- [ ] Vehicle(s)

Is (are) changed to read [See Additional Page(s)]:

AMENDING THE ADDRESS AT LOCATION 1 AND LOCATION 3 TO READ:

LOCATION 1-111 W WESTCOTT WAY DALTON GA 30720
LOCATION 3-702 S THORNTON AVE DALTON GA 30161

_____
Authorized Representative

Issue Date: 08/13/14
ACCT. NO:0000191650

Annual Premium Change: _____ 0.00
Pro Rata Premium Change: _____ 0.00
Premium does not include service charges.

Applicable to the State of Kentucky
Includes Kentucky Municipal Tax: _____
Includes Kentucky Surcharges Required by KRS 136.392: _____

AK967 (12-2009)

*AGENTCOPY*

*ADVANCED INSURANCE STRATEGIES*
*200 W CRAWFORD ST*
*PO BOX 709*
*DALTON, GA          30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

**Policy Type:** *Commercial Package*

**Reason Issued:** *Policy Change -*
*Change Coverage*
**Policy Number:** *CPP 2083060-00*
**Change Effective Date:** *07/01/14*
**Issue Date:** *08/13/14*
**ACCT. NO:** *0000191650*

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named   Insured   and   Address**

CYCLE-TEX INC
702 S THORNTON AVE
DALTON GA  30720

---

**From: 07/01/14    To: 07/01/15**    12:01 a.m. standard time at the address of the named insured as shown above. These declarations together with the applications, the commercial lines policy jacket, common policy conditions, coverage part declarations, coverage part coverage form(s) and forms and endorsements, if any, issued to form a part thereof, complete the above numbered policy. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

---

**Commercial   Policy   Declarations**

| Business Description | *PLASTIC MFG* |
|---|---|

This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

| Coverage Part(s) | Premium |
|---|---|
| COMMERCIAL AUTOMOBILE COVERAGE PART | $24,975.00 |
| COMMERCIAL PROPERTY COVERAGE PART | $25,230.00 |
| COMMERCIAL CRIME COVERAGE PART | $820.00 |
| EMPLOYEE BENEFITS LIABILITY COVERAGE PART | $230.00 |
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $19,729.00 |
| COMMERCIAL INLAND MARINE COVERAGE PART | $575.00 |
| Certified Acts of Terrorism | $952.00 |

Your Estimated Total Policy Premium Is   | **$72,511.00** |

Premium does not include service charges.

The Premium Change From This Policy Change Is   $0.00

**THIS IS NOT A BILL.**

## SCHEDULE OF NAMES AND ADDRESSES

**Policy Number:**    CPP 2083060-00

Amendment Of Policy Effective: July 01, 2014

**Named Insured:**    CYCLE-TEX INC

```
Locations Of All Premises You Own, Rent Or Occupy.
If "Same" Is Indicated, The Location Is The Same
As The Mailing Address Shown In The Declarations.
```

```
Location 0001                      Location 0002
111 W Westcott Way                 906 E Hermitage Rd NE
Dalton GA                          Rome GA
30720                              30161 9641


Location 0003                      Location 0004
702 S Thornton Ave                 501 Maiden Ln
Dalton GA                          Dalton GA
30161                              30721 2810


Location 0005
1711 Kimberly Park Dr
Dalton GA
30720 7056
```

## MANUFACTURERS' OPTIMUM PROGRAM SCHEDULE

**Policy Number:**   CPP 2083060-00

Amendment  Of Policy Effective:  July 01, 2014

**Named   Insured:**   CYCLE-TEX INC

These Coverages Apply To All Locations Covered On The Policy.


The Following Coverages Apply Only When Designated By an "X" In
The Box(es) Shown Below:

```
                                                 Premium
[X] Manufacturers' Optimum Endorsement - IL 19      $1,936


[ ] Product Recall Expense Coverage Form - CP 13

    Product Recall Limit:            Any One Covered Recall
                                     Aggregate For The Policy Period

    Product Recall Participation:       % Of All Covered Recall Expenses


[ ] Manufacturers' Optimum Business Income
    And Extra Expense Endorsement - CP 12
    72 Hour Waiting Period

Total Manufacturers' Optimum Program Premium        $1,936
```

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA        30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named   Insured   and   Address**

| Policy   Type:  *Commercial Package* |
|---|

**Policy   Number:**  *CPP 2083060-01*
**Issue  Date:**  *09/09/15*
**ACCT.  NO:** *0000191650*
**Change    Effective    Date:**  *07/15/15*
**From:07/01/15**
**To:  07/01/16**
12:01 a.m. standard time.

**CYCLE-TEX INC**
**702 S THORNTON AVE STE 201**
**DALTON GA   30720**

## POLICY PREMIUM RECAP STATEMENT

| Line  of Business/Coverages | Pro-Rated Premium   Totals | Commission |
|---|---:|---|
| Commercial  Automobile  Coverage  Part | $31,371.00 | 15% |
| Commercial  Property  Coverage  Part | $350.00 | 17% |
| Commercial  Crime  Coverage  Part | $820.00 | 17% |
| Employee  Benefits  Liability  Coverage  Part | $230.00 | 17% |
| Commercial  General  Liability  Coverage  Part | $20,118.00 | 17% |
| Commercial  Inland  Marine  Coverage  Part | $575.00 | 17% |
| Certified  Acts  of  Terrorism  -  Property | $1.00 | 17% |
| Certified  Acts  of  Terrorism  -  General  Liability | $526.00 | 17% |
| Certified  Acts  of  Terrorism  -  Inland  Marine | $3.00 | 17% |
| Manufacturers'  Optimum  Program | $930.00 | 17% |

Your  Pro-Rated  Premium  Is    | **$54,924.00** |

**THIS IS NOT A BILL.** Any outstanding   balance due will be billed at a later date.

Grange   Mutual   Casualty   Company
P.O.  Box  1218
Columbus,    Ohio    43216-1218

# COMMERCIAL POLICY CHANGE
## ENDORSEMENT IL 16

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured/Mailing Address: | Agency Name/Address/Code Number: |
|---|---|
| CYCLE-TEX INC<br>702 S THORNTON AVE STE 201<br>DALTON GA  30720 | ADVANCED INSURANCE STRATEGIES<br>300 W EMERY STREET SUITE 205<br>PO BOX 709<br>DALTON, GA              30722<br>10-01314-00 |

| Policy Number:    Mod: | Effective Date of Change: | | End No. |
|---|---|---|---|
| CPP2083060-01 | 07/15/15 | at 12:01 AM Standard Time | 02 |

The following item(s):

- [ ] Insured's Name
- [ ] Insured's Mailing Address
- [ ] Insured's Legal Entity/Business of Insured
- [X] Premium Determination
- [ ] Additional Interested Parties
- [ ] Coverage Forms and Endorsements

- [ ] Limits/Exposures
- [ ] Deductibles
- [ ] Covered Property/Location Description
- [ ] Classification/Class Codes
- [ ] Rates
- [X] Vehicle(s)

Is (are) changed to read [See Additional Page(s)]:

APPLICABLE TO COMMERCIAL AUTOMOBILE COVERAGE FORM:

ADDING VEHICLE 143 - 2016 TRLR J&L PNEUMATIC TANK TRAILER
VIN 5JLSP4324G5W41620 WITH CLASS CODE 67499

ADDING ENDORSEMENT CA 9944 LOSS PAYABLE IN FAVOR OF:
FIRST BANK OF DALTON
PO BOX 459
DALTON GA 30722
FOR VEHICLE: 143 - 2016 TRLR VIN 5JLSP4324G5W41620

_____
Authorized Representative

Issue Date: 09/09/15
ACCT. NO:0000191650

Annual Premium Change: _____ 485.00 ADD'L
Pro Rata Premium Change: _____ 467.00 ADD'L
Premium does not include service charges.

Applicable to the State of Kentucky
Includes Kentucky Municipal Tax: _____
Includes Kentucky Surcharges Required by KRS 136.392: _____

AK967 (12-2009)

Page 01 of 01

**AGENTCOPY**

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA          30722*

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio  43216-1218*

**ABS**

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

Named   Insured   and   Address

**Policy   Type:** *Commercial Package*

**Reason   Issued:** *Policy Change -*
*Multiple Changes*
**Policy   Number:** *CPP 2083060-01*
**Change   Effective   Date:** *07/15/15*
**Issue   Date:** *09/09/15*
**ACCT.   NO:** *0000191650*

**CYCLE-TEX INC**
**702 S THORNTON AVE STE 201**
**DALTON GA   30720**

**From: 07/01/15    To: 07/01/16**    12:01 a.m. standard time at the address of the named insured as shown above. These declarations together with the applications, the commercial lines policy jacket, common policy conditions, coverage part declarations, coverage part coverage form(s) and forms and endorsements, if any, issued to form a part thereof, complete the above numbered policy. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

## Commercial   Policy   Declarations

| Business   Description | *PLASTIC MFG* |
| --- | --- |

This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

| Coverage   Part(s) | Premium |
| --- | --- |
| Commercial  Automobile  Coverage  Part | $31,389.00 |
| Commercial  Property  Coverage  Part | $350.00 |
| Commercial  Crime  Coverage  Part | $820.00 |
| Employee  Benefits  Liability  Coverage  Part | $230.00 |
| Commercial  General  Liability  Coverage  Part | $20,118.00 |
| Commercial  Inland  Marine  Coverage  Part | $575.00 |
| Certified  Acts  of  Terrorism | $530.00 |
| Manufacturers'  Optimum  Program | $930.00 |

Your Estimated  Total Policy Premium  Is    **$54,942.00**

Premium  does  not include  service  charges.

The Additional  Premium  From This Policy Change Is   $467.00

**THIS IS NOT A BILL.** This additional  premium  will appear  on your next billing statement, and remaining  payments  will be adjusted  accordingly.

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA        30722*

*(706) 226-0186*
*Agent No. 10-01314-00*

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

Named   Insured   and   Address

**Policy  Type:** *Commercial Package*

**Reason  Issued:** *Policy Change -*
*Multiple Changes*
**Policy  Number:** *CPP 2083060-01*
**Change  Effective  Date:** *07/15/15*
**Issue  Date:** *09/09/15*
**ACCT.  NO:** *0000191650*

**CYCLE-TEX INC**
**702 S THORNTON AVE STE 201**
**DALTON GA  30720**

---

**From: 07/01/15    To: 07/01/16**    12:01 a.m. standard time at the address of the named insured as shown above.
These declarations together with the application, common policy conditions, forms and endorsements, if any, complete the above numbered policy. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

| Commercial   Auto   Coverage   Part/Business   Auto   Coverage   Form   Declarations |
|---|

| Named   Insured's   Legal   Entity   is: *Corporation* |
|---|

| Item  2 - Schedule   of Coverages   and  Covered   Autos |
|---|

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form next to the name of the coverage.

| Coverages | Covered Auto  Symbols | Limit<br>*The most we will pay for any one accident or loss.* | Premium |
|---|---|---|---|
| Liability   Coverage | 01 | | |
| Combined  Single Limits | | $1,000,000 Per Accident | $ 23,365.00 |
| | | | |
| **Maximum     PIP Benefits** | | | |
| | | | |
| **Maximum    Added    PIP Benefits** | | | |
| **Medical    Payments** | 02 | $5,000 | 316.00 |
| **Uninsured   Motorists** | 02 | | |
| Combined  Single Limits | | $1,000,000 Per Accident | 2,785.00 |
| | | | |
| **Underinsured   Motorists** | | | |
| | | | |
| **Physical   Damage   Insurance** | | Actual cash value or cost of repair, whichever is less, minus deductible shown. | |
| Comprehensive | 07 | See Item 3 for deductible for each covered auto. No deductible applies to loss caused by fire or lightning. See Item 4 for hired or borrowed autos. | 850.00 |
| | | | |
| Collision | 07 | See Item 3 for deductible for each covered auto. See Item 4 for hired or borrowed autos. | 3,764.00 |
| **Towing  and Labor** | | | |
| | | | |
| **Municipal    Taxes** | | | |
| **Other  State  Specific  Charge** | | *Surcharge required by KRS 136.392* | |
| **Premium   for Endorsements** | | | 309.00 |

Additional  Premium  For This Policy Change:  $467.00 .    *Your Estimated  Total Auto Premium  Is    **$ 31,389.00**

**THIS IS NOT A BILL.** The additional  premium  will appear  on your next    Premium  does not include service charges. invoice  and remaining  payments  adjusted accordingly.    *This policy may be subject to final audit.

CA 241 (12-2009)    CPPCAR11

| Item 2 continued - Forms and Endorsements |
|---|

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| IL0017 | 1198 | IL0021 | 0702 | IL0262 | 0908 | CA0001 | 1001 | CA0038 | 1202 |
| CA50 | 0507 | CA75 | 0511 | CA9903 | 0797 | CA83 | 0511 | CA3137 | 0109 |
| CA9944 | 1293 | CA60 | 0713 | CA87 | 1013 | SE01 | 0897 | CA9910 | 0902 |

**Item 3 - Schedule of Covered Autos You Own**

| Unit | State | Ter. | Year | Description | Vehicle Identification Number | Age | Cost | Class | Stated Amount | Change Date |
|---|---|---|---|---|---|---|---|---|---|---|
| 143 | GA | 015 | 16 | TRLR J&LPNEUMATIC | 5JLSP4324G5W41620 | 000 | 118200 | 67499 | | 07/15/15 |

**Item 3 - Schedule of Covered Autos You Own - Premiums**

| Unit | Liab. | PD Ded. | Med Pay | UM | UMPD | UIM | Comp. Ded. | Comp. Prem. | Coll. Ded. | Coll. Prem. | PIP | APIP | Spec. Perils | Spec. Perils Ded. | Tow-ing | Other | Total Prem. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 143 | 55 | | 1 | | | | 1000 | 61 | 1000 | 368 | | | | | | | 485 |

| Business Auto Optimum | $215 |
|---|---|

Grange Mutual Casualty Company

| Item 4 - Schedule of Hired or Borrowed Covered Auto Coverage and Premiums |
|---|

**Liability Coverage - Rating Basis, Cost of Hire**

| State | Estimated Cost of Hire | Rate per $100 Cost of Hire | Factor (If Liab. Cov. is Primary) | Premium |
|---|---|---|---|---|
| GA | IF ANY | 0.000 | | 111 |
| | | | Total Premium: | $111 |

Cost of hire means the total amount you incur for the hire of "autos" you do not own (not including "autos" you borrow or rent from your partners or employees or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

**Physical Damage Coverage**

| Coverages | Limit of Insurance *The most we will pay, deductible* | Estimated Annual Cost of Hire | Rate Per Each $100 Annual Cost of Hire | Premium |
|---|---|---|---|---|
| Comprehensive | | | | |
| Specified Causes of Loss | Actual Cash Value or Cost of Repairs | | | |
| Collision | | | | |
| | | Total Premium: | | |

Physical damage insurance for covered autos you hire or borrow is excess unless indicated by (X).

(  ) If this box is checked, physical damage insurance applies on a direct primary basis and for purposes of the condition entitled other insurance, any covered auto you hire or borrow is deemed to be a covered auto you own.

| Item 5 - Schedule for Employers Non-Ownership Liability |
|---|

| Named Insured's Business | Rating Basis | Number | Premium |
|---|---|---|---|
| Other than a Social Service Agency | Number of Employees | 26-100 | 205 |
| | Number of Partners | | |
| Social Service Agency | Number of Employees | | |
| | Number of Partners | | |
| | | | $205 |

**Policy No.** CPP 2083060

CA 241 (12-95)

**page 3**

CPPCA3B

Except for towing,  all physical  damage  loss is payable  to you and the loss payee named as
interests  may  appear  at the time  of loss.

| Item  6 - Other  Interests |
| --- |

```
Unit #000 Other Interest        Unit #142 Loss Payee
PENSKE TRUCK LEASING CO LP      BB&T
PO BOX 832658                   PO BOX 1626
ATLANTA GA           30353      WILSON NC            27894


Unit #143 Loss Payee
FIRST BANK OF DALTON
PO BOX 459
DALTON GA            30722
```

**Named   Insured:**   *CYCLE-TEX INC*
**Policy   No.**   *CPP   2083060*

**MANUFACTURERS' OPTIMUM PROGRAM SCHEDULE**

**Policy Number:**   CPP 2083060-01          RENEWAL OF CPP 2083060 00

Amendment  Of Policy Effective:  July 15, 2015

**Named  Insured:**   CYCLE-TEX INC

These Coverages Apply To All Locations Covered On The Policy.


The Following Coverages Apply Only When Designated By an "X" In
The Box(es) Shown Below:

                                                               Premium
[X] Manufacturers' Optimum Endorsement - IL 19                   $930


Total Manufacturers' Optimum Program Premium                     $930

**COMMERCIAL PACKAGE POLICY FORMS INVENTORY**

**Policy  Number:**    CPP 2083060-01          RENEWAL OF  CPP 2083060 00

Amendment  Of Policy Effective:  July 15, 2015

**Named   Insured:**   CYCLE-TEX INC

```
                POLICY LEVEL FORMS AND ENDORSEMENTS


CA0109     (10/04)  **GA Changes
CA38       (12/05)  **GA Amendment of Policy
IL0017     (11/98)  **Common Policy Conditions
IL43       (05/11)  **Common Policy Conditions Changes
IL0021     (07/02)  **Nuclear Energy Liability Exclusion
IL0262     (09/08)  **Ga Changes Cancellation & Nonrenewal
CA0051     (12/04)  **Changes in Coverage Forms - Mobile Eq...
IL 09 52   (01/15)    Cap On Losses From Certified Acts Of Terrorism
IL 09 85   (01/15)    Disclosure Pursuant To Terrorism Risk Insurance Act
IL 09 35   (07/02)    Exclusion Of Certain Computer-Related Losses
IL 19      (06/14)    Manufacturers' Optimum Endorsement
IM 72 03   (10/04)    Business Computer Coverage
CR 00 21   (03/00)    Commercial Crime Coverage Form

                COMMERCIAL AUTO FORMS AND ENDORSEMENTS


CA0001     (10/01)    Business Auto Coverage Form
CA0038     (12/02)    War Exclusion
CA50       (05/07)    Asbestos Exclusion
CA75       (05/11)    Policy Changes - Who Is An Insured
CA9903     (07/97)    Auto Medical Payments
CA83       (05/11)    Auto Medical Payments Coverage Changes
CA3137     (01/09)    GA UM Added On To At-Fault Liability Lim
CA9944     (12/93)    Loss Payable Clause
CA60       (07/13)    Business Auto Optimum
CA87       (10/13)    Blanket Additional Insured
SE01       (08/97)    Special Endorsement
CA9910     (09/02)    Drive Other Car Coverage

            COMMERCIAL PROPERTY COVERAGE PART FORMS AND ENDORSEMENTS


CP 25      (01/13)    Changes - Building Glass
CP 00 10   (10/12)    Building And Personal Property Coverage Form
CP 04 11   (10/12)    Protective Safeguards
CP 10 30   (10/12)    Causes Of Loss - Special Form
CP 12 70   (09/96)    Joint Or Disputed Loss Agreement
CP 12 18   (10/12)  **Loss Payable Provisions
CP 00 90   (07/88)    Commercial Property Conditions
CP 01 40   (07/06)    Exclusion Of Loss Due To Virus Or Bacteria
CP 01 31   (10/12)    Georgia Changes




** INDICATES DELETED FORM
```

**COMMERCIAL PACKAGE POLICY FORMS INVENTORY**

**Policy   Number:**   CPP 2083060-01          RENEWAL OF CPP 2083060 00

Amendment   Of Policy Effective:  July 15, 2015

**Named   Insured:**   CYCLE-TEX INC

COMMERCIAL  CRIME  COVERAGE  PART  FORMS  AND  ENDORSEMENTS

```
CR 01     (08/01)   Crime Amendment Endorsement
CR 01 32  (03/00)   Georgia Changes - Concealment, Fraud
IL 09 35  (07/01)   Exclusion Of Certain Computer-Related Losses
CR 07 59  (01/08)   Amend-Delete Provisions Regarding Certain Acts of Terror
```

COMMERCIAL  GENERAL  LIABILITY  COVERAGE  PART  FORMS  AND  ENDORSEMENTS

```
CG 21 67  (04/02)   Fungi or Bacteria Exclusion
CG 21 49  (09/99)   Total Pollution Exclusion
CG 00 62  (12/02)   War Liability Exclusion
CG 21 47  (07/98)   Employment-Related Practices Exclusion
CG 00 01  (10/01)   Commercial General Liability Coverage Form
CG 28     (08/09)   Recording & Distribution of Material or Info Exclusion
IL 15     (06/97)   Lead Exclusion
CG 44     (05/11)   Medical Payment Changes
CG 09 GA  (01/05)   Asbestos, Silica OR Mixed Dust Exclusion
CG 21 60  (04/98)   Exclusion - Year 2000 Computer-Related Problems
CG 21 70  (01/01)   Cap On Losses From Certified Acts Of Terrorism
CG 25 04  (03/97)   Designated Location(s) General Aggregate
EB 10 1   (04/98)   Employee Benefits Liability
EB 01     (10/98)   Exclusion - Year 2000 Computer-Related Problems
EB 04     (05/11)   Employee Benefits Liability Coverage form Changes
IL 09 85  (01/08)   **Disclosure Pursuant To Terrorism Risk Insurance Act
```

COMMERCIAL  INLAND  MARINE  COVERAGE  PART  FORMS  AND  ENDORSEMENTS

```
CL 0600   (01/15)   Certified Terrorism Loss
CL 0605   (01/15)   Certified Terrorism Loss Disclosure Of Premium...
IM 72 55  (01/00)   Transportation Dec
IM 72 50  (01/00)   Transportation Coverage
IM 20 21  (04/04)   Amendatory Endorsement Georgia
```

** INDICATES DELETED FORM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** We will pay, as interest may appear, you and the loss payee named in the policy for "loss" to a covered "auto".

**B.** The insurance covers the interest of the loss payee unless the "loss" results from conversion, secretion or embezzlement on your part.

**C.** We may cancel the policy as allowed by the CANCELLATION Common Policy Condition.

Cancellation ends this agreement as to the loss payee's interest. If we cancel the policy we will mail you and the loss payee the same advance notice.

**D.** If we make any payments to the loss payee, we will obtain his or her rights against any other party.

*ADVANCED INSURANCE STRATEGIES*
*200 W CRAWFORD ST*
*PO BOX 709*
*DALTON, GA        30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named   Insured   and   Address**

| Policy   Type: | *Commercial Package* |
|---|---|

**Policy   Number:**   *CPP 2083060-00*
**Issue   Date:**   *08/19/14*
**ACCT.   NO:**   *0000191650*
**Change   Effective   Date:**   *07/01/14*
**From: 07/01/14**
**To: 07/01/15**
12:01 a.m. standard time.

**CYCLE-TEX INC**
**702 S THORNTON AVE**
**DALTON GA   30720**

## POLICY PREMIUM RECAP STATEMENT

| Line of Business/Coverages | Pro-Rated Premium   Totals | Commission |
|---|---:|---|
| Commercial Automobile Coverage Part | $24,975.00 | 15% |
| Commercial Property Coverage Part | $22,597.00 | 15% |
| Equipment Breakdown Coverage | $2,633.00 | 15% |
| Commercial Crime Coverage Part | $820.00 | 15% |
| Employee Benefits Liability Coverage Part | $230.00 | 15% |
| Commercial General Liability Coverage Part | $19,729.00 | 15% |
| Commercial Inland Marine Coverage Part | $575.00 | 15% |
| Certified Acts of Terrorism - Property | $288.00 | 15% |
| Certified Acts of Terrorism - General Liability | $661.00 | 15% |
| Certified Acts of Terrorism - Inland Marine | $3.00 | 15% |

Your Pro-Rated  Premium  Is    **$72,511.00**

**THIS IS NOT A BILL.** Any outstanding   balance due will be billed at a later date.

*IKK204 (04-2005)*                    **AGENTCOPY**

Grange Mutual Casualty Company
P.O. Box 1218
Columbus, Ohio 43216-1218

# COMMERCIAL POLICY CHANGE
## ENDORSEMENT IL 16

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured/Mailing Address: | Agency Name/Address/Code Number: |
|---|---|
| CYCLE-TEX INC<br>702 S THORNTON AVE<br>DALTON GA 30720 | ADVANCED INSURANCE STRATEGIES<br>200 W CRAWFORD ST<br>PO BOX 709<br>DALTON, GA        30722<br>10-01314-00 |

| Policy Number:   Mod: | Effective Date of Change: | End No. |
|---|---|---|
| CPP 2083060-00 | 07/01/14     at 12:01 AM Standard Time | 03 |

The following item(s):

☐ Insured's Name   ☐ Limits/Exposures

☐ Insured's Mailing Address   ☐ Deductibles

☐ Insured's Legal Entity/Business of Insured   ☐ Covered Property/Location Description

☐ Premium Determination   ☐ Classification/Class Codes

☐ Additional Interested Parties   ☐ Rates

☐ Coverage Forms and Endorsements   ☒ Vehicle(s)

Is (are) changed to read [See Additional Page(s)]:

APPLICABLE TO THE COMMERCIAL AUTO COVERAGE,
AMENDING VIN NUMBER FOR
VEH 092 1986 MONON DRY TRAILER TO 1NNVA4821GM106574

_____
Authorized Representative

Annual Premium Change: _____ 0.00
Pro Rata Premium Change: _____ 0.00

Issue Date: 08/19/14
ACCT. NO:0000191650
Premium does not include service charges.
Applicable to the State of Kentucky
Includes Kentucky Municipal Tax: _____
Includes Kentucky Surcharges Required by KRS 136.392: _____

AK967 (12-2009)

*AGENTCOPY*

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA        30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named   Insured   and   Address**

| **Policy   Type:** *Commercial Package* |
|---|

**Policy   Number:**   *CPP 2083060-01*
**Issue   Date:**   *03/22/16*
**ACCT.   NO:**   *0000191650*
**Change   Effective   Date:**   *03/09/16*
**From:07/01/15**
**To:  07/01/16**
12:01 a.m. standard time.

**CYCLE-TEX INC**
**702 S THORNTON AVE STE 201**
**DALTON GA   30720**

---

### POLICY PREMIUM RECAP STATEMENT

| Line of Business/Coverages | Pro-Rated Premium   Totals | Commission |
|---|---:|---|
| Commercial  Automobile  Coverage  Part | $31,371.00 | 15% |
| Commercial  Property  Coverage  Part | $350.00 | 17% |
| Commercial  Crime  Coverage  Part | $820.00 | 17% |
| Employee  Benefits  Liability  Coverage  Part | $230.00 | 17% |
| Commercial  General  Liability  Coverage  Part | $20,118.00 | 17% |
| Commercial  Inland  Marine  Coverage  Part | $575.00 | 17% |
| Certified  Acts  of  Terrorism  -  Property | $1.00 | 17% |
| Certified  Acts  of  Terrorism  -  General  Liability | $526.00 | 17% |
| Certified  Acts  of  Terrorism  -  Inland  Marine | $3.00 | 17% |
| Manufacturers'  Optimum  Program | $930.00 | 17% |

Your  Pro-Rated  Premium  Is   | **$54,924.00** |

**THIS IS NOT A BILL.** Any outstanding   balance due will be billed at a later date.

Grange   Mutual   Casualty   Company
P.O.  Box  1218
Columbus,    Ohio    43216-1218

# COMMERCIAL POLICY CHANGE
## ENDORSEMENT  IL 16

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured/Mailing Address: | Agency Name/Address/Code Number: |
|---|---|
| CYCLE-TEX INC<br>702 S THORNTON AVE STE 201<br>DALTON GA  30720 | ADVANCED INSURANCE STRATEGIES<br>300 W EMERY STREET SUITE 205<br>PO BOX 709<br>DALTON, GA                    30722<br>10-01314-00 |

| Policy Number:   Mod: | Effective Date of Change: | | End No. |
|---|---|---|---|
| CPP2083060-01 | 03/09/16 | at 12:01 AM Standard Time | 03 |

The following item(s):

| | | | |
|---|---|---|---|
| ☐ | Insured's Name | ☐ | Limits/Exposures |
| ☐ | Insured's Mailing Address | ☐ | Deductibles |
| ☐ | Insured's Legal Entity/Business of Insured | ☒ | Covered Property/Location Description |
| ☐ | Premium Determination | ☐ | Classification/Class Codes |
| ☐ | Additional Interested Parties | ☐ | Rates |
| ☐ | Coverage Forms and Endorsements | ☐ | Vehicle(s) |

Is (are) changed to read [See Additional Page(s)]:

```
APPLICABLE TO COMMERCIAL GENERAL LIABILITY COVERAGE FORM:

ADD LOC 6 - 1016 VISTA DR, DALTON GA 30721 WITH LIABILITY
CODE 58058 ON AN IF ANY BASIS
```

_____
Authorized Representative

Issue Date:  03/22/16
ACCT. NO:0000191650

Annual Premium Change: _____ 0.00
Pro Rata Premium Change: _____ 0.00

Premium does not include service charges.

Applicable to the State of Kentucky
Includes Kentucky Municipal Tax: _____
Includes Kentucky Surcharges Required by KRS 136.392: _____

AK967 (12-2009)

Page 01  of 01

*AGENTCOPY*

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA          30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

Named   Insured   and   Address

**Policy   Type:** *Commercial Package*

**Reason   Issued:** *Policy Change -*
*Add Additional Location*
**Policy   Number:** *CPP 2083060-01*
**Change   Effective   Date:** *03/09/16*
**Issue Date:** *03/22/16*
**ACCT. NO:** *0000191650*

**CYCLE-TEX INC**
**702 S THORNTON AVE STE 201**
**DALTON GA  30720**

---

**From: 07/01/15    To: 07/01/16**    12:01 a.m. standard time at the address of the named insured as shown above. These declarations together with the applications, the commercial lines policy jacket, common policy conditions, coverage part declarations, coverage part coverage form(s) and forms and endorsements, if any, issued to form a part thereof, complete the above numbered policy. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

---

### Commercial   Policy   Declarations

| Business   Description | *PLASTIC MFG* |
|---|---|

This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

| Coverage   Part(s) | Premium |
|---|---|
| Commercial  Automobile  Coverage  Part | $31,389.00 |
| Commercial  Property  Coverage  Part | $350.00 |
| Commercial  Crime  Coverage  Part | $820.00 |
| Employee  Benefits  Liability  Coverage  Part | $230.00 |
| Commercial  General  Liability  Coverage  Part | $20,118.00 |
| Commercial  Inland  Marine  Coverage  Part | $575.00 |
| Certified  Acts  of  Terrorism | $530.00 |
| Manufacturers'  Optimum  Program | $930.00 |

Your Estimated  Total Policy Premium Is    **$54,942.00**

Premium  does  not include  service  charges.

The Premium  Change  From This Policy Change  Is    $0.00

**THIS IS NOT A BILL.**

**MANUFACTURERS' OPTIMUM PROGRAM SCHEDULE**

**Policy Number:** CPP 2083060-01         RENEWAL OF CPP 2083060 00

Amendment Of Policy Effective: Mar. 09, 2016

**Named Insured:** CYCLE-TEX INC

These Coverages Apply To All Locations Covered On The Policy.


The Following Coverages Apply Only When Designated By an "X" In
The Box(es) Shown Below:

                                                                Premium
[X] Manufacturers' Optimum Endorsement - IL 19                   $930


[ ] Product Recall Expense Coverage Form - CP 13

    Product Recall Limit:              Any One Covered Recall
                                       Aggregate For The Policy Period

    Product Recall Participation:        % Of All Covered Recall Expenses


Total Manufacturers' Optimum Program Premium                   $930

# COMMERCIAL GENERAL LIABILITY COVERAGE PART / CLASSIFICATION SCHEDULE

**Policy  Number:**   CPP  2083060-01          RENEWAL OF  CPP 2083060 00

Amendment  Of Policy Effective:  Mar. 09, 2016

**Named   Insured:**   CYCLE-TEX INC

```
Loc   St Ter Code        Premium Basis          Per       Rate       Premium Cov
   1 GA 503 58058    22,000,000 Gross Sales    1000     $0.284       $6,248 O


Loc   St Ter Code        Premium Basis          Per       Rate       Premium Cov
   1 GA 999 58058    22,000,000 Gross Sales    1000     $0.625      $13,750 P


Loc   St Ter Code        Premium Basis          Per       Rate       Premium Cov
   2 GA 503 58058             0 Gross Sales    1000     $0.315           $0 O
Plastic Or Rubber Goods Mfg. - Other Than Household


Loc   St Ter Code        Premium Basis          Per       Rate       Premium Cov
   2 GA 999 58058             0 Gross Sales    1000     $0.625           $0 P
Plastic Or Rubber Goods Mfg. - Other Than Household


Loc   St Ter Code        Premium Basis          Per       Rate       Premium Cov
   3 GA 503 61224         2,601 Square Feet    1000    $38.014          $99 O
Buildings Or Premises-Office-Premises  Primarily
Occupied By Employees Of The Insured Other Than Not
For Profit
Products-Completed Operations Are Subject To The General Aggregate Limit.


Loc   St Ter Code        Premium Basis          Per       Rate       Premium Cov
   4 GA 503 49452             4 Acres          Each     $5.281          $21 O
Vacant Land  Not For Profit
Products-Completed Operations Are Subject To The General Aggregate Limit.


Loc   St Ter Code        Premium Basis          Per       Rate       Premium Cov
   5 GA 503 58058             0 Gross Sales    1000     $0.284           $0 O
Plastic Or Rubber Goods Mfg. - Other Than Household



Cov P Is For Products-Completed  Operations,  And Cov O Is For All Other Hazards.
```

# COMMERCIAL GENERAL LIABILITY COVERAGE PART / CLASSIFICATION SCHEDULE

**Policy Number:** CPP 2083060-01          RENEWAL OF CPP 2083060 00

Amendment Of Policy Effective: Mar. 09, 2016

**Named Insured:** CYCLE-TEX INC

```
Loc   St Ter Code        Premium Basis         Per        Rate        Premium Cov
      5 GA 503 58058           0 Gross Sales    1000       $0.625          $0 P
Plastic Or Rubber Goods Mfg. - Other Than Household

Loc   St Ter Code        Premium Basis         Per        Rate        Premium Cov
      6 GA 503 58058           0 Gross Sales    1000       $0.284          $0 O
Plastic Or Rubber Goods Mfg. - Other Than Household

Loc   St Ter Code        Premium Basis         Per        Rate        Premium Cov
      6 GA 999 58058           0 Gross Sales    1000       $0.625          $0 P
Plastic Or Rubber Goods Mfg. - Other Than Household
```

Cov P Is For Products-Completed Operations, And Cov O Is For All Other Hazards.

## EMPLOYEE BENEFITS LIABILITY COVERAGE PART/CLASSIFICATION SCHEDULE

**Policy Number:** CPP 2083060-01      RENEWAL OF CPP 2083060 00

Amendment Of Policy Effective: Mar. 09, 2016

**Named Insured:** CYCLE-TEX INC

```
Loc  St Ter              Premium Basis                    Premium
9999 GA 999                75 Employees                     $230
Employee Benefits Liability
```

*ADVANCED INSURANCE STRATEGIES*
*200 W CRAWFORD ST*
*PO BOX 709*
*DALTON, GA        30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named   Insured   and   Address**

---

| **Policy   Type:** *Commercial Package* |
|---|

**Policy   Number:** *CPP 2083060-00*
**Issue   Date:** *08/28/14*
**ACCT. NO:** *0000191650*
**Change   Effective   Date:** *08/21/14*
**From: 07/01/14**
**To: 07/01/15**
12:01 a.m. standard time.

**CYCLE-TEX INC**
**702 S THORNTON AVE**
**DALTON GA   30720**

---

## POLICY PREMIUM RECAP STATEMENT

| Line  of Business/Coverages | Pro-Rated Premium   Totals | Commission |
|---|---:|---|
| Commercial  Automobile  Coverage  Part | $24,975.00 | 15% |
| Commercial  Property  Coverage  Part | $22,597.00 | 15% |
| Equipment  Breakdown  Coverage | $2,633.00 | 15% |
| Commercial  Crime  Coverage  Part | $820.00 | 15% |
| Employee  Benefits  Liability  Coverage  Part | $230.00 | 15% |
| Commercial  General  Liability  Coverage  Part | $19,729.00 | 15% |
| Commercial  Inland  Marine  Coverage  Part | $575.00 | 15% |
| Certified  Acts  of  Terrorism  -  Property | $288.00 | 15% |
| Certified  Acts  of  Terrorism  -  General  Liability | $661.00 | 15% |
| Certified  Acts  of  Terrorism  -  Inland  Marine | $3.00 | 15% |

Your Pro-Rated  Premium  Is     **$72,511.00**

**THIS IS NOT A BILL.** Any outstanding   balance due will be billed at a later date.

Grange   Mutual   Casualty   Company
P.O. Box 1218
Columbus,   Ohio   43216-1218

# COMMERCIAL POLICY CHANGE
## ENDORSEMENT IL 16

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured/Mailing Address: | Agency Name/Address/Code Number: |
|---|---|
| CYCLE-TEX INC<br>702 S THORNTON AVE<br>DALTON GA  30720 | ADVANCED INSURANCE STRATEGIES<br>200 W CRAWFORD ST<br>PO BOX 709<br>DALTON, GA            30722<br>10-01314-00 |

| Policy Number:   Mod: | Effective Date of Change: | End No. |
|---|---|---|
| CPP 2083060-00 | 08/21/14          at 12:01 AM Standard Time | 04 |

The following item(s):

| | | | |
|---|---|---|---|
| ☐ | Insured's Name | ☐ | Limits/Exposures |
| ☐ | Insured's Mailing Address | ☐ | Deductibles |
| ☐ | Insured's Legal Entity/Business of Insured | ☐ | Covered Property/Location Description |
| ☐ | Premium Determination | ☐ | Classification/Class Codes |
| ☒ | Additional Interested Parties | ☐ | Rates |
| ☐ | Coverage Forms and Endorsements | ☐ | Vehicle(s) |

Is (are) changed to read [See Additional Page(s)]:

```
APPLICABLE TO COMMERCIAL PROPERTY COVERAGE PART AND
LOCATION 1 - ADDING MORTGAGEE IN FAVOR OF:
BBT - PO BOX 20047 - KENNESAW GA 30156

SEE ATTACHED SCHEDULE
```

---
Authorized Representative

Issue Date:  08/28/14

ACCT. NO:0000191650

Annual Premium Change: _____ 0.00
Pro Rata Premium Change: _____ 0.00

Premium does not include service charges.

Applicable to the State of Kentucky

Includes Kentucky Municipal Tax: _____

Includes Kentucky Surcharges Required by KRS 136.392: _____

AK967 (12-2009)

Page 01 of 01

*AGENTCOPY*

*ADVANCED INSURANCE STRATEGIES*
*200 W CRAWFORD ST*
*PO BOX 709*
*DALTON, GA        30722*

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

**Named   Insured   and   Address**

**Policy  Type:**  *Commercial Package*

**Reason   Issued:**  *Policy Change -*
*Change Coverage*
**Policy   Number:**  *CPP  2083060-00*
**Change   Effective   Date:**  *08/21/14*
**Issue  Date:**  *08/28/14*
**ACCT.  NO:**  *0000191650*

**CYCLE-TEX INC**
**702 S THORNTON AVE**
**DALTON GA   30720**

---

**From: 07/01/14    To: 07/01/15**    12:01 a.m. standard time at the address of the named insured as shown above. These declarations together with the applications, the commercial lines policy jacket, common policy conditions, coverage part declarations, coverage part coverage form(s) and forms and endorsements, if any, issued to form a part thereof, complete the above numbered policy. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

---

**Commercial   Policy   Declarations**

| **Business   Description**   *PLASTIC MFG* |
|---|

This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

| Coverage     Part(s) | Premium |
|---|---|
| COMMERCIAL  AUTOMOBILE  COVERAGE  PART | $24,975.00 |
| COMMERCIAL  PROPERTY  COVERAGE  PART | $25,230.00 |
| COMMERCIAL  CRIME  COVERAGE  PART | $820.00 |
| EMPLOYEE  BENEFITS  LIABILITY  COVERAGE  PART | $230.00 |
| COMMERCIAL  GENERAL  LIABILITY  COVERAGE  PART | $19,729.00 |
| COMMERCIAL  INLAND  MARINE  COVERAGE  PART | $575.00 |
| Certified  Acts  of  Terrorism | $952.00 |

Your Estimated  Total Policy Premium  Is    **$72,511.00**

Premium  does not include  service charges.

The Premium  Change  From This Policy Change  Is    $0.00

**THIS IS NOT A BILL.**

## MANUFACTURERS' OPTIMUM PROGRAM SCHEDULE

**Policy Number:**     CPP  2083060-00

Amendment   Of Policy Effective:  Aug. 21, 2014

**Named   Insured:**   CYCLE-TEX INC

These Coverages Apply To All Locations Covered On The Policy.


The Following Coverages Apply Only When Designated By an "X" In
The Box(es) Shown Below:

                                                              Premium
[X] Manufacturers' Optimum Endorsement - IL 19                 $1,936


[ ] Product Recall Expense Coverage Form - CP 13

     Product Recall Limit:              Any One Covered Recall
                                        Aggregate For The Policy Period

     Product Recall Participation:       % Of All Covered Recall Expenses


[ ] Manufacturers' Optimum Business Income
    And Extra Expense Endorsement - CP 12
    72 Hour Waiting Period


Total Manufacturers' Optimum Program Premium            $1,936

# MORTGAGE HOLDERS, LOSS PAYEES, AND ADDITIONAL INSURED SCHEDULE

**Policy Number:**   CPP 2083060-00

Amendment Of Policy Effective: Aug. 21, 2014

**Named Insured:**   CYCLE-TEX INC

```
Premises  0001                      Premises  0002
Bbt                                 Bbt
PO Box 200047                       PO Box 200047
Kennesaw GA                         Kennesaw GA
30156                               30156
Mortgage Holder                     Mortgage Holder

Premises  0005
Bbt
PO Box 200047
Kennesaw GA
30156
Mortgage Holder
```

*ADVANCED INSURANCE STRATEGIES*
*200 W CRAWFORD ST*
*PO BOX 709*
*DALTON, GA        30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

Named   Insured   and   Address

| **Policy   Type:** *Commercial Package* |
| --- |

**Policy   Number:**   *CPP 2083060-00*
**Issue   Date:**   *08/28/14*
**ACCT.  NO:** *0000191650*
**Change   Effective   Date:**   *08/21/14*
**From: 07/01/14**
**To: 07/01/15**
12:01 a.m. standard time.

**CYCLE-TEX INC**
**702 S THORNTON AVE**
**DALTON GA   30720**

## POLICY PREMIUM RECAP STATEMENT

| Line of Business/Coverages | Pro-Rated Premium   Totals | Commission |
| --- | ---: | --- |
| Commercial Automobile Coverage Part | $24,975.00 | 15% |
| Commercial Property Coverage Part | $22,597.00 | 15% |
| Equipment Breakdown Coverage | $2,633.00 | 15% |
| Commercial Crime Coverage Part | $820.00 | 15% |
| Employee Benefits Liability Coverage Part | $230.00 | 15% |
| Commercial General Liability Coverage Part | $19,729.00 | 15% |
| Commercial Inland Marine Coverage Part | $575.00 | 15% |
| Certified Acts of Terrorism - Property | $288.00 | 15% |
| Certified Acts of Terrorism - General Liability | $661.00 | 15% |
| Certified Acts of Terrorism - Inland Marine | $3.00 | 15% |

Your Pro-Rated  Premium  Is

| **$72,511.00** |
| --- |

**THIS IS NOT A BILL.** Any outstanding   balance due will be billed at a later date.

Grange   Mutual   Casualty   Company
P.O.  Box  1218
Columbus,    Ohio    43216-1218

# COMMERCIAL POLICY CHANGE
## ENDORSEMENT IL 16

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured/Mailing Address: | Agency Name/Address/Code Number: |
|---|---|
| CYCLE-TEX INC<br>702 S THORNTON AVE<br>DALTON GA  30720 | ADVANCED INSURANCE STRATEGIES<br>200 W CRAWFORD ST<br>PO BOX 709<br>DALTON, GA            30722<br>10-01314-00 |

| Policy Number:    Mod: | Effective Date of Change: | | End No. |
|---|---|---|---|
| CPP 2083060-00 | 08/21/14        at 12:01 AM Standard Time | | 04 |

The following item(s):

| | | | |
|---|---|---|---|
| ☐ | Insured's Name | ☐ | Limits/Exposures |
| ☐ | Insured's Mailing Address | ☐ | Deductibles |
| ☐ | Insured's Legal Entity/Business of Insured | ☐ | Covered Property/Location Description |
| ☐ | Premium Determination | ☐ | Classification/Class Codes |
| ☒ | Additional Interested Parties | ☐ | Rates |
| ☐ | Coverage Forms and Endorsements | ☐ | Vehicle(s) |

Is (are) changed to read [See Additional Page(s)]:

```
APPLICABLE TO COMMERCIAL PROPERTY COVERAGE PART AND
LOCATION 1 - ADDING MORTGAGEE IN FAVOR OF:
BBT - PO BOX 20047 - KENNESAW GA 30156

SEE ATTACHED SCHEDULE
```

_____
Authorized Representative

Issue Date:  08/28/14
ACCT. NO:0000191650

Annual Premium Change: _____ 0.00
Pro Rata Premium Change: _____ 0.00
Premium does not include service charges.

Applicable to the State of Kentucky
Includes Kentucky Municipal Tax: _____
Includes Kentucky Surcharges Required by KRS 136.392: _____

*AGENTCOPY*

*ADVANCED INSURANCE STRATEGIES*
*200 W CRAWFORD ST*
*PO BOX 709*
*DALTON, GA          30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

**Policy  Type:**  *Commercial Package*

**Reason  Issued:**  *Policy Change -*
*Change Coverage*
**Policy  Number:**  *CPP  2083060-00*
**Change  Effective  Date:**  *08/21/14*
**Issue  Date:**  *08/28/14*
**ACCT.  NO:**  *0000191650*

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named    Insured    and    Address**

**CYCLE-TEX INC**
**702 S THORNTON AVE**
**DALTON GA   30720**

---

**From: 07/01/14     To: 07/01/15**     12:01 a.m. standard time at the address of the named insured as shown above. These declarations together with the applications, the commercial lines policy jacket, common policy conditions, coverage part declarations, coverage part coverage form(s) and forms and endorsements, if any, issued to form a part thereof, complete the above numbered policy. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

---

**Commercial    Policy  Declarations**

| Business  Description | *PLASTIC  MFG* |
|---|---|

This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

| Coverage    Part(s) | Premium |
|---|---|
| COMMERCIAL  AUTOMOBILE  COVERAGE  PART | $24,975.00 |
| COMMERCIAL  PROPERTY  COVERAGE  PART | $25,230.00 |
| COMMERCIAL  CRIME  COVERAGE  PART | $820.00 |
| EMPLOYEE  BENEFITS  LIABILITY  COVERAGE  PART | $230.00 |
| COMMERCIAL  GENERAL  LIABILITY  COVERAGE  PART | $19,729.00 |
| COMMERCIAL  INLAND  MARINE  COVERAGE  PART | $575.00 |
| Certified  Acts  of  Terrorism | $952.00 |

Your Estimated  Total Policy Premium Is   **$72,511.00**

Premium  does not include  service charges.

The Premium  Change From This Policy Change Is    $0.00

**THIS IS NOT A BILL.**

**MANUFACTURERS' OPTIMUM PROGRAM SCHEDULE**

**Policy Number:**     CPP 2083060-00

Amendment Of Policy Effective: Aug. 21, 2014

**Named Insured:**     CYCLE-TEX INC

These Coverages Apply To All Locations Covered On The Policy.


The Following Coverages Apply Only When Designated By an "X" In
The Box(es) Shown Below:

                                                        Premium
[X] Manufacturers' Optimum Endorsement - IL 19            $1,936


[ ] Product Recall Expense Coverage Form - CP 13

    Product Recall Limit:          Any One Covered Recall
                                   Aggregate For The Policy Period

    Product Recall Participation:      % Of All Covered Recall Expenses


[ ] Manufacturers' Optimum Business Income
    And Extra Expense Endorsement - CP 12
    72 Hour Waiting Period


Total Manufacturers' Optimum Program Premium          $1,936

## MORTGAGE HOLDERS, LOSS PAYEES, AND ADDITIONAL INSURED SCHEDULE

**Policy Number:**   CPP 2083060-00

Amendment Of Policy Effective:  Aug. 21, 2014

**Named Insured:**   CYCLE-TEX INC

```
Premises  0001                      Premises  0002
Bbt                                 Bbt
PO Box  200047                      PO Box  200047
Kennesaw  GA                        Kennesaw  GA
30156                               30156
Mortgage  Holder                    Mortgage  Holder

Premises  0005
Bbt
PO Box  200047
Kennesaw  GA
30156
Mortgage  Holder
```

*ADVANCED INSURANCE STRATEGIES*
*200 W CRAWFORD ST*
*PO BOX 709*
*DALTON, GA          30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

Grange  Mutual  Casualty  Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named   Insured   and   Address**

**Policy  Type:** *Commercial Package*

**Policy  Number:** *CPP 2083060-00*
**Issue  Date:** *09/15/14*
**ACCT. NO:** *0000191650*
**Change   Effective   Date:** *07/01/14*
**From:07/01/14**
**To: 07/01/15**
12:01 a.m. standard time.

**CYCLE-TEX INC**
**702 S THORNTON AVE**
**DALTON GA   30720**

## POLICY PREMIUM RECAP STATEMENT

| Line of Business/Coverages | Pro-Rated Premium Totals | Commission |
|---|---|---|
| Commercial Automobile Coverage Part | $24,975.00 | 15% |
| Commercial Property Coverage Part | $22,596.00 | 15% |
| Equipment Breakdown Coverage | $2,633.00 | 15% |
| Commercial Crime Coverage Part | $820.00 | 15% |
| Employee Benefits Liability Coverage Part | $230.00 | 15% |
| Commercial General Liability Coverage Part | $19,720.00 | 15% |
| Commercial Inland Marine Coverage Part | $575.00 | 15% |
| Certified Acts of Terrorism - Property | $288.00 | 15% |
| Certified Acts of Terrorism - General Liability | $661.00 | 15% |
| Certified Acts of Terrorism - Inland Marine | $3.00 | 15% |

Your Pro-Rated Premium Is   **$72,501.00**

**THIS IS NOT A BILL.** Any outstanding   balance due will be billed at a later date.

Grange   Mutual   Casualty   Company
P.O.  Box  1218
Columbus,    Ohio    43216-1218

# COMMERCIAL POLICY CHANGE
## ENDORSEMENT IL 16

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured/Mailing Address: | Agency Name/Address/Code Number: |
|---|---|
| CYCLE-TEX INC<br>702 S THORNTON AVE<br>DALTON GA  30720 | ADVANCED INSURANCE STRATEGIES<br>200 W CRAWFORD ST<br>PO BOX 709<br>DALTON, GA          30722<br>10-01314-00 |

| Policy Number:    Mod: | Effective Date of Change: | | End No. |
|---|---|---|---|
| CPP 2083060-00 | 07/01/14 | at 12:01 AM Standard Time | 05 |

The following item(s):

| | | | |
|---|---|---|---|
| ☐ | Insured's Name | ☐ | Limits/Exposures |
| ☐ | Insured's Mailing Address | ☐ | Deductibles |
| ☐ | Insured's Legal Entity/Business of Insured | ☒ | Covered Property/Location Description |
| ☐ | Premium Determination | ☐ | Classification/Class Codes |
| ☐ | Additional Interested Parties | ☐ | Rates |
| ☐ | Coverage Forms and Endorsements | ☐ | Vehicle(s) |

Is (are) changed to read [See Additional Page(s)]:

AMENDING THE ADDRESS FOR LOCATION 0003

702 S THORNTON AVE,  DALTON GA 30720
AMENDED THE PROPERTY TERRITORY CODE TO MATCH THE ZIP CODE

_____
        Authorized Representative

Annual Premium Change: _____ 10.00 RETURN

Issue Date:  09/15/14                    Pro Rata Premium Change: _____ 10.00 RETURN
ACCT. NO:0000191650                           Premium does not include service charges.
Applicable to the State of Kentucky
Includes Kentucky Municipal Tax: _____
Includes Kentucky Surcharges Required by KRS 136.392: _____

*AGENTCOPY*

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA        30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named    Insured   and   Address**

| **Policy   Type:** *Commercial Package* |

**Policy   Number:** *CPP 2083060-00*
**Issue   Date:** *02/18/15*
**ACCT.   NO:** *0000191650*
**Change    Effective    Date:** *12/19/14*
**From: 07/01/14**
**To: 07/01/15**
12:01 a.m. standard time.

**CYCLE-TEX INC**
**716 S THORNTON AVE**
**DALTON GA   30720**

## POLICY PREMIUM RECAP STATEMENT

| Line of Business/Coverages | Pro-Rated Premium   Totals | Commission |
|---|---:|---|
| Commercial Automobile Coverage Part | $24,975.00 | 15% |
| Commercial Property Coverage Part | $22,596.00 | 15% |
| Equipment Breakdown Coverage | $2,633.00 | 15% |
| Commercial Crime Coverage Part | $820.00 | 15% |
| Employee Benefits Liability Coverage Part | $230.00 | 15% |
| Commercial General Liability Coverage Part | $19,720.00 | 15% |
| Commercial Inland Marine Coverage Part | $575.00 | 15% |
| Certified Acts of Terrorism - Property | $288.00 | 15% |
| Certified Acts of Terrorism - General Liability | $661.00 | 15% |
| Certified Acts of Terrorism - Inland Marine | $3.00 | 15% |

Your Pro-Rated  Premium  Is        | **$72,501.00** |

**THIS IS NOT A BILL.** Any outstanding   balance due will be billed at a later date.

Grange   Mutual   Casualty   Company
P.O.  Box  1218
Columbus,   Ohio   43216-1218

# COMMERCIAL POLICY CHANGE
# ENDORSEMENT IL 16

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured/Mailing Address: | Agency Name/Address/Code Number: |
|---|---|
| CYCLE-TEX INC<br>716 S THORNTON AVE<br>DALTON GA  30720 | ADVANCED INSURANCE STRATEGIES<br>300 W EMERY STREET SUITE 205<br>PO BOX 709<br>DALTON, GA               30722<br>10-01314-00 |

| Policy Number:    Mod: | Effective Date of Change: | | End No. |
|---|---|---|---|
| CPP 2083060-00 | 12/19/14 | at 12:01 AM Standard Time | 06 |

The following item(s):

| | | | |
|---|---|---|---|
| ☐ | Insured's Name | ☐ | Limits/Exposures |
| ☐ | Insured's Mailing Address | ☐ | Deductibles |
| ☐ | Insured's Legal Entity/Business of Insured | ☐ | Covered Property/Location Description |
| ☐ | Premium Determination | ☐ | Classification/Class Codes |
| ☐ | Additional Interested Parties | ☐ | Rates |
| ☒ | Coverage Forms and Endorsements | ☐ | Vehicle(s) |

Is (are) changed to read [See Additional Page(s)]:

```
APPLICABLE TO COMMERCIAL AUTO COVERAGE PART, ADDING CA87
BLANKET ADDITIONAL INSURED-LESSOR AND LOSS PAYEE AND
SE-01

SEE ATTACHED SCHEDULES
```

_____
                 Authorized Representative

Issue Date:  02/18/15
ACCT. NO:0000191650

Annual Premium Change: _____ 0.00
Pro Rata Premium Change: _____ 0.00

Premium does not include service charges.

Applicable to the State of Kentucky
Includes Kentucky Municipal Tax: _____
Includes Kentucky Surcharges Required by KRS 136.392: _____

AK967 (12-2009)

AGENTCOPY

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA       30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

**Policy Type:** *Commercial Package*

**Reason Issued:** *Policy Change -*
*Change Coverage*
**Policy Number:** *CPP 2083060-00*
**Change Effective Date:** *12/19/14*
**Issue Date:** *02/18/15*
**ACCT. NO:** *0000191650*

Grange  Mutual  Casualty  Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named  Insured  and  Address**

**CYCLE-TEX INC**
**716 S THORNTON AVE**
**DALTON GA  30720**

---

**From: 07/01/14    To: 07/01/15**    12:01 a.m. standard time at the address of the named insured as shown above. These declarations together with the applications, the commercial lines policy jacket, common policy conditions, coverage part declarations, coverage part coverage form(s) and forms and endorsements, if any, issued to form a part thereof, complete the above numbered policy. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

---

**Commercial   Policy  Declarations**

| Business  Description | *PLASTIC  MFG* |
|---|---|

This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

| Coverage   Part(s) | Premium |
|---|---|
| COMMERCIAL  AUTOMOBILE  COVERAGE  PART | $24,975.00 |
| COMMERCIAL  PROPERTY  COVERAGE  PART | $25,229.00 |
| COMMERCIAL  CRIME  COVERAGE  PART | $820.00 |
| EMPLOYEE  BENEFITS  LIABILITY  COVERAGE  PART | $230.00 |
| COMMERCIAL  GENERAL  LIABILITY  COVERAGE  PART | $19,720.00 |
| COMMERCIAL  INLAND  MARINE  COVERAGE  PART | $575.00 |
| Certified  Acts  of  Terrorism | $952.00 |

Your Estimated  Total Policy Premium Is      **$72,501.00**

Premium  does not include  service charges.

The Premium  Change From This Policy Change Is    $0.00

**THIS IS NOT A BILL.**

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA          30722*

*(706) 226-0186*
*Agent No. 10-01314-00*

Grange    Mutual    Casualty    Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**Named    Insured    and    Address**

**Policy    Type:** *Commercial Package*

**Reason    Issued:** *Policy Change -*
*Change Coverage*
**Policy    Number:** *CPP 2083060-00*
**Change    Effective    Date:** *12/19/14*
**Issue    Date:** *02/18/15*
**ACCT.  NO:** *0000191650*

CYCLE-TEX INC
716 S THORNTON AVE
DALTON GA  30720

**From: 07/01/14    To: 07/01/15**    12:01 a.m. standard time at the address of the named insured as shown above.
These declarations together with the application, common policy conditions, forms and endorsements, if any,
complete the above numbered policy. In return for the payment of the premium, and subject to all the terms of this
policy, we agree with you to provide the insurance as stated in this policy.

**Commercial    Auto    Coverage    Part/Business    Auto    Coverage    Form    Declarations**

| Named    Insured's    Legal    Entity    is: *Corporation* |
|---|

| Item    2 - Schedule    of    Coverages    and    Covered    Autos |
|---|

This policy provides  only those  coverages  where a charge  is shown  in the premium  column below. Each of these
coverages  will apply  only to those  "autos"  shown  as covered  "autos". "Autos"  are shown  as covered  "autos"  for a
particular  coverage  by the entry  of one or more  of the symbols  from the COVERED AUTOS Section  of the Business
Auto  Coverage  Form next  to the name  of the coverage.

| Coverages | Covered Auto Symbols | Limit *The most we will pay for any one accident or loss.* | Premium |
|---|---|---|---|
| Liability    Coverage | 01 | | |
|   Combined  Single Limits | | $1,000,000 Per Accident | $ 18,213.00 |
| | | | |
| **Maximum    PIP Benefits** | | | |
| | | | |
| **Maximum    Added    PIP Benefits** | | | |
| **Medical    Payments** | 02 | $5,000 | 279.00 |
| **Uninsured    Motorists** | 02 | | |
|   Combined  Single Limits | | $1,000,000 Per Accident | 2,843.00 |
| | | | |
| **Underinsured    Motorists** | | | |
| | | | |
| **Physical    Damage    Insurance** | | Actual cash value  or cost of repair, | |
| | | whichever  is less, minus deductible  shown. | |
|   Comprehensive | 07 | See Item 3 for deductible  for each covered  auto. | 669.00 |
| | | No deductible  applies  to loss caused  by fire or | |
| | | lightning.  See Item 4 for hired or borrowed  autos. | |
| | | | |
|   Collision | 07 | See Item 3 for deductible  for each covered  auto. | 2,676.00 |
| | | See Item 4 for hired or borrowed  autos. | |
| **Towing    and Labor** | | | |
| | | | |
| **Municipal    Taxes** | | | |
| **Other    State  Specific    Charge** | | *Surcharge required by KRS 136.392* | |
| **Premium    for Endorsements** | | | 295.00 |

Premium  Change  For This Policy Change:      $0.00 .      *Your Estimated  Total Auto Premium  Is    **$ 24,975.00**

**THIS IS NOT A BILL.**

Premium  does not include  service charges.
*This policy  may be subject  to final audit.

| Item 2 continued | | - Forms and Endorsements | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| IL0017 | 1198 | IL0021 | 0702 | IL0262 | 0907 | CA0001 | 1001 | CA0038 | 1202 |
| CA50 | 0507 | CA75 | 0511 | CA9903 | 0797 | CA83 | 0511 | CA3137 | 0109 |
| CA60 | 0713 | CA87 | 1013 | SE01 | 0897 | CA9910 | 0902 | | |

**Item 3 - Schedule of Covered Autos You Own**

| Unit | State | Ter. | Year | Description | Vehicle Identification Number | Age | Cost | Class | Stated Amount | Change Date |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

**Item 3 - Schedule of Covered Autos You Own - Premiums**

| Unit | Liab. | PD Ded. | Med Pay | UM | UMPD | UIM | Comp. Ded. | Comp. Prem. | Coll. Ded. | Coll. Prem. | PIP | APIP | Spec. Perils | Spec. Perils Ded. | Tow-ing | Other | Total Prem. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | |

| Business Auto Optimum | $215 |
|---|---|

Grange   Mutual   Casualty   Company

Item  4 - Schedule   of Hired  or Borrowed   Covered   Auto  Coverage   and  Premiums

Liability   Coverage   - Rating  Basis, Cost  of Hire

| State | Estimated Cost of Hire | Rate per $100 Cost of Hire | Factor (If Liab. Cov. is Primary) | Premium |
|---|---|---|---|---|
| GA | IF ANY | 0.000 | | 111 |
| | | | Total  Premium: | $111 |

Cost of hire means  the total  amount  you incur for the hire of "autos" you do not own (not including  "autos" you borrow  or rent from  your partners  or employees  or their family members).  Cost of hire does not include  charges for services  performed  by motor  carriers of property  or passengers.

Physical   Damage   Coverage

| Coverages | Limit  of Insurance *The most we will pay, deductible* | | Estimated Annual Cost of Hire | Rate Per Each $100 Annual Cost of Hire | Premium |
|---|---|---|---|---|---|
| Comprehensive | | | | | |
| Specified Causes of Loss | **Actual Cash Value o r Cost of Repairs** } | | | | |
| Collision | | | | | |
| | | | Total  Premium: | | |

Physical  damage  insurance  for covered autos you hire or borrow  is excess unless  indicated  by (X).

(    ) If this box is checked, physical  damage  insurance  applies on a direct primary  basis and for purposes  of the condition entitled  other insurance,  any covered  auto you hire or borrow  is deemed  to be a covered  auto you own.

Item  5 - Schedule   for Employers   Non-Ownership   Liability

| Named   Insured's  Business | Rating  Basis | Number | Premium |
|---|---|---|---|
| Other  than a Social  Service  Agency | Number  of Employees | 26-100 | 168 |
| | Number  of Partners | | |
| Social  Service  Agency | Number  of Employees | | |
| | Number  of Partners | | |
| | | | $168 |

**Policy No.** *CPP   2083060*

CA 241 (12-95)

**page   3**

CPPCA3B

**Grange Mutual Casualty Company**

Except for towing, all physical damage loss is payable to you and the loss payee named as interests may appear at the time of loss.

| Item 6 - Other Interests |
| --- |

```
Unit #000 Other Interest
PENSKE TRUCK LEASING CO LP
PO BOX 832658
ATLANTA GA              30353
```

### MANUFACTURERS' OPTIMUM PROGRAM SCHEDULE

**Policy Number:**   CPP 2083060-00

Amendment  Of Policy Effective:  Dec. 19, 2014

**Named   Insured:**   CYCLE-TEX INC

These Coverages Apply To All Locations Covered On The Policy.


The Following Coverages Apply Only When Designated By an "X" In
The Box(es) Shown Below:

```
                                                        Premium
[X] Manufacturers' Optimum Endorsement - IL 19           $1,936


[ ] Product Recall Expense Coverage Form - CP 13

    Product Recall Limit:           Any One Covered Recall
                                    Aggregate For The Policy Period

      Product Recall Participation:      % Of All Covered Recall Expenses


Total Manufacturers' Optimum Program Premium            $1,936
```

# COMMERCIAL PACKAGE POLICY FORMS INVENTORY

**Policy   Number:**     CPP  2083060-00

Amendment   Of Policy Effective:  Dec. 19, 2014

**Named     Insured:**   CYCLE-TEX INC

### POLICY LEVEL FORMS AND ENDORSEMENTS

```
CA0109     (10/04)   GA Changes
CA38       (12/05)   GA Amendment of Policy
IL0017     (11/98)   Common Policy Conditions
IL43       (05/11)   Common Policy Conditions Changes
IL0021     (07/02)   Nuclear Energy Liability Exclusion
IL0262     (09/07)   Ga Changes Cancellation & Nonrenewal
CA0051     (12/04)   Changes in Coverage Forms - Mobile Eq...
IL 19      (06/11)   Manufacturers' Optimum Endorsement
IM 72 03   (10/04)   Business Computer Coverage
CR 00 21   (03/00)   Commercial Crime Coverage Form
```

### COMMERCIAL AUTO FORMS AND ENDORSEMENTS

```
CA0001     (10/01)   Business Auto Coverage Form
CA0038     (12/02)   War Exclusion
CA50       (05/07)   Asbestos Exclusion
CA75       (05/11)   Policy Changes - Who Is An Insured
CA9903     (07/97)   Auto Medical Payments
CA83       (05/11)   Auto Medical Payments Coverage Changes
CA3137     (01/09)   GA UM Added On To At-Fault Liability Lim
CA60       (07/13)   Business Auto Optimum
CA87       (10/13) * Blanket Additional Insured
SE01       (08/97) * Special Endorsement
CA9910     (09/02)   Drive Other Car Coverage
```

### COMMERCIAL PROPERTY COVERAGE PART FORMS AND ENDORSEMENTS

```
IL 09 35   (07/01)   Exclusion Of Certain Computer-Related Losses
CP 00 90   (07/88)   Commercial Property Conditions
CP 10 32   (08/08)   Water Exclusion Endorsement
CP 00 10   (04/02)   Building And Personal Property Coverage Form
CP 10 30   (04/02)   Causes Of Loss - Special Form
IL 09 52   (01/08)   Cap On Losses From Certified Acts Of Terrorism
CP 00 30   (04/02)   Business Income (And Extra Expense) Coverage Form
CP 11      (12/09)   Equipment Breakdown Coverage
IL 09 99   (01/07)   Disclosure Of Premium
IL 09 95   (01/07)   Conditional Exclusion of Terrorism
```

### COMMERCIAL CRIME COVERAGE PART FORMS AND ENDORSEMENTS

```
CR 01      (08/01)   Crime Amendment Endorsement
```

\* INDICATES ADDED FORM

## COMMERCIAL PACKAGE POLICY FORMS INVENTORY

**Policy Number:**   CPP  2083060-00

Amendment   Of Policy Effective:  Dec. 19, 2014

**Named    Insured:**   CYCLE-TEX INC

```
CR 01 32 (03/00)   Georgia Changes - Concealment, Fraud
CR 07 59 (01/08)   Amend-Delete Provisions Regarding Certain Acts of Terror

        COMMERCIAL GENERAL LIABILITY COVERAGE PART FORMS AND ENDORSEMENTS

CG 21 67 (04/02)   Fungi or Bacteria Exclusion
CG 21 49 (09/99)   Total Pollution Exclusion
CG 00 62 (12/02)   War Liability Exclusion
CG 21 47 (07/98)   Employment-Related Practices Exclusion
CG 00 01 (10/01)   Commercial General Liability Coverage Form
CG 28    (08/09)   Recording & Distribution of Material or Info Exclusion
IL 15    (06/97)   Lead Exclusion
CG 44    (05/11)   Medical Payment Changes
CG 09 GA (01/05)   Asbestos, Silica OR Mixed Dust Exclusion
CG 21 60 (04/98)   Exclusion - Year 2000 Computer-Related Problems
CG 21 70 (01/08)   Cap on losses from Certified Acts of Terrorism.
CG 21 87 (01/07)   Conditional Exclusion of Terrorism
CG 25 04 (03/97)   Designated Location(s) General Aggregate
EB 10 1  (04/98)   Employee Benefits Liability
EB 01    (10/98)   Exclusion - Year 2000 Computer-Related Problems
EB 04    (05/11)   Employee Benefits Liability Coverage form Changes

         COMMERCIAL INLAND MARINE COVERAGE PART FORMS AND ENDORSEMENTS

CL 16 30 (06/06)   Conditional Terrorism Exclusion
IM 72 55 (01/00)   Transportation Dec
IM 72 50 (01/00)   Transportation Coverage
IM 20 21 (04/04)   Amendatory Endorsement Georgia
```

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DRIVE OTHER CAR COVERAGE - BROADENED COVERAGE FOR NAMED INDIVIDUALS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: | Countersigned By: |
|---|---|
| Named Insured: | (Authorized Representative) |

### SCHEDULE

| Liability | | Auto Medical Payments | | Uninsured Motorists | |
|---|---|---|---|---|---|
| **Limit** | **Premium** | **Limit** | **Premium** | **Limit** | **Premium** |
| $1,000,000 | $    35 | $5,000 | $     1 | | $ |

| Underinsured Motorists | | Physical Damage | |
|---|---|---|---|
| **Limit** | **Premium** | **Comprehensive** | **Collision** |
| | $ | $     6 | $    18 |

| Name of Individual(s) | |
|---|---|
| HENRY P NEFF | |

Note    When uninsured motorists is provided at limits higher than the basic limits required by a financial responsibility law, underinsured motorists is included, unless otherwise noted. If Underinsured Motorists Coverage is provided as a separate coverage, make appropriate entry in the Schedule above.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

 '  ISO Properties, Inc.,  2002

**A.** This endorsement changes only those coverages where a premium is shown in the Schedule.

**B. Changes In Liability Coverage**

**1.** Any "auto" you don't own, hire or borrow is a covered "auto" for Liability Coverage while being used by any individual named in the Schedule or by his or her spouse while a resident of the same household except:

    **a.** Any "auto" owned by that individual or by any member of his or her household.

    **b.** Any "auto" used by that individual or his or her spouse while working in a business of selling, servicing, repairing or parking "autos".

**2.** The following is added to **Who Is An Insured:**

Any individual named in the Schedule and his or her spouse, while a resident of the same household, are "insureds" while using any covered "auto" described in Paragraph **B.1.** of this endorsement.

**C. Changes In Auto Medical Payments And Uninsured And Underinsured Motorists Coverages**

The following is added to **Who Is An Insured:**

Any individual named in the Schedule and his or her "family members" are "insured" while "occupying" or while a pedestrian when being struck by any "auto" you dont own except:

Any "auto" owned by that individual or by any "family member".

**D. Changes In Physical Damage Coverage**

Any private passenger type "auto" you don't own, hire or borrow is a covered "auto" while in the care, custody or control of any individual named in the Schedule or his or her spouse while a resident of the same household except:

**1.** Any "auto" owned by that individual or by any member of his or her household.

**2.** Any "auto" used by that individual or his or her spouse while working in a business of selling, servicing, repairing or parking "autos".

**E. Additional Definition**

As used in this endorsement:

"Family member" means a person related to the individual named in the Schedule by blood, marriage or adoption who is a resident of the individual's household, including a ward or foster child.

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | CA 87 |
|---|---|

**Policy Number: CPP   2083060**

**BLANKET ADDITIONAL   INSURED - LESSOR
AND  LOSS PAYEE**

**THIS ENDORSEMENT  CHANGES  THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement   modifies insurance  provided   under  the following:

BUSINESS AUTO  COVERAGE  FORM

With  respect  to coverage   provided   by this endorsement,   the provisions   of the Coverage  Form apply
unless  modified   by the endorsement.

**Description   of "Leased Autos":**

All "Autos"  leased  or rented  from the Lessors  identified   in the Schedule  below:

**Blanket  Additional   Insured  & Loss Payee  Schedule:**

**Additional   Insured**                                        **Address**

(If no entry  appears  above, information   required  to complete  this endorsement   will be shown  in the
Declarations   as applicable   to this endorsement.)

Includes  copyrighted   material  of Insurance  Services  Office, Inc., with  its permission.

| Endorsement | CA 87 |
|---|---|

**Policy Number: CPP    2083060**

**BLANKET ADDITIONAL   INSURED - LESSOR AND  LOSS PAYEE**

**A.  Coverage**

1.  Any "leased auto" designated  or described in the Schedule will be considered  a covered  "auto".

2.  For a "leased auto" designated  or described in the Schedule, **Who Is An Insured** is changed  to include as an "insured"  the lessor named  in the Schedule. However,  the lessor is an "insured"  only for "bodily injury" or "property  damage" resulting  from the acts or omissions  by:

   **a.**  You;

   **b.**  Any of your "employees"  or agents;  or

   **c.**  Any person,  except  the lessor or any "employee"  or agent  of the lessor, operating  a "leased auto" with the permission  of any of the above.

3.  The coverages  provided  under  the policy apply  to any "leased auto" described  in the Schedule  until the expiration  date of the policy, or when  the lessor or his or her agent  takes  possession  of the "leased auto", whichever  occurs first.

**B.  Loss Payable  Clause**

1.  We will pay, as interest  may appear,  you and  the lessor named  in this endorsement for "loss" to a "leased auto".

2.  The insurance   covers  the interest  of the lessor unless  the "loss" results  from fraudulent   acts or omissions  on your part.

3.  If we make any payment  to the lessor, we will obtain  his or her rights  against  any other  party.

**C.  Cancellation**

1.  If we cancel  the policy, we will mail notice to the lessor  in accordance  with  the Cancellation   Common   Policy Condition.

2.  If you cancel  the policy, we will mail notice to the lessor.

3.  Cancellation   ends this agreement.

**D.**  The lessor  is not  liable for payment  of your premiums.

**E.  Additional   Definition**

As used  in this endorsement:

"Leased  auto" means  an "auto" leased  or rented to you, including  any substitute,  replacement or extra  "auto" needed  to meet seasonal  or other  needs,  under  a written  leasing  or rental agreement  that requires  you to provide  direct primary  insurance  for the lessor.

Includes   copyrighted   material  of Insurance   Services  Office, Inc., with  its permission.

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio  43216-1218

# COMMERCIAL SPECIAL ENDORSEMENT
## SE 01

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured/Mailing Address: | Agency Name/Address/Code Number: |
|---|---|
| CYCLE-TEX INC<br>716 S THORNTON AVE<br>DALTON GA  30720 | ADVANCED INSURANCE STRATEGIES<br>300 W EMERY STREET SUITE 205<br>PO BOX 709<br>DALTON, GA                30722<br>100131400 |

| Policy Number:          Mod: | Effective Date of Change: |
|---|---|
| CPP 2083060-00 | 12/19/14          at 12:01 AM Standard Time |

This endorsement modifies insurance provided under the following:
 COMMERCIAL AUTO


This endorsement changes the policy effective on the inception date of the policy unless another date is indicated above.

COVERAGE EXTENDS TO HIRED CAR PHYSICAL DAMAGE ONLY TO THOSE
UNITS LEASED OR RENTED FROM PENSKE TRUCK LEASING LP

_____
          Authorized Representative


Issue Date:  02/18/15


IK968 (08-97)

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA       30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

Grange  Mutual  Casualty  Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named  Insured  and  Address**

| Policy  Type: *Commercial Package* |
|---|

**Policy  Number:** *CPP 2083060-00*
**Issue  Date:** *03/04/15*
**ACCT. NO:** *0000191650*
**Change  Effective  Date:** *02/20/15*
**From: 07/01/14**
**To: 07/01/15**
12:01 a.m. standard time.

**CYCLE-TEX INC**
**716 S THORNTON AVE**
**DALTON GA   30720**

## POLICY PREMIUM RECAP STATEMENT

| Line of Business/Coverages | Pro-Rated Premium Totals | Commission |
|---|---|---|
| Commercial Automobile Coverage Part | $25,578.00 | 15% |
| Commercial Property Coverage Part | $22,596.00 | 15% |
| Equipment Breakdown Coverage | $2,633.00 | 15% |
| Commercial Crime Coverage Part | $820.00 | 15% |
| Employee Benefits Liability Coverage Part | $230.00 | 15% |
| Commercial General Liability Coverage Part | $19,720.00 | 15% |
| Commercial Inland Marine Coverage Part | $575.00 | 15% |
| Certified Acts of Terrorism - Property | $288.00 | 15% |
| Certified Acts of Terrorism - General Liability | $661.00 | 15% |
| Certified Acts of Terrorism - Inland Marine | $3.00 | 15% |

Your Pro-Rated Premium Is   | **$73,104.00** |

**THIS IS NOT A BILL.** Any outstanding  balance due will be billed at a later date.

Grange   Mutual   Casualty   Company
P.O.  Box  1218
Columbus,    Ohio    43216-1218

# COMMERCIAL POLICY CHANGE
## ENDORSEMENT IL 16

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured/Mailing Address: | Agency Name/Address/Code Number: |
|---|---|
| CYCLE-TEX INC<br>716 S THORNTON AVE<br>DALTON GA  30720 | ADVANCED INSURANCE STRATEGIES<br>300 W EMERY STREET SUITE 205<br>PO BOX 709<br>DALTON, GA            30722<br>10-01314-00 |

| Policy Number:    Mod: | Effective Date of Change: | | End No. |
|---|---|---|---|
| CPP 2083060-00 | 02/20/15 | at 12:01 AM Standard Time | 07 |

The following item(s):

| | | | |
|---|---|---|---|
| ☐ | Insured's Name | ☐ | Limits/Exposures |
| ☐ | Insured's Mailing Address | ☐ | Deductibles |
| ☐ | Insured's Legal Entity/Business of Insured | ☐ | Covered Property/Location Description |
| ☒ | Premium Determination | ☐ | Classification/Class Codes |
| ☒ | Additional Interested Parties | ☐ | Rates |
| ☒ | Coverage Forms and Endorsements | ☒ | Vehicle(s) |

Is (are) changed to read [See Additional Page(s)]:

ADDING VEHICLE 142 - 2008 KENWORTH TRACTOR VIN 1XKWD49X08J225874
WITH CLASS CODE 50499

ADDING ENDORSEMENT CA 9944 LOSS PAYABLE IN FAVOR OF: BB&T,
PO BOX 200047, KENNESAW GA 30156 FOR VEHICLE 142 - 2008 KENWORTH
TRACTOR VIN 1XKWD49X08J225874

---

Authorized Representative

Annual Premium Change: _____ 1,680.00 ADD'L

Issue Date:  03/04/15                Pro Rata Premium Change: _____ 603.00 ADD'L
ACCT. NO:0000191650                                        Premium does not include service charges.
Applicable to the State of Kentucky
Includes Kentucky Municipal Tax: _____
Includes Kentucky Surcharges Required by KRS 136.392: _____

*AGENTCOPY*

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA            30722*

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

Named   Insured   and   Address

**Policy   Type:** *Commercial Package*

**Reason   Issued:** *Policy Change -*
*Add Vehicle*
**Policy   Number:** *CPP 2083060-00*
**Change   Effective   Date:** *02/20/15*
**Issue   Date:** *03/04/15*
**ACCT.   NO:** *0000191650*

**CYCLE-TEX INC**
**716 S THORNTON AVE**
**DALTON GA   30720**

---

**From: 07/01/14    To: 07/01/15**    12:01 a.m. standard time at the address of the named insured as shown above. These declarations together with the applications, the commercial lines policy jacket, common policy conditions, coverage part declarations, coverage part coverage form(s) and forms and endorsements, if any, issued to form a part thereof, complete the above numbered policy. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

---

**Commercial   Policy   Declarations**

| Business   Description | *PLASTIC MFG* |
|---|---|

This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

| Coverage   Part(s) | Premium |
|---|---|
| COMMERCIAL  AUTOMOBILE  COVERAGE  PART | $26,655.00 |
| COMMERCIAL  PROPERTY  COVERAGE  PART | $25,229.00 |
| COMMERCIAL  CRIME  COVERAGE  PART | $820.00 |
| EMPLOYEE  BENEFITS  LIABILITY  COVERAGE  PART | $230.00 |
| COMMERCIAL  GENERAL  LIABILITY  COVERAGE  PART | $19,720.00 |
| COMMERCIAL  INLAND  MARINE  COVERAGE  PART | $575.00 |
| Certified Acts of Terrorism | $952.00 |

Your Estimated  Total Policy Premium Is    **$74,181.00**

Premium  does not include  service charges.

The Additional  Premium  From This Policy Change Is  $603.00

**THIS IS NOT A BILL.** This additional  premium  will appear  on your next billing statement, and remaining  payments  will be adjusted  accordingly.

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA          30722*

*(706) 226-0186*
*Agent No. 10-01314-00*

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**Named    Insured    and   Address**

**Policy  Type:** *Commercial Package*

**Reason  Issued:** *Policy Change -*
*Add Vehicle*
**Policy  Number:** *CPP 2083060-00*
**Change   Effective   Date:** *02/20/15*
**Issue  Date:** *03/04/15*
**ACCT.  NO:** *0000191650*

CYCLE-TEX INC
716 S THORNTON AVE
DALTON GA  30720

**From: 07/01/14      To: 07/01/15**      12:01 a.m. standard time at the address of the named insured as shown above. These declarations together with the application, common policy conditions, forms and endorsements, if any, complete the above numbered policy. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

| Commercial     Auto   Coverage     Part/Business     Auto   Coverage     Form   Declarations |
| --- |
| Named       Insured's   Legal   Entity   is:  *Corporation* |
| Item   2 - Schedule    of Coverages    and  Covered    Autos |

This policy provides  only those  coverages  where  a charge  is shown  in the premium  column below. Each of these coverages  will apply  only to those "autos" shown  as covered  "autos". "Autos" are shown  as covered  "autos" for a particular  coverage  by the entry  of one  or more  of the symbols  from the COVERED AUTOS Section  of the Business Auto  Coverage  Form next  to the name  of the coverage.

| Coverages | Covered Auto  Symbols | Limit<br>*The most we will pay for any one accident or loss.* | Premium |
| --- | --- | --- | --- |
| **Liability   Coverage** | 01 | | |
| Combined  Single  Limits | | $1,000,000 Per Accident | $ 19,346.00 |
| **Maximum     PIP  Benefits** | | | |
| **Maximum     Added    PIP  Benefits** | | | |
| **Medical    Payments** | 02 | $5,000 | 289.00 |
| **Uninsured    Motorists** | 02 | | |
| Combined  Single  Limits | | $1,000,000 Per Accident | 3,000.00 |
| **Underinsured     Motorists** | | | |
| **Physical    Damage     Insurance** | | Actual cash value  or cost of repair, whichever  is less, minus deductible  shown. | |
| Comprehensive | 07 | See Item 3 for deductible  for each covered  auto. No deductible  applies  to loss caused  by fire or lightning.  See Item 4 for hired  or borrowed  autos. | 722.00 |
| Collision | 07 | See Item 3 for deductible  for each covered  auto. See Item 4 for hired or borrowed  autos. | 3,003.00 |
| **Towing   and  Labor** | | | |
| **Municipal     Taxes** | | | |
| **Other   State  Specific   Charge** | | *Surcharge required by KRS 136.392* | |
| **Premium   for Endorsements** | | | 295.00 |

Additional   Premium   For This Policy Change:   $603.00 .   *Your  Estimated  Total  Auto  Premium  Is      **$ 26,655.00**

**THIS IS NOT A BILL.** The additional  premium  will appear  on your next        Premium  does  not include  service charges. invoice  and remaining  payments  adjusted  accordingly.        * This policy  may  be subject  to final audit.

CA 241 (12-2009)                                                                                                                    CPPCAR11

| Item 2 continued | | - Forms and Endorsements | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| IL0017 | 1198 | IL0021 | 0702 | IL0262 | 0907 | CA0001 | 1001 | CA0038 | 1202 |
| CA50 | 0507 | CA75 | 0511 | CA9903 | 0797 | CA83 | 0511 | CA3137 | 0109 |
| CA9944 | 1293 | CA60 | 0713 | CA87 | 1013 | SE01 | 0897 | CA9910 | 0902 |

**Item 3 - Schedule of Covered Autos You Own**

| Unit | State | Ter. | Year | Description | Vehicle Identification Number | Age | Cost | Class | Stated Amount | Change Date |
|---|---|---|---|---|---|---|---|---|---|---|
| 142 | GA | 015 | 08 | TRACTOR TRU | 1XKWD49X08J225874 | 007 | 100000 | 50499 | | 02/20/15 |

**Item 3 - Schedule of Covered Autos You Own - Premiums**

| Unit | Liab. | PD Ded. | Med Pay | UM | UMPD | UIM | Comp. Ded. | Comp. Prem. | Coll. Ded. | Coll. Prem. | PIP | APIP | Spec. Perils | Spec. Perils Ded. | Tow-ing | Other | Total Prem. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 142 | 1133 | | 10 | 157 | | | 1000 | 53 | 1000 | 327 | | | | | | | 1680 |

| Business Auto Optimum | $215 |
|---|---|

Item  4 - Schedule   of Hired  or Borrowed   Covered   Auto  Coverage   and  Premiums

Liability   Coverage    - Rating  Basis, Cost  of Hire

| State | Estimated Cost  of Hire | Rate  per $100 Cost  of Hire | Factor (If Liab.  Cov.  is Primary) | Premium |
|---|---|---|---|---|
| GA | IF ANY | 0.000 | | 111 |
| | | | Total  Premium: | $111 |

Cost of hire means  the total amount  you incur for the hire of "autos" you do not own (not including  "autos" you borrow  or rent from your partners  or employees  or their family members).  Cost of hire does not include  charges  for services  performed  by motor  carriers of property  or passengers.

Physical   Damage   Coverage

| Coverages | Limit  of Insurance *The most we will pay, deductible* | Estimated Annual  Cost of Hire | Rate  Per Each $100 Annual Cost  of Hire | Premium |
|---|---|---|---|---|
| Comprehensive | | | | |
| Specified Causes of Loss | Actual Cash Value  o r Cost  of Repairs | | | |
| Collision | | | | |
| | | Total  Premium: | | |

Physical   damage  insurance  for covered  autos you hire or borrow  is excess unless  indicated  by (X).

(    ) If this box is checked, physical  damage  insurance  applies  on a direct primary  basis and for purposes  of the condition entitled  other insurance,  any covered  auto you hire or borrow  is deemed  to be a covered  auto you own.

Item  5 - Schedule   for Employers   Non-Ownership    Liability

| Named    Insured's  Business | Rating   Basis | Number | Premium |
|---|---|---|---|
| Other   than  a Social   Service   Agency | Number  of Employees | 26-100 | 168 |
| | Number  of Partners | | |
| Social   Service   Agency | Number  of Employees | | |
| | Number  of Partners | | |
| | | | $168 |

**Policy No.**  *CPP*  *2083060*

Except for towing, all physical damage loss is payable to you and the loss payee named as interests may appear at the time of loss.

| Item 6 - Other Interests |
|---|

```
Unit #000 Other Interest          Unit #142 Loss Payee
PENSKE TRUCK LEASING CO LP        BB&T
PO BOX 832658                     PO BOX 200047
ATLANTA GA            30353       KENNESAW GA          30156
```

**Named Insured:** *CYCLE-TEX INC*
**Policy No.** *CPP 2083060*

### MANUFACTURERS' OPTIMUM PROGRAM SCHEDULE

**Policy Number:**   CPP 2083060-00

Amendment Of Policy Effective: Feb. 20, 2015

**Named Insured:**   CYCLE-TEX INC

These Coverages Apply To All Locations Covered On The Policy.


The Following Coverages Apply Only When Designated By an "X" In
The Box(es) Shown Below:

```
                                                        Premium
[X] Manufacturers' Optimum Endorsement - IL 19            $1,936


[ ] Product Recall Expense Coverage Form - CP 13

    Product Recall Limit:             Any One Covered Recall
                                      Aggregate For The Policy Period

    Product Recall Participation:      % Of All Covered Recall Expenses


Total Manufacturers' Optimum Program Premium              $1,936
```

**COMMERCIAL PACKAGE POLICY FORMS INVENTORY**

**Policy Number:**   CPP 2083060-00

Amendment Of Policy Effective: Feb. 20, 2015

**Named Insured:**   CYCLE-TEX INC

POLICY LEVEL FORMS AND ENDORSEMENTS

```
CA0109    (10/04)   GA Changes
CA38      (12/05)   GA Amendment of Policy
IL0017    (11/98)   Common Policy Conditions
IL43      (05/11)   Common Policy Conditions Changes
IL0021    (07/02)   Nuclear Energy Liability Exclusion
IL0262    (09/07)   Ga Changes Cancellation & Nonrenewal
CA0051    (12/04)   Changes in Coverage Forms - Mobile Eq...
IL 19     (06/11)   Manufacturers' Optimum Endorsement
IM 72 03  (10/04)   Business Computer Coverage
CR 00 21  (03/00)   Commercial Crime Coverage Form
```

COMMERCIAL AUTO FORMS AND ENDORSEMENTS

```
CA0001    (10/01)   Business Auto Coverage Form
CA0038    (12/02)   War Exclusion
CA50      (05/07)   Asbestos Exclusion
CA75      (05/11)   Policy Changes - Who Is An Insured
CA9903    (07/97)   Auto Medical Payments
CA83      (05/11)   Auto Medical Payments Coverage Changes
CA3137    (01/09)   GA UM Added On To At-Fault Liability Lim
CA9944    (12/93) * Loss Payable Clause
CA60      (07/13)   Business Auto Optimum
CA87      (10/13)   Blanket Additional Insured
SE01      (08/97)   Special Endorsement
CA9910    (09/02)   Drive Other Car Coverage
```

COMMERCIAL PROPERTY COVERAGE PART FORMS AND ENDORSEMENTS

```
IL 09 35  (07/01)   Exclusion Of Certain Computer-Related Losses
CP 00 90  (07/88)   Commercial Property Conditions
CP 10 32  (08/08)   Water Exclusion Endorsement
CP 00 10  (04/02)   Building And Personal Property Coverage Form
CP 10 30  (04/02)   Causes Of Loss - Special Form
IL 09 52  (01/08)   Cap On Losses From Certified Acts Of Terrorism
CP 00 30  (04/02)   Business Income (And Extra Expense) Coverage Form
CP 11     (12/09)   Equipment Breakdown Coverage
IL 09 99  (01/07)   Disclosure Of Premium
IL 09 95  (01/07)   Conditional Exclusion of Terrorism
```

* INDICATES ADDED FORM

## COMMERCIAL PACKAGE POLICY FORMS INVENTORY

**Policy Number:**    CPP  2083060-00

Amendment   Of Policy Effective:   Feb. 20, 2015

**Named   Insured:**   CYCLE-TEX INC

### COMMERCIAL  CRIME  COVERAGE  PART  FORMS  AND  ENDORSEMENTS

```
CR 01      (08/01)   Crime Amendment Endorsement
CR 01 32  (03/00)   Georgia Changes - Concealment, Fraud
CR 07 59  (01/08)   Amend-Delete Provisions Regarding Certain Acts of Terror
```

### COMMERCIAL  GENERAL  LIABILITY  COVERAGE  PART  FORMS  AND  ENDORSEMENTS

```
CG 21 67 (04/02)   Fungi or Bacteria Exclusion
CG 21 49 (09/99)   Total Pollution Exclusion
CG 00 62 (12/02)   War Liability Exclusion
CG 21 47 (07/98)   Employment-Related Practices Exclusion
CG 00 01 (10/01)   Commercial General Liability Coverage Form
CG 28    (08/09)   Recording & Distribution of Material or Info Exclusion
IL 15    (06/97)   Lead Exclusion
CG 44    (05/11)   Medical Payment Changes
CG 09 GA (01/05)   Asbestos, Silica OR Mixed Dust Exclusion
CG 21 60 (04/98)   Exclusion - Year 2000 Computer-Related Problems
CG 21 70 (01/08)   Cap on losses from Certified Acts of Terrorism.
CG 21 87 (01/07)   Conditional Exclusion of Terrorism
CG 25 04 (03/97)   Designated Location(s) General Aggregate
EB 10 1  (04/98)   Employee Benefits Liability
EB 01    (10/98)   Exclusion - Year 2000 Computer-Related Problems
EB 04    (05/11)   Employee Benefits Liability Coverage form Changes
```

### COMMERCIAL  INLAND  MARINE  COVERAGE  PART  FORMS  AND  ENDORSEMENTS

```
CL 16 30 (06/06)   Conditional Terrorism Exclusion
IM 72 55 (01/00)   Transportation Dec
IM 72 50 (01/00)   Transportation Coverage
IM 20 21 (04/04)   Amendatory Endorsement Georgia
```

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** We will pay, as interest may appear, you and the loss payee named in the policy for "loss" to a covered "auto".

**B.** The insurance covers the interest of the loss payee unless the "loss" results from conversion, secretion or embezzlement on your part.

**C.** We may cancel the policy as allowed by the CANCELLATION Common Policy Condition.

Cancellation ends this agreement as to the loss payee's interest. If we cancel the policy we will mail you and the loss payee the same advance notice.

**D.** If we make any payments to the loss payee, we will obtain his or her rights against any other party.

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA          30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named   Insured   and   Address**

| Policy   Type: *Commercial Package* |
|---|

**Policy   Number:**   *CPP 2083060-00*
**Issue   Date:**   *04/02/15*
**ACCT.   NO:**   *0000191650*
**Change   Effective   Date:**   *03/23/15*
**From: 07/01/14**
**To: 07/01/15**
12:01 a.m. standard time.

**CYCLE-TEX INC**
**716 S THORNTON AVE**
**DALTON GA   30720**

## POLICY PREMIUM RECAP STATEMENT

| Line  of Business/Coverages | Pro-Rated Premium   Totals | Commission |
|---|---:|---|
| Commercial  Automobile  Coverage  Part | $25,578.00 | 15% |
| Commercial  Property  Coverage  Part | $22,596.00 | 15% |
| Equipment  Breakdown  Coverage | $2,633.00 | 15% |
| Commercial  Crime  Coverage  Part | $820.00 | 15% |
| Employee  Benefits  Liability  Coverage  Part | $230.00 | 15% |
| Commercial  General  Liability  Coverage  Part | $19,720.00 | 15% |
| Commercial  Inland  Marine  Coverage  Part | $575.00 | 15% |
| Certified  Acts of  Terrorism  -  Property | $288.00 | 15% |
| Certified  Acts of  Terrorism  -  General  Liability | $661.00 | 15% |
| Certified  Acts of  Terrorism  -  Inland  Marine | $3.00 | 15% |

Your Pro-Rated  Premium  Is         | **$73,104.00** |

**THIS IS NOT A BILL.** Any outstanding   balance due will be billed at a later date.

Grange   Mutual   Casualty   Company
P.O.  Box  1218
Columbus,    Ohio   43216-1218

# COMMERCIAL POLICY CHANGE
# ENDORSEMENT IL 16

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured/Mailing Address: | Agency Name/Address/Code Number: |
|---|---|
| CYCLE-TEX INC<br>716 S THORNTON AVE<br>DALTON GA  30720 | ADVANCED INSURANCE STRATEGIES<br>300 W EMERY STREET SUITE 205<br>PO BOX 709<br>DALTON, GA                30722<br>10-01314-00 |

| Policy Number:    Mod: | Effective Date of Change: | | End No. |
|---|---|---|---|
| CPP 2083060-00 | 03/23/15 | at 12:01 AM Standard Time | 08 |

The following item(s):

- [ ] Insured's Name
- [ ] Insured's Mailing Address
- [ ] Insured's Legal Entity/Business of Insured
- [ ] Premium Determination
- [X] Additional Interested Parties
- [ ] Coverage Forms and Endorsements

- [ ] Limits/Exposures
- [ ] Deductibles
- [ ] Covered Property/Location Description
- [ ] Classification/Class Codes
- [ ] Rates
- [ ] Vehicle(s)

Is (are) changed to read [See Additional Page(s)]:

```
AMENDING  CA  9944  LOSS  PAYABLE  CLAUSE  IN  FAVOR  OF:
BB&T,  PO  BOX  1626,  WILSON  NC  27894
FOR  VEHICLE:  2008  KW  TRACTOR  VIN  1XKWD49X08J225874
```

_____
Authorized Representative

Issue Date:  04/02/15
ACCT. NO:0000191650

Annual Premium Change:  _____ 0.00
Pro Rata Premium Change:  _____ 0.00

Premium does not include service charges.

Applicable to the State of Kentucky
Includes Kentucky Municipal Tax:  _____
Includes Kentucky Surcharges Required by KRS 136.392:  _____

AK967 (12-2009)

AGENTCOPY

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA         30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named    Insured   and   Address**

**Policy   Type:**   *Commercial Package*

**Reason   Issued:**   *Policy Change -*
*Change Loss Payee*
**Policy   Number:**   *CPP  2083060-00*
**Change   Effective   Date:**   *03/23/15*
**Issue  Date:**   *04/02/15*
**ACCT.  NO:**  *0000191650*

CYCLE-TEX INC
716 S THORNTON AVE
DALTON GA  30720

---

**From: 07/01/14    To: 07/01/15**    12:01 a.m. standard time at the address of the named insured as shown above. These declarations together with the applications, the commercial lines policy jacket, common policy conditions, coverage part declarations, coverage part coverage form(s) and forms and endorsements, if any, issued to form a part thereof, complete the above numbered policy. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

---

**Commercial    Policy   Declarations**

| Business   Description | *PLASTIC  MFG* |
|---|---|

This  policy  consists  of  the  following  coverage  parts  for  which  a  premium  is  indicated.  This  premium  may  be  subject  to adjustment.

| Coverage    Part(s) | Premium |
|---|---|
| COMMERCIAL  AUTOMOBILE  COVERAGE  PART | $26,655.00 |
| COMMERCIAL  PROPERTY  COVERAGE  PART | $25,229.00 |
| COMMERCIAL  CRIME  COVERAGE  PART | $820.00 |
| EMPLOYEE  BENEFITS  LIABILITY  COVERAGE  PART | $230.00 |
| COMMERCIAL  GENERAL  LIABILITY  COVERAGE  PART | $19,720.00 |
| COMMERCIAL  INLAND  MARINE  COVERAGE  PART | $575.00 |
| Certified  Acts  of  Terrorism | $952.00 |

Your  Estimated  Total  Policy  Premium  Is   **$74,181.00**

Premium  does  not  include  service  charges.

The  Premium  Change  From  This  Policy  Change  Is    $0.00

**THIS IS NOT A BILL.**

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA          30722*

*(706) 226-0186*
*Agent No. 10-01314-00*

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**Named    Insured    and    Address**

**Policy    Type:** *Commercial Package*

**Reason    Issued:** *Policy Change -*
*Change Loss Payee*
**Policy    Number:** *CPP  2083060-00*
**Change    Effective    Date:** *03/23/15*
**Issue    Date:** *04/02/15*
**ACCT.    NO:** *0000191650*

CYCLE-TEX INC
716 S THORNTON AVE
DALTON GA   30720

**From: 07/01/14     To: 07/01/15**     12:01 a.m. standard time at the address of the named insured as shown above.
These declarations together with the application, common policy conditions, forms and endorsements, if any,
complete the above numbered policy. In return for the payment of the premium, and subject to all the terms of this
policy, we agree with you to provide the insurance as stated in this policy.

**Commercial    Auto  Coverage    Part/Business    Auto  Coverage    Form  Declarations**

| Named    Insured's    Legal    Entity    is: *Corporation* |
|---|

| Item  2 - Schedule    of  Coverages    and  Covered    Autos |
|---|

This policy provides  only those  coverages  where a charge is shown  in the premium  column below. Each of these
coverages  will apply  only to those  "autos"  shown  as covered  "autos".  "Autos"  are shown  as covered  "autos"  for a
particular  coverage  by the entry of one or more of the symbols  from the COVERED AUTOS Section of the Business
Auto  Coverage  Form next to the name of the coverage.

| Coverages | Covered Auto  Symbols | Limit<br>*The most we will pay for any one accident or loss.* | Premium |
|---|---|---|---|
| **Liability    Coverage** | 01 | | |
|   Combined  Single Limits | | $1,000,000 Per Accident | $  19,346.00 |
| | | | |
| **Maximum     PIP Benefits** | | | |
| | | | |
| **Maximum    Added    PIP Benefits** | | | |
| **Medical    Payments** | 02 | $5,000 | 289.00 |
| **Uninsured    Motorists** | 02 | | |
|   Combined  Single Limits | | $1,000,000 Per Accident | 3,000.00 |
| | | | |
| **Underinsured    Motorists** | | | |
| | | | |
| **Physical    Damage    Insurance** | | Actual cash value  or cost of repair, | |
|   Comprehensive | 07 | whichever  is less, minus deductible  shown.<br>See Item 3 for deductible  for each covered  auto.<br>No deductible  applies  to loss caused  by fire or<br>lightning.  See Item 4 for hired or borrowed  autos. | 722.00 |
| | | | |
|   Collision | 07 | See Item 3 for deductible  for each covered  auto.<br>See Item 4 for hired or borrowed  autos. | 3,003.00 |
| **Towing   and  Labor** | | | |
| | | | |
| **Municipal    Taxes** | | | |
| **Other  State  Specific    Charge** | | *Surcharge required by KRS 136.392* | |
| **Premium    for Endorsements** | | | 295.00 |

Premium  Change For This Policy Change:       $0.00 .       **\*Your Estimated  Total Auto Premium  Is**   **$ 26,655.00**

**THIS IS NOT A BILL.**                                     Premium  does not include  service charges.

\*This policy  may be subject to final audit.

CPPCAR11

| Item 2 continued - Forms and Endorsements |
|---|

| | | | | | |
|---|---|---|---|---|---|
| IL0017 1198 | IL0021 0702 | IL0262 0907 | CA0001 1001 | CA0038 1202 | |
| CA50 0507 | CA75 0511 | CA9903 0797 | CA83 0511 | CA3137 0109 | |
| CA9944 1293 | CA60 0713 | CA87 1013 | SE01 0897 | CA9910 0902 | |

| Item 3 - Schedule of Covered Autos You Own |
|---|

| Unit | State | Ter. | Year | Description | Vehicle Identification Number | Age | Cost | Class | Stated Amount | Change Date |
|---|---|---|---|---|---|---|---|---|---|---|
| 142 | GA | 015 | 08 KW | TRACTOR TRU | 1XKWD49X08J225874 | 007 | 100000 | 50499 | | 03/23/15 |

| Item 3 - Schedule of Covered Autos You Own - Premiums |
|---|

| Unit | Liab. | PD Ded. | Med Pay | UM | UMPD | UIM | Comp. Ded. | Comp. Prem. | Coll. Ded. | Coll. Prem. | PIP | APIP | Spec. Perils | Spec. Perils Ded. | Tow-ing | Other | Total Prem. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 142 | 1133 | | 10 | 157 | | | 1000 | 53 | 1000 | 327 | | | | | | | 1680 |

| Business Auto Optimum | $215 |
|---|---|

Item  4 - Schedule   of Hired  or Borrowed   Covered   Auto  Coverage   and  Premiums

Liability   Coverage    - Rating  Basis, Cost  of Hire

| State | Estimated Cost  of Hire | Rate  per $100 Cost  of Hire | Factor (If Liab.  Cov.  is Primary) | Premium |
|---|---|---|---|---|
| GA | IF ANY | 0.000 | | 111 |
| | | | | |
| | | | Total  Premium: | $111 |

Cost of hire means  the total amount  you incur for the hire of "autos" you do not own (not including  "autos" you borrow  or rent from your partners  or employees  or their family members).  Cost of hire does not include  charges  for services  performed  by motor carriers of property  or passengers.

Physical   Damage   Coverage

| Coverages | Limit  of Insurance *The most we will pay, deductible* | | Estimated Annual  Cost of Hire | Rate  Per  Each $100  Annual Cost  of Hire | Premium |
|---|---|---|---|---|---|
| Comprehensive | | | | | |
| Specified Causes of Loss | **Actual Cash Value  o r Cost  of Repairs** } | | | | |
| Collision | | | | | |
| | | | Total  Premium: | | |

Physical  damage  insurance  for covered  autos you hire or borrow  is excess unless  indicated  by (X).

(    ) If this box is checked, physical  damage  insurance  applies  on a direct primary  basis and for purposes  of the condition entitled  other insurance,  any covered  auto you hire or borrow  is deemed  to be a covered  auto you own.

Item  5 - Schedule   for Employers   Non-Ownership    Liability

| Named   Insured's   Business | Rating   Basis | Number | Premium |
|---|---|---|---|
| Other  than  a Social  Service  Agency | Number  of Employees | 26-100 | 168 |
| | Number  of Partners | | |
| Social  Service  Agency | Number  of Employees | | |
| | Number  of Partners | | |
| | | | $168 |

**Policy No.** *CP P  2083060*

CA 241 (12-95)

CPPCA3B

**Grange   Mutual   Casualty   Company**

Except for towing, all physical damage loss is payable to you and the loss payee named as interests may appear at the time of loss.

| Item  6 - Other  Interests |
| --- |

Unit #000 Other Interest
PENSKE TRUCK LEASING CO LP
PO BOX 832658
ATLANTA GA                    30353

Unit #142 Loss Payee
BB&T
PO BOX 1626
WILSON NC                     27894

## MANUFACTURERS' OPTIMUM PROGRAM SCHEDULE

**Policy Number:**    CPP 2083060-00

**Named Insured:**    CYCLE-TEX INC

These Coverages Apply To All Locations Covered On The Policy.

The Following Coverages Apply Only When Designated By an "X" In
The Box(es) Shown Below:

```
                                                    Premium
[X] Manufacturers' Optimum Endorsement - IL 19        $1,936


[ ] Product Recall Expense Coverage Form - CP 13

    Product Recall Limit:         Any One Covered Recall
                                  Aggregate For The Policy Period

    Product Recall Participation:    % Of All Covered Recall Expenses


Total Manufacturers' Optimum Program Premium          $1,936
```

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA        30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named   Insured   and   Address**

| **Policy   Type:** *Commercial Package* |
| --- |

**Policy   Number:**   *CPP 2083060-00*
**Issue   Date:**   *05/01/15*
**ACCT.   NO:** *0000191650*
**Change   Effective   Date:**   *04/20/15*
**From: 07/01/14**
**To: 07/01/15**
12:01 a.m. standard time.

**CYCLE-TEX INC**
**702 S THORNTON AVE STE 201**
**DALTON GA   30720**

## POLICY PREMIUM RECAP STATEMENT

| Line of Business/Coverages | Pro-Rated Premium Totals | Commission |
| --- | ---: | --- |
| Commercial Automobile Coverage Part | $25,578.00 | 15% |
| Commercial Property Coverage Part | $22,596.00 | 15% |
| Equipment Breakdown Coverage | $2,633.00 | 15% |
| Commercial Crime Coverage Part | $820.00 | 15% |
| Employee Benefits Liability Coverage Part | $230.00 | 15% |
| Commercial General Liability Coverage Part | $19,720.00 | 15% |
| Commercial Inland Marine Coverage Part | $575.00 | 15% |
| Certified Acts of Terrorism - Property | $288.00 | 15% |
| Certified Acts of Terrorism - General Liability | $661.00 | 15% |
| Certified Acts of Terrorism - Inland Marine | $3.00 | 15% |

Your Pro-Rated   Premium   Is     **$73,104.00**

**THIS IS NOT A BILL.** Any outstanding   balance due will be billed at a later date.

Grange    Mutual    Casualty    Company
P.O.  Box  1218
Columbus,    Ohio    43216-1218

# COMMERCIAL POLICY CHANGE
## ENDORSEMENT IL 16

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured/Mailing Address: | Agency Name/Address/Code Number: |
|---|---|
| CYCLE-TEX INC<br>702 S THORNTON AVE STE 201<br>DALTON GA  30720 | ADVANCED INSURANCE STRATEGIES<br>300 W EMERY STREET SUITE 205<br>PO BOX 709<br>DALTON, GA          30722<br>10-01314-00 |

| Policy Number:    Mod: | Effective Date of Change: | | End No. |
|---|---|---|---|
| CPP 2083060-00 | 04/20/15 | at 12:01 AM Standard Time | 09 |

The following item(s):

- [ ] Insured's Name
- [X] Insured's Mailing Address
- [ ] Insured's Legal Entity/Business of Insured
- [ ] Premium Determination
- [ ] Additional Interested Parties
- [X] Coverage Forms and Endorsements

- [ ] Limits/Exposures
- [ ] Deductibles
- [ ] Covered Property/Location Description
- [ ] Classification/Class Codes
- [ ] Rates
- [ ] Vehicle(s)

Is (are) changed to read [See Additional Page(s)]:

APPLICABLE TO COMMERCIAL POLICY COVERAGE FORM,

AMENDING MAILING ADDRESS TO:
702 S THORNTON AVENUE STE 201
DALTON GA 30720

_____
Authorized Representative

Annual Premium Change: _____ 0.00
Issue Date:  05/01/15                    Pro Rata Premium Change: _____ 0.00
ACCT. NO:0000191650
                                         Premium does not include service charges.
Applicable to the State of Kentucky
Includes Kentucky Municipal Tax: _____
Includes Kentucky Surcharges Required by KRS 136.392: _____

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA      30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

**Policy Type:** *Commercial Package*

**Reason Issued:** *Policy Change -*
*Change Coverage*
**Policy Number:** *CPP 2083060-00*
**Change Effective Date:** *04/20/15*
**Issue Date:** *05/01/15*
**ACCT. NO:** *0000191650*

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named    Insured    and    Address**

CYCLE-TEX INC
702 S THORNTON AVE STE 201
DALTON GA  30720

---

**From: 07/01/14    To: 07/01/15**    12:01 a.m. standard time at the address of the named insured as shown above. These declarations together with the applications, the commercial lines policy jacket, common policy conditions, coverage part declarations, coverage part coverage form(s) and forms and endorsements, if any, issued to form a part thereof, complete the above numbered policy. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

---

**Commercial    Policy    Declarations**

| Business Description | *PLASTIC MFG* |
|---|---|

This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

| Coverage Part(s) | Premium |
|---|---|
| COMMERCIAL  AUTOMOBILE  COVERAGE PART | $26,655.00 |
| COMMERCIAL  PROPERTY  COVERAGE PART | $25,229.00 |
| COMMERCIAL  CRIME  COVERAGE  PART | $820.00 |
| EMPLOYEE  BENEFITS  LIABILITY  COVERAGE PART | $230.00 |
| COMMERCIAL  GENERAL  LIABILITY  COVERAGE PART | $19,720.00 |
| COMMERCIAL  INLAND  MARINE  COVERAGE PART | $575.00 |
| Certified  Acts  of  Terrorism | $952.00 |

Your Estimated  Total Policy Premium Is   **$74,181.00**

Premium  does not include  service charges.

The Premium  Change From This Policy Change Is    $0.00

**THIS IS NOT A BILL.**

## MANUFACTURERS' OPTIMUM PROGRAM SCHEDULE

**Policy Number:**    CPP 2083060-00

Amendment Of Policy Effective: Apr. 20, 2015

**Named Insured:**    CYCLE-TEX INC

These Coverages Apply To All Locations Covered On The Policy.

The Following Coverages Apply Only When Designated By an "X" In
The Box(es) Shown Below:

                                                              Premium
[X] Manufacturers' Optimum Endorsement - IL 19                 $1,936


[ ] Product Recall Expense Coverage Form - CP 13

    Product Recall Limit:              Any One Covered Recall
                                       Aggregate For The Policy Period

    Product Recall Participation:        % Of All Covered Recall Expenses


Total Manufacturers' Optimum Program Premium                  $1,936

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

### SCHEDULE

**Terrorism Premium (Certified Acts) $**
**This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(s):**

**Additional information, if any, concerning the terrorism premium:**

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

' ISO Properties, Inc., 2007

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

**Terrorism Premium (Certified Acts) $**
**This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(s):**


**Additional information, if any, concerning the terrorism premium:**


Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

POLICY NUMBER:

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

**Terrorism Premium (Certified Acts) $**
**This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(s):**



**Additional information, if any, concerning the terrorism premium:**

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA        30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named   Insured   and   Address**

| **Policy   Type:** *Commercial Package* |
| --- |

**Policy   Number:** *CPP 2083060-00*
**Issue   Date:** *06/16/15*
**ACCT.   NO:** *0000191650*
**Change   Effective   Date:** *06/03/15*
**From:07/01/14**
**To: 07/01/15**
12:01 a.m. standard time.

**CYCLE-TEX INC**
**702 S THORNTON AVE STE 201**
**DALTON GA   30720**

---

## POLICY PREMIUM RECAP STATEMENT

| Line  of Business/Coverages | Pro-Rated Premium   Totals | Commission |
| --- | --- | --- |
| Commercial  Automobile  Coverage  Part | $25,517.00 | 15% |
| Commercial  Property  Coverage  Part | $22,596.00 | 15% |
| Equipment  Breakdown  Coverage | $2,633.00 | 15% |
| Commercial  Crime  Coverage  Part | $820.00 | 15% |
| Employee  Benefits  Liability  Coverage  Part | $230.00 | 15% |
| Commercial  General  Liability  Coverage  Part | $19,720.00 | 15% |
| Commercial  Inland  Marine  Coverage  Part | $575.00 | 15% |
| Certified  Acts  of  Terrorism  -  Property | $288.00 | 15% |
| Certified  Acts  of  Terrorism  -  General  Liability | $661.00 | 15% |
| Certified  Acts  of  Terrorism  -  Inland  Marine | $3.00 | 15% |

Your Pro-Rated  Premium  Is     | **$73,043.00** |

**THIS IS NOT A BILL.** Any outstanding   balance due will be billed at a later date.

Grange  Mutual  Casualty  Company
P.O.  Box  1218
Columbus,  Ohio  43216-1218

# COMMERCIAL POLICY CHANGE
## ENDORSEMENT  IL 16

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured/Mailing Address: | Agency Name/Address/Code Number: |
|---|---|
| CYCLE-TEX INC<br>702 S THORNTON AVE STE 201<br>DALTON GA  30720 | ADVANCED INSURANCE STRATEGIES<br>300 W EMERY STREET SUITE 205<br>PO BOX 709<br>DALTON, GA            30722<br>10-01314-00 |

| Policy Number:    Mod: | Effective Date of Change: | End No. |
|---|---|---|
| CPP2083060-00 | 06/03/15            at 12:01 AM Standard Time | 10 |

The following item(s):

[ ] Insured's Name

[ ] Insured's Mailing Address

[ ] Insured's Legal Entity/Business of Insured

[X] Premium Determination

[ ] Additional Interested Parties

[X] Coverage Forms and Endorsements

[ ] Limits/Exposures

[ ] Deductibles

[ ] Covered Property/Location Description

[ ] Classification/Class Codes

[ ] Rates

[X] Vehicle(s)

Is (are) changed to read [See Additional Page(s)]:

APPLICABLE TO COMMERCIAL AUTO COVERAGE FORM,

DELETING 2010 HONDA ACCORD CRO, VIN 1395

DELETING DRIVER RAY HAMPTON

_____
Authorized Representative

Issue Date:  06/16/15
ACCT. NO:0000191650

Annual Premium Change: _____780.00 RETURN
Pro Rata Premium Change: _____61.00 RETURN
Premium does not include service charges.

Applicable to the State of Kentucky
Includes Kentucky Municipal Tax: _____
Includes Kentucky Surcharges Required by KRS 136.392: _____

**AGENTCOPY**

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA        30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

Grange  Mutual  Casualty  Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named   Insured   and   Address**

**Policy  Type:**  *Commercial Package*

**Reason   Issued:**  *Policy Change -*
*Change Insured Address*
**Policy   Number:**  *CPP  2083060-00*
**Change   Effective   Date:**  *06/03/15*
**Issue  Date:**  *06/16/15*
**ACCT.  NO:**  *0000191650*

**CYCLE-TEX INC**
**702 S THORNTON AVE STE 201**
**DALTON GA  30720**

**From: 07/01/14    To: 07/01/15**    12:01 a.m. standard time at the address of the named insured as shown above. These declarations together with the applications, the commercial lines policy jacket, common policy conditions, coverage part declarations, coverage part coverage form(s) and forms and endorsements, if any, issued to form a part thereof, complete the above numbered policy. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

**Commercial    Policy   Declarations**

| Business  Description | *PLASTIC  MFG* |
|---|---|

This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

| Coverage    Part(s) | Premium |
|---|---|
| COMMERCIAL  AUTOMOBILE  COVERAGE  PART | $25,875.00 |
| COMMERCIAL  PROPERTY  COVERAGE  PART | $25,229.00 |
| COMMERCIAL  CRIME  COVERAGE  PART | $820.00 |
| EMPLOYEE  BENEFITS  LIABILITY  COVERAGE  PART | $230.00 |
| COMMERCIAL  GENERAL  LIABILITY  COVERAGE  PART | $19,720.00 |
| COMMERCIAL  INLAND  MARINE  COVERAGE  PART | $575.00 |
| Certified  Acts  of  Terrorism | $952.00 |

Your Estimated  Total Policy Premium  Is    **$73,401.00**

Premium  does  not include  service charges.

The Premium  Credit  From  This Policy  Change  Is    $61.00CR

**THIS IS NOT A BILL.** This premium  credit  will appear  on your  next  billing  statement, and remaining  payments  will be adjusted  accordingly.

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA          30722*

*(706) 226-0186*
*Agent No. 10-01314-00*

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

Named   Insured   and   Address

**Policy  Type:** *Commercial Package*

**Reason  Issued:** *Policy Change -*
*Change Insured Address*
**Policy  Number:** *CPP 2083060-00*
**Change  Effective  Date:** *06/03/15*
**Issue  Date:** *06/16/15*
**ACCT.  NO:** *0000191650*

**CYCLE-TEX INC**
**702 S THORNTON AVE STE 201**
**DALTON GA  30720**

**From: 07/01/14     To: 07/01/15**     12:01 a.m. standard time at the address of the named insured as shown above.
These declarations together with the application, common policy conditions, forms and endorsements, if any,
complete the above numbered policy. In return for the payment of the premium, and subject to all the terms of this
policy, we agree with you to provide the insurance as stated in this policy.

| Commercial   Auto   Coverage   Part/Business   Auto   Coverage   Form Declarations |
|---|

| Named   Insured's   Legal   Entity   is: *Corporation* |
|---|

| Item  2 - Schedule   of Coverages   and  Covered   Autos |
|---|

This policy provides only those coverages where a charge is shown in the premium column below. Each of these
coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a
particular coverage by the entry of one or more of the symbols from the COVERED AUTOS Section of the Business
Auto Coverage Form next to the name of the coverage.

| Coverages | Covered Auto  Symbols | Limit<br>*The most we will pay for any one accident or loss.* | Premium |
|---|---|---|---|
| **Liability   Coverage**<br>  Combined  Single Limits | 01 | $1,000,000 Per Accident | $ 18,990.00 |
| **Maximum     PIP Benefits** | | | |
| **Maximum     Added   PIP Benefits** | | | |
| **Medical   Payments** | 02 | $5,000 | 281.00 |
| **Uninsured   Motorists**<br>  Combined  Single Limits | 02 | $1,000,000 Per Accident | 2,785.00 |
| **Underinsured   Motorists** | | | |
| **Physical   Damage   Insurance**<br>  Comprehensive | 07 | Actual cash value  or cost of repair,<br>whichever  is less, minus deductible  shown.<br>See Item 3 for deductible  for each covered auto.<br>No deductible  applies  to loss caused by fire or<br>lightning. See Item 4 for hired or borrowed  autos. | 660.00 |
|   Collision | 07 | See Item 3 for deductible  for each covered auto.<br>See Item 4 for hired or borrowed  autos. | 2,864.00 |
| **Towing  and Labor** | | | |
| **Municipal   Taxes** | | | |
| **Other  State  Specific   Charge** | | *Surcharge required by KRS 136.392* | |
| **Premium   for Endorsements** | | | 295.00 |

Premium  Credit For This Policy Change:     $61.00CR.     *Your Estimated  Total Auto Premium  Is     **$ 25,875.00**

**THIS IS NOT A BILL.**The premium  credit will appear  on your next          Premium  does not include service charges.
invoice and remaining  payments  adjusted accordingly.      *This policy may  be subject to final audit.

CA 241 (12-2009)                                                                                                          CPPCAR11

| Item 2 continued | | - Forms and Endorsements | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| IL0017 | 1198 | IL0021 | 0702 | IL0262 | 0907 | CA0001 | 1001 | CA0038 | 1202 |
| CA50 | 0507 | CA75 | 0511 | CA9903 | 0797 | CA83 | 0511 | CA3137 | 0109 |
| CA9944 | 1293 | CA60 | 0713 | CA87 | 1013 | SE01 | 0897 | CA9910 | 0902 |

**Item 3 - Schedule of Covered Autos You Own**

| Unit | State | Ter. | Year | Description | Vehicle Identification Number | Age | Cost | Class | Stated Amount | Change Date |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

**Item 3 - Schedule of Covered Autos You Own - Premiums**

| Unit | Liab. | PD Ded. | Med Pay | UM | UMPD | UIM | Comp. Ded. | Comp. Prem. | Coll. Ded. | Coll. Prem. | PIP | APIP | Spec. Perils | Spec. Perils Ded. | Tow-ing | Other | Total Prem. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | |

| Business Auto Optimum | $215 |
|---|---|

| Item   4 - Schedule   of Hired   or Borrowed   Covered   Auto   Coverage   and   Premiums |
|---|

**Liability   Coverage   - Rating   Basis, Cost of Hire**

| State | Estimated Cost of Hire | Rate per $100 Cost of Hire | Factor (If Liab. Cov. is Primary) | Premium |
|---|---|---|---|---|
| GA | IF ANY | 0.000 | | 111 |
| | | | Total   Premium: | $111 |

Cost of hire means   the total amount   you incur   for the hire of "autos" you do not own (not including   "autos" you borrow   or rent   from your partners   or employees   or their family members).   Cost of hire does not include   charges for services   performed   by motor carriers of property   or passengers.

**Physical   Damage   Coverage**

| Coverages | Limit of Insurance *The most we will pay, deductible* | Estimated Annual Cost of Hire | Rate Per Each $100 Annual Cost of Hire | Premium |
|---|---|---|---|---|
| Comprehensive | | | | |
| Specified Causes of Loss | Actual Cash Value  or Cost of Repairs | | | |
| Collision | | | | |
| | | Total   Premium: | | |

Physical   damage   insurance   for covered autos   you hire   or borrow   is excess   unless   indicated   by (X).

(   ) If this box is checked,   physical   damage   insurance   applies   on a direct primary   basis   and for purposes   of the condition entitled   other insurance,   any covered   auto you hire   or borrow   is deemed   to be a covered   auto you own.

| Item   5 - Schedule   for Employers   Non-Ownership   Liability |
|---|

| Named   Insured's   Business | Rating   Basis | Number | Premium |
|---|---|---|---|
| Other   than   a Social   Service   Agency | Number   of Employees | 26-100 | 168 |
| | Number   of Partners | | |
| Social   Service   Agency | Number   of Employees | | |
| | Number   of Partners | | |
| | | | $168 |

**Policy No.** *CPP   2083060*

CA 241 (12-95)
CPPCA3B

Except for towing, all physical damage loss is payable to you and the loss payee named as interests may appear at the time of loss.

| Item  6 - Other  Interests |
|---|

```
Unit #000 Other Interest     Unit #142 Loss Payee
PENSKE TRUCK LEASING CO LP    BB&T
PO BOX 832658                 PO BOX 1626
ATLANTA GA          30353    WILSON NC          27894
```

**Named   Insured:**  *CYCLE-TEX INC*
**Policy  No.**  *CPP  2083060*

### MANUFACTURERS' OPTIMUM PROGRAM SCHEDULE

**Policy Number:**     CPP  2083060-00

**Named    Insured:**   CYCLE-TEX INC

These Coverages Apply To All Locations Covered On The Policy.

The Following Coverages Apply Only When Designated By an "X" In
The Box(es) Shown Below:

```
                                                      Premium
[X] Manufacturers'  Optimum Endorsement - IL 19         $1,936


[ ] Product Recall Expense Coverage Form - CP 13

    Product Recall Limit:            Any One Covered Recall
                                     Aggregate For The Policy Period

    Product Recall Participation:       % Of All Covered Recall Expenses


Total Manufacturers' Optimum Program Premium            $1,936
```

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA        30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

Named   Insured   and   Address

| Policy   Type: | *Commercial Package* |
|---|---|

**Policy   Number:**   *CPP 2083060-00*
**Issue   Date:**   *06/18/15*
**ACCT.   NO:**   *0000191650*
**Change   Effective   Date:**   *06/05/15*
**From:07/01/14**
**To:  07/01/15**
12:01 a.m. standard time.

**CYCLE-TEX INC**
**702 S THORNTON AVE STE 201**
**DALTON GA   30720**

## POLICY PREMIUM RECAP STATEMENT

| Line of Business/Coverages | Pro-Rated Premium   Totals | Commission |
|---|---|---|
| Commercial  Automobile  Coverage  Part | $25,517.00 | 15% |
| Commercial  Property  Coverage  Part | $22,596.00 | 15% |
| Equipment  Breakdown  Coverage | $2,633.00 | 15% |
| Commercial  Crime  Coverage  Part | $820.00 | 15% |
| Employee  Benefits  Liability  Coverage  Part | $230.00 | 15% |
| Commercial  General  Liability  Coverage  Part | $19,720.00 | 15% |
| Commercial  Inland  Marine  Coverage  Part | $575.00 | 15% |
| Certified  Acts  of  Terrorism  -  Property | $288.00 | 15% |
| Certified  Acts  of  Terrorism  -  General  Liability | $661.00 | 15% |
| Certified  Acts  of  Terrorism  -  Inland  Marine | $3.00 | 15% |

Your Pro-Rated Premium Is    | **$73,043.00** |

**THIS IS NOT A BILL.** Any outstanding   balance due will be billed at a later date.

Grange   Mutual   Casualty   Company
P.O.  Box  1218
Columbus,   Ohio   43216-1218

# COMMERCIAL POLICY CHANGE
## ENDORSEMENT IL 16

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured/Mailing Address: | Agency Name/Address/Code Number: |
|---|---|
| CYCLE-TEX INC<br>702 S THORNTON AVE STE 201<br>DALTON GA  30720 | ADVANCED INSURANCE STRATEGIES<br>300 W EMERY STREET SUITE 205<br>PO BOX 709<br>DALTON, GA             30722<br>10-01314-00 |

| Policy Number:    Mod: | Effective Date of Change: | End No. |
|---|---|---|
| CPP2083060-00 | 06/05/15          at 12:01 AM Standard Time | 11 |

The following item(s):

| | | | |
|---|---|---|---|
| [ ] | Insured's Name | [ ] | Limits/Exposures |
| [ ] | Insured's Mailing Address | [ ] | Deductibles |
| [ ] | Insured's Legal Entity/Business of Insured | [ ] | Covered Property/Location Description |
| [ ] | Premium Determination | [ ] | Classification/Class Codes |
| [X] | Additional Interested Parties | [ ] | Rates |
| [ ] | Coverage Forms and Endorsements | [ ] | Vehicle(s) |

Is (are) changed to read [See Additional Page(s)]:

```
APPLICABLE TO COMMERCIAL PROPERTY COVERAGE PART:

ADDING CP 1218 LOSS PAYEE ENDORSEMENT AT LOCATIONS
0001 - 111 W WESTCOTT WAY, DALTON GA 30720
0002 - 906 E HERMITAGE RD NE, ROME GA 30161
0005 - 1711 KIMBERLY PARK DR, DALTON GA 30720
IN FAVOR OF
BB&T INSURANCE CENTER
PO BOX 1626
WILSON, NC  27894
```

_____
Authorized Representative

Annual Premium Change: _____ 0.00
Pro Rata Premium Change: _____ 0.00

Issue Date:  06/18/15
ACCT. NO:0000191650                    Premium does not include service charges.
Applicable to the State of Kentucky
Includes Kentucky Municipal Tax: _____
Includes Kentucky Surcharges Required by KRS 136.392: _____

**AGENTCOPY**

*ADVANCED INSURANCE STRATEGIES*
*300 W EMERY STREET SUITE 205*
*PO BOX 709*
*DALTON, GA        30722*

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

Named   Insured   and   Address

**Policy  Type:** *Commercial Package*

**Reason   Issued:** *Policy Change*

**CYCLE-TEX INC**
**702 S THORNTON AVE STE 201**
**DALTON GA  30720**

**Policy   Number:** *CPP 2083060-00*
**Change   Effective   Date:** *06/05/15*
**Issue Date:** *06/18/15*
**ACCT. NO:** *0000191650*

---

**From: 07/01/14    To: 07/01/15**      12:01 a.m. standard time at the address of the named insured as shown above. These declarations together with the applications, the commercial lines policy jacket, common policy conditions, coverage part declarations, coverage part coverage form(s) and forms and endorsements, if any, issued to form a part thereof, complete the above numbered policy. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

---

**Commercial   Policy   Declarations**

| Business   Description | *PLASTIC MFG* |
|---|---|

This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

| Coverage   Part(s) | Premium |
|---|---|
| COMMERCIAL  AUTOMOBILE  COVERAGE  PART | $25,875.00 |
| COMMERCIAL  PROPERTY  COVERAGE  PART | $25,229.00 |
| COMMERCIAL  CRIME  COVERAGE  PART | $820.00 |
| EMPLOYEE  BENEFITS  LIABILITY  COVERAGE  PART | $230.00 |
| COMMERCIAL  GENERAL  LIABILITY  COVERAGE  PART | $19,720.00 |
| COMMERCIAL  INLAND  MARINE  COVERAGE  PART | $575.00 |
| Certified  Acts  of  Terrorism | $952.00 |

Your Estimated  Total Policy Premium  Is   **$73,401.00**

Premium  does not include  service charges.

The Premium  Change  From This Policy Change Is    $0.00

**THIS IS NOT A BILL.**

## MANUFACTURERS' OPTIMUM PROGRAM SCHEDULE

**Policy  Number:**    CPP  2083060-00

Amendment  Of Policy Effective:  June 05, 2015

**Named   Insured:**    CYCLE-TEX INC

These  Coverages  Apply  To  All  Locations  Covered  On  The  Policy.


The  Following  Coverages  Apply  Only  When  Designated  By  an  "X"  In
The  Box(es)  Shown  Below:

```
                                                        Premium
[X] Manufacturers'  Optimum  Endorsement  -  IL  19         $1,936


[ ] Product  Recall  Expense  Coverage  Form  -  CP  13

     Product  Recall  Limit:              Any  One  Covered  Recall
                                          Aggregate  For  The  Policy  Period

     Product  Recall  Participation:        %  Of  All  Covered  Recall  Expenses


Total  Manufacturers'  Optimum  Program  Premium         $1,936
```

# MORTGAGE HOLDERS, LOSS PAYEES, AND ADDITIONAL INSURED SCHEDULE

**Policy Number:**   CPP 2083060-00

Amendment  Of Policy Effective:  June 05, 2015

**Named  Insured:**   CYCLE-TEX INC

```
Premises 0001                    Premises 0001
Bb&t Insurance Center            Bbt
PO Box 1626                      PO Box 200047
Wilson NC                        Kennesaw GA
27894                            30156
Loss Payee                       Mortgage Holder

Premises 0002                    Premises 0002
Bb&t Insurance Center            Bbt
PO Box 1626                      PO Box 200047
Wilson NC                        Kennesaw GA
27894                            30156
Loss Payee                       Mortgage Holder

Premises 0005                    Premises 0005
Bb&t Insurance Center            Bbt
PO Box 1626                      PO Box 200047
Wilson NC                        Kennesaw GA
Loss Payee                       30156
                                 Mortgage Holder
```

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUILDERS' RISK COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY

### SCHEDULE

| Prem. No. | Bldg. No. | Description of Property | Loss Payee (Name & Address) | Provisions Applicable | | |
|---|---|---|---|---|---|---|
| | | | | Loss Payable | Lender's Loss Payable | Contract Of Sale |
| | | | | | | |

**A.** When this endorsement is attached to the STANDARD PROPERTY POLICY **CP 00 99** the term Coverage Part in this endorsement is replaced by the term Policy.

The following is added to the LOSS PAYMENT Loss Condition, as indicated in the Declarations or by an "X" in the Schedule:

**B. LOSS PAYABLE**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

## C. LENDER'S LOSS PAYABLE

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

   b. The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

      (1) Pays any premium due under this Coverage Part at our request if you have failed to do so;

      (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

      (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of this Coverage Part will then apply directly to the Loss Payee.

   d. If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

      (1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

      (2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

      At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

   a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## D. CONTRACT OF SALE

1. The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   a. Adjust losses with you; and

   b. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

3. The following is added to the OTHER INSURANCE Condition:

   For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES

For a covered "auto" licensed or principally garaged in Georgia, this endorsement modifies insurance provided under the following:

> BUSINESS AUTO COVERAGE FORM
> BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM
> TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Liability Coverage**

1. Liability Coverage is primary for an "auto" you don't own if operated by the "insured" and owned by a retail seller of "autos".

2. If you are a retail seller of "autos", the insurance is excess for an "auto" you own if operated by an "insured" other than you or your "employee".

3. The **Expected Or Intended Injury** Exclusion is replaced by the following:

    This insurance does not apply to "bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

    However, this exclusion does not apply for coverage up to the minimum limit specified by the Georgia Motor Vehicle Safety Responsibility Act.

**B. Changes In Physical Damage Coverage**

1. If collision coverage is provided, the collision coverage is primary for an "auto" you don't own if operated by the "insured" and owned by a retail seller of "autos".

2. If you are a retail seller of "autos", the collision insurance is excess for an "auto" you own if operated by an "insured" other than you or your "employee".

3. The "Diminution In Value" exclusion does not apply.

**C.** Paragraph **A.6.** of the **Cancellation** Common Policy Condition is replaced by the following:

If notice is mailed, a receipt provided by, or such other evidence of mailing as prescribed or accepted by, the U.S. Postal Service shall be sufficient proof of notice.

**D.** Paragraph **2.a.** of **Duties In The Event Of Accident, Claim, Suit Or Loss** is replaced by the following:

a. In the event of "accident", claim, "suit" or "loss", we or our representative must receive prompt notice of the "accident" or "loss". Include:

(1) How, when and where the "accident" or "loss" occurred;

(2) The "insured's" name and address; and

(3) To the extent possible, the names and addresses of any injured persons and witnesses.

The requirement for giving notice of a claim, if not satisfied by the "insured" within 30 days of the date of the "accident", may be satisfied by an injured third party who, as the result of such "accident", has a claim against the "insured". However, in this event, notice of a claim given by an injured third party must be mailed to us.

**E.** The **Concealment, Misrepresentation Or Fraud** Condition is replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We will not pay for any "loss" or damage in any case of:

1. Concealment or misrepresentation of a material fact; or

2. Fraud

committed by you or any other "insured", at any time, and relating to coverage under this policy.

 © ISO Properties, Inc., 2004 ☐

**F.** The last sentence in the **Appraisal For Physical Damage Loss** Condition in the Business Auto, Motor Carrier and Truckers Coverage Forms and the **Appraisal** Condition in the Business Auto Physical Damage Coverage Form is replaced by the following:

We do not waive any of our rights under this policy by agreeing to an appraisal.

**Policy Number:**

**Georgia Amendment of Policy Provisions**

This endorsement modifies insurance provided under the following:

I.  **AUTO MEDICAL PAYMENTS COVERAGE ENDORSEMENT**

Paragraph **1.** of **E. Changes In Conditions** is deleted.

II. **UNINSURED MOTORISTS COVERAGE ENDORSEMENT**

A. Paragraphs **1. c.** and **2. b.** of **B. Who Is An Insured** are deleted.

B. Paragraph **3.** of **D. Limit Of Insurance** is replaced by the following:

3.  The Limit of Insurance under this coverage shall be reduced by:

a.  All sums paid or payable under any workers compensation law, exclusive of nonoccupational disability benefits.

b.  All sums paid or payable by or for anyone who is legally responsible, including all sums paid under this Coverage Form's Liability Coverage.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGES IN COVERAGE FORMS – MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

**A.** The **Operations** Exclusion under **Section II – Liability Coverage** of all coverage forms, except the Business Auto Physical Damage Coverage Form, is replaced by the following:

**9. Operations**

"Bodily injury", "property damage" or "covered pollution cost or expense" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law where it is licensed or principally garaged.

**B.** The **Definitions** Section is amended as follows:

**1.** The definition of "Auto" is replaced by the following:

"Auto" means:

**a.** Any land motor vehicle, "trailer" or semi-trailer designed for travel on public roads; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**2.** The following is added to the definition of "Mobile equipment" in all coverage forms, except the Business Auto Physical Damage Coverage Form:

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WAR EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
SINGLE INTEREST AUTOMOBILE PHYSICAL DAMAGE INSURANCE POLICY
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

## A. Changes In Liability Coverage

The War exclusion under Paragraph **B. Exclusions** of **Section II – Liability Coverage** is replaced by the following:

### WAR

"Bodily injury", "property damage" or "covered pollution cost or expense" arising directly or indirectly, out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## B. Changes In Garagekeepers Coverage

If the Garagekeepers Coverage endorsement or the Garagekeepers Coverage – Customers' Sound Receiving Equipment endorsement is attached, the following exclusion is added:

We will not pay for "loss" caused by or resulting from the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss":

### WAR

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## C. Changes In Auto Medical Payments

If the Auto Medical Payments Coverage endorsement is attached, then Exclusion **C.6.** is replaced by the following:

**6.** "Bodily injury", arising directly or indirectly, out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Changes In Uninsured/Underinsured Motorists Coverage

If Uninsured and/or Underinsured Motorists Coverage is attached, then the following exclusion is added:

This insurance does not apply to:

### WAR

**1.** "Bodily injury" or "property damage", if applicable, arising directly or indirectly, out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

© ISO Properties, Inc.,  2003

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## E. Changes In Personal Injury Protection Coverage

1. If Personal Injury Protection, no-fault, or other similar coverage is attached, and:

   a. Contains, in whole or in part, a War exclusion, that exclusion is replaced by Paragraph **2.**

   b. Does not contain a war exclusion, Paragraph **2.** is added.

2. This insurance does not apply to:

   **WAR**

   "Bodily injury" or "property damage", if applicable, arising directly or indirectly, out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## F. Changes In Single Interest Automobile Physical Damage Insurance Policy

The War exclusion is replaced by the following:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

© ISO Properties, Inc., 2003 ▯

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

**SECTION I – COVERED AUTOS**

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | Description Of Covered Auto Designation Symbols | |
|--------|------------------------------------------------|---|
| **1** | Any "Auto" | |
| **2** | Owned "Autos" Only | Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| **3** | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| **4** | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| **5** | Owned "Autos" Subject To No-Fault | Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged. |
| **6** | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| **7** | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| **8** | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| **9** | Nonowned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs. |

**B. Owned Autos You Acquire After The Policy Begins**

1. If Symbols **1, 2, 3, 4, 5** or **6** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

## SECTION II – LIABILITY COVERAGE

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1. Who Is An Insured**

The following are "insureds":

   a. You for any covered "auto".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

   (1) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

   (2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

   (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

   (4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

   (5) A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

**a. Supplementary Payments**

In addition to the Limit of Insurance, we will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All costs taxed against the "insured" in any "suit" against the "insured" we defend.

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

**b. Out-Of-State Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

**(1)** Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

**(1)** Employment by the "insured"; or

**(2)** Performing the duties related to the conduct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraphs **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

**(1)** When all of the work called for in your contract has been completed.

**(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

**(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage Endorsement, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

**SECTION III – PHYSICAL DAMAGE COVERAGE**

**A. Coverage**

**1.** We will pay for "loss" to a covered "auto" or its equipment under:

**a. Comprehensive Coverage**

From any cause except:

**(1)** The covered "auto's" collision with another object; or

**(2)** The covered "auto's" overturn.

**b. Specified Causes Of Loss Coverage**

Caused by:

**(1)** Fire, lightning or explosion;

**(2)** Theft;

**(3)** Windstorm, hail or earthquake;

**(4)** Flood;

**(5)** Mischief or vandalism; or

**(6)** The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

**c. Collision Coverage**

Caused by:

**(1)** The covered "auto's" collision with another object; or

**(2)** The covered "auto's" overturn.

**2. Towing**

We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

**3. Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

**a.** Glass breakage;

**b.** "Loss" caused by hitting a bird or animal; and

**c.** "Loss" caused by falling objects or missiles.

However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

### 4. Coverage Extensions

#### a. Transportation Expenses

We will pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

#### b. Loss Of Use Expenses

For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

(1) Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

(2) Specified Causes Of Loss only if the Declarations indicate that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

(3) Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

## B. Exclusions

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

#### a. Nuclear Hazard

(1) The explosion of any weapon employing atomic fission or fusion; or

(2) Nuclear reaction or radiation, or radioactive contamination, however caused.

#### b. War Or Military Action

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

3. We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

a. Wear and tear, freezing, mechanical or electrical breakdown.

b. Blowouts, punctures or other road damage to tires.

4. We will not pay for "loss" to any of the following:

a. Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

b. Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

c. Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

d. Any accessories used with the electronic equipment described in Paragraph c. above.

© ISO Properties, Inc., 2000

Exclusions **4.c.** and **4.d.** do not apply to:

**a.** Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

**b.** Any other electronic equipment that is:

**(1)** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

**(2)** An integral part of the same unit housing any sound reproducing equipment described in **a.** above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

**5.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit Of Insurance**

**1.** The most we will pay for "loss" in any one "accident" is the lesser of:

**a.** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

**SECTION IV – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment – Physical Damage Coverages**

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee – Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. Other Insurance**

**a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle you do not own.

**(2)** Primary while it is connected to a covered "auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**c.** Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

**d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

**a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**a.** The United States of America;

**b.** The territories and possessions of the United States of America;

**c.** Puerto Rico;

**d.** Canada; and

**e.** Anywhere in the world if:

**(1)** A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

**(2)** The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

## SECTION V – DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means a land motor vehicle, "trailer" or semitrailer designed for travel on public roads but does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand, order or statutory or regulatory requirement; or

**2.** Any claim or "suit" by or on behalf of a governmental authority demanding

that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured";

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract" means:

**1.** A lease of premises;

**2.** A sidetrack agreement;

**3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**5.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**6.** That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

**a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing; or

**b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

**c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

 © ISO Properties, Inc., 2000 □

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**2.** Vehicles maintained for use solely on or next to premises you own or rent;

**3.** Vehicles that travel on crawler treads;

**4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**a.** Power cranes, shovels, loaders, diggers or drills; or

**b.** Road construction or resurfacing equipment such as graders, scrapers or rollers.

**5.** Vehicles not described in Paragraphs **1.**, **2.**, **3.**, or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**b.** Cherry pickers and similar devices used to raise or lower workers.

**6.** Vehicles not described in Paragraphs **1.**, **2.**, **3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**a.** Equipment designed primarily for:

**(1)** Snow removal;

**(2)** Road maintenance, but not construction or resurfacing; or

**(3)** Street cleaning;

**b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

**1.** Damages because of "bodily injury" or "property damage"; or

**2.** A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

**a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

| Endorsement | CA 50 |
| --- | --- |

Policy Number:

## Asbestos, Silica, and Mixed Dust Exclusion

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement modifies insurance provided under the following:

> BUSINESS AUTO COVERAGE FORM
> GARAGE COVERAGE FORM
> TRUCKERS COVERAGE FORM

This insurance does not apply to:

1. "Bodily injury" or "property damage" arising out of, caused by, contributed to by, or resulting from, exposure to or the use of:

   **a.** Asbestos including, but not limited to, the cost of abatement, mitigation, removal or disposal of asbestos from any good, product or structure;

   **b.** Silica; or

   **c.** Mixed dust.

2. Any damage or any loss, cost or expense arising out of any:

   **a.** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of mixed dust, silica or asbestos, or any other material or substance containing asbestos, silica, or mixed dust; or

   **b.** Claim or "suit" by or on behalf of any governmental authority or any other alleged responsible party for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of mixed dust, asbestos or silica, or any other material or substance containing silica, asbestos, or mixed dust.

3. "Bodily injury" or "property damage" arising out of, caused by, contributed to by, or resulting from, supervision, instruction, recommendations, warnings or advice given or which should have been given in connection with any of the substances named in **1.a., b.,** or **c.**

4. Any obligation to share damages with or repay someone else in connection with any of the substances named in **1.a., b.,** or **c.**

5. As used in this endorsement:

   **a.** Silica means a group of naturally occurring crystalline forms of silicon dioxide, including but not limited to, quartz and sand.

   **b.** Mixed dust means a mixture of dusts composed of silica or asbestos or one or more other dusts.

**Policy Changes - Who Is An Insured**

This endorsement modifies insurance provided under the following:

**Business Auto Coverage Form**

Paragraph **1.b(1)** of **Who Is An Insured** in **Section II - Liability Coverage** is deleted and replaced by:

**(1)** The owner or anyone else from whom you hire or borrow a covered "auto", including their agents or employees. This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AUTO MEDICAL PAYMENTS COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

## A. Coverage

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident". We will pay only those expenses incurred, for services rendered within three years from the date of the "accident".

## B. Who Is An Insured

**1.** You while "occupying" or, while a pedestrian, when struck by any "auto".

**2.** If you are an individual, any "family member" while "occupying" or, while a pedestrian, when struck by any "auto".

**3.** Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

## C. Exclusions

This insurance does not apply to any of the following:

**1.** "Bodily injury" sustained by an "insured" while "occupying" a vehicle located for use as a premises.

**2.** "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by you or furnished or available for your regular use.

**3.** "Bodily injury" sustained by any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for the regular use of any "family member".

**4.** "Bodily injury" to your "employee" arising out of and in the course of employment by you. However, we will cover "bodily injury" to your domestic "employees" if not entitled to workers' compensation benefits. For the purposes of this endorsement, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5.** "Bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

**6.** "Bodily injury" caused by declared or undeclared war or insurrection or any of their consequences.

**7.** "Bodily injury" to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**8.** "Bodily Injury" sustained by an "insured" while "occupying" any covered "auto" while used in any professional racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply to any "bodily injury" sustained by an "insured" while the "auto" is being prepared for such a contest or activity.

## D. Limit Of Insurance

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" injured in any one "accident" is the Limit Of Insurance for Auto Medical Payments Coverage shown in the Declarations.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage and any Liability Coverage Form, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

**E. Changes In Conditions**

The Conditions are changed for Auto Medical Payments Coverage as follows:

**1.** The Transfer Of Rights Of Recovery Against Others To Us Condition does not apply.

**2.** The reference in Other Insurance in the Business Auto and Garage Coverage Forms and Other Insurance – Primary And Excess Insurance Provisions in the Truckers and Motor Carrier Coverage Forms to "other collectible insurance" applies only to other collectible auto medical payments insurance.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

**2.** "Occupying" means in, upon, getting in, on, out or off.

    Copyright, Insurance Services Office, Inc., 1996    **CA 99 03 07 97**    □

| Endorsement | CA 83 |
|---|---|

**Policy Number:**

**Auto Medical Payments Coverage Changes**

THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.

THIS ENDORSEMENT MODIFIES INSURANCE
PROVIDED UNDER AUTO MEDICAL
PAYMENTS COVERAGE - CA 99 03.

The following is added to Paragraph E. **Changes in
Conditions**

3. We have the right to utilize outside sources,
   vendors, experts, consultants, and software tools
   of our choosing to review the medical expense
   invoices and medical records to assist us in
   determining, among other things, if the expenses
   and treatment are reasonable and necessary.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** We will pay, as interest may appear, you and the loss payee named in the policy for "loss" to a covered "auto".

**B.** The insurance covers the interest of the loss payee unless the "loss" results from conversion, secretion or embezzlement on your part.

**C.** We may cancel the policy as allowed by the CANCELLATION Common Policy Condition.

Cancellation ends this agreement as to the loss payee's interest. If we cancel the policy we will mail you and the loss payee the same advance notice.

**D.** If we make any payments to the loss payee, we will obtain his or her rights against any other party.

 Copyright, Insurance Services Office, Inc.,  1993  ☐

| Endorsement | CA 87 |
|---|---|

**Policy Number:**

**BLANKET ADDITIONAL INSURED - LESSOR
AND LOSS PAYEE**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**Description of "Leased Autos":**

All "Autos" leased or rented from the Lessors identified in the Schedule below:

<strong>Blanket Additional Insured &amp; Loss Payee Schedule:</strong>

**Additional Insured**                          **Address**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**BLANKET ADDITIONAL INSURED - LESSOR AND LOSS PAYEE**

**A. Coverage**

    **1.** Any "leased auto" designated or described in the Schedule will be considered a covered "auto".

    **2.** For a "leased auto" designated or described in the Schedule, **Who Is An Insured** is changed to include as an "insured" the lessor named in the Schedule. However, the lessor is an "insured" only for "bodily injury" or "property damage" resulting from the acts or omissions by:

        **a.** You;

        **b.** Any of your "employees" or agents; or

        **c.** Any person, except the lessor or any "employee" or agent of the lessor, operating a "leased auto" with the permission of any of the above.

    **3.** The coverages provided under the policy apply to any "leased auto" described in the Schedule until the expiration date of the policy, or when the lessor or his or her agent takes possession of the "leased auto", whichever occurs first.

**B. Loss Payable Clause**

    **1.** We will pay, as interest may appear, you and the lessor named in this endorsement for "loss" to a "leased auto".

    **2.** The insurance covers the interest of the lessor unless the "loss" results from fraudulent acts or omissions on your part.

    **3.** If we make any payment to the lessor, we will obtain his or her rights against any other party.

**C. Cancellation**

    **1.** If we cancel the policy, we will mail notice to the lessor in accordance with the Cancellation Common Policy Condition.

    **2.** If you cancel the policy, we will mail notice to the lessor.

    **3.** Cancellation ends this agreement.

**D.** The lessor is not liable for payment of your premiums.

**E. Additional Definition**

As used in this endorsement:

"Leased auto" means an "auto" leased or rented to you, including any substitute, replacement or extra "auto" needed to meet seasonal or other needs, under a written leasing or rental agreement that requires you to provide direct primary insurance for the lessor.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Grange Mutual Casualty Company
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | CR 01 |

Policy Number:

Policy Change-Crime Coverage

This Endorsement Changes The Policy. Please Read It Carefully.

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
EMPLOYEE THEFT & FORGERY POLICY

## A. PROVISIONS

1. Application of changes affected by Endorsement IL 16 POLICY CHANGES:

   a. **Addition of a Deductible or Increase in Deductible Amount:** This change applies to loss or damage resulting from acts committed or events occurring at any time, whether before or after the Effective Date of Change.

   b. **Deletion or Restriction (other than in a. above) of any Coverage or Decrease in** any Limit of Insurance: This change applies to loss or damage resulting from acts committed or events occurring:

      (1) On or after the Effective Date of Change; and also
      (2) Before the Effective Date of Change if discovered by you after 1 year from that date.

   c. **All Changes Other Than in a. and b. Above:** This change applies to loss or damage resulting from acts committed or events occurring on or after the Effective Date of Change.

2. No Limit of Insurance during any period will be cumulative with any other amount applicable to the same coverage during any other period.

*Copyright, Insurance Services Office, Inc., 1996*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES – CONCEALMENT, MISREPRESENTATION OR FRAUD

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE  FORM
GOVERNMENT CRIME COVERAGE FORM

**A.** The **Concealment, Misrepresentation or Fraud** Condition is replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We will not pay for any loss or damage in any case of:

**1.** Concealment or misrepresentation of a material fact; or

**2.** Fraud;

committed by you or any other insured, at any time, and relating to coverage under this insurance.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

> COMMERCIAL CRIME COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> STANDARD PROPERTY POLICY

**A.** We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

  **1.** The failure, malfunction or inadequacy of:

   **a.** Any of the following, whether belonging to any insured or to others:

    **(1)** Computer hardware, including microprocessors;

    **(2)** Computer application software;

    **(3)** Computer operating systems and related software;

    **(4)** Computer networks;

    **(5)** Microprocessors (computer chips) not part of any computer system; or

    **(6)** Any other computerized or electronic equipment or components; or

   **b.** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **A.1.a.** of this endorsement;

   due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

  **2.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **A.1.** of this endorsement.

**B.** If an excluded Cause of Loss as described in Paragraph **A.** of this endorsement results:

  **1.** In a Covered Cause of Loss under the Boiler And Machinery Coverage Part, the Commercial Crime Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

  **2.** Under the Commercial Property Coverage Part:

   **a.** In a "Specified Cause of Loss", or in elevator collision resulting from mechanical breakdown, under the Causes of Loss – Special Form; or

   **b.** In a Covered Cause of Loss under the Causes Of Loss – Basic Form or the Causes Of Loss – Broad Form;

  we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss", elevator collision, or Covered Cause of Loss.

**C.** We will not pay for repair, replacement or modification of any items in Paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiencies or change any features.

 © ISO Properties, Inc., 2000

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT – DELETE PROVISIONS REGARDING CERTAIN ACTS OF TERRORISM (APPLICABLE TO CRIME/FIDELITY ONLY) – GEORGIA

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE FORM
GOVERNMENT CRIME COVERAGE FORM
KIDNAP/RANSOM AND EXTORTION COVERAGE FORM

Any endorsement in this policy that refers to "certified act(s) of terrorism" is hereby amended to the effect that such endorsement does not apply to the Commercial Crime Coverage Form, Government Crime Coverage Form, or Kidnap/Ransom And Extortion Coverage Form.

The inapplicability or omission of a terrorism exclusion does not serve to create coverage for any loss or damage that would otherwise be excluded under this Coverage Form, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, Exclusions of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

**B.** The following exclusion is added to Paragraph **2.**, Exclusions of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **i.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i. War**

"Bodily injury" or "property damage", however caused,  arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**WAR**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**a.** War, including undeclared or civil war; or

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**C.** Exclusion **h.** under Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** does not apply.  Medical payments due to war are now subject to Exclusion **g.** of  Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** since "bodily injury" arising out of war is now excluded under Coverage **A.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

  **(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

  **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

  This exclusion applies:

  **(1)** Whether the insured may be liable as an employer or in any other capacity; and

  **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

  **(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

  **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

  This exclusion applies:

  **(1)** Whether the insured may be liable as an employer or in any other capacity; and

  **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance ; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

© ISO Properties, Inc., 2000 □

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while taking part in athletics.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**h. War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All costs taxed against the insured in the "suit".

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

  **(1)** Agrees in writing to:

    **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

    **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

    **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

    **(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

  **(2)** Provides us with written authorization to:

    **(a)** Obtain records and other information related to the "suit"; and

    **(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   **b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   **c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   **a.** Medical expenses under Coverage **C**;

   **b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   **c.** Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A**; and

   **b.** Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

© ISO Properties, Inc., 2000  □

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in **a.** above;

**(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

   **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   **b.** While it is in or on an aircraft, watercraft or "auto"; or

   **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   **b.** Vehicles maintained for use solely on or next to premises you own or rent;

   **c.** Vehicles that travel on crawler treads;

   **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   **(1)** Power cranes, shovels, loaders, diggers or drills; or

   **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

   **e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   **(2)** Cherry pickers and similar devices used to raise or lower workers;

   **f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   **(1)** Equipment designed primarily for:

   **(a)** Snow removal;

   **(b)** Road maintenance, but not construction or resurfacing; or

   **(c)** Street cleaning;

   **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   **a.** False arrest, detention or imprisonment;

   **b.** Malicious prosecution;

   **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

   **f.** The use of another's advertising idea in your "advertisement"; or

   **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2000 ☐

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in your contract has been completed.

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   b. Does not include "bodily injury" or "property damage" arising out of:

      (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

      (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

      (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   For the purposes of this insurance, electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

   a. Means:

      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (a) You;

         (b) Others trading under your name; or

         (c) A person or organization whose business or assets you have acquired; and

      (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes

   **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   **(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

   **(1)** Work or operations performed by you or on your behalf; and

   **(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes

   **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

   **(2)** The providing of or failure to provide warnings or instructions.

 © ISO Properties, Inc., 2000  □

**RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY
COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I - Coverage A - Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I - Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | IL 15 |

**Lead Exclusion**

**Policy Number:**

This endorsement modifies insurance provided under the following:

**BUSINESSOWNERS POLICY
COMMERCIAL GENERAL LIABILITY
COVERAGE PART**

This insurance does not apply to:

1. "Bodily injury", "property damage", "personal injury", or "advertising injury" arising out of the actual, alleged or threatened exposure to lead, paint containing lead, water containing lead, or any other material or substance containing lead; or

2. Any loss, cost or expense arising out of any:

a. Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead, paint containing lead, water containing lead, or any other material or substance containing lead; or

b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead, paint containing lead, water containing lead, or any other material or substance containing lead.

| **Endorsement** | **CG 44** |
|---|---|

**Policy Number:**

**Medical Payment Changes**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER COMMERCIAL GENERAL LIABILITY COVERAGE FORM - CG 00 01.**

**UNDER SECTION I - COVERAGES, COVERAGE C MEDICAL PAYMENTS, 1. INSURING AGREEMENT, THE FOLLOWING IS ADDED:**

**C.** We have the right to utilize outside sources, vendors, experts, consultants, and software tools of our choosing to review the medical expense invoices and medical records to assist us in determining, among other things, if the expenses and treatment are reasonable and necessary.

Grange Mutual Casualty Company
P.O. Box 1218
Columbus. Ohio 43216-1218

| Endorsement | CG 09 GA |
|---|---|

Policy Number:

Asbestos Exclusion
Silica Exclusion
Mixed Dust Exclusion

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement modifies insurance provided under the following:

> BUSINESSOWNERS POLICY
> COMMERCIAL GENERAL LIABILITY
>     COVERAGE PART
> COMPREHENSIVE GENERAL LIABILITY
>     INSURANCE
> CONTRACTUAL LIABILITY INSURANCE
> OWNERS AND CONTRACTORS PROTECTIVE
>     LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS
>     LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY
>     COVERAGE PART

This insurance does not apply to:

1. "Bodily injury", "property damage", "personal and advertising injury" arising out of, caused by, contributed by, or resulting from, exposure to or the use of:

   a. Asbestos including, but not limited to, the cost of abatement, mitigation, removal and disposal of asbestos from any good, product or structure;

   b. Silica including, but not limited to, exposure to silica or the use of silica;

      i. Silica means a group of naturally occurring crystalline forms of silicon dioxide, including, but not limited to, quartz and sand.

   c. Mixed dust

      i. Mixed dust means a mixture of dusts composed of silica or asbestos with one or more other dusts.

2. Any damage or any loss, cost or expense arising out of any:

   a. Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of mixed dust, silica or asbestos, or any other material or substance containing asbestos, silica, or mixed dust, or;

   b. Claim or suit by or on behalf of any governmental authority or any other alleged responsible party for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of mixed dust, asbestos or silica, or any other material or substance containing silica, asbestos, or mixed dust.

3. Any supervision, instruction, recommendations, warnings or advice given or which should have been given in connection with any of the substances named in 1.a., b., or c.; or

4. Any obligation to share damages with or repay someone else in connection with any of the substances named in 1.a., b., or c.

*CK815Q (1-2005)*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising directly or indirectly out of:

**a.** Any actual or alleged failure, malfunction or inadequacy of:

**(1)** Any of the following, whether belonging to any insured or to others:

**(a)** Computer hardware, including microprocessors;

**(b)** Computer application software;

**(c)** Computer operating systems and related software;

**(d)** Computer networks;

**(e)** Microprocessors (computer chips) not part of any computer system; or

**(f)** Any other computerized or electronic equipment or components; or

**(2)** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **2.a.(1)** of this endorsement

due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

**b.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **2.a.** of this endorsement.

Grange Mutual Casualty Company
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | EB 01 |
|---|---|

**Policy Number:**

**Exclusion - Year 2000 Computer-Related and Other Electronic Problems**

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement modifies insurance provided under the following:

EMPLOYEE BENEFITS LIABILITY COVERAGE FORM

The following exclusion is added to Paragraph 2., Exclusions of SECTION I - COVERAGE:

2. Exclusions

This insurance does not apply to any claim or "benefit error" arising directly or indirectly out of:

a. Any actual or alleged failure, malfunction or inadequacy of:

(1) Any of the following, whether belonging to any insured or to others:

(a) Computer hardware, including microprocessors;

(b) Computer application software;

(c) Computer operating systems and related software;

(d) Computer networks;

(e) Microprocessors (computer chips) not part of any computer system; or

(f) Any other computerized or electronic equipment or components; or

(2) Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph 2.a.(1) of this endorsement

due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

b. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph 2.a. of this endorsement.

*Includes copyrighted material of Insurance Services Office, Inc., with its permission.*
*Copyright, Insurance Services Office, Inc., 1997*

**IK1025 (10-98)**
**11-1025 (10-98)**

| Endorsement                                EB 04 |

Policy Number:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER EMPLOYEE BENEFITS LIABILITY COVERAGE FORM - EB 101.**

**UNDER SECTION V - EMPLOYEE BENEFITS LIABILITY CONDITIONS, THE FOLLOWING CONDITION IS ADDED:**

**12. Our Right to Use Other Resources**

You and any insured seeking coverage under this policy agree that we have the right to utilize outside sources, vendors, experts, consultants, and software tools of our choosing to assist us in underwriting, pricing, and issuing our insurance policies and to assist us in adjusting claims.

**AAIS**
**IM 2021 04 04**
**Page 1 of 1**

This endorsement changes
the policy
**-- PLEASE READ THIS CAREFULLY --**

# AMENDATORY ENDORSEMENT
## GEORGIA

Under Perils Excluded, Criminal, Fraudulent, Dishonest, Or Illegal Acts, if applicable, is amended to include the following:

However, if the loss is caused by an intentional act of an insured against whom a family violence complaint is brought for the act causing this loss, this exclusion will not apply to an otherwise covered loss suffered by another insured who did not cooperate with or contribute to the act that caused the loss.

Subject to all other "terms" of this policy, "our" payment to an insured who did not cooperate in or contribute to the act that caused the loss may be limited to that person's insurable interest in the property, less any payment made to a mortgagee or other party with a legal secured interest in the property. "We" retain all rights set forth in the Subrogation condition of this policy with regard to action against the perpetrator of the act that caused the loss.

**IM 2021 04 04**

Copyright, American Association of Insurance Services, Inc., 2004

# TRANSPORTATION COVERAGE

## AGREEMENT

In return for "your" payment of the required premium, "we" provide the coverage described herein subject to all the "terms" of the Transportation Coverage. This coverage is also subject to the "declarations" and additional policy conditions relating to assignment or transfer of rights or duties, cancellation, changes or modifications, inspections, and examination of books and records.

Endorsements and schedules may also apply. They are identified on the "declarations".

Refer to Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks or bold type.

## DEFINITIONS

1. The words "you" and "your" mean the persons or organizations named as the insured on the "declarations".

2. The words "we", "us", and "our" mean the company providing this coverage.

3. "Any one aircraft" means any one aircraft, airplane, helicopter, dirigible, or any machine capable of flight.

4. "Any one carrier for hire" means any one vehicle, truck, trailer, semitrailer, or combination of these pulled by one power unit operated by a carrier for hire.

5. "Any one owned vehicle" means any one vehicle, truck, trailer, semitrailer, or combination of these pulled by one power unit owned by "you" or leased by "you" and that is operated by "you".

6. "Any one railroad car" means any one railroad car, boxcar, tank car, flat car, or similar rolling stock including any railroad car transporting property in or on one or more trucks, trailers, semitrailers, or other containers.

7. "Declarations" means all pages labeled Declarations, Supplemental Declarations, or Schedules, which pertain to this coverage.

8. "Limit" means the amount of coverage that applies.

9. "Pollutant" means:

   a. any solid, liquid, gaseous, thermal, or radioactive irritant or contaminant, including acids, alkalis, chemicals, fumes, smoke, soot, vapor, and waste. Waste includes materials to be disposed of as well as recycled, reclaimed, or reconditioned.

   b. electrical or magnetic emissions, whether visible or invisible, and sound emissions.

10. "Specified perils" means fire; lightning; windstorm; hail; collision, overturn, or derailment of a transporting conveyance; collapse of a bridge or culvert; and theft.

11. "Terms" means all provisions, limitations, exclusions, conditions, and definitions that apply.

## PROPERTY COVERED

1. "We" cover direct physical loss caused by a covered peril to property described on the "declarations". When a "limit" for a mode of transportation is indicated on the "declarations" "we" cover described property while in due course of transit on or in:

a. "any one aircraft";

b. "any one owned vehicle";

c. "any one carrier for hire"; or

d. "any one railroad car".

2. When a "limit" is indicated for a terminal location, "we" cover direct physical loss caused by a covered peril to described property while at a terminal location described on the "declarations" or within 100 feet of the described terminal.

"We" only cover property at a terminal location if the covered property is in due course of transit.

3. If covered property includes property of others "we" only cover such property to the extent of "your" legal liability for direct physical loss caused by a covered peril.

## PROPERTY NOT COVERED

1. **Art, Antiques and Fur**-- "We" do not cover objects of art, antiques, or fur garments.

2. **Carrier For Hire** -- "We" do not cover property of others that "you" are responsible for as a:

a. carrier for hire; or

b. as an arranger of transportation; this includes carloader, consolidator, broker, freight forwarder, or shipping association.

3. **Contraband** -- "We" do not cover contraband or property in the course of illegal transportation or trade.

4. **Exports and Imports**-- "We" do not cover exported or imported property:

a. that is covered under any ocean marine cargo policy that anyone has obtained covering exports or imports; or

b. while on an ocean or air conveyance.

5. **Jewelry, Stones and Metals**-- "We" do not cover jewelry, precious or semi-precious stones, gold, silver, platinum, or other precious metals or alloys.

6. **Lease Agreement** -- "We" do not cover property for which "you" are contractually liable under a lease agreement with any transportation carrier.

7. **Live Animals**-- "We" do not cover animals including cattle or poultry unless death is caused or made necessary by a "specified peril".

8. **Mail** -- "We" do not cover mail shipments in the custody of the U.S. Postal Service.

9. **Money and Securities** -- "We" do not cover accounts, bills, currency, food stamps, or other evidences of debt, lottery tickets not held for sale, money, notes, or securities.

10. **Samples** -- "We" do not cover samples while in the custody of a sales representative.

11. **Storage** -- "We" do not cover property held in storage.

## ADDITIONAL COVERAGES

1. **Debris Removal** -- "We" pay the cost to remove the debris of covered property that is caused by a covered peril. This coverage does not include costs to:

a. extract "pollutants" from land or water; or

b. remove, restore, or replace polluted land or water.

"We" will not pay any more under this coverage than 25% of the amount "we" pay for the direct loss. "We" will not pay more for loss to property and debris removal combined than the "limit" for the damaged property.

However, "we" pay an additional amount of debris removal expense up to $5,000 when the debris removal expense exceeds 25% of the amount "we" pay for direct loss or when the loss to property and debris removal combined exceeds the "limit" for the damaged property.

"We" do not pay any expenses unless they are reported to "us" in writing within 180 days from the date of direct physical loss to covered property.

2. **Emergency Removal** -- "We" pay for loss to covered property while it is moved or being moved to prevent a loss caused by a covered peril. "We" pay for any direct physical loss caused by a peril that is not excluded. This coverage applies for up to ten days after the property is first moved, but does not extend past the date on which this policy expires.

3. **Pollutant Cleanup and Removal** -- "We" pay "your" expense to extract "pollutants" from land or water if the discharge, dispersal, seepage, migration, release, or escape of the "pollutants" is caused by a covered peril that occurs during the policy period. The expenses are paid only if they are reported to "us" in writing within 180 days from the date the covered peril occurs.

"We" do not pay the cost of testing, evaluating, observing, or recording the existence, level, or effects of "pollutants". However, "we" pay the cost of testing which is necessary for the extraction of "pollutants" from land or water.

The most "we" pay for each site or location is $10,000 for the sum of all such expenses arising out of a covered peril occurring during each separate 12 month period of this policy.

4. **Rejected Shipments** -- "We" pay for loss caused by a covered peril to outgoing shipments of covered property that have been rejected by the consignee, including shipments that are not deliverable. "We" cover rejected shipments while:

a. in due course of transit back to "you"; or

b. awaiting return shipment to "you".

This additional coverage will end ten days after delivery has been attempted or made to the consignee unless the covered property is in due course of transit back to "you".

## PERILS COVERED

"We" cover external risks of direct physical loss unless the loss is limited or caused by a peril that is excluded.

## PERILS EXCLUDED

1. "We" do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

a. **Civil Authority** -- "We" do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

"We" do pay for loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this coverage.

b. **Nuclear Hazard** -- "We" do not pay for loss caused by or resulting from a nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke. "We" do pay for direct loss by fire resulting from the nuclear hazard.

c. **War** -- "We" do not pay for loss caused by war. This means:

   1) declared war, undeclared war, civil war, insurrection, rebellion, or revolution;
   2) a warlike act by a military force or by military personnel;
   3) the destruction, seizure, or use of the property for a military purpose; or
   4) the discharge of a nuclear weapon even if it is accidental.

2. "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss.

a. **Criminal, Fraudulent, or Dishonest Acts** -- "We" do not pay for loss caused by or resulting from criminal, fraudulent, dishonest, or illegal acts alone or in collusion with another by:

   1) "you";
   2) others who have an interest in the property;
   3) others to whom "you" entrust the property;
   4) "your" partners, officers, directors, trustees, or joint adventurers; or

   5) the employees or agents of 1), 2), 3), or 4) above, whether or not they are at work.

   This exclusion does not apply to acts of destruction by "your" employees, but "we" do not pay for theft by employees.

   This exclusion does not apply to covered property in the custody of a carrier for hire.

b. **Loss of Use** -- "We" do not pay for loss caused by or resulting from loss of use, business interruption, delay, or loss of market.

c. **Missing Property** -- "We" do not pay for missing property where the only proof of loss is unexplained or mysterious disappearance of covered property, or shortage of property discovered on taking inventory, or any other instance where there is no physical evidence to show what happened to the covered property. This exclusion does not apply to covered property in the custody of a carrier for hire.

d. **Pollutants** -- "We" do not pay for loss caused by or resulting from release, discharge, seepage, migration, dispersal, or escape of "pollutants" unless the release, discharge, seepage, migration, dispersal, or escape is caused by a "specified peril". "We" do pay for any resulting loss caused by a "specified peril".

e. **Voluntary Parting** -- "We" do not pay for loss caused by or resulting from voluntary parting with title to or possession of any property because of any fraudulent scheme, trick, or false pretense.

   "We" do cover loss to covered property caused by false bills of lading or shipping receipts that "you" accept in good faith.

3. "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss. But if loss by a "specified peril" results "we" will pay for the resulting loss.

   a. **Contamination or Deterioration**-- "We" do not pay for loss caused by contamination or deterioration including corrosion; decay; fungus; mildew; mold; rot; rust; or any quality, fault, or weakness in the covered property that causes it to damage or destroy itself.

   b. **Temperature/Humidity**-- "We" do not pay for loss caused by humidity, dampness, dryness, or changes in or extremes of temperature.

   c. **Wear and Tear** -- "We" do not pay for loss caused by wear and tear.

## WHAT MUST BE DONE IN CASE OF LOSS

1. **Notice** -- In case of a loss, "you" must:

   a. give "us" or "our" agent prompt notice including a description of the property involved ("we" may request written notice); and

   b. give notice to the police when the act that causes the loss is a crime.

2. **Protect Property** -- "You" must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss. "We" do pay the reasonable costs incurred by "you" for necessary repairs or emergency measures performed solely to protect covered property from further damage by a peril insured against if a peril insured against has already caused a loss to covered property. "You" must keep an accurate

record of such costs. However, "we" do not pay for such repairs or emergency measures performed on property which has not been damaged by a peril insured against. This does not increase "our" "limit".

3. **Proof of Loss**-- "You" must send "us", within 60 days after "our" request, a signed, sworn proof of loss. This must include the following information:

   a. the time, place, and circumstances of the loss;

   b. other policies of insurance that may cover the loss;

   c. "your" interest and the interests of all others in the property involved, including all mortgages and liens;

   d. changes in title of the covered property during the policy period; and

   e. estimates, specifications, inventories, and other reasonable information that "we" may require to settle the loss.

4. **Examination** -- "You" must submit to examination under oath in matters connected with the loss as often as "we" reasonably request and give "us" sworn statements of the answers. If more than one person is examined, "we" have the right to examine and receive statements separately and not in the presence of others.

5. **Records** -- "You" must produce records, including tax returns and bank microfilms of all cancelled checks relating to value, loss, and expense and permit copies and extracts to be made of them as often as "we" reasonably request.

6. **Damaged Property** -- "You" must exhibit the damaged and undamaged property as often as "we" reasonably request and allow "us" to inspect or take samples of the property.

7. **Volunteer Payments** -- "You" must not, except at "your" own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage.

8. **Abandonment** -- "You" may not abandon the property to "us" without "our" written consent.

9. **Cooperation** -- "You" must cooperate with "us" in performing all acts required by this policy.

## VALUATION

1. **Invoice, Actual Cash Value** -- The value of covered property is based on the invoice amount plus accrued costs, pre-paid charges, and charges since shipment.

   In the absence of an invoice the value of covered property will be based on the actual cash value at the time of loss (with a deduction for depreciation) except as provided in paragraphs 2. and 3. under Valuation.

2. **Pair or Set** -- The value of a lost or damaged article which is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

3. **Loss to Parts** -- The value of a lost or damaged part of an item that consists of several parts when it is complete is based on the value of only the lost or damaged part or the cost to repair or replace it.

## HOW MUCH WE PAY

1. **Insurable Interest** -- "We" do not cover more than "your" insurable interest in any property.

2. **Deductible** -- "We" pay only that part of "your" loss over the deductible amount indicated on the "declarations" in any one occurrence.

3. **Loss Settlement Terms** -- Subject to paragraphs 1., 2., 4., and 5. under How Much We Pay, "we" pay the lesser of:

   a. the amount determined under Valuation;

   b. the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable; or

   c. the "limit" that applies to the mode of transportation or terminal location indicated on the "declarations". In no event will "we" pay more than the catastrophe "limit" indicated on the "declarations" regardless if a loss involves:

      1) one or more modes of transportation;
      2) one or more terminal locations; or
      3) any combination of modes of transportation or terminal locations.

   When a railroad car is transporting a truck, trailer, or semitrailer, the "limit" for a railroad car applies. In no event will "we" combine the "limit" for "any one owned vehicle" or the "limit" for "any one carrier for hire" with the "limit" for "any one railroad car".

   When a truck, trailer, or semitrailer is situated within a terminal building or within 100 feet of a terminal building, the "limit" for

terminal locations applies. In no event will "we" combine the "limit" for "any one owned vehicle" or the "limit" for "any one carrier for hire" with the "limit" for terminal locations.

4. **Insurance Under MoreThan One Coverage** -- If more than one coverage of this policy insures the same loss, "we" pay no more than the actual claim, loss, or damage sustained.

5. **Insurance Under More Than One Policy** -- "You" may have another policy subject to the same "terms" as this policy. If "you" do, "we" will pay "our" share of the covered loss. "Our" share is the proportion that the applicable "limit" under this policy bears to the "limit" of all policies covering on the same basis.

   If there is another policy covering the same loss, other than that described above, "we" pay only for the amount of covered loss in excess of the amount due from that other policy, whether "you" can collect on it or not. But "we" do not pay more than the applicable "limit".

## LOSS PAYMENT

1. **Our Options** -- "We" have the following options:

   a. pay the value of the loss;

   b. pay the cost of repairing or replacing the loss;

   c. rebuild, repair, or replace with property of like kind and quality, to the extent practicable, within a reasonable time;

   d. take all or any part of the damaged property at the agreed or appraised value.

"We" must give "you" notice of "our" intent to rebuild, repair, or replace within 30 days after receipt of a duly executed proof of loss.

2. **Your Losses** -- "We" adjust all losses with "you". Payment will be made to "you" unless another loss payee is named in the policy. An insured loss will be payable 30 days after a satisfactory proof of loss is received, and the amount of the loss has been established either by written agreement with "you" or the filing of an appraisal award with "us".

3. **Property of Others** -- Losses to property of others may be adjusted with and paid to:

   a. "you" on behalf of the owner; or

   b. the owner.

   If "we" pay the owner, "we" do not have to pay "you". "We" may also choose to defend any suits arising from the owners at "our" expense.

## OTHER CONDITIONS

1. **Appraisal** -- If "you" and "we" do not agree on the amount of the loss or the actual cash value of covered property, either party may demand that these amounts be determined by appraisal.

   If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court of record in the state where the property is located to select an umpire.

The appraisers will then determine and state separately the amount of each loss.

The appraisers will also determine the value of covered property items at the time of the loss, if requested.

If the appraisers submit a written report of any agreement to "us", the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three sets the amount of the loss.

Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by "you" and "us".

2. **Benefit to Others** -- Insurance under this coverage shall not directly or indirectly benefit anyone having custody of "your" property.

3. **Conformity With Statute** -- When a condition of this coverage is in conflict with an applicable law, that condition is amended to conform to that law.

4. **Estates** -- This provision applies only if the insured is an individual.

   On "your" death, "we" cover the following as an insured:

   a. the person who has custody of "your" property until a legal representative is qualified and appointed; or

   b. "your" legal representative.

   This person or organization is an insured only with respect to property covered by this coverage.

   This coverage does not extend past the policy period indicated on the "declarations".

5. **Misrepresentation, Concealment, or Fraud** -- This coverage is void as to "you" and any other insured if, before or after a loss:

   a. "you" or any other insured have willfully concealed or misrepresented:

      1) a material fact or circumstance that relates to this insurance or the subject thereof; or
      2) "your" interest herein; or

   b. there has been fraud or false swearing by "you" or any other insured with regard to a matter that relates to this insurance or the subject thereof.

6. **Policy Period** -- "We" pay for a covered loss that occurs during the policy period.

7. **Recoveries** -- If "we" pay "you" for the loss and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

   a. "you" must notify "us" promptly if "you" recover property or receive payment;

   b. "we" must notify "you" promptly if "we" recover property or receive payment;

   c. any recovery expenses incurred by either are reimbursed first;

   d. "you" may keep the recovered property but "you" must refund to "us" the amount of the claim paid, or any lesser amount to which "we" agree; and

   e. if the claim paid is less than the agreed loss due to a deductible or other limiting "terms" of this policy, any recovery will be pro rated between "you" and "us" based on "our" respective interest in the loss.

8. **Restoration of Limits** -- A loss "we" pay under this coverage does not reduce the applicable "limits".

9.  **Subrogation** -- If "we" pay for a loss, "we" may require "you" to assign to "us" "your" right of recovery against others. "You" must do all that is necessary to secure "our" rights. "We" do not pay for a loss if "you" impair this right to recover.

    "You" may waive "your" right to recover from others in writing before a loss occurs.

10. **Suit Against Us** -- No one may bring a legal action against "us" under this coverage unless:

    a.  all of the "terms" of this coverage have been complied with; and

    b.  the suit has been brought within two years after "you" first have knowledge of the loss.

If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by law.

11. **Territorial Limits** -- "We" cover property while:

    a.  at a location in; or

    b.  in transit between or within

    the United States of America, its territories and possessions, Canada, and Puerto Rico.

12. **Carriers For Hire** -- "You" may accept bills of lading or shipping receipts issued by carriers for hire that limit their liability to less than the actual cash value of the covered property.

**IM-7250  Ed 1.0**
Copyright  MCMXCIV
American Association of Insurance Services

# BUSINESS COMPUTER COVERAGE

## AGREEMENT

In return for "your" payment of the required premium, "we" provide the coverage described herein subject to all the "terms" of the Busin ess Computer Coverage. This coverage is also subject to the "schedule of coverages" and additional policy conditions relating to assignment or transfer of rights or duties, cancellation, changes or modifications, inspections, and examination of books and records.

Endorsements and schedules may also apply. They are identified on the "schedule of coverages".

Refer to Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks or bold type.

## DEFINITIONS

1. The words "you" and "your" mean the persons or organizations named as the insured on the "schedule of coverages".

2. The words "we", "us", and "our" mean the company providing this coverage.

3. "Business" means the usual business operations occurring at a premises described on the "schedule of coverages".

4. "Catastrophe limit" means the amount of coverage that applies to all losses at all locations during each separate 12-month period of this policy; this is limited to the expiration or anniversary date.

5. "Computer hacking" means an unauthorized intrusion:

   a. by an individual or group of individuals, whether employed by "you" or not, into "hardware", "software", or a computer network; and

   b. that results in but is not limited to:

      1) deletion, destruction, generation, or modification of "software";
      2) alteration, contamination, corruption, degradation, or destruction of the integrity, quality, or performance of "software";
      3) observation, scanning, or copying of "data records", "programs and applications", and "proprietary programs";
      4) damage, destruction, inadequacy, malfunction, degradation, or corruption of any "hardware" or "media" used with "hardware"; or
      5) denial of access to or denial of services from "your" "hardware" or "your" computer network.

6. "Computer virus" means the introduction of any malicious, self-replicating electronic data processing code or other code:

   a. into "hardware" or "software"; and

   b. that is intended to result in, but is not limited to:

      1) deletion, destruction, generation, or modification of "software";
      2) alteration, contamination, corruption, degradation, or destruction of the integrity, quality, or performance of "software";
      3) damage, destruction, inadequacy, malfunction, degradation, or corruption of any "hardware" or "media" used with "hardware"; or

Copyright, American Association of Insurance Services, Inc., 2004

4) denial of access to or denial of services from "your" "hardware" or "your" computer network.

7. "Data records" means files, documents, and information in an electronic format and that are stored on "media" or stored in "hardware".

8. "Electrical disturbance" means electrical or magnetic damage, disturbance of electronic recordings, or erasure of electronic recordings.

9. "Flood" means flood, surface water, waves, tidal water, or the overflow of a body of water, all whether driven by wind or not. This includes spray that results from these whether driven by wind or not.

10. "Hardware" means a network of electronic machine components (microprocessors) capable of accepting instructions and information, processing the information according to the instructions, and producing desired results.

   a. **Hardware Includes** -- "Hardware" includes but is not limited to:

      1) mainframe and mid-range computers and network servers;
      2) personal computers and workstations;
      3) laptops, palmtops, notebook PCs, other portable computer devices and accessories including, but not limited to, multimedia projectors; and
      4) peripheral data processing equipment, including but not limited to, printers, keyboards, monitors, and modems.

   b. **Hardware Does Not Include** -- "Hardware" does not include:

      1) "software"; and
      2) "off-site server" and "on-site server".

11. "Limit" means the amount of coverage that applies.

12. "Mechanical breakdown" means the malfunction or failure of moving or electronic parts, component failure, faulty installation, or blowout.

13. "Media" means processing, recording, or storage media used with "hardware". This includes but is not limited to films, tapes, cards, discs, drums, cartridges, cells, or flash drives.

14. "Off-site server" means a server for "your" Web site:

   a. that is not at a premises described on the "schedule of coverages"; and

   b. that is being maintained and/or operated by an independent contractor acting as "your" Web host or "your" Internet service provider that is acting as "your" Web host.

15. "On-site server" means a server for "your" Web site:

   a. that is at a premises occupied by "you" and described on the "schedule of coverages"; and

   b. that is being maintained and/or operated by "you" or an independent contractor acting as "your" Web site consultant.

16. "Pollutant" means:

   a. any solid, liquid, gaseous, thermal, or radioactive irritant or contaminant, including but not limited to acids, alkalis, chemicals, fumes, smoke, soot, vapor, and waste. Waste includes materials to be recycled, reclaimed, or reconditioned, as well as disposed of; and

   b. electrical or magnetic emissions, whether visible or invisible, and sound emissions.

17. "Power supply disturbance" means interruption of power supply, power surge, blackout, or brownout.

Copyright, American Association of Insurance Services, Inc., 2004

18. "Programs and applications" means operating programs and applications that "you" purchase and that are:

   a. stored on "media"; or

   b. pre-installed and stored in "hardware".

19. "Proprietary programs" means proprietary applications or programs that are developed in-house or that "you" had developed specifically for "you" and that are:

   a. stored on "media"; or

   b. installed and stored in "hardware".

20. "Restoration period" means:

   a. the time it should reasonably take to resume "your" "business" to a similar level of service starting from the date of a physical loss of or damage to covered property at a premises described on the "schedule of coverages" that is caused by a covered peril and ending on the date:

      1) the property should be rebuilt, repaired, or replaced; or
      2) "business" is resumed at a new permanent location.

      This is not limited by the expiration date of the policy.

   b. "Restoration period" does not mean the increased time required to comply with the enforcement of any ordinance, law, or decree that requires "you" or anyone else to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to or assess the effects of "pollutants".

21. "Schedule of coverages" means:

   a. all pages labeled schedule of coverages or schedules which pertain to this coverage; and

   b. declarations or supplemental declarations which pertain to this coverage.

22. "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the covered property into subterranean voids created by the action of water on a limestone or similar rock formation.

   Sinkhole collapse does not include the value of the land or the cost of filling sinkholes.

23. "Software" means "media", "data records", "programs and applications", and "proprietary programs".

24. "Specified perils" means aircraft; civil commotion; explosion; falling objects; fire; hail; leakage from fire extinguishing equipment; lightning; riot; "sinkhole collapse"; smoke; sonic boom; vandalism; vehicles; "volcanic action"; water damage; weight of ice, snow, or sleet; and windstorm.

   Falling objects does not include loss to:

   a. personal property in the open; or

   b. the interior of buildings or structures or to personal property inside buildings or structures unless the exterior of the roofs or walls are first damaged by a falling object.

   Water damage means the sudden or accidental discharge or leakage of water or steam as a direct result of breaking or cracking of a part of the system or appliance containing the water or steam.

25. "Terms" means all provisions, limitations, exclusions, conditions, and definitions that apply.

26. "Volcanic action" means airborne volcanic blast or airborne shock waves; ash, dust, or particulate matter; or lava flow.

Copyright, American Association of Insurance Services, Inc., 2004

Volcanic action does not include the cost to remove ash, dust, or particulate matter that does not cause direct physical loss to the covered property.

27. "Web site server" means "on-site server" and "off-site server".

28. "Web site software" means the following software that are used in "your" "Web site servers":

   a. "media";

   b. "data records";

   c. programs and applications which means operating programs and applications that "you" purchase and that are stored on "media" or pre-installed and stored in "Web site servers"; and

   d. proprietary programs which means proprietary applications or programs that are developed in-house or that "you" had developed specifically for "you" and that are stored on "media" or installed and stored in "Web site servers".

## PROPERTY COVERED

"We" cover the following property unless the property is excluded or subject to limitations.

1. **Hardware** --

   a. **Coverage** -- "We" cover direct physical loss caused by a covered peril to "hardware" and similar property of others that is in "your" care, custody, or control.

   b. **Coverage Limitations** -- "We" only cover "hardware" and similar property of others:

      1) when a "limit" for "hardware" is indicated on the "schedule of coverages"; and

      2) while at a premises described on the "schedule of coverages".

2. **Software** --

   a. **Coverage** -- "We" cover direct physical loss caused by a covered peril to "software" and similar property of others that is in "your" care, custody, or control.

   b. **Coverage Limitations** -- "We" only cover "software" and similar property of others:

      1) when a "limit" for "software" is indicated on the "schedule of coverages"; and

      2) while at a premises described on the "schedule of coverages".

## EXTRA EXPENSE COVERAGE

"We" provide the following coverage unless the coverage is excluded or subject to limitations.

1. **Coverage** --

   a. **Covered Property** -- If an extra expense "limit" is indicated on the "schedule of coverages", "we" provide the extra expense coverage described below during the "restoration period" when "your" "business" is necessarily wholly or partially interrupted by direct physical loss of or damage to covered property at a premises described on the "schedule of coverages" as a result of a covered peril.

   b. **Described Premises And Air Conditioning System** -- "We" provide the extra expense coverage described below during the "restoration period" when "your" "business" is necessarily wholly or partially interrupted as a result of direct physical loss of or damage to:

Copyright, American Association of Insurance Services, Inc., 2004

1) a premises described on the "schedule of coverages" that prevents "you" from using covered property; or
2) the air conditioning or electrical systems which are necessary for the operation of covered property and results in a reduction or suspension of "your" "business".

2. **Extra Expense** -- "We" cover only the extra expenses that are necessary during the "restoration period" that "you" would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a covered peril.

   a. **Expenses To Reduce Interruption** -- "We" cover any extra expense to avoid or reduce the interruption of "your" data processing operations and continue operating at a premises described on the "schedule of coverages", replacement location, or a temporary location. This includes expenses to relocate and costs to outfit and operate a replacement or temporary location.

      "We" will also cover any extra expense to reduce the interruption of "business" if it is not possible for "you" to continue operating during the "restoration period".

   b. **Expenses To Repair/Restore Property And Information** -- To the extent that they reduce a loss otherwise payable under this coverage, "we" will cover any extra expenses to:

      1) repair, replace, or restore any property; and
      2) research, replace, or restore information on damaged documents, manuscripts, or records that:

         a) are inscribed, printed, or written; or
         b) exist on electronic or magnetic media.

## PROPERTY NOT COVERED

1. **Accounts, Bills, Or Documents** -- "We" do not cover accounts, bills, evidences of debt, records, abstracts, deeds, manuscripts, program documentation, or other documents except those that are in "software" form and then only in that form.

2. **Checked Luggage** -- "We" do not cover loss resulting from theft o r disappearance of a laptop, palmtop, notebook PC, or any portable computer while in transit as checked luggage.

3. **Contraband** -- "We" do not cover contraband or property in the course of illegal transportation or trade.

4. **Loaned, Leased, Or Rented To Others** -- "We" do not cover property that "you" loan, lease, or rent to others.

5. **Money And Securities** -- "We" do not cover currency, food stamps, lottery tickets not held for sale, money, notes, or securities.

6. **Stock In Trade** -- "We" do not cover property that is "your" stock in trade.

7. **Web Site Servers** --"We" do not cover "Web site servers" including "Web site software".

## COVERAGE EXTENSIONS

**Provisions That Apply To Coverage Extensions** -- The following Coverage Extensions indicate an applicable "limit". This "limit" may also be shown on the "schedule of coverages".

If a different "limit" is indicated on the "schedule of coverages", that "limit" will apply instead of the "limit" shown below.

Copyright, American Association of Insurance Services, Inc., 2004

However, if no "limit" is indicated for a Coverage Extension, coverage is provided up to the full "limit" for the applicable covered property unless a different "limit" is indicated on the "schedule of coverages".

Unless otherwise indicated, the coverages provided below are part of and not in addition to the applicable "limit" for coverage described under Property Covered.

The "limit" provided under a Coverage Extension cannot be combined or added to the "limit" for any other Coverage Extension or Supplemental Coverage including a Coverage Extension or Supplemental Coverage that is added to this policy by endorsement.

The following coverage extensions are not subject to and not considered in applying coinsurance conditions.

1. **Debris Removal** --

   a. **Coverage** -- "We" pay the cost to remove the debris of covered property that is caused by a covered peril.

   b. **We Do Not Cover** -- This coverage does not include costs to:

      1) extract "pollutants" from land or water; or
      2) remove, restore, or replace polluted land or water.

   c. **Limit** -- "We" do not pay any more under this coverage than 25% of the amount "we" pay for the direct physical loss. "We" will not pay more for loss to property and debris removal combined than the "limit" for the damaged property.

   d. **Additional Limit** -- "We" pay up to an additional $5,000 for debris removal expense when the debris removal expense exceeds 25% of the amount "we" pay for direct physical loss or when the loss to property and debris removal combined exceeds the "limit" for the damaged property.

   e. **You Must Report Your Expenses** -- "We" do not pay any expenses unless they are reported to "us" in writing within 180 days from the date of direct physical loss to covered property.

2. **Electrical And Power Supply Disturbance** --

   a. **Coverage** -- "We" cover direct physical loss to covered property caused by:

      1) "electrical disturbance"; or
      2) "power supply disturbance".

   b. **Coverage Limitation** -- "We" only cover loss caused by "electrical disturbance" and "power supply disturbance" if the cause of such disturbance took place within 500 feet of the premises where the loss occurred.

      However, if the "schedule of coverages" indicates that there is no limitation, then the 500 feet limitation described above does not apply to this Coverage Extension.

3. **Emergency Removal** --

   a. **Coverage** -- "We" pay for any direct physical loss to covered property while it is being moved or being stored to prevent a loss caused by a covered peril.

   b. **Time Limitation** -- This coverage applies for up to 365 days after the property is first moved. Also, this coverage does not extend past the date on which this policy expires.

4. **Mechanical Breakdown Coverage** -- "We" pay for loss to covered property caused by "mechanical breakdown".

Copyright, American Association of Insurance Services, Inc., 2004

# SUPPLEMENTAL COVERAGES

**Provisions That Apply To Supplemental Coverages** -- The following Supplemental Coverages indicate an applicable "limit". This "limit" may also be shown on the "schedule of coverages".

If a different "limit" is indicated on the "schedule of coverages", that "limit" will apply instead of the "limit" shown below.

However, if no "limit" is indicated for a Supplemental Coverage, coverage is provided up to the full "limit" for the applicable covered property unless a different "limit" is indicated on the "schedule of coverages".

Unless otherwise indicated, a "limit" for a Supplemental Coverage provided below is separate from, and not part of, the applicable "limit" for coverage described under Property Covered.

The "limit" available for coverage described under a Supplemental Coverage:

a. is the only "limit" avail able for the described coverage; and

b. is not the sum of the "limit" indicated for a Supplemental Coverage and the "limit" for coverage described under Property Covered.

The "limit" provided under a Supplemental Coverage cannot be combined or added to the "limit" for any other Supplemental Coverage or Coverage Extension including a Supplemental Coverage or Coverage Extension that is added to this policy by endorsement.

The following coverage extensions are not subject to and not considered in applying coinsurance conditions.

1. **New Hardware And Acquired Locations** --

   a. **Coverage** -- "We" cover direct physical loss caused by a covered peril to:

   1) additional "hardware" including pre-installed "software" that "you" purchase or lease during the policy period and that is installed at a location that is described on the "schedule of coverages"; and
   2) "hardware" and "software" at a location that "you" acquire during the policy period .

   b. **Limit** -- "We" pay up to $50,000 for:

   1) additional "hardware" that "you" purchase or lease; and
   2) "hardware" and "software" at locations that "you" acquire.

   c. **Time Limitation** -- This coverage applies for up to 60 days from the date "you" acquire the:

   1) additional "hardware" or new location; or
   2) until "you" report the additional "hardware" or new location to "us", whichever occurs first.

   However, this coverage does not go beyond the end of the policy period.

   d. **Additional Premium** -- "You" must pay any additional premium due from the date "you" acquire the additional "hardware" or new location.

2. **Pollutant Cleanup And Removal** --

   a. **Coverage** -- "We" pay "your" expense to extract "pollutants" from land or water if the discharge, dispersal, seepage, migration, release, or escape of the "pollutants" is caused by a covered peril that occurs during the policy period.

   b. **Time Limitation** -- The expenses to extract "pollutants" are paid only if they are reported to "us" in writing within 180 days from the date the covered peril occurs.

Copyright, American Association of Insurance Services, Inc., 2004

c. **We Do Not Cover** -- "We" do not pay the cost of testing, evaluating, observing, or recording the existence, level, or effects of "pollutants".

However, "we" pay the cost of testing which is necessary for the extraction of "pollutants" from land or water.

d. **Limit** -- The most "we" pay for each location is $5,000 for the sum of all such expenses arising out of a covered peril occurring during each separate 12-month period of this policy.

3. **Property In Transit And Off-Site** --

a. **Coverage** -- "We" cover direct physical loss caused by a covered peril to "hardware" and "software":

1) while in transit; or
2) in the custody of "you", "your" officers, "your" partners, or "your" employees, while:

   a) at "your" residence or the residence of "your" officers, partners, or employees;
   b) temporarily at a premises that is not described on the "schedule of coverages"; or
   c) in transit between a residence or temporary premises and a premises described on the "schedule of coverages".

b. **Limit** -- The most "we" pay in any one occurrence for loss under this Supplemental Coverage is $5,000.

# PERILS COVERED

"We" cover risks of direct physical loss unless the loss is limited or caused by a peril that is excluded.

# PERILS EXCLUDED

1. "We" do not pay for loss or damage caused directly or indirectly by one or more of the following excluded causes or events. Such loss or damage is excluded regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

a. **Civil Authority** -- "We" do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

"We" do pay for loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this coverage.

b. **Earth Movement** -- "We" do not pay for loss caused by any earth movement (other than "sinkhole collapse") or caused by eruption, explosion, or effusion of a volcano. Earth movement includes, but is not limited to: earthquake; landslide; mudflow; mudslide; mine subsidence; or sinking, rising, or shifting of earth.

"We" do cover direct loss by fire, explosion, or "volcanic action" resulting from either earth movement or eruption, explosion, or effusion of a volcano.

c. **Flood** -- "We" do not pay for loss caused by "flood". However, "we" do cover the resulting loss if fire, explosion, or sprinkler leakage results.

Copyright, American Association of Insurance Services, Inc., 2004

d. **Nuclear Hazard** -- "We" do not pay for loss caused by or resulting from a nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke. Direct loss by fire resulting from the nuclear hazard is covered.

e. **Sewer Backup And Water Below The Surface** -- "We" do not pay for loss caused by or resulting from:

   1) water that backs up through a sewer or drain; or
   2) water below the surface of the ground, including but not limited to water that exerts pressure on or flows, seeps, or leaks through or into a building or structure.

   But if sewer backup and water below the surface results in fire, explosion, or sprinkler leakage, "we" cover the loss or damage caused by that fire, explosion, or sprinkler leakage.

f. **War And Military Action** -- "We" do not pay for loss caused by:

   1) war, including undeclared war or civil war; or
   2) a warlike action by a military force, including action taken to prevent or defend against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or
   3) insurrection, rebellion, revolution, or unlawful seizure of power including action taken by governmental authority to prevent or defend against any of these.

With regard to any action that comes within the "terms" of this exclusion and involves nuclear reaction, nuclear radiation, or radioactive contamination, this War and Military Action Exclusion will apply in place of the Nuclear Hazard Exclusion.

2. "We" do not pay for loss or damage that is caused by or results from one or more of the following:

a. **Computer Virus Or Computer Hacking** -- "We" do not pay for:

   1) any direct or indirect loss or damage; or
   2) loss of access, loss of use, or loss of functionality

   caused by a "computer virus" or by "computer hacking".

b. **Contamination Or Deterioration** -- "We" do not pay for loss caused by contamination or deterioration including corrosion; decay; fungus; mildew; mold; rot; rust; or any quality, fault, or weakness in the covered property that causes it to damage or destroy itself.

   But if contamination or deterioration results in a covered peril, "we" do cover the loss or damage caused by that covered peril.

   This exclusion does not apply to loss caused by "mechanical breakdown".

c. **Criminal, Fraudulent, Dishonest, Or Illegal Acts** -- "We" do not pay for loss caused by or resulting from criminal, fraudulent, dishonest, or illegal acts alone or in collusion with another by:

   1) "you";
   2) others who have an interest in the property;
   3) others to whom "you" entrust the property;

Copyright, American Association of Insurance Services, Inc., 2004

4)  "your" partners, officers, directors, trustees, joint venturers, or "your" members or managers if "you" are a limited liability company; or
5)  the employees or agents of 1), 2), 3), or 4) above, whether or not they are at work.

This exclusion does not apply to acts of destruction by "your" employees, but "we" do not pay for theft by employees.

This exclusion does not apply to covered property in the custody of a carrier for hire.

d.  **Electrical And Power Supply Disturbance** -- "We" do not pay for loss caused by "electrical disturbance" or "power supply disturbance" if the cause of such disturbance took place more than 500 feet from the premises where the loss occurred.

But if wear and tear, or obsolescence results in a covered peril, "we" do cover the loss or damage caused by that covered peril.

However, if disturbance coverage beyond 500 feet is indicated on the "schedule of coverages", then the Electrical And Power Supply Disturbance exclusion described above is deleted.

e.  **Loss Of Use** -- "We" do not pay for loss caused by or resulting from loss of use, delay, or loss of market.

f.  **Pollutants** -- "We" do not pay for loss caused by or resulting from release, discharge, seepage, migration, dispersal, or escape of "pollutants" unless the release, discharge, seepage, migration, dispersal, or escape is caused by a "specified peril". "We" do pay for any resulting loss caused by a "specified peril".

g.  **Temperature/Humidity** -- "We" do not pay for loss to covered property caused by:

1)  dryness, dampness, humidity; or
2)  changes in or extremes of temperature.

However, "we" do pay for loss to covered property that results from a direct physical loss, caused by a covered peril, to the air conditioning system that services covered "hardware".

h.  **Wear And Tear Or Obsolescence** -- "We" do not pay for loss caused by wear and tear, depreciation, or obsolescence.

But if wear and tear, or obsolescence results in a covered peril, "we" do cover the loss or damage caused by that covered peril.

i.  **Voluntary Parting** --"We" do not pay for loss caused by or resulting from voluntary parting with title to or possession of any property because of any fraudulent scheme, trick, or false pretense.

3.  "We" do not pay for extra expenses, as described under Extra Expense Coverage, caused by or resulting from one or more of the following:

a.  **Error Or Omission In Programming** -- "We" do not pay for any extra expense caused by an error or omission in programming or incorrect instructions to "hardware".

b.  **Leases, Licenses, Contracts, Or Orders** -- "We" do not pay for any extra expense caused by the suspension, lapse, or cancellation of leases, licenses, contracts, or orders beyond the "restoration period".

c.  **Strikes, Protests, And Other Interference** -- "We" do not pay for any increase in loss due to interference by strikers or other persons at a premises described on the "schedule of coverages". This applies to interference with rebuilding, repairing, or replacing the property or with resuming "your" "business".

Copyright, American Association of Insurance Services, Inc., 2004

d. **Utility Failure** -- "We" do not pay for any extra expense caused by or resulting from the failure of a utility to supply electrical power or other utility service to a described premises, if the failure takes place away from the described premises.

"We" do not pay for loss caused by or resulting from the failure of a utility to supply service regardless of the cause of failure.

## WHAT MUST BE DONE
## IN CASE OF LOSS

1. **Notice** -- In case of a loss, "you" must:

   a. give "us" or "our" agent prompt notice, including a description of the property involved ("we" may request written notice); and

   b. give notice to the police when the act that causes the loss is a crime.

2. **You Must Protect Property** -- "You" must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss.

   a. **Payment Of Reasonable Costs** -- "We" do pay the reasonable costs incurred by "you" for necessary repairs or emergency measures performed solely to protect covered property from further damage by a peril insured against if a peril insured against has already caused a loss to covered property. "You" must keep an accurate record of such costs. "Our" payment of reasonable costs does not increase the "limit".

   b. **We Do Not Pay** -- "We" do not pay for such repairs or emergency measures performed on property which has not been damaged by a peril insured against.

3. **Proof Of Loss** -- "You" must send "us", within 60 days after "our" request, a signed, sworn proof of loss. This must include the following information:

   a. the time, place, and circumstances of the loss;

   b. other policies of insurance that may cover the loss;

   c. "your" interest and the interests of all others in the property involved, including all mortgages and liens;

   d. changes in title of the covered property during the policy period; and

   e. estimates, specifications, inventories, and other reasonable information that "we" may require to settle the loss.

4. **Examination** -- "You" must submit to examination under oath in matters connected with the loss as often as "we" reasonably request and give "us" sworn statements of the answers. If more than one person is examined, "we" have the right to examine and receive statements separately and not in the presence of others.

5. **Records** -- "You" must produce records, including tax returns and bank microfilms of all canceled checks relating to value, loss, and expense and permit copies and extracts to be made of them as often as "we" reasonably request.

6. **Damaged Property** -- "You" must exhibit the damaged and undamaged property as often as "we" reasonably request and allow "us" to inspect or take samples of the property.

7. **Volunteer Payments** -- "You" must not, except at "your" own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage.

Copyright, American Association of Insurance Services, Inc., 2004

8. **Abandonment** -- "You" may not abandon the property to "us" without "our" written consent.

9. **Cooperation** -- "You" must cooperate with "us" in performing all acts required by this policy.

## VALUATION

1. **Hardware** -- The following is the value of "hardware":

   a. **Replacement Cost** -- The value of "hardware" will be based on replacement cost without any deduction for depreciation unless Actual Cash Value is indicated on the "schedule of coverages".

      1) **Replacement Cost Limitation** -- The replacement cost is limited to the cost of repair or replacement with similar materials on the same site and used for the same purpose. The payment will not exceed the amount "you" spend to repair or replace the damaged or destroyed property.
      2) **Replacement Cost Does Not Apply Until Repair Or Replacement** -- Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced.
      3) **Time Limitation** -- "You" may make a claim for actual cash value before repair or replacement takes place, and later for the replacement cost if "you" notify "us" of "your" intent within 180 days after the loss.

   b. **Actual Cash Value** -- When Actual Cash Value is indicated on the "schedule of coverages", the value of "hardware" will be based on the actual cash value at the time of the loss with a deduction for depreciation.

2. **Software** -- The following is the value of "software":

   a. **Programs And Applications** --

      1) **Cost To Reinstall** -- The value of "programs and applications" will be based on the cost to reinstall the "programs or applications" from the licensed discs that were originally used to install the programs or applications.
      2) **If The Original Discs Are Lost** -- If the original licensed discs are lost, damaged, or can no longer be obtained, the value of "programs and applications" will be based on the cost of the most current version of the "programs or applications".

   b. **Proprietary Programs** --

      1) **Cost Of Reproduction** -- The value of "proprietary programs" will be based on the cost of reproduction from duplicate copies. The cost of reproduction includes, but is not limited to, the cost of labor to copy or transcribe from duplicate copies.
      2) **If Duplicate Copies Do Not Exist** -- If duplicate copies do not exist, the value of "proprietary programs" will be based on the cost of research or other expenses necessary to reproduce, replace, or restore lost "proprietary programs".

   c. **Data Records** --

      1) **Cost Of Reproduction** -- The value of "data records" will be based on the cost of reproduction from duplicate copies. The cost of reproduction includes, but is not limited to, the cost of labor to copy or transcribe from duplicate copies.

Copyright, American Association of Insurance Services, Inc., 2004

2) **If Duplicate Copies Do Not Exist** -- If duplicate copies do not exist, the value of "data records" will be based on the cost of research or other expenses necessary to reproduce, replace, or restore lost files, documents, and records.

d. **Media** -- The value of "media" will be based on the cost to repair or replace the "media" with material of the same kind or quality.

3. **Pair Or Set** --

a. **Reasonable Proportion Of Value** -- The value of a lost or damaged article which is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

b. **Provision Does Not Apply To Software** -- The Pair or Set provision does not apply to "software" that comes in sets. If part of a "software" set cannot be replaced, the loss is considered a total loss of the set.

4. **Loss To Parts** -- The value of a lost or damaged part of an item that consists of several parts when it is complete is based on the value of only the lost or damaged part or the cost to repair or replace it.

5. **Extra Expense** -- In determining extra expenses that "you" have incurred, "we" consider the salvage value of any property bought for temporary use during the "restoration period" and it will be deducted from the amount of loss determined for extra expense.

---

# HOW MUCH WE PAY

1. **Insurable Interest** -- "We" do not cover more than "your" insurable interest in any property.

2. **Deductible** -- "We" pay only that part of "your" loss over the deductible amount indicated on the "schedule of coverages" in any one occurrence.

3. **Loss Settlement Terms** -- Subject to paragraphs 1., 2., 4., 5., and 6. under How Much We Pay, "we" pay the lesser of:

a. the amount determined under Valuation;

b. the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable; or

c. the "limit" that applies to the covered property.

4. **Coinsurance** --

a. **When Coinsurance Applies** -- "We" only pay a part of the loss if the "limit" is less than the percentage of the value of "hardware" or "software" that is indicated on the "schedule of coverages".

b. **How We Determine Our Part Of The Loss** -- "Our" part of the loss is determined using the following steps:

1) multiply the percent indicated on the "schedule of coverages" by the value of the covered property at the time of loss;
2) divide the "limit" for covered property by the result determined in b.1) above;
3) multiply the total amount of loss, after the application of any deductible, by the result determined in b.2) above.

The most "we" pay is the amount determined in b.3) above or the "limit", whichever is less. "We" do not pay any remaining part of the loss.

c. **If There Is More Than One Limit** -- If there is more than one "limit" indicated on the "schedule of coverages" for this coverage part, this procedure applies separately to each "limit".

Copyright, American Association of Insurance Services, Inc., 2004

d. **If There Is Only One Limit** -- If there is only one "limit" indicated on the "schedule of coverages" for this coverage, this procedure applies to the total of all covered property to which the "limit" applies.

e. **When Coinsurance Does Not Apply** -- Conditions for coinsurance do not apply unless a coinsurance percentage is indicated on the "schedule of coverages".

5. **Insurance Under More Than One Coverage** -- If more than one coverage of this policy insures the same loss, "we" pay no more than the actual claim, loss, or damage sustained.

6. **Insurance Under More Than One Policy** --

a. **Proportional Share** -- "You" may have another policy subject to the same "terms" as this policy. If "you" do, "we" will pay "our" share of the covered loss. "Our" share is the proportion that the applicable "limit" under this policy bears to the "limit" of all policies covering on the same basis.

b. **Excess Amount** -- If there is another policy covering the same loss, other than that described above, "we" pay only for the amount of covered loss in excess of the amount due from that other policy, whether "you" can collect on it or not. But "we" do not pay more than the applicable "limit".

## LOSS PAYMENT

1. **Loss Payment Options** --

a. **Our Options** -- In the event of loss covered by this coverage form, "we" have the following options:

1) pay the value of the lost or damaged property;

2) pay the cost of repairing or replacing the lost or damaged property;

3) rebuild, repair, or replace the property with other property of equivalent kind and quality, to the extent practicable, within a reasonable time; or

4) take all or any part of the property at the agreed or appraised value.

b. **Notice Of Our Intent To Rebuild, Repair, Or Replace** -- "We" must give "you" notice of "our" intent to rebuild, repair, or replace within 30 days after receipt of a duly executed proof of loss.

2. **Your Losses** --

a. **Adjustment And Payment Of Loss** -- "We" adjust all losses with "you". Payment will be made to "you" unless another loss payee is named in the policy.

b. **Conditions For Payment Of Loss** -- An insured loss will be payable 30 days after:

1) a satisfactory proof of loss is received; and

2) the amount of the loss has been established either by written agreement with "you" or the filing of an appraisal award with "us".

3. **Property Of Others** --

a. **Adjustment And Payment Of Loss To Property Of Others** -- Losses to property of others may be adjusted with and paid to:

1) "you" on behalf of the owner; or
2) the owner.

b. **We Do Not Have To Pay You If We Pay The Owner** -- If "we" pay the owner, "we" do not have to pay "you". "We" may also choose to defend any suits arising from the owners at "our" expense.

Copyright, American Association of Insurance Services, Inc., 2004

# OTHER CONDITIONS

1. **Appraisal** -- If "you" and "we" do not agree on the amount of the loss or the actual cash value of covered property, either party may demand that these amounts be determined by appraisal.

   If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court of record in the state where the property is located to select an umpire.

   The appraisers will then determine and state separately the amount of each loss.

   The appraisers will also determine the value of covered property items at the time of the loss, if requested.

   If the appraisers submit a written report of any agreement to "us", the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three sets the amount of the loss.

   Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by "you" and "us".

2. **Benefit To Others** -- Insurance under this coverage will not directly or indirectly benefit anyone having custody of "your" property.

3. **Conformity With Statute** -- When a condition of this coverage is in conflict with an applicable law, that condition is amended to conform to that law.

4. **Estates** -- This provision applies only if the insured is an individual.

   a. **Your Death** -- On "your" death, "we" cover the following as an insured:

      1) the person who has custody of "your" property until a legal representative is qualified and appointed; or
      2) "your" legal representative.

      This person or organization is an insured only with respect to property covered by this coverage.

   b. **Policy Period Is Not Extended** -- This coverage does not extend past the policy period indicated on the declarations.

5. **Misrepresentation, Concealment, Or Fraud** -- This coverage is void as to "you" and any other insured if, before or after a loss:

   a. "you" or any other insured have willfully concealed or misrepresented:

      1) a material fact or circumstance that relates to this insurance or the subject thereof; or
      2) "your" interest herein.

   b. there has been fraud or false swearing by "you" or any other insured with regard to a matter that relates to this insurance or the subject thereof.

6. **Policy Period** -- "We" pay for a covered loss that occurs during the policy period.

7. **Recoveries** -- If "we" pay "you" for the loss and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

   a. "you" must notify "us" promptly if "you" recover property or receive payment;

   b. "we" must notify "you" promptly if "we" recover property or receive payme nt;

Copyright, American Association of Insurance Services, Inc., 2004

c.  any recovery expenses incurred by either are reimbursed first;

d.  "you" may keep the recovered property but "you" must refund to "us" the amount of the claim paid, or any lesser amount to which "we" agree; and

e.  if the claim paid is less than the agreed loss due to a deductible or other limiting "terms" of this policy, any recovery will be pro rated between "you" and "us" based on "our" respective interest in the loss.

8.  **Restoration Of Limits** -- A loss "we" pay under this coverage does not reduce the applicable "limits".

9.  **Subrogation** -- If "we" pay for a loss, "we" may require "you" to assign to "us" "your" right of recovery against others. "You" must do all that is necessary to secure "our" rights. "We" do not pay for a loss if "you" impair this right to recover.

"You" may waive "your" right to recover from others in writing before a loss occurs.

10. **Suit Against Us** -- No one may bring a legal action against "us" under this coverage unless:

a.  all of the "terms" of this coverage have been complied with; and

b.  the suit has been brought within two years after "you" first have knowledge of the loss.

If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by law.

11. **Territorial Limits** -- "We" cover property while it is in the United States of America, its territories and possessions, Canada, and Puerto Rico.

**IM 7203 10 04**

Copyright, American Association of Insurance Services, Inc., 2004

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES

For a covered "auto" licensed or principally garaged in Georgia, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Liability Coverage**

1. Liability Coverage is primary for an "auto" you don't own if operated by the "insured" and owned by a retail seller of "autos".

2. If you are a retail seller of "autos", the insurance is excess for an "auto" you own if operated by an "insured" other than you or your "employee".

3. The **Expected Or Intended Injury** Exclusion is replaced by the following:

   This insurance does not apply to "bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

   However, this exclusion does not apply for coverage up to the minimum limit specified by the Georgia Motor Vehicle Safety Responsibility Act.

**B. Changes In Physical Damage Coverage**

1. If collision coverage is provided, the collision coverage is primary for an "auto" you don't own if operated by the "insured" and owned by a retail seller of "autos".

2. If you are a retail seller of "autos", the collision insurance is excess for an "auto" you own if operated by an "insured" other than you or your "employee".

3. The "Diminution In Value" exclusion does not apply.

**C.** Paragraph **A.6.** of the **Cancellation** Common Policy Condition is replaced by the following:

If notice is mailed, a receipt provided by, or such other evidence of mailing as prescribed or accepted by, the U.S. Postal Service shall be sufficient proof of notice.

**D.** Paragraph **2.a.** of **Duties In The Event Of Accident, Claim, Suit Or Loss** is replaced by the following:

   **a.** In the event of "accident", claim, "suit" or "loss", we or our representative must receive prompt notice of the "accident" or "loss". Include:

   **(1)** How, when and where the "accident" or "loss" occurred;

   **(2)** The "insured's" name and address; and

   **(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

   The requirement for giving notice of a claim, if not satisfied by the "insured" within 30 days of the date of the "accident", may be satisfied by an injured third party who, as the result of such "accident", has a claim against the "insured". However, in this event, notice of a claim given by an injured third party must be mailed to us.

**E.** The **Concealment, Misrepresentation Or Fraud** Condition is replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We will not pay for any "loss" or damage in any case of:

1. Concealment or misrepresentation of a material fact; or

2. Fraud

committed by you or any other "insured", at any time, and relating to coverage under this policy.

© ISO Properties, Inc., 2004

**F.** The last sentence in the **Appraisal For Physical Damage Loss** Condition in the Business Auto, Motor Carrier and Truckers Coverage Forms and the **Appraisal** Condition in the Business Auto Physical Damage Coverage Form is replaced by the following:

We do not waive any of our rights under this policy by agreeing to an appraisal.

© ISO Properties, Inc., 2004 □

**Policy Number:**

**Georgia Amendment of Policy Provisions**

This endorsement modifies insurance provided under the following:

I. **AUTO MEDICAL PAYMENTS COVERAGE ENDORSEMENT**

   Paragraph **1.** of **E. Changes In Conditions** is deleted.

II. **UNINSURED MOTORISTS COVERAGE ENDORSEMENT**

   A. Paragraphs **1. c.** and **2. b.** of **B. Who Is An Insured** are deleted.

   B. Paragraph **3.** of **D. Limit Of Insurance** is replaced by the following:

   **3.** The Limit of Insurance under this coverage shall be reduced by:

   **a.** All sums paid or payable under any workers compensation law, exclusive of nonoccupational disability benefits.

   **b.** All sums paid or payable by or for anyone who is legally responsible, including all sums paid under this Coverage Form's Liability Coverage.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGES IN COVERAGE FORMS – MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

**A.** The **Operations** Exclusion under **Section II – Liability Coverage** of all coverage forms, except the Business Auto Physical Damage Coverage Form, is replaced by the following:

   **9. Operations**

   "Bodily injury", "property damage" or "covered pollution cost or expense" arising out of the operation of:

   **a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

   **b.** Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law where it is licensed or principally garaged.

**B.** The **Definitions** Section is amended as follows:

   **1.** The definition of "Auto" is replaced by the following:

   "Auto" means:

   **a.** Any land motor vehicle, "trailer" or semi-trailer designed for travel on public roads; or

   **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

   **2.** The following is added to the definition of "Mobile equipment" in all coverage forms, except the Business Auto Physical Damage Coverage Form:

   However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

© ISO Properties, Inc., 2004

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAR EXCLUSION

This endorsement modifies insurance provided under the following:

> BUSINESS AUTO COVERAGE FORM
> BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM
> SINGLE INTEREST AUTOMOBILE PHYSICAL DAMAGE INSURANCE POLICY
> TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

## A. Changes In Liability Coverage

The War exclusion under Paragraph **B. Exclusions** of **Section II – Liability Coverage** is replaced by the following:

**WAR**

"Bodily injury", "property damage" or "covered pollution cost or expense" arising directly or indirectly, out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## B. Changes In Garagekeepers Coverage

If the Garagekeepers Coverage endorsement or the Garagekeepers Coverage – Customers' Sound Receiving Equipment endorsement is attached, the following exclusion is added:

We will not pay for "loss" caused by or resulting from the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss":

**WAR**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## C. Changes In Auto Medical Payments

If the Auto Medical Payments Coverage endorsement is attached, then Exclusion **C.6.** is replaced by the following:

**6.** "Bodily injury", arising directly or indirectly, out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Changes In Uninsured/Underinsured Motorists Coverage

If Uninsured and/or Underinsured Motorists Coverage is attached, then the following exclusion is added:

This insurance does not apply to:

**WAR**

**1.** "Bodily injury" or "property damage", if applicable, arising directly or indirectly, out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   **c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**E. Changes In Personal Injury Protection Coverage**

**1.** If Personal Injury Protection, no-fault, or other similar coverage is attached, and:

   **a.** Contains, in whole or in part, a War exclusion, that exclusion is replaced by Paragraph **2.**

   **b.** Does not contain a war exclusion, Paragraph **2.** is added.

**2.** This insurance does not apply to:

**WAR**

"Bodily injury" or "property damage", if applicable, arising directly or indirectly, out of:

   **a.** War, including undeclared or civil war;

   **b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   **c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**F. Changes In Single Interest Automobile Physical Damage Insurance Policy**

The War exclusion is replaced by the following:

   **a.** War, including undeclared or civil war;

   **b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   **c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

© ISO Properties, Inc., 2003 □

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

**SECTION I – COVERED AUTOS**

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| **1** | Any "Auto" | |
| **2** | Owned "Autos" Only | Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| **3** | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| **4** | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| **5** | Owned "Autos" Subject To No-Fault | Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged. |
| **6** | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| **7** | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| **8** | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| **9** | Nonowned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs. |

## B. Owned Autos You Acquire After The Policy Begins

1. If Symbols **1, 2, 3, 4, 5** or **6** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

## C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

## SECTION II – LIABILITY COVERAGE

## A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

## 1. Who Is An Insured

The following are "insureds":

a. You for any covered "auto".

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

   (1) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

   (2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

   (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

   (4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

   (5) A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

2. **Coverage Extensions**

   a. **Supplementary Payments**

      In addition to the Limit of Insurance, we will pay for the "insured":

      (1) All expenses we incur.

      (2) Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

      (3) The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

      (4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

      (5) All costs taxed against the "insured" in any "suit" against the "insured" we defend.

      (6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

   b. **Out-Of-State Coverage Extensions**

      While a covered "auto" is away from the state where it is licensed we will:

      (1) Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

      (2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

      We will not pay anyone more than once for the same elements of loss because of these extensions.

B. **Exclusions**

   This insurance does not apply to any of the following:

   1. **Expected Or Intended Injury**

      "Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

   2. **Contractual**

      Liability assumed under any contract or agreement.

      But this exclusion does not apply to liability for damages:

      a. Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

      b. That the "insured" would have in the absence of the contract or agreement.

   3. **Workers' Compensation**

      Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

   4. **Employee Indemnification And Employer's Liability**

      "Bodily injury" to:

      a. An "employee" of the "insured" arising out of and in the course of:

         (1) Employment by the "insured"; or

         (2) Performing the duties related to the conduct of the "insured's" business; or

      b. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

      This exclusion applies:

         (1) Whether the "insured" may be liable as an employer or in any other capacity; and

         (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

      But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraphs **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

**(1)** When all of the work called for in your contract has been completed.

**(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

**(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

© ISO Properties, Inc., 2000

□

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage Endorsement, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

**SECTION III – PHYSICAL DAMAGE COVERAGE**

**A. Coverage**

1. We will pay for "loss" to a covered "auto" or its equipment under:

   **a. Comprehensive Coverage**

   From any cause except:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

   **b. Specified Causes Of Loss Coverage**

   Caused by:

   (1) Fire, lightning or explosion;

   (2) Theft;

   (3) Windstorm, hail or earthquake;

   (4) Flood;

   (5) Mischief or vandalism; or

   (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   **c. Collision Coverage**

   Caused by:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

2. **Towing**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   **a.** Glass breakage;

   **b.** "Loss" caused by hitting a bird or animal; and

   **c.** "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

### 4. Coverage Extensions

#### a. Transportation Expenses

We will pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

#### b. Loss Of Use Expenses

For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

**(1)** Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

**(2)** Specified Causes Of Loss only if the Declarations indicate that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

**(3)** Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

## B. Exclusions

**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

#### a. Nuclear Hazard

**(1)** The explosion of any weapon employing atomic fission or fusion; or

**(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

#### b. War Or Military Action

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**3.** We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

**a.** Wear and tear, freezing, mechanical or electrical breakdown.

**b.** Blowouts, punctures or other road damage to tires.

**4.** We will not pay for "loss" to any of the following:

**a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

**b.** Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

**c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

**d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

© ISO Properties, Inc., 2000

Exclusions **4.c.** and **4.d.** do not apply to:

**a.** Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

**b.** Any other electronic equipment that is:

**(1)** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

**(2)** An integral part of the same unit housing any sound reproducing equipment described in **a.** above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

**5.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit Of Insurance**

**1.** The most we will pay for "loss" in any one "accident" is the lesser of:

**a.** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

**SECTION IV – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment – Physical Damage Coverages**

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee – Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. Other Insurance**

**a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle you do not own.

**(2)** Primary while it is connected to a covered "auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**c.** Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

**d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

**a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**a.** The United States of America;

**b.** The territories and possessions of the United States of America;

**c.** Puerto Rico;

**d.** Canada; and

**e.** Anywhere in the world if:

**(1)** A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

**(2)** The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

## SECTION V – DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means a land motor vehicle, "trailer" or semitrailer designed for travel on public roads but does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand, order or statutory or regulatory requirement; or

**2.** Any claim or "suit" by or on behalf of a governmental authority demanding

that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured";

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract" means:

**1.** A lease of premises;

**2.** A sidetrack agreement;

**3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**5.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**6.** That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

**a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing; or

**b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

**c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**2.** Vehicles maintained for use solely on or next to premises you own or rent;

**3.** Vehicles that travel on crawler treads;

**4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    **a.** Power cranes, shovels, loaders, diggers or drills; or

    **b.** Road construction or resurfacing equipment such as graders, scrapers or rollers.

**5.** Vehicles not described in Paragraphs **1.**, **2.**, **3.**, or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **b.** Cherry pickers and similar devices used to raise or lower workers.

**6.** Vehicles not described in Paragraphs **1.**, **2.**, **3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **a.** Equipment designed primarily for:

      **(1)** Snow removal;

      **(2)** Road maintenance, but not construction or resurfacing; or

      **(3)** Street cleaning;

    **b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

**1.** Damages because of "bodily injury" or "property damage"; or

**2.** A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

    **a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

    **b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

## Asbestos, Silica, and Mixed Dust Exclusion

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
TRUCKERS COVERAGE FORM

This insurance does not apply to:

1. "Bodily injury" or "property damage" arising out of, caused by, contributed to by, or resulting from, exposure to or the use of:

   a. Asbestos including, but not limited to, the cost of abatement, mitigation, removal or disposal of asbestos from any good, product or structure;

   b. Silica; or

   c. Mixed dust.

2. Any damage or any loss, cost or expense arising out of any:

   a. Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of mixed dust, silica or asbestos, or any other material or substance containing asbestos, silica, or mixed dust; or

   b. Claim or "suit" by or on behalf of any governmental authority or any other alleged responsible party for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of mixed dust, asbestos or silica, or any other material or substance containing silica, asbestos, or mixed dust.

3. "Bodily injury" or "property damage" arising out of, caused by, contributed to by, or resulting from, supervision, instruction, recommendations, warnings or advice given or which should have been given in connection with any of the substances named in **1.a.**, **b.**, or **c.**

4. Any obligation to share damages with or repay someone else in connection with any of the substances named in **1.a.**, **b.**, or **c.**

5. As used in this endorsement:

   a. Silica means a group of naturally occurring crystalline forms of silicon dioxide, including but not limited to, quartz and sand.

   b. Mixed dust means a mixture of dusts composed of silica or asbestos or one or more other dusts.

**Policy Changes - Who Is An Insured**

This endorsement modifies insurance provided under the following:

**Business Auto Coverage Form**

Paragraph **1.b(1)** of **Who Is An Insured** in **Section II - Liability Coverage** is deleted and replaced by:

**(1)** The owner or anyone else from whom you hire or borrow a covered "auto", including their agents or employees. This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AUTO MEDICAL PAYMENTS COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

## A. Coverage

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident".  We will pay only those expenses incurred, for services rendered within three years from the date of the "accident".

## B. Who Is An Insured

1. You while "occupying" or, while a pedestrian, when struck by any "auto".

2. If you are an individual, any "family member" while "occupying" or, while a pedestrian, when struck by any "auto".

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto".  The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

## C. Exclusions

This insurance does not apply to any of the following:

1. "Bodily injury" sustained by an "insured" while "occupying" a vehicle located for use as a premises.

2. "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by you or furnished or available for your regular use.

3. "Bodily injury" sustained by any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for the regular use of any "family member".

4. "Bodily injury" to your "employee" arising out of and in the course of employment by you. However, we will cover "bodily injury" to your domestic "employees" if not entitled to workers' compensation benefits. For the purposes of this endorsement, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. "Bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

6. "Bodily injury" caused by declared or undeclared war or insurrection or any of their consequences.

7. "Bodily injury" to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

8. "Bodily Injury" sustained by an "insured" while "occupying" any covered "auto" while used in any professional racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply to any "bodily injury" sustained by an "insured" while the "auto" is being prepared for such a contest or activity.

## D. Limit Of Insurance

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" injured in any one "accident" is the Limit Of Insurance for Auto Medical Payments Coverage shown in the Declarations.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage and any Liability Coverage Form, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

**E. Changes In Conditions**

The Conditions are changed for Auto Medical Payments Coverage as follows:

**1.** The Transfer Of Rights Of Recovery Against Others To Us Condition does not apply.

**2.** The reference in Other Insurance in the Business Auto and Garage Coverage Forms and Other Insurance – Primary And Excess Insurance Provisions in the Truckers and Motor Carrier Coverage Forms to "other collectible insurance" applies only to other collectible auto medical payments insurance.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

**2.** "Occupying" means in, upon, getting in, on, out or off.

Copyright, Insurance Services Office, Inc.,  1996          **CA 99 03 07 97**   ◻

Auto Medical Payments Coverage Changes

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER AUTO MEDICAL PAYMENTS COVERAGE - CA 99 03.**

The following is added to Paragraph E. **Changes in Conditions**

3. We have the right to utilize outside sources, vendors, experts, consultants, and software tools of our choosing to review the medical expense invoices and medical records to assist us in determining, among other things, if the expenses and treatment are reasonable and necessary.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** We will pay, as interest may appear, you and the loss payee named in the policy for "loss" to a covered "auto".

**B.** The insurance covers the interest of the loss payee unless the "loss" results from conversion, secretion or embezzlement on your part.

**C.** We may cancel the policy as allowed by the CANCELLATION Common Policy Condition.

Cancellation ends this agreement as to the loss payee's interest. If we cancel the policy we will mail you and the loss payee the same advance notice.

**D.** If we make any payments to the loss payee, we will obtain his or her rights against any other party.

| Endorsement | CA 87 |
|---|---|

**Policy Number:**

**BLANKET ADDITIONAL INSURED - LESSOR
AND LOSS PAYEE**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**Description of "Leased Autos":**

All "Autos" leased or rented from the Lessors identified in the Schedule below:

**Blanket Additional Insured & Loss Payee Schedule:**

**Additional Insured**                          **Address**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**BLANKET ADDITIONAL INSURED - LESSOR AND LOSS PAYEE**

Policy Number:

## A. Coverage

1. Any "leased auto" designated or described in the Schedule will be considered a covered "auto".

2. For a "leased auto" designated or described in the Schedule, **Who Is An Insured** is changed to include as an "insured" the lessor named in the Schedule. However, the lessor is an "insured" only for "bodily injury" or "property damage" resulting from the acts or omissions by:

   **a.** You;

   **b.** Any of your "employees" or agents; or

   **c.** Any person, except the lessor or any "employee" or agent of the lessor, operating a "leased auto" with the permission of any of the above.

3. The coverages provided under the policy apply to any "leased auto" described in the Schedule until the expiration date of the policy, or when the lessor or his or her agent takes possession of the "leased auto", whichever occurs first.

## B. Loss Payable Clause

1. We will pay, as interest may appear, you and the lessor named in this endorsement for "loss" to a "leased auto".

2. The insurance covers the interest of the lessor unless the "loss" results from fraudulent acts or omissions on your part.

3. If we make any payment to the lessor, we will obtain his or her rights against any other party.

## C. Cancellation

1. If we cancel the policy, we will mail notice to the lessor in accordance with the Cancellation Common Policy Condition.

2. If you cancel the policy, we will mail notice to the lessor.

3. Cancellation ends this agreement.

## D. The lessor is not liable for payment of your premiums.

## E. Additional Definition

As used in this endorsement:

"Leased auto" means an "auto" leased or rented to you, including any substitute, replacement or extra "auto" needed to meet seasonal or other needs, under a written leasing or rental agreement that requires you to provide direct primary insurance for the lessor.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Grange Mutual Casualty Company
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | CR 01 |
|---|---|

Policy Number:

**Policy Change-Crime Coverage**

This Endorsement Changes The Policy. Please Read It Carefully.

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
EMPLOYEE THEFT & FORGERY POLICY

## A. PROVISIONS

1. Application of changes affected by Endorsement IL 16 POLICY CHANGES:

   a. **Addition of a Deductible or Increase in Deductible Amount:** This change applies to loss or damage resulting from acts committed or events occurring at any time, whether before or after the Effective Date of Change.

   b. **Deletion or Restriction (other than in a. above) of any Coverage or Decrease in** any Limit of Insurance: This change applies to loss or damage resulting from acts committed or events occurring:

      (1) On or after the Effective Date of Change; and also
      (2) Before the Effective Date of Change if discovered by you after 1 year from that date.

   c. **All Changes Other Than in a. and b. Above:** This change applies to loss or damage resulting from acts committed or events occurring on or after the Effective Date of Change.

2. No Limit of Insurance during any period will be cumulative with any other amount applicable to the same coverage during any other period.

*Copyright, Insurance Services Office, Inc., 1996*

**AK1033 (08-2001)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES – CONCEALMENT, MISREPRESENTATION OR FRAUD

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE  FORM
GOVERNMENT CRIME COVERAGE FORM

**A.** The **Concealment, Misrepresentation or Fraud** Condition is replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We will not pay for any loss or damage in any case of:

**1.** Concealment or misrepresentation of a material fact; or

**2.** Fraud;

committed by you or any other insured, at any time, and relating to coverage under this insurance.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

  **1.** The failure, malfunction or inadequacy of:

   **a.** Any of the following, whether belonging to any insured or to others:

    **(1)** Computer hardware, including micro-processors;

    **(2)** Computer application software;

    **(3)** Computer operating systems and related software;

    **(4)** Computer networks;

    **(5)** Microprocessors (computer chips) not part of any computer system; or

    **(6)** Any other computerized or electronic equipment or components; or

   **b.** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **A.1.a.** of this endorsement;

   due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

  **2.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **A.1.** of this endorsement.

**B.** If an excluded Cause of Loss as described in Paragraph **A.** of this endorsement results:

  **1.** In a Covered Cause of Loss under the Boiler And Machinery Coverage Part, the Commercial Crime Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

  **2.** Under the Commercial Property Coverage Part:

   **a.** In a "Specified Cause of Loss", or in elevator collision resulting from mechanical breakdown, under the Causes of Loss – Special Form; or

   **b.** In a Covered Cause of Loss under the Causes Of Loss – Basic Form or the Causes Of Loss – Broad Form;

  we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss", elevator collision, or Covered Cause of Loss.

**C.** We will not pay for repair, replacement or modification of any items in Paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiencies or change any features.

 © ISO Properties, Inc.,  2000

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT – DELETE PROVISIONS REGARDING CERTAIN ACTS OF TERRORISM (APPLICABLE TO CRIME/FIDELITY ONLY) – GEORGIA

This endorsement modifies insurance provided under the following:

> COMMERCIAL CRIME COVERAGE FORM
> GOVERNMENT CRIME COVERAGE FORM
> KIDNAP/RANSOM AND EXTORTION COVERAGE FORM

Any endorsement in this policy that refers to "certified act(s) of terrorism" is hereby amended to the effect that such endorsement does not apply to the Commercial Crime Coverage Form, Government Crime Coverage Form, or Kidnap/Ransom And Extortion Coverage Form.

The inapplicability or omission of a terrorism exclusion does not serve to create coverage for any loss or damage that would otherwise be excluded under this Coverage Form, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of,  "pollutants".

| Endorsement | CG 44 |
|---|---|

**Policy Number:**

**Medical Payment Changes**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER COMMERCIAL GENERAL LIABILITY COVERAGE FORM - CG 00 01.**

**UNDER SECTION I - COVERAGES, COVERAGE C MEDICAL PAYMENTS, 1. INSURING AGREEMENT, THE FOLLOWING IS ADDED:**

**C.** We have the right to utilize outside sources, vendors, experts, consultants, and software tools of our choosing to review the medical expense invoices and medical records to assist us in determining, among other things, if the expenses and treatment are reasonable and necessary.

**AAIS**
**IM 2021 04 04**
**Page 1 of 1**

This endorsement changes
the policy
**-- PLEASE READ THIS CAREFULLY --**

# AMENDATORY ENDORSEMENT
## GEORGIA

Under Perils Excluded, Criminal, Fraudulent, Dishonest, Or Illegal Acts, if applicable, is amended to include the following:

However, if the loss is caused by an intentional act of an insured against whom a family violence complaint is brought for the act causing this loss, this exclusion will not apply to an otherwise covered loss suffered by another insured who did not cooperate with or contribute to the act that caused the loss.

Subject to all other "terms" of this policy, "our" payment to an insured who did not cooperate in or contribute to the act that caused the loss may be limited to that person's insurable interest in the property, less any payment made to a mortgagee or other party with a legal secured interest in the property. "We" retain all rights set forth in the Subrogation condition of this policy with regard to action against the perpetrator of the act that caused the loss.

**IM 2021 04 04**

Copyright, American Association of Insurance Services, Inc., 2004

# TRANSPORTATION COVERAGE

## AGREEMENT

In return for "your" payment of the required premium, "we" provide the coverage described herein subject to all the "terms" of the Transportation Coverage. This coverage is also subject to the "declarations" and additional policy conditions relating to assignment or transfer of rights or duties, cancellation, changes or modifications, inspections, and examination of books and records.

Endorsements and schedules may also apply. They are identified on the "declarations".

Refer to Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks or bold type.

## DEFINITIONS

1. The words "you" and "your" mean the persons or organizations named as the insured on the "declarations".

2. The words "we", "us", and "our" mean the company providing this coverage.

3. "Any one aircraft" means any one aircraft, airplane, helicopter, dirigible, or any machine capable of flight.

4. "Any one carrier for hire" means any one vehicle, truck, trailer, semitrailer, or combination of these pulled by one power unit operated by a carrier for hire.

5. "Any one owned vehicle" means any one vehicle, truck, trailer, semitrailer, or combination of these pulled by one power unit owned by "you" or leased by "you" and that is operated by "you".

6. "Any one railroad car" means any one railroad car, boxcar, tank car, flat car, or similar rolling stock including any railroad car transporting property in or on one or more trucks, trailers, semitrailers, or other containers.

7. "Declarations" means all pages labeled Declarations, Supplemental Declarations, or Schedules, which pertain to this coverage.

8. "Limit" means the amount of coverage that applies.

9. "Pollutant" means:

   a. any solid, liquid, gaseous, thermal, or radioactive irritant or contaminant, including acids, alkalis, chemicals, fumes, smoke, soot, vapor, and waste. Waste includes materials to be disposed of as well as recycled, reclaimed, or reconditioned.

   b. electrical or magnetic emissions, whether visible or invisible, and sound emissions.

10. "Specified perils" means fire; lightning; windstorm; hail; collision, overturn, or derailment of a transporting conveyance; collapse of a bridge or culvert; and theft.

11. "Terms" means all provisions, limitations, exclusions, conditions, and definitions that apply.

## PROPERTY COVERED

1. "We" cover direct physical loss caused by a covered peril to property described on the "declarations". When a "limit" for a mode of transportation is indicated on the "declarations" "we" cover described property while in due course of transit on or in:

a. "any one aircraft";

b. "any one owned vehicle";

c. "any one carrier for hire"; or

d. "any one railroad car".

2. When a "limit" is indicated for a terminal location, "we" cover direct physical loss caused by a covered peril to described property while at a terminal location described on the "declarations" or within 100 feet of the described terminal.

   "We" only cover property at a terminal location if the covered property is in due course of transit.

3. If covered property includes property of others "we" only cover such property to the extent of "your" legal liability for direct physical loss caused by a covered peril.

## PROPERTY NOT COVERED

1. **Art, Antiques and Fur**-- "We" do not cover objects of art, antiques, or fur garments.

2. **Carrier For Hire** -- "We" do not cover property of others that "you" are responsible for as a:

   a. carrier for hire; or

   b. as an arranger of transportation; this includes carloader, consolidator, broker, freight forwarder, or shipping association.

3. **Contraband** -- "We" do not cover contraband or property in the course of illegal transportation or trade.

4. **Exports and Imports**-- "We" do not cover exported or imported property:

a. that is covered under any ocean marine cargo policy that anyone has obtained covering exports or imports; or

b. while on an ocean or air conveyance.

5. **Jewelry, Stones and Metals**-- "We" do not cover jewelry, precious or semi-precious stones, gold, silver, platinum, or other precious metals or alloys.

6. **Lease Agreement** -- "We" do not cover property for which "you" are contractually liable under a lease agreement with any transportation carrier.

7. **Live Animals**-- "We" do not cover animals including cattle or poultry unless death is caused or made necessary by a "specified peril".

8. **Mail** -- "We" do not cover mail shipments in the custody of the U.S. Postal Service.

9. **Money and Securities** -- "We" do not cover accounts, bills, currency, food stamps, or other evidences of debt, lottery tickets not held for sale, money, notes, or securities.

10. **Samples** -- "We" do not cover samples while in the custody of a sales representative.

11. **Storage** -- "We" do not cover property held in storage.

## ADDITIONAL COVERAGES

1. **Debris Removal** -- "We" pay the cost to remove the debris of covered property that is caused by a covered peril. This coverage does not include costs to:

   a. extract "pollutants" from land or water; or

b. remove, restore, or replace polluted land or water.

"We" will not pay any more under this coverage than 25% of the amount "we" pay for the direct loss. "We" will not pay more for loss to property and debris removal combined than the "limit" for the damaged property.

However, "we" pay an additional amount of debris removal expense up to $5,000 when the debris removal expense exceeds 25% of the amount "we" pay for direct loss or when the loss to property and debris removal combined exceeds the "limit" for the damaged property.

"We" do not pay any expenses unless they are reported to "us" in writing within 180 days from the date of direct physical loss to covered property.

2. **Emergency Removal** -- "We" pay for loss to covered property while it is moved or being moved to prevent a loss caused by a covered peril. "We" pay for any direct physical loss caused by a peril that is not excluded. This coverage applies for up to ten days after the property is first moved, but does not extend past the date on which this policy expires.

3. **Pollutant Cleanup and Removal** -- "We" pay "your" expense to extract "pollutants" from land or water if the discharge, dispersal, seepage, migration, release, or escape of the "pollutants" is caused by a covered peril that occurs during the policy period. The expenses are paid only if they are reported to "us" in writing within 180 days from the date the covered peril occurs.

"We" do not pay the cost of testing, evaluating, observing, or recording the existence, level, or effects of "pollutants". However, "we" pay the cost of testing which is necessary for the extraction of "pollutants" from land or water.

The most "we" pay for each site or location is $10,000 for the sum of all such expenses arising out of a covered peril occurring during each separate 12 month period of this policy.

4. **Rejected Shipments** -- "We" pay for loss caused by a covered peril to outgoing shipments of covered property that have been rejected by the consignee, including shipments that are not deliverable. "We" cover rejected shipments while:

a. in due course of transit back to "you"; or

b. awaiting return shipment to "you".

This additional coverage will end ten days after delivery has been attempted or made to the consignee unless the covered property is in due course of transit back to "you".

## PERILS COVERED

"We" cover external risks of direct physical loss unless the loss is limited or caused by a peril that is excluded.

## PERILS EXCLUDED

1. "We" do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

a. **Civil Authority** -- "We" do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

"We" do pay for loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this coverage.

b. **Nuclear Hazard** -- "We" do not pay for loss caused by or resulting from a nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke. "We" do pay for direct loss by fire resulting from the nuclear hazard.

c. **War** -- "We" do not pay for loss caused by war. This means:

1) declared war, undeclared war, civil war, insurrection, rebellion, or revolution;
2) a warlike act by a military force or by military personnel;
3) the destruction, seizure, or use of the property for a military purpose; or
4) the discharge of a nuclear weapon even if it is accidental.

2. "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss.

a. **Criminal, Fraudulent, or Dishonest Acts** -- "We" do not pay for loss caused by or resulting from criminal, fraudulent, dishonest, or illegal acts alone or in collusion with another by:

1) "you";
2) others who have an interest in the property;
3) others to whom "you" entrust the property;
4) "your" partners, officers, directors, trustees, or joint adventurers; or

5) the employees or agents of 1), 2), 3), or 4) above, whether or not they are at work.

This exclusion does not apply to acts of destruction by "your" employees, but "we" do not pay for theft by employees.

This exclusion does not apply to covered property in the custody of a carrier for hire.

b. **Loss of Use** -- "We" do not pay for loss caused by or resulting from loss of use, business interruption, delay, or loss of market.

c. **Missing Property** -- "We" do not pay for missing property where the only proof of loss is unexplained or mysterious disappearance of covered property, or shortage of property discovered on taking inventory, or any other instance where there is no physical evidence to show what happened to the covered property. This exclusion does not apply to covered property in the custody of a carrier for hire.

d. **Pollutants** -- "We" do not pay for loss caused by or resulting from release, discharge, seepage, migration, dispersal, or escape of "pollutants" unless the release, discharge, seepage, migration, dispersal, or escape is caused by a "specified peril". "We" do pay for any resulting loss caused by a "specified peril".

e. **Voluntary Parting** -- "We" do not pay for loss caused by or resulting from voluntary parting with title to or possession of any property because of any fraudulent scheme, trick, or false pretense.

"We" do cover loss to covered property caused by false bills of lading or shipping receipts that "you" accept in good faith.

3.  "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss. But if loss by a "specified peril" results "we" will pay for the resulting loss.

    a.  **Contamination or Deterioration**-- "We" do not pay for loss caused by contamination or deterioration including corrosion; decay; fungus; mildew; mold; rot; rust; or any quality, fault, or weakness in the covered property that causes it to damage or destroy itself.

    b.  **Temperature/Humidity**-- "We" do not pay for loss caused by humidity, dampness, dryness, or changes in or extremes of temperature.

    c.  **Wear and Tear** -- "We" do not pay for loss caused by wear and tear.

---

## WHAT MUST BE DONE IN CASE OF LOSS

---

1.  **Notice** -- In case of a loss, "you" must:

    a.  give "us" or "our" agent prompt notice including a description of the property involved ("we" may request written notice); and

    b.  give notice to the police when the act that causes the loss is a crime.

2.  **Protect Property** -- "You" must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss. "We" do pay the reasonable costs incurred by "you" for necessary repairs or emergency measures performed solely to protect covered property from further damage by a peril insured against if a peril insured against has already caused a loss to covered property. "You" must keep an accurate

record of such costs. However, "we" do not pay for such repairs or emergency measures performed on property which has not been damaged by a peril insured against. This does not increase "our" "limit".

3.  **Proof of Loss**-- "You" must send "us", within 60 days after "our" request, a signed, sworn proof of loss. This must include the following information:

    a.  the time, place, and circumstances of the loss;

    b.  other policies of insurance that may cover the loss;

    c.  "your" interest and the interests of all others in the property involved, including all mortgages and liens;

    d.  changes in title of the covered property during the policy period; and

    e.  estimates, specifications, inventories, and other reasonable information that "we" may require to settle the loss.

4.  **Examination** -- "You" must submit to examination under oath in matters connected with the loss as often as "we" reasonably request and give "us" sworn statements of the answers. If more than one person is examined, "we" have the right to examine and receive statements separately and not in the presence of others.

5.  **Records** -- "You" must produce records, including tax returns and bank microfilms of all cancelled checks relating to value, loss, and expense and permit copies and extracts to be made of them as often as "we" reasonably request.

6.  **Damaged Property** -- "You" must exhibit the damaged and undamaged property as often as "we" reasonably request and allow "us" to inspect or take samples of the property.

7. **Volunteer Payments**-- "You" must not, except at "your" own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage.

8. **Abandonment**-- "You" may not abandon the property to "us" without "our" written consent.

9. **Cooperation** -- "You" must cooperate with "us" in performing all acts required by this policy.

## VALUATION

1. **Invoice, Actual CashValue** -- The value of covered property is based on the invoice amount plus accrued costs, pre-paid charges, and charges since shipment.

   In the absence of an invoice the value of covered property will be based on the actual cash value at the time of loss (with a deduction for depreciation) except as provided in paragraphs 2.and 3. under Valuation.

2. **Pair or Set** -- The value of a lost or damaged article which is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

3. **Loss to Parts** -- The value of a lost or damaged part of an item that consists of several parts when it is complete is based on the value of only the lost or damaged part or the cost to repair or replace it.

## HOW MUCH WE PAY

1. **Insurable Interest**-- "We" do not cover more than "your" insurable interest in any property.

2. **Deductible** -- "We" pay only that part of "your" loss over the deductible amount indicated on the "declarations" in any one occurrence.

3. **Loss Settlement Terms**-- Subject to paragraphs 1., 2., 4., and 5.under How Much We Pay, "we" pay the lesser of:

   a. the amount determined under Valuation;

   b. the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable; or

   c. the "limit" that applies to the mode of transportation or terminal location indicated on the "declarations". In no event will "we" pay more than the catastrophe "limit" indicated on the "declarations" regardless if a loss involves:

      1) one or more modes of transportation;
      2) one or more terminal locations; or
      3) any combination of modes of transportation or terminal locations.

   When a railroad car is transporting a truck, trailer, or semitrailer, the "limit" for a railroad car applies. In no event will "we" combine the "limit" for "any one owned vehicle" or the "limit" for "any one carrier for hire" with the "limit" for "any one railroad car".

   When a truck, trailer, or semitrailer is situated within a terminal building or within 100 feet of a terminal building, the "limit" for

terminal locations applies. In no event will "we" combine the "limit" for "any one owned vehicle" or the "limit" for "any one carrier for hire" with the "limit" for terminal locations.

4. **Insurance Under More Than One Coverage** -- If more than one coverage of this policy insures the same loss, "we" pay no more than the actual claim, loss, or damage sustained.

5. **Insurance Under More Than One Policy** -- "You" may have another policy subject to the same "terms" as this policy. If "you" do, "we" will pay "our" share of the covered loss. "Our" share is the proportion that the applicable "limit" under this policy bears to the "limit" of all policies covering on the same basis.

   If there is another policy covering the same loss, other than that described above, "we" pay only for the amount of covered loss in excess of the amount due from that other policy, whether "you" can collect on it or not. But "we" do not pay more than the applicable "limit".

## LOSS PAYMENT

1. **Our Options** -- "We" have the following options:

   a. pay the value of the loss;

   b. pay the cost of repairing or replacing the loss;

   c. rebuild, repair, or replace with property of like kind and quality, to the extent practicable, within a reasonable time;

   d. take all or any part of the damaged property at the agreed or appraised value.

"We" must give "you" notice of "our" intent to rebuild, repair, or replace within 30 days after receipt of a duly executed proof of loss.

2. **Your Losses** -- "We" adjust all losses with "you". Payment will be made to "you" unless another loss payee is named in the policy. An insured loss will be payable 30 days after a satisfactory proof of loss is received, and the amount of the loss has been established either by written agreement with "you" or the filing of an appraisal award with "us".

3. **Property of Others** -- Losses to property of others may be adjusted with and paid to:

   a. "you" on behalf of the owner; or

   b. the owner.

   If "we" pay the owner, "we" do not have to pay "you". "We" may also choose to defend any suits arising from the owners at "our" expense.

## OTHER CONDITIONS

1. **Appraisal** -- If "you" and "we" do not agree on the amount of the loss or the actual cash value of covered property, either party may demand that these amounts be determined by appraisal.

   If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court of record in the state where the property is located to select an umpire.

The appraisers will then determine and state separately the amount of each loss.

The appraisers will also determine the value of covered property items at the time of the loss, if requested.

If the appraisers submit a written report of any agreement to "us", the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three sets the amount of the loss.

Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by "you" and "us".

2.  **Benefit to Others** -- Insurance under this coverage shall not directly or indirectly benefit anyone having custody of "your" property.

3.  **Conformity With Statute** -- When a condition of this coverage is in conflict with an applicable law, that condition is amended to conform to that law.

4.  **Estates** -- This provision applies only if the insured is an individual.

    On "your" death, "we" cover the following as an insured:

    a.  the person who has custody of "your" property until a legal representative is qualified and appointed; or

    b.  "your" legal representative.

    This person or organization is an insured only with respect to property covered by this coverage.

    This coverage does not extend past the policy period indicated on the "declarations".

5.  **Misrepresentation, Concealment, or Fraud** -- This coverage is void as to "you" and any other insured if, before or after a loss:

    a.  "you" or any other insured have willfully concealed or misrepresented:

        1)  a material fact or circumstance that relates to this insurance or the subject thereof; or
        2)  "your" interest herein; or

    b.  there has been fraud or false swearing by "you" or any other insured with regard to a matter that relates to this insurance or the subject thereof.

6.  **Policy Period** -- "We" pay for a covered loss that occurs during the policy period.

7.  **Recoveries** -- If "we" pay "you" for the loss and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

    a.  "you" must notify "us" promptly if "you" recover property or receive payment;

    b.  "we" must notify "you" promptly if "we" recover property or receive payment;

    c.  any recovery expenses incurred by either are reimbursed first;

    d.  "you" may keep the recovered property but "you" must refund to "us" the amount of the claim paid, or any lesser amount to which "we" agree; and

    e.  if the claim paid is less than the agreed loss due to a deductible or other limiting "terms" of this policy, any recovery will be pro rated between "you" and "us" based on "our" respective interest in the loss.

8.  **Restoration of Limits** -- A loss "we" pay under this coverage does not reduce the applicable "limits".

9. **Subrogation** -- If "we" pay for a loss, "we" may require "you" to assign to "us" "your" right of recovery against others. "You" must do all that is necessary to secure "our" rights. "We" do not pay for a loss if "you" impair this right to recover.

"You" may waive "your" right to recover from others in writing before a loss occurs.

10. **Suit Against Us** -- No one may bring a legal action against "us" under this coverage unless:

   a. all of the "terms" of this coverage have been complied with; and

   b. the suit has been brought within two years after "you" first have knowledge of the loss.

If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by law.

11. **Territorial Limits** -- "We" cover property while:

   a. at a location in; or

   b. in transit between or within

   the United States of America, its territories and possessions, Canada, and Puerto Rico.

12. **Carriers For Hire** -- "You" may accept bills of lading or shipping receipts issued by carriers for hire that limit their liability to less than the actual cash value of the covered property.

IM-7250  Ed 1.0
Copyright  MCMXCIV
American Association of Insurance Services

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   **a.** Make inspections and surveys at any time;

   **b.** Give you reports on the conditions we find; and

   **c.** Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   **a.** Are safe or healthful; or

   **b.** Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 □

| Endorsement | IL 43 |
|---|---|

**Policy Number:**

**Common Policy Conditions Changes**

THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.

THIS ENDORSEMENT MODIFIES INSURANCE
PROVIDED UNDER COMMON POLICY
CONDITIONS - IL 00 17.

The following condition is added:

**G. Our Right to Use Other Resources**

You and any insured seeking coverage under
this policy agree that we have the right to utilize
outside sources, vendors, experts, consultants,
and software tools of our choosing to assist us in
underwriting, pricing, and issuing our insurance
policies and to assist us in adjusting claims.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **A.1.** of the **Cancellation** Common Policy Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

**a.** If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

**b.** If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days' notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation.

Our notice will state the effective date of cancellation, which will be the later of the following:

**(1)** 10 days from the date of mailing or delivering our notice; or

**(2)** The effective date of cancellation stated in the first Named Insured's notice to us.

**B.** Paragraph **A.5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5. Premium Refund**

**a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

**b.** If we cancel, the refund will be pro rata, except as provided in **c.** below.

**c.** If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

**d.** If the first Named Insured cancels, the refund may be less than pro rata.

**e.** The cancellation will be effective even if we have not made or offered a refund.

 © Insurance Services Office, Inc., 2014

**C.** The following is added to the **Cancellation** Common Policy Condition and supersedes any other provisions to the contrary:

If we decide to:

1. Cancel or nonrenew this policy; or

2. Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

3. Change any policy provision which would limit or restrict coverage;

then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us. Except as applicable as described in Paragraph **D.** or **E.** below, we will mail or deliver notice at least:

    **a.** 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

    **b.** 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

    **c.** 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

**D.** The following provisions apply to insurance covering residential real property only provided under the:

Capital Assets Program (Output Policy) Coverage Part;

Commercial Property Coverage Part;

Farm Coverage Part;

if the named insured is a natural person.

With respect to such insurance, the following is added to the **Cancellation** Common Policy Condition and supersedes any provisions to the contrary except as applicable as described in Paragraph **E.:**

1. When this policy has been in effect for 60 days or less and is not a renewal with us, we may cancel for any reason by notifying the first Named Insured at least 10 days before the date cancellation takes effect.

2. When this policy has been in effect for more than 60 days, or at any time if it is a renewal with us, we may cancel for one or more of the following reasons:

    **a.** Nonpayment of premium, whether payable to us or to our agent;

    **b.** Upon discovery of fraud, concealment of a material fact, or material misrepresentation made by or with the knowledge of any person insured under this policy in obtaining this policy, continuing this policy or presenting a claim under this policy;

    **c.** Upon the occurrence of a change in the risk which substantially increases any hazard insured against; or

    **d.** Upon the violation of any of the material terms or conditions of this policy by any person insured under this policy.

We may cancel by providing notice to the first Named Insured at least:

    **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    **(2)** 45 days before the effective date of cancellation if we cancel for any of the reasons listed in **b., c.** or **d.** above.

**E.** With respect to a policy that is written to permit an audit, the following is added to the **Cancellation** Common Policy Condition:

If you fail to submit to or allow an audit for the current or most recently expired term, we may cancel this policy subject to the following:

1. We will make two documented efforts to send you and your agent notification of potential cancellation. After the second notice has been sent, we have the right to cancel this policy by mailing or delivering a written notice of cancellation to the first Named Insured at least 10 days before the effective date of cancellation, but not within 20 days of the first documented effort.

2. If we cancel this policy based on your failure to submit to or allow an audit, we will send the written notice of cancellation to the first Named Insured at the last known mailing address by certified mail or statutory overnight delivery with return receipt requested.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

  **1.** The failure, malfunction or inadequacy of:

    **a.** Any of the following, whether belonging to any insured or to others:

      **(1)** Computer hardware, including micro-processors;

      **(2)** Computer application software;

      **(3)** Computer operating systems and related software;

      **(4)** Computer networks;

      **(5)** Microprocessors (computer chips) not part of any computer system; or

      **(6)** Any other computerized or electronic equipment or components; or

    **b.** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **A.1.a.** of this endorsement;

    due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

  **2.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **A.1.** of this endorsement.

**B.** If an excluded Cause of Loss as described in Paragraph **A.** of this endorsement results:

  **1.** In a Covered Cause of Loss under the Crime and Fidelity Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

  **2.** Under the Commercial Property Coverage Part:

    **a.** In a "Specified Cause of Loss", or in elevator collision resulting from mechanical breakdown, under the Causes of Loss – Special Form; or

    **b.** In a Covered Cause of Loss under the Causes Of Loss – Basic Form or the Causes Of Loss – Broad Form;

we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss", elevator collision, or Covered Cause of Loss.

**C.** We will not pay for repair, replacement or modification of any items in Paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiencies or change any features.

© ISO Properties, Inc., 2001

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

> COMMERCIAL AUTOMOBILE COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> PROFESSIONAL LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

  **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

  **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

  **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

  **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

  **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

 © ISO Properties, Inc.,  2001  ☐

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

   **(a)** Any "nuclear reactor";

   **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

   **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

| Endorsement | IL 19 |
|---|---|

**Policy Number:**

**Manufacturers' Optimum Endorsement**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUSINESS COMPUTER COVERAGE FORM
CAUSES OF LOSS - SPECIAL FORM
COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL CRIME COVERAGE FORM (LOSS SUSTAINED)

The following is a summary of the coverage modifications, extensions and additions provided in this endorsement. The limits, unless stated otherwise, and deductibles shown below apply at each designated location. If a limit is shown elsewhere in the policy for any of these coverages, then that limit applies in addition to the limits shown below. If a different deductible amount is shown in the policy for any of these coverages, then that deductible will be the applicable deductible.

A separate limit of $500,000 applies on a **Per Loss Aggregate** basis to those coverages shown below that are designated **PLA**. This **Per Loss Aggregate** Limit applies separately at each location designated on the policy Declarations. At the time of loss, the first Named Insured may elect to apportion this **Per Loss Aggregate** Limit of Insurance to any one or any combination of those coverages, but under no circumstances will the aggregate apportionment be permitted to exceed $500,000 at any one designated location. For complete details of the coverages provided, refer to the specific policy language.

## BUILDING AND BUSINESS PERSONAL PROPERTY COVERAGES SUBJECT TO THE PER LOSS AGGREGATE

| LIMIT | DEDUCTIBLE | SUBJECT OF INSURANCE | PAGE |
|---|---|---|---|
| PLA | Property Deductible | Accounts Receivable | 10 |
| PLA | None | Claim Expense | 11 |
| PLA | Property Deductible | Computer | 19 |
| PLA | Property Deductible | Consequential Loss Assumption | 16 |
| PLA | Property Deductible | Fine Arts Not Held For Sale | 16 |
| PLA | None | Fire Department Service Charge | 6 |
| PLA | Property Deductible | Mobile Equipment On Premises | 17 |
| PLA | Property Deductible | Personal Effects And Property Of Others (Maximum Of $1,000 Per Employee For Loss Or Damage By Theft) | 13 |
| PLA | None | Recharge Of Fire Protection Equipment | 10 |

*continued...*

| Endorsement | IL 19 | **Policy Number:** |

**Manufacturers' Optimum Endorsement**

| LIMIT | DEDUCTIBLE | SUBJECT OF INSURANCE | PAGE |
|---|---|---|---|
| 10% of Loss Subject To PLA | None | Reward Payment | 9 |
| PLA | Property Deductible | Utility Services - Direct Damage | 17 |
| PLA | Property Deductible | Valuable Papers And Records (Other Than Electronic Data) | 14 |

**BUILDING AND BUSINESS PERSONAL PROPERTY COVERAGES SUBJECT TO A SPECIFIC LIMIT OF INSURANCE**

| LIMIT | DEDUCTIBLE | SUBJECT OF INSURANCE | PAGE |
|---|---|---|---|
| $50,000 Building | Property Deductible | Appurtenant Structures | 18 |
| $5,000 BPP | Property Deductible | Appurtenant Structures | 18 |
| $10,000 | Property Deductible | Backup Of Sewer And Drains | 12 |
| $25,000 | Property Deductible | Brands And Labels | 17 |
| $10,000 | Property Deductible | Business Personal Property Temporarily In Portable Storage Units | 15 |
| $25,000 | None | Computer Fraud | 13 |
| Included in BPP Limit | Property Deductible | Contents Of Fuel Storage Tanks | 6 |
| $25,000 Per Occurrence; $100,000 Annual Aggregate | Property Deductible | Contractual Penalties | 12 |
| $250,000 | Property Deductible | Dies, Patterns And Molds | 19 |
| $50,000 | None | Employee Theft Including ERISA | 12 |
| $25,000 | None | Forgery Or Alteration | 12 |
| 10% of Bldg. up to $250,000 | Property Deductible | Foundations Of Machinery And Equipment | 12 |
| Included In Building Limit | Property Deductible | Fuel Storage Tanks | 6 |
| $1,000 | None | Lock And Key Replacement | 12 |
| $25,000 In/Out | None | Money And Securities | 10 |
| $1,000,000 | Property Deductible | Newly Acquired Or Constructed Property - Building - 180 Days To Report | 13 |

| Endorsement | IL 19 | **Policy Number:** |

**Manufacturers' Optimum Endorsement**

| LIMIT | DEDUCTIBLE | SUBJECT OF INSURANCE | PAGE |
|---|---|---|---|
| $500,000 | Property Deductible | Newly Acquired Or Constructed Property - Business Personal Property - 180 Days To Report | 13 |
| $5,000 | Property Deductible | Non-Owned Detached Trailers | 15 |
| Included | Property Deductible | Ordinance Or Law Contingent Liability | 8 |
| $50,000 | Property Deductible | Ordinance Or Law Increased Cost Of Construction | 8 |
| $50,000 | Property Deductible | Ordinance Or Law Demolition Cost | 8 |
| $25,000 | Property Deductible | Outdoor Property | 16 |
| $25,000 | Property Deductible | Pollutant Clean-up | 6 |
| $25,000 | Property Deductible | Precious Metals | 19 |
| Included | Property Deductible | Premises Redefined To 1,000 Feet | 6 |
| 90 Days | None | Preservation Of Property | 6 |
| $100,000 $25,000 per Salesperson | Property Deductible | Property In Transit | 14 |
| $100,000-$25,000 per Salesperson | Property Deductible | Property Off-premises | 14 |
| 25% Of BPP Subject To PLA | Property Deductible | Seasonal Increase | 19 |
| Included | Property Deductible | Selling Price Valuation Of Stock | 19 |
| $25,000 | Property Deductible | Signs Whether Attached To A Building Or Not | 19 |
| $50,000 | Property Deductible | Spoilage | 17 |

**COMMERCIAL GENERAL LIABILITY COVERAGES**

| LIMIT | DEDUCTIBLE | SUBJECT OF INSURANCE | PAGE |
|---|---|---|---|
| Included | None | Additional Insured - Lessor Of Leased Equipment | 27 |
| Included | None | Additional Insured - Manager Or Lessor Of Premises | 28 |
| Included | None | Additional Insured - Required By Contract | 26 |

| Endorsement | IL 19 |
| --- | --- |

**Policy Number:**

**Manufacturers' Optimum Endorsement**

| LIMIT | DEDUCTIBLE | SUBJECT OF INSURANCE | PAGE |
| --- | --- | --- | --- |
| Included | None | Additional Insured - Vendors | 28 |
| Included | None | Aggregate Limit Per Location | 25 |
| Included | None | Blanket Primary And Noncontributory | 31 |
| Included | None | Broad Form Named Insured | 26 |
| Included | None | Coverage For Injury To Leased Workers | 20 |
| $300,000 | None | Damage To Premises Rented To You - Increased Limit | 20 |
| $25,000 | None | Damage To Your Products | 22 |
| Included | None | Duties In The Event Of Occurrence, Offense, Claim Or Suit - Redefined | 31 |
| $10,000 | None | Electronic Data Liability | 30 |
| Included | None | Expected Or Intended Injury | 20 |
| Included | None | Incidental Medical Malpractice | 29 |
| Included | None | Liberalization Clause | 32 |
| $25,000 Each Occurrence/$50,000 Aggregate | $250 | Limited Care, Custody Or Control Coverage | 23 |
| $5,000 Each Occurrence | $100 | Lost Key Coverage | 21 |
| $10,000 | None | Medical Payments | 30 |
| Included | None | Mobile Equipment Redefined To 1,000 Pounds | 32 |
| Included | None | Newly Formed Or Acquired Organizations - 180 Days To Report | 29 |
| Included | None | Non-Owned Aircraft Hired, Chartered Or Loaned With Paid Crew | 20 |
| Included | None | Non-Owned Watercraft Redefined To 51 Feet | 20 |
| $25,000 | None | Property Damage To Borrowed Equipment | 22 |
| $25,000 | None | Property Damage To Customers Goods | 22 |

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | IL 19 |
| --- | --- |

**Policy Number:**

**Manufacturers' Optimum Endorsement**

| LIMIT | DEDUCTIBLE | SUBJECT OF INSURANCE | PAGE |
| --- | --- | --- | --- |
| $2,500 | None | Supplementary Payments Increased Limits - Bonds | 26 |
| $500 per day | None | Supplementary Payments Increased Limits - Earnings | 26 |
| Included | None | Unintentional Failure To Disclose Hazards | 32 |
| $5,000 Each Occurrence/ $25,000 Aggregate | $250 | Voluntary Property Damage | 24 |
| Included | None | Waiver Of Transfer Of Rights Of Recovery Against Others To Us | 31 |

Grange Mutual Casualty Company
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | IL 19 |

**Policy Number:**

**Manufacturers' Optimum Endorsement**

The following changes apply to the BUILDING AND PERSONAL PROPERTY COVERAGE FORM.

I. The following amends specified provisions stated under **Section A. Coverage** :

1. Item **1. Covered Property a. Building (5)(b)** is replaced with the following:

   (b) Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

2. The following is added under item **a. Building** as **Covered Property** :

   (6) Fuel tanks, including the piping, pumps and equipment connected to it, installed above or below ground.

3. The first paragraph of item **1. Covered Property b. Your Business Personal Property** is replaced with the following:

   **b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the building or structure or within 1,000 feet of the premises described in the Declarations, whichever distance is greater.

4. The following is added under item **b. Your Business Personal Property** :

   (8) Contents of any fuel tanks, including the piping, pumps and equipment connected to it, installed above or below ground.

   (9) Personal Property Of Others that is:

   (a) In your care, custody or control; and

   (b) located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the building or structure

or within 1,000 feet of the premises described in the Declarations, whichever distance is greater.

5. Item **1.c. Personal Property Of Others** is deleted.

II. The following amends specified provisions stated under **Section A. Coverage 4. Additional Coverages** :

1. Item **b. Preservation Of Property (2)** is replaced with the following:

   (2) Only if the loss or damage occurs within 90 days after the property is first moved.

2. Item **c. Fire Department Service Charge** is replaced with the following:

   **c. Fire Department Service Charge**

   When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to the $500,000 Per Loss Aggregate Limit for certain coverages specified in this endorsement for your liability for fire department service charges:

   (1) Assumed by contract or agreement prior to loss; or

   (2) Required by local ordinance.

   No Deductible applies to this Additional Coverage.

3. The last paragraph of item **d. Pollutant Clean-up And Removal** is replaced with the following:

   The most we will pay under this Additional Coverage for each described premises is $25,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

4. Item **e. Increased Cost Of Construction** is replaced in its entirety with the following:

Grange Mutual Casualty Company
P.O. Box 1218
Columbus, Ohio 43216-1218

**Policy Number:**

**Manufacturers' Optimum Endorsement**

e. **Ordinance Or Law**

(1) The coverages provided by this endorsement apply only if **(1)(a)** and **(1)(b)** are satisfied and they are then subject to the qualifications set forth in **(1)(c)**.

(a) The ordinance or law:

(i) Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

(ii) is in force at the time of loss.

But coverage under this endorsement applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered.

(b)(i) The building sustains direct physical damage that is covered under this policy and as a result of such damage you are required to comply with the ordinance or law; or

(ii) The building sustains both direct physical damage that is covered under this policy and direct physical damage that is not covered under this policy, and as a result of the building damage in its entirety you are required to comply with the ordinance or law.

(iii) But if the building sustains direct physical damage that is not covered under this policy, and such damage is the subject of the ordinance or law, then

there is no coverage under this endorsement even if the building has also sustained covered direct physical damage.

(c) In the situation described in **(1)(b)(ii)** above, we will not pay for the full amount of loss otherwise payable under the terms of the coverages provided by this endorsement. Instead, we will pay a proportion of such loss; meaning the proportion that the covered direct physical loss bears to the total direct physical damage.

However, if the covered direct physical damage, alone, would have resulted in a requirement to comply with the ordinance or law, then we will pay the full amount of loss otherwise payable under the terms of this endorsement.

(2) We will not pay under this endorsement for:

(a) Enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence of, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

(b) The costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

| Endorsement | IL 19 |
| --- | --- |

**Policy Number:**

**Manufacturers' Optimum Endorsement**

**(3)** Coverage

**(a)** With respect to the building that has sustained covered direct physical damage, we will pay for the loss in value of the undamaged portion of the building as a consequence of a requirement to comply with an ordinance or law that requires the demolition of undamaged parts of the same building.

This Additional Coverage is included within the Limit of Insurance shown in the Declarations as applicable to the covered building. This does not increase the Limit of Insurance.

**(b)** With respect to the building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of a requirement to comply with an ordinance or law that requires demolition of such undamaged property.

The most we will pay for loss or damage under this **Additional Coverage, e.(3)(b)** is $50,000 at each described premises. This is additional insurance.

**(c) (1)** With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:

**(i)** Repair or reconstruct damaged portions of that building; and/or

**(ii)** Reconstruct or remodel undamaged portions of that building, whether or not

demolition is required;

when the increased cost is a consequence of a requirement to comply with the minimum standards of the ordinance or law.

However:

**(i)** This additional coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

**(ii)** We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

**(2)** When a building is damaged or destroyed and **e.(3)(c)(1)** applies to that building, coverage for the increased cost of construction also applies to repair or reconstruction of the following subject to the same conditions stated in **e.(3)(c)(1)** :

**(i)** The cost of excavations, grading, backfilling and filling;

**(ii)** Foundation of the building;

**(iii)** Pilings; and

**(iv)** Underground pipes, flues and drains.

The items listed in **(2)(i)** through **(2)(iv)** above are deleted from Property Not Covered, but only

Grange Mutual Casualty Company
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | IL 19 |

Policy Number:

**Manufacturers' Optimum Endorsement**

with respect to the coverage described in this provision **(c)(2)**.

We will not pay for the increased cost of construction:

**(i)** Until the property is actually repaired or replaced, at the same or another premises; and

**(ii)** Unless repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

The most we will pay for loss or damage under this **Additional Coverage, e.(3)(c)** is $50,000 at each described premises. This is additional insurance.

**(4)** If the property is repaired or replaced at the same premises or you elect to rebuild at another premises, we will not pay more than:

**(a)** The amount you actually spend to demolish and clear the site at the described premises; and

**(b)** The increased cost to repair, rebuild or construct the property at the same premises.

**(5)** If the ordinance or law requires relocation to another premises we will not pay more than:

**(a)** The amount you actually spend to demolish and clear the site at the described premises; and

**(b)** The increased cost to rebuild or construct the property at the new premises.

**(6)** Neither the Coinsurance Additional Condition nor a deductible applies to **e.(3)(b)** and **e.(3)(c)**.

**(7)** The terms of this Additional Coverage apply separately to each covered building.

**(8)** Under this Additional Coverage we will not pay for costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was damaged; and

**(b)** You failed to comply with.

**(9)** This Additional Coverage is not subject to the terms of the Ordinance or Law Exclusion, or Valuation Conditions, to the extent that such exclusions or limitations would conflict with the provisions of this Additional Coverage.

**5.** The following Additional Coverages are added:

**f. Arson, Theft And Vandalism Rewards**

We will pay on behalf of the insured for information which leads to a conviction in connection with:

**(1)** A fire loss covered under this policy caused by arson;

**(2)** An actual or attempted theft of Money or other Covered Property; or

**(3)** A vandalism loss to the described premises.

The limit for this Additional Coverage is the actual amount of the reward payment but not greater than 10% of the actual loss, subject to the $500,000 Per Loss Aggregate Limit for certain coverages specified in this endorsement.

Grange Mutual Casualty Company
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | IL 19 |
|---|---|

**Policy Number:**

## Manufacturers' Optimum Endorsement

This is additional insurance. The Coinsurance Additional Condition and Deductible do not apply to this Additional Coverage.

**g. Recharge Of Fire Protection Equipment**

We will pay your cost to recharge or replace, whichever is less, your fire extinguishers or automatic fire protection equipment when they are discharged as a result of fighting a fire caused by a Covered Cause of Loss, on or within 1,000 feet of the described premises.

The limit for this Additional Coverage is subject to the $500,000 Per Loss Aggregate Limit for certain coverages specified in this endorsement.

No Deductible applies to this Additional Coverage.

**h. Money And Securities**

Refer to **Insuring Agreements 3. Inside The Premises - Theft Of Money And Securities** and **5. Outside The Premises** of the COMMERCIAL CRIME COVERAGE FORM attached to this policy for the applicable coverage.

The coverage provided is subject to the exclusions and provisions of the COMMERCIAL CRIME COVERAGE FORM.

The most we will pay for loss under this coverage is $25,000 for **Insuring Agreement 3** and $25,000 for **Insuring Agreement 5** or the Limit of Insurance for **Insuring Agreements 3 and 5** shown in the Declarations, whichever is higher.

**i. Accounts Receivable**

We will pay for expenses you incur due to direct physical loss or damage to your accounts receivable records caused by or resulting from a Covered Cause of Loss

at a location described in the Declarations.

(1) The expenses we will pay include:

(a) Amounts due from your customers that you are unable to collect because of direct physical loss or damage to your accounts receivable records;

(b) Interest charges on any loan required to offset amounts you are unable to collect because of direct physical loss or damage to your accounts receivable records, pending our payment of these amounts;

(c) Collection expenses in excess of your normal collection expenses that are made necessary because of direct physical loss or damage to your accounts receivable records; and

(d) Other reasonable expenses that you incur to reestablish your records of accounts receivable.

(2) We will not pay expenses for loss or damage under this Additional Coverage caused by or resulting from any of the following:

(a) Bookkeeping, accounting or billing errors or omissions;

(b) Electrical or magnetic injury, disturbance or erasure of electronic "Data" or "Media" records, except as a result of direct physical loss caused by lightning;

(c) Alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of

Grange Mutual Casualty Company
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | IL 19 |

**Policy Number:**

**Manufacturers' Optimum Endorsement**

money, securities or other property; or

(d) Unauthorized instructions to transfer property to any person or any place.

(3) We will not pay expenses for loss or damage under this Additional Coverage for an audit of records or any inventory computation to prove its factual existence.

The limit for this Additional Coverage is subject to the $500,000 Per Loss Aggregate Limit for certain coverages specified in this endorsement.

The following loss conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

(1) If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss, the following method will be used:

(a) Determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurred; and

(b) Adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

(2) The following will be deducted from the total amount of accounts receivable, regardless of how that amount is established:

(a) The amount of the accounts for

which there is no loss or damage;

(b) The amount of the accounts you are able to reestablish and collect;

(c) An amount to allow for probable bad debts that you are normally unable to collect; and

(d) All unearned interest and service charges.

Additional Definitions:

As used in this Additional Coverage **i.**:

"Data" means facts, concepts or instructions that are converted into a form usable in data processing operations. This includes computer programs.

"Media" means the materials on which "data" is recorded, such as magnetic tapes, discs, drums, paper tapes, cards and programs. This includes "data" stored on the "media".

**j. Claim Expense**

(1) In the event of covered loss or damage, we will pay for all reasonable expenses you incur at our request to assist us in:

(a) The investigation of a claim or suit; or

(b) The determination of the amount of loss, such as taking inventory.

(2) We will not pay for:

(a) Expenses to prove that the loss or damage is covered;

(b) Expenses incurred under **Section E. Loss Conditions 2. Appraisal** ; or

(c) Expenses incurred for examinations under oath, even if required by us.

| Endorsement | IL 19 |
| --- | --- |

**Manufacturers' Optimum Endorsement**

The limit for this Additional Coverage is subject to the $500,000 Per Loss Aggregate Limit for certain coverages specified in this endorsement.

**k. Forgery Or Alteration**

Refer to **Insuring Agreement 2. Forgery Or Alteration** of the COMMERCIAL CRIME COVERAGE FORM, CR 00 21, attached to this policy for the applicable coverage. The coverage provided is subject to the exclusions and provisions of the COMMERCIAL CRIME COVERAGE FORM.

The most we will pay for loss under this coverage is $25,000 for **Insuring Agreement 2** or the Limit of Insurance for **Insuring Agreement 2** shown in the Declarations, whichever is higher.

**l. Employee Theft**

Refer to **Insuring Agreement 1. Employee Theft** of the COMMERCIAL CRIME COVERAGE FORM, CR 00 21, attached to this policy for the applicable coverage. The coverage provided is subject to the exclusions and provisions of the COMMERCIAL CRIME COVERAGE FORM.

The most we will pay for loss under this coverage is $50,000 for **Insuring Agreement 1** or the Limit of Insurance for **Insuring Agreement 1** shown in the Declarations, whichever is higher.

**m. Lock And Key Replacement**

We will pay up to $1,000 per occurrence for the cost to repair or replace the door locks and/or tumblers at the described premises due to theft of your door keys.

**n. Contractual Penalties**

We will pay for contractual penalties

imposed by written contract between you and your customers. These penalties must:

(1) Result from your failure to deliver your product on time according to contract terms;

(2) Result from direct physical loss or damage to Covered Property by a Covered Cause of Loss; and

(3) Have been paid by you to your customer.

The most we will pay under this coverage is $25,000 per occurrence with a $100,000 annual aggregate limit.

**o. Foundations Of Machinery And Equipment**

We will pay up to 10% of the Building Limit of Insurance as shown in the Declarations, but not more than $250,000, for loss or damage to foundations of machinery and equipment caused by a Covered Cause of Loss.

**p. Water That Backs Up From A Sewer Or Drain**

We will pay for direct physical loss of or damage to Covered Property caused by or resulting from:

(1) Water that backs up from a sewer or drain; or

(2) Water that enters into and overflows from within a:

(a) Sump pump;
(b) Sump pump well; or
(c) Other type systems;

designed to remove subsurface water which is drained from the foundation area.

**Manufacturers' Optimum Endorsement**

The most we will pay for loss or damage in any one occurrence is $10,000 or the Limit of Insurance shown in the Schedule for **Water That Backs Up From A Sewer Or Drain** at each described premises.

**q. Computer Fraud**

Refer to **Insuring Agreement 6. Computer Fraud,** of the COMMERCIAL CRIME COVERAGE FORM, CR 00 21, attached to this policy for the applicable coverage. The coverage provided is subject to the exclusions and provisions of the COMMERCIAL CRIME COVERAGE FORM.

The most we will pay for loss under this coverage is $25,000 for **Insuring Agreement 6** or the Limit of Insurance for **Insuring Agreement 6** shown in the Declarations, whichever is higher.

III. **Section A. Coverage 5. Coverage Extensions** is replaced in its entirety with the following:

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

(1) You may extend the insurance that applies to Building to apply to:

(a) Your new building while being built on the described premises; and

(b) Buildings you acquire at locations, other than the described premises, intended for:

(i) Similar use as the building described in the Declarations; or

(ii) Use as a warehouse.

The most we will pay for loss or damage under this Extension is $1,000,000 at each building.

(2) You may extend the insurance that applies to Your Business Personal Property to apply to that property at any location you construct or acquire other than at fairs or exhibitions. The most we will pay for loss or damage under this Extension is $500,000 at each building.

(3) Insurance provided under this Coverage Extension for each Newly Acquired Or Constructed Property will end when any of the following first occurs:

(a) This policy expires;

(b) 180 days expire after you acquire or begin to construct the property; or

(c) You report values to us.

We will charge you additional premium for values reported from the date construction begins or you acquire the property.

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to personal effects owned by you, your officers, your partners or members, your managers or your employees.

Grange Mutual Casualty Company
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | IL 19 |
|---|---|

Policy Number:

**Manufacturers' Optimum Endorsement**

The limit for this Extension is subject to the $500,000 Per Loss Aggregate Limit for certain coverages specified in this endorsement. However, the most we will pay under this extension for loss or damage by theft of employees tools is $1,000 per employee. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

c. **Valuable Papers And Records (Other Than Electronic Data)**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered - Electronic Data.

(2) If the CAUSES OF LOSS - SPECIAL FORM applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

(3) The limit for this Extension is subject to the $500,000 Per Loss Aggregate Limit for certain coverages specified in this endorsement. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and therefore coverage of such costs is not additional insurance.

d. **Property Off-premises**

You may extend the insurance provided by this Coverage Form to apply to your Covered Property that is temporarily at a location you do not own, lease or operate; in storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or that is in the care, custody or control of your salespersons. This Extension applies only if loss or damage is caused by a Covered Cause of Loss.

This extension does not apply to Covered Property in or on a vehicle.

The most we will pay for loss or damage under this Extension is $100,000 but not more than:

(1) $25,000 per salesperson; or

(2) $50,000 at any fair, trade show or exhibition.

e. **Property In Transit**

You may extend the insurance provided by this Coverage Form to apply to your Covered Property (including property that is in the care, custody or control of your salesperson) in transit in or on a motor vehicle you own, lease or operate while between points within the coverage territory and more than 1,000 feet from the described premises. Loss or damage must be caused by or result from one of the following causes of loss:

(1) Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

(2) Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the road bed.

| Endorsement | IL 19 |
| --- | --- |

**Manufacturers' Optimum Endorsement**

**(3)** Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

The most we will pay for loss or damage under this Extension is $100,000, but not more than $25,000 per salesperson, per occurrence.

**f. Non-owned Detached Trailers**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

**(a)** The trailer is used in your business;

**(b)** The trailer is in your care, custody or control at the premises described in the Declarations; and

**(c)** You have a contractual responsibility to pay for loss or damage to the trailer.

**(2)** We will not pay for any loss or damage that occurs:

**(a)** While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle is in motion.

**(b)** During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or a motorized conveyance.

**(3)** The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

**(4)** This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g. Business Personal Property Temporarily In Portable Storage Units**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 1,000 feet of the building or structure described in the Declarations or within 1,000 feet of the premises described in the Declarations, whichever distance is greater.

**(2)** If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

**(3)** Coverage under this Extension:

**(a)** Will end 90 days after the business personal property has been placed in the storage unit;

**(b)** Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

**(4)** Under this Extension, the most we will pay for the total of all loss or damage to business personal property

| Endorsement | IL 19 |
| --- | --- |

**Manufacturers'. Optimum Endorsement**

is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

**(5)** This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy and does not apply to loss or damage to the storage unit itself.

**h. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof) including debris removal expense, caused by or resulting from any of the following causes of loss:

**(1)** Fire;
**(2)** Lightning;
**(3)** Explosion;
**(4)** Riot or Civil Commotion; or
**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $25,000. This limit applies to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises

the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**i. Fine Arts**

You may extend the insurance provided by this Coverage Form to apply to Fine Arts owned by you or in your care, custody or control, that are not held for sale by you, at the premises in the Declarations.

As used in this Extension, Fine Arts means paintings, etchings, pictures, tapestries, art glass windows, and other bona fide works of art or rarity, historical value or artistic merit.

The limit for this Coverage Extension is subject to the $500,000 Per Loss Aggregate Limit for certain coverages specified in this endorsement.

In the event of a covered loss, payment for Fine Arts will be valued at the Market Value of the item(s) at the time of loss.

Coverage does not extend to Fine Arts at any fair, trade show or exhibition.

**j. Consequential Loss**

You may extend the insurance provided by this Coverage Form to pay the reduction in value of the remaining parts of "stock" when the reduction is caused by direct physical loss or damage from a Covered Cause of Loss to other parts of "stock" at the described premises.

In the application of the Coinsurance Additional Condition, the value of "stock" at any location to which this Extension applies includes the additional value that it represents in "stock" at other locations.

| Endorsement | IL 19 |
|---|---|

**Policy Number:**

### Manufacturers' Optimum Endorsement

The limit for this Coverage Extension is subject to the $500,000 Per Loss Aggregate Limit for certain coverages specified in this endorsement.

**k. Brands And Labels**

If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss, you may extend the insurance that applies to Your Business Personal Property to pay expenses you incur to:

(1) Stamp "salvage" on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

(2) Remove the brands or labels, if doing so will not physically damage the merchandise. You must relabel the merchandise or its containers to comply with the law.

The most we will pay under this Extension is $25,000 for any one occurrence during the policy period.

**l. Spoilage**

We will pay up to $50,000 at each described premises for direct physical loss or damage to Your Business Personal Property caused by a change in temperature or humidity resulting from a mechanical breakdown or malfunction of heating, refrigerating, cooling or humidity control equipment or a "power outage" at the described premises.

"Power Outage" means change in temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the described premises due to conditions beyond your control.

This Coverage Extension does not apply to:

(1) Loss or damage to heating, refrigerating, cooling or humidity control equipment; or

(2) Your Business Personal Property covered under the Property Off-premises Extension.

In the event that there is Equipment Breakdown insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from the Equipment Breakdown insurance, whether you can collect on it or not. But we will not pay more than the Limit of Insurance provided by this Extension.

The Coinsurance Additional Condition does not apply to this Extension.

**m. Mobile Equipment On Premises**

You may extend the insurance provided by this Coverage Form to apply to your mobile equipment such as forklifts, lawn mowers, tractors and similar vehicles, including equipment which you rent.

This Extension does not apply to vehicles which are licensed for use on public roads, or which are insured elsewhere.

The limit for this Coverage Extension is subject to the $500,000 Per Loss Aggregate Limit for certain coverages specified in this endorsement.

**n. Utility Services - Direct Damage**

You may extend the insurance provided by this Coverage Form to pay for loss or damage to Covered Property caused by an interruption in utility service to the described premises. The interruption in

| Endorsement | IL 19 |
|---|---|

**Policy Number:**

**Manufacturers' Optimum Endorsement**

utility service must result from direct physical loss or damage by a Covered Cause of Loss to Utility Property. Utility Property includes water supply property, communication supply property and power supply property.

**Exception:**

Coverage under this endorsement for loss or damage to Covered Property does not apply to loss or damage to electronic data, including destruction or corruption of electronic data. The term electronic data has the meaning set forth in the Coverage Form to which this endorsement applies.

As used in this Extension, **Utility Services** means:

**(1) Water Supply Services** , meaning the following types of property supplying water to the described premises:

    **(a)** Pumping stations; and
    **(b)** Water mains.

**(2) Communication Supply Services** , meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

    **(a)** Communication transmission lines, including fiber optic transmission lines;

    **(b)** Coaxial cables; and

    **(c)** Microwave radio relays except satellites.

**(3) Power Supply Services** , meaning the following types of property supplying electricity, steam or gas to the described premises:

    **(a)** Utility generating plants;
    **(b)** Switching stations;
    **(c)** Substations;
    **(d)** Transformers; and
    **(e)** Transmission lines.

As used in this Extension the term transmission lines includes all lines which serve to transmit communication service or power, including lines which may be identified as distribution lines.

The Limit of Insurance for this Extension is subject to the $500,000 Per Loss Aggregate Limit for certain coverages specified in this endorsement. Loss or damage to two or more Utility Properties arising out of the same occurrence will be considered one occurrence.

**o. Appurtenant Structures**

You may extend the insurance that applies to Building to apply to your storage buildings, your garages and your other appurtenant structures, except outdoor fixtures, at the described premises. The most we will pay for Building loss or damage under this extension is $50,000.

You may extend the insurance that applies to Business Personal Property to apply to such property in your storage buildings, your garages and your other appurtenant structures at the described premises. The most we will pay for Business Personal Property under this Extension is $5,000.

**IV. Section C. Limits Of Insurance** is replaced in its entirety with the following:

**C. Limits Of Insurance**

    **1.** The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

| Endorsement | IL 19 |

**Policy Number:**

**Manufacturers' Optimum Endorsement**

2. The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $25,000 per sign in any one occurrence.

3. The Limit of Insurance for Business Personal Property stated in the Declarations will automatically increase by 25% to provide for seasonal variations. This seasonal increase is subject to the $500,000 Per Loss Aggregate Limit for certain coverages specified in this endorsement.

4. Except as otherwise specified, the limits applicable to Additional Coverages and to Coverage Extensions are in addition to the Limit of Insurance.

5. Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

   a. Preservation of Property;
   b. Foundations of Machinery and Equipment.

V. The following amends specified provisions stated under **Section E. Loss Conditions** :

1. Item **7. Valuation c.** "Stock" is replaced with the following:

   c. We will determine the value of "stock" you own in the event of loss or damage at:

      (1) The selling price, as if no loss or damage occurred; and

      (2) Less discounts and expenses you otherwise would have had.

The following changes apply to the CAUSES OF LOSS - SPECIAL FORM.

VI. The following amends specified provisions stated under **Section C. Limitations** :

Item **3.** is replaced with the following:

3. The special limit shown for each category, **a.** through **d.** below, is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are (unless a higher limit is shown in the Declarations):

   a. $2,500 for furs, fur garments and garments trimmed with fur.

   b. $25,000 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

   c. $250,000 for patterns, dies, molds and forms.

   d. $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, **C.3.**, does not apply to Business Income Coverage or to Extra Expense Coverage.

VII. Under **Section F. Additional Coverage Extension** , Item **1. Property In Transit** is deleted in its entirety.

The following changes apply to the BUSINESS COMPUTER COVERAGE FORM as specified.

VIII. We will pay for all risks of direct physical loss, subject to the exclusions and provisions contained in BUSINESS COMPUTER COVERAGE FORM IM 7203, which is attached to and made part of this policy.

| Endorsement | IL 19 |
|---|---|

**Manufacturers' Optimum Endorsement...**

The limit for this Coverage Extension is subject to the $500,000 Per Loss Aggregate Limit for certain coverages specified in this endorsement.

Coverage may be extended up to $10,000 while the Covered Property is anywhere within the policy territory, and while in transit; however, this Extension does not increase the Limit of Insurance at each described premises.

The following changes apply to the COMMERCIAL GENERAL LIABILITY COVERAGE FORM as specified:

## IX. Expected Or Intended Injury

Exclusion **2.a.** under **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced with the following:

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" and "property damage" resulting from the use of reasonable force to protect persons or property.

## X. Coverage For Injury To Leased Workers

A. With respect to Exclusion **2.e. Employer's Liability** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** , the definition of "employee" in **Section V - Definitions** is replaced by the following:

5. "Employee" does not include a "leased worker" or "temporary worker".

## XI. Non-Owned Aircraft Hired, Chartered Or Loaned With Paid Crew

A. Exclusion **g.** under Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** does not apply to an aircraft:

1. Not owned by any insured; and

2. Hired, chartered or loaned with a paid crew.

B. Paragraph **XI.A.** is not applicable if the insured has any other insurance for "bodily injury" or "property damage" applicable to loss covered under this provision, whether such other insurance is primary, excess or any other basis. In that case, this provision **(XI.)** does not provide any insurance.

## XII. Non-Owned Watercraft

Exclusion **g.(2)** under Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced with the following:

(2) A watercraft you do not own that is:

(a) Less than 51 feet long; and
(b) Not being used to carry persons or property for a charge.

## XIII. Increased Limit For Damage To Premises Rented To You

A. **Section I - Coverage A - Bodily Injury And Property Damage Liability, 2. Exclusions** is amended as follows:

1. The fourth from the last paragraph of exclusion **j. Damage To Property** is replaced by the following:

Paragraphs **(1), (3)** and **(4)** of this Exclusion do not apply to "property damage" (other than damage by fire, lightning, explosion, smoke, or leakage from automatic fire protection systems) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as Described in **Section III - Limits Of Insurance** .

2. The last paragraph of **2. Exclusions** is replaced by the following:

Exclusions **c.** through **n.** do not apply to damage by fire, lightning, explosion,

| Endorsement | IL 19 |
|---|---|

**Manufacturers' Optimum Endorsement**

smoke, or leakage from automatic fire protection systems to premises while rented to you or temporarily occupied by you with the permission of the owner. A separate limit of insurance applies to Damage To Premises Rented To You as described in **Section III - Limits Of Insurance** .

**B.** **Section III - Limits Of Insurance** , Paragraph **6.**, is replaced by the following:

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises while rented to you, or in the case of damage by fire, explosion, lightning, smoke, or leakage from automatic fire protection systems, while rented to you or temporarily occupied by you with the permission of the owner. The limit is the greater of:

**a.** $300,000; or

**b.** The amount shown in the Declarations for Damage To Premises Rented To You Limit.

**C.** The word "fire" is changed to "fire, lightning, explosion, smoke, or leakage from automatic fire protection systems" wherever it appears in:

**1.** Condition **4.b.(1)(a)(ii) of Section IV – Commercial General Liability Conditions** ; and

**2.** **9.a.** of Section **V - Definitions**

**XIV. Lost Key Coverage**

**A.** Coverage for "bodily injury" and "property damage" liability with respect to the insured's operations is extended as follows:

**1.** We will pay those sums that you become legally obligated to pay as damages due

to loss of keys by an insured in the course of your business. The keys must be loaned to the insured or in the care, custody or control of the insured.

**2.** The additional insurance provided by this endorsement does not apply to:

(a) Misappropriation;

(b) Secretion;

(c) Conversion;

(d) Infidelity; or

(e) Any dishonest act on the part of the insured.

**3.** The additional insurance provided by this endorsement applies only to:

(a) The actual cost of the keys;

(b) Adjustment of locks to accept new keys; and

(c) The cost of new locks, including the cost of their installation.

**B.** The most we will pay for loss or damage resulting from any one "occurrence" under this provision **XIV.** is $5,000.

**C.** A deductible of $100 applies to any loss or damage resulting from any one "occurrence" regardless of the number of persons or organizations who sustain damages because of that "occurrence".

We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount that has been paid by us.

**D.** This coverage extension is subject to the following:

**1.** Exclusion **j.** **Damage To Property** , Paragraph **j.(3)** and **j.(4)** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** do not apply to the loss of keys by an insured.

| Endorsement | IL 19 |
|---|---|

**Policy Number:**

Manufacturers' Optimum Endorsement

2. Subparagraph **2.a. (2)** of **Section II - Who Is An Insured** does not apply to this additional insurance.

### XV. Property Damage To Customers Goods

A. Exclusion **j.** Paragraphs **(3), (4)** and **(6)** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** do not apply to "property damage" to "customers goods" while on your premises.

B. The insurance afforded by this provision **XV.** is excess over any valid and collectible property insurance available to the insured.

C. The following is added to **Section V - Definitions** :

"Customers goods" means property of your customer on your premises for the purpose of being:

1. Worked on; or
2. Used in your manufacturing process.

D. The most we will pay for "property damage" to "customers goods" under this provision is $25,000 regardless of the number of:

1. Insureds;
2. Claims made or suits brought; or
3. Persons or organizations making claims or bringing "suits".

$25,000 is the most we will pay for all claims or "suits" for "property damage" to "customers goods" under this provision during each consecutive annual period starting with the beginning of the policy period.

### XVI. Property Damage To Borrowed Equipment

A. Exclusion **j.(4)** under Paragraph **2. Exclusions** of **Section I -Coverage A - Bodily Injury And Property Damage Liability** does not apply to "property damage" to borrowed equipment while that equipment is:

1. Not being used to perform operations; and
2. Away from an insured's premises.

B. Subject to Paragraph **5.** in **Section III - Limits Of Insurance, Coverage A** the most we will pay for damages because of "property damage" to equipment you borrow from others is $25,000 per "occurrence".

C. The insurance afforded by provision **XVI. Property Damage To Borrowed Equipment** is excess over any valid and collectible property insurance available to the insured.

### XVII. Damage To Your Products

A. Exclusion **k.** of Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced with the following:

    **k.** Property damage" to "your product" exclusion does not apply to "damage to your products".

B. The following additional exclusions apply to this provision **XVII.** :

This insurance does not apply to "damage to your products" because of:

1. Delay in the performance required by any contract or agreement;
2. Loss of market;
3. Loss caused intentionally or at the direction of any insured;
4. Wear, tear, gradual deterioration, adulteration, contamination, decomposition, chemical change, rust, corrosion, fungus, mold, decay, bacteria or virus;
5. Loss of use of "your product"; or

| Endorsement | IL 19 |

**Manufacturers' Optimum Endorsement**

**6.** Dishonest, fraudulent, criminal or malicious acts of any insured whether acting alone or in collusion with others.

**C.** The following is added to **Section V - Definitions** :

"Damage to your products" means sudden and accidental physical injury to "your product" or any part of "your product" arising out of "your product" or any part of "your product" which occurs:

**1.** After delivery and final acceptance of "your product" if "your product" is not installed or, if installed, is not installed by any insured; or

**2.** After installation and final acceptance of "your product" if installed by any insured.

**D.** The following paragraph is added to **Section III - Limits Of Insurance** :

**8.** Subject to Paragraph **5.** above, $25,000 is the most we will pay for each "occurrence" because of "damage to your products". All claims arising out of the same "damage to your products" shall be deemed to be a single "occurrence".

**9.** $25,000 is the most we will pay for the sum of all "occurrences" because of "damage to your products" during each consecutive annual period starting with the beginning of the policy period.

**XVIII. Limited Care, Custody Or Control Liability Coverage**

**A. Insuring Agreement**

With respect to the coverage provided by **XVIII. Limited Care, Custody Or Control Liability Coverage** , the following is added to Paragraph **1.a.** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** :

We will pay all sums that the insured becomes legally obligated to pay as damages because of "loss" to property of others while in the care, custody or control of the insured.

**B. Exclusions**

With respect to the coverage provided by this coverage extension:

**1.** Exclusions **2.j.(4)** and **2.j.(5)** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** do not apply; and

**2.** The following additional exclusions are added to **Section I - Coverage A - Bodily Injury And Property Damage Liability** :

This insurance does not apply to "loss" to property:

**(a)** Held by the insured for sale or entrusted to the insured for storage or safekeeping;

**(b)** Owned or occupied by, rented or leased to, or loaned to any insured;

**(c)** Included in the "products-completed operations hazard"; and

**(d)** Arising from errors or mistakes in design, plans or specifications committed by or on behalf of the insured.

**C. Limit Of Insurance**

With respect to the coverage provided by **XVIII. Limited Care, Custody Or Control Liability Coverage** , the following is added to **Section III - Limit Of Insurance** :

**1.** The most we will pay for "loss", including all resulting loss of use of that property, as a result of any one "occurrence" under this coverage is $25,000. However, the most we will pay for the sum of all "loss", including all

| Endorsement | IL 19 |
|---|---|

**Policy Number:**

**Manufacturers' Optimum Endorsement**

resulting loss of use of property, as a result of all "occurrences" under this coverage is $50,000. These limits are part of, and not in addition to, the Each Occurrence and General Aggregate limit.

2. We will not pay for a "loss" in any one "occurrence" until the amount of "loss" exceeds the deductible shown under **D. Deductible** . We will then pay the amount of "loss" or damage in excess of the deductible, up to the applicable limit of insurance.

**D. Deductible**

1. We are not obligated to pay any "loss" until such "loss" exceeds $250. We will then pay the amount of "loss" in excess of the deductible, up to the applicable limit of insurance. This deductible amount applies to all "loss" to real or personal property belonging to others as the result of any one "occurrence".

2. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

3. The terms of this insurance, including those with respect to:

   (a) Our right and duty to defend any "suits" seeking those damages; and

   (b) Your duties in the event of an "occurrence", claim or "suit";

   apply irrespective of the application of the Deductible amount.

**E. Excess Insurance**

This insurance is excess over any other collectible insurance available to the insured.

**F. Additional Definition**

The following is added to **Section V - Definitions** :

"Loss" means any unintentional damage or destruction but does not include disappearance, abstraction or theft.

**XIX. Voluntary Property Damage Coverage**

**A. Insuring Agreement**

With respect to the coverage provided by **XIX. Voluntary Property Damage Coverage** , the following is added to Paragraph **1.a.** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** :

At your request, we will pay for a "loss" to property of others caused by you and while in your possession, arising out of your business operations and occurring during the policy period even if you are not legally liable, if such property is otherwise subject to this coverage.

**B. Exclusions**

With respect to the **Voluntary Property Damage Coverage** :

1. Exclusions **2.j.(4)** and **2.j.(5)** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** do not apply.

2. The following additional exclusions are added to **Section I - Coverage A - Bodily Injury And Property Damage Liability** :

   This insurance does not apply to "loss" to property:

   (a) Held by the insured for sale or entrusted to the insured for storage or safekeeping;

   (b) Owned or occupied by, rented or leased to, or loaned to any insured;

Grange Mutual Casualty Company
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | IL 19 |
| --- | --- |

**Policy Number:**

**Manufacturers' Optimum Endorsement**  ......

**(c)** Included in the "products-completed operations hazard", or

**(d)** Arising from errors or mistakes in design, plans or specifications committed by or on behalf of the insured.

## C. Limit Of Insurance

With respect to **Voluntary Property Damage Coverage** , the following is added to **Section III - Limit Of Insurance** :

1. The most we will pay for "loss", including all resulting loss of use of that property, as a result of any one "occurrence" under this coverage is $5,000. However, the most we will pay for the sum of all "loss", including all resulting loss of use of property, as a result of all "occurrences" under this coverage is $25,000. These limits are part of, and not in addition to, the Each Occurrence and General Aggregate limit.

2. We will not pay for "loss" in any one "occurrence" until the amount of "loss" exceeds the deductible shown under **4. Deductible** . We will then pay the amount of "loss" in excess of the deductible, up to the applicable limit of insurance.

## D. Deductible

1. With respect to Voluntary Property Damage Coverage, we are not obligated to pay any "loss" until such "loss" exceeds $250. We will then pay the amount of "loss" in excess of the Deductible, up to the applicable limit of insurance. This deductible amount applies to all "loss" to real or personal property belonging to others as the result of any one "occurrence"

2. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of

the action taken; you shall promptly reimburse us for such part of the Deductible amount as has been paid by us.

## E. Excess Insurance

This insurance is excess over any other collectible insurance available to the insured.

## F. Additional Definition

The following is added to **Section V - Definitions** :

"Loss" means any unintentional "property damage" but does not include disappearance, abstraction or theft.

We will not pay for any "loss" under **XVIII. Limited Care, Custody Or Control Liability Coverage** unless you are legally liable. If we provide coverage for the same "loss" under **XVIII. Limited Care, Custody Or Control Liability Coverage** and **XIX. Voluntary Property Damage Coverage** , the most we will pay for the "loss" under the two coverages combined is $30,000.

## XX. Aggregate Limit Per Location

For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under **Section I - Coverage A - Bodily Injury And Property Damage Liability** , and for all medical expenses caused by accidents under **Section I - Coverage C - Medical Payments** , which can be attributed only to operations at a single designated "location" shown in the Declarations:

1. A separate Location General Aggregate Limit applies to each "location", and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

2. The Location General Aggregate Limit is the most we will pay for the sum of all damages under Coverage A, except damages because of "bodily injury" or "property damage"

| Endorsement | IL 19 |
|---|---|

**Policy Number:**

**Manufacturers' Optimum Endorsement**

included in the "products-completed operations hazard", and for medical expenses under Coverage **C** regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

3. Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Location General Aggregate Limit for that "location". Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Location General Aggregate Limit for any other "location" shown in the Declarations.

4. The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Location General Aggregate Limit.

## XXI. Supplementary Payments Increased Limits

Under **Supplementary Payments - Coverage A. and B. of Section I.**:

A. Paragraph **1.b.** is replaced with the following:

b. Up to $2,500 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

B. Paragraph **1.d.** is replaced with the following:

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off work.

## XXII. Broad Form Named Insured

**Section II - Who Is An Insured** is amended to include as a Named Insured any organization or subsidiary thereof which is a legally incorporated entity of which you own a financial interest of more than 50 percent of the voting stock on the effective date of this endorsement.

This provision **XXII.** does not apply to "bodily injury", "property damage" or "personal and advertising injury" with respect to which a Named Insured under this policy is also a Named Insured under another policy or would be a Named Insured under such policy but for its termination or upon exhaustion of its limits of insurance.

## XXIII. Additional Insureds Required By Contract

A. **Section II - Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement or that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" caused, in whole or in part , by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

A person's or organization's status as an additional insured under this endorsement

| Endorsement | IL 19 |
|---|---|

**Manufacturers' Optimum Endorsement**

ends when your operations for that additional insured are completed.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services including, but not limited to:

   **a.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   **b.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional architectural, engineering or surveying services.

2. "Bodily injury" or "property damage" occurring after:

   **a.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

   **b.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project.

**XXIV. Additional Insured - Lessor Of Leased Equipment - Automatic Status When Required In Lease Agreement With You**

**A.** Section II - Who Is An Insured is amended to include as an additional insured any person(s) or organization(s) from whom you lease equipment when you and such person(s) or organization(s) have agreed in writing in a contract or agreement that such person(s) or organization(s) be added as an additional insured on your policy. Such person(s) or organization(s) is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

A person's or organization's status as an additional insured under this provision **XXIV.** ends when their contract or agreement with you for such leased equipment ends.

This provision **XXIV.** does not apply to any person or organization included as an additional insured by an endorsement issued by us and made a part of the Coverage Form.

**B.** With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | IL 19 |
|---|---|

**Policy Number:**

**Manufacturers' Optimum Endorsement**

**XXV. Additional Insured - Managers Or Lessors Of Premises When Required In Written Lease Agreement With You**

**Section II - Who Is An Insured** is amended to include as an additional insured when required in a written lease agreement, any person(s) or organization(s) from whom you have leased premises, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and subject to the following additional exclusions:

This insurance does not apply to:

1. Any "occurrence" which takes place after you cease to be a tenant in that premises.

2. Structural alterations, new construction or demolition operations performed by or on behalf of the manager or the lessor.

**XXVI. Additional Insured - Vendors**

A. **Section II - Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to throughout this endorsement as vendor), but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business.

If coverage provided to the vendor is required by a contract or agreement, the insurance afforded to such vendor will not be broader than that which you are required by the contract or agreement to provide for such vendor.

B. With respect to the insurance afforded to these vendors, the following additional exclusions apply:

1. The insurance afforded the vendor does not apply to:

a. "Bodily injury" or "property damage" for which the vendor is obligated to

pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability or damages that the vendor would have in the absence of the contract or agreement;

b. Any express warranty unauthorized by you;

c. Any physical or chemical change in the product made intentionally by the vendor;

d. Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container.

e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

g. Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

h. "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

| Endorsement | IL 19 |

**Policy Number:**

**Manufacturers' Optimum Endorsement**

(1) The exceptions contained in Sub-paragraphs **d.** or **f.**; or

(2) Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

2. This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

With respect to the insurance afforded to these additional insureds in provisions **XXIII.**, **XXIV.**, **XXV.** and **XXVI.**, the following is added:

1. The insurance afforded to such additional insured:

   a. Only applies to the extent permitted by law; and

   b. Will not be broader than that which you are required by the written contract or written agreement to provide for such additional insured.

   c. Does not apply unless the written lease agreement has been executed prior to the "bodily injury", "property damage" or "personal or advertising injury".

2. The following is added to **Section III - Limits Of Insurance** :

   The most we will pay on behalf of the additional insured is the amount of insurance:

   a. Required by the written contract or agreement; or

b. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

Provisions **XXIII.**, **XXIV.**, **XXV.** and **XXVI.** shall not increase the applicable Limits of Insurance shown in the Declarations and do not apply to any person(s) or organization(s) included as an additional insured by an endorsement issued by us and made a part of the Coverage Form.

**XXVII. Incidental Medical Malpractice**

Paragraph **2.a.(1)(d)** of **Section II - Who Is An Insured** , does not apply to your "employees" who provide professional health care services on your behalf as duly licensed:

1. Nurses;

2. Emergency Medical Technicians; or

3. Paramedics

in the jurisdiction where an "occurrence" or offense to which this insurance applies takes place. This coverage does not apply if you are in the business or occupation of providing any such professional services.

**XXVIII. Newly Formed Or Acquired Organizations As Named Insureds**

A. Paragraph **3.** of **Section II - Who Is An Insured** is replaced by the following:

3. Any organization you newly acquire or form during the policy period, other than a partnership or joint venture, and over which you maintain an ownership interest of more than 50 percent of such organization, will qualify as a Named Insured if there is no other similar insurance available to that organization.

   a. Coverage under this provision is afforded only until the 180th day after you acquire or form the

Grange Mutual Casualty Company
P.O. Box 1218
Columbus, Ohio 43216-1218

**Manufacturers' Optimum Endorsement**

organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization;

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization; and

**d.** Coverage **A** does not apply to damage to "your products" that occurred before you acquired or formed the organization.

An additional premium will apply in accordance with our rules and rates in effect on the date you acquired or formed the organization.

**B.** The last paragraph of **Section II - Who Is An Insured** does not apply to this provision to the extent that such paragraph would conflict with this provision.

**XXIX. Medical Payments Increased Limits**

The Medical Expense Limit shown in the Declarations is increased to $10,000.

**XXX. Electronic Data Liability**

**A.** Exclusion **2.p.** of **Coverage A - Bodily Injury And Property Damage Liability** in **Section I - Coverages** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data" that does

not result from physical injury to tangible property.

However, this exclusion does not apply to liability for damages because of "bodily injury".

**B.** The following paragraph is added to **Section III - Limits Of Insurance** :

**8.** Subject to **5.** above, the Loss of Electronic Data Limit of $10,000 is the most we will pay under **Coverage A** for "property damage" because of all loss of "electronic data" arising out of any one "occurrence".

**C.** The following definition is added to the **Section V - Definitions** :

"Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**D.** For the purpose of the coverage provided by this provision **XXX**, the definition of "property damage" in **Section V - Definitions** is replaced by the following:

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it;

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it; or

**c.** Loss of, loss of use of, damage to, corruption of, inability to access, or

inability to properly manipulate "electronic data", resulting from physical injury to tangible property. All such loss of "electronic data" shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

## XXXI. Duties In The Event Of Occurrence, Offense, Claim Or Suit - Redefined

A. The requirement in condition **2.a.** of **Section IV - Commercial General Liability Conditions** that you must see to it that we are notified of an "occurrence" only applies when the "occurrence" or offense is known to:

1. You, if you are an individual;
2. A partner, if you are a partnership;
3. An officer of the corporation if you are a corporation;
4. Your members and managers, if you are a limited liability company;
5. Your insurance manager; or
6. The trustee, if you are a trust.

B. The requirement in condition **2.b.** of **Section IV - Commercial General Liability Conditions** that you must see to it that we receive written notice of a claim or "suit" as soon as practicable will not be considered breached unless the breach occurs after such claim or "suit" is known to:

1. You, if you are an individual;
2. A partner, if you are a partnership;
3. An officer of the corporation if you are a corporation;
4. Your members and managers if you are a limited liability company;
5. Your insurance manager; or
6. The trustee, if you are a trust.

## XXXII. Blanket Primary And Noncontributory - Other Insurance Condition

**Section IV - Commercial General Liability Conditions** , is amended by the addition of the following to the **Other Insurance** Condition and supersedes any provision to the contrary:

### Primary and Noncontributory

Insurance provided under this policy shall apply on a primary basis and shall not seek contribution from any other insurance available to an additional insured added to this policy by provisions **XXIII., XXIV., XXV.** and **XXVI.** subject to the following conditions:

1. The additional insured is a Named Insured under such other insurance; and

2. You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

## XXXIII. Waiver Of Transfer Of Rights Of Recovery Against Others To Us When Required Within A Written Agreement With You - Blanket

**Section IV - Commercial General Liability Conditions, 8. Transfer Of Rights Of Recovery Against Other To Us** is amended by the addition of the following:

We waive any right of recovery we may have because of payments we make for injury or damage arising out of:

1. Your ongoing operations or "your work" done under a written contract with that person or organization and included in the "products-completed operations hazard"; or

2. The ownership, maintenance or use of that part of the premises leased to you.

The waiver applies only to a person or organization with whom you have a written contract or agreement in which you are required to waive the rights of recovery under this policy, but only to the extent that subrogation is waived prior to any injury

| Endorsement | IL 19 |
| --- | --- |

**Policy Number:**

**Manufacturers' Optimum Endorsement.**

or damage under a contract with that person or organization. The insured must do nothing after a loss to impair our rights. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce those rights.

### XXXIV. Mobile Equipment Redefined

Paragraph **12.f.**, sub-paragraph **(1)** of **Section V - Definitions** does not apply to self-propelled vehicles of less than 1,000 pounds gross vehicle weight.

### XXXV. Unintentional Failure To Disclose Hazards

Any unintentional error or omission in the description of, or failure to completely describe, any premises or operations intended to be covered by this Coverage Form will not invalidate or affect coverage for those premises or operations. However, you must report such error or omission to us as soon as practicable after its discovery. This provision does not affect our right to collect additional premium as a result of any unintentional error or omission. In addition, this provision does not affect our rights of cancellation or nonrenewal in accordance with applicable insurance laws or regulations.

### XXXVI. Liberalization Clause

If we revise this Manufacturers' Optimum Endorsement to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

*Includes copyrighted material of Insurance Services Office, Inc., with its permission.*

# BUSINESS COMPUTER COVERAGE

## AGREEMENT

In return for "your" payment of the required premium, "we" provide the coverage described herein subject to all the "terms" of the Business Computer Coverage. This coverage is also subject to the "schedule of coverages" and additional policy conditions relating to assignment or transfer of rights or duties, cancellation, changes or modifications, inspections, and examination of books and records.

Endorsements and schedules may also apply. They are identified on the "schedule of coverages".

Refer to Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks or bold type.

## DEFINITIONS

1. The words "you" and "your" mean the persons or organizations named as the insured on the "schedule of coverages".

2. The words "we", "us", and "our" mean the company providing this coverage.

3. "Business" means the usual business operations occurring at a premises described on the "schedule of coverages".

4. "Catastrophe limit" means the amount of coverage that applies to all losses at all locations during each separate 12-month period of this policy; this is limited to the expiration or anniversary date.

5. "Computer hacking" means an unauthorized intrusion:

   a. by an individual or group of individuals, whether employed by "you" or not, into "hardware", "software", or a computer network; and

   b. that results in but is not limited to:

      1) deletion, destruction, generation, or modification of "software";
      2) alteration, contamination, corruption, degradation, or destruction of the integrity, quality, or performance of "software";
      3) observation, scanning, or copying of "data records", "programs and applications", and "proprietary programs";
      4) damage, destruction, inadequacy, malfunction, degradation, or corruption of any "hardware" or "media" used with "hardware"; or
      5) denial of access to or denial of services from "your" "hardware" or "your" computer network.

6. "Computer virus" means the introduction of any malicious, self-replicating electronic data processing code or other code:

   a. into "hardware" or "software"; and

   b. that is intended to result in, but is not limited to:

      1) deletion, destruction, generation, or modification of "software";
      2) alteration, contamination, corruption, degradation, or destruction of the integrity, quality, or performance of "software";
      3) damage, destruction, inadequacy, malfunction, degradation, or corruption of any "hardware" or "media" used with "hardware"; or

Copyright, American Association of Insurance Services, Inc., 2004

4) denial of access to or denial of services from "your" "hardware" or "your" computer network.

7. "Data records" means files, documents, and information in an electronic format and that are stored on "media" or stored in "hardware".

8. "Electrical disturbance" means electrical or magnetic damage, disturbance of electronic recordings, or erasure of electronic recordings.

9. "Flood" means flood, surface water, waves, tidal water, or the overflow of a body of water, all whether driven by wind or not. This includes spray that results from these whether driven by wind or not.

10. "Hardware" means a network of electronic machine components (microprocessors) capable of accepting instructions and information, processing the information according to the instructions, and producing desired results.

    a. **Hardware Includes** -- "Hardware" includes but is not limited to:

       1) mainframe and mid-range computers and network servers;
       2) personal computers and workstations;
       3) laptops, palmtops, notebook PCs, other portable computer devices and accessories including, but not limited to, multimedia projectors; and
       4) peripheral data processing equipment, including but not limited to, printers, keyboards, monitors, and modems.

    b. **Hardware Does Not Include** -- "Hardware" does not include:

       1) "software"; and
       2) "off-site server" and "on-site server".

11. "Limit" means the amount of coverage that applies.

12. "Mechanical breakdown" means the malfunction or failure of moving or electronic parts, component failure, faulty installation, or blowout.

13. "Media" means processing, recording, or storage media used with "hardware". This includes but is not limited to films, tapes, cards, discs, drums, cartridges, cells, or flash drives.

14. "Off-site server" means a server for "your" Web site:

    a. that is not at a premises described on the "schedule of coverages"; and

    b. that is being maintained and/or operated by an independent contractor acting as "your" Web host or "your" Internet service provider that is acting as "your" Web host.

15. "On-site server" means a server for "your" Web site:

    a. that is at a premises occupied by "you" and described on the "schedule of coverages"; and

    b. that is being maintained and/or operated by "you" or an independent contractor acting as "your" Web site consultant.

16. "Pollutant" means:

    a. any solid, liquid, gaseous, thermal, or radioactive irritant or contaminant, including but not limited to acids, alkalis, chemicals, fumes, smoke, soot, vapor, and waste. Waste includes materials to be recycled, reclaimed, or reconditioned, as well as disposed of; and

    b. electrical or magnetic emissions, whether visible or invisible, and sound emissions.

17. "Power supply disturbance" means interruption of power supply, power surge, blackout, or brownout.

Copyright, American Association of Insurance Services, Inc., 2004

18. "Programs and applications" means operating programs and applications that "you" purchase and that are:

   a. stored on "media"; or

   b. pre-installed and stored in "hardware".

19. "Proprietary programs" means proprietary applications or programs that are developed in-house or that "you" had developed specifically for "you" and that are:

   a. stored on "media"; or

   b. installed and stored in "hardware".

20. "Restoration period" means:

   a. the time it should reasonably take to resume "your" "business" to a similar level of service starting from the date of a physical loss of or damage to covered property at a premises described on the "schedule of coverages" that is caused by a covered peril and ending on the date:

      1) the property should be rebuilt, repaired, or replaced; or
      2) "business" is resumed at a new permanent location.

      This is not limited by the expiration date of the policy.

   b. "Restoration period" does not mean the increased time required to comply with the enforcement of any ordinance, law, or decree that requires "you" or anyone else to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to or assess the effects of "pollutants".

21. "Schedule of coverages" means:

   a. all pages labeled schedule of coverages or schedules which pertain to this coverage; and

   b. declarations or supplemental declarations which pertain to this coverage.

22. "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the covered property into subterranean voids created by the action of water on a limestone or similar rock formation.

   Sinkhole collapse does not include the value of the land or the cost of filling sinkholes.

23. "Software" means "media", "data records", "programs and applications", and "proprietary programs".

24. "Specified perils" means aircraft; civil commotion; explosion; falling objects; fire; hail; leakage from fire extinguishing equipment; lightning; riot; "sinkhole collapse"; smoke; sonic boom; vandalism; vehicles; "volcanic action"; water damage; weight of ice, snow, or sleet; and windstorm.

   Falling objects does not include loss to:

   a. personal property in the open; or

   b. the interior of buildings or structures or to personal property inside buildings or structures unless the exterior of the roofs or walls are first damaged by a falling object.

   Water damage means the sudden or accidental discharge or leakage of water or steam as a direct result of breaking or cracking of a part of the system or appliance containing the water or steam.

25. "Terms" means all provisions, limitations, exclusions, conditions, and definitions that apply.

26. "Volcanic action" means airborne volcanic blast or airborne shock waves; ash, dust, or particulate matter; or lava flow.

Copyright, American Association of Insurance Services, Inc., 2004

Volcanic action does not include the cost to remove ash, dust, or particulate matter that does not cause direct physical loss to the covered property.

27. "Web site server" means "on-site server" and "off-site server".

28. "Web site software" means the following software that are used in "your" "Web site servers":

   a. "media";

   b. "data records";

   c. programs and applications which means operating programs and applications that "you" purchase and that are stored on "media" or pre-installed and stored in "Web site servers"; and

   d. proprietary programs which means proprietary applications or programs that are developed in-house or that "you" had developed specifically for "you" and that are stored on "media" or installed and stored in "Web site servers".

## PROPERTY COVERED

"We" cover the following property unless the property is excluded or subject to limitations.

1. **Hardware** --

   a. **Coverage** -- "We" cover direct physical loss caused by a covered peril to "hardware" and similar property of others that is in "your" care, custody, or control.

   b. **Coverage Limitations** -- "We" only cover "hardware" and similar property of others:

      1) when a "limit" for "hardware" is indicated on the "schedule of coverages"; and

      2) while at a premises described on the "schedule of coverages".

2. **Software** --

   a. **Coverage** -- "We" cover direct physical loss caused by a covered peril to "software" and similar property of others that is in "your" care, custody, or control.

   b. **Coverage Limitations** -- "We" only cover "software" and similar property of others:

      1) when a "limit" for "software" is indicated on the "schedule of coverages"; and

      2) while at a premises described on the "schedule of coverages".

## EXTRA EXPENSE COVERAGE

"We" provide the following coverage unless the coverage is excluded or subject to limitations.

1. **Coverage** --

   a. **Covered Property** -- If an extra expense "limit" is indicated on the "schedule of coverages", "we" provide the extra expense coverage described below during the "restoration period" when "your" "business" is necessarily wholly or partially interrupted by direct physical loss of or damage to covered property at a premises described on the "schedule of coverages" as a result of a covered peril.

   b. **Described Premises And Air Conditioning System** -- "We" provide the extra expense coverage described below during the "restoration period" when "your" "business" is necessarily wholly or partially interrupted as a result of direct physical loss of or damage to:

Copyright, American Association of Insurance Services, Inc., 2004

1) a premises described on the "schedule of coverages" that prevents "you" from using covered property; or
2) the air conditioning or electrical systems which are necessary for the operation of covered property and results in a reduction or suspension of "your" "business".

2. **Extra Expense** -- "We" cover only the extra expenses that are necessary during the "restoration period" that "you" would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a covered peril.

   a. **Expenses To Reduce Interruption** -- "We" cover any extra expense to avoid or reduce the interruption of "your" data processing operations and continue operating at a premises described on the "schedule of coverages", replacement location, or a temporary location. This includes expenses to relocate and costs to outfit and operate a replacement or temporary location.

      "We" will also cover any extra expense to reduce the interruption of "business" if it is not possible for "you" to continue operating during the "restoration period".

   b. **Expenses To Repair/Restore Property And Information** -- To the extent that they reduce a loss otherwise payable under this coverage, "we" will cover any extra expenses to:

      1) repair, replace, or restore any property; and
      2) research, replace, or restore information on damaged documents, manuscripts, or records that:

         a) are inscribed, printed, or written; or
         b) exist on electronic or magnetic media.

## PROPERTY NOT COVERED

1. **Accounts, Bills, Or Documents** -- "We" do not cover accounts, bills, evidences of debt, records, abstracts, deeds, manuscripts, program documentation, or other documents except those that are in "software" form and then only in that form.

2. **Checked Luggage** -- "We" do not cover loss resulting from theft o r disappearance of a laptop, palmtop, notebook PC, or any portable computer while in transit as checked luggage.

3. **Contraband** -- "We" do not cover contraband or property in the course of illegal transportation or trade.

4. **Loaned, Leased, Or Rented To Others** -- "We" do not cover property that "you" loan, lease, or rent to others.

5. **Money And Securities** -- "We" do not cover currency, food stamps, lottery tickets not held for sale, money, notes, or securities.

6. **Stock In Trade** -- "We" do not cover property that is "your" stock in trade.

7. **Web Site Servers** --"We" do not cover "Web site servers" including "Web site software".

## COVERAGE EXTENSIONS

**Provisions That Apply To Coverage Extensions** -- The following Coverage Extensions indicate an applicable "limit". This "limit" may also be shown on the "schedule of coverages".

If a different "limit" is indicated on the "schedule of coverages", that "limit" will apply instead of the "limit" shown below.

Copyright, American Association of Insurance Services, Inc., 2004

However, if no "limit" is indicated for a Coverage Extension, coverage is provided up to the full "limit" for the applicable covered property unless a different "limit" is indicated on the "schedule of coverages".

Unless otherwise indicated, the coverages provided below are part of and not in addition to the applicable "limit" for coverage described under Property Covered.

The "limit" provided under a Coverage Extension cannot be combined or added to the "limit" for any other Coverage Extension or Supplemental Coverage including a Coverage Extension or Supplemental Coverage that is added to this policy by endorsement.

The following coverage extensions are not subject to and not considered in applying coinsurance conditions.

1. **Debris Removal** --

   a. **Coverage** -- "We" pay the cost to remove the debris of covered property that is caused by a covered peril.

   b. **We Do Not Cover** -- This coverage does not include costs to:

      1) extract "pollutants" from land or water; or
      2) remove, restore, or replace polluted land or water.

   c. **Limit** -- "We" do not pay any more under this coverage than 25% of the amount "we" pay for the direct physical loss. "We" will not pay more for loss to property and debris removal combined than the "limit" for the damaged property.

   d. **Additional Limit** -- "We" pay up to an additional $5,000 for debris removal expense when the debris removal expense exceeds 25% of the amount "we" pay for direct physical loss or when the loss to property and debris removal combined exceeds the "limit" for the damaged property.

   e. **You Must Report Your Expenses** -- "We" do not pay any expenses unless they are reported to "us" in writing within 180 days from the date of direct physical loss to covered property.

2. **Electrical And Power Supply Disturbance** --

   a. **Coverage** -- "We" cover direct physical loss to covered property caused by:

      1) "electrical disturbance"; or
      2) "power supply disturbance".

   b. **Coverage Limitation** -- "We" only cover loss caused by "electrical disturbance" and "power supply disturbance" if the cause of such disturbance took place within 500 feet of the premises where the loss occurred.

      However, if the "schedule of coverages" indicates that there is no limitation, then the 500 feet limitation described above does not apply to this Coverage Extension.

3. **Emergency Removal** --

   a. **Coverage** -- "We" pay for any direct physical loss to covered property while it is being moved or being stored to prevent a loss caused by a covered peril.

   b. **Time Limitation** -- This coverage applies for up to 365 days after the property is first moved. Also, this coverage does not extend past the date on which this policy expires.

4. **Mechanical Breakdown Coverage** -- "We" pay for loss to covered property caused by "mechanical breakdown".

Copyright, American Association of Insurance Services, Inc., 2004

# SUPPLEMENTAL COVERAGES

**Provisions That Apply To Supplemental Coverages** -- The following Supplemental Coverages indicate an applicable "limit". This "limit" may also be shown on the "schedule of coverages".

If a different "limit" is indicated on the "schedule of coverages", that "limit" will apply instead of the "limit" shown below.

However, if no "limit" is indicated for a Supplemental Coverage, coverage is provided up to the full "limit" for the applicable covered property unless a different "limit" is indicated on the "schedule of coverages".

Unless otherwise indicated, a "limit" for a Supplemental Coverage provided below is separate from, and not part of, the applicable "limit" for coverage described under Property Covered.

The "limit" available for coverage described under a Supplemental Coverage:

a. is the only "limit" available for the described coverage; and

b. is not the sum of the "limit" indicated for a Supplemental Coverage and the "limit" for coverage described under Property Covered.

The "limit" provided under a Supplemental Coverage cannot be combined or added to the "limit" for any other Supplemental Coverage or Coverage Extension including a Supplemental Coverage or Coverage Extension that is added to this policy by endorsement.

The following coverage extensions are not subject to and not considered in applying coinsurance conditions.

1. **New Hardware And Acquired Locations** --

    a. **Coverage** -- "We" cover direct physical loss caused by a covered peril to:

    1) additional "hardware" including pre-installed "software" that "you" purchase or lease during the policy period and that is installed at a location that is described on the "schedule of coverages"; and
    2) "hardware" and "software" at a location that "you" acquire during the policy period .

    b. **Limit** -- "We" pay up to $50,000 for:

    1) additional "hardware" that "you" purchase or lease; and
    2) "hardware" and "software" at locations that "you" acquire.

    c. **Time Limitation** -- This coverage applies for up to 60 days from the date "you" acquire the:

    1) additional "hardware" or new location; or
    2) until "you" report the additional "hardware" or new location to "us", whichever occurs first.

    However, this coverage does not go beyond the end of the policy period.

    d. **Additional Premium** -- "You" must pay any additional premium due from the date "you" acquire the additional "hardware" or new location.

2. **Pollutant Cleanup And Removal** --

    a. **Coverage** -- "We" pay "your" expense to extract "pollutants" from land or water if the discharge, dispersal, seepage, migration, release, or escape of the "pollutants" is caused by a covered peril that occurs during the policy period.

    b. **Time Limitation** -- The expenses to extract "pollutants" are paid only if they are reported to "us" in writing within 180 days from the date the covered peril occurs.

Copyright, American Association of Insurance Services, Inc., 2004

c. **We Do Not Cover** -- "We" do not pay the cost of testing, evaluating, observing, or recording the existence, level, or effects of "pollutants".

However, "we" pay the cost of testing which is necessary for the extraction of "pollutants" from land or water.

d. **Limit** -- The most "we" pay for each location is $5,000 for the sum of all such expenses arising out of a covered peril occurring during each separate 12-month period of this policy.

3. **Property In Transit And Off-Site** --

a. **Coverage** -- "We" cover direct physical loss caused by a covered peril to "hardware" and "software":

1) while in transit; or
2) in the custody of "you", "your" officers, "your" partners, or "your" employees, while:

a) at "your" residence or the residence of "your" officers, partners, or employees;
b) temporarily at a premises that is not described on the "schedule of coverages"; or
c) in transit between a residence or temporary premises and a premises described on the "schedule of coverages".

b. **Limit** -- The most "we" pay in any one occurrence for loss under this Supplemental Coverage is $5,000.

## PERILS COVERED

"We" cover risks of direct physical loss unless the loss is limited or caused by a peril that is excluded.

## PERILS EXCLUDED

1. "We" do not pay for loss or damage caused directly or indirectly by one or more of the following excluded causes or events. Such loss or damage is excluded regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

a. **Civil Authority** -- "We" do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

"We" do pay for loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this coverage.

b. **Earth Movement** -- "We" do not pay for loss caused by any earth movement (other than "sinkhole collapse") or caused by eruption, explosion, or effusion of a volcano. Earth movement includes, but is not limited to: earthquake; landslide; mudflow; mudslide; mine subsidence; or sinking, rising, or shifting of earth.

"We" do cover direct loss by fire, explosion, or "volcanic action" resulting from either earth movement or eruption, explosion, or effusion of a volcano.

c. **Flood** -- "We" do not pay for loss caused by "flood". However, "we" do cover the resulting loss if fire, explosion, or sprinkler leakage results.

Copyright, American Association of Insurance Services, Inc., 2004

d. **Nuclear Hazard** -- "We" do not pay for loss caused by or resulting from a nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke. Direct loss by fire resulting from the nuclear hazard is covered.

e. **Sewer Backup And Water Below The Surface** -- "We" do not pay for loss caused by or resulting from:

1) water that backs up through a sewer or drain; or
2) water below the surface of the ground, including but not limited to water that exerts pressure on or flows, seeps, or leaks through or into a building or structure.

But if sewer backup and water below the surface results in fire, explosion, or sprinkler leakage, "we" cover the loss or damage caused by that fire, explosion, or sprinkler leakage.

f. **War And Military Action** -- "We" do not pay for loss caused by:

1) war, including undeclared war or civil war; or
2) a warlike action by a milita ry force, including action taken to prevent or defend against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or
3) insurrection, rebellion, revolution, or unlawful seizure of power including action taken by governmental authority to prevent or defend against any of these.

With regard to any action that comes within the "terms" of this exclusion and involves nuclear reaction, nuclear radiation, or radioactive contamination, this War and Military Action Exclusion will apply in place of the Nuclear Hazard Exclusion.

2. "We" do not pay for loss or damage that is caused by or results from one or more of the following:

a. **Computer Virus Or Computer Hacking** -- "We" do not pay for:

1) any direct or indirect loss or damage; or
2) loss of access, loss of use, or loss of functionality

caused by a "computer virus" or by "computer hacking".

b. **Contamination Or Deterioration** -- "We" do not pay for loss caused by contamination or deterioration including corrosion; decay; fungus; mildew; mold; rot; rust; or any quality, fault, or weakness in the covered property that causes it to damage or destroy itself.

But if contamination or deterioration results in a covered peril, "we" do cover the loss or damage caused by that covered peril.

This exclusion does not apply to loss caused by "mechanical breakdown".

c. **Criminal, Fraudulent, Dishonest, Or Illegal Acts** -- "We" do not pay for loss caused by or resulting from criminal, fraudulent, dishonest, or illegal acts alone or in collusion with another by:

1) "you";
2) others who have an interest in the property;
3) others to whom "you" entrust the property;

Copyright, American Association of Insurance Services, Inc., 2004

4) "your" partners, officers, directors, trustees, joint venturers, or "your" members or managers if "you" are a limited liability company; or

5) the employees or agents of 1), 2), 3), or 4) above, whether or not they are at work.

This exclusion does not apply to acts of destruction by "your" employees, but "we" do not pay for theft by employees.

This exclusion does not apply to covered property in the custody of a carrier for hire.

d. **Electrical And Power Supply Disturbance** -- "We" do not pay for loss caused by "electrical disturbance" or "power supply disturbance" if the cause of such disturbance took place more than 500 feet from the premises where the loss occurred.

However, if disturbance coverage beyond 500 feet is indicated on the "schedule of coverages", then the Electrical And Power Supply Disturbance exclusion described above is deleted.

e. **Loss Of Use** -- "We" do not pay for loss caused by or resulting from loss of use, delay, or loss of market.

f. **Pollutants** -- "We" do not pay for loss caused by or resulting from release, discharge, seepage, migration, dispersal, or escape of "pollutants" unless the release, discharge, seepage, migration, dispersal, or escape is caused by a "specified peril". "We" do pay for any resulting loss caused by a "specified peril".

g. **Temperature/Humidity** -- "We" do not pay for loss to covered property caused by:

1) dryness, dampness, humidity; or
2) changes in or extremes of temperature.

However, "we" do pay for loss to covered property that results from a direct physical loss, caused by a covered peril, to the air conditioning system that services covered "hardware".

h. **Wear And Tear Or Obsolescence** -- "We" do not pay for loss caused by wear and tear, depreciation, or obsolescence.

But if wear and tear, or obsolescence results in a covered peril, "we" do cover the loss or damage caused by that covered peril.

i. **Voluntary Parting** --"We" do not pay for loss caused by or resulting from voluntary parting with title to or possession of any property because of any fraudulent scheme, trick, or false pretense.

3. "We" do not pay for extra expenses, as described under Extra Expense Coverage, caused by or resulting from one or more of the following:

a. **Error Or Omission In Programming** -- "We" do not pay for any extra expense caused by an error or omission in programming or incorrect instructions to "hardware".

b. **Leases, Licenses, Contracts, Or Orders** -- "We" do not pay for any extra expense caused by the suspension, lapse, or cancellation of leases, licenses, contracts, or orders beyond the "restoration period".

c. **Strikes, Protests, And Other Interference** -- "We" do not pay for any increase in loss due to interference by strikers or other persons at a premises described on the "schedule of coverages". This applies to interference with rebuilding, repairing, or replacing the property or with resuming "your" "business".

Copyright, American Association of Insurance Services, Inc., 2004

d. **Utility Failure** -- "We" do not pay for any extra expense caused by or resulting from the failure of a utility to supply electrical power or other utility service to a described premises, if the failure takes place away from the described premises.

"We" do not pay for loss caused by or resulting from the failure of a utility to supply service regardless of the cause of failure.

## WHAT MUST BE DONE IN CASE OF LOSS

1. **Notice** -- In case of a loss, "you" must:

   a. give "us" or "our" agent prompt notice, including a description of the property involved ("we" may request written notice); and

   b. give notice to the police when the act that causes the loss is a crime.

2. **You Must Protect Property** -- "You" must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss.

   a. **Payment Of Reasonable Costs** -- "We" do pay the reasonable costs incurred by "you" for necessary repairs or emergency measures performed solely to protect covered property from furthe r damage by a peril insured against if a peril insured against has already caused a loss to covered property. "You" must keep an accurate record of such costs. "Our" payment of reasonable costs does not increase the "limit".

   b. **We Do Not Pay** -- "We" do not pay for such repairs or emergency measures performed on property which has not been damaged by a peril insured against.

3. **Proof Of Loss** -- "You" must send "us", within 60 days after "our" request, a signed, sworn proof of loss. This must include the following information:

   a. the time, place, and circumstances of the loss;

   b. other policies of insurance that may cover the loss;

   c. "your" interest and the interests of all others in the property involved, including all mortgages and liens;

   d. changes in title of the covered property during the policy period; and

   e. estimates, specifications, inventories, and other reasonable information that "we" may require to settle the loss.

4. **Examination** -- "You" must submit to examination under oath in matters connected with the loss as often as "we" reasonably request and give "us" sworn statements of the answers. If more than one person is examined, "we" have the right to examine and receive statements separately and not in the presence of others.

5. **Records** -- "You" must produce records, including tax returns and bank microfilms of all canceled checks relating to value, loss, and expense and permit copies and extracts to be made of them as often as "we" reasonably request.

6. **Damaged Property** -- "You" must exhibit the damaged and undamaged property as often as "we" reasonably request and allow "us" to inspect or take samples of the property.

7. **Volunteer Payments** -- "You" must not, except at "your" own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage.

Copyright, American Association of Insurance Services, Inc., 2004

8. **Abandonment** -- "You" may not abandon the property to "us" without "our" written consent.

9. **Cooperation** -- "You" must cooperate with "us" in performing all acts required by this policy.

---

# VALUATION

1. **Hardware** -- The following is the value of "hardware":

   a. **Replacement Cost** -- The value of "hardware" will be based on replacement cost without any deduction for depreciation unless Actual Cash Value is indicated on the "schedule of coverages".

      1) **Replacement Cost Limitation** -- The replacement cost is limited to the cost of repair or replacement with similar materials on the same site and used for the same purpose. The payment will not exceed the amount "you" spend to repair or replace the damaged or destroyed property.
      2) **Replacement Cost Does Not Apply Until Repair Or Replacement** -- Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced.
      3) **Time Limitation** -- "You" may make a claim for actual cash value before repair or replacement takes place, and later for the replacement cost if "you" notify "us" of "your" intent within 180 days after the loss.

   b. **Actual Cash Value** -- When Actual Cash Value is indicated on the "schedule of coverages", the value of "hardware" will be based on the actual cash value at the time of the loss with a deduction for depreciation.

2. **Software** -- The following is the value of "software":

   a. **Programs And Applications** --

      1) **Cost To Reinstall** -- The value of "programs and applications" will be based on the cost to reinstall the "programs or applications" from the licensed discs that were originally used to install the programs or applications.
      2) **If The Original Discs Are Lost** -- If the original licensed discs are lost, damaged, or can no longer be obtained, the value of "programs and applications" will be based on the cost of the most current version of the "programs or applications".

   b. **Proprietary Programs** --

      1) **Cost Of Reproduction** -- The value of "proprietary programs" will be based on the cost of reproduction from duplicate copies. The cost of reproduction includes, but is not limited to, the cost of labor to copy or transcribe from duplicate copies.
      2) **If Duplicate Copies Do Not Exist** -- If duplicate copies do not exist, the value of "proprietary programs" will be based on the cost of research or other expenses necessary to reproduce, replace, or restore lost "proprietary programs".

   c. **Data Records** --

      1) **Cost Of Reproduction** -- The value of "data records" will be based on the cost of reproduction from duplicate copies. The cost of reproduction includes, but is not limited to, the cost of labor to copy or transcribe from duplicate copies.

Copyright, American Association of Insurance Services, Inc., 2004

2) **If Duplicate Copies Do Not Exist** -- If duplicate copies do not exist, the value of "data records" will be based on the cost of research or other expenses necessary to reproduce, replace, or restore lost files, documents, and records.

d. **Media** -- The value of "media" will be based on the cost to repair or replace the "media" with material of the same kind or quality.

3. **Pair Or Set** --

a. **Reasonable Proportion Of Value** -- The value of a lost or damaged article which is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

b. **Provision Does Not Apply To Software** -- The Pair or Set provision does not apply to "software" that comes in sets. If part of a "software" set cannot be replaced, the loss is considered a total loss of the set.

4. **Loss To Parts** -- The value of a lost or damaged part of an item that consists of several parts when it is complete is based on the value of only the lost or damaged part or the cost to repair or replace it.

5. **Extra Expense** -- In determining extra expenses that "you" have incurred, "we" consider the salvage value of any property bought for temporary use during the "restoration period" and it will be deducted from the amount of loss determined for extra expense.

## HOW MUCH WE PAY

1. **Insurable Interest** -- "We" do not cover more than "your" insurable interest in any property.

2. **Deductible** -- "We" pay only that part of "your" loss over the deductible amount indicated on the "schedule of coverages" in any one occurrence.

3. **Loss Settlement Terms** -- Subject to paragraphs 1., 2., 4., 5., and 6. under How Much We Pay, "we" pay the lesser of:

a. the amount determined under Valuation;

b. the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable; or

c. the "limit" that applies to the covered property.

4. **Coinsurance** --

a. **When Coinsurance Applies** -- "We" only pay a part of the loss if the "limit" is less than the percentage of the value of "hardware" or "software" that is indicated on the "schedule of coverages".

b. **How We Determine Our Part Of The Loss** -- "Our" part of the loss is determined using the following steps:

1) multiply the percent indicated on the "schedule of coverages" by the value of the covered property at the time of loss;
2) divide the "limit" for covered property by the result determined in b.1) above;
3) multiply the total amount of loss, after the application of any deductible, by the result determined in b.2) above.

The most "we" pay is the amount determined in b.3) above or the "limit", whichever is less. "We" do not pay any remaining part of the loss.

c. **If There Is More Than One Limit** -- If there is more than one "limit" indicated on the "schedule of coverages" for this coverage part, this procedure applies separately to each "limit".

Copyright, American Association of Insurance Services, Inc., 2004

d. **If There Is Only One Limit** -- If there is only one "limit" indicated on the "schedule of coverages" for this coverage, this procedure applies to the total of all covered property to which the "limit" applies.

e. **When Coinsurance Does Not Apply** -- Conditions for coinsurance do not apply unless a coinsurance percentage is indicated on the "schedule of coverages".

5. **Insurance Under More Than One Coverage** -- If more than one coverage of this policy insures the same loss, "we" pay no more than the actual claim, loss, or damage sustained.

6. **Insurance Under More Than One Policy** --

   a. **Proportional Share** -- "You" may have another policy subject to the same "terms" as this policy. If "you" do, "we" will pay "our" share of the covered loss. "Our" share is the proportion that the applicable "limit" under this policy bears to the "limit" of all policies covering on the same basis.

   b. **Excess Amount** -- If there is another policy covering the same loss, other than that described above, "we" pay only for the amount of covered loss in excess of the amount due from that other policy, whether "you" can collect on it or not. But "we" do not pay more than the applicable "limit".

## LOSS PAYMENT

1. **Loss Payment Options** --

   a. **Our Options** -- In the event of loss covered by this coverage form, "we" have the following options:

      1) pay the value of the lost or damaged property;

      2) pay the cost of repairing or replacing the lost or damaged property;

      3) rebuild, repair, or replace the property with other property of equivalent kind and quality, to the extent practicable, within a reasonable time; or

      4) take all or any part of the property at the agreed or appraised value.

   b. **Notice Of Our Intent To Rebuild, Repair, Or Replace** -- "We" must give "you" notice of "our" intent to rebuild, repair, or replace within 30 days after receipt of a duly executed proof of loss.

2. **Your Losses** --

   a. **Adjustment And Payment Of Loss** -- "We" adjust all losses with "you". Payment will be made to "you" unless another loss payee is named in the policy.

   b. **Conditions For Payment Of Loss** -- An insured loss will be payable 30 days after:

      1) a satisfactory proof of loss is received; and

      2) the amount of the loss has been established either by written agreement with "you" or the filing of an appraisal award with "us".

3. **Property Of Others** --

   a. **Adjustment And Payment Of Loss To Property Of Others** -- Losses to property of others may be adjusted with and paid to:

      1) "you" on behalf of the owner; or

      2) the owner.

   b. **We Do Not Have To Pay You If We Pay The Owner** -- If "we" pay the owner, "we" do not have to pay "you". "We" may also choose to defend any suits arising from the owners at "our" expense.

Copyright, American Association of Insurance Services, Inc., 2004

## OTHER CONDITIONS

1. **Appraisal** -- If "you" and "we" do not agree on the amount of the loss or the actual cash value of covered property, either party may demand that these amounts be determined by appraisal.

   If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court of record in the state where the property is located to select an umpire.

   The appraisers will then determine and state separately the amount of each loss.

   The appraisers will also determine the value of covered property items at the time of the loss, if requested.

   If the appraisers submit a written report of any agreement to "us", the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three sets the amount of the loss.

   Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by "you" and "us".

2. **Benefit To Others** -- Insurance under this coverage will not directly or indirectly benefit anyone having custody of "your" property.

3. **Conformity With Statute** -- When a condition of this coverage is in conflict with an applicable law, that condition is amended to conform to that law.

4. **Estates** -- This provision applies only if the insured is an individual.

   a. **Your Death** -- On "your" death, "we" cover the following as an insured:

      1) the person who has custody of "your" property until a legal representative is qualified and appointed; or
      2) "your" legal representative.

      This person or organization is an insured only with respect to property covered by this coverage.

   b. **Policy Period Is Not Extended** -- This coverage does not extend past the policy period indicated on the declarations.

5. **Misrepresentation, Concealment, Or Fraud** -- This coverage is void as to "you" and any other insured if, before or after a loss:

   a. "you" or any other insured have willfully concealed or misrepresented:

      1) a material fact or circumstance that relates to this insurance or the subject thereof; or
      2) "your" interest herein.

   b. there has been fraud or false swearing by "you" or any other insured with regard to a matter that relates to this insurance or the subject thereof.

6. **Policy Period** -- "We" pay for a covered loss that occurs during the policy period.

7. **Recoveries** -- If "we" pay "you" for the loss and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

   a. "you" must notify "us" promptly if "you" recover property or receive payment;

   b. "we" must notify "you" promptly if "we" recover property or receive payme nt;

Copyright, American Association of Insurance Services, Inc., 2004

c.  any recovery expenses incurred by either are reimbursed first;

d.  "you" may keep the recovered property but "you" must refund to "us" the amount of the claim paid, or any lesser amount to which "we" agree; and

e.  if the claim paid is less than the agreed loss due to a deductible or other limiting "terms" of this policy, any recovery will be pro rated between "you" and "us" based on "our" respective interest in the loss.

8.  **Restoration Of Limits** -- A loss "we" pay under this coverage does not reduce the applicable "limits".

9.  **Subrogation** -- If "we" pay for a loss, "we" may require "you" to assign to "us" "your" right of recovery against others. "You" must do all that is necessary to secure "our" rights. "We" do not pay for a loss if "you" impair this right to recover.

"You" may waive "your" right to recover from others in writing before a loss occurs.

10.  **Suit Against Us** -- No one may bring a legal action against "us" under this coverage unless:

a.  all of the "terms" of this coverage have been complied with; and

b.  the suit has been brought within two years after "you" first have knowledge of the loss.

If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by law.

11.  **Territorial Limits** -- "We" cover property while it is in the United States of America, its territories and possessions, Canada, and Puerto Rico.

**IM 7203 10 04**

Copyright, American Association of Insurance Services, Inc., 2004

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.,** and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery; and

**(b)** Equipment;

**(4)** Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

**(a)** Fire-extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(5)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to the building or structure;

**(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

**(1)** Furniture and fixtures;

**(2)** Machinery and equipment;

**(3)** "Stock";

**(4)** All other personal property owned by you and used in your business;

**(5)** Labor, materials or services furnished or arranged by you on personal property of others;

**(6)** Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(7)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

### c. Personal Property Of Others that is:

**(1)** In your care, custody or control; and

**(2)** Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

**(1)** The lowest basement floor; or

**(2)** The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, **n.**, does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

**(1)** Are licensed for use on public roads; or

**(2)** Are operated principally away from the described premises.

This paragraph does not apply to:

**(a)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

© Insurance Services Office, Inc., 2011

**(b)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(c)** Rowboats or canoes out of water at the described premises; or

**(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers; or

**q.** The following property while outside of buildings:

**(1)** Grain, hay, straw or other crops;

**(2)** Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

**3. Covered Causes Of Loss**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Coverages**

**a. Debris Removal**

**(1)** Subject to Paragraphs **(2)**, **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

**(b)** Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

**(c)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this Coverage Form;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

**(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if **(4)(a)** and/or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5) Examples**

The following examples assume that there is no Coinsurance penalty.

**Example 1**

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $      500 |
| Amount of Loss: | $ 50,000 |
| Amount of Loss Payable: | $ 49,500 |
| | ($50,000 – $500) |
| Debris Removal Expense: | $ 10,000 |
| Debris Removal Expense Payable: | $ 10,000 |
| ($10,000 is 20% of $50,000.) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example 2**

| | | |
|---|---|---|
| Limit of Insurance: | | $ 90,000 |
| Amount of Deductible: | | $      500 |
| Amount of Loss: | | $ 80,000 |
| Amount of Loss Payable: | | $ 79,500 |
| | | ($80,000 – $500) |
| Debris Removal Expense: | | $ 40,000 |
| Debris Removal Expense Payable | | |
| | Basic Amount: | $ 10,500 |
| | Additional Amount: | $ 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000, capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4)**. Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

#### d. Pollutant Clean-up And Removal

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

#### e. Increased Cost Of Construction

(1) This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

(3) The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You were required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay for:

(a) The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

(b) Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

(6) The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

(a) We will not pay for the Increased Cost of Construction:

(i) Until the property is actually repaired or replaced at the same or another premises; and

(ii) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data. This Additional Coverage does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

 © Insurance Services Office, Inc., 2011

**(4)** The most we will pay under this Additional Coverage, Electronic Data, is $2,500 (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions; or

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(3)** If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist) and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and, therefore, coverage of such costs is not additional insurance.

**d. Property Off-premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

© Insurance Services Office, Inc., 2011

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**f. Non-owned Detached Trailers**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

**(a)** The trailer is used in your business;

**(b)** The trailer is in your care, custody or control at the premises described in the Declarations; and

**(c)** You have a contractual responsibility to pay for loss or damage to the trailer.

**(2)** We will not pay for any loss or damage that occurs:

**(a)** While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

**(b)** During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

**(3)** The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

**(4)** This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g. Business Personal Property Temporarily In Portable Storage Units**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the building or structure described in the Declarations or within 100 feet of the premises described in the Declarations, whichever distance is greater.

**(2)** If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

**(3)** Coverage under this Extension:

**(a)** Will end 90 days after the business personal property has been placed in the storage unit;

**(b)** Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

**(4)** Under this Extension, the most we will pay for the total of all loss or damage to business personal property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

**(5)** This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy, and does not apply to loss or damage to the storage unit itself.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage:

1. Fire Department Service Charge;
2. Pollutant Clean-up And Removal;
3. Increased Cost Of Construction; and
4. Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**Example 1**

(This example assumes there is no Coinsurance penalty.)

| | |
|---|---:|
| Deductible: | $ 250 |
| Limit of Insurance – Building 1: | $ 60,000 |
| Limit of Insurance – Building 2: | $ 80,000 |
| Loss to Building 1: | $ 60,100 |
| Loss to Building 2: | $ 90,000 |

The amount of loss to Building 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building 1:

$ 60,100
−    250
$ 59,850 Loss Payable – Building 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building 2. Loss payable for Building 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$59,850 + $80,000 = $139,850

**Example 2**

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example 1.

| | |
|---|---:|
| Loss to Building 1: | $ 70,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss to Building 2: | $ 90,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss Payable – Building 1: | $ 60,000 |
| (Limit of Insurance) | |
| Loss Payable – Building 2: | $ 80,000 |
| (Limit of Insurance) | |
| Total amount of loss payable: | $ 140,000 |

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

1. **Abandonment**

   There can be no abandonment of any property to us.

2. **Appraisal**

   If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   a. Pay its chosen appraiser; and
   b. Bear the other expenses of the appraisal and umpire equally.

   If there is an appraisal, we will still retain our right to deny the claim.

3. **Duties In The Event Of Loss Or Damage**

   a. You must see that the following are done in the event of loss or damage to Covered Property:

      (1) Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value, even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**d.** Glass at the cost of replacement with safety-glazing material if required by law.

**e.** Tenants' Improvements and Betterments at:

**(1)** Actual cash value of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

## F. Additional Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

### 1. Coinsurance

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

**(3)** Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

**(4)** Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example 1 (Underinsurance)**

| When: | The value of the property is: | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 100,000 |
| | The Deductible is: | $ 250 |
| | The amount of loss is: | $ 40,000 |

Step **(1)**: $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2)**: $100,000 ÷ $200,000 = .50

Step **(3)**: $40,000 x .50 = $20,000

Step **(4)**: $20,000 – $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example 2 (Adequate Insurance)**

| When: | The value of the property is: | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 200,000 |
| | The Deductible is: | $ 250 |
| | The amount of loss is: | $ 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate, and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example 3**

| When: | The value of the property is: | |
|---|---|---|
| | Building at Location 1: | $ 75,000 |
| | Building at Location 2: | $ 100,000 |
| | Personal Property at Location 2: | $ 75,000 |
| | | $ 250,000 |
| | The Coinsurance percentage for it is: | 90% |
| | The Limit of Insurance for Buildings and Personal Property at Locations 1 and 2 is: | $ 180,000 |
| | The Deductible is: | $ 1,000 |
| | The amount of loss is: | |
| | Building at Location 2: | $ 30,000 |
| | Personal Property at Location 2: | $ 20,000 |
| | | $ 50,000 |

**Step (1):** $250,000 x 90% = $225,000

(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

**Step (2):** $180,000 ÷ $225,000 = .80

**Step (3):** $50,000 x .80 = $40,000

**Step (4):** $40,000 – $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

**a.** The term mortgageholder includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

**1. Agreed Value**

**a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

**b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

**(1)** On or after the effective date of this Optional Coverage; and

**(2)** Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

**a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

**(1)** The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

**(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

**(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example**

| If: | The applicable Limit of Insurance is: | $ 100,000 |
|---|---|---|
| | The annual percentage increase is: | 8% |
| | The number of days since the beginning of the policy year (or last policy change) is: | 146 |
| | The amount of increase is: $100,000 x .08 x 146 ÷ 365 = | $ 3,200 |

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

**b.** This Optional Coverage does not apply to:

**(1)** Personal property of others;

**(2)** Contents of a residence;

**(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

**(4)** "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

**(1)** Until the lost or damaged property is actually repaired or replaced; and

**(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

**(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

**(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

**(1)** The Limit of Insurance applicable to the lost or damaged property;

**(2)** The cost to replace the lost or damaged property with other property:

**(a)** Of comparable material and quality; and

**(b)** Used for the same purpose; or

**(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

**a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

# COMMERCIAL CRIME COVERAGE FORM
# (LOSS SUSTAINED FORM)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is or is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations:

### 1. Employee Theft

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

### 2. Forgery Or Alteration

**a.** We will pay for loss resulting directly from "forgery" or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

  **(1)** Made or drawn by or drawn upon you; or

  **(2)** Made or drawn by one acting as your agent;

  or that are purported to have been so made or drawn.

**b.** If you are sued for refusing to pay any instrument covered in Paragraph **a.** above, on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount that we will pay is in addition to the Limit of Insurance applicable to this Insuring Agreement.

### 3. Inside The Premises – Theft Of Money And Securities

**a.** We will pay for loss of "money" and "securities" inside the "premises" or "banking premises" resulting directly from "theft", disappearance or destruction.

**b.** We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "theft" of "money" and "securities", if you are the owner of the "premises" or are liable for damage to it.

**c.** We will pay for loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the "premises" resulting directly from an actual or attempted "theft" of or unlawful entry into those containers.

### 4. Inside The Premises – Robbery Or Safe Burglary Of Other Property

**a.** We will pay for loss of or damage to "other property":

  **(1)** Inside the "premises" resulting directly from an actual or attempted "robbery" of a "custodian"; or

  **(2)** Inside the "premises" in a safe or vault resulting directly from an actual or attempted "safe burglary".

**b.** We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "robbery" or "safe burglary" of "other property", if you are the owner of the "premises" or are liable for damage to it.

**c.** We will pay for loss of or damage to a locked safe or vault located inside the "premises" resulting directly from an actual or attempted "robbery" or "safe burglary".

### 5. Outside The Premises

**a.** We will pay for loss of "money" and "securities" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction.

**b.** We will pay for loss of or damage to "other property" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from an actual or attempted "robbery".

### 6. Computer Fraud

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the "premises" or "banking premises":

**a.** To a person (other than a "messenger") outside those "premises"; or

**b.** To a place outside those "premises".

**7. Money Orders And Counterfeit Paper Currency**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

**a.** Money orders issued by any post office, express company or bank that are not paid upon presentation; or

**b.** "Counterfeit" paper currency that is acquired during the regular course of business.

**B. Limit Of Insurance**

The most we will pay for loss in any one "occurrence" is the applicable Limit of Insurance shown in the Declarations.

**C. Deductible**

We will not pay for loss in any one "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance. In the event more than one Deductible Amount could apply to the same loss, only the highest Deductible Amount may be applied.

**D. Exclusions**

**1.** This insurance does not apply to:

**a. Acts Committed By You, Your Partners Or Your Members**

Loss resulting from "theft" or any other dishonest act committed by:

**(1)** You; or

**(2)** Any of your partners or "members";

whether acting alone or in collusion with other persons.

**b. Acts Of Employees, Managers, Directors, Trustees Or Representatives**

Loss resulting from "theft" or any other dishonest act committed by any of your "employees", "managers", directors, trustees or authorized representatives:

**(1)** Whether acting alone or in collusion with other persons; or

**(2)** While performing services for you or otherwise;

except when covered under Insuring Agreement **A.1.**

**c. Governmental Action**

Loss resulting from seizure or destruction of property by order of governmental authority.

**d. Indirect Loss**

Loss that is an indirect result of any act or "occurrence" covered by this insurance including, but not limited to, loss resulting from:

**(1)** Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property".

**(2)** Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.

**(3)** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

**e. Legal Expenses**

Expenses related to any legal action, except when covered under Insuring Agreement **A.2.**

**f. Nuclear**

Loss resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

**g. War And Similar Actions**

Loss resulting from war, whether or not declared, warlike action, insurrection, rebellion or revolution, or any related act or incident.

**2.** Insuring Agreement **A.1.** does not apply to:

**a. Employee Cancelled Under Prior Insurance**

Loss caused by any "employee" of yours, or predecessor in interest of yours, for whom similar prior insurance has been cancelled and not reinstated since the last such cancellation.

**b. Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(1)** An inventory computation; or

**(2)** A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

**c. Trading**

Loss resulting directly or indirectly from trading, whether in your name or in a genuine or fictitious account.

**d. Warehouse Receipts**

Loss resulting from fraudulent or dishonest signing, issuing, canceling or failing to cancel, a warehouse receipt or any papers connected with it.

**3.** Insuring Agreements **A.3., A.4.** and **A.5.** do not apply to:

**a. Accounting Or Arithmetical Errors Or Omissions**

Loss resulting from accounting or arithmetical errors or omissions.

**b. Exchanges Or Purchases**

Loss resulting from the giving or surrendering of property in any exchange or purchase.

**c. Fire**

Loss resulting from fire, however caused, except:

**(1)** Loss from damage to a safe or vault; and

**(2)** Under Insuring Agreement **A.3.,** loss of or damage to "money" and "securities".

**d. Money Operated Devices**

Loss of property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**e. Motor Vehicles Or Equipment And Accessories**

Loss of or damage to motor vehicles, trailers or semi-trailers or equipment and accessories attached to them.

**f. Transfer Or Surrender Of Property**

**(1)** Loss of or damage to property after it has been transferred or surrendered to a person or place outside the "premises" or "banking premises":

**(a)** On the basis of unauthorized instructions;

**(b)** As a result of a threat to do bodily harm to any person; or

**(c)** As a result of a threat to do damage to any property.

**(2)** But, this Exclusion does not apply under Insuring Agreement **A.5.** to loss of "money", "securities" or "other property" while outside the "premises" in the care and custody of a "messenger" if you:

**(a)** Had no knowledge of any threat at the time the conveyance began; or

**(b)** Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

**g. Vandalism**

Loss from damage to the "premises" or its exterior, or to any safe, vault, cash register, cash box, cash drawer or "other property" by vandalism or malicious mischief.

**h. Voluntary Parting Of Title To Or Possession Of Property**

Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

**4.** Insuring Agreement **A.6.** does not apply to:

**Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**a.** An inventory computation; or

**b.** A profit and loss computation.

**E. Conditions**

The following Conditions apply in addition to the Common Policy Conditions:

**1. Conditions Applicable To All Insuring Agreements**

**a. Cancellation As To Any Employee**

This insurance is cancelled as to any "employee":

**(1)** Immediately upon discovery by:

**(a)** You; or

**(b)** Any of your partners, "members", "managers", officers, directors or trustees not in collusion with the "employee";

of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you.

**(2)** On the date specified in a notice mailed to the first Named Insured. That date will be at least 30 days after the date of mailing.

We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**b. Concealment, Misrepresentation Or Fraud**

This insurance is void in any case of fraud by you as it relates to this insurance at any time. It is also void if you or any other Insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**(1)** This insurance;

**(2)** The property covered under this insurance;

**(3)** Your interest in the property covered under this insurance; or

**(4)** A claim under this insurance.

**c. Consolidation – Merger**

If through consolidation or merger with, or purchase or acquisition of assets or liabilities of, some other entity, any additional persons become "employees" or you acquire the use and control of any additional "premises":

**(1)** You must give us written notice and obtain our written consent to extend this insurance to such additional "employees" or "premises". We may condition our consent upon payment of an additional premium; but

**(2)** For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, any insurance afforded for "employees" or "premises" also applies to these additional "employees" or "premises" for acts committed or events occurring within this 90 day period.

**d. Duties In The Event Of Loss**

After you discover a loss or a situation that may result in loss of or damage to "money", "securities" or "other property" you must:

**(1)** Notify us as soon as possible. If you have reason to believe that any loss (except for loss covered under Insuring Agreements **A.1.** or **A.2.**) involves a violation of law, you must also notify the local law enforcement authorities.

**(2)** Submit to examination under oath at our request and give us a signed statement of your answers.

**(3)** Give us a detailed, sworn proof of loss within 120 days.

**(4)** Cooperate with us in the investigation and settlement of any claim.

**e. Employee Benefit Plan(s)**

**(1)** The "employee benefit plan(s)" shown in the Declarations are included as Insureds under Insuring Agreement **A.1.**

**(2)** If any "employee benefit plan(s)" is insured jointly with any other entity under this insurance, you or the Plan Administrator must select a Limit of Insurance for Insuring Agreement **A.1.** that is sufficient to provide a Limit of Insurance for each Plan that is at least equal to that required if each Plan were separately insured.

**(3)** With respect to losses sustained or discovered by any such Plan, Insuring Agreement **A.1.** is replaced by the following:

We will pay for loss of or damage to "funds" and "other property" resulting directly from fraudulent or dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

**(4)** If the first Named Insured is an entity other than a Plan, any payment we make to that Insured for loss sustained by any Plan will be held by that Insured for the use and benefit of the Plan(s) sustaining the loss.

**(5)** If two or more Plans are insured under this insurance, any payment we make for loss:

**(a)** Sustained by two or more Plans; or

**(b)** Of commingled "funds" or "other property" of two or more Plans;

that arises out of one "occurrence", is to be shared by each Plan sustaining loss in the proportion that the Limit of Insurance required for each Plan bears to the total of those limits.

**(6)** The Deductible Amount applicable to Insuring Agreement **A.1.** does not apply to loss sustained by any "employee benefit plan(s)".

Copyright, Insurance Services Office, Inc., 1998

**f. Extended Period To Discover Loss**

    **(1)** We will pay for loss that you sustained prior to the effective date of termination or cancellation of this insurance, which is discovered by you no later than 1 year from the date of that termination or cancellation.

    **(2)** However, this extended period to discover loss terminates immediately upon the effective date of any other insurance obtained by you replacing in whole or in part the insurance afforded hereunder, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**g. Joint Insured**

    **(1)** If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

    **(2)** If any Insured, or partner, "member" or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

    **(3)** An "employee" of any Insured is considered to be an "employee" of every Insured.

    **(4)** If this insurance or any of its coverages is cancelled or terminated as to any Insured, loss sustained by that Insured is covered only if discovered by you during the period of time provided in the Extended Period To Discover Loss Condition **E.1.f.**

        However, this extended period to discover loss terminates as to that Insured immediately upon the effective date of any other insurance obtained by that Insured replacing in whole or in part the insurance afforded hereunder, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

    **(5)** We will not pay more for loss sustained by more than one Insured than the amount we would pay if all the loss had been sustained by one Insured.

**h. Legal Action Against Us**

    You may not bring any legal action against us involving loss:

    **(1)** Unless you have complied with all the terms of this insurance;

    **(2)** Until 90 days after you have filed proof of loss with us; and

    **(3)** Unless brought within 2 years from the date you discover the loss.

    If any limitation is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**i. Liberalization**

    If we adopt any revision that would broaden the coverage under this insurance without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this insurance.

**j. Loss Covered Under More Than One Coverage Of This Insurance**

    If two or more coverages of this insurance apply to the same loss, we will pay the lesser of:

    **(1)** The actual amount of loss; or

    **(2)** The sum of the Limits of Insurance applicable to those coverages.

**k. Loss Covered Under This Insurance And Prior Insurance Issued By Us Or Any Affiliate**

    If any loss is covered:

    **(1)** Partly by this insurance; and

    **(2)** Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

    the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

    Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or policy period to policy period.

**l. Loss Sustained**

Subject to the Loss Sustained During Prior Insurance Condition **E.1.m.,** we will pay for loss that you sustain through acts committed or events occurring during the policy period shown in the Declarations and discovered by you:

**(1)** During the policy period; or

**(2)** During the period of time provided in the Extended Period To Discover Loss Condition **E.1.f.**

**m. Loss Sustained During Prior Insurance**

**(1)** If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance, provided:

  **(a)** This insurance became effective at the time of cancellation or termination of the prior insurance; and

  **(b)** The loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

**(2)** The insurance under this Condition is part of, not in addition to, the Limits of Insurance applying to this insurance and is limited to the lesser of the amount recoverable under:

  **(a)** This insurance as of its effective date; or

  **(b)** The prior insurance had it remained in effect.

**n. Other Insurance**

This insurance does not apply to loss recoverable or recovered under other insurance or indemnity. If the limit of the other insurance or indemnity is insufficient to cover the entire amount of the loss, this insurance will apply to that part of the loss, other than that falling within any Deductible Amount, not recoverable or recovered under the other insurance or indemnity.

However, this insurance will not apply to the amount of loss that is more than the applicable Limit of Insurance shown in the Declarations.

**o. Ownership Of Property; Interests Covered**

The property covered under this insurance is limited to property:

**(1)** That you own or lease;

**(2)** That you hold for others; or

**(3)** For which you are legally liable, except for property inside the premises of a "client" of yours.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this insurance must be presented by you.

**p. Records**

You must keep records of all property covered under this insurance so we can verify the amount of any loss.

**q. Recoveries**

**(1)** Any recoveries, less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:

  **(a)** To you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance and the Deductible Amount, if any;

  **(b)** Then to us, until we are reimbursed for the settlement made; and

  **(c)** Then to you, until you are reimbursed for that part of the loss equal to the Deductible Amount, if any.

**(2)** Recoveries do not include any recovery:

  **(a)** From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

  **(b)** Of original "securities" after duplicates of them have been issued.

**r. Territory**

This insurance covers acts committed or events occurring within the United States of America (including its territories and possessions), Puerto Rico and Canada.

**s. Transfer Of Your Rights Of Recovery Against Others To Us**

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

Copyright, Insurance Services Office, Inc., 1998

**t. Valuation – Settlement**

**(1)** Subject to Section **B**. Limit Of Insurance, we will pay for:

**(a)** Loss of "money" but only up to and including its face value. We may, at our option, pay for loss of "money" issued by any country other than the United States of America:

**(i)** At face value in the "money" issued by that country; or

**(ii)** In the United States of America dollar equivalent determined by the rate of exchange on the day the loss was discovered.

**(b)** Loss of "securities" but only up to and including their value at the close of business on the day the loss was discovered. We may, at our option:

**(i)** Pay the value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or

**(ii)** Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

**i.** Value of the "securities" at the close of business on the day the loss was discovered; or

**ii.** Limit of Insurance.

**(c)** Loss of or damage to "other property" or loss from damage to the "premises" or its exterior for the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

**(i)** The Limit of Insurance applicable to the lost or damaged property;

**(ii)** The cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose; or

**(iii)** The amount you actually spend that is necessary to repair or replace the lost or damaged property.

We will not pay on a replacement cost basis for any loss or damage:

**(i)** Until the lost or damaged property is actually repaired or replaced; and

**(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

**(2)** We may, at our option, pay for loss of or damage to property other than "money":

**(a)** In the "money" of the country in which the loss occurred; or

**(b)** In the United States of America dollar equivalent of the "money" of the country in which the loss occurred determined by the rate of exchange on the day the loss was discovered.

**(3)** Any property that we pay for or replace becomes our property.

**2. Condition Applicable To Insuring Agreement A.1.**

**Territory**

We will pay for loss caused by any "employee" while temporarily outside the territory specified in the Territory Condition **E.1.r.** for a period of not more than 90 days.

**3. Conditions Applicable To Insuring Agreement A.2.**

**a. Deductible**

The Deductible Amount does not apply to legal expenses paid under Insuring Agreement **A.2.**

**b. Facsimile Signatures**

We will treat mechanically reproduced facsimile signatures the same as handwritten signatures.

**c. Proof Of Loss**

You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

d. **Territory**

We will cover loss you sustain anywhere in the world. The Territory Condition **E.1.r.** does not apply to Insuring Agreement **A.2.**

4. **Conditions Applicable To Insuring Agreements A.4. And A.5.**

a. **Armored Motor Vehicle Companies**

Under Insuring Agreement **A.5.**, we will only pay for the amount of loss you cannot recover:

(1) Under your contract with the armored motor vehicle company; and

(2) From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

b. **Special Limit Of Insurance For Specified Property**

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to:

(1) Precious metals, precious or semi-precious stones, pearls, furs, or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

(2) Manuscripts, drawings, or records of any kind or the cost of reconstructing them or reproducing any information contained in them.

5. **Conditions Applicable To Insuring Agreement A.6.**

a. **Special Limit Of Insurance For Specified Property**

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to manuscripts, drawings, or records of any kind or the cost of reconstructing them or reproducing any information contained in them.

b. **Territory**

We will cover loss you sustain anywhere in the world. The Territory Condition **E.1.r.** does not apply to Insuring Agreement **A.6.**

F. **Definitions**

1. "Banking premises" means the interior of that portion of any building occupied by a banking institution or similar safe depository.

2. "Client" means any entity for whom you perform services under a written agreement.

3. "Counterfeit" means an imitation of an actual valid original which is intended to deceive and to be taken as the original.

4. "Custodian" means you, or any of your partners or "members", or any "employee" while having care and custody of property inside the "premises", excluding any person while acting as a "watchperson" or janitor.

5. "Employee":

a. "Employee" means:

(1) Any natural person:

(a) While in your service or for 30 days after termination of service;

(b) Who you compensate directly by salary, wages or commissions; and

(c) Who you have the right to direct and control while performing services for you;

(2) Any natural person who is furnished temporarily to you:

(a) To substitute for a permanent "employee" as defined in Paragraph **(1)** above, who is on leave; or

(b) To meet seasonal or short-term work load conditions;

while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the "premises"; or

(3) Any natural person who is:

(a) A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan(s)" insured under this insurance; and

(b) Your director or trustee while that person is handling "funds" or "other property" of any "employee benefit plan(s)" insured under this insurance.

b. "Employee" does not mean:

(1) Any agent, broker, person leased to you by a labor leasing firm, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

**(2)** Any "manager", director or trustee except while performing acts coming within the scope of the usual duties of an "employee".

**6.** "Employee benefit plan(s)" means any welfare or pension benefit plan shown in the Declarations that is subject to the Employee Retirement Income Security Act of 1974 (ERISA).

**7.** "Forgery" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

**8.** "Funds" means "money" and "securities".

**9.** "Manager" means a person serving in a directorial capacity for a limited liability company.

**10.** "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

**11.** "Messenger" means you, or a relative of yours, or any of your partners or "members", or any "employee" while having care and custody of property outside the "premises".

**12.** "Money" means:

**a.** Currency, coins and bank notes in current use and having a face value; and

**b.** Travelers checks, register checks and money orders held for sale to the public.

**13.** "Occurrence" means:

**a.** As respects Insuring Agreement **A.1.,** all loss caused by, or involving, one or more "employees", whether the result of a single act or series of acts.

**b.** As respects Insuring Agreement **A.2.,** all loss caused by any person or in which that person is involved, whether the loss involves one or more instruments.

**c.** As respects all other Insuring Agreements:

**(1)** An act or series of related acts involving one or more persons; or

**(2)** An act or event, or a series of related acts or events not involving any person.

**14.** "Other property" means any tangible property other than "money" and "securities" that has intrinsic value but does not include any property excluded under this insurance.

**15.** "Premises" means the interior of that portion of any building you occupy in conducting your business.

**16.** "Robbery" means the unlawful taking of property from the care and custody of a person by one who has:

**a.** Caused or threatened to cause that person bodily harm; or

**b.** Committed an obviously unlawful act witnessed by that person.

**17.** "Safe burglary" means the unlawful taking of:

**a.** Property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

**b.** A safe or vault from inside the "premises".

**18.** "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or property and includes:

**a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

**19.** "Theft" means the unlawful taking of "money", "securities", or "other property" to the deprivation of the Insured.

**20.** "Watchperson" means any person you retain specifically to have care and custody of property inside the "premises" and who has no other duties.

| Endorsement | CP 25 |
|---|---|

**Changes - Building Glass**

Policy Number:

**This endorsement changes the policy. Please read it carefully.**

This endorsement modifies insurance provided under the following:

    BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Item **A. Coverage, 1. Covered Property, b. Your Business Personal Property (7)** is replaced by the following:

(7) Leased Personal Property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

    **(a)** Leased Personal Property includes building glass if:

        **(i)** You are a tenant of the premises described in the Declarations; and

        **(ii)** You have a contractual responsibility to insure the building glass; or

        **(iii)** You have a contractual responsibility to pay for loss or damage to that property.

    **(b)** The value of property covered will be determined in accordance with the Valuation Clause applicable to this Coverage Form or at the amount for which you are liable under contract, whichever is less. If required by law, glass is covered at the cost of replacement with safety glazing material.

     © ISO Properties, Inc., 2007

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** Definitions.

## A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

## B. Exclusions

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a. Ordinance Or Law**

The enforcement of or compliance with any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

**b. Earth Movement**

**(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

With respect to coverage for Volcanic Action as set forth in **(5)(a), (5)(b)** and **(5)(c),** all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5),** is caused by an act of nature or is otherwise caused.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)** or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **(1)** through **(5),** results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**h. "Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

© Insurance Services Office, Inc., 2011

This exclusion does not apply:

**(1)** When "fungus", wet or dry rot or bacteria result from fire or lightning; or

**(2)** To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**h.** Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

**(1)** Applies whether or not an act occurs during your normal hours of operation;

**(2)** Does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**j.** Rain, snow, ice or sleet to personal property in the open.

**k.** Collapse, including any of the following conditions of property or any part of the property:

**(1)** An abrupt falling down or caving in;

**(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above.

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, **k.,** does not apply:

**(a)** To the extent that coverage is provided under the Additional Coverage, Collapse; or

**(b)** To collapse caused by one or more of the following:

**(i)** The "specified causes of loss";

**(ii)** Breakage of building glass;

**(iii)** Weight of rain that collects on a roof; or

**(iv)** Weight of people or personal property.

**l.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, **l.,** does not apply to damage to glass caused by chemicals applied to the glass.

**m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property on or off the described premises.

 © Insurance Services Office, Inc., 2011

### 4. Special Exclusions

The following provisions apply only to the specified Coverage Forms:

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

**(1)** Any loss caused by or resulting from:

**(a)** Damage or destruction of "finished stock"; or

**(b)** The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

**(2)** Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(3)** Any increase of loss caused by or resulting from:

**(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

**(4)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(5)** Any other consequential loss.

**b. Leasehold Interest Coverage Form**

**(1)** Paragraph **B.1.a.,** Ordinance Or Law, does not apply to insurance under this Coverage Form.

**(2)** We will not pay for any loss caused by:

**(a)** Your cancelling the lease;

**(b)** The suspension, lapse or cancellation of any license; or

**(c)** Any other consequential loss.

**c. Legal Liability Coverage Form**

**(1)** The following exclusions do not apply to insurance under this Coverage Form:

**(a)** Paragraph **B.1.a.** Ordinance Or Law;

**(b)** Paragraph **B.1.c.** Governmental Action;

**(c)** Paragraph **B.1.d.** Nuclear Hazard;

**(d)** Paragraph **B.1.e.** Utility Services; and

**(e)** Paragraph **B.1.f.** War And Military Action.

**(2)** The following additional exclusions apply to insurance under this Coverage Form:

**(a) Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

**(i)** Your assumption of liability was executed prior to the accident; and

**(ii)** The building is Covered Property under this Coverage Form.

**(b) Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**5. Additional Exclusion**

The following provisions apply only to the specified property:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

## C. Limitations

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

**1.** We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

**a.** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**b.** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**c.** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**(2)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**d.** Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

However, this limitation does not apply to:

**(1)** Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

**(2)** Business Income Coverage or Extra Expense Coverage.

**e.** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

**f.** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

**g.** Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

**(1)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

**(2)** Changes in or extremes of temperature;

**(3)** Disease;

**(4)** Frost or hail; or

**(5)** Rain, snow, ice or sleet.

**2.** We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

**a.** Animals, and then only if they are killed or their destruction is made necessary.

**b.** Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

**(1)** Glass; or

**(2)** Containers of property held for sale.

**c.** Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

However, this limitation does not apply:

**(1)** If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

**(2)** To Business Income Coverage or to Extra Expense Coverage.

© Insurance Services Office, Inc., 2011

**3.** The special limit shown for each category, **a.** through **d.,** is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are (unless a higher limit is shown in the Declarations):

    **a.** $2,500 for furs, fur garments and garments trimmed with fur.

    **b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

    **c.** $2,500 for patterns, dies, molds and forms.

    **d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, **C.3.,** does not apply to Business Income Coverage or to Extra Expense Coverage.

**4.** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

    **a.** Results in discharge of any substance from an automatic fire protection system; or

    **b.** Is directly caused by freezing.

However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

## D. Additional Coverage – Collapse

The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

**1.** For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**2.** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

    **a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

    **b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

    **c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

    **d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

        **(1)** A cause of loss listed in **2.a.** or **2.b.;**

        **(2)** One or more of the "specified causes of loss";

        **(3)** Breakage of building glass;

        **(4)** Weight of people or personal property; or

        **(5)** Weight of rain that collects on a roof.

**3.** This **Additional Coverage – Collapse** does **not** apply to:

    **a.** A building or any part of a building that is in danger of falling down or caving in;

    **b.** A part of a building that is standing, even if it has separated from another part of the building; or

    **c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**4.** With respect to the following property:

    **a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

**b.** Awnings, gutters and downspouts;

**c.** Yard fixtures;

**d.** Outdoor swimming pools;

**e.** Fences;

**f.** Piers, wharves and docks;

**g.** Beach or diving platforms or appurtenances;

**h.** Retaining walls; and

**i.** Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.,** we will pay for loss or damage to that property only if:

    **(1)** Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

    **(2)** The property is Covered Property under this Coverage Form.

**5.** If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

**a.** The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.;**

**b.** The personal property which collapses is inside a building; and

**c.** The property which collapses is not of a kind listed in **4.,** regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**6.** This Additional Coverage, Collapse, does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**7.** This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

**8.** The term Covered Cause of Loss includes the Additional Coverage, Collapse, as described and limited in **D.1.** through **D.7.**

**E. Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

**1.** The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria are the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

**a.** A "specified cause of loss" other than fire or lightning; or

**b.** Flood, if the Flood Coverage Endorsement applies to the affected premises.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

**2.** We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

**a.** Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

**b.** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

**c.** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

**3.** The coverage described under **E.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continue to be present or active, or recur, in a later policy period.

**4.** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**5.** The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss form or under the Additional Coverage, Collapse.

**6.** The following, **6.a.** or **6.b.,** applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form:

**a.** If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**b.** If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**F. Additional Coverage Extensions**

**1. Property In Transit**

This Extension applies only to your personal property to which this form applies.

**a.** You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

**b.** Loss or damage must be caused by or result from one of the following causes of loss:

**(1)** Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

**(2)** Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

**(3)** Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

**c.** The most we will pay for loss or damage under this Extension is $5,000.

This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

**2. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

**3. Glass**

**a.** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

**b.** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This Coverage Extension **F.3.** does not increase the Limit of Insurance.

## G. Definitions

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

**a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

**(1)** The cost of filling sinkholes; or

**(2)** Sinking or collapse of land into man-made underground cavities.

**b.** Falling objects does not include loss or damage to:

**(1)** Personal property in the open; or

**(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means:

**(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

**(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

© Insurance Services Office, Inc., 2011

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# JOINT OR DISPUTED LOSS AGREEMENT

This Endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** This endorsement is intended to facilitate payment of insurance proceeds when:

**1.** Both a boiler and machinery policy and this commercial property policy are in effect;

**2.** Damage occurs to Covered Property that is insured by the boiler and machinery policy and this commercial property policy; and

**3.** There is disagreement between the insurers as to whether there is coverage or as to the amount of the loss to be paid, if any, by each insurer under its own policies.

**B.** This endorsement does not apply if:

**1.** Both the boiler and machinery insurer(s) and we do not admit to any liability; and

**2.** Neither the boiler and machinery insurer(s) nor we contend that coverage applies under the other insurer's policy.

**C.** The provisions of this endorsement apply only if all of the following requirements are met:

**1.** The boiler and machinery policy carried by the named insured, insuring the Covered Property, contains a similar provision at the time of the loss or damage, with substantially the same requirements, procedures and conditions as contained in this endorsement;

**2.** The damage to the Covered Property was caused by a loss for which:

**a.** Both the boiler and machinery insurer(s) and we admit to some liability for payment under the respective policies; or

**b.** Either:

**(1)** The boiler and machinery insurer(s) does not admit to any liability for payment, while we contend that:

**(a)** All liability exists under the boiler and machinery policy; or

**(b)** Some liability exists under both the boiler and machinery policy and this commercial property policy;

**(2)** We do not admit to any liability for payment, while the boiler and machinery insurer(s) contends that:

**(a)** All liability exists under this commercial property policy; or

**(b)** Some liability exists under both the boiler and machinery policy and this commercial property policy; or

**(3)** Both the boiler and machinery insurer(s) and we:

**(a)** Do not admit to any liability for payment; and

**(b)** Contend that some or all liability exists under the other insurer's policy; and

**3.** The total amount of the loss is agreed to by you, the boiler and machinery insurer(s) and us.

**D.** If the requirements listed in Paragraph **C.** above are satisfied, we and the boiler and machinery insurer(s) will make payments to the extent, and in the manner, described as follows:

**1.** We will pay, after your written request, the entire amount of loss that we have agreed as being covered, if any, by this commercial property policy and one-half (1/2) the amount of the loss that is in disagreement.

**2.** The boiler and machinery insurer(s) will pay, after your written request, the entire amount of loss that they have agreed as being covered, if any, by the boiler and machinery policy and one-half (1/2) the amount of loss that is in disagreement.

**3.** Payments by the insurers of the amounts that are in disagreement, as described in Paragraphs **1.** and **2.**, do not alter, waive or surrender any rights of any insurer against any other with regard to the portion of the loss for which each insurer is liable.

Copyright, Insurance Services Office, Inc.,  1996

4. The amount in disagreement to be paid by us under this endorsement shall not exceed the amount payable under the equivalent Loss Agreement(s) of the boiler and machinery policy.

5. The amount to be paid under this endorsement shall not exceed the amount we would have paid had no boiler and machinery policy been in effect at the time of loss. In no event will we pay more than the applicable Limit of Insurance shown in the Declarations.

6. Acceptance by you of sums paid under this endorsement does not alter, waive or surrender any other rights against us.

## E. Arbitration

1. If the circumstances described in Paragraph **C.2.a.** exist and the boiler and machinery insurer(s) and we agree to submit our differences to arbitration, the boiler and machinery insurer(s) and we will determine the amount each will pay and will pay the insured within 90 days. Arbitration will then take place within 90 days after payment of the loss under the terms of this endorsement.

2. If any of the circumstances described in Paragraph **C.2.b.** exist, then the boiler and machinery insurer(s) and we agree to submit our differences to arbitration within 90 days after payment of the loss under the terms of this endorsement.

3. You agree to cooperate with any arbitration procedures. There will be three arbitrators: one will be appointed by us, and another will be appointed by the boiler and machinery insurer(s). The two arbitrators will select a third arbitrator. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. A decision agreed to by two of the three arbitrators will be binding on both parties. Judgment on any award can be entered in any court that has jurisdiction.

## F. Final Settlement Between Insurers

The insurer(s) found responsible for the greater percentage of the ultimate loss must return the excess contribution to the other insurer(s). In addition, the insurer(s) found responsible for the greater portion of the loss must pay Liquidated Damages to the other insurer(s) on the amount of the excess contribution of the other insurer(s). Liquidated Damages are defined as interest from the date the insured invokes this Agreement to the date the insurer(s) that contributed the excess amount is reimbursed. The interest is calculated at 1.5 times the highest prime rate from the Money Rates column of the Wall Street Journal during the period of the Liquidated Damages. Arbitration expenses are not a part of the excess contribution for which liquidated damages are calculated. Arbitration expenses will be apportioned between insurers on the same basis that the ultimate loss is apportioned.

 Copyright, Insurance Services Office, Inc., 1996 ☐

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

## B. CONTROL OF PROPERTY

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## C. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

**2.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

## E. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

## F. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## G. OTHER INSURANCE

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## H. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

**1.** We cover loss or damage commencing:

   **a.** During the policy period shown in the Declarations; and

   **b.** Within the coverage territory.

**2.** The coverage territory is:

   **a.** The United States of America (including its territories and possessions);

   **b.** Puerto Rico; and

   **c.** Canada.

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

   a. Someone insured by this insurance;

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you; or

   c. Your tenant.

This will not restrict your insurance.

 Copyright, ISO Commercial Risk Services, Inc., 1983, 1987 **CP 00 90 07 88**  ☐

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

**1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

**2.** Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99,** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** The following exclusion and related provisions are added to Paragraph **B.2. Exclusions** in the Causes Of Loss Forms and to any Coverage Form or policy to which a Causes Of Loss Form is not attached:

**1.** We will not pay for loss or damage arising out of any act committed:

**a.** By or at the direction of any insured; and

**b.** With the intent to cause a loss.

**2.** However, this exclusion will not apply to deny coverage to an innocent co-insured, provided the loss:

**a.** Is otherwise covered under this Coverage Part; and

**b.** Arose out of an act of family violence by an insured against whom a family violence complaint is brought for such act.

**3.** If we pay a claim pursuant to Paragraph **B.2.,** our payment to the insured is limited to that insured's legal interest in the property less any payments we first made to a mortgageholder or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

**C.** The following explanation is added with respect to application of the Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria and the Limited Coverage of the same title:

With respect to the portion of Covered Property that would still have required repair or replacement had there been no "fungus", wet or dry rot or bacteria, this Exclusion and Limited Coverage will not serve to limit the amount of recovery for such repair or replacement.

However, the Exclusion and Limited Coverage shall continue to apply to:

**1.** The cost to treat, contain, remove or dispose of "fungus", wet rot, dry rot or bacteria beyond that which is required to repair or replace Covered Property;

**2.** The cost of testing as described in the Limited Coverage; and

**3.** Any increase in loss under Business Income and/or Extra Expense Forms resulting from **1.** or **2.** above.

Regardless of whether the Exclusion and Limited Coverage apply to a loss, the Limit of Insurance on Covered Property is not increased. The maximum recoverable, for the total of the cost to repair or replace Covered Property and any additional covered cost to treat, contain remove, dispose of or test for "fungus", wet or dry rot or bacteria, is the applicable Limit of Insurance on the affected Covered Property.

 © Insurance Services Office, Inc., 2011

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES – CONCEALMENT, MISREPRESENTATION OR FRAUD

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE FORM
GOVERNMENT CRIME COVERAGE FORM

**A.** The **Concealment, Misrepresentation or Fraud** Condition is replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We will not pay for any loss or damage in any case of:

**1.** Concealment or misrepresentation of a material fact; or

**2.** Fraud;

committed by you or any other insured, at any time, and relating to coverage under this insurance.

Grange Mutual Casualty Company
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | CR 01 |

Policy Number:

Policy Change-Crime Coverage

This Endorsement Changes The Policy. Please Read It Carefully.

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
EMPLOYEE THEFT & FORGERY POLICY

## A. PROVISIONS

1. Application of changes affected by Endorsement IL 16 POLICY CHANGES:

   a. **Addition of a Deductible or Increase in Deductible Amount:** This change applies to loss or damage resulting from acts committed or events occurring at any time, whether before or after the Effective Date of Change.

   b. **Deletion or Restriction (other than in a. above) of any Coverage or Decrease in** any Limit of Insurance: This change applies to loss or damage resulting from acts committed or events occurring:

      (1) On or after the Effective Date of Change; and also
      (2) Before the Effective Date of Change if discovered by you after 1 year from that date.

   c. **All Changes Other Than in a. and b. Above:** This change applies to loss or damage resulting from acts committed or events occurring on or after the Effective Date of Change.

2. No Limit of Insurance during any period will be cumulative with any other amount applicable to the same coverage during any other period.

*Copyright, Insurance Services Office, Inc., 1996*

*AK1033 (08-2001)*

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1), (2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

© Insurance Services Office, Inc., 2012

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

 © Insurance Services Office, Inc., 2012

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    **a.** Damages under Coverage **A**; and

    **b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

    Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        **(1)** How, when and where the "occurrence" or offense took place;

        **(2)** The names and addresses of any injured persons and witnesses; and

        **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.** If a claim is made or "suit" is brought against any insured, you must:

        **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    **c.** You and any other involved insured must:

        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        **(2)** Authorize us to obtain records and other information;

        **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

    **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

    **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

   **(a)** Snow removal;

   **(b)** Road maintenance, but not construction or resurfacing; or

   **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   **a.** False arrest, detention or imprisonment;

   **b.** Malicious prosecution;

   **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

   **f.** The use of another's advertising idea in your "advertisement"; or

   **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

   **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   **(1)** Products that are still in your physical possession; or

   **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      **(a)** When all of the work called for in your contract has been completed.

      **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   **b.** Does not include "bodily injury" or "property damage" arising out of:

   **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

   **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

   **(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

 © Insurance Services Office, Inc., 2012

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

   **2. Exclusions**

   This insurance does not apply to:

   **p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

   Damages arising out of:

    **(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

    **(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

   This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

   However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **Access Or Disclosure Of Confidential Or Personal Information**

   "Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

   This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

 © Insurance Services Office, Inc., 2013

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

 © ISO Properties, Inc., 2003

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I - Coverage A - Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I - Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demo- tion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

 © ISO Properties, Inc., 2006

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

© Insurance Services Office, Inc., 2015

| Endorsement | CG 44 |
|---|---|

**Policy Number:**

**Medical Payment Changes**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER COMMERCIAL GENERAL LIABILITY COVERAGE FORM - CG 00 01.**

**UNDER SECTION I - COVERAGES, COVERAGE C MEDICAL PAYMENTS, 1. INSURING AGREEMENT, THE FOLLOWING IS ADDED:**

**C.** We have the right to utilize outside sources, vendors, experts, consultants, and software tools of our choosing to review the medical expense invoices and medical records to assist us in determining, among other things, if the expenses and treatment are reasonable and necessary.

| Endorsement | IL 15 |
|---|---|

**Policy Number:**

**Lead Exclusion**

This endorsement modifies insurance provided under the following:

> BUSINESSOWNERS COVERAGE FORM
> COMMERCIAL GENERAL LIABILITY
>    COVERAGE FORM
> OWNERS AND CONTRACTORS
>    PROTECTIVE LIABILITY COVERAGE
>    FORM
> RAILROAD PROTECTIVE LIABILITY
>    COVERAGE FORM
> PRODUCTS / COMPLETED OPERATIONS
>    LIABILITY COVERAGE FORM

This insurance does not apply to:

1. "Bodily injury", "property damage", "personal injury", or "advertising injury" arising out of the actual, alleged or threatened exposure to lead, paint containing lead, water containing lead, or any other material or substance containing lead; or

2. Any loss, cost or expense arising out of any:

a. Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead, paint containing lead, water containing lead, or any other material or substance containing lead; or

b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead, paint containing lead, water containing lead, or any other material or substance containing lead.

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

| Coverage Form | EB 101 |
|---|---|

**Employee Benefits Liability Coverage Form**

**Policy Number: CPP   2669437**

**This Form Provides Claims - Made Coverage.
Please Read The Entire Form Carefully.**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION VII).

None of the provisions, stipulations and other terms of the policy to which this Coverage Part is a part, except as stated under OTHER PROVISIONS APPLICABLE TO THIS COVERAGE PART (SECTION V) of this Coverage Form, shall apply to this insurance. In return for the payment of the premium, and subject to all the terms of this Coverage Part, we agree with you as follows:

**Section I - Coverage**

**1. Insuring Agreement.**

  **a.** We will pay those sums that the insured becomes legally obligated to pay to any present or former "employee", or the heirs, beneficiaries or legal representatives of any present or former "employee", as damages because of a "benefit error" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may at our discretion investigate any "benefit error" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

    **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS.

  **b.** If a RETROACTIVE DATE is shown in the Declarations, this insurance applies to a "benefit error" only if:

    **(1)** The "benefit error" takes place in the "coverage territory",

    **(2)** The "benefit error" did not occur before the Retroactive Date shown in the Declarations, or after the end of the policy period; and

    **(3)** A claim for damages because of the "benefit error" is first made in writing against any insured, in accordance with paragraph d. below, during the policy period or any Extended Reporting Period we provide under EXTENDED REPORTING PERIOD (SECTION VI).

  **c.** If no RETROACTIVE DATE is shown in the Declarations, this insurance applies to a "benefit error" only if:

    **(1)** the "benefit error" takes place in the "coverage territory,"

    **(2)** The "benefit error" did not occur after the end of the policy period;

*continued...*

Grange Mutual Casualty Company
P.O. Box 1218
Columbus, Ohio 43216-1218

| Coverage Form | EB 101 |
|---|---|

**Employee Benefits Liability Coverage Form**

Policy Number: CPP 2669437

**This Form Provides Claims - Made Coverage. Please Read The Entire Form Carefully.**

(3) You, or others for whose acts you are legally responsible, in the "administration" of your "employee benefit programs":

    (i) at the effective date of this insurance had no knowledge of any circumstances which might result in a claim or "suit",

    (ii) all other valid and collectible insurance available to the insured is used up, and

(4) A claim for damages because of the "benefit error" is first made in writing against any insured, in accordance with paragraph d. below, during the policy period or any Extended Reporting Period we provide under EXTENDED REPORTING PERIOD (SECTION VI).

**d.** A claim by a person or organization seeking damages will be deemed to have been made at the earliest of the following times:

    (1) When written notice of such claim is received by any insured or by us, whichever comes first; or

    (2) When written notice of an incident or "benefit error" is given to us before any resulting claim is first made in writing against any insured; or

    (3) When we make settlement in accordance with paragraph 1.a. above.

All claims for damages resulting from the same "benefit error" will be deemed to have been made at the time the first of those claims is made against any insured.

**2.** Exclusions.

This insurance does not apply to:

**a.** Any claim arising out of or alleging discrimination, wrongful termination of employment, humiliation, or other employment-related practices.

**b.** "Bodily injury," "property damage", "personal injury", or "advertising injury".

**c.** Any claim against an insured if there is a final legal determination that the insured knowingly did something dishonest, criminal, fraudulent, or intentionally or recklessly violated any law. This exclusion does not apply to any other insured where there is no legal finding that the other insured:

    (1) Actively joined in doing the dishonest act, or

    (2) Intentionally or recklessly violated any law.

**d.** Any claim for the failure of performance of any contract by an insurer.

**e.** Any claim based upon the insured's failure to comply with any law concerning workers' compensation, unemployment compensation, social security, disability benefits law or the Employee Retirement Income Security Act of 1974 or any similar law.

**f.** Any claim based upon:

    (1) Failure of any investment program, individual securities or savings program to perform as represented by an insured.

    (2) Advice given by an insured to an "employee" to participate or not to

| Coverage Form | EB 101 |
|---|---|

**Employee Benefits Liability Coverage Form**

Policy Number: CPP    2669437

**This Form Provides Claims - Made Coverage.
Please Read The Entire Form Carefully.**

participate in stock subscription plans or savings programs.

g. Any claim arising out of the failure of the insured or any insurer, fiduciary, trustee or fiscal agent to perform any of their duties or obligations or to fulfill any of their guarantees with respect to:

(1) The payment of benefits under "employee benefit programs", or

(2) The providing, handling or investment of funds.

h. Any claim based on the liability of others which is assumed by the insured under a contract or agreement.

i. Any claim resulting from personal profit or advantage gained by the insured without the legal right to the gain.

j. Any claim for the return of compensation paid to the insured if a court determines that the payment was illegal.

k. The liability of any insured for taxes, fines or penalties imposed by law.

l. Any claim for benefits that are lawfully paid or payable to a beneficiary from the funds of an "employee benefit program".

m. Any claim that results from not having adequate insurance or bonds to protect the assets of an "employee benefit program".

n. Any claim arising out of the termination of any plan within an "employee benefit program".

o. Any claim arising out of an insufficiency of funds to meet any obligations under any

plan included in the "employee benefit program".

p. Any claim arising out of an inequitable contribution of funds to a 401k or pension fund.

**Supplementary Payments**

We will pay, with respect to any claim or "suit" we defend:

1. All expenses we incur.

2. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

3. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $100 a day because of time off from work if reimbursement for such expenses is requested by the insured.

4. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

5. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance we will not pay any prejudgment interest based on that period of time after the offer.

6. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

Grange Mutual Casualty Company
P.O. Box 1218
Columbus, Ohio 43216-1218

| Coverage Form | EB 101 |

**Employee Benefits Liability Coverage Form**

**Policy Number: CPP   2669437**

**This Form Provides Claims - Made Coverage.
Please Read The Entire Form Carefully.**

These payments will not reduce the Limits of Insurance and are exclusive of any deductible amount.

## Section II - Who Is An Insured

1. If you are designated in the Declarations as:

   **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Any other person for whose acts you are legally liable, provided such person is authorized to act in the "administration" of your "employee benefit programs".

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## Section III - Limits Of Insurance

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The Limit of Insurance shown in the Declarations as applicable to Each Claim is the most we will pay for all damages that result from a single "benefit error" or a series of related "benefit errors".

3. The Aggregate Limit of Insurance stated in the Declarations is the most we will pay for all "benefit errors" to which this insurance applies.

4. Any damages incurred because of a "benefit error" or a series of related "benefit errors" occurring over more than one policy year shall be treated as a single claim. The claim will be subject to the Limits of Insurance in effect at the time of the first reported "benefit error".

The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## Section IV - Deductible

1. Our obligation to pay damages on your behalf

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

| Coverage Form | EB 101 |
|---|---|

**Employee Benefits Liability Coverage Form**

**This Form Provides Claims - Made Coverage. Please Read The Entire Form Carefully.**

applies only to the amount of damages in excess of any deductible amount shown in the Declarations. All claims arising from a single "benefit error" or a series of related "benefit errors" shall be deemed to be a single claim.

**2.** The terms of this insurance, including those with respect to:

  **a.** Our right and duty to defend any "suits" seeking those damages; and

  **b.** Your duties in the event of incident, "benefit error", claim, or "suit".

apply irrespective of the application of the deductible amount.

**3.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**Section V - Employee Benefits Liability Conditions**

**1. Bankruptcy.**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Incident, Benefit Error, Claim Or Suit.**

  **a.** You must see to it that we are given written notice as soon as practicable of an incident or "benefit error" which may result in a claim. To the extent possible, notice should include:

    (1) How, when and where the incident or

"benefit error" took place.

    (2) The names and addresses of any witnesses or person who may provide us with additional information; and

    (3) The nature and location of any injury or damage arising out of the incident or "benefit error",

  **b.** If a claim is made or "suit" is brought against any insured, you must see to it that we receive written notice of the claim or "suit" as soon as practicable.

  **c.** You and any other involved insured must:

    (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or a "suit",

    (2) Authorize us to obtain records and other information;

    (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit", and

    (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of a "benefit error" to which this insurance may also apply.

  **d.** No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**3. Legal Action Against Us.**

No person or organization has a right under

Grange Mutual Casualty Company
P.O. Box 1218
Columbus, Ohio 43216-1218

**Policy Number: CPP   2669437**

**Coverage Form          EB 101**

**Employee Benefits Liability Coverage Form**

**This Form Provides Claims - Made Coverage.
Please Read The Entire Form Carefully.**

this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

**a.** Primary Insurance

This insurance is primary. Our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in b. below.

**b.** Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**c.** Exception

If no Retroactive Date is shown in the Declarations and the claim is based on a "benefit error" that occurred before the effective date of this Coverage Part that meets all other conditions for coverage under this Coverage Part, we will pay up to the Limit of Insurance that applies only after all other valid and collectible insurance available to the insured is used up.

**5. Premium Audit.**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations.**

| Coverage Form | EB 101 |
|---|---|

**Employee Benefits Liability Coverage Form**

**Policy Number: CPP   2669437**

**This Form Provides Claims - Made Coverage. Please Read The Entire Form Carefully.**

By accepting this Coverage Part, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this Coverage Part in reliance upon your representations.

**7. Separation Of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this

Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew.**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**10. Our Right To Use Other Resources:**

You and any insured seeking coverage under this policy agree that we have the right to utilize outside sources, vendors, experts, consultants and software tools of our choosing to assist us in underwriting, pricing and issuing our insurance policies and to assist us in adjusting claims.

**11. Other Provisions Applicable To This Coverage Part:**

**a.** The following forms and endorsements are also applicable to this Coverage Part when such forms and endorsements are a part of the policy:

**(1)** COMMON POLICY CONDITIONS, including endorsements, if any, that modify any of the Common Policy Conditions; and

**(2)** NUCLEAR ENERGY LIABILITY EXCLUSION.

**b.** When this Coverage Part is a part of the BUSINESSOWNERS Policy, the following provisions of the policy, including endorsements, if any, that modify such provisions, are also applicable to this Coverage Part:

**(1)** Section II WAR AND MILITARY ACTION, GOVERNMENTAL ACTION AND NUCLEAR EXCLUSIONS; and

**(2)** GENERAL CONDITIONS, except for Policy Period, Territory, Subrogation; and Other Insurance.

Coverage Form       **EB 101**

**Employee Benefits Liability Coverage Form**

**This Form Provides Claims - Made Coverage. Please Read The Entire Form Carefully.**

c. If provisions a. and b. above are found not to be applicable to the policy to which this Coverage Part is a part, the following provisions of the policy, including endorsements, if any, that modify such provisions, are also applicable to this Coverage Part:

Premium; Time of Inception; Inspection and Audit; Changes; Assignment; Cancellation; Nuclear Energy Liability Exclusion; Concealment or Fraud; Liberalization Clause; Insurance Under More Than One Coverage, Part or Endorsement; Waiver or Change of Provisions; and State Exceptions.

**Section VI - Extended Reporting Period**

1. This Section applies only if this Coverage Part is cancelled or not renewed for any reason except nonpayment of the premium.

2. When this Section applies, the following is added to SECTION 1 - COVERAGE:

A claim first made within twelve (12) months after the policy period ends will be deemed to have been made on the last day of the policy period provided that the claim is for damages because of a "benefit error" that occurred before the end of the policy period of this Coverage Part.

The policy period ends on the date shown in the Declarations or on the effective date of any cancellation of this Coverage Part, whichever is earlier. The Extended Reporting Period will not reinstate or increase the Limits of Insurance or extend the policy period.

3. When this Section applies, CONDITION 4 Other Insurance (SECTION V), is amended so that the insurance provided will be excess over any other valid and collectible insurance

available to the insured, whether primary, excess, contingent or on any other basis, whose policy period begins or continues after the Extended Reporting period takes effect.

**Section VII - Definitions**

1. "Administration" means the following activities, if authorized by you:

   a. Counseling "employees" with respect to "employee benefit programs",

   b. Interpretations relative to "employee benefit programs",

   c. Record-keeping in connection with "employee benefit programs".

   d. Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs".

   e. Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program"

2. "Advertising injury" means an injury arising out of one or more of the following offenses:

   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   b. Oral or written publication of material that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of copyright, title or slogan.

Grange Mutual Casualty Company
P.O. Box 1218
Columbus, Ohio 43216-1218

| Coverage Form | EB 101 |
| --- | --- |

**Policy Number: CPP  2669437**

## Employee Benefits Liability Coverage Form

**This Form Provides Claims - Made Coverage.**
**Please Read The Entire Form Carefully.**

3. "Benefit error" means any act or negligence, error, mistake or omission of an insured, or others for whom the insured is legally responsible, in the "administration" of your "employee benefit programs".

4. "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

5. "Coverage territory" means the United States of America (including its territories and possessions), Puerto Rico and Canada.

6. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

7. "Employee benefit programs" mean:

   a. Group plans for life, accident, health, dental, and disability insurance;

   b. Pension and profit sharing plans;

   c. Employee stock subscription plans;

   d. Travel and vacation plans;

   e. Savings plans;

   f. Salary reduction plans under Internal Revenue Code 401(K) or amendments;

   g. Educational tuition reimbursement plans;

   h. Individual Retirement Account (IRA) plans;

   i. Social security and disability benefits insurance; and

   j. Workers' compensation and unemployment insurance.

8. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

10. "Personal Injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

    d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

    e. Oral or written publication of material that violates a person's right of privacy.

11. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property; or

    b. Loss of use of tangible property that is not physically injured.

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

| Coverage Form | EB 101 |
| --- | --- |

**Policy Number: CPP 2669437**

**Employee Benefits Liability Coverage Form**

**This Form Provides Claims - Made Coverage.
Please Read The Entire Form Carefully.**

12. "Suit" means a civil proceeding in which damages to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or submits with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

13. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**Section VIII - State Exceptions**

INDIANA CHANGES. The following Condition is added:

Notice given by or on behalf of the insured to any of our authorized agents in Indiana, with particulars sufficient to identify the insured, shall be considered to be notice to us.

| Endorsement | CC 6 |
|---|---|

**Georgia Changes**

**THIS ENDORSEMENT CHANGES CYBER COVERAGE TERMS. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

CYBER COVERAGE FORM

A. **SECTION II - DEFINITIONS**, Definition E. is replaced by the following:

**Damages** means any monetary amount which **you** become legally obligated to pay as the result of a **Claim**, including judgments, awards, damages, settlements to which **we** have consented in writing, prejudgment and post-judgment interest awarded which directly arise from and correspond to the portion of any judgment attributable to a covered **Claim**.

**Damages** do not include:

1. any amount for which the **Insured** is not liable or legally obligated to pay;

2. liquidated damages, taxes, fines or penalties, or any multiples thereof;

3. matters uninsurable under the law applicable to this Endorsement;

4. past, present and future earned and unearned royalties, profits, fees, costs, expenses, commissions, or the return of royalties, profits, fees, costs, expenses, commissions, and profits unjustly held or obtained;

5. costs and expenses required to comply with any injunctive or other non-monetary equitable, declaratory, regulatory or administrative relief, including specific performance, or any agreement to provide such relief; or

6. discounts, prizes, awards, coupons or other incentives offered to the **Named Insured's** clients or customers.

B. **SECTION III - EXCLUSIONS**, Exclusion 17.

Paragraph a. is deleted.

C. **SECTION III - EXCLUSIONS**, Exclusion 20. Paragraph b. is replaced by the following:

War, invasion, rebellion, revolution, insurrection, coup, usurped powers or military powers.

D. **SECTION IV - LIMITS OF INSURANCE AND DEDUCTIBLE**, Paragraph F.2. is deleted.

E. **SECTION V - CONDITIONS**, Condition B. NOTICE OF PRIVACY BREACH EVENTS, NETWORK DISRUPTIONS, EXTORTION THREATS, REGULATORY PROCEEDINGS AND CLAIMS, Paragraph 1. is replaced by the following:

1. **You** shall report to **us** a **Privacy Breach Event, Extortion Threat** or **Network Disruption** for which coverage is being sought under this Endorsement promptly, but in no event later than thirty (30) days after **you** first discovered such **Privacy Breach Event, Extortion Threat** or **Network Disruption**. Such reporting must include full particulars. Any subsequent **Claim** for a **Privacy Wrongful Act** or **Regulatory Proceeding** directly related to such **Privacy Breach Event** shall be treated as a **Claim** or **Regulatory Proceeding** first discovered at the time **you** first discovered such **Privacy Breach Event**.

F. **SECTION V - CONDITIONS**, Condition F. OTHER INSURANCE is replaced by the following:

continued...

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | CC 6 |
| --- | --- |

**Policy Number:**

**Georgia Changes**

If this Policy and one or more policies issued by another insurer both provide insurance for the same **Wrongful Act, Privacy Breach Event,** or **Network Disruption** then coverage in excess of the applicable Deductible amount under this Policy will apply pro-rata with such other insurance and **our** pro-rata share will be determined by the applicable Limit of Insurance of **our** Policy and the Limits of Insurance of all such other insurance.

This condition does not apply to other insurance that is specifically written to apply in excess of the limits provided by this Endorsement.

| Endorsement | CG 09 GA |
| --- | --- |

**Policy Number: CPP 2669437**

**Asbestos, Silica or Mixed Dust Exclusion**

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement modifies insurance provided under the following:

> BUSINESSOWNERS COVERAGE FORM
> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
> RAILROAD PROTECTIVE LIABILITY COVERAGE FORM

This insurance does not apply to:

1. "Bodily injury", "property damage", "personal and advertising injury" arising out of, caused by, contributed by, or resulting from, exposure to or the use of:

   a. Asbestos including, but not limited to, the cost of abatement, mitigation, removal and disposal of asbestos from any good, product or structure;

   b. Silica including, but not limited to, exposure to silica or the use of silica;

      i. Silica means a group of naturally occurring crystalline forms of silicon dioxide, including, but not limited to, quartz and sand.

   c. Mixed dust

      i. Mixed dust means a mixture of dusts composed of silica or asbestos with one or more other dusts.

2. Any damage or any loss, cost or expense arising out of any:

   a. Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of mixed dust, silica or asbestos, or any other material or substance containing asbestos, silica, or mixed dust, or;

   b. Claim or suit by or on behalf of any governmental authority or any other alleged responsible party for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of mixed dust, asbestos or silica, or any other material or substance containing silica, asbestos, or mixed dust.

3. Any supervision, instruction, recommendations, warnings or advice given or which should have been given in connection with any of the substances named in 1.a., b., or c.; or

4. Any obligation to share damages with or repay someone else in connection with any of the substances named in 1.a., b., or c.

**AAIS**
**IM 2021 04 04**
**Page 1 of 1**

This endorsement changes
the policy
**-- PLEASE READ THIS CAREFULLY --**

# AMENDATORY ENDORSEMENT
## GEORGIA

Under Perils Excluded, Criminal, Fraudulent, Dishonest, Or Illegal Acts, if applicable, is amended to include the following:

However, if the loss is caused by an intentional act of an insured against whom a family violence complaint is brought for the act causing this loss, this exclusion will not apply to an otherwise covered loss suffered by another insured who did not cooperate with or contribute to the act that caused the loss.

Subject to all other "terms" of this policy, "our" payment to an insured who did not cooperate in or contribute to the act that caused the loss may be limited to that person's insurable interest in the property, less any payment made to a mortgagee or other party with a legal secured interest in the property. "We" retain all rights set forth in the Subrogation condition of this policy with regard to action against the perpetrator of the act that caused the loss.

**IM 2021 04 04**

Copyright, American Association of Insurance Services, Inc., 2004

# TRANSPORTATION COVERAGE

## AGREEMENT

In return for "your" payment of the required premium, "we" provide the coverage described herein subject to all the "terms" of the Transportation Coverage. This coverage is also subject to the "declarations" and additional policy conditions relating to assignment or transfer of rights or duties, cancellation, changes or modifications, inspections, and examination of books and records.

Endorsements and schedules may also apply. They are identified on the "declarations".

Refer to Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks or bold type.

## DEFINITIONS

1. The words "you" and "your" mean the persons or organizations named as the insured on the "declarations".

2. The words "we", "us", and "our" mean the company providing this coverage.

3. "Any one aircraft" means any one aircraft, airplane, helicopter, dirigible, or any machine capable of flight.

4. "Any one carrier for hire" means any one vehicle, truck, trailer, semitrailer, or combination of these pulled by one power unit operated by a carrier for hire.

5. "Any one owned vehicle" means any one vehicle, truck, trailer, semitrailer, or combination of these pulled by one power unit owned by "you" or leased by "you" and that is operated by "you".

6. "Any one railroad car" means any one railroad car, boxcar, tank car, flat car, or similar rolling stock including any railroad car transporting property in or on one or more trucks, trailers, semitrailers, or other containers.

7. "Declarations" means all pages labeled Declarations, Supplemental Declarations, or Schedules, which pertain to this coverage.

8. "Limit" means the amount of coverage that applies.

9. "Pollutant" means:

   a. any solid, liquid, gaseous, thermal, or radioactive irritant or contaminant, including acids, alkalis, chemicals, fumes, smoke, soot, vapor, and waste. Waste includes materials to be disposed of as well as recycled, reclaimed, or reconditioned.

   b. electrical or magnetic emissions, whether visible or invisible, and sound emissions.

10. "Specified perils" means fire; lightning; windstorm; hail; collision, overturn, or derailment of a transporting conveyance; collapse of a bridge or culvert; and theft.

11. "Terms" means all provisions, limitations, exclusions, conditions, and definitions that apply.

## PROPERTY COVERED

1. "We" cover direct physical loss caused by a covered peril to property described on the "declarations". When a "limit" for a mode of transportation is indicated on the "declarations" "we" cover described property while in due course of transit on or in:

a. "any one aircraft";

b. "any one owned vehicle";

c. "any one carrier for hire"; or

d. "any one railroad car".

2. When a "limit" is indicated for a terminal location, "we" cover direct physical loss caused by a covered peril to described property while at a terminal location described on the "declarations" or within 100 feet of the described terminal.

   "We" only cover property at a terminal location if the covered property is in due course of transit.

3. If covered property includes property of others "we" only cover such property to the extent of "your" legal liability for direct physical loss caused by a covered peril.

## PROPERTY NOT COVERED

1. **Art, Antiques and Fur**-- "We" do not cover objects of art, antiques, or fur garments.

2. **Carrier For Hire** -- "We" do not cover property of others that "you" are responsible for as a:

   a. carrier for hire; or

   b. as an arranger of transportation; this includes carloader, consolidator, broker, freight forwarder, or shipping association.

3. **Contraband** -- "We" do not cover contraband or property in the course of illegal transportation or trade.

4. **Exports and Imports**-- "We" do not cover exported or imported property:

a. that is covered under any ocean marine cargo policy that anyone has obtained covering exports or imports; or

b. while on an ocean or air conveyance.

5. **Jewelry, Stones and Metals**-- "We" do not cover jewelry, precious or semi-precious stones, gold, silver, platinum, or other precious metals or alloys.

6. **Lease Agreement** -- "We" do not cover property for which "you" are contractually liable under a lease agreement with any transportation carrier.

7. **Live Animals**-- "We" do not cover animals including cattle or poultry unless death is caused or made necessary by a "specified peril".

8. **Mail** -- "We" do not cover mail shipments in the custody of the U.S. Postal Service.

9. **Money and Securities** -- "We" do not cover accounts, bills, currency, food stamps, or other evidences of debt, lottery tickets not held for sale, money, notes, or securities.

10. **Samples** -- "We" do not cover samples while in the custody of a sales representative.

11. **Storage** -- "We" do not cover property held in storage.

## ADDITIONAL COVERAGES

1. **Debris Removal** -- "We" pay the cost to remove the debris of covered property that is caused by a covered peril. This coverage does not include costs to:

   a. extract "pollutants" from land or water; or

b.  remove, restore, or replace polluted land or water.

"We" will not pay any more under this coverage than 25% of the amount "we" pay for the direct loss. "We" will not pay more for loss to property and debris removal combined than the "limit" for the damaged property.

However, "we" pay an additional amount of debris removal expense up to $5,000 when the debris removal expense exceeds 25% of the amount "we" pay for direct loss or when the loss to property and debris removal combined exceeds the "limit" for the damaged property.

"We" do not pay any expenses unless they are reported to "us" in writing within 180 days from the date of direct physical loss to covered property.

2.  **Emergency Removal** -- "We" pay for loss to covered property while it is moved or being moved to prevent a loss caused by a covered peril. "We" pay for any direct physical loss caused by a peril that is not excluded. This coverage applies for up to ten days after the property is first moved, but does not extend past the date on which this policy expires.

3.  **Pollutant Cleanup and Removal** -- "We" pay "your" expense to extract "pollutants" from land or water if the discharge, dispersal, seepage, migration, release, or escape of the "pollutants" is caused by a covered peril that occurs during the policy period. The expenses are paid only if they are reported to "us" in writing within 180 days from the date the covered peril occurs.

"We" do not pay the cost of testing, evaluating, observing, or recording the existence, level, or effects of "pollutants". However, "we" pay the cost of testing which is necessary for the extraction of "pollutants" from land or water.

The most "we" pay for each site or location is $10,000 for the sum of all such expenses arising out of a covered peril occurring during each separate 12 month period of this policy.

4.  **Rejected Shipments** -- "We" pay for loss caused by a covered peril to outgoing shipments of covered property that have been rejected by the consignee, including shipments that are not deliverable.  "We" cover rejected shipments while:

a.  in due course of transit back to "you"; or

b.  awaiting return shipment to "you".

This additional coverage will end ten days after delivery has been attempted or made to the consignee unless the covered property is in due course of transit back to "you".

## PERILS COVERED

"We" cover external risks of direct physical loss unless the loss is limited or caused by a peril that is excluded.

## PERILS EXCLUDED

1.  "We" do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

a.  **Civil Authority** -- "We" do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

"We" do pay for loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this coverage.

b. **Nuclear Hazard** -- "We" do not pay for loss caused by or resulting from a nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke. "We" do pay for direct loss by fire resulting from the nuclear hazard.

c. **War** -- "We" do not pay for loss caused by war. This means:

   1) declared war, undeclared war, civil war, insurrection, rebellion, or revolution;
   2) a warlike act by a military force or by military personnel;
   3) the destruction, seizure, or use of the property for a military purpose; or
   4) the discharge of a nuclear weapon even if it is accidental.

2. "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss.

   a. **Criminal, Fraudulent, or Dishonest Acts** -- "We" do not pay for loss caused by or resulting from criminal, fraudulent, dishonest, or illegal acts alone or in collusion with another by:

      1) "you";
      2) others who have an interest in the property;
      3) others to whom "you" entrust the property;
      4) "your" partners, officers, directors, trustees, or joint adventurers; or

   5) the employees or agents of 1), 2), 3), or 4) above, whether or not they are at work.

   This exclusion does not apply to acts of destruction by "your" employees, but "we" do not pay for theft by employees.

   This exclusion does not apply to covered property in the custody of a carrier for hire.

   b. **Loss of Use** -- "We" do not pay for loss caused by or resulting from loss of use, business interruption, delay, or loss of market.

   c. **Missing Property** -- "We" do not pay for missing property where the only proof of loss is unexplained or mysterious disappearance of covered property, or shortage of property discovered on taking inventory, or any other instance where there is no physical evidence to show what happened to the covered property. This exclusion does not apply to covered property in the custody of a carrier for hire.

   d. **Pollutants** -- "We" do not pay for loss caused by or resulting from release, discharge, seepage, migration, dispersal, or escape of "pollutants" unless the release, discharge, seepage, migration, dispersal, or escape is caused by a "specified peril". "We" do pay for any resulting loss caused by a "specified peril".

   e. **Voluntary Parting** -- "We" do not pay for loss caused by or resulting from voluntary parting with title to or possession of any property because of any fraudulent scheme, trick, or false pretense.

   "We" do cover loss to covered property caused by false bills of lading or shipping receipts that "you" accept in good faith.

3. "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss. But if loss by a "specified peril" results "we" will pay for the resulting loss.

   a. **Contamination or Deterioration**-- "We" do not pay for loss caused by contamination or deterioration including corrosion; decay; fungus; mildew; mold; rot; rust; or any quality, fault, or weakness in the covered property that causes it to damage or destroy itself.

   b. **Temperature/Humidity**-- "We" do not pay for loss caused by humidity, dampness, dryness, or changes in or extremes of temperature.

   c. **Wear and Tear** -- "We" do not pay for loss caused by wear and tear.

## WHAT MUST BE DONE IN CASE OF LOSS

1. **Notice** -- In case of a loss, "you" must:

   a. give "us" or "our" agent prompt notice including a description of the property involved ("we" may request written notice); and

   b. give notice to the police when the act that causes the loss is a crime.

2. **Protect Property** -- "You" must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss. "We" do pay the reasonable costs incurred by "you" for necessary repairs or emergency measures performed solely to protect covered property from further damage by a peril insured against if a peril insured against has already caused a loss to covered property. "You" must keep an accurate

record of such costs. However, "we" do not pay for such repairs or emergency measures performed on property which has not been damaged by a peril insured against. This does not increase "our" "limit".

3. **Proof of Loss** -- "You" must send "us", within 60 days after "our" request, a signed, sworn proof of loss. This must include the following information:

   a. the time, place, and circumstances of the loss;

   b. other policies of insurance that may cover the loss;

   c. "your" interest and the interests of all others in the property involved, including all mortgages and liens;

   d. changes in title of the covered property during the policy period; and

   e. estimates, specifications, inventories, and other reasonable information that "we" may require to settle the loss.

4. **Examination** -- "You" must submit to examination under oath in matters connected with the loss as often as "we" reasonably request and give "us" sworn statements of the answers. If more than one person is examined, "we" have the right to examine and receive statements separately and not in the presence of others.

5. **Records** -- "You" must produce records, including tax returns and bank microfilms of all cancelled checks relating to value, loss, and expense and permit copies and extracts to be made of them as often as "we" reasonably request.

6. **Damaged Property** -- "You" must exhibit the damaged and undamaged property as often as "we" reasonably request and allow "us" to inspect or take samples of the property.

7. **Volunteer Payments** -- "You" must not, except at "your" own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage.

8. **Abandonment** -- "You" may not abandon the property to "us" without "our" written consent.

9. **Cooperation** -- "You" must cooperate with "us" in performing all acts required by this policy.

## VALUATION

1. **Invoice, Actual Cash Value** -- The value of covered property is based on the invoice amount plus accrued costs, pre-paid charges, and charges since shipment.

   In the absence of an invoice the value of covered property will be based on the actual cash value at the time of loss (with a deduction for depreciation) except as provided in paragraphs 2. and 3. under Valuation.

2. **Pair or Set** -- The value of a lost or damaged article which is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

3. **Loss to Parts** -- The value of a lost or damaged part of an item that consists of several parts when it is complete is based on the value of only the lost or damaged part or the cost to repair or replace it.

## HOW MUCH WE PAY

1. **Insurable Interest** -- "We" do not cover more than "your" insurable interest in any property.

2. **Deductible** -- "We" pay only that part of "your" loss over the deductible amount indicated on the "declarations" in any one occurrence.

3. **Loss Settlement Terms** -- Subject to paragraphs 1., 2., 4., and 5. under How Much We Pay, "we" pay the lesser of:

   a. the amount determined under Valuation;

   b. the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable; or

   c. the "limit" that applies to the mode of transportation or terminal location indicated on the "declarations". In no event will "we" pay more than the catastrophe "limit" indicated on the "declarations" regardless if a loss involves:

      1) one or more modes of transportation;
      2) one or more terminal locations; or
      3) any combination of modes of transportation or terminal locations.

   When a railroad car is transporting a truck, trailer, or semitrailer, the "limit" for a railroad car applies. In no event will "we" combine the "limit" for "any one owned vehicle" or the "limit" for "any one carrier for hire" with the "limit" for "any one railroad car".

   When a truck, trailer, or semitrailer is situated within a terminal building or within 100 feet of a terminal building, the "limit" for

terminal locations applies. In no event will "we" combine the "limit" for "any one owned vehicle" or the "limit" for "any one carrier for hire" with the "limit" for terminal locations.

4. **Insurance Under More Than One Coverage** -- If more than one coverage of this policy insures the same loss, "we" pay no more than the actual claim, loss, or damage sustained.

5. **Insurance Under More Than One Policy** -- "You" may have another policy subject to the same "terms" as this policy. If "you" do, "we" will pay "our" share of the covered loss. "Our" share is the proportion that the applicable "limit" under this policy bears to the "limit" of all policies covering on the same basis.

If there is another policy covering the same loss, other than that described above, "we" pay only for the amount of covered loss in excess of the amount due from that other policy, whether "you" can collect on it or not. But "we" do not pay more than the applicable "limit".

## LOSS PAYMENT

1. **Our Options** -- "We" have the following options:

   a. pay the value of the loss;

   b. pay the cost of repairing or replacing the loss;

   c. rebuild, repair, or replace with property of like kind and quality, to the extent practicable, within a reasonable time;

   d. take all or any part of the damaged property at the agreed or appraised value.

"We" must give "you" notice of "our" intent to rebuild, repair, or replace within 30 days after receipt of a duly executed proof of loss.

2. **Your Losses** -- "We" adjust all losses with "you". Payment will be made to "you" unless another loss payee is named in the policy. An insured loss will be payable 30 days after a satisfactory proof of loss is received, and the amount of the loss has been established either by written agreement with "you" or the filing of an appraisal award with "us".

3. **Property of Others** -- Losses to property of others may be adjusted with and paid to:

   a. "you" on behalf of the owner; or

   b. the owner.

If "we" pay the owner, "we" do not have to pay "you". "We" may also choose to defend any suits arising from the owners at "our" expense.

## OTHER CONDITIONS

1. **Appraisal** -- If "you" and "we" do not agree on the amount of the loss or the actual cash value of covered property, either party may demand that these amounts be determined by appraisal.

If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court of record in the state where the property is located to select an umpire.

The appraisers will then determine and state separately the amount of each loss.

The appraisers will also determine the value of covered property items at the time of the loss, if requested.

If the appraisers submit a written report of any agreement to "us", the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three sets the amount of the loss.

Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by "you" and "us".

2. **Benefit to Others** -- Insurance under this coverage shall not directly or indirectly benefit anyone having custody of "your" property.

3. **Conformity With Statute** -- When a condition of this coverage is in conflict with an applicable law, that condition is amended to conform to that law.

4. **Estates** -- This provision applies only if the insured is an individual.

   On "your" death, "we" cover the following as an insured:

   a.  the person who has custody of "your" property until a legal representative is qualified and appointed; or

   b.  "your" legal representative.

   This person or organization is an insured only with respect to property covered by this coverage.

   This coverage does not extend past the policy period indicated on the "declarations".

5. **Misrepresentation, Concealment, or Fraud** -- This coverage is void as to "you" and any other insured if, before or after a loss:

   a.  "you" or any other insured have willfully concealed or misrepresented:

      1)  a material fact or circumstance that relates to this insurance or the subject thereof; or
      2)  "your" interest herein; or

   b.  there has been fraud or false swearing by "you" or any other insured with regard to a matter that relates to this insurance or the subject thereof.

6. **Policy Period** -- "We" pay for a covered loss that occurs during the policy period.

7. **Recoveries** -- If "we" pay "you" for the loss and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

   a.  "you" must notify "us" promptly if "you" recover property or receive payment;

   b.  "we" must notify "you" promptly if "we" recover property or receive payment;

   c.  any recovery expenses incurred by either are reimbursed first;

   d.  "you" may keep the recovered property but "you" must refund to "us" the amount of the claim paid, or any lesser amount to which "we" agree; and

   e.  if the claim paid is less than the agreed loss due to a deductible or other limiting "terms" of this policy, any recovery will be pro rated between "you" and "us" based on "our" respective interest in the loss.

8. **Restoration of Limits** -- A loss "we" pay under this coverage does not reduce the applicable "limits".

9. **Subrogation** -- If "we" pay for a loss, "we" may require "you" to assign to "us" "your" right of recovery against others. "You" must do all that is necessary to secure "our" rights. "We" do not pay for a loss if "you" impair this right to recover.

"You" may waive "your" right to recover from others in writing before a loss occurs.

10. **Suit Against Us** -- No one may bring a legal action against "us" under this coverage unless:

   a. all of the "terms" of this coverage have been complied with; and

   b. the suit has been brought within two years after "you" first have knowledge of the loss.

If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by law.

11. **Territorial Limits** -- "We" cover property while:

   a. at a location in; or

   b. in transit between or within

   the United States of America, its territories and possessions, Canada, and Puerto Rico.

12. **Carriers For Hire** -- "You" may accept bills of lading or shipping receipts issued by carriers for hire that limit their liability to less than the actual cash value of the covered property.

IM-7250  Ed 1.0
Copyright  MCMXCIV
American Association of Insurance Services

**AAIS**
**CL 0600 01 15**
**Page 1 of 1**

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# CERTIFIED TERRORISM LOSS

1. The following definitions are added.

   a. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security, and the Attorney General of the United States:

      1) to be an act of terrorism;
      2) to be a violent act or an act that is dangerous to human life, property, or infrastructure;
      3) to have resulted in damage:

         a) within the United States; or
         b) to an air carrier (as defined in section 40102 of title 49, United States Code); to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or at the premises of any United States mission;

      4) to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion; and

      5) to have resulted in insured losses in excess of five million dollars in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act, as amended.

   b. "Certified terrorism loss" means loss that results from a "certified act of terrorism".

2. The "terms" of any terrorism exclusion that is part of or that is attached to this Coverage Part are amended by the following provision:

   This exclusion does not apply to "certified terrorism loss".

3. The following provision is added.

   If the Secretary of the Treasury determines that the aggregate amount of "certified terrorism loss" has exceeded one hundred billion dollars in a calendar year (January 1 through December 31), and "we" have met "our" insurer deductible under the Terrorism Risk Insurance Act, as amended, "we" will not pay for any portion of "certified terrorism loss" that exceeds one hundred billion dollars. If the "certified terrorism loss" exceeds one hundred billion dollars in a calendar year (January 1 through December 31), losses up to one hundred billion dollars are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury under the Terrorism Risk Insurance Act, as amended.

4. The following provisions are added.

   a. Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to this Coverage Part provide coverage for any loss that would otherwise be excluded by this Coverage Part under:

      1) exclusions that address war, military action, or nuclear hazard; or
      2) any other exclusion; and

   b. the absence of any other terrorism endorsement does not imply coverage for any loss that would otherwise be excluded by this Coverage Part under:

      1) exclusions that address war, military action, or nuclear hazard; or
      2) any other exclusion.

**CL 0600 01 15**

Copyright, American Association of Insurance Services, Inc., 2015

**AAIS**
**CL 0605 01 15**
Page 1 of 1

This endorsement changes
the policy
**-- PLEASE READ THIS CAREFULLY --**

**POLICY NUMBER**

# CERTIFIED TERRORISM LOSS DISCLOSURE OF PREMIUM AND FEDERAL SHARE OF INSURED LOSSES

(The entries required to complete this endorsement will be shown below, on the "declarations", or on the "schedule of coverages".)

### SCHEDULE

Certified Terrorism Loss Premium $

Additional information, if any, concerning terrorism premium:

1. The portion of "your" premium that is attributed to coverage for "certified terrorism loss" is shown in the Schedule above.

2. Coverage for "certified terrorism loss", to the extent that such coverage is provided by this policy or Coverage Part, will be partially reimbursed by the United States Government, Department of Treasury under a federal program. Under that program, the United States pays the following percentage of insured losses for "certified terrorism loss" that exceeds the statutorily established deductible that "we" retain:

   a. 85%, for insured losses occurring before January 1, 2016;

   b. 84%, for insured losses occurring during the 2016 calendar year;

   c. 83%, for insured losses occurring during the 2017 calendar year;

   d. 82%, for insured losses occurring during the 2018 calendar year;

   e. 81%, for insured losses occurring during the 2019 calendar year; and

   f. 80%, for insured losses occurring on or after January 1, 2020.

   However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act, as amended, exceed one hundred billion dollars in a calendar year (January 1 through December 31), the Treasury will not make payment for any portion of the amount of such losses that exceeds one hundred billion dollars.

   If the Secretary of the Treasury determines that the aggregate amount of "certified terrorism loss" has exceeded one hundred billion dollars in a calendar year (January 1 through December 31), and "we" have met "our" insurer deductible under the Terrorism Risk Insurance Act, as amended, "we" will not pay for any portion of "certified terrorism loss" that exceeds one hundred billion dollars. If the "certified terrorism loss" exceeds one hundred billion dollars in a calendar year (January 1 through December 31), losses up to one hundred billion dollars are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury under the Terrorism Risk Insurance Act, as amended.

Copyright, American Association of Insurance Services, Inc., 2015

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

  **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1), (2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

 © Insurance Services Office, Inc., 2012

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

 © Insurance Services Office, Inc., 2012

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

   (1) "Bodily injury" or "personal and advertising injury":

      (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

      (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

      (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

      (d) Arising out of his or her providing or failing to provide professional health care services.

   (2) "Property damage" to property:

      (a) Owned, occupied or used by; or

      (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

      you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

   (1) With respect to liability arising out of the maintenance or use of that property; and

   (2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage **C;**

b. Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage **B.**

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A;** and

   **b.** Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

## 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

### a. Primary Insurance

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

### b. Excess Insurance

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

### c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

## 5. Premium Audit

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

## 6. Representations

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

   **a.** Means:

   **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   **(a)** You;

   **(b)** Others trading under your name; or

   **(c)** A person or organization whose business or assets you have acquired; and

   **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

   **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   **(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

   **a.** Means:

   **(1)** Work or operations performed by you or on your behalf; and

   **(2)** Materials, parts or equipment furnished in connection with such work or operations.

   **b.** Includes:

   **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

   **(2)** The providing of or failure to provide warnings or instructions.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

 © Insurance Services Office, Inc., 2013

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I - Coverage A - Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I - Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demo- tion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

 © ISO Properties, Inc., 2006

| Endorsement | IL 15 |
| --- | --- |

**Lead Exclusion**

Policy Number:

This endorsement modifies insurance provided under the following:

> BUSINESSOWNERS COVERAGE FORM
> COMMERCIAL GENERAL LIABILITY
>    COVERAGE FORM
> OWNERS AND CONTRACTORS
>    PROTECTIVE LIABILITY COVERAGE
>    FORM
> RAILROAD PROTECTIVE LIABILITY
>    COVERAGE FORM
> PRODUCTS / COMPLETED OPERATIONS
>    LIABILITY COVERAGE FORM

This insurance does not apply to:

1. "Bodily injury", "property damage", "personal injury", or "advertising injury" arising out of the actual, alleged or threatened exposure to lead, paint containing lead, water containing lead, or any other material or substance containing lead; or

2. Any loss, cost or expense arising out of any:

a. Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead, paint containing lead, water containing lead, or any other material or substance containing lead; or

b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead, paint containing lead, water containing lead, or any other material or substance containing lead.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

 © ISO Properties, Inc., 2003

| Coverage Form | CC 10 |
|---|---|

**CYBER COVERAGE FORM**

**THIS ENDORSEMENT PROVIDES INDEPENDENT COVERAGES, TERMS, AND DEFINITIONS. PLEASE READ IT CAREFULLY.**

**THE ENDORSEMENT'S AGGREGATE LIMIT OF LIABILITY WILL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DAMAGES, CLAIM EXPENSES, PRIVACY BREACH EXPENSES AND BUSINESS INCOME LOSS AND EXTRA EXPENSES.**

**PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

Various provisions in this Endorsement restrict coverage. Read the entire Endorsement carefully to determine rights, duties and what is and is not covered.

Throughout this Endorsement the words in **bold** are defined terms within Section II, the Definitions section of this Endorsement. Throughout this Endorsement, the words **you** and **your** refer to the **Insured** as defined in Section II, I. The words **we**, **us**, and **our** refer to the Company providing this insurance.

This endorsement does not include any coverage unless a Limit of Insurance is indicated for such Coverage in the Schedule below.

**SCHEDULE**

| Coverage | Limit Of Insurance | Deductible / Waiting Period |
|---|---|---|
| A. Third Party Cyber Liability Coverage | $ | $ |
| B. Regulatory Proceeding Claims Expense Coverage | $ | $ |
| C. First Party Privacy Breach Expense Coverage | $ | $ |
| D. First Party Business Interruption Coverage Aggregate | $ | hours |
| E. Data Replacement | $ | |
| F. Regulatory Fines Coverage | $ | |
| G. PCI Fines Coverage | $ | |
| H. Cyber Coverage Aggregate | $ | |

| Endorsement Premium | | $ |
|---|---|---|

**Endorsement Period:** From _____ to _____

At 12:01 A.M. Standard Time at the address of the **Named Insured** as stated herein

**SECTION I - COVERAGES**

**A.** INSURING AGREEMENTS

1. Third Party Cyber Liability Coverage:

   **We** will pay on **your** behalf those **Damages** and **Claim Expenses you** become legally obligated to pay resulting from any **Claim**, provided such **Claim** is first discovered by **you** during the **Endorsement Period** or within thirty (30) days after the end of the **Endorsement Period** if this Endorsement is not renewed and is reported to **us** in accordance with Section V. CONDITIONS B., for any:

 *continued...*

**CYBER COVERAGE FORM**

a. **Media Wrongful Act**;

b. **Network Security Wrongful Act**; or

c. **Privacy Wrongful Act**.

2. **Regulatory Proceeding Claims Expense** Coverage:

**We** will pay on **your** behalf those **Claim Expenses** and **Regulatory Fines you** become legally obligated to pay resulting from any **Regulatory Proceeding** for a **Privacy Wrongful Act**, provided such **Regulatory Proceeding** is first discovered by **you** during the **Endorsement Period** or within thirty (30) days after the end of the **Endorsement Period** if this Endorsement is not renewed and is reported to **us** in accordance with Section V. CONDITIONS B.

3. First Party **Privacy Breach Expense** Coverage:

**We** will pay the **Named Insured** those **Privacy Breach Expenses** directly incurred in responding to a **Privacy Breach Event** or an **Extortion Threat**, provided such **Privacy Breach Event** or **Extortion Threat** is first discovered by **you** during the **Endorsement Period** or within thirty (30) days after the end of the **Endorsement Period** if this Endorsement is not renewed and is reported to **us** in accordance with Section V. CONDITIONS B.

4. First Party Business Interruption Coverage:

**We** will pay the **Named Insured** for the **Business Income Loss** and **Extra Expense** the **Named Insured** sustained during a **Reconstruction Period** directly caused by a **Network Disruption** to the **Named Insured's Computer System**, provided such **Network Disruption** is first discovered by **you** during the **Endorse-ment Period** or within thirty (30) days after the end of the **Endorsement Period** if this Endorsement is not renewed and is

reported to **us** in accordance with Section V. CONDITIONS B.

B. **Our** Rights and Duties in the Event of **Claims**

**We** have the right and duty to defend, and pay on **your** behalf any **Claim Expenses** resulting from, any **Claim** to which this insurance applies, even if the allegations are groundless, false or fraudulent. **We** have the right to investigate, direct the defense, and settle any **Claim** as **we** deem expedient. **Our** duty ends when the Endorsement's applicable Limit of Insurance has been exhausted by **our** payment of **Damages**, **Claim Expenses**, **Privacy Breach Expenses** or **Business Income Loss** and **Extra Expense** or **we** have deposited the Endorsement's remaining applicable Limit of Insurance with a court of competent jurisdiction. **We** have no obligation or duty to defend any **Claim** or pay any **Claims Expenses** for which coverage is excluded or not otherwise afforded by the Endorsement.

**SECTION II - DEFINITIONS**

A. **Business Income Loss** means net profit the **Named Insured** would have earned before taxes during the **Reconstruction Period**, in excess of the Waiting Period Deductible indicated in the Schedule, had no **Network Disruption** taken place. **Business Income Loss** shall not include any contractual penalties.

B. **Claim** means a written demand or assertion of a legal right for money or services received by **you** for a **Wrongful Act**, including service upon **you** of a lawsuit or arbitration proceeding seeking injunctive relief for a **Wrongful Act**. A **Claim** does not include a **Regulatory Proceeding**.

C. **Claim Expenses** means with respect to any **Claim** or **Regulatory Proceeding**:

1-1. reasonable and necessary fees, costs and expenses charged by any lawyer or other vendor designated or approved in writing by **us** directly resulting from the investiga-tion, adjustment, settlement and/or

Policy Number:

## CYBER COVERAGE FORM

defense of such **Claim** or **Regulatory Proceeding**;

1-2. reasonable and necessary expenses charged by a vendor designated or approved in writing by us to investigate an **Unauthorized Access or Unauthorized Use** of the **Named Insured's Computer System** to determine how **Protected Information** was accessed;

1-3. all interest on the full amount of any covered judgment that accrues after entry of the judgment and before **we** have paid, offered to pay, or have deposited into a court of competent jurisdiction that part of the judgment which is within the remaining applicable Limits of Insurance; and

1-4. the premiums for appeal, attachment or similar bonds, but only for bond amounts within the applicable Limits of Insurance. **We** do not have to furnish these bonds.

**Claim Expenses** do not include:

2-1. salaries, wages, fees, remuneration, overhead, benefits or expenses of **our** or **your** employees or officials;

2-2. fees, costs, or expenses incurred prior to the time that a **Claim** or **Regulatory Proceeding** is reported to **us** or paid or incurred without **our** prior written consent, and such unilaterally incurred fees, costs or expenses shall not reduce any deductible under the Endorsement;

2-3. costs to inspect, investigate, withdraw, alter, recall, reprocess, restore, replace, retract, amend, reprint, reproduce, remediate, correct, enhance, upgrade or modify **Electronic Media**;

2-4. costs and expenses to comply with any injunctive or other non-monetary equitable, declaratory, regulatory or administrative relief, including specific

performance, or any agreement to provide such relief;

2-5. costs or expenses incurred to prevent future **Unauthorized Access or Unauthorized Use** of the **Named Insured's Computer System**; or

2-6. any fines or penalties assessed as a result of a **Regulatory Proceeding**.

D. **Computer System** means any electronic device, electronic and paper storage media as well as any communications networks owned or operated exclusively for the benefit of a single owner. **Computer System** includes outsourced Cloud based storage.

E. **Damages** means any monetary amount which **you** become legally obligated to pay as the result of a **Claim**, including judgments, awards, damages, settlements to which **we** have consented in writing, prejudgment and post-judgment interest awarded which directly arise from and correspond to the portion of any judgment attributable to a covered **Claim**.

**Damages** do not include:

1. any amount for which the **Insured** is not liable or legally obligated to pay;

2. punitive and exemplary damages, liquidated damages, taxes, fines or penalties, or any multiples thereof;

3. matters uninsurable under the law applicable to this Endorsement;

4. past, present and future earned and unearned royalties, profits, fees, costs, expenses, commissions, or the return of royalties, profits, fees, costs, expenses, commissions, and profits unjustly held or obtained;

5. costs and expenses required to comply with any injunctive or other non-monetary equitable, declaratory, regulatory or administrative relief, including specific performance, or any agreement to provide such relief; or

Policy Number:

6. discounts, prizes, awards, coupons or other incentives offered to the **Named Insured's** clients or customers.

F. **Electronic Media** means audio, digital, informational or visual material in electronic form transmitted over the Internet or other computer media; provided, however, **Electronic Media** does not include:

1. material in print or in any form other than that transmitted electronically over the Internet or other computer media; or

2. scripts or films for theatrical release, radio or television programming, or books, manuals or other content on disk, e-reader, tablet or similar device.

G. **Extortion Threat** means a credible threat or series of credible threats by a third party who is not an **Insured** to cause a **Privacy Breach Event**, or to cause or perpetuate a **Network Disruption** such as through ransomware, unless a money demand is paid by the **insured**. An **Extortion Threat** is first discovered by an **Insured** when it is first received by the **Insured**.

H. **Extra Expenses** means reasonable and necessary expenses the **Named Insured** incurs after a **Network Disruption** to reduce the **Named Insured's Business Income Loss** and to resume its normal operations.

**Extra Expenses** do not include:

1. any contractual penalties; or

2. any costs to update or upgrade the **Named Insured's Computer System** to a level beyond that which existed prior to the **Network Disruption**.

I. **Insured** means:

1. all entities identified in the policy Declarations (all of which are referred to as the "**Named Insured**");

2. employees (not including volunteer workers or independent contractors), principals, partners, executive officers or directors of the **Named Insured**, but solely while acting within their capacity and the scope of their duties for or on behalf of the **Named Insured**; and

3. in the event of death, incapacity, bankruptcy or insolvency of any person identified in sub-paragraph 2. above, such person's heirs, estate, executors, administrators and legal representative in his or her capacity as such.

J. **Malicious Code** means an unauthorized, unwanted or harmful program, code or script, including, but not limited to, any virus, trojan horse, worm, time or logic bomb, spyware, malware or spiderware.

K. **Media Wrongful Act** means any of the following actual or alleged unintentional and unknowing conduct by **you** directly relating to, in connection with or arising from the creation of **Electronic Media** which advertises or promotes the **Named Insured's** products or services:

1. libel, slander or other defamation;

2. invasion or infringement of an individual's right to privacy or publicity;

3. disparaging a person's or organization's goods, products or services;

4. infringement of copyright, plagiarism or misappropriation of ideas; or

5. infringement of trademark, title, slogan, trade name, trade dress, service mark or service name.

L. **Network Disruption** means a measurable interruption, failure, suspension or delay in the performance of the **Named Insured's Computer System** directly caused by **your** unintentional failure to prevent an **Unauthorized Access or Unauthorized Use** of,

the introduction of **Malicious Code** into, or a denial of service attack upon, such **Computer System**.

M. **Network Security Wrongful Act** means **your** unintentional and unknowing failure to prevent an **Unauthorized Access or Unauthorized Use** of the **Named Insured's Computer System** that directly results in:

1. the inability of an **Insured** or authorized third party user to access the **Named Insured's Computer System**;

2. the inability of an authorized third party user to access its computer system or network;

3. the failure or corruption of a third party's computer system or network;

4. **your** transmittal or distribution of **Malicious Code** to a third party's computer system or network; or

5. the perpetuation of a denial of service attack on a third party's computer system or network.

N. **Policy Period** means the period from the inception date stated in the Policy Declarations to the expiration date stated in the Policy Declarations, or its earlier cancellation date, if any.

O. **Privacy Breach Event** means the theft or unauthorized disclosure of **Protected Information** due to the **Insured's** unintentional failure to safeguard such **Protected Information**.

P. **Privacy Breach Expenses** mean the following amounts, if reasonable and necessary and directly incurred by or for the **Named Insured** in responding to a **Privacy Breach Event** or, solely with respect to an **Extortion Threat**, a **Network Disruption**:

1. **Notification Expenses:**

notification fees and expenses charged by a vendor designated or approved in writing by **us** to notify a **Protected Person** of an **Unauthorized Access or Unauthorized Use** of his or her **Protected Information**, pursuant to applicable **Privacy Law** requirements or to minimize **Damages** otherwise covered under this Endorsement;

2. **Monitoring Expenses:**

fees and expenses charged by a vendor designated or approved in writing by us to provide monitoring, identity theft, or fraud resolution services to a **Protected Person**, pursuant to applicable **Privacy Law** requirements or to minimize **Damages** otherwise covered under this Endorsement;

3. **Extortion Threat Expenses:**

Expenses, ransom money including interest on any loan necessary to pay a ransom or reward money paid to any informant, if approved in writing by **us** to prevent or mitigate an **Extortion Threat**;

4. **Data Replacement Expenses:**

the reasonable and necessary fees, costs and expenses charged by a vendor designated or approved in writing by **us** to research, re-create or replace, from written records or partially or fully matching electronic data, any electronic data on the **Named Insured's Computer**;

5. **Cyber Investigation Expenses:**

fees and expenses charged by a vendor designated or approved in writing by **us** to investigate the **Unauthorized Access or Unauthorized Use** of the **Named Insured's Computer System** from which **Protected Information** has been accessed in order to determine whether the **Named Insured** has an obligation to provide notice under **Privacy Law**;

**CYBER COVERAGE FORM**

6. **PCI Fines:**

   fines or penalties the **Named Insured** is obligated under contract to pay to its acquiring bank or a payment card association due to the **Named Insured's** violation of any Payment Card Industry Data Security Standards (PCI-DSS) that were in effect when **you** first discovered the **Privacy Breach Event**; and

7. **Crisis Management Expenses:**

   a. fees and expenses charged by a public relations firm, law firm or crisis management firm to perform crisis management services to minimize the potential harm to the **Named Insured's** business from a **Privacy Breach Event**; and

   b. fees and expenses charged by a call center designated or approved in writing by us to provide assistance managing incoming calls in high volume **Privacy Breach Events**.

**Privacy Breach Expenses** shall not include:

1. salaries, wages, fees, remuneration, overhead, benefits or expenses of **our** or **your** employees or officials;

2. fees, costs or expenses to restore, replace, remediate, repair, correct, enhance, upgrade or otherwise modify, improve or make changes to the **Named Insured's Computer System** following or as a result of an actual or attempted **Unauthorized Access or Unauthorized Use** or **Privacy Breach Event**, including fees, costs or expenses to prevent a future **Unauthorized Access or Unauthorized Use** or **Privacy Breach Event**.

Q. **Privacy Law** means any law or regulation applicable to persons and organizations who lawfully and permissibly obtain or possess a **Protected Person's Protected Information**

requiring the posting of privacy policies, the adoption of specific privacy or security controls, or the notification of **Protected Persons** in the event their **Protected Information** has potentially been accessed or disclosed without authorization.

R. **Privacy Wrongful Act** means the following unintentional conduct resulting from **your** unintentional failure to safeguard **Protected Information** in the **Named Insured's** possession in the normal course of business:

   1. **your** actual or alleged violation of a **Privacy Law**; or

   2. **your** actual or alleged invasion or infringement of an individual's right to privacy or publicity.

S. **Protected Information** means an individual's name, social security number, medical or healthcare data, other protected health information, driver's license number, state identification number, credit card number, debit card number, account number, account histories, passwords, or other nonpublic personal information as defined in **Privacy Law**. **Protected Information** does not include records that are lawfully available to the general public for any reason, including but not limited to information from federal, state or local government records and does not include any "phone book" information such as name, address, email address and telephone number unless part of any **Privacy Law**.

T. **Protected Person** means a person whose **Protected Information** is protected from unauthorized disclosure or access by a **Privacy Law**.

U. **Reconstruction Period** means the period of time:

   1. after the application of the waiting period deductible stated in the Schedule;

   2. immediately following a **Network Disruption**; and

3. ending at the earlier of 120 days after the time that the **Named Insured's Computer System** was first interrupted by the **Network Disruption** or the resumption of the **Named Insured's** operations to substantially the same level that existed had the **Network Disruption** never taken place provided, however, that the **Named Insured** must make every effort to resume all or part of its operations as quickly as possible.

V. **Regulatory Fines** means any fines or penalties assessed against a **Named Insured** as a result of a **Regulatory Proceeding**, provided such fines or penalties are insurable under the applicable law most favoring coverage for such fines or penalties.

W. **Regulatory Proceeding** means a formal request to **you** for documentation made by, or an investigation or civil proceeding brought by, a regulatory body or regulator directly arising from the **your** actual or alleged unintentional breach or violation of a **Privacy Law**.

X. **Related Claims** means **Claims** based upon, arising from, in consequence of, directly or indirectly resulting from, or involving in any way continuous, repeated, the same, related, or substantially similar facts, circumstances, subjects, situations, decisions, cause, persons, transactions, events, class of persons or events, or continuous, repeated, the same, related, or a substantially similar series of facts, circumstances, subjects, situations, decisions, persons, transactions, class of persons or events.

Y. **Related Events** means **Privacy Breach Events** or **Extortion Threats** based upon, arising from, in consequence of, directly or indirectly resulting from, or involving in any way continuous, repeated, the same, related, or substantially similar facts, circumstances, subjects, situations, decisions, cause, persons,

transactions, event, class of persons or events, or continuous, repeated, the same, related, or a substantially similar series of facts, circumstances, subjects, situations, decisions, persons, transactions, class of persons or events.

Z. **Unauthorized Access or Unauthorized Use** means access to or use of the **Named Insured's Computer System** by a person or organization not authorized to do so, or the access to or use of the **Named Insured's Computer System** by an authorized person in an unauthorized manner.

AA. **Wrongful Act** means a **Media Wrongful Act**, **Network Security Wrongful Act** or **Privacy Wrongful Act**.

**SECTION III - EXCLUSIONS**

A. **We** shall not be liable to pay, indemnify or reimburse **Damages** or **Claim Expenses** from any **Claim** or **Regulatory Proceeding**, or any **Privacy Breach Expenses**, **Business Income Loss** or **Extra Expenses**, based on, resulting from or arising out of:

1. Any actual or alleged direct creation of **Malicious Code** by **you**.

2. Any **Malicious Code**, denial of service attack, unauthorized intrusion into the **Named Insured's Computer System** to access **Protected Information** or any similar attack or event:

    a. not directed principally at the **Named Insured** or its **Computer System**; or

    b. that generally affects governmental or private computer systems or networks, including **Malicious Code** that has been or may be identified or assigned a name by the United States Computer Emergency Readiness Team or a recognized computer security organization, such as McAfee, Symantec or Kaspersky, or any variant of any such **Malicious Code**.

**CYBER COVERAGE FORM**

3. The unsolicited dissemination of any communication to actual or prospective customers of the **Insured** or any third party, or any actual or alleged violation of the Telecommunications Act, the CAN-SPAM Act, or any other federal, state or local legislation, regulation or law protecting a person's or entity's right of seclusion or privacy.

4. Any seizure, nationalization, confiscation, destruction, deletion or expropriation of any **Protected Information** or any **Computer System** held or used by **you** by order of any governmental authority.

5. Any costs or expenses incurred by **you** or others to inspect, investigate, withdraw, alter, recall, reprocess, restore, replace, retract, amend, reprint, reproduce, remediate, correct, enhance, upgrade or otherwise modify any product, service or media of or for **you**, or any part of any such product, service or media. However, this exclusion shall not apply to any Data Replacement Expenses that constitute **Privacy Breach Expenses**.

6. Any actual or alleged unlawful or unauthorized obtaining, gathering, collecting, acquiring, using, distribution or sale by **you** of any information of any type, nature, or kind, including **Protected Information**.

7. Any actual or alleged:

   a. dishonest, fraudulent, criminal or malicious act, error or omission by **you**; or

   b. **your** intentional or knowing **Unauthorized Access or Unauthorized Use**, tampering with, denial of service attack, or otherwise limiting or preventing the use of the **Named Insured's Computer System** or any third party's computer system or network;

provided, however, the above sub-parts shall not apply: (1) to any **Insured** who did not intentionally and knowingly commit, acquiesce or participate in the conduct that gave rise to the **Claim** or **Privacy Breach Event**; or (2) in the absence of a final judgment, adjudication or binding arbitration ruling adverse to such **Insured**.

Upon such final adverse judgment, adjudication or final arbitration ruling, the **Insured** shall reimburse **us** for all **Damages**, **Privacy Breach Expenses** and **Claim Expenses we** have incurred or paid.

8. Any actual electrical or mechanical failures, including power interruption, surge, brownout or blackout, or defect of telephone, telecommunications, or data transmission lines, services, equipment or infrastructure.

9. Any actual or alleged patent infringement or theft, copying, misappropriation, display or publication of any patent, process, confidential or proprietary information or trade secret.

10. The outsourcing of data processing and other business functions to a location outside the United States, Canada or European Union when the outsourced activity involves **Protected Information** in **your** care, custody or control. However, this exclusion does not apply as respects Cloud based storage.

11. Any actual or alleged gaining in fact of any profit or advantage to which **you** are not legally entitled.

12. Any actual or alleged:

   a. bodily injury, sickness, disease or death of any person; or

   b. physical injury to, or loss or destruction of, tangible property, including the loss of use thereof, or loss of use of tangible property which has

not been physically injured, lost, damaged or destroyed;

provided, however, this exclusion shall not apply to a **Claim** for mental injury, mental anguish, or emotional distress directly resulting from a **Privacy Wrongful Act** or a **Media Wrongful Act**.

13. Any actual or alleged breach of contract, agreement, understanding, warranty, or other guarantee or promise; provided, however,

    a. with respect to breach of contract only, this exclusion shall not apply to any liability that would have attached to you in the absence of such contract; and

    b. this exclusion shall not apply to fines or penalties the **Named Insured** is obligated under contract to pay to its acquiring bank or a payment card association due to the **Named Insured's** violation of Payment Card Industry Data Security Standards (PCI-DSS).

14. Any liability or obligation assumed by **you** under any contract, agreement, understanding, warranty or other guarantee or promise; provided, however, that this exclusion shall not apply to:

    a. liability that would have attached to you in the absence of any such contract, agreement, understanding, warranty or other guarantee or promise; or

    b. fines or penalties the **Named Insured** is obligated under contract to pay to its acquiring bank or a payment card association due to the **Named Insured's** violation of Payment Card Industry Data Security Standards (PCI-DSS).

15. Any fact, circumstance, subject, decision, transaction, event or situation:

    a. which was the subject of notice prior to the inception of this Endorsement to any other insurance carrier under any other policy;

    b. of which any principal, partner, or executive officer of the **Named Insured** was aware prior to the Effective Date of this Endorsement or any other Endorsement issued by **Us** that such fact, circumstance, subject, decision, transaction, event or situation could reasonably have been expected to give rise to a **Claim**, **Regulatory Proceeding**, **Privacy Breach Event** or **Network Disruption**.

16. Any litigation, proceeding or investigation prior to or pending on the Effective Date of this Endorsement, or any **Claim**, **Regulatory Proceeding**, **Privacy Breach Event**, **Related Event**, **Related Claim**, fact, circumstance, subject, decision, transaction, event, situation, cause, proceeding or investigation underlying or alleged therein.

17. Any actual or alleged:

    a. discrimination of any kind; or

    b. wrongful employment practice of any kind.

18. Any actual or alleged:

    a. antitrust, restraint of trade, unfair, false or deceptive trade practice, or violation of any federal, state, local or foreign legislation, regulation or law prohibiting any antitrust activity, price fixing, price discrimination, monopoly or monopolization, predatory pricing, unfair competition, collusion, conspiracy or unfair, false, misleading or deceptive trade or business practice, advertising or promotion; or

**CYBER COVERAGE FORM**

b. false, misleading, deceptive or fraudulent statement or representation advertising or promoting the products, services or business of the **Insured**.

19. Any actual or alleged violation of any federal, state, local or foreign securities-related legislation, regulation or law.

20. Any:

   a. Nuclear reaction, nuclear radiation, radioactive contamination, radioactive substance, electromagnetic field, electromagnetic radiation, or electromagnetism.

   b. War, invasion, acts of foreign enemies, hostilities (whether war is declared or not), rebellion, revolution, insurrection, war-like action, coup, usurped powers or military power.

   c. Fire, flood, earthquake, volcanic eruption, explosion, lightning, wind, hail, tidal wave, landslide, act of God or other physical event.

21. The violation of any United States economic or trade sanction.

22. Any actual or alleged:

   a. failure to take reasonable and prudent steps to use, design, maintain and upgrade your security; or

   b. inability to use, or lack of performance of, software: (a) due to expiration, cancellation, or withdrawal of such software; (b) that has not yet been released from its development stage; or (c) that has not passed all test runs or proven successful in applicable daily operations.

23. The presence, discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, oil or other petroleum substances or derivatives, waste materials or other irritants, contaminants, pollutants or any other substances, including asbestos, fungus, mold and lead, which are or may be injurious to public health, property or the environment ("hazardous substances"), including:

   a. the cost of cleanup or removal of hazardous substances;

   b. the cost of such actions as may be necessary to monitor, assess and evaluate, the presence, discharge, dispersal, escape, release, or threat of same, of hazardous substances;

   c. the cost of disposal of hazardous substances or the taking of such other action as may be necessary to temporarily or permanently prevent, minimize, or mitigate damage to the public health or welfare or to property or the environment, which may otherwise result; or

   d. any cost, based upon, arising from, in consequence of, directly or indirectly resulting from, or involving in any way any government direction or request that the **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize hazardous substances.

B. **We** shall not be liable to pay **Damages** or **Claim Expenses** from:

1. Any **Claim** against **you** that is brought by or on behalf of:

   a. any other **Insured**, other than a **Claim** by an employee of the **Named Insured** for a **Privacy Wrongful Act**;

   b. any entity which is owned or controlled by, is under common ownership or control with, any **Insured**;

**CYBER COVERAGE FORM**

c.  any person or entity which owns or controls any **Named Insured**;

d.  any entity of which any **Insured** is a director, officer, partner or principal shareholder; or

e.  any independent contractor of an **Insured**.

2.  Any **Claim** against **you** that is brought by or on behalf of any federal, state, local or foreign administrative, governmental, or regulatory agency, tribunal, body or similar or equivalent entity; however, this exclusion shall not apply if a **Claim** is brought by any such entity as a client and the **Claim** is for a **Wrongful Act** in connection with the client relationship between such entity and the **Named Insured**; or

3.  Any **Claim** based on, resulting from or arising out of any **Media Wrongful Act** committed or which took place in whole or in part before the inception date of the earliest policy issued to the **Named Insured** that offered on a continuous basis the same or substantially equivalent coverage as the relevant coverage provided under this Endorsement;

4.  Any **Claim** or **Regulatory Proceeding** based on, resulting from, arising out of or related to a **Privacy Breach Event**:

a.  that was not timely reported to **us** under Section V. CONDITION B.; or

b.  that was not first discovered by **you** during the **Endorsement Period** or, if this Endorsement was not renewed, within thirty (30) days after the end of the **Endorsement Period**; or

5.  Any **Claim** against **you** or brought by any insurer who may be liable under, any Workers' Compensation, Unemployment Compensation, Disability Benefits Law, the

Employee Retirement Income Security Act of 1974, as amended, or any similar federal, state, local or foreign legislation, regulation or law.

**SECTION IV - LIMITS OF INSURANCE AND DEDUCTIBLE**

A.  The Third Party Cyber Liability Coverage Limit of Insurance specified in A. of the Schedule and the rules detailed below fix the maximum amount **we** are obligated to pay for all **Damages** and **Claim Expenses** from each **Claim** or **Related Claims** and all **Claims** or **Related Claims** under this Endorsement, as detailed in Insuring Agreement A.1. This Limit of Insurance shall be part of, and not in addition to, the Cyber Coverage Aggregate Limit of Insurance specified in the Schedule.

B.  The **Regulatory Proceeding Claim Expense** Coverage Limit of Insurance specified in B. of the Schedule and the rules detailed below fix the maximum amount **we** are obligated to pay for all **Claim Expenses** and **Regulatory Fines** from each **Regulatory Proceeding** and all **Regulatory Proceedings** under this Endorsement, as detailed in Insuring Agreement A.2. The **Regulatory Proceeding Claim Expense** Coverage Limit of Insurance shall be part of, and not in addition to, the Cyber Coverage Aggregate Limit of Insurance specified in the Schedule.

C.  The First Party **Privacy Breach Expense** Coverage Limit of Insurance specified in C. of the Schedule and the rules detailed below fix the maximum amount **we** are obligated to pay for all **Privacy Breach Expenses** from each **Privacy Breach Event** or **Extortion Threat** or **Related Events** under this Endorsement, as detailed in Insuring Agreement A.3.

The maximum amount **we** are to pay for all **Data Replacement Expenses** from all **Privacy Breach Events** under this Policy is the First Party **Data Replacement Expenses** Coverage Aggregate Limit of Insurance specified in I.E.

**CYBER COVERAGE FORM**

of the Policy Declarations, which shall be part of, and not in addition to, the **Privacy Breach Expense** Limit of Insurance.

The **Privacy Breach Expense** Coverage Limit of Insurance shall be part of, and not in addition to, the Cyber Coverage Aggregate Limit of Insurance specified in the Schedule.

D. First Party Business Interruption Coverage Aggregate Limit of Insurance specified in D. of the Schedule and the rules detailed below fix the maximum amount **we** are to pay for all **Business Income Loss** and **Extra Expense** from all **Network Disruptions** under this Endorsement, as detailed in Insuring Agreement A.4. The First Party **Business Income Loss** and **Extra Expense** Aggregate Limit of Insurance shall be part of, and not in addition to, the Cyber Coverage Aggregate Limit of Insurance specified in the Schedule.

E. The Cyber Coverage Aggregate Limit of Insurance specified in F. of the Schedule shall fix the maximum amount **we** shall pay for all **Damages** and **Claim Expenses** from all **Claims**, all **Claim Expenses** from all **Regulatory Proceedings**, all **Privacy Breach Expenses** from all **Privacy Breach Events**, and all **Extortion Threats**, all **Business Income Loss** and **Extra Expense** from all **Network Disruptions** and all **Related Claims** and **Related Events** covered under this Endorsement.

F. Applicable rules to the **LIMITS OF INSURANCE**:

1. The applicable Limit of Insurance stated in the Schedule is the maximum **we** will pay regardless of the number of **Insureds**, individuals or organizations that make a **Claim**, the number of **Claims**, **Regulatory Proceedings** or **Privacy Breach Events**, **Extortion Threats** or **Network Disruptions**.

2. If any Limit of Insurance is exhausted, the

premium for this Endorsement shall be deemed fully earned.

G. **DEDUCTIBLE**

For any **Claim**, **Regulatory Proceeding**, **Privacy Breach Event**, or **Extortion Threat we** shall be liable for only the amount of the **Claim Expenses**, **Damages**, and **Privacy Breach Expenses** from such **Claim**, **Regulatory Proceeding**, **Privacy Breach Event** or **Extortion Threat** exceeding the Deductible amount specified in the Schedule. **We** have no obligation, either to **you** or to any person or entity, to pay all or any portion of any Deductible amount for or on **your** behalf. Solely for the purpose of applying the Deductible, a single Deductible amount applies to all **Regulatory Proceedings**, **Related Claims**, **Related Events** based upon, arising from, in consequence of, directly or indirectly resulting from, or involving in any way continuous, repeated, the same, related, or substantially similar thefts or unauthorized disclosures of **Protected Information**.

**SECTION V - CONDITIONS**

A. **RELATED CLAIMS, RELATED EVENTS AND REGULATORY PROCEEDINGS**

1. All **Related Claims**, whenever discovered, shall be deemed to be a single **Claim**, regardless of

a. the number of **Related Claims**;

b. the number or identity of claimants;

c. the number or identity of **Insureds** involved;

d. whether the **Related Claims** are asserted in a class action or otherwise; or

e. the number and timing of the **Related Claims**, even if the **Related Claims** comprising such single **Claim** were received or discovered in more than one **Endorsement Period**.

**CYBER COVERAGE FORM**                    Policy Number:

All **Related Claims** shall be treated as a single **Claim** discovered when the earliest of such **Related Claims** was first discovered, or when the earliest of such **Related Claims** is treated as having been first discovered under Condition B. below, whichever is the earliest date.

2.  All **Related Events**, whenever occurring, shall be deemed to be a single **Privacy Breach Event**, regardless of:

    a.  the number of **Related Events**;

    b.  the number or identity of **Insureds** involved; or

    c.  the number and timing of the **Related Events**, even if the **Related Events** comprising such single **Privacy Breach Event** occurred in more than one **Endorsement Period**.

    All **Related Events** shall be treated as a single **Privacy Breach Event** or **Extortion Threat** first discovered when the earliest of such **Related Events** was first discovered.

3.  All **Regulatory Proceedings** and **Related Claims** based upon, arising from, in consequence of, directly or indirectly resulting from, or involving in any way continuous, repeated, the same, related, or substantially similar thefts or unauthorized disclosures of **Protected Information** shall be deemed first discovered when the earliest of such **Related Claims** or **Regulatory Proceedings** was first discovered, or when the earliest of such **Related Claims** or **Regulatory Proceedings** is treated as having been first discovered under Condition B. below, whichever is the earliest date.

B.  **NOTICE OF PRIVACY BREACH EVENTS, NETWORK DISRUPTIONS, EXTORTION THREATS, REGULATORY PROCEEDINGS AND CLAIMS**

1.  **You** shall report to **us** a **Privacy Breach Event**, **Extortion Threat** or **Network Disruption** for which coverage is being sought under this Endorsement immediately, but in no event later than thirty (30) days after **you** first discovered such **Privacy Breach Event**, **Extortion Threat** or **Network Disruption**. Such reporting must include full particulars. Any subsequent **Claim** for a **Privacy Wrongful Act** or **Regulatory Proceeding** directly related to such **Privacy Breach Event** shall be treated as a **Claim** or **Regulatory Proceeding** first discovered at the time **you** first discovered such **Privacy Breach Event**.

2.  The **Named Insured** must give **us** written notice of any **Claim** or **Regulatory Proceeding** as soon as practicable, but in no event later than thirty (30) days after **you** first receive such **Claim** or **Regulatory Proceeding**. If the **Claim** is for a **Media Wrongful Act** or **Network Security Wrongful Act**, the date **you** first received such **Claim** shall be deemed the date **you** first discovered such **Claim**.

3.  If, during the **Endorsement Period**, **you** become aware of any **Wrongful Act** or circumstance which could reasonably be expected to give rise to a **Claim**, **Regulatory Proceeding** or **Privacy Breach Event**, the **Named Insured** must provide written notice thereof to **us** as soon as practicable, but in no event later than the end of the **Endorsement Period**. The notice shall contain full particulars, including but not limited to:

    a.  the names of the potential claimant and the **Insureds** involved and a time, date, location and description of the specific **Wrongful Act** which forms the basis of the potential **Claim** or **Regulatory Proceeding**;

**CYBER COVERAGE FORM**

    b. the nature of the potential **Damages** arising from such specific **Wrongful Act**;

    c. a description of the circumstance or **Wrongful Act** and how **you** first became aware of the **Wrongful Act** or potential **Privacy Breach Event**; and

    d. the reason **you** reasonably believe such **Wrongful Act** or circumstance is likely to result in a **Claim**, **Regulatory Proceeding** or **Privacy Breach Event**.

Any **Claim** for a **Media Wrongful Act** or **Network Security Wrongful Act** arising out of such reported **Wrongful Act** shall be treated as a **Claim** or **Regulatory Proceeding** first discovered when such written notice was delivered to **us**.

Any **Claim** for a **Privacy Wrongful Act** or **Regulatory Proceeding** arising out of such reported **Wrongful Act** shall be treated as a **Claim** or **Regulatory Proceeding** first discovered at the earlier of: (1) the date when such written notice was delivered to **us**; or (2) the date **you** first discovered a **Privacy Breach Event** as to which such **Claim** or **Regulatory Proceeding** is directly related, provided **you** reported such **Privacy Breach Event** to **us** in accordance with Condition B.1. above.

4. Insured's Duties in the Event of a **Claim**, **Regulatory Proceeding**, **Privacy Breach Event**, **Extortion Threat** or **Network Disruption**.

    a. If there is a **Claim**, **Regulatory Proceeding**, **Privacy Breach Event**, **Extortion Threat** or **Network Disruption**, **you** must also do the following:

        i. Fully assist and cooperate with us in the conduct, defense, investigation, negotiation and settlement of any **Claim**, **Regulatory Proceeding**, **Privacy Breach Event**, **Extortion Threat** or **Network Disruption**. At **our** request, **you** must: submit to an examination under oath; provide us with written statements; attend meetings and negotiations; produce and make available all information, books, records, documents and other materials which we deem relevant to the **Claim**, **Regulatory Proceeding**, **Privacy Breach Event**, **Extortion Threat** or **Network Disruption** or coverage therefore; attend hearings, depositions, proceedings, trials and appeals; assist **us** in effecting settlements, securing and giving evidence and obtaining the attendance of witnesses, and pursuing or enforcing any right of contribution or indemnity against a person or entity who may be liable to **you**.

        ii. **You** must do whatever is necessary to secure and affect any rights of indemnity, contribution or apportionment that **you** may have.

        iii. **You** shall accept our assignment of counsel and shall refrain from discussing any **Claim**, **Regulatory Proceeding**, **Privacy Breach Event**, **Extortion Threat** or **Network Disruption** with anyone other than counsel retained to represent the **Insured** or our representatives.

        iv. With respect to a **Privacy Breach Event** or **Extortion Threat**, **you** must take all reasonable steps to protect **Computer Systems** and **Protected Information** from further loss or damage, and keep a record of the expenses necessary to protect such **Computer Systems** and **Protected Information**.

**CYBER COVERAGE FORM**

    v. With respect to a **Network Disruption, you** must take all reasonable steps and measures to limit or mitigate the **Business Income Loss** and the incurrence of **Extra Expenses**.

  b. Within six (6) months after the discovery of any **Network Disruption**, the **Named Insured** must furnish **us** with a written proof of the **Named Insured's** claimed loss, duly sworn to, with full particulars.

  c. No **Insured** will, except at its own cost, voluntarily make a payment, admit liability, retain attorneys, consultants, or vendors, assume any other obligation, or accept or reject arbitration without our prior written consent. Any payments, settlements or admissions **you** make without **our** prior written consent will be made at **your** own expense.

**C. VALUATION OF BUSINESS INCOME LOSS**

**Business Income Loss** will be calculated on an hourly basis based on the actual **Business Income Loss** the **Named Insured** sustains during the time period in which the **Named Insured's Computer System** is affected by the **Network Disruption**. In determining the amount of net profit or loss and expenses covered for the purpose of ascertaining the amount of **Business Income Loss, we** will give due consideration to the net profit or loss of the **Named Insured** before the **Network Disruption** occurred and the probable net profit or loss of the **Named Insured** if no **Network Disruption** had occurred. However, such net profit or loss calculations shall not include, and no coverage shall be provided for, net income that would likely have been earned as a result of an increase in the volume of the **Named Insured's** business due to favorable business conditions caused by the impact of any internet, computer or network disruption suffered by other businesses.

**D. BANKRUPTCY**

Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate will not relieve **us** of any of **our** obligations under this Endorsement.

**E. ACTION AGAINST US**

No action shall be brought against **us** by any **Insured**, unless, as a condition precedent thereto:

1. all **Insureds** have fully complied with all the terms and conditions of this Endorsement; and

2. with respect to a **Claim**, the amount of **Damages** has been fixed or rendered certain:

  a. by final judgment against the **Insured** after trial of the issues; and

  b. the time to appeal such judgment has expired without an appeal being taken; and

  c. if appeal is taken, after the appeal has been determined; and

  d. the **Claim** is settled in accordance with the terms and conditions of this Endorsement.

No individual or entity shall have any right under this Endorsement to join **us** as a party to any **Claim** to determine the liability of any **Insured**; nor shall **we** be impleaded by **you** or **your** legal representative in any such **Claim**.

In no event shall any action brought by anyone be maintained against **us** unless such action is brought within twenty-four (24) months from the time the right to bring action first became available. With respect to a **Network Disruption**, no legal proceedings for the recovery of any **Business Income Loss** or **Extra Expense** may be brought prior to the expiration of sixty (60) days after the **Named Insured's** original proof of loss is submitted to **us**.

**CYBER COVERAGE FORM**

**F. OTHER INSURANCE**

This insurance shall be excess of and not contribute with all other insurance, whether collectible or not, that affords coverage for a **Wrongful Act**, a **Privacy Breach Event** or a **Network Disruption**.

This condition does not apply to other insurance that is specifically and intentionally written to apply in excess of the limits provided by this Endorsement.

**G. ASSIGNMENT OF THE INSURED'S INTEREST**

The interest of the **Insured** under this Endorsement is not assignable to any other person or organization, except with **our** prior written consent.

**H. TRANSFER OF RIGHTS OF RECOVERY / SUBROGATION**

If there is a payment made by **us**, **we** shall be subrogated to all of **your** rights of recovery against any person or organization. **You** will cooperate with **us** and do whatever is necessary to secure and recover upon these rights, including but not limited to executing any documents necessary to enable **us** to effectively bring suit in **your** name. **You** shall do nothing that may prejudice **our** position or potential or actual rights of recovery. **Your** rights and obligations hereunder shall survive the expiration, cancellation, or termination of this Endorsement.

With respect to a **Claim**, any amount recovered upon the exercise of such rights of recovery will be applied on the following terms: first, to the repayment of expenses incurred by exercise of such subrogation rights; second, to **Damages** or **Claim Expenses** paid by the **Named Insured** in excess of the Limits of Insurance; third, to **Damages** or **Claim Expenses** paid by **us**; and finally, to **Damages** or **Claim Expenses** paid by the **Named Insured** toward the Deductible.

With respect to any **Privacy Breach Event** or **Network Disruption**, any amount recovered upon the exercise of such rights of recovery will be applied on the following terms: first, to the repayment of expenses incurred by exercise of such subrogation rights; second, to amounts paid by the **Named Insured** in excess of the Limits of Insurance; third, to amounts paid by **us**; and finally, to amounts paid by the **Named Insured** toward the Deductible.

Notwithstanding the foregoing, **we** agree to waive any right of subrogation hereunder against a client of the **Named Insured**, with respect to any payment made in connection with a **Claim** if, and to the extent that, prior to the occurrence of any **Wrongful Act** or **Privacy Breach Event** giving rise to such **Claim**, the **Named Insured** had agreed to waive its rights of subrogation against such client pursuant to a prior written contract or agreement.

**I. CANCELLATION**

This Endorsement may be canceled or nonrenewed as provided in the terms and conditions that apply to the policy or Coverage Part to which it is attached. The **Endorsement Period** will end at the same time and date that any cancellation or nonrenewal of the policy or Coverage Part to which it is attached takes effect.

**J. CHANGES MADE TO THIS ENDORSEMENT**

The terms and conditions of this Endorsement cannot be waived or changed except by specific written endorsement issued by us and made part of the Endorsement.

**K. AUDIT**

**We** may examine and audit **your** books and records at any time during the **Endorsement Period** and within three (3) years after the expiration or termination date of this Endorsement as far as they relate to this Endorsement.

**CYBER COVERAGE FORM**

**L.  FALSE OR FRAUDULENT CLAIMS**

If an **Insured** reports any matter knowing it to be false or fraudulent, **we** will not be liable to make any payments related to that matter.

**M.  TERMS AND CONDITIONS OF ENDORSE-MENT CONFORMED TO STATUTE**

Where necessary, the terms and conditions of this Endorsement will be amended to conform to applicable law.

**N.  PREMIUM**

The premium amount for this Endorsement is stated in the Schedule and is for coverage for the **Endorsement Period**. If during the **Endorsement Period** there is a change in coverage afforded, we have the right to adjust the premium as of the date of the change. Any premium adjustment shall be made in accordance with our prevailing rules and rates.

Premium shown as advance premium is a minimum and deposit premium. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable by notice to the first **Named Insured**.

If the premium for this Endorsement is a flat premium, it is not subject to adjustment.

**O.  TERRITORY**

This Endorsement applies to **Wrongful Acts**, **Privacy Breach Events** and **Network Disruptions** taking place anywhere in the world except Countries or States against which the United States has implemented trade or diplomatic sanctions. However, any **Claim** or **Regulatory Proceeding** must be brought in the United States.

**P.  CHANGE IN RISK**

1.  If, during the **Endorsement Period**, the **Named Insured** acquires or creates another entity (other than a joint venture or partnership, which is addressed below)

whose annual revenues are more than ten percent (10%) of the **Named Insured's** total annual revenues as set forth in the most recent Application for insurance, or if the **Named Insured** merges or consolidates with another entity such that the **Named Insured** is the surviving entity (any such acquired, created, merged or consolidated entity, including a new subsidiary, will be identified as the "Acquired Company"), then for a period of sixty (60) days after the effective date of the transaction, such Acquired Company shall be included as an **Named Insured** but only with respect to **Network Security Wrongful Acts** and **Privacy Wrongful Acts** first committed or allegedly committed after the effective date of such transaction, or **Privacy Breach Events**, **Extortion Threats** or **Network Disruptions** that first occur after the effective date of such transaction. Upon the expiration of the sixty (60) day period, there will be no coverage available under this Endorsement for any **Claim**, **Regulatory Proceeding**, **Privacy Breach Event**, **Extortion Threat** or **Network Disruption** based on, resulting from, arising out of, in consequence of, or in any way in connection with or involving, directly or indirectly, the Acquired Company unless within such sixty (60) day period:

a.  the **Named Insured** gives **us** such information regarding such transaction as **we** request;

b.  **We** have specifically agreed by written endorsement to this Endorsement to provide coverage with respect to such Acquired Company and the **Named Insured** accepts any terms, conditions, exclusions or limitations, including payment of additional premium, as **we**, in **our** sole discretion, impose in connection with the transaction; and

c. the **Named Insured** has paid the additional premium, if any, **we** charge and has agreed to any modifications to this Endorsement.

2. If, during the **Endorsement Period**, the **Insured** becomes a member of a new joint venture or partner in a new partnership, there will be no coverage available under this Endorsement for any **Claim**, **Damages**, **Claim Expenses**, **Privacy Breach Event**, **Extortion Threat**, **Network Disruption** or **Wrongful Act** based on, resulting from, arising out of, in consequence of, or in any way in connection with or involving, directly or indirectly, such joint venture or partnership, unless:

a. the **Named Insured** gives **us** such information regarding the new joint venture or partnership as **we** request; and

b. **We** specifically agree by written endorsement to this Endorsement to provide coverage with respect to such new joint venture or partnership, and the **Named Insured** accepts any terms, conditions, exclusions or limitations, including payment of additional premium, as **we**, in **our** sole discretion, impose in connection with such transaction.

3. If, during the **Endorsement Period**, any of the following events occur:

a. the **Named Insured** first identified in the policy Declarations is dissolved, sold, acquired by, merged into, or consolidated with another entity such that such **Named Insured** is not the surviving entity; or

b. a third party receiver, conservator, trustee, liquidator, rehabilitator or any similar official is appointed for or with respect to the **Named Insured** first identified in the policy Declarations;

coverage under this Endorsement shall continue in full force and effect until the Expiration Date or any earlier cancellation or termination date, but this Endorsement shall only apply to **Wrongful Acts** first committed or allegedly committed before the effective date of such event or a **Privacy Breach Event**, **Extortion Threat** or **Network Disruption** that first occurs before the effective date of such event. There will be no coverage available under this Endorsement based on, resulting from, arising out of, in consequence of, or in any way in connection with or involving, directly or indirectly any **Wrongful Act** committed or allegedly committed on or after the effective date of such event or any **Privacy Breach Event**, **Extortion Threat** or **Network Disruption** that occurs after the effective date of such event.

**Q. ENTIRE AGREEMENT**

The **Insureds** agree that this Endorsement, including the application, Schedule and any endorsements, constitutes the entire agreement between them and the Company or any of its agents relating to this insurance.

**R. ECONOMIC AND TRADE SANCTIONS OR VIOLATIONS OF LAW**

Any **Claim**, **Regulatory Proceeding**, **Privacy Breach Event**, **Extortion Threat**, **Network Disruption** or matter uninsurable under any act, statute, rule, regulation, ordinance, common law, or other law of the United States of America concerning trade or economic sanctions or export control laws is not covered under this Endorsement.

| Endorsement | CC 6 |
| --- | --- |

**Georgia Changes**

**THIS ENDORSEMENT CHANGES CYBER COVERAGE TERMS. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

CYBER COVERAGE FORM

A. **SECTION II - DEFINITIONS**, Definition E. is replaced by the following:

**Damages** means any monetary amount which **you** become legally obligated to pay as the result of a **Claim**, including judgments, awards, damages, settlements to which **we** have consented in writing, prejudgment and post-judgment interest awarded which directly arise from and correspond to the portion of any judgment attributable to a covered **Claim**.

**Damages** do not include:

1. any amount for which the **Insured** is not liable or legally obligated to pay;

2. liquidated damages, taxes, fines or penalties, or any multiples thereof;

3. matters uninsurable under the law applicable to this Endorsement;

4. past, present and future earned and unearned royalties, profits, fees, costs, expenses, commissions, or the return of royalties, profits, fees, costs, expenses, commissions, and profits unjustly held or obtained;

5. costs and expenses required to comply with any injunctive or other non-monetary equitable, declaratory, regulatory or administrative relief, including specific performance, or any agreement to provide such relief; or

6. discounts, prizes, awards, coupons or other incentives offered to the **Named Insured's** clients or customers.

B. **SECTION III - EXCLUSIONS**, Exclusion 17.

Paragraph a. is deleted.

C. **SECTION III - EXCLUSIONS**, Exclusion 20. Paragraph b. is replaced by the following:

War, invasion, rebellion, revolution, insurrection, coup, usurped powers or military powers.

D. **SECTION IV - LIMITS OF INSURANCE AND DEDUCTIBLE**, Paragraph F.2. is deleted.

E. **SECTION V - CONDITIONS**, Condition B. NOTICE OF PRIVACY BREACH EVENTS, NETWORK DISRUPTIONS, EXTORTION THREATS, REGULATORY PROCEEDINGS AND CLAIMS, Paragraph 1. is replaced by the following:

1. **You** shall report to **us** a **Privacy Breach Event**, **Extortion Threat** or **Network Disruption** for which coverage is being sought under this Endorsement promptly, but in no event later than thirty (30) days after **you** first discovered such **Privacy Breach Event**, **Extortion Threat** or **Network Disruption**. Such reporting must include full particulars. Any subsequent **Claim** for a **Privacy Wrongful Act** or **Regulatory Proceeding** directly related to such **Privacy Breach Event** shall be treated as a **Claim** or **Regulatory Proceeding** first discovered at the time **you** first discovered such **Privacy Breach Event**.

F. **SECTION V - CONDITIONS**, Condition F. OTHER INSURANCE is replaced by the following:

continued...

Grange Mutual Casualty Company
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | CC 6 |
| --- | --- |

**Policy Number:**

**Georgia Changes**

If this Policy and one or more policies issued
by another insurer both provide insurance for
the same **Wrongful Act, Privacy Breach Event**,
or **Network Disruption** then coverage in
excess of the applicable Deductible amount
under this Policy will apply pro-rata with such
other insurance and **our** pro-rata share will be
determined by the applicable Limit of
Insurance of **our** Policy and the Limits of
Insurance of all such other insurance.

This condition does not apply to other
insurance that is specifically written to apply
in excess of the limits provided by this
Endorsement.

| Endorsement | CG 09 GA |
|---|---|

**Asbestos, Silica or Mixed Dust Exclusion**

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement modifies insurance provided under the following:

> BUSINESSOWNERS COVERAGE FORM
> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
> RAILROAD PROTECTIVE LIABILITY COVERAGE FORM

This insurance does not apply to:

1. "Bodily injury", "property damage", "personal and advertising injury" arising out of, caused by, contributed by, or resulting from, exposure to or the use of:

   a. Asbestos including, but not limited to, the cost of abatement, mitigation, removal and disposal of asbestos from any good, product or structure;

   b. Silica including, but not limited to, exposure to silica or the use of silica;

      i. Silica means a group of naturally occurring crystalline forms of silicon dioxide, including, but not limited to, quartz and sand.

   c. Mixed dust

      i. Mixed dust means a mixture of dusts composed of silica or asbestos with one or more other dusts.

2. Any damage or any loss, cost or expense arising out of any:

   a. Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of mixed dust, silica or asbestos, or any other material or substance containing asbestos, silica, or mixed dust, or;

   b. Claim or suit by or on behalf of any governmental authority or any other alleged responsible party for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of mixed dust, asbestos or silica, or any other material or substance containing silica, asbestos, or mixed dust.

3. Any supervision, instruction, recommendations, warnings or advice given or which should have been given in connection with any of the substances named in 1.a., b., or c.; or

4. Any obligation to share damages with or repay someone else in connection with any of the substances named in 1.a., b., or c.

*ADVANCED INSURANCE STRATEGIES*
*200 W CRAWFORD ST*
*PO BOX 709*
*DALTON, GA        30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named   Insured   and   Address**

---

**Policy   Type:** *Commercial Package*

**Policy   Number:** *CPP 2083060-00*
**Issue   Date:** *07/08/14*
**ACCT.  NO:** *0000191650*

**From: 07/01/14**
**To: 07/01/15**
12:01 a.m. standard time.

**CYCLE-TEX INC**
**702 S THORNTON AVE**
**DALTON GA   30720**

---

### POLICY PREMIUM RECAP STATEMENT

| Line of Business/Coverages | Policy Premium Totals | Commission |
|---|---:|---|
| Commercial Automobile Coverage Part | $24,975.00 | 15% |
| Commercial Property Coverage Part | $22,597.00 | 15% |
| Equipment Breakdown Coverage | $2,633.00 | 15% |
| Commercial Crime Coverage Part | $820.00 | 15% |
| Employee Benefits Liability Coverage Part | $230.00 | 15% |
| Commercial General Liability Coverage Part | $19,729.00 | 15% |
| Commercial Inland Marine Coverage Part | $575.00 | 15% |
| Certified Acts of Terrorism - Property | $288.00 | 15% |
| Certified Acts of Terrorism - General Liability | $661.00 | 15% |
| Certified Acts of Terrorism - Inland Marine | $3.00 | 15% |

Your Total Policy Premium Is   **$72,511.00**

**THIS IS NOT A BILL.** Any outstanding   balance due will be billed at a later date.

*ADVANCED INSURANCE STRATEGIES*
*200 W CRAWFORD ST*
*PO BOX 709*
*DALTON, GA        30722*

*(706) 226-0186*
*Agent No.    10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

**Policy Type:** *Commercial Package*

**Reason Issued:** *New Business*
**Policy Number:** *CPP 2083060-00*
**Issue Date:** *07/08/14*
**ACCT. NO:** *0000191650*

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**ABS**

**Named   Insured   and   Address**

CYCLE-TEX INC
702 S THORNTON AVE
DALTON GA   30720

---

**From: 07/01/14     To: 07/01/15**     12:01 a.m. standard time at the address of the named insured as shown above. These declarations together with the applications, the commercial lines policy jacket, common policy conditions, coverage part declarations, coverage part coverage form(s) and forms and endorsements, if any, issued to form a part thereof, complete the above numbered policy. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

---

### Commercial   Policy   Declarations

| Business   Description | *PLASTIC MFG* |
|---|---|

This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

| Coverage        Part(s) | Premium |
|---|---:|
| COMMERCIAL  AUTOMOBILE  COVERAGE PART | $24,975.00 |
| COMMERCIAL  PROPERTY  COVERAGE PART | $25,230.00 |
| COMMERCIAL  CRIME COVERAGE PART | $820.00 |
| EMPLOYEE  BENEFITS  LIABILITY  COVERAGE PART | $230.00 |
| COMMERCIAL  GENERAL  LIABILITY  COVERAGE PART | $19,729.00 |
| COMMERCIAL  INLAND  MARINE  COVERAGE PART | $575.00 |
| Certified  Acts of Terrorism | $952.00 |

Your Estimated  Total Policy Premium Is    **$72,511.00**

Premium  does not include  service charges.
**THIS IS NOT A BILL.** Any outstanding  balance due will be billed at a later date.

---

*Authorized  Signature*          *Date*          **AGENTCOPY**          **page   1**
CPP241 (12-2009)                                                                    CPPPOL1A

## SCHEDULE OF NAMES AND ADDRESSES

**Policy Number:**   CPP 2083060-00

**Named Insured:**   CYCLE-TEX INC

```
              Locations Of All Premises You Own, Rent Or Occupy.
              If "Same" Is Indicated, The Location Is The Same
              As The Mailing Address Shown In The Declarations.


     Location 0001                    Location 0002
     111 W Wescott Way                906 E Hermitage Rd NE
     Dalton GA                        Rome GA
     30720                            30161 9641


     Location 0003                    Location 0004
     702 S Thorton Ave                501 Maiden Ln
     Dalton GA                        Dalton GA
     30161                            30721 2810


     Location 0005
     1711 Kimberly Park Dr
     Dalton GA
     30720 7056
```

*ADVANCED INSURANCE STRATEGIES*
*200 W CRAWFORD ST*
*PO BOX 709*
*DALTON, GA        30722*

*(706) 226-0186*
*Agent No. 10-01314-00*
celrod@advancedinsurancestrategies.com
www.advancedinsurancestrategies.com

Grange   Mutual   Casualty   Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

**Named    Insured    and    Address**

**Policy   Type:**   *Commercial Package*

**Reason   Issued:**  *New Business*
**Policy   Number:**   *CPP 2083060-00*
**Issue Date:**   *07/08/14*
**ACCT.   NO:** *0000191650*

**CYCLE-TEX INC**
**702 S THORNTON AVE**
**DALTON GA   30720**

---

**From: 07/01/14     To: 07/01/15**     12:01 a.m. standard time at the address of the named insured as shown above.
These declarations together with the application, common policy conditions, forms and endorsements, if any,
complete the above numbered policy. In return for the payment of the premium, and subject to all the terms of this
policy, we agree with you to provide the insurance as stated in this policy.

| Commercial    Auto   Coverage    Part/Business   Auto   Coverage    Form   Declarations |
|---|

| Named    Insured's   Legal   Entity   is:   *Corporation* |
|---|

| Item   2 - Schedule    of Coverages    and   Covered    Autos |
|---|

This policy provides   only those   coverages   where   a charge   is shown   in the   premium   column   below.   Each of these
coverages   will apply   only to those   "autos"   shown   as covered   "autos".   "Autos"   are shown   as covered   "autos"   for a
particular   coverage   by the entry   of one or more   of the symbols   from the COVERED AUTOS Section of the Business
Auto   Coverage   Form next to the name   of the coverage.

| Coverages | Covered Auto  Symbols | Limit *The most we will pay for any one accident or loss.* | Premium |
|---|---|---|---|
| **Liability   Coverage** | 01 | | |
|   Combined  Single Limits | | $1,000,000 Per Accident | $ 18,213.00 |
| | | | |
| **Maximum    PIP Benefits** | | | |
| | | | |
| **Maximum     Added    PIP Benefits** | | | |
| **Medical    Payments** | 02 | $5,000 | 279.00 |
| **Uninsured   Motorists** | 02 | | |
|   Combined  Single Limits | | $1,000,000 Per Accident | 2,843.00 |
| | | | |
| **Underinsured    Motorists** | | | |
| | | | |
| **Physical   Damage    Insurance** | | Actual cash value  or cost of repair, whichever  is less, minus  deductible  shown. | |
|   Comprehensive | 07 | See Item 3 for deductible  for each covered  auto. No deductible  applies  to loss caused by fire or lightning.  See Item 4 for hired or borrowed  autos. | 669.00 |
| | | | |
|   Collision | 07 | See Item 3 for deductible  for each covered  auto. See Item 4 for hired or borrowed  autos. | 2,676.00 |
| **Towing   and Labor** | | | |
| | | | |
| **Municipal    Taxes** | | | |
| **Other   State   Specific    Charge** | | *Surcharge required by KRS 136.392* | |
| **Premium   for Endorsements** | | | 295.00 |

Premium   does not include   service charges.          *Your Estimated  Total  Auto Premium  Is          **$ 24,975.00**

**THIS IS NOT A BILL.** Any outstanding   balance due will be billed at a later date.
*This policy may be subject to final audit.

*Authorized  Signature*                    *Date*          **AGENTCOPY**                              **Page   3**

CA 241 (12-2009)                                                                                        CPPCA11

| Item 2 continued    - Forms and Endorsements |

| CA0109 | 1004 | CA38 | 1205 | IL0017 | 1198 | IL43 | 0511 | IL0021 | 0702 |
| IL0262 | 0907 | CA0051 | 1204 | CA0001 | 1001 | CA0038 | 1202 | CA50 | 0507 |
| CA75 | 0511 | CA9903 | 0797 | CA83 | 0511 | CA3137 | 0109 | CA60 | 0713 |
| CA9910 | 0902 | | | | | | | | |

**Item 3 - Schedule of Covered Autos You Own**

| Unit | State | Ter. | Year | Description | Vehicle Identification Number | Age | Cost | Class | Stated Amount | Change Date |
|------|-------|------|------|-------------|-------------------------------|-----|------|-------|---------------|-------------|
| 010 | GA | 015 | 80 | DANE TRLR | 731TLB20498 | >34 | | 67499 | | 07/01/14 |
| 011 | GA | 015 | 86 | INTL CONVENTIONA | 1HTLCHWM9GHA39975 | 029 | 25400 | 33499 | | 07/01/14 |
| 012 | GA | 015 | 79 | FRUE TRLR | CHZ310527 | >34 | | 67499 | | 07/01/14 |
| 013 | GA | 015 | 82 | TRLR MILL | T4120 | 033 | | 67499 | | 07/01/14 |
| 014 | GA | 015 | 74 | TRLR BUTLER | 5231345 | >34 | | 67499 | | 07/01/14 |
| 015 | GA | 015 | 66 | TRLR TRAILMOBILE | A21A1SAHB17031 | >34 | | 67499 | | 07/01/14 |
| 016 | GA | 015 | 77 | TRLR TRAILMOBILE | S92144 | >34 | | 67499 | | 07/01/14 |
| 017 | GA | 015 | 73 | FRUE TRLR | 0MR634801 | >34 | | 67499 | | 07/01/14 |
| 018 | GA | 015 | 77 | TRLR TRAILMOBILE | 011AS33520 | >34 | | 67499 | | 07/01/14 |
| 019 | GA | 015 | 77 | TRLR TRAILMOBILE | 011AS33430 | >34 | | 67499 | | 07/01/14 |
| 020 | GA | 015 | 77 | TRLR TRAILMOBILE | 011AS33438 | >34 | | 67499 | | 07/01/14 |
| 021 | GA | 015 | 77 | TRLR TRAILMOBILE | 011AS33417 | >34 | | 67499 | | 07/01/14 |

**Item 3 - Schedule of Covered Autos You Own - Premiums**

| Unit | Liab. | PD Ded. | Med Pay | UM | UMPD | UIM | Comp. Ded. | Comp. Prem. | Coll. Ded. | Coll. Prem. | PIP | APIP | Spec. Perils | Spec. Perils Ded. | Tow-ing | Other | Total Prem. |
|------|-------|---------|---------|-----|------|-----|------------|-------------|------------|-------------|-----|------|--------------|-------------------|---------|-------|-------------|
| 010 | 41 | | 1 | | | | | | | | | | | | | | 42 |
| 011 | 673 | | 10 | 157 | | | 1000 | 22 | 1000 | 64 | | | | | | | 926 |
| 012 | 41 | | 1 | | | | | | | | | | | | | | 42 |
| 013 | 41 | | 1 | | | | | | | | | | | | | | 42 |
| 014 | 41 | | 1 | | | | | | | | | | | | | | 42 |
| 015 | 41 | | 1 | | | | | | | | | | | | | | 42 |
| 016 | 41 | | 1 | | | | | | | | | | | | | | 42 |
| 017 | 41 | | 1 | | | | | | | | | | | | | | 42 |
| 018 | 41 | | 1 | | | | | | | | | | | | | | 42 |
| 019 | 41 | | 1 | | | | | | | | | | | | | | 42 |
| 020 | 41 | | 1 | | | | | | | | | | | | | | 42 |
| 021 | 41 | | 1 | | | | | | | | | | | | | | 42 |

| Business Auto Optimum | $215 |

**Item 3 - Schedule of Covered Autos You Own**

| Unit | State | Ter. | Year | Description | Vehicle Identification Number | Age | Cost | Class | Stated Amount | Change Date |
|------|-------|------|------|-------------|-------------------------------|-----|------|-------|---------------|-------------|
| 022 | GA | 015 | 77 | TRLR TRAILMOBILE | 011AS33326 | >34 | | 67499 | | 07/01/14 |
| 023 | GA | 015 | 77 | TRLR TRAILMOBILE | 011AS33484 | >34 | | 67499 | | 07/01/14 |
| 024 | GA | 015 | 76 | DANE TRLR | 730TL77633 | >34 | | 67499 | | 07/01/14 |
| 025 | GA | 015 | 76 | DANE TRLR | 730TL76505 | >34 | | 67499 | | 07/01/14 |
| 026 | GA | 015 | 76 | DANE TRLR | 730TL76482 | >34 | | 67499 | | 07/01/14 |
| 027 | GA | 015 | 77 | DANE TRLR | 730TL79943 | >34 | | 67499 | | 07/01/14 |
| 028 | GA | 015 | 79 | DANE TRLR | 96399 | >34 | | 67499 | | 07/01/14 |
| 029 | GA | 015 | 79 | DANE TRLR | 96400 | >34 | | 67499 | | 07/01/14 |
| 030 | GA | 015 | 79 | DANE TRLR | 96401 | >34 | | 67499 | | 07/01/14 |
| 031 | GA | 015 | 78 | DANE TRLR | 90508 | >34 | | 67499 | | 07/01/14 |
| 032 | GA | 015 | 78 | DANE TRLR | 90513 | >34 | | 67499 | | 07/01/14 |
| 033 | GA | 015 | 71 | TRLR BUTLER | 738055 | >34 | | 67499 | | 07/01/14 |

**Item 3 - Schedule of Covered Autos You Own - Premiums**

| Unit | Liab. | PD Ded. | Med Pay | UM | UMPD | UIM | Comp. Ded. | Comp. Prem. | Coll. Ded. | Coll. Prem. | PIP | APIP | Spec. Perils | Tow-ing | Other | Total Prem. |
|------|-------|---------|---------|----|----|-----|------------|-------------|------------|-------------|-----|------|--------------|---------|-------|-------------|
| 022 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 023 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 024 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 025 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 026 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 027 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 028 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 029 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 030 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 031 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 032 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 033 | 41 | | 1 | | | | | | | | | | | | | 42 |

**Named Insured:** *CYCLE-TEX INC*
**Policy Number:** *CPP 2083060*          ***AGENTCOPY***

CA 241A (10-97)

| Item | 3 - Schedule | of Covered | Autos | You | Own |
| --- | --- | --- | --- | --- | --- |

| Unit | State | Ter. | Year | Description | Vehicle Identification Number | Age | Cost | Class | Stated Amount | Change Date |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 034 | GA | 015 | 81 | FRUE TRLR | 1H2V04528BC012285 | 034 | | 67499 | | 07/01/14 |
| 035 | GA | 015 | 77 | TRLR TRAILMOBILE | S92138 | >34 | | 67499 | | 07/01/14 |
| 036 | GA | 015 | 78 | DANE TRLR | 90390 | >34 | | 67499 | | 07/01/14 |
| 037 | GA | 015 | 69 | FRUE TRLR | MAK184747 | >34 | | 67499 | | 07/01/14 |
| 038 | GA | 015 | 73 | TRLR STRICK | NSW171349 | >34 | | 67499 | | 07/01/14 |
| 039 | GA | 015 | 79 | TRLR LUFKIN | 53182 | >34 | | 67499 | | 07/01/14 |
| 040 | GA | 015 | 66 | TRLR STRICK | 73706 | >34 | | 67499 | | 07/01/14 |
| 041 | GA | 015 | 79 | TRLR BUDD | 177424M | >34 | | 67499 | | 07/01/14 |
| 042 | GA | 015 | 78 | DANE TRLR | 90382 | >34 | | 67499 | | 07/01/14 |
| 043 | GA | 015 | 73 | TRLR STRICK | S0W171204 | >34 | | 67499 | | 07/01/14 |
| 044 | GA | 015 | 69 | TRLR DORSEY | 79968 | >34 | | 67499 | | 07/01/14 |
| 045 | GA | 015 | 70 | TRLR DORSEY | 86253 | >34 | | 67499 | | 07/01/14 |

| Item | 3 - Schedule | of Covered | Autos | You | Own | - Premiums |
| --- | --- | --- | --- | --- | --- | --- |

| Unit | Liab. | PD Ded. | Med Pay | UM | UMPD | UIM | Comp. Ded. | Comp. Prem. | Coll. Ded. | Coll. Prem. | PIP | APIP | Spec. Perils | Tow-ing | Other | Total Prem. |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 034 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 035 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 036 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 037 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 038 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 039 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 040 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 041 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 042 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 043 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 044 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 045 | 41 | | 1 | | | | | | | | | | | | | 42 |

Named Insured:  *CYCLE-TEX INC*
Policy Number:  *CPP  2083060*                    **AGENTCOPY**

## Item 3 - Schedule of Covered Autos You Own

| Unit | State | Ter. | Year | Description | Vehicle Identification Number | Age | Cost | Class | Stated Amount | Change Date |
|------|-------|------|------|-------------|-------------------------------|-----|------|-------|---------------|-------------|
| 046 | GA | 015 | 73 | TRLR TRAILMOBILE | K62144 | >34 | | 67499 | | 07/01/14 |
| 047 | GA | 015 | 65 | TRLR BROWN | M655366 | >34 | | 67499 | | 07/01/14 |
| 048 | GA | 015 | 78 | DANE TRLR | 90381 | >34 | | 67499 | | 07/01/14 |
| 049 | GA | 015 | 70 | TRLR TRAILMOBILE | F68637 | >34 | | 67499 | | 07/01/14 |
| 050 | GA | 015 | 78 | DANE TRLR | 90389 | >34 | | 67499 | | 07/01/14 |
| 051 | GA | 015 | 78 | DANE TRLR | 90387 | >34 | | 67499 | | 07/01/14 |
| 052 | GA | 015 | 77 | FRUE TRLR | CHY248730 | >34 | | 67499 | | 07/01/14 |
| 053 | GA | 015 | 97 | FRHT TRACTOR TRU | 1FUYDZYB9VH858344 | 018 | 68000 | 50499 | | 07/01/14 |
| 054 | GA | 015 | 97 | FRHT TRACTOR TRU | 1FUYDZYB6VL683578 | 018 | 68000 | 50499 | | 07/01/14 |
| 055 | GA | 015 | 84 | FRHT TRACTOR TRU | 1FUEYSYB9EH232128 | 031 | 55000 | 50499 | | 07/01/14 |
| 056 | GA | 015 | 98 | FRHT TRACTOR TRU | 1FUYDZYB2WL896061 | 017 | 70000 | 50499 | | 07/01/14 |
| 057 | GA | 015 | 89 | DANE TRLR | 1GRAA0629KS112819 | 026 | | 67499 | | 07/01/14 |

## Item 3 - Schedule of Covered Autos You Own - Premiums

| Unit | Liab. | PD Ded. | Med Pay | UM | UMPD | UIM | Comp. Ded. | Comp. Prem. | Coll. Ded. | Coll. Prem. | PIP | APIP | Spec. Perils | Tow-ing | Other | Total Prem. |
|------|-------|---------|---------|-----|------|-----|------------|-------------|------------|-------------|-----|------|--------------|---------|-------|-------------|
| 046 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 047 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 048 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 049 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 050 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 051 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 052 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 053 | 1133 | | 10 | 157 | | | 1000 | 38 | 1000 | 212 | | | | | | 1550 |
| 054 | 1133 | | 10 | 157 | | | 1000 | 38 | 1000 | 212 | | | | | | 1550 |
| 055 | 1133 | | 10 | 157 | | | 1000 | 33 | 1000 | 161 | | | | | | 1494 |
| 056 | 1133 | | 10 | 157 | | | 1000 | 38 | 1000 | 212 | | | | | | 1550 |
| 057 | 41 | | 1 | | | | | | | | | | | | | 42 |

**Named Insured:** *CYCLE-TEX INC*

**Policy Number:** *CPP 2083060*          ***AGENTCOPY***

| Item | 3 - Schedule | of Covered | Autos | You | Own |
| --- | --- | --- | --- | --- | --- |

| Unit | State | Ter. | Year | Description | Vehicle Identification Number | Age | Cost | Class | Stated Amount | Change Date |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 058 | GA | 015 | 89 | DANE TRLR | 1GRAA0628KS112813 | 026 | | 67499 | | 07/01/14 |
| 059 | GA | 015 | 89 | DANE TRLR | 1GRAA0626KS112812 | 026 | | 67499 | | 07/01/14 |
| 060 | GA | 015 | 89 | DANE TRLR | 1GRAA0622KS112905 | 026 | | 67499 | | 07/01/14 |
| 061 | GA | 015 | 89 | DANE TRLR | 1GRAA0628KS112861 | 026 | | 67499 | | 07/01/14 |
| 062 | GA | 015 | 89 | DANE TRLR | 1GRAA0625KS112817 | 026 | | 67499 | | 07/01/14 |
| 063 | GA | 015 | 89 | DANE TRLR | 1GRAA062XKS112828 | 026 | | 67499 | | 07/01/14 |
| 064 | GA | 015 | 89 | DANE TRLR | 1GRAA062XKS112845 | 026 | | 67499 | | 07/01/14 |
| 065 | GA | 015 | 89 | DANE TRLR | 1GAA0629KS112870 | 026 | | 67499 | | 07/01/14 |
| 066 | GA | 015 | 89 | DANE TRLR | 1GRAA0626KS112857 | 026 | | 67499 | | 07/01/14 |
| 067 | GA | 015 | 89 | DANE TRLR | B086704 | 026 | | 67499 | | 07/01/14 |
| 068 | GA | 015 | 85 | DANE TRLR | 1GRAA9624GS015216 | 030 | | 67499 | | 07/01/14 |
| 069 | GA | 015 | 85 | DANE TRLR | 1GRFC9625FS027213 | 030 | | 67499 | | 07/01/14 |

| Item | 3 - Schedule | of Covered | Autos | You | Own | - Premiums |
| --- | --- | --- | --- | --- | --- | --- |

| Unit | Liab. | PD Ded. | Med Pay | UM | UMPD | UIM | Comp. Ded. | Comp. Prem. | Coll. Ded. | Coll. Prem. | PIP | APIP | Spec. Perils | Tow-ing | Other | Total Prem. |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 058 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 059 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 060 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 061 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 062 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 063 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 064 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 065 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 066 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 067 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 068 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 069 | 41 | | 1 | | | | | | | | | | | | | 42 |

**Named Insured:** *CYCLE-TEX INC*

**Policy Number:** *CPP 2083060*                    *AGENTCOPY*

| Item | 3 - Schedule | of Covered | Autos | You | Own |
|---|---|---|---|---|---|

| Unit | State | Ter. | Year | Description | Vehicle Identification Number | Age | Cost | Class | Stated Amount | Change Date |
|---|---|---|---|---|---|---|---|---|---|---|
| 070 | GA | 015 | 85 | DANE TRLR | 1GRFC9624FS027218 | 030 | | 67499 | | 07/01/14 |
| 071 | GA | 015 | 85 | DANE TLRL | 1GRAA9620GS015214 | 030 | | 67499 | | 07/01/14 |
| 072 | GA | 015 | 85 | DANE TRLR | 1GRAA9627GS015226 | 030 | | 67499 | | 07/01/14 |
| 073 | GA | 015 | 85 | DANE TRLR | 1GRAA9628GS015221 | 030 | | 67499 | | 07/01/14 |
| 074 | GA | 015 | 85 | DANE TRLR | 1GRAA9623GS015207 | 030 | | 67499 | | 07/01/14 |
| 075 | GA | 015 | 85 | DANE TRLR | 1GRAA9624GS015202 | 030 | | 67499 | | 07/01/14 |
| 076 | GA | 015 | 85 | DANE TRLR | 1GRAA9629GS015227 | 030 | | 67499 | | 07/01/14 |
| 077 | GA | 015 | 84 | DANE TRLR | 1GRFC9629ES124459 | 031 | | 67499 | | 07/01/14 |
| 078 | GA | 015 | 85 | DANE TRLR | 1GRAA9623GS015210 | 030 | | 67499 | | 07/01/14 |
| 079 | GA | 015 | 85 | DANE TRLR | 1GRFC962XFS027207 | 030 | | 67499 | | 07/01/14 |
| 080 | GA | 015 | 86 | DANE TRLR | 1GRAA9628GS015218 | 029 | | 67499 | | 07/01/14 |
| 081 | GA | 015 | 85 | DANE TRLR | 1GRAA9621GS015206 | 030 | | 67499 | | 07/01/14 |

| Item | 3 - Schedule | of Covered | Autos | You | Own | - Premiums |
|---|---|---|---|---|---|---|

| Unit | Liab. | PD Ded. | Med Pay | UM | UMPD | UIM | Comp. Ded. | Comp. Prem. | Coll. Ded. | Coll. Prem. | PIP | APIP | Spec. Perils | Tow-ing | Other | Total Prem. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 070 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 071 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 072 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 073 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 074 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 075 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 076 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 077 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 078 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 079 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 080 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 081 | 41 | | 1 | | | | | | | | | | | | | 42 |

Named Insured: *CYCLE-TEX INC*
Policy Number: *CPP 2083060*　　　　　　**AGENTCOPY**

## Item 3 - Schedule of Covered Autos You Own

| Unit | State | Ter. | Year | Description | Vehicle Identification Number | Age | Cost | Class | Stated Amount | Change Date |
|------|-------|------|------|-------------|-------------------------------|-----|------|-------|---------------|-------------|
| 082 | GA | 015 | 85 | DANE TRLR | 1GRAA9622GS015229 | 030 | | 67499 | | 07/01/14 |
| 083 | GA | 015 | 85 | DANE TRLR | 1GRAA9625GS015225 | 030 | | 67499 | | 07/01/14 |
| 084 | GA | 015 | 85 | DANE TRLR | 1GRAA9627GS015212 | 030 | | 67499 | | 07/01/14 |
| 085 | GA | 015 | 86 | DANE TRLR | 1G4AA962XGS015205 | 029 | | 67499 | | 07/01/14 |
| 086 | GA | 015 | 85 | TRLR GREEVES | 1GRFC9623FS027209 | 030 | | 67499 | | 07/01/14 |
| 087 | GA | 015 | 86 | DANE TRLR | 1GRAA9626GS015203 | 029 | | 67499 | | 07/01/14 |
| 088 | GA | 015 | 86 | DANE TRLR | 1GRFC9629FS027215 | 029 | | 67499 | | 07/01/14 |
| 089 | GA | 015 | 74 | TRLR STOUGHTON | 00000 | >34 | | 67499 | | 07/01/14 |
| 090 | GA | 015 | 76 | TRLR MONON DRY | 1NNVA4820GM106615 | >34 | | 67499 | | 07/01/14 |
| 091 | GA | 015 | 86 | TRLR MONON DRY | 1NNVA4826GM106585 | 029 | | 67499 | | 07/01/14 |
| 092 | GA | 015 | 86 | TRLR MONON DRY | 1MMVA4821GM106574 | 029 | | 67499 | | 07/01/14 |
| 093 | GA | 015 | 86 | TRLR MONON DRY | 1NNVA4824GM106617 | 029 | | 67499 | | 07/01/14 |

## Item 3 - Schedule of Covered Autos You Own - Premiums

| Unit | Liab. | PD Ded. | Med Pay | UM | UMPD | UIM | Comp. Ded. | Comp. Prem. | Coll. Ded. | Coll. Prem. | PIP | APIP | Spec. Perils | Tow-ing | Other | Total Prem. |
|------|-------|---------|---------|----|----|-----|-----------|------------|-----------|------------|-----|------|-------------|---------|-------|------------|
| 082 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 083 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 084 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 085 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 086 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 087 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 088 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 089 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 090 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 091 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 092 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 093 | 41 | | 1 | | | | | | | | | | | | | 42 |

**Named Insured:** *CYCLE-TEX INC*
**Policy Number:** *CPP 2083060*     ***AGENTCOPY***

CA 241A (10-97)

| | Item 3 - Schedule of Covered Autos You Own | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|

| Unit | State | Ter. | Year | Description | Vehicle Identification Number | Age | Cost | Class | Stated Amount | Change Date |
|---|---|---|---|---|---|---|---|---|---|---|
| 094 | GA | 015 | 86 | TRLR MONON DRY | 1NNVA4829GM106614 | 029 | | 67499 | | 07/01/14 |
| 095 | GA | 015 | 90 | TRLR GREAT DANE | 1GRAA9620LS106820 | 025 | | 67499 | | 07/01/14 |
| 096 | GA | 015 | 90 | TRLR GREAT DANE | 1GRHA96264S106822 | 025 | | 67499 | | 07/01/14 |
| 097 | GA | 015 | 84 | TRLR DORSEY DRY | 1DTV11X2XEA164610 | 031 | | 67499 | | 07/01/14 |
| 098 | GA | 015 | 84 | TRLR DORSEY DRY | 1DTV11X25EA164577 | 031 | | 67499 | | 07/01/14 |
| 099 | GA | 015 | 85 | FRUE TRLR | 1H2V04821FA012929 | 030 | | 67499 | | 07/01/14 |
| 100 | GA | 015 | 85 | FRUE TRLR | 1H2V04828FA012944 | 030 | | 67499 | | 07/01/14 |
| 101 | GA | 015 | 93 | TRLR WABASH DRY | 1JJV48205DL201174 | 022 | | 67499 | | 07/01/14 |
| 102 | GA | 015 | 95 | FRUE TRLR | 1H2V04826FA012926 | 020 | | 67499 | | 07/01/14 |
| 103 | GA | 015 | 85 | FRUE TRLR | 1H2V04820FAD12968 | 030 | | 67499 | | 07/01/14 |
| 104 | GA | 015 | 80 | FRUE TRLR | CHT010835 | >34 | | 67499 | | 07/01/14 |
| 105 | GA | 015 | 85 | FRUE TRLR | 1H2V04827FA012952 | 030 | | 67499 | | 07/01/14 |

| | Item 3 - Schedule of Covered Autos You Own - Premiums | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| Unit | Liab. | PD Ded. | Med Pay | UM | UMPD | UIM | Comp. Ded. | Comp. Prem. | Coll. Ded. | Coll. Prem. | PIP | APIP | Spec. Perils | Tow-ing | Other | Total Prem. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 094 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 095 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 096 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 097 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 098 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 099 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 100 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 101 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 102 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 103 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 104 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 105 | 41 | | 1 | | | | | | | | | | | | | 42 |

**Named Insured:** *CYCLE-TEX INC*
**Policy Number:** *CPP 2083060*          **AGENTCOPY**

**Item 3 - Schedule of Covered Autos You Own**

| Unit | State | Ter. | Year | Description | Vehicle Identification Number | Age | Cost | Class | Stated Amount | Change Date |
|------|-------|------|------|-------------|-------------------------------|-----|------|-------|---------------|-------------|
| 106 | GA | 015 | 85 | FRUE TRLR | 1H2V0482XFA012976 | 030 | | 67499 | | 07/01/14 |
| 107 | GA | 015 | 85 | FRUE TRLR | 1H2V04821FA012915 | 030 | | 67499 | | 07/01/14 |
| 108 | GA | 015 | 85 | FRUE TRLR | 1H2V04823FA012981 | 030 | | 67499 | | 07/01/14 |
| 109 | GA | 015 | 85 | FRUE TRLR | 1H2V04826FH012988 | 030 | | 67499 | | 07/01/14 |
| 110 | GA | 015 | 86 | DANE TRLR | 1GAA9625G50B8501 | 029 | | 67499 | | 07/01/14 |
| 111 | GA | 015 | 84 | DANE TRLR | 1GRFC962XES086837 | 031 | | 67499 | | 07/01/14 |
| 112 | GA | 015 | 84 | DANE TRLR | 000001 | 031 | | 67499 | | 07/01/14 |
| 113 | GA | 015 | 84 | TRLR DORSEY | 1GRHC9629ES092525 | 031 | | 67499 | | 07/01/14 |
| 114 | GA | 015 | 84 | DANE TRLR | 1GRFC9628ES126106 | 031 | | 67499 | | 07/01/14 |
| 115 | GA | 015 | 86 | DANE TRLR | 1GRAA962X62XGS088 | 029 | | 67499 | | 07/01/14 |
| 116 | GA | 015 | 87 | FRUE TRLR | 1H2V04829HC020347 | 028 | | 67499 | | 07/01/14 |
| 117 | GA | 015 | 87 | DANE TRLR | 1GRAA962XKS056622 | 028 | | 67499 | | 07/01/14 |

**Item 3 - Schedule of Covered Autos You Own - Premiums**

| Unit | Liab. | PD Ded. | Med Pay | UM | UMPD | UIM | Comp. Ded. | Comp. Prem. | Coll. Ded. | Coll. Prem. | PIP | APIP | Spec. Perils | Tow-ing | Other | Total Prem. |
|------|-------|---------|---------|-----|------|-----|------------|-------------|------------|-------------|-----|------|--------------|---------|-------|-------------|
| 106 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 107 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 108 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 109 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 110 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 111 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 112 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 113 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 114 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 115 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 116 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 117 | 41 | | 1 | | | | | | | | | | | | | 42 |

**Named Insured:** *CYCLE-TEX INC*

**Policy Number:** *CPP 2083060*

*AGENTCOPY*

**Item 3 - Schedule of Covered Autos You Own**

| Unit | State | Ter. | Year | Description | Vehicle Identification Number | Age | Cost | Class | Stated Amount | Change Date |
|------|-------|------|------|-------------|------------------------------|-----|------|-------|---------------|-------------|
| 118 | GA | 015 | 88 | DANE TRLR | 1GRAA9629JS055301 | 027 | | 67499 | | 07/01/14 |
| 119 | GA | 015 | 88 | DANE TRLR | 000002 | 027 | | 67499 | | 07/01/14 |
| 120 | GA | 015 | 89 | DANE TRLR | 1GRAA0628KS112827 | 026 | | 67499 | | 07/01/14 |
| 121 | GA | 015 | 01 | VOLV TRACTOR TRU | 4V4MC9UG41N305854 | 014 | 90000 | 50499 | | 07/01/14 |
| 122 | GA | 015 | 01 | VOLV TRACTOR TRU | 4V4MC9UG31N323424 | 014 | 90000 | 50499 | | 07/01/14 |
| 123 | GA | 015 | 00 | VOLV TRACTOR TRU | 4V4ND2JF9YN234911 | 015 | 90000 | 50499 | | 07/01/14 |
| 124 | GA | 015 | 08 | HOND ACCORD EX-L | 1HGCP36858A086534 | 007 | 28060 | 7398 | | 07/01/14 |
| 125 | GA | 015 | 09 | TOYT TACOMA | 5TENX22N792603790 | 006 | 15170 | 01499 | | 07/01/14 |
| 126 | GA | 015 | 10 | FORD F150 | 1FTMF1C84AKB04911 | 005 | 21380 | 01499 | | 07/01/14 |
| 127 | GA | 015 | 12 | FORD TAURUS LIMIT | 1FAHP2FW0CG119240 | 003 | 32155 | 7398 | | 07/01/14 |
| 128 | GA | 015 | 05 | INTL TRACTOR TRU | 1HSHXAHR25J126778 | 010 | 42000 | 36499 | | 07/01/14 |
| 129 | GA | 015 | 99 | MACK CONVENTIONA | 1M2P264C1XM027884 | 016 | 37450 | 33499 | | 07/01/14 |

**Item 3 - Schedule of Covered Autos You Own - Premiums**

| Unit | Liab. | PD Ded. | Med Pay | UM | UMPD | UIM | Comp. Ded. | Comp. Prem. | Coll. Ded. | Coll. Prem. | PIP | APIP | Spec. Perils | Tow-ing | Other | Total Prem. |
|------|-------|---------|---------|-----|------|-----|-----------|------------|-----------|------------|-----|------|--------------|---------|-------|-------------|
| 118 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 119 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 120 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 121 | 1133 | | 10 | 157 | | | 1000 | 38 | 1000 | 212 | | | | | | 1550 |
| 122 | 1133 | | 10 | 157 | | | 1000 | 38 | 1000 | 212 | | | | | | 1550 |
| 123 | 1133 | | 10 | 157 | | | 1000 | 38 | 1000 | 212 | | | | | | 1550 |
| 124 | 356 | | 8 | 215 | | | 1000 | 51 | 1000 | 121 | | | | | | 751 |
| 125 | 404 | | 10 | 157 | | | 1000 | 31 | 1000 | 80 | | | | | | 682 |
| 126 | 404 | | 10 | 157 | | | 1000 | 38 | 1000 | 102 | | | | | | 711 |
| 127 | 356 | | 8 | 215 | | | 1000 | 73 | 1000 | 185 | | | | | | 837 |
| 128 | 831 | | 10 | 157 | | | 1000 | 31 | 1000 | 156 | | | | | | 1185 |
| 129 | 673 | | 10 | 157 | | | 1000 | 22 | 1000 | 64 | | | | | | 926 |

**Named Insured:** *CYCLE-TEX INC*

**Policy Number:** *CPP 2083060*          ***AGENTCOPY***

| Item | 3 - Schedule | of Covered | Autos | You | Own |
| --- | --- | --- | --- | --- | --- |

| Unit | State | Ter. | Year | Description | Vehicle Identification Number | Age | Cost | Class | Stated Amount | Change Date |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 130 | GA | 015 | 12 | FORD F150 | 1FTFW1ET4CFA52640 | 003 | 34660 | 01499 | | 07/01/14 |
| 131 | GA | 015 | 95 | INTL TRACTOR TRU | 1HSHCADR3SH688385 | 020 | 65111 | 36499 | | 07/01/14 |
| 132 | GA | 015 | 61 | TRLR UTILITY | T352714 | >34 | | 68499 | | 07/01/14 |
| 133 | GA | 015 | 78 | TRLR DORSEY | 139003 | >34 | | 68499 | | 07/01/14 |
| 134 | GA | 015 | 81 | TRLR DORSEY | 1DTV12W29BA155670 | 034 | | 68499 | | 07/01/14 |
| 135 | GA | 015 | 80 | TRLR BLB | 800865 | >34 | | 68499 | | 07/01/14 |
| 136 | GA | 015 | 81 | TRLR DORSEY | 1DTV12W208A155448 | 034 | | 68499 | | 07/01/14 |
| 137 | GA | 015 | 82 | TRLR MILL | 1PTD11RJ309002081 | 033 | | 68499 | | 07/01/14 |
| 138 | GA | 015 | 82 | TRLR MILL | U6335 | 033 | | 68499 | | 07/01/14 |
| 139 | GA | 015 | 81 | DANE TRLR | 1GRAC90204BB08670 | 034 | | 68499 | | 07/01/14 |
| 140 | GA | 015 | 83 | TRLR LUFKIN | 01A4526D1061177 | 032 | | 68499 | | 07/01/14 |
| 141 | GA | 015 | 10 | HOND ACCORD CROSS | 5J6TF1H53AL001395 | 005 | 32570 | 7398 | | 07/01/14 |

| Item | 3 - Schedule | of Covered | Autos | You | Own | - Premiums |
| --- | --- | --- | --- | --- | --- | --- |

| Unit | Liab. | PD Ded. | Med Pay | UM | UMPD | UIM | Comp. Ded. | Comp. Prem. | Coll. Ded. | Coll. Prem. | PIP | APIP | Spec. Perils | Tow-ing | Other | Total Prem. |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 130 | 404 | | 10 | 157 | | | 1000 | 47 | 1000 | 160 | | | | | | 778 |
| 131 | 831 | | 10 | 157 | | | 1000 | 31 | 1000 | 172 | | | | | | 1201 |
| 132 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 133 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 134 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 135 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 136 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 137 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 138 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 139 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 140 | 41 | | 1 | | | | | | | | | | | | | 42 |
| 141 | 356 | | 8 | 215 | | | 1000 | 62 | 1000 | 139 | | | | | | 780 |

Named Insured: *CYCLE-TEX INC*

Policy Number: *CPP 2083060*

*AGENTCOPY*

Grange Mutual Casualty Company

Item 4 - Schedule of Hired or Borrowed Covered Auto Coverage and Premiums

Liability Coverage - Rating Basis, Cost of Hire

| State | Estimated Cost of Hire | Rate per $100 Cost of Hire | Factor (If Liab. Cov. is Primary) | Premium |
|-------|-----------------------|---------------------------|-----------------------------------|---------|
| GA | IF ANY | 0.000 | | 111 |
| | | | Total Premium: | $111 |

Cost of hire means the total amount you incur for the hire of "autos" you do not own (not including "autos" you borrow or rent from your partners or employees or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

Physical Damage Coverage

| Coverages | Limit of Insurance *The most we will pay, deductible* | Estimated Annual Cost of Hire | Rate Per Each $100 Annual Cost of Hire | Premium |
|-----------|------------------------------------------------------|-------------------------------|----------------------------------------|---------|
| Comprehensive | | | | |
| Specified Causes of Loss | Actual Cash Value or Cost of Repairs | | | |
| Collision | | | | |
| | | Total Premium: | | |

Physical damage insurance for covered autos you hire or borrow is excess unless indicated by (X).

( ) If this box is checked, physical damage insurance applies on a direct primary basis and for purposes of the condition entitled other insurance, any covered auto you hire or borrow is deemed to be a covered auto you own.

Item 5 - Schedule for Employers Non-Ownership Liability

| Named Insured's Business | Rating Basis | Number | Premium |
|--------------------------|--------------|--------|---------|
| Other than a Social Service Agency | Number of Employees | 26-100 | 168 |
| | Number of Partners | | |
| Social Service Agency | Number of Employees | | |
| | Number of Partners | | |
| | | | $168 |

**Policy No.** *CPP 2083060*

CA 241 (12-95)

CPPCA3B

# COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

**Policy Number:**   CPP  2083060-00

**Named Insured:**   CYCLE-TEX INC

Total Premium:     $25,230.00

Description Of Premises:

Prem Bld Occupancy
  1   1 Plastic Or Rubber Goods Mfg. - Other Than Household
       Construction: Masonry Non-Combustible      Protection Class: 02

Prem Bld Occupancy
  2   1 Plastic Or Rubber Goods Mfg. - Other Than Household
       Construction: Masonry Non-Combustible      Protection Class: 05

Prem Bld Occupancy
  3   1 Offices - Not Governmental
       Construction: Joisted Masonry         Protection Class: 02

Prem Bld Occupancy
  5   1 Machine Shops
       Construction: Non-Combustible         Protection Class: 02

Coverages Provided:
Insurance At The Described Premises Applies Only For The Coverages Shown Below:

          See Form No. Commona For Schedule Of Names And Addresses.
Blanket Buildings For Premises    1,    2,    5
Blanket Contents For Premises     1,    2,    3,    5
Blanket Bus Income for Premises   1,    2,    3,    5

| Prem | Bld | Coverage | Covered Causes | Rates | Premiums |
|------|-----|----------|----------------|-------|----------|
| 0 | 0 | Blanket Building And Contents | Basic Form | 0.089 | $14,065 |
|   |   | (Blanket Summary Information) | Special Form | 0.024 | $3,793 |

       Total Limit Available      $15,803,546
              Replacement Cost
              Deductible:           $5,000
              Coinsurance:          100 %

These Declarations Are Part Of The Policy Declarations Containing The Name Of
 The Insured And The Policy Period.
Form No. Cfcoverg 1/86   Page   1 Continued   Issued 07/08/14

# COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

**Policy Number:**    CPP 2083060-00

**Named Insured:**    CYCLE-TEX INC

Coverages Provided:
Insurance At The Described Premises Applies Only For The Coverages Shown Below:

See Form No. Commona For Schedule Of Names And Addresses.

| Prem | Bld | Coverage | Covered Causes | Rates | Premiums |
|------|-----|----------|----------------|-------|----------|
| 0 | 0 | Blanket Business Income - | Basic Form | 0.065 | $1,843 |
|   |   | Other than Rental Value | Special Form | 0.064 | $1,825 |
|   |   | (Blanket Summary Information) | | | |

```
    Total Limit Available      $2,840,085
        Deductible:               72 Hours
        Coinsurance:             100 %
```

Equipment Breakdown Coverage:                                    $2,633
(Refer to the Property Limits of Insurance and coverage form unless a
limit is specifically shown in an Equipment Breakdown Coverage Schedule)

Manufacturers' Optimum, Property Premium:                        $1,071

These Declarations Are Part Of The Policy Declarations Containing The Name Of
The Insured And The Policy Period.
Form No. Cfcoverg 1/86   Page   2 Last        Issued 07/08/14

*CPPCF*                              *AGENTCOPY*

## MANUFACTURERS' OPTIMUM PROGRAM SCHEDULE

**Policy  Number:**      CPP  2083060-00


**Named    Insured:**    CYCLE-TEX INC

These  Coverages  Apply  To  All  Locations  Covered  On  The  Policy.


The  Following  Coverages  Apply  Only  When  Designated  By  an  "X"  In
The  Box(es)  Shown  Below:

                                                                    Premium
[X]  Manufacturers'  Optimum  Endorsement  -  IL  19              $1,936


[ ]  Product  Recall  Expense  Coverage  Form  -  CP  13

     Product  Recall  Limit:              Any  One  Covered  Recall
                                          Aggregate  For  The  Policy  Period

     Product  Recall  Participation:        %  Of  All  Covered  Recall  Expenses


[ ]  Manufacturers'  Optimum  Business  Income
     And  Extra  Expense  Endorsement  -  CP  12
     72  Hour  Waiting  Period

Total  Manufacturers'  Optimum  Program  Premium              $1,936

## MORTGAGE HOLDERS, LOSS PAYEES, AND ADDITIONAL INSURED SCHEDULE

**Policy   Number:**   CPP  2083060-00

**Named    Insured:**   CYCLE-TEX INC

```
Premises  0002                  Premises  0005
Bbt                             Bbt
PO Box 200047                   PO Box 200047
Kennesaw  GA                    Kennesaw  GA
30156                           30156
Mortgage  Holder                Mortgage  Holder
```

## COMMERCIAL CRIME COVERAGE PART / DECLARATIONS

**Policy  Number:**    CPP  2083060-00

**Named    Insured:**    CYCLE-TEX INC

In Return For The Payment Of The Premium, And Subject To All The Terms Of This Policy, We Agree With You To Provide The Insurance As Stated In This Policy.

                                    Total Crime Premium:        $820.00

Description Of Premises:

Insurance At The Described Premises Applies Only For The Coverages Shown In The Commercial Crime Coverage Part Schedule

## COMMERCIAL CRIME COVERAGE PART SCHEDULE

**Policy Number:**   CPP 2083060-00

**Named Insured:**   CYCLE-TEX INC

Coverage Provided:
Insurance At The Described Premises Applies Only For The Insuring Agreements
Shown Below:

Insuring Agreements Applicable To All Premises

| Insuring Agreements | Limit Per Occ | Deductible Per Occ | Premium |
|---|---|---|---|
| 1.  Employee Theft | $50,000 | $5,000 | $511.00 |
| 2.  Forgery Or Alteration | $75,000 | $5,000 | $166.00 |
| 6.  Computer Fraud | $100,000 | $5,000 | $143.00 |
| | | Total Crime Premium: | $820.00 |

## COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

**Policy Number:**   CPP 2083060-00

**Named Insured:**   CYCLE-TEX INC

Audit Frequency: Annual                    The Insured Is Corporation

Limits Of Insurance:
 General Aggregate Limit
    (Other Than Products - Completed Operations)      $2,000,000
 Products - Completed Operations Aggregate Limit      $2,000,000
 Each Occurrence Limit                                $1,000,000
 Personal And Advertising Injury Limit                $1,000,000
 Medical Expense Limit, Any One Person                   $10,000
 Damage To Premises Rented To You Limit                 $100,000


                    Total Commercial General Liability
                    Coverage Part Advanced Premium:      $18,864.00


These Declarations Are Part Of The Policy Declarations Containing The Name Of
 The Insured And The Policy Period.
Form No. Cgl Cov   1/86                    Issued 07/08/14

*CPPGL*                              *AGENTCOPY*

# COMMERCIAL GENERAL LIABILITY COVERAGE PART / CLASSIFICATION SCHEDULE

**Policy  Number:**    CPP  2083060-00

**Named   Insured:**    CYCLE-TEX INC

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium | Cov |
|-----|-----|-----|------|---------------|-----|------|---------|-----|
| 1 | GA | 503 | 58058 | 13,500,000 Gross Sales | 1000 | $0.213 | $2,876 | O |

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium | Cov |
|-----|-----|-----|------|---------------|-----|------|---------|-----|
| 1 | GA | 999 | 58058 | 13,500,000 Gross Sales | 1000 | $0.470 | $6,345 | P |

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium | Cov |
|-----|-----|-----|------|---------------|-----|------|---------|-----|
| 2 | GA | 503 | 58058 | 13,500,000 Gross Sales | 1000 | $0.237 | $3,200 | O |

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium | Cov |
|-----|-----|-----|------|---------------|-----|------|---------|-----|
| 2 | GA | 999 | 58058 | 13,500,000 Gross Sales | 1000 | $0.470 | $6,345 | P |

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium | Cov |
|-----|-----|-----|------|---------------|-----|------|---------|-----|
| 3 | GA | 503 | 61224 | 2,601 Square Feet | 1000 | $31.702 | $82 | O |

Buildings Or Premises-Office-Premises  Primarily
Occupied By Employees Of The Insured Other Than Not
For Profit
Products-Completed  Operations Are Subject To The General Aggregate Limit.

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium | Cov |
|-----|-----|-----|------|---------------|-----|------|---------|-----|
| 4 | GA | 503 | 49452 | 4 Acres | Each | $3.964 | $16 | O |

Vacant Land  Not For Profit
Products-Completed  Operations Are Subject To The General Aggregate Limit.

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium | Cov |
|-----|-----|-----|------|---------------|-----|------|---------|-----|
| 5 | GA | 503 | 58058 | 0 Gross Sales | 1000 | $0.213 | $0 | O |

| Loc | St | Ter | Code | Premium Basis | Per | Rate | Premium | Cov |
|-----|-----|-----|------|---------------|-----|------|---------|-----|
| 5 | GA | 999 | 58058 | 0 Gross Sales | 1000 | $0.470 | $0 | P |

Manufacturers' Optimum, General Liability Premium:                    $865

Cov P Is For Products-Completed  Operations, And Cov O Is For All Other Hazards.

## EMPLOYEE BENEFITS LIABILITY COVERAGE PART DECLARATIONS

**Policy Number:**   CPP 2083060-00

**Named Insured:**   CYCLE-TEX INC

```
Audit Frequency: Annual                The Insured Is Corporation

Limits Of Insurance:
  Each Claim Limit                     $1,000,000
  Aggregate Limit                      $3,000,000

Retroactive Date

This Insurance Does Not Apply To A "Benefit Error" Which Occurs Before The
Retroactive Date, If Any, Shown Here 07/01/14

Deductible

1,000 Each Claim.  Refer To Section IV For Application Of Deductible



                    Total Employee Benefits Liability
                      Coverage Part Advanced Premium:        $230.00
```

```
These Declarations Are Part Of The Policy Declarations Containing The Name Of
 The Insured And The Policy Period.
Form No. Emb Cov   4/98                    Issued 07/08/14
```

## EMPLOYEE BENEFITS LIABILITY COVERAGE PART/CLASSIFICATION SCHEDULE

**Policy Number:**   CPP 2083060-00

**Named Insured:**   CYCLE-TEX INC

| Loc | St | Ter | Premium Basis | Premium |
|-----|-----|-----|---------------|---------|
| 9999 | GA | 999 | 75 Employees | $230 |

Employee Benefits Liability

## COMMERCIAL INLAND MARINE DECLARATION

**Policy Number:**    CPP  2083060-00

**Named    Insured:**    CYCLE-TEX INC

| Coverages | Limits | Premiums |
| --------- | ------ | -------- |
| Transportation  Floater | $50,000 | $575 |

Total  Commercial  Inland  Marine  Part:         $575.00

These Declarations Are Part Of The Policy Declarations Containing The Name Of
 The Insured And The Policy Period.

## COMMERCIAL INLAND MARINE COVERAGE PART DECLARATION

**Policy Number:**   CPP 2083060-00

**Named Insured:**   CYCLE-TEX INC

Coverage: Transportation Floater

```
 Loc   Bld
   1     1
```

Description Of Property                          Limit Of Insurance

A. All Other Covered Property - Non-Scheduled              $50,000

      Deductible :      $5,000     Rate :    1.150     Premium :         $575

These Declarations Are Part Of The Policy Declarations Containing The Name Of
 The Insured And The Policy Period.
Form No. Imcoverg 12/88                          Issued 07/08/14

*CPPIM*                                          *AGENTCOPY*

**COMMERCIAL PACKAGE POLICY FORMS INVENTORY**

**Policy  Number:**    CPP  2083060-00

**Named   Insured:**    CYCLE-TEX INC

POLICY LEVEL FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| CA0109 | (10/04) | GA Changes |
| CA38 | (12/05) | GA Amendment of Policy |
| IL0017 | (11/98) | Common Policy Conditions |
| IL43 | (05/11) | Common Policy Conditions Changes |
| IL0021 | (07/02) | Nuclear Energy Liability Exclusion |
| IL0262 | (09/07) | Ga Changes Cancellation & Nonrenewal |
| CA0051 | (12/04) | Changes in Coverage Forms - Mobile Eq... |
| IL 19 | (06/11) | Manufacturers' Optimum Endorsement |
| IM 72 03 | (10/04) | Business Computer Coverage |
| CR 00 21 | (03/00) | Commercial Crime Coverage Form |

COMMERCIAL AUTO FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| CA0001 | (10/01) | Business Auto Coverage Form |
| CA0038 | (12/02) | War Exclusion |
| CA50 | (05/07) | Asbestos Exclusion |
| CA75 | (05/11) | Policy Changes - Who Is An Insured |
| CA9903 | (07/97) | Auto Medical Payments |
| CA83 | (05/11) | Auto Medical Payments Coverage Changes |
| CA3137 | (01/09) | GA UM Added On To At-Fault Liability Lim |
| CA60 | (07/13) | Business Auto Optimum |
| CA9910 | (09/02) | Drive Other Car Coverage |

COMMERCIAL PROPERTY COVERAGE PART FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| CP 99 93 | (10/90) | Tentative Rate |
| IL 09 35 | (07/01) | Exclusion of Certain Computer-Related Losses |
| CP 00 90 | (07/88) | Commercial Property Conditions |
| CP 10 32 | (08/08) | Water Exclusion Endorsement |
| CP 00 10 | (04/02) | Building & Personal Property Coverage Form |
| CP 10 30 | (04/02) | Causes of Loss-Special Form |
| IL 09 52 | (01/08) | Cap on Losses from Certified Acts of Terrorism |
| CP 00 30 | (04/02) | Business Income Coverage Form (and Extra Expense) |
| CP 11 | (12/09) | Equipment Breakdown Coverage |
| IL 09 99 | (01/07) | Disclosure Of Premium |
| IL 09 95 | (01/07) | Conditional Exclusion of Terrorism |

COMMERCIAL CRIME COVERAGE PART FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| CR 01 | (08/01) | Crime Amendment Endorsement |
| CR 01 32 | (03/00) | Georgia Changes - Concealment, Fraud |
| CR 07 59 | (01/08) | Amend-Delete Provisions Regarding Certain Acts of Terror |

**COMMERCIAL PACKAGE POLICY FORMS INVENTORY**

**Policy   Number:**   CPP  2083060-00

**Named   Insured:**   CYCLE-TEX INC

COMMERCIAL  GENERAL  LIABILITY  COVERAGE  PART  FORMS  AND  ENDORSEMENTS

```
CG 21 67 (04/02)   Fungi or Bacteria Exclusion
CG 21 49 (09/99)   Total Pollution Exclusion
CG 00 62 (12/02)   War Liability Exclusion
CG 21 47 (07/98)   Employment-Related Practices Exclusion
CG 00 01 (10/01)   Commercial General Liability Coverage Form
CG 28    (08/09)   Recording & Distribution of Material or Info Exclusion
IL 15    (06/97)   Lead Exclusion
CG 44    (05/11)   Medical Payment Changes
CG 09 GA (01/05)   Asbestos Exclusion, Silica Exclusion, Mixed Dust Excl...
CG 21 60 (04/98)   Exclusion - Year 2000 Computer-Related Problems
CG 21 70 (01/08)   Cap on losses from Certified Acts of Terrorism.
CG 21 87 (01/07)   Conditional Exclusion of Terrorism
CG 25 04 (03/97)   Designated Location(s) General Aggregate
EB 10 1  (04/98)   Employee Benefits Liability
EB 01    (10/98)   Exclusion - Year 2000 Computer-Related Problems
EB 04    (05/11)   Employee Benefits Liability Coverage form Changes
```

COMMERCIAL  INLAND  MARINE  COVERAGE  PART  FORMS  AND  ENDORSEMENTS

```
CL 16 30 (06/06)   Conditional Terrorism Exclusion
IM 72 55 (01/00)   Transportation Dec
IM 72 50 (01/00)   Transportation Coverage
IM 20 21 (04/04)   Amendatory Endorsement Georgia
```

**COMMERCIAL PACKAGE POLICY CONTENTS**

**Policy Number:**   CPP 2083060-00

**Named Insured:**   CYCLE-TEX INC

Commercial Package Policy Declarations

Schedule Of Names And Addresses

Commercial Property Coverage Part Declarations

Commercial Property Mortgage Holders And Loss Payees Schedule

Commercial Crime Coverage Part Declarations

Commercial Crime Coverage Part Schedule

Commercial General Liability Coverage Part Declarations

Commercial General Liability Coverage Part / Classification Schedule

Employee Benefits Liability Coverage Part Declarations

Employee Benefits Liability Coverage Part / Classification Schedule

Commercial Inland Marine Coverage Part Declarations

Commercial Auto Coverage Part Declarations

* Additional Insurance Line Documents Attached

Named Insured:
**CYCLE-TEX INC**

Policy Number:
**CPP 2083060-00**

AAIS
IM-7255 Ed 1.0
Page 1 of 1

# TRANSPORTATION - DECLARATIONS

(The information required below may be indicated on a
separate schedule or supplemental "declarations".)

## COVERED PROPERTY

Covered property consists of:

**CARPET AND PLASTIC PELLETS**

## SCHEDULED LIMITS

Modes of Transportation, Conveyance Limit

$ _____   Any one aircraft

$ _____   Any one carrier for hire

$ 50000   Any one owned vehicle

$ _____   Any one railroad car

Terminal Limits

| Location No. | Terminal Locations | Limit |
|---|---|---|

Catastrophe Limit

$ 50000   Any one catastrophe

## DEDUCTIBLE

Deductible Amount $ 5000

IM-7255 Ed 1.0

Copyright MCMXCIV, American Association of Insurance Services

**Grange Mutual Casualty Company**
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

PAGE:   1   DATE: 07/08/14

POLICY PREMIUM RECAP SHEET

POLICY NUMBER  : CPP 2083060 00 01     INSURED : CYCLE-TEX INC
EFFECTIVE DATE : 07/01/14                       702 S THORNTON AVE
EXPIRATION DATE: 07/01/15                       DALTON GA

COMP : GRANGE MUTUAL CASUALTY COMPANY   AGENT : ADVANCED INSURANCE STRATEGIES
                                                200 W CRAWFORD ST
                          AGENCY NUMBER : 1001314-00

COMPANY LINE  : COMMERCIAL PACKAGE


POLICY PREMIUM TOTALS


TOTAL COMMERCIAL PROPERTY PREMIUM................................$22,597.00
TOTAL EQUIPMENT BREAKDOWN PREMIUM.................................$2,633.00
TOTAL COMMERCIAL CRIME PREMIUM.....................................$820.00
TOTAL COMMERCIAL GENERAL LIABILITY PREMIUM......................$19,729.00
TOTAL EMPLOYEE BENEFITS LIABILITY PREMIUM.........................$230.00
TOTAL INLAND MARINE PREMIUM.......................................$575.00
CERTIFIED ACTS OF TERRORISM.......................................$952.00
TOTAL AUTO PREMIUM.............................................$24,975.00


       TOTAL POLICY PREMIUM..........$72,511.00

Q10

*AGENTCOPY*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GEORGIA UNINSURED MOTORISTS COVERAGE - ADDED ON TO AT-FAULT LIABILITY LIMITS

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Georgia, this endorsement modifies insurance provided under the following:

> BUSINESS AUTO COVERAGE FORM
> GARAGE COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM
> TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:**<br><br>**Endorsement Effective Date:** |

## SCHEDULE

| |
|---|
| **Limit Of Insurance: $**  **Each "Accident"** |
| Indicate with an "X" in the appropriate box the desired deductible option. Any amount payable for damages under this coverage will be in excess of the applicable deductible option. |

**Deductible Option**

| | |
|---|---|
| X | No deductible applies. |
| | $ 500 each "accident" |
| | $ 1,000 each "accident" |
| | $ 2,000 each "accident" |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

## A. Coverage

1. We will pay all sums in excess of the applicable deductible option shown in the Schedule or Declarations that the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" including loss of consortium, sustained by the "insured" or "property damage" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. We will pay under this coverage only after the limits of liability under any applicable liability bonds or policies have been exhausted by payment of judgments or settlements. However, if a settlement is made between an "insured" and the insurer of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" for an amount that does not exhaust the limits of liability under any applicable liability bonds or policies, we will not pay under this coverage unless we previously consented to such settlement in writing.

**3.** Any default judgment arising out of a "suit" for damages against anyone alleged to be legally responsible is not binding on us.

## B. Who Is An Insured

If the Named Insured is designated in the Declarations as:

**1.** An individual, then the following are "insureds":

   **a.** The Named Insured and any "family members".

   **b.** Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   **c.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**2.** A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   **a.** Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   **b.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

   **c.** The Named Insured for "property damage" only.

## C. Exclusions

This insurance does not apply to:

**1.** Any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle", if the settlement is made in accordance with GA CODE ANN. Section 33-24-41.1 and the payment of such settlement exhausts the limits of the applicable liability bonds or policies.

**2.** The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

**3.** The direct or indirect benefit of any insurer of property.

**4.** Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**5.** "Property damage" for which the "insured" has been compensated by other property or physical damage coverage.

**6.** Punitive or exemplary damages.

**7.** "Bodily injury" or "property damage" arising directly or indirectly out of:

   **a.** War, including undeclared or civil war;

   **b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   **c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Limit Of Insurance

**1.** Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit of Uninsured Motorists Coverage shown in the Schedule or Declarations.

**2.** No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form, any Liability Coverage Form or any Medical Payments Coverage Endorsement attached to this Coverage Part.

We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation law, exclusive of non-occupational disability benefits.

**3.** We will not pay for any "property damage" that is paid or payable under Physical Damage Coverage.

## E. Changes In Conditions

The conditions of the policy are changed for Uninsured Motorists Coverage as follows:

**1.** Paragraph **c.** of the **Other Insurance** Condition in the Business Auto and Garage Coverage Forms and Paragraph **e.** in the **Other Insurance Primary And Excess Insurance Provisions** Condition in the Truckers and Motor Carrier Coverage Forms are replaced by the following:

   If there is other applicable similar insurance available under more than one policy:

   **(1)** The following priorities of recovery apply:

| | |
|---|---|
| **First** | The policy affording Uninsured and Underinsured Motorists Coverage to the "insured" as a Named Insured or if the Named Insured is an individual, any "family member". |
| **Second** | The Uninsured and Underinsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident". |

    **(2)** We will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

The reference in **Other Insurance** in the Business Auto and Garage Coverage Forms and **Other Insurance — Primary And Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms to "other collectible insurance" applies only to other collectible uninsured motorists insurance.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss** is changed by adding the following:

    **a.** Promptly notify the police if a hit-and-run driver is involved; and

    **b.** Promptly send us copies of the legal papers if a "suit" is brought.

**3. Transfer Of Rights Of Recovery Against Others To Us** is also changed by adding the following:

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

We shall be entitled to the rights to recover damages from another only after the "insured" has been fully compensated for damages.

**4.** The **Two Or More Coverage Forms Or Policies Issued By Us** Condition does not apply to the Named Insured or if the Named Insured is an individual, any "family member".

**F. Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child.

**2.** "Occupying" means in, upon, getting in, on, out or off.

**3.** "Property Damage" means:

    **a.** Injury to or destruction of a covered "auto" or its resulting loss of use;

    **b.** Injury to or destruction of property contained in the covered "auto" and owned by the Named Insured, or if the Named Insured is an individual, any "family member"; or

    **c.** Injury or destruction of property contained in the covered "auto" and owned by anyone else "occupying" the covered "auto".

**4.** "Uninsured motor vehicle" means a land motor vehicle or "trailer":

    **a.** For which there is neither:

        **(1)** Cash or securities on file with the Georgia Commissioner of Public Safety; nor

        **(2)** A liability bond or policy;

    applicable at the time of the "accident".

    **b.** That is an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle or "trailer" for which the sum of the limits of all liability bonds or policies applicable at the time of the "accident" either:

        **(1)** Is not enough to pay the full amount the covered "insured" is legally entitled to recover as damages; or

        **(2)** Has been reduced by payment of claims to an amount which is not enough to pay the full amount the covered "insured" is legally entitled to recover as damages.

    **c.** For which an insuring or bonding company legally denies coverage or is or becomes insolvent; or

    **d.** That is a hit-and-run vehicle and neither the driver nor owner can be identified.

    The vehicle must either:

        **(1)** Hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying"; or

        **(2)** Cause "bodily injury" or "property damage" with no physical contact with an "insured", a covered "auto" or a vehicle an "insured" is "occupying" at the time of the "accident" provided the facts of the "accident" can be corroborated by an eyewitness to the "accident" other than the "insured" making the claim.

However, "uninsured motor vehicle" does not include any vehicle designed for use mainly off public roads while not on public roads.

| Endorsement | CA 60 |
|---|---|

**Policy Number: CPP   2083060**

**Business Auto Optimum**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

With respect to the coverage provided by this endorsement, the provisions of the Business Auto Coverage Form apply unless modified by the endorsement.

## SECTION II - LIABILITY COVERAGE

**A.  Broad Form Insured**

Paragraph **A.1., Who Is An Insured**, is amended to include as an insured:

**d.**  Any legally incorporated entity of which you own more than 50 percent of the voting stock during the period for which this endorsement is effective, if there is no similar insurance available to that organization. However:

**(1)** The Named Insured does not include any organization:

**(i)** that is a partnership or joint venture; or

**(ii)** that is an insured under any other policy, or has exhausted its Limit of Insurance under any other policy.

Paragraph **d.(1)(i)** above does not apply to a policy written to apply specifically in excess of this policy.

**(2)** Coverage for newly acquired or formed organizations is afforded only for 180 days from the date of acquisition or formation.

**(3)** Coverage does not apply to "bodily injury" or "property damage" that results from an "accident" that occurred before you formed or acquired that organization.

**e.  Employees As Insureds - Non-ownership**

Any employee of yours is an "insured":

**(i)** While using a covered "auto" you do not own, hire or borrow; or

**(ii)** While operating an "auto" hired or rented without a driver under contract or agreement in that "employee's" name, with your permission, while performing duties related to the conduct of your business.

**f.  Blanket Additional Insureds**

Any person or organization whom you are required in a written contract or agreement to include as an additional "insured" with respect to your ownership, maintenance or use of a covered "auto". This provision only applies to written contracts or agreements that are signed prior to any "bodily injury" or "property damage" to which coverage applies.

Coverage under this provision **(f.)** shall be primary and non-contributory with respect to the person or organization included as an "insured" under this provision **(f.)**, but only if the written contract or agreement requires coverage to be primary and non-contributory.

**B.  Increased Supplementary Payments**

Paragraphs **2.a.(2)** and **(4)** Supplementary Payments are replaced by the following:

**(2)** Up to $5,000 for the cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earning up to $500 a day because of time off from work.

*Contains copyrighted material of ISO Properties, Inc., used with permission*

BKK104 (07-2013)

*continued...*

| Endorsement | CA 60 |
| --- | --- |

**Business Auto Optimum**

**C. Amended Fellow Employee Exclusion**

Exclusion **5.**, under Paragraph **B., Exclusions** , of **SECTION II - LIABILITY**, does not apply if the "bodily injury" results from the use of a covered "auto" you own or hire.

The insurance provided under this provision is excess over any other collectible insurance.

**SECTION III - PHYSICAL DAMAGE COVERAGE**

The following coverages are added to Paragraph **A. Coverage** , of the **PHYSICAL DAMAGE COVERAGE:**

**5. Hired Auto Physical Damage Coverage**

If hired "autos" are covered "autos" for Liability Coverage, and if Comprehensive, Specified Causes of Loss, or Collision coverage are provided under the Business Auto Coverage Form for any "auto" you own, then the Physical Damage coverages provided are extended to "autos" you hire, subject to the following:

**a.** The most we will pay for "loss" to any hired "auto" is the lesser of:

(1) $75,000;
(2) Actual Cash Value; or
(3) Cost of Repair.

**b.** For each hired "auto", our obligation to pay for "loss" will be reduced by the deductible. The deductible will be equal to the largest deductible applicable to any owned "auto" for that coverage. No deductible applies to "loss" caused by fire or lightning.

**c.** The insurance provided under this coverage extension is primary over any other collectible insurance.

**d.** Subject to the above limit, deductible and excess provisions, we will provide coverage equal to the broadest coverage applicable to any covered "auto" you own.

**e.** Subject to a maximum limit of $500 per "accident", we will also cover loss of use of the hired "auto" if it results from an "accident", you are legally liable for, and the lessor incurs an actual financial loss.

**6. Air Bag Coverage**

We will pay up to a maximum of $1,000 per occurrence to have air bags in your covered "auto" replaced for an incurred "loss" resulting from accidental deployment. Collision, Specified Causes of Loss, and Comprehensive deductibles do not apply to this coverage.

**7. Additional Living Expense**

We will pay up to $25 a day, to a maximum of $400 for additional living expenses, meaning food, lodging and telephone costs, incurred by you due to a covered "loss" caused by:

**a.** Comprehensive only if the Declarations indicate that Comprehensive Coverage is provided for that "auto".

**b.** Specified Causes of Loss only if the Declarations indicate that Specified Causes of Loss Coverage is provided for that auto.

**c.** Collision only if the Declarations indicate that Collision Coverage is provided for that auto.

This coverage applies only in the event that the "loss":

**a.** Disables a covered "auto"; and

**b.** Occurs more than 100 miles from the insured address shown in the Declarations or the garaging address of your covered "auto", if it is different from the insured address.

We will pay the additional living expenses incurred until your covered "auto" is returned to use or we pay for its "loss".

| Endorsement | CA 60 |
| --- | --- |

**Business Auto Optimum**

**8. Locked Vehicle Coverage**

We will pay to have your covered "auto" unlocked if your vehicle's keys are locked inside your covered "auto". Collision, Specified Causes of Loss, and Comprehensive deductibles do not apply to this coverage.

**9. Rental Reimbursement Coverage**

The following coverage is added to Section III Physical Damage **A. Coverage:**

**a.** This coverage applies only to a covered "auto" described in the policy.

**b.** We will pay for rental reimbursement expenses incurred by you for the rental of an "auto" because of "loss" to a covered "auto". Payment applies in addition to the otherwise applicable amount of each coverage you have on a covered "auto". No deductible applies to this coverage.

**c.** We will pay only for those expenses incurred during the policy period beginning 24 hours after the "loss" and ending, regardless of the policy's expiration, at a maximum of 30 days.

**d.** Our payment is limited to the lesser of the following amounts:

**(1)** Necessary and actual expenses incurred.

**(2)** A maximum payment of $60 per day.

**e.** This coverage does not apply while there are spare or reserve "autos" available to you for your operations.

**f.** If "loss" results from the total theft of a covered "auto" of the private passenger type, we will pay under this coverage only that amount of your rental reimbursement expenses which is not already provided for under the PHYSICAL DAMAGE COVERAGE Coverage Extension.

**10. Loan Lease Gap Coverage**

In the event of a total "loss" to a covered "auto" shown in the Schedule or Declarations we will pay any unpaid amount due on the lease or loan for a covered "auto", less:

**a.** The amount paid under the Physical Damage Coverage Section of the policy; and

**b.** Any:

**(1)** Overdue lease/loan payments at the time of the "loss";

**(2)** Financial penalties imposed under a lease for excessive use, abnormal wear and tear or high mileage;

**(3)** Security deposits not returned by the lessor;

**(4)** Costs for extended warranties, Credit Life Insurance, Health, Accident or Disability Insurance purchased with the loan or lease; and

**(5)** Carry-over balances from previous loans or leases.

The following changes have been made to **SECTION III - PHYSICAL DAMAGE COVERAGE:**

**A. Towing and Labor**

Paragraph **A.2. Towing** under **SECTION III - PHYSICAL DAMAGE COVERAGE**, is deleted and replaced by the following:

**2. Towing and Labor**

We will pay towing and labor costs incurred up to the limits shown below, each time a covered "auto" classified and rated as a private passenger type, "light truck" or "medium truck" is disabled:

| Endorsement | CA 60 |
|---|---|

**Business Auto Optimum**

**a.** For private passenger type vehicles or "light trucks" we will pay to up $75 per disablement.  "Light trucks" are trucks that have a gross vehicle weight (GVW) of 10,000 pounds  or less.

**b.** For "medium trucks" we will pay up to $175 per disablement.  "Medium trucks" are trucks that have a gross vehicle weight (GVW) of 10,001-20,000 pounds.

However,  the labor must be performed  at the place of disablement.

**B. Physical Damage Increased Transportation Expense Coverage**

Coverage  for temporary  transportation expense under Paragraph  **A.4.a.** Coverage Extension  is increased  to $50 per day, up to a maximum  limit of $1,000.

**C. Glass Repair - Waiver of Deductible**

The following  is added  to Paragraph  **D. Deductible**  of SECTION III - PHYSICAL DAMAGE  COVERAGE:

No deductible  applies  to glass damage  if the glass  is repaired  rather  than replaced.

**SECTION IV - BUSINESS  AUTO CONDITIONS**

**A. Unintentional  Failure to Disclose  Hazards**

Paragraph  **B., General  Conditions** , is amended by adding  the following:

**9.** **Unintentional  Failure to Disclose  Hazards**

If you unintentionally   fail to disclose  any hazards  or exposures  existing  as of the inception  date of the Business  Auto Coverage  Form, the coverage  afforded  by this policy  will not be prejudiced.   However, you must report  the undisclosed  hazard  or exposure  as soon as practicable  after its discovery,  and we have the right to collect additional   premium  for same.

**B. Waiver Of Transfer Of Rights Of Recovery Against Others To Us - Automatic Status Under An Insured Contract**

Paragraph   **A.5. Transfer  Of Rights  Of Recovery  Against  Others  To Us** is amended by the addition  of the following  paragraphs:

**a.** We waive any right of recovery  we may have against  any person  or organization described  in Paragraph   **b.** below because of payments  we make for "bodily injury"  or "property  damage"  caused by an "accident" and resulting   from the ownership, maintenance,   or use of a covered  "auto" in performance   of work being performed under  a contract  with that person  or organization.

**b.** The waiver  applies  only to a person  or organization   with whom  you have a written  contract  or agreement  in which you are required   to waive  the rights of recovery under  this policy, but only to the extent  that subrogation   is waived  prior to the "accident"  or the "loss" under  a contract with that person  or organization.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DRIVE OTHER CAR COVERAGE - BROADENED COVERAGE FOR NAMED INDIVIDUALS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: | Countersigned By: |
|---|---|
| Named Insured: | (Authorized Representative) |

**SCHEDULE**

| Liability | | Auto Medical Payments | | Uninsured Motorists | |
|---|---|---|---|---|---|
| **Limit** | **Premium** | **Limit** | **Premium** | **Limit** | **Premium** |
| $1,000,000 | $    35 | $5,000 | $     1 | | $ |

| Underinsured Motorists | | Physical Damage | |
|---|---|---|---|
| **Limit** | **Premium** | **Comprehensive** | **Collision** |
| | $ | $     6 | $    18 |

| Name of Individual(s) | |
|---|---|
| PHILLIP NEFF | |

Note    When uninsured motorists is provided at limits higher than the basic limits required by a financial responsibility law, underinsured motorists is included, unless otherwise noted. If Underinsured Motorists Coverage is provided as a separate coverage, make appropriate entry in the Schedule above.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** This endorsement changes only those coverages where a premium is shown in the Schedule.

**B. Changes In Liability Coverage**

**1.** Any "auto" you don't own, hire or borrow is a covered "auto" for Liability Coverage while being used by any individual named in the Schedule or by his or her spouse while a resident of the same household except:

**a.** Any "auto" owned by that individual or by any member of his or her household.

**b.** Any "auto" used by that individual or his or her spouse while working in a business of selling, servicing, repairing or parking "autos".

**2.** The following is added to **Who Is An Insured:**

Any individual named in the Schedule and his or her spouse, while a resident of the same household, are "insureds" while using any covered "auto" described in Paragraph **B.1.** of this endorsement.

**C. Changes In Auto Medical Payments And Uninsured And Underinsured Motorists Coverages**

The following is added to **Who Is An Insured:**

Any individual named in the Schedule and his or her "family members" are "insured" while "occupying" or while a pedestrian when being struck by any "auto" you dont own except:

Any "auto" owned by that individual or by any "family member".

**D. Changes In Physical Damage Coverage**

Any private passenger type "auto" you don't own, hire or borrow is a covered "auto" while in the care, custody or control of any individual named in the Schedule or his or her spouse while a resident of the same household except:

**1.** Any "auto" owned by that individual or by any member of his or her household.

**2.** Any "auto" used by that individual or his or her spouse while working in a business of selling, servicing, repairing or parking "autos".

**E. Additional Definition**

As used in this endorsement:

"Family member" means a person related to the individual named in the Schedule by blood, marriage or adoption who is a resident of the individual's household, including a ward or foster child.

POLICY NUMBER:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EQUIPMENT BREAKDOWN PROTECTION COVERAGE FORM
FARM COVERAGE PART
STANDARD PROPERTY POLICY

## SCHEDULE

The **Exception Covering Certain Fire Losses** (Paragraph **D.**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy:

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
| Georgia, Illinois | |
| | |
| | |
| | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Applicability Of The Provisions Of This Endorsement**

1. The provisions of this endorsement become applicable commencing on the date when any one or more of the following first occurs. But if your policy (meaning the policy period in which this endorsement applies) begins after such date, then the provisions of this endorsement become applicable on the date your policy begins.

   a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this Coverage Form, Coverage Part or Policy; or

 © ISO Properties, Inc., 2005

b. A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

(1) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

(2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

(3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

2. If the provisions of this endorsement become applicable, such provisions:

a. Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to loss or damage from an incident(s) of terrorism (however defined) that occurs on or after the date when the provisions of this endorsement become applicable; and

b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.

3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.

B. The following definition is added and applies under this endorsement wherever the term terrorism is enclosed in quotation marks.

"Terrorism" means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

a. Use or threat of force or violence; or

b. Commission or threat of a dangerous act; or

c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

a. The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

b. It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

C. The following exclusion is added:

EXCLUSION OF TERRORISM

We will not pay for loss or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

 © ISO Properties, Inc., 2005

5. The total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions. Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold is exceeded.

With respect to this Item **C.5.,** the immediately preceding paragraph describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Coverage Part or Policy.

**D. Exception Covering Certain Fire Losses**

The following exception to the Exclusion Of Terrorism applies only if indicated and as indicated in the Schedule of this endorsement.

If "terrorism" results in fire, we will pay for the loss or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements that apply to those coverage forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

**E. Application Of Other Exclusions**

1. When the Exclusion Of Terrorism applies in accordance with the terms of **C.1.** or **C.2.,** such exclusion applies without regard to the Nuclear Hazard Exclusion in this Coverage Form, Coverage Part or Policy.

2. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss or damage which would otherwise be excluded under this Coverage Form, Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 □

| Endorsement | IL 43 |
|---|---|

**Common Policy Conditions Changes**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER COMMON POLICY CONDITIONS - IL 00 17.**

The following condition is added:

**G. Our Right to Use Other Resources**

You and any insured seeking coverage under this policy agree that we have the right to utilize outside sources, vendors, experts, consultants, and software tools of our choosing to assist us in underwriting, pricing, and issuing our insurance policies and to assist us in adjusting claims.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraph **A.1.** of the **Cancellation** Common Policy Condition is replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

   **a.** If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

   **b.** If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation.

Our notice will state the effective date of cancellation, which will be the later of the following:

   **(1)** 10 days from the date of mailing or delivering our notice, or

   **(2)** The effective date of cancellation stated in the first Named Insured's notice to us.

**B.** Paragraph **A.5.** of the **Cancellation** Common Policy Condition is replaced by the following:

5. **Premium Refund**

   **a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

   **b.** If we cancel, the refund will be pro rata, except as provided in **c.** below.

   **c.** If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

   **d.** If the first Named Insured cancels, the refund may be less than pro rata.

   **e.** The cancellation will be effective even if we have not made or offered a refund.

 ' ISO Properties, Inc., 2006

C. The following is added to the **Cancellation** Common Policy condition and supersedes any other provisions to the contrary:

If we decide to:

1. Cancel or nonrenew this policy; or

2. Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

3. Change any policy provision which would limit or restrict coverage;

Then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us. Except as applicable as described in Paragraph **D.** below, we will mail or deliver notice at least:

1. 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

2. 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

3. 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

D. The following provisions apply to insurance covering residential real property only provided under the:

Capital Assets Program (Output Policy) Coverage Part;

Commercial Property Coverage Part;

Farm Coverage Part;

if the named insured is a natural person.

With respect to such insurance, the following is added to the **Cancellation** Common Policy Condition and supersedes any provisions to the contrary:

1. When this policy has been in effect for 60 days or less and is not a renewal with us, we may cancel for any reason by notifying the first Named Insured at least 10 days before the date cancellation takes effect.

2. When this policy has been in effect for more than 60 days, or at any time if it is a renewal with us, we may cancel only for one or more of the following reasons:

   a. Nonpayment of premium, whether payable to us or to our agent;

   b. Upon discovery of fraud, concealment of a material fact, or material misrepresentation made by or with the knowledge of any person insured under this policy in obtaining this policy, continuing this policy or presenting a claim under this policy;

   c. Upon the occurrence of a change in the risk which substantially increases any hazard insured against; or

   d. Upon the violation of any of the material terms or conditions of this policy by any person insured under this policy.

We may cancel by providing notice to the first Named Insured at least:

- 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

- 45 days before the effective date of cancellation if we cancel for any of the reasons listed in **b., c.** or **d.** above.

 ' ISO Properties, Inc., 2006

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | IL 19 |
|---|---|

**Policy Number: CPP    2083060**

**Manufacturers' Optimum Endorsement**

### THIS ENDORSEMENT  CHANGES  THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement   modifies  insurance  provided  under  the following:

    BUILDING  AND PERSONAL  PROPERTY COVERAGE  FORM
    BUSINESS COMPUTER  COVERAGE  FORM
    CAUSES OF LOSS - SPECIAL  FORM
    COMMERCIAL  GENERAL  LIABILITY COVERAGE  FORM
    COMMERCIAL  CRIME COVERAGE  FORM (LOSS SUSTAINED)

The following  is a summary  of the coverage  modifications,  extensions  and additions  provided  in this endorsement.   The limits, unless  stated otherwise,  and deductibles  shown  below apply at each designated  location.  If a limit is shown  elsewhere  in the policy for any of these coverages,  then that limit applies  in addition  to the limits shown  below. If a different  deductible  amount  is shown in the policy for any of these coverages,  then that deductible  will be the applicable  deductible.

A separate  limit of $500,000 applies  on a **Per Loss Aggregate**  basis to those coverages  shown  below that are designated  **PLA**. This **Per Loss Aggregate**  Limit applies  separately  at each location  designated  on the policy Declarations.  At the time of loss, the first Named  Insured  may elect to apportion  this **Per Loss Aggregate**  Limit of Insurance  to any one or any combination  of those coverages,  but under  no circumstances   will the aggregate  apportionment   be permitted  to exceed  $500,000 at any one designated location.  For complete  details of the coverages  provided,  refer to the specific  policy language.

### BUILDING  AND BUSINESS  PERSONAL  PROPERTY COVERAGES  SUBJECT TO THE PER LOSS AGGREGATE

| LIMIT | DEDUCTIBLE | SUBJECT  OF INSURANCE | PAGE |
|---|---|---|---|
| PLA | Property   Deductible | Accounts   Receivable | 8 |
| PLA | None | Claim  Expense | 9 |
| PLA | Property   Deductible | Computer | 17 |
| PLA | Property   Deductible | Consequential    Loss Assumption | 14 |
| PLA | Property   Deductible | Fine  Arts  Not  Held  For Sale | 13 |
| PLA | None | Fire  Department    Service  Charge | 4 |
| PLA | Property   Deductible | Mobile  Equipment   On Premises | 14 |
| PLA | Property   Deductible | Personal  Effects  And  Property  Of Others (Maximum   Of $1,000 Per Employee  For Loss Or Damage  By Theft) | 11 |
| PLA | None | Recharge  Of Fire Protection   Equipment | 8 |
| 10% of Loss Subject  To PLA | None | Reward  Payment | 7 |
| PLA | Property   Deductible | Utility  Services  - Direct  Damage | 15 |
| PLA | Property   Deductible | Valuable  Papers  And Records  (Other  Than Electronic   Data) | 12 |

| Endorsement | IL 19 |
|---|---|

Policy Number: CPP    2083060

**Manufacturers' Optimum Endorsement**

## BUILDING AND BUSINESS PERSONAL PROPERTY COVERAGES SUBJECT TO A SPECIFIC LIMIT OF INSURANCE

| LIMIT | DEDUCTIBLE | SUBJECT OF INSURANCE | PAGE |
|---|---|---|---|
| $50,000 Building | Property Deductible | Appurtenant Structures | 15 |
| $5,000 BPP | Property Deductible | Appurtenant Structures | 16 |
| $10,000 | Property Deductible | Backup Of Sewer And Drains | 10 |
| $25,000 | Property Deductible | Brands And Labels | 14 |
| $50,000 | Property Deductible | Changes In Temperature Or Humidity | 14 |
| $25,000 | None | Computer Fraud | 11 |
| Included in BPP Limit | Property Deductible | Contents Of Fuel Storage Tanks | 4 |
| $25,000 Per Occurrence; $100,000 Annual Aggregate | Property Deductible | Contractual Penalties | 10 |
| $250,000 | Property Deductible | Dies, Patterns And Molds | 16 |
| $25,000 | Property Deductible | Debris Removal | 4 |
| $50,000 | None | Employee Theft Including ERISA | 10 |
| $25,000 | None | Forgery Or Alteration | 9 |
| 10% of Bldg. up to $250,000 | Property Deductible | Foundations Of Machinery And Equipment | 10 |
| Included In Building Limit | Property Deductible | Fuel Storage Tanks | 4 |
| $25,000 | Property Deductible | Precious Metals | 16 |
| $1,000 | None | Lock And Key Replacement | 10 |
| $25,000 In/Out | None | Money And Securities | 8 |
| $1,000,000 | Property Deductible | Newly Acquired Or Constructed Property- Building - 180 Days To Report | 11 |
| $500,000 | Property Deductible | Newly Acquired Or Constructed Property- Business Personal Property - 180 Days To Report | 11 |
| $5,000 | Property Deductible | Non-Owned Detached Trailers | 13 |
| Included | Property Deductible | Ordinance Or Law Contingent Liability | 6 |
| $50,000 | Property Deductible | Ordinance Or Law Increased Cost Of Construction | 6 |
| $50,000 | Property Deductible | Ordinance Or Law Demolition Cost | 6 |
| $25,000 | Property Deductible | Outdoor Property | 13 |
| $25,000 | Property Deductible | Pollutant Clean Up | 4 |
| Included | | Premises Redefined To 1,000 Feet | 4 |
| 90 Days | None | Preservation Of Property | 4 |
| $100,000 - $25,000 per salesperson | Property Deductible | Property Off Premises | 12 |
| $100,000 | Property Deductible | Property In Transit | 12 |

| Endorsement | IL 19 |
|---|---|

Policy Number: CPP    2083060

**Manufacturers' Optimum Endorsement**

| LIMIT | DEDUCTIBLE | SUBJECT OF INSURANCE | PAGE |
|---|---|---|---|
| $25,000 per Salesperson | | | |
| 25% Of BPP Subject To PLA | Property   Deductible | Seasonal  Increase | 16 |
| Included | Property   Deductible | Selling  Price  Valuation  Of Stock | 16 |
| $25,000 | Property   Deductible | Signs  Whether  Attached  To A Building  Or Not | 16 |

### COMMERCIAL  GENERAL  LIABILITY  COVERAGES

| LIMIT | DEDUCTIBLE | SUBJECT OF INSURANCE | PAGE |
|---|---|---|---|
| Included | None | Additional   Insured  -- Broad  Form  Vendors | 19 |
| Included | None | Additional   Insured  - Required  By Contract, Agreement  Or Permit | 20 |
| Included | None | Additional   Insured  Lessor Of Leased  Equipment | 21 |
| Included | None | Blanket  Primary  And Noncontributory | 21 |
| $2,500 | None | Bonds | 19 |
| Included | None | Broad  Form  Named  Insured | 21 |
| Included | None | Coverage  For Injury  To Leased  Workers | 24 |
| $25,000 | None | Damage  To Your  Products | 18 |
| Included | None | Duties  In The Event  Of Occurrence, Offense,  Claim  Or Suit-Redefined | 22 |
| $500 per  day | None | Earnings | 19 |
| $10,000 | None | Electronic  Data  Liability | 24 |
| Included | None | Incidental   Medical   Malpractice | 23 |
| $300,000 | None | Increased   Limit  For Damage  To Premises Rented  To You | 18 |
| Included | None | Liberalization   Clause | 23 |
| $1,500 | $100 | Lost  Key  Coverage | 23 |
| $10,000 | None | Medical  Payments | 19 |
| Included | None | Mobile  Equipment   Redefined  To 1,000 Pounds | 22 |
| Included | None | Newly  Formed  Or Acquired  Organizations- 180 Days  To Report | 22 |
| Included | None | Non-Owned   Aircraft  Hired, Chartered Or Loaned  With  Paid  Crew | 17 |
| Included | None | Non-Owned   Watercraft  Redefined  To 51 Feet | 17 |
| Included | None | Property  Damage  To Borrowed  Equipment | 17 |
| $25,000 | None | Property  Damage  To Customers  Goods | 17 |
| Included | None | Unintentional   Failure  To Disclose  Hazards | 22 |
| Included | None | Waiver  Of Transfer  Of Rights  Of Recovery  Against  Others  To Us | 22 |

| Endorsement | IL 19 |
|---|---|

**Manufacturers' Optimum Endorsement**

The following changes apply to the BUILDING AND PERSONAL PROPERTY COVERAGE FORM.

I.  The following amends specified provisions stated under **Section A. Coverage** :

1.  Item **1. Covered Property a. Building (5)(b)** is replaced with the following:

    (b) Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

2.  The following are added under item **a. Building** as **Covered Property** :

    (6) Fuel tanks, including the piping, pumps and equipment connected to it, installed above or below ground.

3.  The first paragraph of item **1. Covered Property b. Your Business Personal Property** is replaced with the following:

    b.  **Your Business Personal Property**
        located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property - Separation of Coverage form.

4.  The following is added under item **b. Your Business Personal Property** :

    (8) Contents of any fuel tanks, including the piping, pumps and equipment connected to it, installed above or below ground.

    (9) Personal Property Of Others that is:

        (a) In your care, custody or control; and

        (b) located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises.

5.  Item **1.c. Personal Property of Others** is deleted.

II. The following amends specified provisions stated under **Section A. Coverage 4. Additional Coverages** :

1.  Item **a. Debris Removal (4)** is increased from $10,000 to $25,000.

2.  Item **b. Preservation of Property (2)** is replaced with the following:

    (2) Only if the loss or damage occurs within 90 days after the property is first moved.

3.  Item **c. Fire Department Service Charge** is replaced with the following:

    c.  **Fire Department Service Charge**

        When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to the $500,000 Per Loss Aggregate Limit for certain coverages specified in this endorsement for your liability for fire department service charges:

        (1) Assumed by contract or agreement prior to loss; or

        (2) Required by local ordinance.

        No Deductible applies to this Additional Coverage.

4.  The last paragraph of Item **d. Pollutant Clean Up And Removal** is replaced with the following:

    The most we will pay under this Additional Coverage for each described premises is $25,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

| Endorsement | IL 19 |
|---|---|

**Manufacturers' Optimum Endorsement**

5. Item **e. Increased Cost Of Construction** is replaced in its entirety with the following:

**e. Ordinance Or Law**

(1) The coverages provided by this endorsement apply only if **(1)(a)** and **(1)(b)** are satisfied and they are then subject to the qualifications set forth in **(1)(c)**.

(a) The ordinance or law:

(i) Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

(ii) is in force at the time of loss.

But coverage under this endorsement applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered.

(b) (i) The building sustains direct physical damage that is covered under this policy and such damage results in enforcement of the ordinance or law; or

(ii) The building sustains both direct physical damage that is covered under this policy and direct physical damage that is not covered under this policy, and the building damage in its entirety results in enforcement of the ordinance or law.

(iii) But if the building sustains direct physical damage that is not covered under this policy, and such damage is the subject of the ordinance or law, then there is no coverage under this endorsement even if the building has also sustained covered direct physical damage.

(c) In the situation described in **(1)(b)(ii)** above, we will not pay the full amount of loss otherwise payable under the terms of the coverages provided by this endorsement. Instead, we will pay a proportion of such loss; meaning the proportion that the covered direct physical loss bears to the total direct physical damage.

However, if the covered direct physical damage, alone, would have resulted in enforcement of the ordinance or law, then we will pay the full amount of loss otherwise payable under the terms of this endorsement.

(2) We will not pay under this endorsement for:

(a) Enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence of, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

(b) The costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

| Endorsement | IL 19 |
| --- | --- |

**Manufacturers' Optimum Endorsement**

**(3)** Coverage

**(a)** With respect to the building that has sustained covered direct physical damage, we will pay for the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires the demolition of undamaged parts of the same building.

This Additional Coverage is included within the Limit of Insurance shown in the Declarations as applicable to the covered building. This does not increase the Limit of Insurance.

**(b)** With respect to the building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property.

The most we will pay for loss or damage under this **Additional Coverage, e.(3)(b)** is $50,000 at each described premises. This is additional insurance.

**(c) (1)** With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:

**(i)** Repair or reconstruct damaged portions of that building; and/or

**(ii)** Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

when the increased cost is a consequence of enforcement of the minimum requirements of the ordinance or law.

However:

**(i)** This additional coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

**(ii)** We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

**(2)** When a building is damaged or destroyed and **e.(3)(c)** applies to that building, coverage for the increased cost of construction also applies to repair or reconstruction of the following subject to the same conditions stated in **e.(3)(c)**:

**(i)** The cost of excavations, grading, backfilling and filling;

**(ii)** Foundation of the building;

**(iii)** Pilings; and

**(iv)** Underground pipes, flues and drains.

The items listed in **(2)(i)** through **(2)(iv)** above are deleted from Property Not Covered, but only with respect to the coverage described in this provision **(c)(2)**.

We will not pay for the increased cost of construction:

| Endorsement | IL 19 |
|---|---|

**Manufacturers' Optimum Endorsement**

(i) Until the property is actually repaired or replaced, at the same or another premises; and

(ii) Unless repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

The most we will pay for loss or damage under this **Additional Coverage, e.(3)(c)** is $50,000 at each described premises. This is additional insurance.

**(4)** If the property is repaired or replaced at the same premises or you elect to rebuild at another premises, we will not pay more than:

**(a)** The amount you actually spend to demolish and clear the site at the described premises; and

**(b)** The increased cost to repair, rebuild or construct the property at the same premises.

**(5)** If the ordinance or law requires relocation to another premises we will not pay more than:

**(a)** The amount you actually spend to demolish and clear the site at the described premises; and

**(b)** The increased cost to rebuild or construct the property at the new premises.

**(6)** Neither the Coinsurance Additional Condition nor a deductible applies to **e.(3)(b)** and **e.(3)(c)**.

**(7)** The terms of this Additional Coverage apply separately to each

covered building.

**(8)** Under this Additional Coverage we will not pay for costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was damaged; and

**(b)** You failed to comply with.

**(9)** This Additional Coverage is not subject to the terms of the Ordinance or Law Exclusion, or Valuation Conditions, to the extent that such exclusions or limitations would conflict with the provisions of this Additional Coverage.

**6.** The following Additional Coverages are added:

**f. Arson, Theft And Vandalism Rewards**

We will pay on behalf of the insured for information which leads to a conviction in connection with:

**(1)** A fire loss covered under this policy caused by arson;

**(2)** An actual or attempted theft of Money or other Covered Property; or

**(3)** A vandalism loss to the described premises.

The limit for this Additional Coverage is the actual amount of the reward payment but not greater than 10% of the actual loss, subject to the $500,000 Per Loss Aggregate Limit for certain coverages specified in this endorsement.

This is additional insurance. The Coinsurance Additional Condition and Deductible do not apply to this Additional Coverage.

| Endorsement | IL 19 |
|---|---|

**Policy Number: CPP    2083060**

**Manufacturers' Optimum Endorsement**

**g. Recharge Of Fire Protection Equipment**

We will pay your cost to recharge or replace, whichever is less, your fire extinguishers or automatic fire protection equipment when they are discharged as a result of fighting a fire caused by a Covered Cause of Loss, on or within 1,000 feet of the described premises.

The limit for this Additional Coverage is subject to the $500,000 Per Loss Aggregate Limit for certain coverages specified in this endorsement.

No Deductible applies to this Additional Coverage.

**h. Money And Securities**

Refer to **Insuring Agreements 3. Inside The Premises-Theft Of Money And Securities** and **5. Outside The Premises of the Commercial Crime Coverage Form** attached to this policy for the applicable coverage.

The coverage provided is subject to the exclusions and provisions of the Commercial Crime Coverage Form.

The most we will pay for loss under this coverage is $25,000 for **Insuring Agreement 3** and $25,000 for **Insuring Agreement 5** or the limit of insurance for **Insuring Agreements 3 and 5** shown in the Declarations, whichever is higher.

**i. Accounts Receivable**

We will pay for expenses you incur due to direct physical loss or damage to your accounts receivable records caused by or resulting from a Covered Cause of Loss at a location described in the Declarations.

**(1)** The expenses we will pay include:

**(a)** Amounts due from your customers that you are unable to collect because of direct physical loss or damage to your accounts receivable records;

**(b)** Interest charges on any loan required to offset amounts you are unable to collect because of direct physical loss or damage to your accounts receivable records, pending our payment of these amounts;

**(c)** Collection expenses in excess of your normal collection expenses that are made necessary because of direct physical loss or damage to your accounts receivable records; and

**(d)** Other reasonable expenses that you incur to reestablish your records of accounts receivable.

**(2)** We will not pay expenses for loss or damage under this Additional Coverage caused by or resulting from any of the following:

**(a)** Bookkeeping, accounting or billing errors or omissions;

**(b)** Electrical or magnetic injury, disturbance or erasure of electronic "Data" or "Media" records, except as a result of direct physical loss caused by lightning;

**(c)** Alteration, falsification, conceal- ment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of money, securities or other property; or

**(d)** Unauthorized instructions to transfer property to any person or any place.

| Endorsement | IL 19 |
|---|---|

**Policy Number: CPP   2083060**

**Manufacturers' Optimum Endorsement**

**(3)** We will not pay expenses for loss or damage under this Additional Coverage for an audit of records or any inventory computation to prove its factual existence.

The limit for this Additional Coverage is subject to the $500,000 Per Loss Aggregate Limit for certain coverages specified in this endorsement.

The following loss conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**(1)** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss, the following method will be used:

**(a)** Determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurred; and

**(b)** Adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

**(2)** The following will be deducted from the total amount of accounts receivable, regardless of how that amount is established:

**(a)** The amount of the accounts for which there is no loss or damage;

**(b)** The amount of the accounts you are able to reestablish and collect;

**(c)** An amount to allow for probable bad debts that you are normally unable to collect; and

**(d)** All unearned interest and service charges.

Additional Definitions:

As used in this Additional Coverage **i.**:

"Data" means facts, concepts or instructions that are converted into a form usable in data processing operations. This includes computer programs.

"Media" means the materials on which data is recorded, such as magnetic tapes, discs, drums, paper tapes, cards and programs. This includes "data" stored on the media.

**j. Claim Expense**

**(1)** In the event of covered loss or damage, we will pay for all reasonable expenses you incur at our request to assist us in:

**(a)** The investigation of a claim or suit; or

**(b)** The determination of the amount of loss, such as taking inventory.

**(2)** We will not pay for:

**(a)** Expenses to prove that the loss or damage is covered;

**(b)** Expenses incurred under Section **E. Loss Conditions 2.** Appraisal; or

**(c)** Expenses incurred for examinations under oath, even if required by us.

The limit for this Additional Coverage is subject to the $500,000 Per Loss Aggregate Limit for certain coverages specified in this endorsement.

**k. Forgery Or Alteration**

Refer to **Insuring Agreement 2. Forgery Or Alteration** of the

| Endorsement | IL 19 |
|---|---|

**Manufacturers' Optimum Endorsement**

Commercial Crime Coverage Form, CR 00 21, attached to this policy for the applicable coverage. The coverage provided is subject to the exclusions and provisions of the Commercial Crime Coverage Form.

The most we will pay for loss under this coverage is $25,000 for **Insuring Agreement 2** or the limit of insurance for **Insuring Agreement 2** shown in the Declarations, whichever is higher.

**l. Employee Theft**

Refer to **Insuring Agreement 1. Employee Theft** of the Commercial Crime Coverage Form , CR 00 21, attached to this policy for the applicable coverage. The coverage provided is subject to the exclusions and provisions of the Commercial Crime Coverage Form.

The most we will pay for loss under this coverage is $50,000 for **Insuring Agreement 1** or the Limit of Insurance for **Insuring Agreement 1** shown in the Declarations, whichever is higher.

**m. Lock And Key Replacement**

We will pay up to $1,000 per occurrence for the cost to repair or replace the door locks and/or tumblers at the described premises due to theft of your door keys.

**n. Contractual Penalties**

We will pay for contractual penalties imposed by written contract between you and your customers. These penalties must:

**(a)** Result from your failure to deliver your product on time according to contract terms;

**(b)** Result from direct physical loss or damage to Covered Property by a Covered Cause of Loss; and

**(c)** Have been paid by you to your customer.

The most we will pay under this coverage is $25,000 per occurrence with a $100,000 annual aggregate limit.

**o. Foundations Of Machinery And Equipment**

We will pay up to 10% of the Building Limit of Insurance as shown in the Declarations, but not more than $250,000, for loss or damage to foundations of machinery and equipment caused by a Covered Cause of Loss.

We will not pay for loss or damage to foundations of buildings, structures or boilers as stated under Item **2.g. Property Not Covered** .

**p. Water That Backs Up From A Sewer Or Drain**

We will pay for direct physical loss of or damage to Covered Property caused by or resulting from:

**(1)** Water that backs up from a sewer or drain; or

**(2)** Water that enters into and overflows from within a:

**(a)** Sump pump;

**(b)** Sump pump well; or

**(c)** Other type systems;

designed to remove subsurface water which is drained from the foundation area.

The most we will pay for loss or damage in any one occurrence is $10,000 or the

| Endorsement | IL 19 |
|---|---|

**Policy Number: CPP    2083060**

**Manufacturers' Optimum Endorsement**

limit of insurance shown in the Schedule for **Water That Backs Up From A Sewer Or Drain** at each described premises.

**q. Computer Fraud**

Refer to **Insuring Agreement 6. Computer Fraud**, of the Commercial Crime Coverage Form, CR 00 21, attached to this policy for the applicable coverage. The coverage provided is subject to the exclusions and provisions of the Commercial Crime Coverage Form.

The most we will pay for loss under this coverage is $25,000 for **Insuring Agreement 6** or the limit of insurance for **Insuring Agreement 6** shown in the Declarations, whichever is higher.

**III. Section A. Coverage 5. Coverage Extensions** is replaced in its entirety with the following:

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1)** You may extend the insurance that applies to Building to apply to:

**(a)** Your new building while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $1,000,000 at each building.

**(2)** You may extend the insurance that applies to Your Business Personal Property to apply to that property at any location you construct or acquire other than at fairs or exhibitions. The most we will pay for loss or damage under this Extension is $500,000 at each building.

**(3)** Insurance under this Extension for each newly acquired or constructed property will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 180 days expire after you acquire or begin to construct the property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date construction begins or you acquire the property.

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to personal effects owned by you, your officers, your partners or members, your managers or your employees.

The limit for this Extension is subject to the $500,000 Per Loss Aggregate Limit

| Endorsement | IL 19 |
| --- | --- |

**Manufacturers' Optimum Endorsement**

for certain coverages specified in this endorsement. However, the most we will pay under this extension for loss or damage by theft of employees tools is $1,000 per employee. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered - Electronic Data.

**(2)** If the Causes of Loss - Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

**(3)** The limit for this Extension is subject to the $500,000 Per Loss Aggregate Limit for certain coverages specified in this endorsement.  We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and therefore coverage of such costs is not additional insurance.

**d. Property Off Premises**

You may extend the insurance provided by this Coverage Form to apply to your Covered Property that is temporarily at a location you do not own, lease or operate; in storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or that is in the care, custody or control of your salespersons. This Extension applies only if loss or damage is caused by a Covered Cause of Loss.

This Extension does not apply to Covered Property in or on a vehicle.

The most we will pay for loss or damage under this Extension is $100,000 but not more than:

**(1)** $25,000 per salesperson;  or

**(2)** $50,000 at any fair, trade show or exhibition.

**e. Property In Transit**

You may extend the insurance provided by this Coverage Form to apply to your Covered Property (including property that is in the care, custody or control of your salesperson) in transit in or on a motor vehicle you own, lease or operate while between points within the coverage territory and more than 1,000 feet from the described premises. Loss or damage must be caused by or result from one of the following causes of loss:

**(1)** Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

**(2)** Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the road bed.

| Endorsement | IL 19 |
| --- | --- |

**Manufacturers' Optimum Endorsement**

**(3)** Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

The most we will pay for loss or damage under this Extension is $100,000, but not more than $25,000 per salesperson, per occurrence.

**f.  Non-Owned  Detached  Trailers**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

**(a)** The trailer is used in your business;

**(b)** The trailer is in your care custody or control at the premises described in the Declarations; and

**(c)** You have a contractual responsibility to pay for loss or damage to the trailer.

**(2)** We will not pay for any loss or damage that occurs:

**(a)** While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle is in motion.

**(b)** During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or a motorized conveyance.

**(3)** The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

**(4)** This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g.  Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than "stock" of trees, shrubs or plants), including debris removal expense, caused by or resulting from any of the following causes of loss:

**(1)** Fire;
**(2)** Lightning;
**(3)** Explosion;
**(4)** Riot or Civil Commotion; or
**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $25,000. This limit applies to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

**h.  Fine Arts**

You may extend the insurance provided by this Coverage Form to apply to Fine Arts owned by you or in your care, custody or control, that are not held for sale by you, at the premises in the Declarations.

As used in this Extension, Fine Arts means paintings, etchings, pictures, tapestries, art glass windows, and other bona fide works of art or rarity, historical value or artistic merit.

The limit for this coverage Extension is subject to the $500,000 Per Loss Aggregate Limit for certain coverages specified in this endorsement.

| Endorsement | IL 19 |
|---|---|

**Manufacturers' Optimum Endorsement**

In the event of a covered loss, payment for Fine Arts will be valued at the Market Value of the item(s) at the time of loss.

Coverage does not extend to Fine Arts at any fair, trade show or exhibition.

**i. Consequential Loss**

You may extend the insurance provided by this Coverage Form to pay the reduction in value of the remaining parts of "stock" when the reduction is caused by direct physical loss or damage from a Covered Cause of Loss to other parts of "stock" at the described premises.

In the application of the Coinsurance Additional Condition, the value of "stock" at any location to which this Extension applies includes the additional value that it represents in "stock" at other locations.

The limit for this Coverage Extension is subject to the $500,000 Per Loss Aggregate Limit for certain coverages specified in this endorsement.

**j. Brands And Labels**

If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss, you may extend the insurance that applies to Your Business Personal Property to pay expenses you incur to:

**(1)** Stamp "salvage" on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

**(2)** Remove the brands or labels, if doing so will not physically damage the merchandise. You must relabel the merchandise or its containers to comply with the law.

The most we will pay under this Extension is $25,000 for any one occurrence during the policy period.

**k. Changes In Temperature Or Humidity**

We will pay up to $50,000 at each described premises for direct physical loss or damage to Your Business Personal Property caused by a change in temperature or humidity resulting from a mechanical breakdown or malfunction of heating, refrigerating, cooling or humidity control equipment or a "power outage" at the described premises.

"Power Outage" means change in temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the described premises due to conditions beyond your control.

This Coverage Extension does not apply to:

**(1)** Loss or damage to heating, refrigerating, cooling or humidity control equipment; or

**(2)** Your Business Personal Property covered under the Property Off Premises Extension.

In the event that there is Equipment Breakdown insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from the Equipment Breakdown insurance, whether you can collect on it or not. But we will not pay more than the limit of insurance provided by this Extension.

The Coinsurance Additional Condition does not apply to this Extension.

**l. Mobile Equipment On Premises**

You may extend the Insurance provided

| Endorsement | IL 19 |
|---|---|

**Policy Number: CPP    2083060**

**Manufacturers' Optimum Endorsement**

by this Coverage Form to apply to your mobile equipment such as fork lifts, lawn mowers, tractors and similar vehicles, including equipment which you rent.

This Extension does not apply to vehicles which are licensed for use on public roads, or which are insured elsewhere.

The limit for this Coverage Extension is subject to the $500,000 Per Loss Aggregate Limit for certain coverages specified in this endorsement.

**m. Utility Services - Direct Damage**

You may extend the insurance provided by this Coverage Form to pay for loss or damage to Covered Property caused by an interruption in utility service to the described premises. The interruption in utility service must result from direct physical loss or damage by a Covered Cause of Loss to Utility Property. Utility Property includes water supply property, communication supply property and power supply property. Such property must be located outside of a covered building described in the Declarations.

**Exception:**

Coverage under this endorsement for loss or damage to Covered Property does not apply to loss or damage to electronic data, including destruction or corruption of electronic data. The term electronic data has the meaning set forth in the Coverage Form to which this endorsement applies.

As used in this Extension, **Utility Services** means:

**(1) Water Supply Services** , meaning the following types of property supplying water to the described premises:

**(a)** Pumping stations; and

**(b)** Water mains.

**(2) Communication Supply Services** , meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

**(a)** Communication transmission lines, including fiber optic transmission lines;

**(b)** Coaxial cables; and

**(c)** Microwave radio relays except satellites.

**(3) Power Supply Services** , meaning the following types of property supplying electricity, steam or gas to the described premises:

**(a)** Utility generating plants;
**(b)** Switching stations;
**(c)** Substations;
**(d)** Transformers;   and
**(e)** Transmission lines.

The limit of insurance for this Extension is subject to the $500,000 Per Loss Aggregate Limit for certain coverages specified in this endorsement. Loss or damage to two or more Utility Properties arising out of the same occurrence will be considered one occurrence

**n. Appurtenant Structures**

You may extend the insurance that applies to Building to apply to your storage buildings, your garages and your other appurtenant structures, except outdoor fixtures, at the described premises. The most we will pay for Building loss or damage under this extension is $50,000.

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | IL 19 |
|---|---|

**Manufacturers' Optimum Endorsement**

You may extend the insurance that applies to Business Personal Property to apply to such property in your storage buildings, your garages and your other appurtenant structures at the described premises. The most we will pay for Business Personal Property under this Extension is $5,000

**IV. Section C. Limits Of Insurance** is replaced in its entirety with the following:

**C. Limits Of Insurance**

1. The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

2. The most we will pay for loss or damage to signs, whether or not attached to a building , is $25,000 per sign in any one occurrence.

3. The Limit of Insurance for Business Personal Property stated in the Declarations will automatically increase by 25% to provide for seasonal variations. This seasonal increase is subject to the Per Loss Aggregate Limit.

4. Except as otherwise specified, the limits applicable to Additional Coverages and to Coverage Extensions are in addition to the Limits of Insurance.

5. Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

   **a.** Preservation of Property;

   **b.** Foundations of Machinery and Equipment.

**V.** The following amends specified provisions stated under **Section E. Loss Conditions** :

1. Item **7. Valuation c.** "stock" is replaced with the following:

**c.** We will determine the value of "stock" you own in the event of loss or damage at:

   **(1)** The selling price, as if no loss or damage occurred;

   **(2)** Less discounts and expenses you otherwise would have had.

The following changes apply to the **CAUSES OF LOSS - SPECIAL FORM** .

**VI.** The following amends specified provisions stated under **Section C. Limitations** :

1. Item **3.** is replaced with the following:

**3.** The special limit shown for each category, **a.** through **d.** below, is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are:

   **a.** $2,500 for furs, fur garments and garments trimmed with fur.

   **b.** $25,000 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

   **c.** $250,000 for patterns, dies, molds and forms.

   **d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

   These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

   This limitation, **C.3.**, does not apply to Business Income coverage or to Extra Expense coverage.

| Endorsement | IL 19 |
|---|---|

**Policy Number: CPP    2083060**

**Manufacturers' Optimum Endorsement**

**VII.** Under Section **F. Additional Coverage Extension** , Item **1. Property In Transit** is deleted in its entirety.

The following changes apply to the BUSINESS COMPUTER COVERAGE FORM as specified.

**VIII.** We will pay for all risks of direct physical loss, subject to the exclusions and provisions contained in Business Computer Coverage Form IM 7203, which is attached to and made part of this policy.

The limit for this Coverage Extension is subject to the $500,000 Per Loss Aggregate Limit for certain coverages specified in this endorsement.

Coverage may be extended up to $10,000 while the Covered Property is anywhere within the policy territory, and while in transit; however, this Extension does not increase the limit of insurance at each described premises.

The following changes apply to the COMMERCIAL GENERAL LIABILITY COVERAGE FORM as specified.

**IX. Non-Owned Aircraft Hired, Chartered Or Loaned With Paid Crew**

**A.** Exclusion **g.** of **SECTION I - COVERAGE A** does not apply to an Aircraft:

  **1.** Not owned by any insured; and

  **2.** Hired, chartered or loaned with a paid crew.

**B.** The preceding provision (**IX.A.**) is not applicable if the insured has any other insurance for "bodily injury" or "property damage" liability applicable to loss covered under this provision, whether such other insurance is primary, excess or any other basis. In that case, this provision (**IX.**) does not provide any insurance.

**X. Non-Owned Watercraft**

**A.** Exclusion **g.** Item **(2)** of **SECTION I - COVERAGE A** is replaced with the following:

  **(2)** A watercraft you do not own that is:

    **(a)** Less than 51 feet long; and

    **(b)** Not being used to carry persons or property for a charge.

**XI. Property Damage To Borrowed Equipment**

**A.** Exclusion **j.** item **(4)** of **SECTION I - COVERAGE A** does not apply to "property damage" to borrowed equipment while that equipment is:

  **1.** Not being used to perform operations; and

  **2.** Away from an insured's premises.

**B.** The insurance afforded by this provision **XI.** is excess over any valid and collectible property insurance available to the insured.

**XII. Property Damage To Customers Goods**

**A.** Exclusion **j.** items **(3), (4)** and **(6)** of **SECTION I - COVERAGE A** do not apply to "property damage" to "customers goods" while on your premises.

**B.** The insurance afforded by this provision **XII.** is excess over any valid and collectible property insurance available to the insured.

**C.** The following is added to **SECTION V - DEFINITIONS** :

"Customers goods" means property of your customer on your premises for the purpose of being:

  **a.** Worked on; or

  **b.** Used in your manufacturing process.

**D.** The most we will pay for Property Damage to Customers Goods under this provision is $25,000 regardless of the number of:

| Endorsement | IL 19 |
| --- | --- |

**Manufacturers' Optimum Endorsement**

**1.** Insureds;

**2.** Claims made or "suits" brought; or

**3.** Persons or organizations making claims or bringing "suits".

$25,000 is the most we will pay for all claims or "suits" for Property Damage to Customers Goods under this provision during each consecutive annual period starting with the beginning of the policy period.

**XIII. Damage To Your Products**

**A.** Exclusion **k.** of **SECTION I - COVERAGE A** is replaced with the following:

**k.** "Property damage" to "your product" arising out of it or any part of it; but this exclusion does not apply to "damage to your products".

**B.** The following additional exclusions apply to this provision **XIII.**

This insurance does not apply to "damage to your products" because of:

**1.** Delay in the performance required by any contract or agreement;

**2.** Loss of market;

**3.** Loss caused intentionally or at the direction of any insured;

**4.** Wear, tear, gradual deterioration, adulteration, contamination, decomposition, chemical change, rust, corrosion, fungus, mold, decay, bacteria, or virus;

**5.** Loss of use of "your product"; or

**6.** Dishonest, fraudulent, criminal or malicious acts of any insured whether acting alone or in collusion with others.

**C.** The following is added to **SECTION V - DEFINITIONS:**

"Damage to your products" means sudden and accidental physical injury to "your product" or any part of "your product" arising out of "your product" or any part of "your product" which occurs:

**a.** After delivery and final acceptance of "your product" if "your product" is not installed or, if installed, is not installed by any insured; or

**b.** After installation and final acceptance of "your product" if "your product" is installed by any insured.

**D.** The following paragraph is added to **SECTION III - LIMITS OF INSURANCE:**

**8.** Subject to **5.** above, $25,000 is the most we will pay for each "occurrence" because of "damage to you products". All claims arising out of the same "damage to your products" shall be deemed to be a single "occurrence".

**9.** $25,000 is the most we will pay for the sum of all "occurrences" because of "damage to your products" during each consecutive annual period starting with the beginning of the policy period.

**XIV. Increased Damage To Premises Rented To You**

**A.** Under **SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** is amended as follows:

**1.** The fourth from the last paragraph of exclusion **j. Damage To Property** is replaced by the following:

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire, lightning, explosion, smoke, or leakage from automatic fire protection systems) to premises, including the contents of

| Endorsement | IL 19 |
|---|---|

**Manufacturers' Optimum Endorsement**

such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in **SECTION III - LIMITS OF INSURANCE** .

2. The last paragraph of **2. Exclusions** is replaced by the following:

Exclusions **c.** through **n.** do not apply to damage by fire, lightning, explosion, smoke, or leakage from automatic fire protection systems to premises while rented to you or temporarily occupied by you with the permission of the owner. A separate limit of insurance applies to Damage To Premises Rented To You as described in **SECTION III - LIMITS OF INSURANCE** .

B. Item **6.** of **SECTION III - LIMITS OF INSURANCE** is replaced with the following:

6. Subject to **5.** above, unless a higher limit is shown in the Declarations under Damage to Premises Rented to You Limit, $300,000 is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, lightning, explosion, smoke, or leakage from automatic fire protection systems to premises, while rented to you or temporarily occupied by you with permission of the owner.

**XV. Medical Payments Increased Limits**

The Medical Expense Limit shown in the Declarations is increased to $10,000.

**XVI. Supplementary Payments Increased Limits**

Under **SUPPLEMENTARY PAYMENTS - COVERAGE A** and **B** of **SECTION I;**

A. Item **1.b.** is replaced with the following:

b. Up to $2,500 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

B. Item **1.d.** is replaced with the following:

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off work.

**XVII. Additional Insured - Broad Form Vendors**

**SECTION II - WHO IS AN INSURED** is amended to include as an additional insured any person or organization (hereafter referred to as vendor) with whom you agreed, because of a written contract or written agreement to provide insurance, but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

1. The insurance afforded the vendor does not apply to:

a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

b. Any express warranty unauthorized by you;

c. Any physical or chemical change in the product made intentionally by the vendor;

| Endorsement | IL 19 |
|---|---|

**Manufacturers' Optimum Endorsement**

d. Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under the instructions from the manufacturer, and then repackaged in the original container;

e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business in connection with the sale of the product;

f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

g. Products, which after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

h. "Bodily injury' or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

(1) The exceptions contained in Subparagraphs **d.** or **f.**; or

(2) Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

2. This provision **XVII.** does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**XVIII. Additional Insured By Contract, Agreement Or Permit**

**SECTION II - WHO IS AN INSURED** is amended to include as an additional insured any person or organization with whom you agreed, because of a written contract, written agreement or permit, to provide insurance such as is afforded under this Coverage Form, but only with respect to your operations, "your work" or facilities owned or used by you.

1. This provision **XVIII.** does not apply:

a. Unless the written contract, agreement or permit has been issued prior to the "bodily injury", "property damage", or "personal and advertising injury";

b. To any person or organization included as an insured under provisions **XVII or XIX**.

c. To any person or organization included as an additional insured by an endorsement issued by us and made a part of this Coverage Form;

d. To any lessor of equipment:

(1) After the equipment lease expires; or

(2) If the "bodily injury", "property damage", or "personal and advertising injury" arises out of the sole negligence of the lessor.

e. To any engineer, architect or surveyor if the "bodily injury", "property damage" or "personal and advertising injury" arises out of the rendering or failure to render professional services by or for you, including, but not limited to:

(1) The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications, and;

| Endorsement | IL 19 |
| --- | --- |

**Policy Number: CPP    2083060**

**Manufacturers' Optimum Endorsement**

(2) Supervisory, inspection, architectural or engineering services.

**f.** To any:

(1) Owners or other interests from whom land has been leased; or

(2) Managers or lessors of premises if:

(a) The "occurrence" takes place after you cease to be a tenant in that premises; or

(b) The "bodily injury", "property damage", or "personal and advertising injury" arises out of structural alterations, new construction or demolition operations performed by or on behalf of the manager or lessor.

**XIX.** Additional Insured - Lessor Of Leased Equipment - Automatic Status When Required In Written Lease Agreement With You

**A. SECTION II - WHO IS AN INSURED** is amended to include as an additional insured any person or organization from whom you lease equipment when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person or organization. A person's or organization's status as an additional insured under this provision **XIX.** ends when their contract or agreement with you for such leased equipment ends.

**B.** With respect to the insurance afforded to these additional insureds, this insurance

does not apply to any "occurrence" which takes place after the equipment lease expires.

**C.** With respect to provision **XIX.**, insurance afforded to these additional insureds does not apply unless the written lease agreement has been executed prior to the "bodily injury", "property damage", or "personal and advertising injury".

**XX. Blanket Primary and Noncontributory**

**A. SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS,   4. Other Insurance** is amended by the addition of the following:

**c.  Primary and Noncontributory**

Insurance provided under this policy shall apply on a primary basis and shall not seek contribution from any other insurance available to an additional insured added to this policy by provisions **XVII.**, **XVIII.**, and **XIX.**, subject to the following conditions:

**1.** A written contract between the Named Insured and the additional insured requires this insurance to be primary and noncontributory to other insurance available to the additional insured.

**2.** Primary and noncontributory coverage for the additional insured under this provision **XX.** shall be provided subject to the same terms and conditions as the applicable insured provisions **XVII.**, **XVIII.**, and **XIX.**

All other terms and conditions of this policy remain unchanged.

**XXI. Broad Form Named Insured**

**SECTION II - WHO IS AN INSURED** is amended to include as an insured any organization or subsidiary thereof which is a

| Endorsement | IL 19 |
|---|---|

**Manufacturers' Optimum Endorsement**

legally incorporated entity of which you own a financial interest of more than 50 percent of the voting stock on the effective date of this endorsement.

This provision **XXI.** does not apply to injury or damage with respect to which an insured under this policy is also an insured under another policy or would be an insured under such policy but for its termination or upon exhaustion of its limits of insurance.

**XXII. Newly Formed Or Acquired Organizations**

A. Item **4.a.** of **SECTION II - WHO IS AN INSURED** is replaced with the following:

a Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

B. The following provision is added under item **4.** of **SECTION II - WHO IS AN INSURED** :

Coverage A does not apply to "damage to your products" that occurred before you acquired or formed the organization.

**XXIII. Duties In The Event Of Occurrence, Offense, Claim Or Suit - Redefined**

A. The requirement in condition **2.a.** of **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** that you must see to it that we are notified of an "occurrence" only applies when the "occurrence" or offense is known to:

1. You, if you are an individual;

2. A partner, if you are a partnership;

3. An officer of the corporation, if you are a corporation;

4. Your members and managers, if you are a limited liability company; or

5. Your insurance manager.

B. The requirement in condition **2.b.** of **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** that you must see to it that we receive written notice of a claim or "suit" as soon as practicable will not be considered breached unless the breach occurs after such claim or "suit" is known to:

1. You, if you are an individual;

2. A partner, if you are a partnership;

3. An officer of the corporation, if you are a corporation;

4. A member or manager, if you are a limited liability company; or

5. Your insurance manager.

**XXIV. Unintentional Failure To Disclose Hazards**

Any unintentional error or omission in the description of, or failure to completely describe, any premises or operations intended to be covered by this Coverage Form will not invalidate or affect coverage for those premises or operations. However, you must report such error or omission to us as soon as practicable after its discovery.

**XXV. Mobile Equipment Redefined**

Item **12.f.**, subparagraph **(1)** of **SECTION V - DEFINITIONS** does not apply to self-propelled vehicles of less than 1,000 pounds gross vehicle weight.

**XXVI. Waiver Of Transfer Of Rights Of Recovery Against Others To Us When Required Within A Written Agreement With You**

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 8. Transfer Of Rights Of Recovery Against Others To Us** is amended by the addition of the following:

We waive any right of recovery we may have because of payments we make for injury or damage arising out of:

| Endorsement | IL 19 |
|---|---|

**Policy Number: CPP 2083060**

## Manufacturers' Optimum Endorsement

1. Your ongoing operations or "your work" done under a written contract with that person or organization and included in the "products-completed operations hazard"; or

2. The ownership, maintenance or use of that part of the premises leased to you.

The waiver applies only to a person or organization with whom you have a written contract or agreement in which you are required to waive the rights of recovery under this policy, but only to the extent that subrogation is waived prior to any injury or damage under a contract with that person or organization. The insured must do nothing after a loss to impair our rights. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce those rights.

### XXVII. Liberalization Clause

If we revise this Manufacturers' Optimum Endorsement to provide more coverage without additional premium charge, your policy will automatically provide the coverage as of the day the revision is effective in your state.

### XXVIII. Incidental Medical Malpractice

Paragraph **2.a.(1)(d)** of **SECTION II-WHO IS AN INSURED**, does not apply to your "employees" who provide professional health care services on your behalf as duly licensed:

1. Nurses;
2. Emergency Medical Technicians; or
3. Paramedics

in the jurisdiction where an "occurrence" or offense to which this insurance applies takes place. This coverage does not apply if you are in the business or occupation of providing any such professional services.

### XXIX. Lost Key Coverage

A. Coverage for "bodily injury" and "property

damage" liability with respect to the insured's operations is extended as follows:

1. We will pay those sums that you become legally obligated to pay as damages due to loss of keys by an insured in the course of your business. The keys must be loaned to the insured or in the care, custody or control of the insured.

2. The additional insurance provided by this endorsement does not apply to:

   1. Misappropriation;
   2. Secretion;
   3. Conversion;
   4. Infidelity; or
   5. Any dishonest act on the part of the insured.

3. The additional insurance provided by this endorsement applies only to:

   a. The actual cost of the keys;

   b. Adjustment of locks to accept new keys; and

   c. The cost of new locks, including the cost of their installation.

B. The most we will pay for loss or damage resulting from any one "occurrence" under this provision **XXIX.** Is $1,500.

C. A deductible of $100 applies to this coverage extension.

D. This coverage extension is subject to the following:

1. Exclusions **j.(3)** and **j.(4)** of **SECTION I COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** do not apply to the loss of keys by an insured.

2. Subparagraph **2.a.(2)** of **SECTION II - WHO IS AN INSURED** does not apply to this additional insurance.

| Endorsement | IL 19 |
|---|---|

**Manufacturers' Optimum Endorsement**

**XXX. Electronic Data Liability**

**A.** The following paragraph is added to **SECTION III - LIMITS OF INSURANCE** :

**8.** Subject to **5.** above, the Loss of Electronic Data Limit of $10,000 is the most we will pay under **COVERAGE A.** for "property damage" because of all loss of "electronic data" arising out of any one "occurrence".

**B.** The following definition is added to **SECTION V - DEFINITIONS** :

"Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**C.** For the purpose of the coverage provided by this provision **XXX.,** the definition of "Property Damage" in **SECTION V - DEFINITIONS** is replaced by the following:

**17.** "Property Damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it;

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it; or

**c.** Loss of "electronic data". Loss of "electronic data" means loss of, loss of use of, damage to, corruption of, inability to access, or inability to properly manipulate such data, resulting from physical injury to tangible property. All such loss of "electronic data" shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

**XXXI. Coverage For Injury To Leased Workers**

**A.** With respect to the Employer's Liability exclusion (SECTION I) only, the definition of "employee" in **SECTION V - DEFINITIONS** is replaced by the following:

"Employee" does not include a "leased worker" or "temporary worker".

*Includes copyrighted material of Insurance Services Office, Inc., with its permission.*
1993, 2001, 2002, 2004 & 2009.

# BUSINESS COMPUTER COVERAGE

## AGREEMENT

In return for "your" payment of the required premium, "we" provide the coverage described herein subject to all the "terms" of the Business Computer Coverage. This coverage is also subject to the "schedule of coverages" and additional policy conditions relating to assignment or transfer of rights or duties, cancellation, changes or modifications, inspections, and examination of books and records.

Endorsements and schedules may also apply. They are identified on the "schedule of coverages".

Refer to Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks or bold type.

## DEFINITIONS

1. The words "you" and "your" mean the persons or organizations named as the insured on the "schedule of coverages".

2. The words "we", "us", and "our" mean the company providing this coverage.

3. "Business" means the usual business operations occurring at a premises described on the "schedule of coverages".

4. "Catastrophe limit" means the amount of coverage that applies to all losses at all locations during each separate 12-month period of this policy; this is limited to the expiration or anniversary date.

5. "Computer hacking" means an unauthorized intrusion:

   a. by an individual or group of individuals, whether employed by "you" or not, into "hardware", "software", or a computer network; and

   b. that results in but is not limited to:

      1) deletion, destruction, generation, or modification of "software";
      2) alteration, contamination, corruption, degradation, or destruction of the integrity, quality, or performance of "software";
      3) observation, scanning, or copying of "data records", "programs and applications", and "proprietary programs";
      4) damage, destruction, inadequacy, malfunction, degradation, or corruption of any "hardware" or "media" used with "hardware"; or
      5) denial of access to or denial of services from "your" "hardware" or "your" computer network.

6. "Computer virus" means the introduction of any malicious, self-replicating electronic data processing code or other code:

   a. into "hardware" or "software"; and

   b. that is intended to result in, but is not limited to:

      1) deletion, destruction, generation, or modification of "software";
      2) alteration, contamination, corruption, degradation, or destruction of the integrity, quality, or performance of "software";
      3) damage, destruction, inadequacy, malfunction, degradation, or corruption of any "hardware" or "media" used with "hardware"; or

Copyright, American Association of Insurance Services, Inc., 2004

4) denial of access to or denial of services from "your" "hardware" or "your" computer network.

7. "Data records" means files, documents, and information in an electronic format and that are stored on "media" or stored in "hardware".

8. "Electrical disturbance" means electrical or magnetic damage, disturbance of electronic recordings, or erasure of electronic recordings.

9. "Flood" means flood, surface water, waves, tidal water, or the overflow of a body of water, all whether driven by wind or not. This includes spray that results from these whether driven by wind or not.

10. "Hardware" means a network of electronic machine components (microprocessors) capable of accepting instructions and information, processing the information according to the instructions, and producing desired results.

   a. **Hardware Includes** -- "Hardware" includes but is not limited to:

      1) mainframe and mid-range computers and network servers;
      2) personal computers and workstations;
      3) laptops, palmtops, notebook PCs, other portable computer devices and accessories including, but not limited to, multimedia projectors; and
      4) peripheral data processing equipment, including but not limited to, printers, keyboards, monitors, and modems.

   b. **Hardware Does Not Include** -- "Hardware" does not include:

      1) "software"; and
      2) "off-site server" and "on-site server".

11. "Limit" means the amount of coverage that applies.

12. "Mechanical breakdown" means the malfunction or failure of moving or electronic parts, component failure, faulty installation, or blowout.

13. "Media" means processing, recording, or storage media used with "hardware". This includes but is not limited to films, tapes, cards, discs, drums, cartridges, cells, or flash drives.

14. "Off-site server" means a server for "your" Web site:

   a. that is not at a premises described on the "schedule of coverages"; and

   b. that is being maintained and/or operated by an independent contractor acting as "your" Web host or "your" Internet service provider that is acting as "your" Web host.

15. "On-site server" means a server for "your" Web site:

   a. that is at a premises occupied by "you" and described on the "schedule of coverages"; and

   b. that is being maintained and/or operated by "you" or an independent contractor acting as "your" Web site consultant.

16. "Pollutant" means:

   a. any solid, liquid, gaseous, thermal, or radioactive irritant or contaminant, including but not limited to acids, alkalis, chemicals, fumes, smoke, soot, vapor, and waste. Waste includes materials to be recycled, reclaimed, or reconditioned, as well as disposed of; and

   b. electrical or magnetic emissions, whether visible or invisible, and sound emissions.

17. "Power supply disturbance" means interruption of power supply, power surge, blackout, or brownout.

Copyright, American Association of Insurance Services, Inc., 2004

18. "Programs and applications" means operating programs and applications that "you" purchase and that are:

   a. stored on "media"; or

   b. pre-installed and stored in "hardware".

19. "Proprietary programs" means proprietary applications or programs that are developed in-house or that "you" had developed specifically for "you" and that are:

   a. stored on "media"; or

   b. installed and stored in "hardware".

20. "Restoration period" means:

   a. the time it should reasonably take to resume "your" "business" to a similar level of service starting from the date of a physical loss of or damage to covered property at a premises described on the "schedule of coverages" that is caused by a covered peril and ending on the date:

      1) the property should be rebuilt, repaired, or replaced; or
      2) "business" is resumed at a new permanent location.

      This is not limited by the expiration date of the policy.

   b. "Restoration period" does not mean the increased time required to comply with the enforcement of any ordinance, law, or decree that requires "you" or anyone else to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to or assess the effects of "pollutants".

21. "Schedule of coverages" means:

   a. all pages labeled schedule of coverages or schedules which pertain to this coverage; and

   b. declarations or supplemental declarations which pertain to this coverage.

22. "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the covered property into subterranean voids created by the action of water on a limestone or similar rock formation.

   Sinkhole collapse does not include the value of the land or the cost of filling sinkholes.

23. "Software" means "media", "data records", "programs and applications", and "proprietary programs".

24. "Specified perils" means aircraft; civil commotion; explosion; falling objects; fire; hail; leakage from fire extinguishing equipment; lightning; riot; "sinkhole collapse"; smoke; sonic boom; vandalism; vehicles; "volcanic action"; water damage; weight of ice, snow, or sleet; and windstorm.

   Falling objects does not include loss to:

   a. personal property in the open; or

   b. the interior of buildings or structures or to personal property inside buildings or structures unless the exterior of the roofs or walls are first damaged by a falling object.

   Water damage means the sudden or accidental discharge or leakage of water or steam as a direct result of breaking or cracking of a part of the system or appliance containing the water or steam.

25. "Terms" means all provisions, limitations, exclusions, conditions, and definitions that apply.

26. "Volcanic action" means airborne volcanic blast or airborne shock waves; ash, dust, or particulate matter; or lava flow.

Copyright, American Association of Insurance Services, Inc., 2004

Volcanic action does not include the cost to remove ash, dust, or particulate matter that does not cause direct physical loss to the covered property.

27. "Web site server" means "on-site server" and "off-site server".

28. "Web site software" means the following software that are used in "your" "Web site servers":

   a. "media";

   b. "data records";

   c. programs and applications which means operating programs and applications that "you" purchase and that are stored on "media" or pre-installed and stored in "Web site servers"; and

   d. proprietary programs which means proprietary applications or programs that are developed in-house or that "you" had developed specifically for "you" and that are stored on "media" or installed and stored in "Web site servers".

## PROPERTY COVERED

"We" cover the following property unless the property is excluded or subject to limitations.

1. **Hardware** --

   a. **Coverage** -- "We" cover direct physical loss caused by a covered peril to "hardware" and similar property of others that is in "your" care, custody, or control.

   b. **Coverage Limitations** -- "We" only cover "hardware" and similar property of others:

      1) when a "limit" for "hardware" is indicated on the "schedule of coverages"; and

      2) while at a premises described on the "schedule of coverages".

2. **Software** --

   a. **Coverage** -- "We" cover direct physical loss caused by a covered peril to "software" and similar property of others that is in "your" care, custody, or control.

   b. **Coverage Limitations** -- "We" only cover "software" and similar property of others:

      1) when a "limit" for "software" is indicated on the "schedule of coverages"; and

      2) while at a premises described on the "schedule of coverages".

## EXTRA EXPENSE COVERAGE

"We" provide the following coverage unless the coverage is excluded or subject to limitations.

1. **Coverage** --

   a. **Covered Property** -- If an extra expense "limit" is indicated on the "schedule of coverages", "we" provide the extra expense coverage described below during the "restoration period" when "your" "business" is necessarily wholly or partially interrupted by direct physical loss of or damage to covered property at a premises described on the "schedule of coverages" as a result of a covered peril.

   b. **Described Premises And Air Conditioning System** -- "We" provide the extra expense coverage described below during the "restoration period" when "your" "business" is necessarily wholly or partially interrupted as a result of direct physical loss of or damage to:

Copyright, American Association of Insurance Services, Inc., 2004

1) a premises described on the "schedule of coverages" that prevents "you" from using covered property; or
2) the air conditioning or electrical systems which are necessary for the operation of covered property and results in a reduction or suspension of "your" "business".

2. **Extra Expense** -- "We" cover only the extra expenses that are necessary during the "restoration period" that "you" would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a covered peril.

   a. **Expenses To Reduce Interruption** -- "We" cover any extra expense to avoid or reduce the interruption of "your" data processing operations and continue operating at a premises described on the "schedule of coverages", replacement location, or a temporary location. This includes expenses to relocate and costs to outfit and operate a replacement or temporary location.

      "We" will also cover any extra expense to reduce the interruption of "business" if it is not possible for "you" to continue operating during the "restoration period".

   b. **Expenses To Repair/Restore Property And Information** -- To the extent that they reduce a loss otherwise payable under this coverage, "we" will cover any extra expenses to:

      1) repair, replace, or restore any property; and
      2) research, replace, or restore information on damaged documents, manuscripts, or records that:

         a) are inscribed, printed, or written; or
         b) exist on electronic or magnetic media.

## PROPERTY NOT COVERED

1. **Accounts, Bills, Or Documents** -- "We" do not cover accounts, bills, evidences of debt, records, abstracts, deeds, manuscripts, program documentation, or other documents except those that are in "software" form and then only in that form.

2. **Checked Luggage** -- "We" do not cover loss resulting from theft or disappearance of a laptop, palmtop, notebook PC, or any portable computer while in transit as checked luggage.

3. **Contraband** -- "We" do not cover contraband or property in the course of illegal transportation or trade.

4. **Loaned, Leased, Or Rented To Others** -- "We" do not cover property that "you" loan, lease, or rent to others.

5. **Money And Securities** -- "We" do not cover currency, food stamps, lottery tickets not held for sale, money, notes, or securities.

6. **Stock In Trade** -- "We" do not cover property that is "your" stock in trade.

7. **Web Site Servers** --"We" do not cover "Web site servers" including "Web site software".

## COVERAGE EXTENSIONS

**Provisions That Apply To Coverage Extensions** -- The following Coverage Extensions indicate an applicable "limit". This "limit" may also be shown on the "schedule of coverages".

If a different "limit" is indicated on the "schedule of coverages", that "limit" will apply instead of the "limit" shown below.

Copyright, American Association of Insurance Services, Inc., 2004

However, if no "limit" is indicated for a Coverage Extension, coverage is provided up to the full "limit" for the applicable covered property unless a different "limit" is indicated on the "schedule of coverages".

Unless otherwise indicated, the coverages provided below are part of and not in addition to the applicable "limit" for coverage described under Property Covered.

The "limit" provided under a Coverage Extension cannot be combined or added to the "limit" for any other Coverage Extension or Supplemental Coverage including a Coverage Extension or Supplemental Coverage that is added to this policy by endorsement.

The following coverage extensions are not subject to and not considered in applying coinsurance conditions.

1. **Debris Removal** --

   a. **Coverage** -- "We" pay the cost to remove the debris of covered property that is caused by a covered peril.

   b. **We Do Not Cover** -- This coverage does not include costs to:

      1) extract "pollutants" from land or water; or
      2) remove, restore, or replace polluted land or water.

   c. **Limit** -- "We" do not pay any more under this coverage than 25% of the amount "we" pay for the direct physical loss. "We" will not pay more for loss to property and debris removal combined than the "limit" for the damaged property.

   d. **Additional Limit** -- "We" pay up to an additional $5,000 for debris removal expense when the debris removal expense exceeds 25% of the amount "we" pay for direct physical loss or when the loss to property and debris removal combined exceeds the "limit" for the damaged property.

e. **You Must Report Your Expenses** -- "We" do not pay any expenses unless they are reported to "us" in writing within 180 days from the date of direct physical loss to covered property.

2. **Electrical And Power Supply Disturbance** --

   a. **Coverage** -- "We" cover direct physical loss to covered property caused by:

      1) "electrical disturbance"; or
      2) "power supply disturbance".

   b. **Coverage Limitation** -- "We" only cover loss caused by "electrical disturbance" and "power supply disturbance" if the cause of such disturbance took place within 500 feet of the premises where the loss occurred.

      However, if the "schedule of coverages" indicates that there is no limitation, then the 500 feet limitation described above does not apply to this Coverage Extension.

3. **Emergency Removal** --

   a. **Coverage** -- "We" pay for any direct physical loss to covered property while it is being moved or being stored to prevent a loss caused by a covered peril.

   b. **Time Limitation** -- This coverage applies for up to 365 days after the property is first moved. Also, this coverage does not extend past the date on which this policy expires.

4. **Mechanical Breakdown Coverage** -- "We" pay for loss to covered property caused by "mechanical breakdown".

Copyright, American Association of Insurance Services, Inc., 2004

# SUPPLEMENTAL COVERAGES

**Provisions That Apply To Supplemental Coverages** -- The following Supplemental Coverages indicate an applicable "limit". This "limit" may also be shown on the "schedule of coverages".

If a different "limit" is indicated on the "schedule of coverages", that "limit" will apply instead of the "limit" shown below.

However, if no "limit" is indicated for a Supplemental Coverage, coverage is provided up to the full "limit" for the applicable covered property unless a different "limit" is indicated on the "schedule of coverages".

Unless otherwise indicated, a "limit" for a Supplemental Coverage provided below is separate from, and not part of, the applicable "limit" for coverage described under Property Covered.

The "limit" available for coverage described under a Supplemental Coverage:

a. is the only "limit" available for the described coverage; and

b. is not the sum of the "limit" indicated for a Supplemental Coverage and the "limit" for coverage described under Property Covered.

The "limit" provided under a Supplemental Coverage cannot be combined or added to the "limit" for any other Supplemental Coverage or Coverage Extension including a Supplemental Coverage or Coverage Extension that is added to this policy by endorsement.

The following coverage extensions are not subject to and not considered in applying coinsurance conditions.

1. **New Hardware And Acquired Locations** --

   a. **Coverage** -- "We" cover direct physical loss caused by a covered peril to:

   1) additional "hardware" including pre-installed "software" that "you" purchase or lease during the policy period and that is installed at a location that is described on the "schedule of coverages"; and
   2) "hardware" and "software" at a location that "you" acquire during the policy period .

   b. **Limit** -- "We" pay up to $50,000 for:

   1) additional "hardware" that "you" purchase or lease; and
   2) "hardware" and "software" at locations that "you" acquire.

   c. **Time Limitation** -- This coverage applies for up to 60 days from the date "you" acquire the:

   1) additional "hardware" or new location; or
   2) until "you" report the additional "hardware" or new location to "us", whichever occurs first.

   However, this coverage does not go beyond the end of the policy period.

   d. **Additional Premium** -- "You" must pay any additional premium due from the date "you" acquire the additional "hardware" or new location.

2. **Pollutant Cleanup And Removal** --

   a. **Coverage** -- "We" pay "your" expense to extract "pollutants" from land or water if the discharge, dispersal, seepage, migration, release, or escape of the "pollutants" is caused by a covered peril that occurs during the policy period.

   b. **Time Limitation** -- The expenses to extract "pollutants" are paid only if they are reported to "us" in writing within 180 days from the date the covered peril occurs.

Copyright, American Association of Insurance Services, Inc., 2004

c. **We Do Not Cover** -- "We" do not pay the cost of testing, evaluating, observing, or recording the existence, level, or effects of "pollutants".

However, "we" pay the cost of testing which is necessary for the extraction of "pollutants" from land or water.

d. **Limit** -- The most "we" pay for each location is $5,000 for the sum of all such expenses arising out of a covered peril occurring during each separate 12-month period of this policy.

3. **Property In Transit And Off-Site** --

a. **Coverage** -- "We" cover direct physical loss caused by a covered peril to "hardware" and "software":

1) while in transit; or
2) in the custody of "you", "your" officers, "your" partners, or "your" employees, while:

a) at "your" residence or the residence of "your" officers, partners, or employees;
b) temporarily at a premises that is not described on the "schedule of coverages"; or
c) in transit between a residence or temporary premises and a premises described on the "schedule of coverages".

b. **Limit** -- The most "we" pay in any one occurrence for loss under this Supplemental Coverage is $5,000.

## PERILS COVERED

"We" cover risks of direct physical loss unless the loss is limited or caused by a peril that is excluded.

## PERILS EXCLUDED

1. "We" do not pay for loss or damage caused directly or indirectly by one or more of the following excluded causes or events. Such loss or damage is excluded regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

a. **Civil Authority** -- "We" do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

"We" do pay for loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this coverage.

b. **Earth Movement** -- "We" do not pay for loss caused by any earth movement (other than "sinkhole collapse") or caused by eruption, explosion, or effusion of a volcano. Earth movement includes, but is not limited to: earthquake; landslide; mudflow; mudslide; mine subsidence; or sinking, rising, or shifting of earth.

"We" do cover direct loss by fire, explosion, or "volcanic action" resulting from either earth movement or eruption, explosion, or effusion of a volcano.

c. **Flood** -- "We" do not pay for loss caused by "flood". However, "we" do cover the resulting loss if fire, explosion, or sprinkler leakage results.

Copyright, American Association of Insurance Services, Inc., 2004

d. **Nuclear Hazard** -- "We" do not pay for loss caused by or resulting from a nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke. Direct loss by fire resulting from the nuclear hazard is covered.

e. **Sewer Backup And Water Below The Surface** -- "We" do not pay for loss caused by or resulting from:

   1) water that backs up through a sewer or drain; or
   2) water below the surface of the ground, including but not limited to water that exerts pressure on or flows, seeps, or leaks through or into a building or structure.

   But if sewer backup and water below the surface results in fire, explosion, or sprinkler leakage, "we" cover the loss or damage caused by that fire, explosion, or sprinkler leakage.

f. **War And Military Action** -- "We" do not pay for loss caused by:

   1) war, including undeclared war or civil war; or
   2) a warlike action by a military force, including action taken to prevent or defend against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or
   3) insurrection, rebellion, revolution, or unlawful seizure of power including action taken by governmental authority to prevent or defend against any of these.

With regard to any action that comes within the "terms" of this exclusion and involves nuclear reaction, nuclear radiation, or radioactive contamination, this War and Military Action Exclusion will apply in place of the Nuclear Hazard Exclusion.

2. "We" do not pay for loss or damage that is caused by or results from one or more of the following:

a. **Computer Virus Or Computer Hacking** -- "We" do not pay for:

   1) any direct or indirect loss or damage; or
   2) loss of access, loss of use, or loss of functionality

   caused by a "computer virus" or by "computer hacking".

b. **Contamination Or Deterioration** -- "We" do not pay for loss caused by contamination or deterioration including corrosion; decay; fungus; mildew; mold; rot; rust; or any quality, fault, or weakness in the covered property that causes it to damage or destroy itself.

   But if contamination or deterioration results in a covered peril, "we" do cover the loss or damage caused by that covered peril.

   This exclusion does not apply to loss caused by "mechanical breakdown".

c. **Criminal, Fraudulent, Dishonest, Or Illegal Acts** -- "We" do not pay for loss caused by or resulting from criminal, fraudulent, dishonest, or illegal acts alone or in collusion with another by:

   1) "you";
   2) others who have an interest in the property;
   3) others to whom "you" entrust the property;

Copyright, American Association of Insurance Services, Inc., 2004

4) "your" partners, officers, directors, trustees, joint venturers, or "your" members or managers if "you" are a limited liability company; or
5) the employees or agents of 1), 2), 3), or 4) above, whether or not they are at work.

This exclusion does not apply to acts of destruction by "your" employees, but "we" do not pay for theft by employees.

This exclusion does not apply to covered property in the custody of a carrier for hire.

d. **Electrical And Power Supply Disturbance** -- "We" do not pay for loss caused by "electrical disturbance" or "power supply disturbance" if the cause of such disturbance took place more than 500 feet from the premises where the loss occurred.

However, if disturbance coverage beyond 500 feet is indicated on the "schedule of coverages", then the Electrical And Power Supply Disturbance exclusion described above is deleted.

e. **Loss Of Use** -- "We" do not pay for loss caused by or resulting from loss of use, delay, or loss of market.

f. **Pollutants** -- "We" do not pay for loss caused by or resulting from release, discharge, seepage, migration, dispersal, or escape of "pollutants" unless the release, discharge, seepage, migration, dispersal, or escape is caused by a "specified peril". "We" do pay for any resulting loss caused by a "specified peril".

g. **Temperature/Humidity** -- "We" do not pay for loss to covered property caused by:

1) dryness, dampness, humidity; or
2) changes in or extremes of temperature.

However, "we" do pay for loss to covered property that results from a direct physical loss, caused by a covered peril, to the air conditioning system that services covered "hardware".

h. **Wear And Tear Or Obsolescence** -- "We" do not pay for loss caused by wear and tear, depreciation, or obsolescence.

But if wear and tear, or obsolescence results in a covered peril, "we" do cover the loss or damage caused by that covered peril.

i. **Voluntary Parting** --"We" do not pay for loss caused by or resulting from voluntary parting with title to or possession of any property because of any fraudulent scheme, trick, or false pretense.

3. "We" do not pay for extra expenses, as described under Extra Expense Coverage, caused by or resulting from one or more of the following:

a. **Error Or Omission In Programming** -- "We" do not pay for any extra expense caused by an error or omission in programming or incorrect instructions to "hardware".

b. **Leases, Licenses, Contracts, Or Orders** -- "We" do not pay for any extra expense caused by the suspension, lapse, or cancellation of leases, licenses, contracts, or orders beyond the "restoration period".

c. **Strikes, Protests, And Other Interference** -- "We" do not pay for any increase in loss due to interference by strikers or other persons at a premises described on the "schedule of coverages". This applies to interference with rebuilding, repairing, or replacing the property or with resuming "your" "business".

Copyright, American Association of Insurance Services, Inc., 2004

d. **Utility Failure** -- "We" do not pay for any extra expense caused by or resulting from the failure of a utility to supply electrical power or other utility service to a described premises, if the failure takes place away from the described premises.

"We" do not pay for loss caused by or resulting from the failure of a utility to supply service regardless of the cause of failure.

## WHAT MUST BE DONE IN CASE OF LOSS

1. **Notice** -- In case of a loss, "you" must:

   a. give "us" or "our" agent prompt notice, including a description of the property involved ("we" may request written notice); and

   b. give notice to the police when the act that causes the loss is a crime.

2. **You Must Protect Property** -- "You" must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss.

   a. **Payment Of Reasonable Costs** -- "We" do pay the reasonable costs incurred by "you" for necessary repairs or emergency measures performed solely to protect covered property from further damage by a peril insured against if a peril insured against has already caused a loss to covered property. "You" must keep an accurate record of such costs. "Our" payment of reasonable costs does not increase the "limit".

   b. **We Do Not Pay** -- "We" do not pay for such repairs or emergency measures performed on property which has not been damaged by a peril insured against.

3. **Proof Of Loss** -- "You" must send "us", within 60 days after "our" request, a signed, sworn proof of loss. This must include the following information:

   a. the time, place, and circumstances of the loss;

   b. other policies of insurance that may cover the loss;

   c. "your" interest and the interests of all others in the property involved, including all mortgages and liens;

   d. changes in title of the covered property during the policy period; and

   e. estimates, specifications, inventories, and other reasonable information that "we" may require to settle the loss.

4. **Examination** -- "You" must submit to examination under oath in matters connected with the loss as often as "we" reasonably request and give "us" sworn statements of the answers. If more than one person is examined, "we" have the right to examine and receive statements separately and not in the presence of others.

5. **Records** -- "You" must produce records, including tax returns and bank microfilms of all canceled checks relating to value, loss, and expense and permit copies and extracts to be made of them as often as "we" reasonably request.

6. **Damaged Property** -- "You" must exhibit the damaged and undamaged property as often as "we" reasonably request and allow "us" to inspect or take samples of the property.

7. **Volunteer Payments** -- "You" must not, except at "your" own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage.

Copyright, American Association of Insurance Services, Inc., 2004

8. **Abandonment** -- "You" may not abandon the property to "us" without "our" written consent.

9. **Cooperation** -- "You" must cooperate with "us" in performing all acts required by this policy.

## VALUATION

1. **Hardware** -- The following is the value of "hardware":

   a. **Replacement Cost** -- The value of "hardware" will be based on replacement cost without any deduction for depreciation unless Actual Cash Value is indicated on the "schedule of coverages".

      1) **Replacement Cost Limitation** -- The replacement cost is limited to the cost of repair or replacement with similar materials on the same site and used for the same purpose. The payment will not exceed the amount "you" spend to repair or replace the damaged or destroyed property.
      2) **Replacement Cost Does Not Apply Until Repair Or Replacement** -- Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced.
      3) **Time Limitation** -- "You" may make a claim for actual cash value before repair or replacement takes place, and later for the replacement cost if "you" notify "us" of "your" intent within 180 days after the loss.

   b. **Actual Cash Value** -- When Actual Cash Value is indicated on the "schedule of coverages", the value of "hardware" will be based on the actual cash value at the time of the loss with a deduction for depreciation.

2. **Software** -- The following is the value of "software":

   a. **Programs And Applications** --

      1) **Cost To Reinstall** -- The value of "programs and applications" will be based on the cost to reinstall the "programs or applications" from the licensed discs that were originally used to install the programs or applications.
      2) **If The Original Discs Are Lost** -- If the original licensed discs are lost, damaged, or can no longer be obtained, the value of "programs and applications" will be based on the cost of the most current version of the "programs or applications".

   b. **Proprietary Programs** --

      1) **Cost Of Reproduction** -- The value of "proprietary programs" will be based on the cost of reproduction from duplicate copies. The cost of reproduction includes, but is not limited to, the cost of labor to copy or transcribe from duplicate copies.
      2) **If Duplicate Copies Do Not Exist** -- If duplicate copies do not exist, the value of "proprietary programs" will be based on the cost of research or other expenses necessary to reproduce, replace, or restore lost "proprietary programs".

   c. **Data Records** --

      1) **Cost Of Reproduction** -- The value of "data records" will be based on the cost of reproduction from duplicate copies. The cost of reproduction includes, but is not limited to, the cost of labor to copy or transcribe from duplicate copies.

Copyright, American Association of Insurance Services, Inc., 2004

2) **If Duplicate Copies Do Not Exist --** If duplicate copies do not exist, the value of "data records" will be based on the cost of research or other expenses necessary to reproduce, replace, or restore lost files, documents, and records.

d. **Media --** The value of "media" will be based on the cost to repair or replace the "media" with material of the same kind or quality.

3. **Pair Or Set --**

a. **Reasonable Proportion Of Value --** The value of a lost or damaged article which is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

b. **Provision Does Not Apply To Software --** The Pair or Set provision does not apply to "software" that comes in sets. If part of a "software" set cannot be replaced, the loss is considered a total loss of the set.

4. **Loss To Parts --** The value of a lost or damaged part of an item that consists of several parts when it is complete is based on the value of only the lost or damaged part or the cost to repair or replace it.

5. **Extra Expense --** In determining extra expenses that "you" have incurred, "we" consider the salvage value of any property bought for temporary use during the "restoration period" and it will be deducted from the amount of loss determined for extra expense.

---

## HOW MUCH WE PAY

1. **Insurable Interest --** "We" do not cover more than "your" insurable interest in any property.

2. **Deductible --** "We" pay only that part of "your" loss over the deductible amount indicated on the "schedule of coverages" in any one occurrence.

3. **Loss Settlement Terms --** Subject to paragraphs 1., 2., 4., 5., and 6. under How Much We Pay, "we" pay the lesser of:

a. the amount determined under Valuation;

b. the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable; or

c. the "limit" that applies to the covered property.

4. **Coinsurance --**

a. **When Coinsurance Applies --** "We" only pay a part of the loss if the "limit" is less than the percentage of the value of "hardware" or "software" that is indicated on the "schedule of coverages".

b. **How We Determine Our Part Of The Loss --** "Our" part of the loss is determined using the following steps:

1) multiply the percent indicated on the "schedule of coverages" by the value of the covered property at the time of loss;
2) divide the "limit" for covered property by the result determined in b.1) above;
3) multiply the total amount of loss, after the application of any deductible, by the result determined in b.2) above.

The most "we" pay is the amount determined in b.3) above or the "limit", whichever is less. "We" do not pay any remaining part of the loss.

c. **If There Is More Than One Limit --** If there is more than one "limit" indicated on the "schedule of coverages" for this coverage part, this procedure applies separately to each "limit".

Copyright, American Association of Insurance Services, Inc., 2004

d. **If There Is Only One Limit** -- If there is only one "limit" indicated on the "schedule of coverages" for this coverage, this procedure applies to the total of all covered property to which the "limit" applies.

e. **When Coinsurance Does Not Apply** -- Conditions for coinsurance do not apply unless a coinsurance percentage is indicated on the "schedule of coverages".

5. **Insurance Under More Than One Coverage** -- If more than one coverage of this policy insures the same loss, "we" pay no more than the actual claim, loss, or damage sustained.

6. **Insurance Under More Than One Policy** --

a. **Proportional Share** -- "You" may have another policy subject to the same "terms" as this policy. If "you" do, "we" will pay "our" share of the covered loss. "Our" share is the proportion that the applicable "limit" under this policy bears to the "limit" of all policies covering on the same basis.

b. **Excess Amount** -- If there is another policy covering the same loss, other than that described above, "we" pay only for the amount of covered loss in excess of the amount due from that other policy, whether "you" can collect on it or not. But "we" do not pay more than the applicable "limit".

---

# LOSS PAYMENT

---

1. **Loss Payment Options** --

a. **Our Options** -- In the event of loss covered by this coverage form, "we" have the following options:

1) pay the value of the lost or damaged property;

2) pay the cost of repairing or replacing the lost or damaged property;

3) rebuild, repair, or replace the property with other property of equivalent kind and quality, to the extent practicable, within a reasonable time; or

4) take all or any part of the property at the agreed or appraised value.

b. **Notice Of Our Intent To Rebuild, Repair, Or Replace** -- "We" must give "you" notice of "our" intent to rebuild, repair, or replace within 30 days after receipt of a duly executed proof of loss.

2. **Your Losses** --

a. **Adjustment And Payment Of Loss** -- "We" adjust all losses with "you". Payment will be made to "you" unless another loss payee is named in the policy.

b. **Conditions For Payment Of Loss** -- An insured loss will be payable 30 days after:

1) a satisfactory proof of loss is received; and

2) the amount of the loss has been established either by written agreement with "you" or the filing of an appraisal award with "us".

3. **Property Of Others** --

a. **Adjustment And Payment Of Loss To Property Of Others** -- Losses to property of others may be adjusted with and paid to:

1) "you" on behalf of the owner; or
2) the owner.

b. **We Do Not Have To Pay You If We Pay The Owner** -- If "we" pay the owner, "we" do not have to pay "you". "We" may also choose to defend any suits arising from the owners at "our" expense.

Copyright, American Association of Insurance Services, Inc., 2004

## OTHER CONDITIONS

1. **Appraisal** -- If "you" and "we" do not agree on the amount of the loss or the actual cash value of covered property, either party may demand that these amounts be determined by appraisal.

   If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court of record in the state where the property is located to select an umpire.

   The appraisers will then determine and state separately the amount of each loss.

   The appraisers will also determine the value of covered property items at the time of the loss, if requested.

   If the appraisers submit a written report of any agreement to "us", the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three sets the amount of the loss.

   Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by "you" and "us".

2. **Benefit To Others** -- Insurance under this coverage will not directly or indirectly benefit anyone having custody of "your" property.

3. **Conformity With Statute** -- When a condition of this coverage is in conflict with an applicable law, that condition is amended to conform to that law.

4. **Estates** -- This provision applies only if the insured is an individual.

   a. **Your Death** -- On "your" death, "we" cover the following as an insured:

      1) the person who has custody of "your" property until a legal representative is qualified and appointed; or
      2) "your" legal representative.

      This person or organization is an insured only with respect to property covered by this coverage.

   b. **Policy Period Is Not Extended** -- This coverage does not extend past the policy period indicated on the declarations.

5. **Misrepresentation, Concealment, Or Fraud** -- This coverage is void as to "you" and any other insured if, before or after a loss:

   a. "you" or any other insured have willfully concealed or misrepresented:

      1) a material fact or circumstance that relates to this insurance or the subject thereof; or
      2) "your" interest herein.

   b. there has been fraud or false swearing by "you" or any other insured with regard to a matter that relates to this insurance or the subject thereof.

6. **Policy Period** -- "We" pay for a covered loss that occurs during the policy period.

7. **Recoveries** -- If "we" pay "you" for the loss and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

   a. "you" must notify "us" promptly if "you" recover property or receive payment;

   b. "we" must notify "you" promptly if "we" recover property or receive payment;

Copyright, American Association of Insurance Services, Inc., 2004

c.  any recovery expenses incurred by either are reimbursed first;

d.  "you" may keep the recovered property but "you" must refund to "us" the amount of the claim paid, or any lesser amount to which "we" agree; and

e.  if the claim paid is less than the agreed loss due to a deductible or other limiting "terms" of this policy, any recovery will be pro rated between "you" and "us" based on "our" respective interest in the loss.

8.  **Restoration Of Limits** -- A loss "we" pay under this coverage does not reduce the applicable "limits".

9.  **Subrogation** -- If "we" pay for a loss, "we" may require "you" to assign to "us" "your" right of recovery against others. "You" must do all that is necessary to secure "our" rights. "We" do not pay for a loss if "you" impair this right to recover.

"You" may waive "your" right to recover from others in writing before a loss occurs.

10. **Suit Against Us** -- No one may bring a legal action against "us" under this coverage unless:

a.  all of the "terms" of this coverage have been complied with; and

b.  the suit has been brought within two years after "you" first have knowledge of the loss.

If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by law.

11. **Territorial Limits** -- "We" cover property while it is in the United States of America, its territories and possessions, Canada, and Puerto Rico.

**IM 7203 10 04**

Copyright, American Association of Insurance Services, Inc., 2004

# COMMERCIAL CRIME COVERAGE FORM
# (LOSS SUSTAINED FORM)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is or is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations:

### 1. Employee Theft

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

### 2. Forgery Or Alteration

a. We will pay for loss resulting directly from "forgery" or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

   (1) Made or drawn by or drawn upon you; or

   (2) Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn.

b. If you are sued for refusing to pay any instrument covered in Paragraph **a.** above, on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount that we will pay is in addition to the Limit of Insurance applicable to this Insuring Agreement.

### 3. Inside The Premises    Theft Of Money And Securities

a. We will pay for loss of "money" and "securities" inside the "premises" or "banking premises" resulting directly from "theft", disappearance or destruction.

b. We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "theft" of "money" and "securities", if you are the owner of the "premises" or are liable for damage to it.

c. We will pay for loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the "premises" resulting directly from an actual or attempted "theft" of or unlawful entry into those containers.

### 4. Inside The Premises    Robbery Or Safe Burglary Of Other Property

a. We will pay for loss of or damage to "other property":

   (1) Inside the "premises" resulting directly from an actual or attempted "robbery" of a "custodian"; or

   (2) Inside the "premises" in a safe or vault resulting directly from an actual or attempted "safe burglary".

b. We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "robbery" or "safe burglary" of "other property", if you are the owner of the "premises" or are liable for damage to it.

c. We will pay for loss of or damage to a locked safe or vault located inside the "premises" resulting directly from an actual or attempted "robbery" or "safe burglary".

### 5. Outside The Premises

a. We will pay for loss of "money" and "securities" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction.

b. We will pay for loss of or damage to "other property" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from an actual or attempted "robbery".

**6. Computer Fraud**

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the "premises" or "banking premises":

**a.** To a person (other than a "messenger") outside those "premises"; or

**b.** To a place outside those "premises".

**7. Money Orders And Counterfeit Paper Currency**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

**a.** Money orders issued by any post office, express company or bank that are not paid upon presentation; or

**b.** "Counterfeit" paper currency that is acquired during the regular course of business.

**B. Limit Of Insurance**

The most we will pay for loss in any one "occurrence" is the applicable Limit of Insurance shown in the Declarations.

**C. Deductible**

We will not pay for loss in any one "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance. In the event more than one Deductible Amount could apply to the same loss, only the highest Deductible Amount may be applied.

**D. Exclusions**

**1.** This insurance does not apply to:

**a. Acts Committed By You, Your Partners Or Your Members**

Loss resulting from "theft" or any other dishonest act committed by:

**(1)** You; or

**(2)** Any of your partners or "members";

whether acting alone or in collusion with other persons.

**b. Acts Of Employees, Managers, Directors, Trustees Or Representatives**

Loss resulting from "theft" or any other dishonest act committed by any of your "employees", "managers", directors, trustees or authorized representatives:

**(1)** Whether acting alone or in collusion with other persons; or

**(2)** While performing services for you or otherwise;

except when covered under Insuring Agreement **A.1.**

**c. Governmental Action**

Loss resulting from seizure or destruction of property by order of governmental authority.

**d. Indirect Loss**

Loss that is an indirect result of any act or "occurrence" covered by this insurance including, but not limited to, loss resulting from:

**(1)** Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property".

**(2)** Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.

**(3)** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

**e. Legal Expenses**

Expenses related to any legal action, except when covered under Insuring Agreement **A.2.**

**f. Nuclear**

Loss resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

**g. War And Similar Actions**

Loss resulting from war, whether or not declared, warlike action, insurrection, rebellion or revolution, or any related act or incident.

**2.** Insuring Agreement **A.1.** does not apply to:

**a. Employee Cancelled Under Prior Insurance**

Loss caused by any "employee" of yours, or predecessor in interest of yours, for whom similar prior insurance has been cancelled and not reinstated since the last such cancellation.

**b. Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(1)** An inventory computation; or

Copyright, Insurance Services Office, Inc.,  1998       ☐

**(2)** A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

**c. Trading**

Loss resulting directly or indirectly from trading, whether in your name or in a genuine or fictitious account.

**d. Warehouse Receipts**

Loss resulting from fraudulent or dishonest signing, issuing, canceling or failing to cancel, a warehouse receipt or any papers connected with it.

**3.** Insuring Agreements **A.3.**, **A.4.** and **A.5.** do not apply to:

**a. Accounting Or Arithmetical Errors Or Omissions**

Loss resulting from accounting or arithmetical errors or omissions.

**b. Exchanges Or Purchases**

Loss resulting from the giving or surrendering of property in any exchange or purchase.

**c. Fire**

Loss resulting from fire, however caused, except:

**(1)** Loss from damage to a safe or vault; and

**(2)** Under Insuring Agreement **A.3.**, loss of or damage to "money" and "securities".

**d. Money Operated Devices**

Loss of property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**e. Motor Vehicles Or Equipment And Accessories**

Loss of or damage to motor vehicles, trailers or semi-trailers or equipment and accessories attached to them.

**f. Transfer Or Surrender Of Property**

**(1)** Loss of or damage to property after it has been transferred or surrendered to a person or place outside the "premises" or "banking premises":

**(a)** On the basis of unauthorized instructions;

**(b)** As a result of a threat to do bodily harm to any person; or

**(c)** As a result of a threat to do damage to any property.

**(2)** But, this Exclusion does not apply under Insuring Agreement **A.5.** to loss of "money", "securities" or "other property" while outside the "premises" in the care and custody of a "messenger" if you:

**(a)** Had no knowledge of any threat at the time the conveyance began; or

**(b)** Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

**g. Vandalism**

Loss from damage to the "premises" or its exterior, or to any safe, vault, cash register, cash box, cash drawer or "other property" by vandalism or malicious mischief.

**h. Voluntary Parting Of Title To Or Possession Of Property**

Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

**4.** Insuring Agreement **A.6.** does not apply to:

**Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**a.** An inventory computation; or

**b.** A profit and loss computation.

**E. Conditions**

The following Conditions apply in addition to the Common Policy Conditions:

**1. Conditions Applicable To All Insuring Agreements**

**a. Cancellation As To Any Employee**

This insurance is cancelled as to any "employee":

**(1)** Immediately upon discovery by:

**(a)** You; or

**(b)** Any of your partners, "members", "managers", officers, directors or trustees not in collusion with the "employee";

of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you.

Copyright, Insurance Services Office, Inc., 1998

**(2)** On the date specified in a notice mailed to the first Named Insured. That date will be at least 30 days after the date of mailing.

We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**b. Concealment, Misrepresentation Or Fraud**

This insurance is void in any case of fraud by you as it relates to this insurance at any time. It is also void if you or any other Insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**(1)** This insurance;

**(2)** The property covered under this insurance;

**(3)** Your interest in the property covered under this insurance; or

**(4)** A claim under this insurance.

**c. Consolidation Merger**

If through consolidation or merger with, or purchase or acquisition of assets or liabilities of, some other entity, any additional persons become "employees" or you acquire the use and control of any additional "premises":

**(1)** You must give us written notice and obtain our written consent to extend this insurance to such additional "employees" or "premises". We may condition our consent upon payment of an additional premium; but

**(2)** For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, any insurance afforded for "employees" or "premises" also applies to these additional "employees" or "premises" for acts committed or events occurring within this 90 day period.

**d. Duties In The Event Of Loss**

After you discover a loss or a situation that may result in loss of or damage to "money", "securities" or "other property" you must:

**(1)** Notify us as soon as possible. If you have reason to believe that any loss (except for loss covered under Insuring Agreements **A.1.** or **A.2.**) involves a violation of law, you must also notify the local law enforcement authorities.

**(2)** Submit to examination under oath at our request and give us a signed statement of your answers.

**(3)** Give us a detailed, sworn proof of loss within 120 days.

**(4)** Cooperate with us in the investigation and settlement of any claim.

**e. Employee Benefit Plan(s)**

**(1)** The "employee benefit plan(s)" shown in the Declarations are included as Insureds under Insuring Agreement **A.1.**

**(2)** If any "employee benefit plan(s)" is insured jointly with any other entity under this insurance, you or the Plan Administrator must select a Limit of Insurance for Insuring Agreement **A.1.** that is sufficient to provide a Limit of Insurance for each Plan that is at least equal to that required if each Plan were separately insured.

**(3)** With respect to losses sustained or discovered by any such Plan, Insuring Agreement **A.1.** is replaced by the following:

We will pay for loss of or damage to "funds" and "other property" resulting directly from fraudulent or dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

**(4)** If the first Named Insured is an entity other than a Plan, any payment we make to that Insured for loss sustained by any Plan will be held by that Insured for the use and benefit of the Plan(s) sustaining the loss.

**(5)** If two or more Plans are insured under this insurance, any payment we make for loss:

**(a)** Sustained by two or more Plans; or

**(b)** Of commingled "funds" or "other property" of two or more Plans;

that arises out of one "occurrence", is to be shared by each Plan sustaining loss in the proportion that the Limit of Insurance required for each Plan bears to the total of those limits.

**(6)** The Deductible Amount applicable to Insuring Agreement **A.1.** does not apply to loss sustained by any "employee benefit plan(s)".

**f. Extended Period To Discover Loss**

   **(1)** We will pay for loss that you sustained prior to the effective date of termination or cancellation of this insurance, which is discovered by you no later than 1 year from the date of that termination or cancellation.

   **(2)** However, this extended period to discover loss terminates immediately upon the effective date of any other insurance obtained by you replacing in whole or in part the insurance afforded hereunder, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**g. Joint Insured**

   **(1)** If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

   **(2)** If any Insured, or partner, "member" or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

   **(3)** An "employee" of any Insured is considered to be an "employee" of every Insured.

   **(4)** If this insurance or any of its coverages is cancelled or terminated as to any Insured, loss sustained by that Insured is covered only if discovered by you during the period of time provided in the Extended Period To Discover Loss Condition **E.1.f.**

     However, this extended period to discover loss terminates as to that Insured immediately upon the effective date of any other insurance obtained by that Insured replacing in whole or in part the insurance afforded hereunder, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

   **(5)** We will not pay more for loss sustained by more than one Insured than the amount we would pay if all the loss had been sustained by one Insured.

**h. Legal Action Against Us**

   You may not bring any legal action against us involving loss:

   **(1)** Unless you have complied with all the terms of this insurance;

   **(2)** Until 90 days after you have filed proof of loss with us; and

   **(3)** Unless brought within 2 years from the date you discover the loss.

   If any limitation is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**i. Liberalization**

   If we adopt any revision that would broaden the coverage under this insurance without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this insurance.

**j. Loss Covered Under More Than One Coverage Of This Insurance**

   If two or more coverages of this insurance apply to the same loss, we will pay the lesser of:

   **(1)** The actual amount of loss; or

   **(2)** The sum of the Limits of Insurance applicable to those coverages.

**k. Loss Covered Under This Insurance And Prior Insurance Issued By Us Or Any Affiliate**

   If any loss is covered:

   **(1)** Partly by this insurance; and

   **(2)** Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

   the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

   Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or policy period to policy period.

**l. Loss Sustained**

Subject to the Loss Sustained During Prior Insurance Condition **E.1.m.,** we will pay for loss that you sustain through acts committed or events occurring during the policy period shown in the Declarations and discovered by you:

**(1)** During the policy period; or

**(2)** During the period of time provided in the Extended Period To Discover Loss Condition **E.1.f.**

**m. Loss Sustained During Prior Insurance**

**(1)** If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance, provided:

**(a)** This insurance became effective at the time of cancellation or termination of the prior insurance; and

**(b)** The loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

**(2)** The insurance under this Condition is part of, not in addition to, the Limits of Insurance applying to this insurance and is limited to the lesser of the amount recoverable under:

**(a)** This insurance as of its effective date; or

**(b)** The prior insurance had it remained in effect.

**n. Other Insurance**

This insurance does not apply to loss recoverable or recovered under other insurance or indemnity. If the limit of the other insurance or indemnity is insufficient to cover the entire amount of the loss, this insurance will apply to that part of the loss, other than that falling within any Deductible Amount, not recoverable or recovered under the other insurance or indemnity.

However, this insurance will not apply to the amount of loss that is more than the applicable Limit of Insurance shown in the Declarations.

**o. Ownership Of Property; Interests Covered**

The property covered under this insurance is limited to property:

**(1)** That you own or lease;

**(2)** That you hold for others; or

**(3)** For which you are legally liable, except for property inside the premises of a "client" of yours.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this insurance must be presented by you.

**p. Records**

You must keep records of all property covered under this insurance so we can verify the amount of any loss.

**q. Recoveries**

**(1)** Any recoveries, less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:

**(a)** To you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance and the Deductible Amount, if any;

**(b)** Then to us, until we are reimbursed for the settlement made; and

**(c)** Then to you, until you are reimbursed for that part of the loss equal to the Deductible Amount, if any.

**(2)** Recoveries do not include any recovery:

**(a)** From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

**(b)** Of original "securities" after duplicates of them have been issued.

**r. Territory**

This insurance covers acts committed or events occurring within the United States of America (including its territories and possessions), Puerto Rico and Canada.

**s. Transfer Of Your Rights Of Recovery Against Others To Us**

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**t. Valuation    Settlement**

**(1)** Subject to Section **B.** Limit Of Insurance, we will pay for:

**(a)** Loss of "money" but only up to and including its face value. We may, at our option, pay for loss of "money" issued by any country other than the United States of America:

**(i)** At face value in the "money" issued by that country; or

**(ii)** In the United States of America dollar equivalent determined by the rate of exchange on the day the loss was discovered.

**(b)** Loss of "securities" but only up to and including their value at the close of business on the day the loss was discovered. We may, at our option:

**(i)** Pay the value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or

**(ii)** Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of:

**i.** Value of the "securities" at the close of business on the day the loss was discovered; or

**ii.** Limit of Insurance.

**(c)** Loss of or damage to "other property" or loss from damage to the "premises" or its exterior for the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

**(i)** The Limit of Insurance applicable to the lost or damaged property;

**(ii)** The cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose; or

**(iii)** The amount you actually spend that is necessary to repair or replace the lost or damaged property.

We will not pay on a replacement cost basis for any loss or damage:

**(i)** Until the lost or damaged property is actually repaired or replaced; and

**(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

**(2)** We may, at our option, pay for loss of or damage to property other than "money":

**(a)** In the "money" of the country in which the loss occurred; or

**(b)** In the United States of America dollar equivalent of the "money" of the country in which the loss occurred determined by the rate of exchange on the day the loss was discovered.

**(3)** Any property that we pay for or replace becomes our property.

**2. Condition Applicable To Insuring Agreement A.1.**

**Territory**

We will pay for loss caused by any "employee" while temporarily outside the territory specified in the Territory Condition **E.1.r.** for a period of not more than 90 days.

**3. Conditions Applicable To Insuring Agreement A.2.**

**a. Deductible**

The Deductible Amount does not apply to legal expenses paid under Insuring Agreement **A.2.**

**b. Facsimile Signatures**

We will treat mechanically reproduced facsimile signatures the same as handwritten signatures.

**c. Proof Of Loss**

You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

d. **Territory**

We will cover loss you sustain anywhere in the world. The Territory Condition **E.1.r.** does not apply to Insuring Agreement **A.2.**

**4. Conditions Applicable To Insuring Agreements A.4. And A.5.**

a. **Armored Motor Vehicle Companies**

Under Insuring Agreement **A.5.,** we will only pay for the amount of loss you cannot recover:

(1) Under your contract with the armored motor vehicle company; and

(2) From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

b. **Special Limit Of Insurance For Specified Property**

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to:

(1) Precious metals, precious or semi-precious stones, pearls, furs, or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

(2) Manuscripts, drawings, or records of any kind or the cost of reconstructing them or reproducing any information contained in them.

**5. Conditions Applicable To Insuring Agreement A.6.**

a. **Special Limit Of Insurance For Specified Property**

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to manuscripts, drawings, or records of any kind or the cost of reconstructing them or reproducing any information contained in them.

b. **Territory**

We will cover loss you sustain anywhere in the world. The Territory Condition **E.1.r.** does not apply to Insuring Agreement **A.6.**

**F. Definitions**

1. "Banking premises" means the interior of that portion of any building occupied by a banking institution or similar safe depository.

2. "Client" means any entity for whom you perform services under a written agreement.

3. "Counterfeit" means an imitation of an actual valid original which is intended to deceive and to be taken as the original.

4. "Custodian" means you, or any of your partners or "members", or any "employee" while having care and custody of property inside the "premises", excluding any person while acting as a "watchperson" or janitor.

5. "Employee":

a. "Employee" means:

(1) Any natural person:

(a) While in your service or for 30 days after termination of service;

(b) Who you compensate directly by salary, wages or commissions; and

(c) Who you have the right to direct and control while performing services for you;

(2) Any natural person who is furnished temporarily to you:

(a) To substitute for a permanent "employee" as defined in Paragraph **(1)** above, who is on leave; or

(b) To meet seasonal or short-term work load conditions;

while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the "premises"; or

(3) Any natural person who is:

(a) A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan(s)" insured under this insurance; and

(b) Your director or trustee while that person is handling "funds" or "other property" of any "employee benefit plan(s)" insured under this insurance.

b. "Employee" does not mean:

(1) Any agent, broker, person leased to you by a labor leasing firm, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

**(2)** Any "manager", director or trustee except while performing acts coming within the scope of the usual duties of an "employee".

**6.** "Employee benefit plan(s)" means any welfare or pension benefit plan shown in the Declarations that is subject to the Employee Retirement Income Security Act of 1974 (ERISA).

**7.** "Forgery" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

**8.** "Funds" means "money" and "securities".

**9.** "Manager" means a person serving in a directorial capacity for a limited liability company.

**10.** "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

**11.** "Messenger" means you, or a relative of yours, or any of your partners or "members", or any "employee" while having care and custody of property outside the "premises".

**12.** "Money" means:

    **a.** Currency, coins and bank notes in current use and having a face value; and

    **b.** Travelers checks, register checks and money orders held for sale to the public.

**13.** "Occurrence" means:

    **a.** As respects Insuring Agreement **A.1.,** all loss caused by, or involving, one or more "employees", whether the result of a single act or series of acts.

    **b.** As respects Insuring Agreement **A.2.,** all loss caused by any person or in which that person is involved, whether the loss involves one or more instruments.

    **c.** As respects all other Insuring Agreements:

        **(1)** An act or series of related acts involving one or more persons; or

        **(2)** An act or event, or a series of related acts or events not involving any person.

**14.** "Other property" means any tangible property other than "money" and "securities" that has intrinsic value but does not include any property excluded under this insurance.

**15.** "Premises" means the interior of that portion of any building you occupy in conducting your business.

**16.** "Robbery" means the unlawful taking of property from the care and custody of a person by one who has:

    **a.** Caused or threatened to cause that person bodily harm; or

    **b.** Committed an obviously unlawful act witnessed by that person.

**17.** "Safe burglary" means the unlawful taking of:

    **a.** Property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

    **b.** A safe or vault from inside the "premises".

**18.** "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or property and includes:

    **a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

    **b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

    but does not include "money".

**19.** "Theft" means the unlawful taking of "money", "securities", or "other property" to the deprivation of the Insured.

**20.** "Watchperson" means any person you retain specifically to have care and custody of property inside the "premises" and who has no other duties.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

' ISO Properties, Inc., 2001

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.