IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GRANGE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CYCLE-TEX, INC. and JARROD JOHNSON, individually, and on Behalf of a Class of persons similarly situated,<br><br>Defendants. | CIVIL ACTION NO.<br>4:21-cv-147-AT |

## **ORDER**

In this insurance dispute, Plaintiff Grange Insurance Company ("Grange") seeks a declaratory judgment finding that it has no duty to defend or indemnify Defendant Cycle-Tex, Inc. ("Cycle-Tex") in an underlying lawsuit brought against Cycle-Tex by Jarrod Johnson on behalf of himself and others similarly situated. Grange argues that it has no such duty to defend or indemnify Cycle-Tex because *inter alia* Cycle-Tex's insurance policy contains a "pollution exclusion" that unambiguously excludes coverage under the circumstances.

Grange has named as Defendants both Cycle-Tex and Jarrod Johnson. Before the Court is Grange's Motion for Summary Judgment [Doc. 33]. Defendant Cycle-Tex has not appeared in this case and the Clerk has entered default against Cycle-Tex. As the Court explained in its November 7, 2022 Order (Doc. 41), a wealth of legal authority instructs that, where a defendant has not appeared, the

appropriate procedure is for the plaintiff to seek default judgment pursuant to Fed. R. Civ. P. 55(b)(2) rather than summary judgment under Fed. R. Civ. P. 56. For this reason, courts often convert summary judgment motions to default judgment motions under similar circumstances. (*See* Nov. 7, 2022 Order, Doc. 41) (collecting cases). Consistent with this guiding authority, the Court converts Grange's motion for summary judgment to one for default judgment as to Defendant Cycle Tex. Unlike Cycle-Tex, Defendant Johnson has appeared in this case. Johnson has filed a Statement of Non-Opposition to Grange's Motion for Summary Judgment, in which Johnson agrees that the underlying lawsuit is a "quintessential class-action pollution lawsuit," and therefore that the language of the contract's "the total pollution exclusion appears to bar coverage for Cycle Tex." (Statement of Non-Opposition, Doc. 40 ¶ 7). Upon review, and for the reasons that follow, the Court concludes that Grange's Motions for Default Judgment (as to Defendant Cycle-Tex) and Summary Judgment (as to Defendant Johnson) [Doc. 33] are due to be **GRANTED**.

## I. BACKGROUND

### A. The Insurance Policy

Plaintiff Grange is an insurance company. (Complaint, Doc. 1 ¶ 2.) Defendant Cycle-Tex is "thermoplastics recycling facility" located in Dalton, Georgia. (*Id*. ¶ 20.) Grange originally issued Cycle-Tex a commercial general insurance policy, with an effective date of July 1, 2014. (*Id*. ¶¶ 54, 55.) That

insurance policy was continuously renewed by Cycle-Tex through July 1, 2019. (*Id.* ¶ 55.)

The policy in question provides coverage for certain bodily injury and property damage, with some limitations. (*Id.* ¶¶ 57-58.) The insurance policy also includes two relevant exclusions. (*Id.* ¶¶ 59-60.) First, the policy excludes from coverage "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured." (*Id.* ¶ 59.) Second, the policy contains a "Total Pollution Exclusion Endorsement." (*Id.* ¶ 60.) The Total Pollution Exclusion provides that:

> This insurance does not apply to:
>
> f. Pollution
>
> (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.
>
> (2) Any loss, cost, or expense arising out of any:
>
> (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of "pollutants"; or
>
> (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

(*Id.*) (*See also* Policy, Doc. 36-1 at ECF 118.)

The policy later defines "pollutants" to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids,

3

alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed." (Compl. ¶ 61) (*See also* Policy, Doc. 36-1 at ECF 133.)

Finally, the insurance policy requires the insured to notify the insurer "as soon as practicable" (1) of an "occurrence" or an offense which may result in a claim, or (2) of a claim or "suit" brought against any insured. (Compl. ¶ 66) (*See also* Policy, Doc. 316-1 at ECF 150.)

### B. The Underlying Lawsuit

In November 2019, Defendant Jarrod Johnson filed a lawsuit ("the *Johnson* Action"), on behalf of himself and a class of persons similarly situated, against multiple defendants (named and unnamed) in the Superior Court of Floyd County, Georgia. (Compl. ¶ 10.) Cycle-Tex was not a named defendant in the initial complaint filed in Floyd County. (*Id.* ¶ 14.) On January 10, 2020, the case was removed to federal court. (*Id.* ¶ 16.) On August 27, 2020, Jarrod Johnson, on behalf of himself and those similarly situated, filed an Amended Complaint. (*Id.* ¶ 17.) The Amended Complaint added Cycle-Tex as a named defendant in the *Johnson* Action. (*Id.* ¶ 19.)

In the underlying lawsuit, Johnson generally alleges that numerous defendants — including chemical suppliers, carpet manufacturers, intermediaries, the City of Dalton and the Dalton-Whitfield Solid Waste Authority — contributed to or caused the discharge of harmful toxic per- and polyfluoroalkyl substances ("PFAS") chemicals into North Georgia waterways around Dalton, thereby injuring Johnson and others. (*See generally* Fourth Amended Complaint, *Johnson v. 3M*

*et al.*, 4:20-cv-8-AT, Doc. 716 (N.D. Ga. Jan. 11, 2022)).[1] In the *Johnson* Action, Mr. Johnson asserts claims against Cycle-Tex for Willful, Wanton, Reckless, or Negligent Misconduct; Negligence *Per Se*; Punitive Damages; and Public Nuisance and Abatement. (*Id.*)

On the facts, the *Johnson* complaint alleges that Cycle-Tex, a thermoplastics recycling facility, discharged industrial wastewater containing toxic PFAS into the City of Dalton's Publicly Owned Treatment Works ("POTW"). (*Id.* ¶ 25.) As to the claim for Willful, Wanton, Reckless, or Negligent Misconduct (Count IV), the complaint in the *Johnson* Action alleges that Cycle-Tex and other defendants owed a duty to Mr. Johnson and others to exercise reasonable care to prevent the discharge of toxic PFAS chemicals into waters of the State and United States and that the defendants (including Cycle-Tex) knowingly breached this duty. (*Id.* ¶¶ 164, 166, 167) (alleging that defendants "knew or should have known that their discharge of toxic PFAS chemicals would result in contaminated surface water, primarily the Conasauga and Oostanaula Rivers, and domestic water supplies thereby endangering human health and the environment.").

As to the claim for Negligence *Per Se* (Count V), the *Johnson* complaint alleges that Cycle-Tex and other defendants breached their duties under the

---

[1] In this Order, when discussing the underlying complaint, the Court refers to the current operative complaint in the underlying action, which is the Fourth Amended Complaint. Plaintiff Grange's complaint for declaratory relief in the instant case references earlier versions of the complaint in the *Johnson* Action, including the Third Amended Complaint. There are no material differences regarding the allegations against Cycle-Tex in the Third and Fourth Amended Complaints. For the sake of accuracy, however, the Court herein refers to the current, operative complaint in the underlying action, the Fourth Amended Complaint (Doc. 716 in that action).

Georgia Water Quality Control Act to, among other things: (1) avoid discharging pollutants into waters of the United States; and (2) to operate their facilities in a manner to ensure that their industrial discharge into the Dalton POTW did not cause subsequent harm. (*Id.* ¶¶ 170-73.)

As to Punitive Damages (Count VI), the complaint in the underlying suit alleges that Cycl-Tex and other defendants "knew or should have known that their discharge of toxic PFAS chemicals would result in contaminated surface waters and domestic water supplies thereby endangering human health and the environment." (*Id.* ¶ 179.) Therefore, according to the complaint, defendants acted with conscious disregard and indifference to the rights and safety of others with knowledge that their actions and inactions would cause injury to the plaintiff and proposed class members. (*Id.* ¶ 181.)

On the nuisance claims (Counts VII and VIII), the complaint alleges that Cycle-Tex and other defendants "created a continuous, public nuisance by their discharge of PFAS . . . into the Conasauga, Oostanaula, and Coosa Rivers" which "has caused, and continues to cause, contamination to these waters and Plaintiff's and Proposed Class Members' water supplies, thereby proximately causing the public and Plaintiff and Proposed Members past, present, and future harm, injury, inconvenience, and increased water rates and surcharges." (*Id.* ¶ 186.)

As for the damages, the Johnson action alleges that Mr. Johnson and those similarly situated suffered damages in the form of: (1) harm to their health by virtue of ingesting contaminated water; (2) property damage resulting from the

contamination of the Rome water supply; and (3) the payment of surcharges and heightened water rates as a result of the contamination. (*Id.* ¶¶ 16, 106, 179, 187, 189, 192.)

### C. Procedural Posture

At present, Grange is providing a defense to Cycle-Tex in the *Johnson* Action subject to a complete reservation of rights. (Complaint, Doc. 1 ¶ 37.) Grange filed this action seeking declaratory judgment that it has no duty to defend or indemnify Cycle-Tex in the *Johnson* Action on August 1, 2021. (Doc. 1.) Grange served Cycle-Tex through its Registered Agent on August 23, 2021. (Proof of Service, Doc. 12.) Grange filed its Motion for Summary Judgment as to both Defendants on June 21, 2022 (Doc. 33). Cycle-Tex has not appeared in this action. On November 7, 2022, the Court entered an order explaining that it was prepared to convert Grange's pending motion for summary judgment to a motion for default judgment but would allow Cycle-Tex one final opportunity to appear by November 17, 2022 and show good cause for its failure to appear or respond to Grange's motion. (Doc. 41.) Cycle-Tex did not appear by the deadline set by the Court. Accordingly, now before the Court is Grange's request for default judgment against Cycle-Tex. Also before the Court is Grange's request for summary judgment against Defendant Johnson.

## II. LEGAL STANDARD

### A. Standard for Default Judgment

Once a default has been entered, a party may seek a default judgment against the non-responsive party under Rule 55(b)(2) of the Federal Rules of Civil

Procedure. The mere entry of a default by the Clerk of Court does not in itself warrant the entry of a default judgment by the Court. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[2] A default is not an admission of liability, but it is an admission as to the well-pled facts in the complaint, and the defendant may not challenge those facts on appeal. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009).

However, a default judgment is appropriate only if the factual allegations in the complaint provide an adequate legal basis to find that the defendant is liable. *Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005). The Eleventh Circuit has interpreted the standard as being akin to that necessary to survive a motion to dismiss for failure to state a claim. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n. 41 (11th Cir. 1997)).

"Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." *Surtain*, 789 F.3d at 1245. Once a court determines that default judgment should be entered, the court must then determine the amount and character of the recovery for which a sufficient basis is asserted in the complaint. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987). In considering a motion for default judgment, the Court must examine (1) jurisdiction, (2) liability, and (3) damages. *Pitts v. Seneca Sports, Inc.*, 321 F. Supp.

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

2d 1353 (S.D. Ga. 2004). An "evidentiary hearing is not a per se requirement" for a default judgment and is not needed when "all essential evidence is already of record." *SEC v. Smyth*, 420 F.3d 1225, 1232 n. 13 (11th Cir. 2005).

This Court has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332, and it otherwise has jurisdiction pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201. Moreover, as Grange seeks a declaratory judgment only, damages are not at issue. Therefore, the only question before the Court is whether Grange is liable, under the above-cited insurance policy, to defend or indemnify Cycle-Tex in the underlying lawsuit brought by Mr. Johnson.

**B. Standard for Summary Judgment**

The Court may grant summary judgment only if the record shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on the motion, the Court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Here, Defendant Johnson does not oppose Grange's Motion. This does not mean, however, that Plaintiff is automatically entitled to summary judgment.

After all, "summary judgment, even when unopposed, can only be entered when 'appropriate.'" *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). The Court "cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *One Piece of Real Prop.*, 363 F.3d at 1101 (citation omitted). At minimum, the Court must review all the evidentiary materials submitted in support of the motion. *Mack*, No. 03-14965, at 4; *One Piece of Real Prop.*, 363 F.3d at 1101-02.

## III. DISCUSSION

Plaintiff Grange first and primarily contends that it has no duty to defend or indemnify Cycle-Tex because coverage is explicitly and unambiguously excluded under the policy's Total Pollution Exclusion.

### A. Whether the Total Pollution Exclusion Bars Coverage

Under Georgia law, "[a]n insurance policy is simply a contract, the provisions of which should be construed as any other type of contract." *Am. Empire Surplus Lines Ins. Co. v. Hathaway Dev. Co.*, 707 S.E.2d 369, 371 (Ga. 2011) (quoting *RLI Ins. Co. v. Highlands on Ponce*, 635 S.E.2d 168 (Ga. Ct. App. 2006)) (internal citations omitted). "Construction of the contract, at the outset, is a question of law for the court." *Id.* In construing the insurance contract, a court undertakes a three-step process, "the first of which is to determine if the instrument's language is clear and unambiguous." *Id.*; *see also, Reed v. Auto-Owners Ins. Co.*, 667 S.E.2d 90, 92 (Ga. 2008) ("In construing an insurance policy,

we begin, as with any contract, with the text of the contract itself."). "Where the contractual language unambiguously governs the factual scenario before the court, the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured." *Reed*, 667 S.E.2d at 92. In undertaking this analysis, "[w]ords used in the policy are given their usual and common meaning, and the policy should be read as a layman would read it and not as it might be analyzed by an insurance expert or attorney." *Ga. Farm Bureau Mut. Ins. Co. v. Smith*, 784 S.E.2d 422, 424 (Ga. 2016).

Insurance coverage cases typically involve questions regarding both the insurer's duty to defend and its duty to indemnify. Under Georgia law, "an insurer's duty to pay and its duty to defend are separate and independent obligations." *Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*, 490 S.E.2d 374, 376 (Ga. 1997). "[A]n insurer's duty to defend is broader than its duty to indemnify." *Shafe v. American States Ins. Co.*, 653 S.E.2d 870, 873 (Ga. Ct. App. 2007). While the duty to defend and the duty to indemnify are independent obligations that should be analyzed separately, *see Nationwide Mut. Fire Ins. Co. v. Somers*, 591 S.E.2d 430, 433 (Ga. Ct. App. 2003), if an insurer has no duty to defend the insured, then it also has no duty to indemnify the insured. *See National Cas. Co. v. Pickens*, 582 F. App'x 839, 841 (11th Cir. 2014) ("If there is no duty to defend, there is no duty to indemnify."); *Travelers Indem. Co. of Connecticut v. Peachstate Auto Ins. Agency, Inc.*, 357 F. Supp. 3d 1259, 1264 (N.D. Ga. 2019).

To determine whether a lawsuit against an insured falls within the insured's coverage — and thus gives rise to the broader duty to defend — the Court must compare the relevant policy language against the allegations of the underlying complaint "to determine whether a liability covered by the policy is *asserted*." *Penn-Am Ins. Co.*, 481 S.E.2d at 852 (emphasis in original); *Hoover v. Maxum Indem. Co.*, 730 S.E.2d 413, 418 (Ga. 2012) ("[W]hether an insurer has a duty to defend depends on the language of the policy as compared with the allegations of the [underlying] complaint."). "[I]t is only where the complaint sets forth true factual allegations showing no coverage that the suit is one for which liability insurance coverage is not afforded and which the insurer need not provide a defense." *Penn-Am. Ins. Co.*, 490 S.E.2d at 376.

The insurer's duty to defend can only be excused if the facts in the underlying complaint "unambiguously exclude coverage under the policy." *Id.* at 376 (explaining that, "to excuse the duty to defend," the complaint "must unambiguously exclude coverage under the policy…, and thus, the duty to defend exists if the claim potentially comes within the policy.") Further, any "doubt as to liability and [the] insurer's duty to defend should be resolved in favor of the insured." *Id.*; *see also Elite Integrated Med., LLC v. Hiscox, Inc.*, 553 F. Supp. 3d 1307, 1315 (N.D. Ga. 2021), *aff'd*, 2022 WL 1740098 (11th Cir. May 31, 2022).

With this framing in mind, the Court assesses whether the Total Pollution Exclusion in Cycle-Tex's insurance policy applies to unambiguously exclude coverage for claims brought against Cycle-Tex in the *Johnson* Action. To make this

determination, the Court must compare the language of the policy with the allegations of the underlying *Johnson* complaint. *Hoover*, 730 S.E.2d 413, 418.

Here, the Total Pollution Exclusion states that insurance will not apply to either

> (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time[;]
>
> [or]
>
> (2) Any loss, cost, or expense arising out of any:
>
> > (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of "pollutants . . ."

(Compl. ¶ 60; *see also* Policy, Doc. 36-1 at ECF 118.) The policy defines pollutants as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, *chemicals*, and waste. Waste includes materials to be recycled, reconditioned or reclaimed." (Compl. ¶ 61; Policy, Doc. 36-1 at ECF 133) (emphasis added).

First, there can be no doubt that the alleged contaminants in the underlying lawsuit — PFAS *chemicals* — are "pollutants" within the plain meaning of Cycle-Tex's insurance policy. Not only are "chemicals" explicitly listed in the policy's definition of "pollutants," but Georgia courts have repeatedly emphasized the "broad" reach of the term "pollutants" contained within total pollution exclusion clauses. *See Georgia Farm Bureau Mut. Ins. Co. v. Smith*, 784 S.E.2d 422, 426

13

(Ga. 2016) (emphasizing the "broad" definition of pollutants and finding that lead present in paint unambiguously qualifies as a pollutant under same policy language); *Love Lang v. FCCI Ins. Co.*, 530 F. Supp. 3d 1299, 1308 (N.D. Ga. 2021) (explaining that courts applying Georgia law have interpreted pollution exclusion clauses broadly, and have found that substances such as noxious odors, storm water runoff, welding fumes, and dust were "pollutants" under the same policy language) (collecting cases). Accordingly, here, the "bodily injury," specifically via the ingestion of PFAS chemicals, and the "property damage" alleged in the *Johnson* Action plainly fall within the ambit of the Total Pollution Exclusion.

However, as noted above, Mr. Johnson and the putative class do not *only* claim damages for bodily injury or property damage. They also assert that they have been harmed by virtue of paying increased surcharges resulting from the City of Rome's implementation of an emergency filtration process. (*See* Fourth Amended Complaint, *Johnson*, 4:20-cv-8-AT, Doc. 716 ¶¶ 103, 106 (N.D. Ga. Jan. 11, 2022)). These damages are distinct from "bodily injury" and "property damage" and therefore do not fall within the Total Pollution Exclusion's *first* subsection.

The second prong of the Total Pollution Exclusion applies to exclude any "loss, cost, or expense" arising out of any "[r]equest, demand, order or statutory or regulatory requirement that any insured *or others* test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of "pollutants." (Compl. ¶ 60; Policy, Doc. 36-1 at ECF 118) (emphasis added).

In the *Johnson* Action, Mr. Johnson alleges that that the City of Rome implemented the emergency temporary filtration system in part in response to new 2016 EPA Health Advisories that set lifetime safe PFAS levels drastically lower than the prior 2009 advisories. (*See* Fourth Amended Complaint, *Johnson*, 4:20-cv-8-AT, Doc. 716 ¶¶ 100-104 (N.D. Ga. Jan. 11, 2022) (explaining that the City of Rome acted in part because testing had revealed PFAS at far higher levels than the EPA's limit of 70 parts-per-trillion)). In addition, the City of Rome found that the PFAS contamination of the water supply constituted a public nuisance that threatened the health and safety of the community. (*Id.* ¶ 104.) In light of these allegations, it is a reasonable inference that the City of Rome implemented the new filtration system in efforts to both (1) achieve compliance with environmental laws and regulations (such as the Clean Water Act and the Georgia Water Quality Control Act) based on guidelines set by the EPA and (2) in response to "demands and requests" that it protect its citizens from a dangerous public nuisance.

Accordingly, as alleged in the underlying action, the damages in the form of the increased rate surcharges are "loss[es], cost[s], or expense[s]" that arose out of a request, demand, or statutory or regulatory requirement to "clean up, remove, contain, treat, detoxify or neutralize or in any way respond to" PFAS chemicals from the City of Rome's water supply. (Compl. ¶ 60; Policy, Doc. 36-1 at ECF 118.) As a result, these damages — related to increased water surcharges —fall within the reach of the Total Pollution Exclusion's second subsection.

As all of the alleged damages asserted by Mr. Johnson in the underlying action, as it relates to Defendant Cycle-Tex, unambiguously fall under the policy's Total Pollution Exclusion, the insurance policy provides no coverage for the claims against Cycle-Tex in the underlying lawsuit. Based on a comparison of the operative policy language and the allegations in the underlying complaint, Grange has no duty to defend Cycle-Tex in the *Johnson* Action because the Total Pollution Exclusion undoubtedly applies and therefore bars coverage. Because Grange has no duty to defend Cycle-Tex, it also has no duty to indemnify Cycle-Tex. *See Pickens*, 582 F. App'x at 841; *Peachstate Auto Ins.,* 357 F. Supp. 3d at 1264.[3]

**IV. CONCLUSION**

Based on the foregoing analysis, the Court finds that Grange is entitled to a declaratory judgment declaring that Grange has no duty to defend or indemnify Cycle-Tex in the underlying pollution lawsuit brought by Mr. Johnson because the policy's Total Pollution Exclusion unambiguously bars coverage.

As construed by the Court, Grange's Motion for Default Judgment as to Defendant Cycle-Tex [Doc. 33] is therefore **GRANTED**. Grange's unopposed Motion for Summary Judgment as to Defendant Johnson [Doc. 33], on the basis that Grange has no duty to defend or indemnify Cycle-Tex, is also **GRANTED**.

---

[3] Because the Court finds that Grange has no duty to defend or indemnify Cycle-Tex because coverage is excluded under the insurance policy's Total Pollution Exclusion, it need not assess Grange's separate arguments based on the policy's intentional injury exclusion or the policy's timely notice requirements.

The Clerk is **DIRECTED** to enter judgment against Defendants and in favor of Grange. The Clerk is **DIRECTED** to close the case.

**IT IS SO ORDERED** this 5th day of December, 2022.

_____
**Honorable Amy Totenberg**
**United States District Judge**